**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____x

FEDERAL TRADE COMMISSION and THE          Case No. 1:17-cv-00124(LLS)
PEOPLE OF THE STATE OF NEW YORK, by
ERIC T. SCHNEIDERMAN. Attorney General
Of the State of New York,

                    Plaintiffs,

          -against-

QUINCY BIOSCIENCE HOLDING COMPANY, INC.,
a corporation; QUINCY BIOSCIENCE, LLC,
a limited liability company; PREVAGEN, INC.,
a corporation d/b/a SUGAR RIVER SUPPLEMENTS;
QUINCY BIOSCIENCE MANUFACTURING, LLC,
a limited liability company; MARK UNDERWOOD,
Individually; MARK UNDERWOOD as an officer
of Quincy Bioscience Holding Company, Inc.,
Quincy Bioscience, LLC, and Prevagen, Inc.; MICHAEL
BEAMAN, Individually; MICHAEL BEAMAN as
an officer of Quincy Bioscience Holding Company, Inc.,
Quincy Bioscience, LLC, and Prevagen, Inc.;

                    Defendants.

_____x


**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**DISMISS BY DEFENDANTS MARK UNDERWOOD AND MICHAEL BEAMAN**
**PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

## TABLE OF CONTENTS

Page

ARGUMENT .............................................................................................................. 3

I.   The Complaint Fails to State a Claim Against the Individual Defendants ........................... 3

II.  The Individual Defendants are not Subject to Personal Jurisdiction in New York ............... 4

    1.   The Individual Defendants Are Not Subject To General Personal Jurisdiction
         In New York ................................................................................................... 5

    2.   The Individual Defendants Are Not Subject To Specific Personal Jurisdiction
         In New York ................................................................................................... 6

    3.   The Individual Defendants Have Not Waived Their Personal Jurisdiction
         Argument ....................................................................................................... 11

    4.   The FTC Act Does Not Confer Nationwide Personal Jurisdiction............................. 12

        a.   Section 13(b) of the FTC Act Does Not Confer Nationwide Personal
             Jurisdiction Over the Individual Defendants ............................................. 13

        b.   The Second Circuit's Decisions in Goldlawr and Daniel Support the Proper
             Interpretation of Section 13(b) of the FTC Act ........................................ 16

        c.   Other Cases Outside This District Interpreting Section 13(b) are not
             Persuasive Following Daniel ................................................................... 18

        d.   The Other Statutes Plaintiffs Cite Do Not Mandate Their Reading of
             Section 13(b)......................................................................................... 21

CONCLUSION......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*,
   828 F. Supp. 2d 557 (E.D.N.Y. 2011) ................................................................................7

*Adamou v. Cnty. of Spotsylvania, Virginia*,
   2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) .....................................................................8

*Aquiline Capital Partners LLC v. FinArch LLC*,
   861 F. Supp. 2d 378 (S.D.N.Y. 2012)............................................................................4, 7

*Arma v. Buyseasons, Inc.*,
   591 F. Supp. 2d 637 (S.D.N.Y. 2008)...............................................................................10

*Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*,
   2007 WL 747807 (S.D.N.Y. Mar. 6, 2007) .......................................................................6

*BNSF RR. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017)......................................................................................................21

*Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*,
   467 U. S. 837 (1984)........................................................................................................12

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)...................................................................................................2, 20

*Daniel v. Am. Bd. Of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005)...................................................................................*passim*

*Deitrick v. Gypsy Guitar Corp.*,
   2016 WL 7494881 (S.D.N.Y. Dec. 28, 2016) ...................................................................8

*Doe v. Nat'l Conference of Bar Examiners*,
   2017 WL 74715 (E.D.N.Y. Jan. 6, 2017) ..........................................................................6

*Federal Trade Comm'n v. Alternatel, Inc.*,
   No. 08-cv-21433 (AJ), 2006 WL 3106448 (S.D. Fla. Oct. 27, 2008) ...................................19

*Federal Trade Comm'n v. Bay Area Bus. Council, Inc.*,
   No. 02-cv-5762, 2003 WL 21003711 (N.D. Ill. May 1, 2003)...............................................19

*Federal Trade Comm'n v. Cleverlink Trading Ltd.*,
   No. 05-cv-2889, 2006 WL 1735276 (N.D. Ill. June 19, 2006)...............................................19

*Federal Trade Comm'n v. Construct Data Publishers, A.S.*,
No. 13-cv-01999, 2014 WL 7004999 (N.D. Ill. Dec. 11, 2014)............................................18

*Federal Trade Comm'n v. Mallett*,
818 F. Supp. 2d 142 (D.D.C. 2011) .......................................................................................19

*Federal Trade Comm'n v. Navestad*,
No. 09-cv-6329T, 2010 WL 743899 (W.D.N.Y. Feb. 25, 2010) ............................................18

*Federal Trade Comm'n v. Seismic Entm't Prods.*,
No. 04-cv-377 (JD), 2005 WL 2319944 (D.N.H. Sept. 22, 2005) .........................................19

*FTC v. Ams. For Fin. Reform*,
720 F. App'x 380 (9th Cir. 2017) ..........................................................................................19

*FTC v. Consumer Def., LLC*,
2018 WL 2741039 (D. Nev. June 6, 2018)..............................................................................20

*FTC v. Moses*,
913 F.3d 297 (2d Cir. 2019)......................................................................................................3

*Goldlawr, Inc. v. Heiman*,
288 F.2d 579 (2d Cir. 1961)........................................................................................1, 16, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ................................................................................................................20

*Gordon v. Invisible Children, Inc.*,
No. 14-cv-4122 (PGG), 2015 WL 5671919 (S.D.N.Y. Sept. 24, 2015)..................................11

*Grow Group, Inc. v. Jandernoa*,
1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) ...............................................................................5

*Gucci Am. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014)....................................................................................................13

*Hill v. HSBC Bank*,
2016 WL 4926199 (S.D.N.Y. Sept. 15, 2016)...........................................................................7

*ICO Servs., Ltd. v. Coinme, Inc.*,
2018 WL 6605854 (S.D.N.Y. Dec. 17, 2018) ...........................................................................7

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011)................................................................................................................20

*J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
534 U.S. 124 (2001) (Scalia, J., concurring) .........................................................................14

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998)........................................................................4

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)........................................................10

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)..................................................................................4

*In re Korean Air Lines Co., Ltd.*,
    642 F.3d 685 (9th Cir. 2011) ..................................................................12

*Kreutter v. McFadden Oil Corp.*,
    71 N.Y.2d 460 (1988) ...............................................................................9

*La Belle Creole Int'l, S. A. v. Attorney-Gen.*,
    10 N.Y.2d 192 (1961) ............................................................................8, 9

*Mao v. Sands Bethworks Gaming LLC*,
    2016 WL 1717220 (S.D.N.Y. Apr. 28, 2016)...........................................7

*Mazloum v. Int'l Commerce Corp.*,
    829 F. Supp. 2d 223 (S.D.N.Y. 2011).......................................................4

*Merritt v. Airbus Ams., Inc.*,
    202 F. Supp. 3d 294 (E.D.N.Y. 2016) ......................................................7

*Minnie Rose LLC v. Yu*,
    169 F. Supp. 3d 504 (S.D.N.Y. 2016)........................................................5

*Paterno v. Laser Spine Institute*,
    24 N.Y.3d 370 (2014) ...............................................................................7

*Persh v. Petersen*,
    2016 WL 4766338 (S.D.N.Y. Sept. 13, 2016)..........................................5

*In re Platinum and Palladium Antitrust Litig.*,
    2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) .........................................16

*In re Prevagen Products Mktg. & Sales Practices Litig.*,
    MDL No. 2783 .........................................................................................12

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
    No. 96-cv-3669 (JGK), 1997 WL 31194 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138
    F.3d 65 (2d Cir. 1998)............................................................................15

*Retail Software Servs., Inc. v. Lashlee*,
    854 F.2d 18 (2d Cir. 1988)........................................................................9

*Shostack v. Diller*,
   No. 15-cv-2255, 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015) ..............................................10

*Sullivan v. Barclays PLC*,
   2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ....................................................................................7

*Thomas v. JP Morgan Chase, N.A.*,
   No. 11-cv-3656, 2012 WL 2872164 (E.D.N.Y. Jul. 11, 2012)...........................................15

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ..................................................................................................2, 11, 20

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001)...............................................................................................4

*Wilder v. News Corp.*,
   No. 11-cv-4947 (PGG), 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ....................................11

**Statutes**

15 U.S.C. § 22............................................................................................................................19

15 U.S.C. § 53(b) ..................................................................................................................14, 18

Clayton Act Section 12 .......................................................................................................... *passim*

Federal Trade Commission Act Section 13(b)........................................................................ *passim*

Multiemployer Pension Plan Amendments Act (29 U.S.C. § 1451(d))........................................21

NY Executive Law § 63(12) ........................................................................................................3

NY General Business Law §§ 349-50 ..........................................................................................3

Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §
   1965(d))..................................................................................................................................21

Securities Exchange Act (15 U.S.C. § 78aa) ..............................................................................21

**Other Authorities**

CPLR 301............................................................................................................................6

CPLR Section 302...........................................................................................................6, 9

CPLR Section 302(a) ......................................................................................................7, 8

CPLR Section 302(a)(1) .................................................................................................7, 8

CPLR Section 302(a)(2) ........................................................................................................8

CPLR Section 302(a)(3) ........................................................................................................8

Fed. R. Civ. P. 12(b)(2)..................................................................................................3, 4, 23

Fed. R. Civ. P. 12(b)(6)......................................................................................................3, 23

Federal Rule of Civil Procedure 4(k)(1)(c)................................................................12, 13

Federal Rules of Civil Procedure Rule 4 .......................................................................18

S. Rep. No. 103-130 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1776............................................15

Michael Beaman and Mark Underwood (the "Individual Defendants") submit this supplemental memorandum of law to address more fully their two independent grounds for dismissal of the Complaint that this Court did not reach in its September 28, 2017, Opinion and Order.[1]

*First*, the Individual Defendants are not subject to personal jurisdiction in New York. The Complaint contains no plausible, non-conclusory allegations that the Individual Defendants are domiciled in New York, that they engaged in "continuous, permanent, and substantial activity" in New York, or that they directly and personally engaged in sustained and substantial transaction of business in New York or aimed such activities to New York. Nor can the FTC rely upon the nationwide service of process mechanism in Section 13(b) of the Federal Trade Commission Act to assert personal jurisdiction over the Individual Defendants in New York absent pleading the sufficient minimum contacts in the state. The Second Circuit has made clear in *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005), and *Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2d Cir. 1961), that—for statutes similar to the FTC Act—proper *venue* is required before imposing *personal jurisdiction* on individual defendants. Here, Plaintiffs improperly seek to have this Court find personal jurisdiction over the Individual Defendants based solely on Section 13(b) of the FTC Act and their job titles—a position that courts in this Circuit have uniformly rejected.

Plaintiffs' argument would stretch federal court jurisdiction far beyond the bounds that Congress intended and that the Constitution allows. Interpreting Section 13(b) to allow the FTC to hale ***any*** individual into court ***anywhere*** in the country to answer for corporate conduct—even where the individual defendant has ***no connection*** to the jurisdiction—amounts to gross overreach.

---

[1]    As in their prior briefing, the Individual Defendants incorporate herein by reference all arguments in support of dismissal made by the Corporate Defendants, including those made in supplemental briefing.

The sweeping rule that the FTC advocates is not supported by the plain language of the FTC Act, grants the FTC broad powers beyond those that Congress saw fit to bestow on the Commission, and is contrary to Second Circuit authority.  Plaintiffs' argument would lead to the absurd result that *any* individual defendant (even, potentially, a low level employee included in a television commercial), could be forced to answer for his employer's alleged deceptive advertising in federal district court in New York (or Washington, D.C., or Miami, or Anchorage!).  The breadth of Plaintiffs' position stretches one step further:  where there is an FTC Act claim alleged, any additional plaintiff (here, the NYAG) could join the litigation and assert state law claims against individuals, even where that individual has no connection to that state.

Plaintiffs' overreaching interpretation of Section 13(b) is particularly startling in light of the Supreme Court's recent trend of *narrowing* personal jurisdiction over out-of-state defendants for Due Process reasons.  *See, e.g.*, *Daimler AG*, 134 S. Ct. at 748 (rejecting "exorbitant exercises of all-purpose [general] jurisdiction" that would "presumably be available in [any] other State"); *Walden*, 134 S. Ct. at 1122 (limiting specific jurisdiction; "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.").

Reading *all of the words* of Section 13(b) makes it clear that nationwide service of process is only available where there is a proper venue.  The FTC's interpretation of Section 13(b) is not— and should not become—the law of the Second Circuit and this Court.  The Court should reject Plaintiffs' interpretation of Section 13(b) because it is contrary to the plain language of the statute, Second Circuit authority, and would do grave damage to fundamental due process rights.  This is particularly stark here, where Plaintiffs have not credibly pled that the Individual Defendants have

sufficient minimum contacts with New York to establish jurisdiction under New York's long-arm statute.

*Second*, the Complaint did not adequately allege any wrongdoing by the Individual Defendants sufficient to state a claim for violation of the FTC Act, NY General Business Law ("**NY GBL**") §§ 349-50, and NY Executive Law ("**NY Exec. Law**") § 63(12).  On this point, the Individual Defendants rely on their prior briefs as noted below.

As set forth more fully herein, the Court should grant the Individual Defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## **ARGUMENT**

### I.     The Complaint Fails to State a Claim Against the Individual Defendants

Plaintiffs have failed to plead plausible, non-conclusory allegations showing that the Individual Defendants personally participated in the allegedly improper practices or controlled Quincy—***and*** that they knew of the allegedly improper practices.  Plaintiffs have therefore not adequately pled liability under the FTC Act, NY GBL §§ 349-50, and NY Exec. Law § 63(12).  The Individual Defendants respectfully refer the Court to, and fully incorporate herein, their prior briefing of this issue at Dkt. #37, pp. 9-12 and Dkt. #43, pp. 14-19.[2]

---

[2]     Plaintiffs have previously cited to *FTC v. Moses*, 913 F.3d 297 (2d Cir. 2019), but that case is distinguishable.  In *Moses*, the court granted summary judgment on FTC Act liability against individuals where the *record evidence* demonstrated that the individuals had the authority to control the corporation's deceptive actions and specifically partook in the unlawful activities at issue (in that case, improper collection calls).  Moreover, the individuals' knowledge of improper activity was demonstrated by their execution, years before, of an "Assurance of Discontinuance" with the government in response to accusations of these very FTC violations.  Here, as discussed in the Individual Defendants' prior briefing, the Complaint does not allege that the Individual Defendants were involved in, had knowledge of, or had any control over the challenged conduct.

## II.      The Individual Defendants are not Subject to Personal Jurisdiction in New York

Plaintiffs' jurisdictional allegations against the Individual Defendants consist of nothing more than boilerplate, vague, and conclusory assertions that each Individual Defendant "in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States, including New York," and has appeared in (Underwood) and/or reviewed (Underwood and Beaman) advertising that has been disseminated in New York.  (Compl. ¶¶ 13-16.)  In light of these grossly inadequate allegations, the Individual Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

In order to defeat a motion to dismiss under Rule 12(b)(2), "[t]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  "A plaintiff may carry this burden by pleading in good faith … legally sufficient allegations of jurisdiction." *Id.*  But "a court will not draw argumentative inferences in the plaintiff's favor." *Mazloum v. Int'l Commerce Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011).  Allegations about jurisdiction that are not supported by facts or that merely track the jurisdictional standards fail, as a matter of law, to establish personal jurisdiction. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184-85 (2d Cir. 1998).

Here, the Plaintiffs were required to set forth a *prima facie* case of personal jurisdiction in New York over Defendants Underwood and Beaman—independent of the personal jurisdiction in New York over the Corporate Defendants.  Indeed, when jurisdiction is contested, "[t]he plaintiff must satisfy its burden with respect to each defendant ***separately***." *Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 385 (S.D.N.Y. 2012) (emphasis added).  As the Supreme Court cautioned in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him … . Each defendant's contacts with the forum State must be assessed individually." *Id.* at 781 n.

4

13; *see also Grow Group, Inc. v. Jandernoa*, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996). Because the Individual Defendants are not subject to personal jurisdiction in New York, the Complaint should be dismissed as against them on this alternate ground.

### 1.    The Individual Defendants Are Not Subject To General Personal Jurisdiction In New York

An individual defendant may be subject to general personal jurisdiction in New York *only* if the complaint includes a *prima facie* showing of the defendant's "continuous, permanent, and substantial activity in New York."  *Persh v. Petersen*, 2016 WL 4766338, at *5 (S.D.N.Y. Sept. 13, 2016) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 512 (S.D.N.Y. 2016) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

The Plaintiffs failed to allege that the Individual Defendants were domiciled in New York, or that their contacts with New York were continuous or permanent.  Instead, they alleged in a purely conclusory manner that the Individual Defendants "transact[] or ha[ve] transacted business in this district and throughout the United States, including New York."  (Compl. ¶¶13, 15.) Plaintiffs also alleged that Defendant Underwood appeared in Prevagen advertising that the Corporate Defendants aired in New York and authored a Prevagen marketing piece that the Corporate Defendants disseminated in New York.  (Compl. ¶14.)

With regard to Defendant Beaman, Plaintiffs only alleged that he reviewed the Corporate Defendants' advertising, including some advertising that the Corporate Defendants disseminated in New York.  (Compl. ¶16.)  Plaintiffs failed to allege that ***any*** of these acts occurred in New York or that the Individual Defendants ever even stepped foot in New York.  These limited

allegations of New York contact fall far short of the "continuous, permanent, and substantial activity" required for general personal jurisdiction over the Individual Defendants.

Nor are the Individual Defendants subject to general personal jurisdiction in New York as a result of their corporate positions. *See Doe v. Nat'l Conference of Bar Examiners*, 2017 WL 74715, at \*7 n. 13 (E.D.N.Y. Jan. 6, 2017) (noting that individuals are not subject to CPLR 301 jurisdiction based solely on their status as corporate officers) (citing *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 635 (S.D.N.Y. 2008)); *Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, 2007 WL 747807, at \*6 (S.D.N.Y. Mar. 6, 2007) ("[An individual or employee] does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually.") (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982)). The Individual Defendants are therefore not subject to general personal jurisdiction in New York pursuant to CPLR 301.

### 2.    The Individual Defendants Are Not Subject To Specific Personal Jurisdiction In New York

The Individual Defendants are also not subject to specific personal jurisdiction in New York pursuant to CPLR Section 302. New York's "long-arm statute" allows for personal jurisdiction over a non-domiciliary in the limited circumstances where the non-domiciliary:

1. Transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. Commits a tortious act within the state …; or

3. Commits a tortious act without the state causing injury to person or property within state … if he (i) regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

6

> 4. Owns, uses or possesses any real property situated within the state.

CPLR Section 302(a).

The Complaint fails to satisfy *any* of the CPLR Section 302(a) requirements.  Under CPLR Section 302(a)(1), a non-domiciliary will be found to have "transacted business" in New York "only where a defendant's ***direct and personal*** involvement ***on his own initiative*** projected himself into New York to engage in a sustained and substantial transaction of business." *Aquiline Capital Partners*, 861 F. Supp. 2d at 386 (emphasis added, internal quotations omitted); *see also ICO Servs., Ltd. v. Coinme, Inc.*, 2018 WL 6605854, at *2 (S.D.N.Y. Dec. 17, 2018); *Paterno v. Laser Spine Institute*, 24 N.Y.3d 370, 377 (2014) (citing the "on his own initiative" standard and noting that only "where the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, ***and*** establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of CPLR 302(a)(1)") (emphasis added).  The conclusory allegation that the Individual Defendants "transact[] or ha[ve] transacted business in this district," (Compl. ¶¶13, 15), is "no more than a legal conclusion insufficient on its own to establish jurisdiction."  *Merritt v. Airbus Ams., Inc.*, 202 F. Supp. 3d 294, 299 (E.D.N.Y. 2016).  And Plaintiffs failed to allege that either of the Individual Defendants directly and personally engaged in sustained and substantial transaction of business in New York.  *See, e.g.*, *Hill v. HSBC Bank PLC*, 207 F. Supp. 2d 333, 340 (S.D.N.Y. 2016) ("Any marketing, even if directed at New York residents (which is not alleged here), is insufficient to establish a transaction of business under Section 302(a)(1), unless it is supplemented by business transactions occurring in the state."); *Mao v. Sands Bethworks Gaming LLC*, 2016 WL 1717220, at *4 (S.D.N.Y. Apr. 28, 2016) ("the mere solicitation of business or advertisement in New York, without more, is insufficient to confer jurisdiction under Section 302(a)(1)"); *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828

F. Supp. 2d 557, 566 (E.D.N.Y. 2011) (holding that even if advertising was directed at New York residents, "the Plaintiff does not allege any other facts from which the Court can infer that the Defendant purposefully availed itself of the privilege of conducting business in New York" sufficient to satisfy CPLR Section 302(a)(1)).

The Complaint also fails to allege that the Individual Defendants took any actions *in* New York, which would be required to satisfy CPLR Section 302(a)(2), or that they *aimed their activities at* New York, which would be required to satisfy CPLR Section 302(a)(3). While the Complaint makes vague and conclusory allegations regarding the Individual Defendants' "transacting business" in New York and participation in certain activities aimed at New York, such conclusory allegations do not suffice under CPLR Section 302(a).  *See, e.g.*, *Deitrick v. Gypsy Guitar Corp.*, 2016 WL 7494881, at *5 (S.D.N.Y. Dec. 28, 2016) ("Plaintiff's conclusory claim that [defendant] sells guitars through retailers in New York is insufficient for a *prima facie* showing of jurisdiction."); *Adamou v. Cnty. of Spotsylvania, Virginia*, 2016 WL 1064608, at *10 (S.D.N.Y. Mar. 14, 2016) (allegations that defendants "participated in, supervised, ratified, or tacitly approved various activities" amounted to "legal conclusions" that did not support specific personal jurisdiction).

Plaintiffs' other arguments in favor of finding personal jurisdiction are unavailing.

*First*, Plaintiffs have argued that dicta from a 1961 Court of Appeals case renders the standard for exercising jurisdiction over a *lawsuit* brought in the "public interest" more relaxed than in private civil litigation, citing *La Belle Creole Int'l, S. A. v. Attorney-Gen.*, 10 N.Y.2d 192, 197-98 (1961).  This is incorrect.  Plaintiffs misconstrued the holding of *La Belle Creole*, which stands for the unremarkable proposition that the NYAG has the broad ability to conduct a pre-lawsuit regulatory *investigation*.  There, the court rejected a foreign company's motion to quash

an investigative subpoena because due process did not prevent the NYAG from initiating an investigation into whether the company violated New York law.  In reaching its decision, the Court of Appeals recognized the distinction between a pre-lawsuit investigation and a civil lawsuit brought by the Attorney General.  *Id.* at 198 ("A foreign corporation's immunity from civil suit in New York, on the ground that it is not doing business there, does not mean that it is immune from investigation by the Attorney-General in an inquiry to determine whether it is violating the laws of this State.").

Here, even after conducting an *extensive* pre-lawsuit investigation, Plaintiffs could only plead enough "facts" to make boilerplate jurisdictional and substantive allegations against the Individual Defendants.

*Second*, Plaintiffs have argued that the Individual Defendants ***must*** be subject to personal jurisdiction in New York under CPLR Section 302 based on the Corporate Defendants' contacts with the State.  Plaintiffs based their argument on *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988), and *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988), two cases that only stand for the proposition that a corporate officer ***may*** be subject to personal jurisdiction in New York when he is a "***primary actor***" in the conduct at issue in the lawsuit.  *See Kreutter*, 71 N.Y.2d at 470 (rejecting the fiduciary shield doctrine in New York; reasoning that the plaintiff "seeks to acquire jurisdiction over an individual who was a primary actor in the transaction with him in New York, not some corporate employee in Texas who played no part in it"); *Retail Software Servs.*, 854 F.2d at 22 (same).  But,

> [i]n order to attribute a corporation's New York contacts to an individual under CPLR § 302(a)(1), New York law requires a Plaintiff to convince the court that the corporation engaged in purposeful activities in this State in relation to Plaintiff's transaction for the benefit of and with the knowledge and consent of the individual defendant and that the individual defendant exercised

> some control over the corporation in the matter. … *Conclusory
> allegations that the corporate officers exercised control over the
> corporation by virtue of their title or position within the
> corporation, or derived some benefit from the corporation's
> activities do not suffice; courts routinely grant motions to dismiss
> for lack of personal jurisdiction when the plaintiff relies solely on
> such vague assertions.*

*Shostack v. Diller*, No. 15-cv-2255 (GBD-JLC), 2015 WL 5535808, at *4-5 (S.D.N.Y. Sept. 16,

2015) (emphasis added), *report and recommendation adopted*, 2016 WL 958687 (GBD-JLC)

(S.D.N.Y. Mar. 8, 2016) (dismissing individual defendants where plaintiff "asserts no facts

alleging that the individual defendants had any direct involvement in the actions giving rise to this

litigation.") (internal citations omitted); *see also Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637,

647 (S.D.N.Y. 2008) (dismissing individual defendant based on allegations that "Getz is President,

Chief Executive Officer (CEO) and principal shareholder and driving force behind co-defendants

BuySeasons and BuyCostumes, . . . and that Getz was actively engaged in the day to day decisions

with respect to the use of intellectual property during the term of the contract and personally

participated in the day to day decisions relating to the use of the marks and images in various forms

of advertising and media during the term of the contract.") (internal quotations omitted); *Karabu

Corp. v. Gitner*, 16 F. Supp. 2d 319, 324-25 (S.D.N.Y. 1998) (dismissing individual defendants

where the complaint only alleged that they "directed TWA personnel to seek out and wrongfully

punish travel agencies doing business with Global, and that TWA personnel thereafter wrongfully

coerced travel agencies in New York and elsewhere at the direction of defendants.") (internal

quotations omitted).

   Finally, the Complaint's only allegations purportedly linking the Individual Defendants to

New York are that they appeared in (Underwood) and/or reviewed (Underwood and Beaman)

advertising that was disseminated by the Corporate Defendants in New York.  (Compl. ¶¶14, 16.)

But, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be

based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014).  "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *Id.* at 1122 (emphasis in original).  Since *Walden*, the Southern District of New York has held that a corporate executive's out-of-state involvement with media that was projected into New York by the corporation is insufficient to confer personal jurisdiction.  *See Wilder v. News Corp.*, No. 11-cv-4947 (PGG), 2015 WL 5853763, at *8 (S.D.N.Y. Oct. 7, 2015) (holding that "[e]ven if (1) Brooks participated in the creation and dissemination of the press releases, and (2) it was foreseeable that they would have an effect in New York, the exercise of personal jurisdiction over her requires more . . . . Plaintiffs must allege facts demonstrating that Brooks intentionally caused—*i.e.,* expressly aimed to cause— an effect in the forum through her conduct . . . . Because the SAC does not plead facts demonstrating that Brooks' actions were taken with the express aim of causing an effect in New York, the effects test is not satisfied."); *see also Gordon v. Invisible Children, Inc.*, No. 14-cv-4122 (PGG), 2015 WL 5671919, at *8 (S.D.N.Y. Sept. 24, 2015) (dismissing defendant who was only alleged to have directed and narrated a video out-of-state that was used by a third-party to garner donations from New York residents).  As in *Wilder* and *Gordon*, Plaintiffs' allegations fall far short of demonstrating that the Individual Defendants "intentionally caused—*i.e.,* expressly aimed to cause—an effect in [New York] through [their] conduct." *See Wilder*, 2015 WL 5853763, at *8.

### 3.     The Individual Defendants Have Not Waived Their Personal Jurisdiction Argument

Plaintiffs argued before this Court that the Individual Defendants somehow "waived" their personal jurisdiction argument because they did not object to the Complaint based on improper or inconvenient venue.  But the Individual Defendants' motion to dismiss was based on a more

fundamental defect—that the court did not have ***personal jurisdiction*** over the Individual Defendants.

Plaintiffs also  argued that personal jurisdiction over the Individual Defendants in New York is proper because the Individual Defendants petitioned (along with the Corporate Defendants) the U.S. Judicial Panel on Multidistrict Litigation to transfer and consolidate this action with three putative class actions in the Southern District of New York.  (*See In re Prevagen Products Mktg. & Sales Practices Litig.*, MDL No. 2783, Mot. To Transfer, Dkt 1.)  But the fact that the Southern District of New York is a convenient forum *for a Multidistrict Litigation* is not a substitute for proper personal jurisdiction in this or any other case consolidated in the MDL.  *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011) (the transferee judge "inherits the entire pretrial jurisdiction" that the transferor court could have exercised had the case not been transferred.).  The Individual Defendants could have—and would have—made this same motion if the cases were consolidated in an MDL.

### 4.    The FTC Act Does Not Confer Nationwide Personal Jurisdiction

Plaintiffs have also argued that the FTC can sue in New York (or any other jurisdiction it chooses) any corporate or individual defendant doing business anywhere in the United States.  The FTC pointed to Federal Rule of Civil Procedure 4(k)(1)(c), which states "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: [] when authorized by federal statute."  The FTC claims that Section 13(b) of the FTC Act gives the FTC that authorization.[3]  By implication, Plaintiffs also contend that the NYAG (or any State Attorney

---

[3]    Nor is the FTC entitled to *Chevron* deference with regard to its overbroad interpretation of the Section 13(b) of the FTC Act.  *See generally Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).  This Court must decide whether it has jurisdiction over the Individual Defendants, not the FTC.

General and presumably any private litigant joining suit with the FTC), via supplemental jurisdiction, can sue any defendant even if that defendant's conduct has no direct ties to New York.

But these arguments are wrong.  The Second Circuit has made clear that it "has not yet decided" whether, "when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole." *Gucci Am. v. Bank of China*, 768 F.3d 122, 142 n. 23 (2d Cir. 2014).  Here, the case is even more compelling because the plain language of Section 13(b) of the FTC Act makes clear that nationwide service of process is only available when venue is proper.

### a. Section 13(b) of the FTC Act Does Not Confer Nationwide Personal Jurisdiction Over the Individual Defendants

The express language of Section 13(b) requires the FTC first to demonstrate that a defendant "resides or transacts business" or is properly venued in a district (*i.e.* that the defendant is subject to personal jurisdiction in the district).[4]  ***Only then*** may the FTC take advantage of the provision that follows regarding nationwide service of process.

Section 13(b) states:

> Any suit may be brought ***where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under Section 1391 of Title 28***.  In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought.  ***In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found***.

---

[4]     Importantly, this jurisdictional statute applies, if at all, only to claims brought under the FTC Act in Counts I and II.  If Counts I and II are dismissed, Fed. R. Civ. P. 4(k)(1)(c) would not confer personal jurisdiction over the Individual Defendants in New York for the state law claims alleged in Counts III and IV.

15 U.S.C. § 53(b) (emphasis added).

The only logical reading of this language is that "any suit under this section" filed by the FTC must first "be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28." *Id.* **Only then** is the FTC authorized to effect service "on any person, partnership or corporation wherever it may be found." *Id.* This reading gives effect to the whole paragraph, and is compelled by the opening clause of the purported nationwide service of process provision:  the phrase "[i]n any suit under this section" logically refers to a suit brought where a defendant "resides or transacts business, or wherever venue is proper . . . ." *Id.*

Plaintiffs urges an overly broad interpretation of Section 13(b)—that the FTC has authority under Section 13(b) to sue anyone in any place for any violation of any law enforced by the FTC. Such a reading would improperly read out of the statute the threshold venue requirement.  Congress would not have prescribed venue as where defendants "reside or transact business or wherever venue is proper under section 1391 of Title 28," *id.*, if it intended such a broad result.  Nor would it have been necessary for Congress to authorize suit against any other entity (if the court determines that it is in the *interest of justice*) "without regard to whether venue is otherwise proper in the district in which the suit is brought." *Id.*  If Plaintiffs' interpretation were correct, these statutory pre-conditions to jurisdiction would be rendered utterly meaningless.

Such a result ignores the well-accepted canon of statutory construction that requires that "statutes must be construed in their entirety, so that the meaning of one provision sheds light upon the meaning of another." *J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 146 (2001) (Scalia, J., concurring); *see also Daniel*, 428 F.3d at 423 ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which

that language is used, and the broader context of the statute as a whole.") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Moreover, the FTC Act's legislative history does not support Plaintiffs' interpretation of the statute. The legislative history shows Congressional intent to "permit[] the FTC to join individuals and companies based in multiple jurisdictions in a single action, rather than filing separate lawsuits in multiple jurisdictions." S. Rep. No. 103-130, at 15-16 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1776. This intent is reflected in Section 13(b)'s "interests of justice" language, which permits the FTC to "[add] a party without regard to whether venue is otherwise proper in the district in which the suit is brought" in the limited circumstances where the FTC ***cannot*** properly join all necessary parties in ***any one*** jurisdiction. *See, e.g.*, *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, No. 96-cv-3669 (JGK), 1997 WL 31194, at *4 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65, 72 (2d Cir. 1998) (holding that because all the defendants could be sued in the Eastern District of Pennsylvania, the "ends of justice" in a RICO case did not require jurisdiction over the individual defendants in the Southern District of New York); *Thomas v. JP Morgan Chase, N.A.*, No. 11-cv-3656 (JG-RML), 2012 WL 2872164, at *5 (E.D.N.Y. Jul. 11, 2012) ("ends of justice" did not require exercise of personal jurisdiction in a RICO case where claims could have been brought against all defendants in Texas federal court). Here, the "interests of justice" do not permit the FTC to join the Individual Defendants as parties in the Southern District of New York, because it is undisputable that Plaintiffs could have brought this lawsuit in a jurisdiction that has personal jurisdiction over all defendants—Wisconsin.

Accordingly, Section 13(b) does not confer nationwide personal jurisdiction over the Individual Defendants.

  **b.**  **The Second Circuit's Decisions in *Goldlawr* and *Daniel* Support the Proper Interpretation of Section 13(b) of the FTC Act**

While the language of Section 13(b) (standing on its own) is clear and shows that nationwide service of process clause does not in and of itself impose personal jurisdiction over the Individual Defendants in New York, persuasive Second Circuit authority also mandates this conclusion.  In *Goldlawr*, 288 F.2d 579, the Second Circuit held that under Section 12 of the Clayton Act—a provision analogous to Section 13(b) of the FTC Act—"the extraterritorial service privilege [of nationwide service of process, and the personal jurisdiction attendant to it] is given only when the other requirements [of venue] are satisfied." *Id.* at 581.  Forty years later, the Second Circuit upheld this reasoning in *Daniel*, 428 F.3d 408.  *See also In re Platinum and Palladium Antitrust Litig.*, 2017 WL 1169626, at *43 n. 18 (S.D.N.Y. Mar. 28, 2017) ("Because the service of process provision applies only to 'such cases' described in the preceding clause, the Second Circuit has concluded that nationwide service of process is permissible 'only in cases in which its venue provision is satisfied.'") (quoting *Sullivan v. Barclays PLC*, 2017 WL 685570, at *42 (S.D.N.Y. Feb. 21, 2017)).  This is exactly the same analysis that should govern Section 13(b).

Plaintiffs have previously argued that *Goldlawr* and *Daniel* are not applicable to Section 13(b) because the language of Section 13(b) is different, and broader, than Section 12 of the Clayton Act.  But the differences that Plaintiffs point to are superficial.  Plaintiffs argued that, in *Daniel*, the Second Court "expressly construed the 'such cases' reference [in Section 12] as the basis for limiting the scope of the service of process . . . [and] [t]he scope of the service of process authority under Section 13(b) is not limited to 'such cases' but instead applies to 'any suit under this section.'"  Plaintiffs' argument entirely missed the point of *Daniel*.  *Daniel* stands for the proposition that a court, when interpreting a special venue provision, must closely read the statute "the way it is written."  The *Daniel* opinion did ***not*** say that the inclusion of the specific language

"such cases" is dispositive as a matter of law.  In *Daniel*, the Second Circuit analyzed Section 12

of the Clayton Act as follows:

> [W]e begin with the text of Section 12 to determine whether its
> language is clear or ambiguous. [] The plainness or ambiguity of
> statutory language is determined by reference to the language itself,
> the specific context in which that language is used, and the broader
> context of the statute as a whole.  If the meaning is plain, we inquire
> no further. [] Only if we discern ambiguity do we resort first to
> canons of statutory construction, [] and, if the meaning remains
> ambiguous, to legislative history.
>
> Applying these principles to this case, we conclude from the
> language and context of "in such cases" in the service of process
> provision of Section 12, that the phrase plainly refers to those cases
> qualifying for venue in the immediately preceding clause.  The
> common meaning of the word "such" is "having a quality already or
> just specified"; "of this or that character, quality, or extent: of the
> sort or degree previously indicated or implied"; or "previously
> characterized or described: aforementioned." [] The "quality" of the
> cases specified in the provision of Section 12 preceding the
> semicolon is not simply that they are antitrust cases, or even antitrust
> cases against corporations; it is that they are antitrust cases against
> corporations brought in the particular venues approved by Section
> 12:  where the defendant is an "inhabitant," where it "may be
> found," or where it "transacts business."  15 U.S.C. § 22.  It is "in
> such cases," *i.e.,* such venued cases, that Section 12 makes
> worldwide service of process available.

*Daniel*, 428 F.3d at 423-24 (internal citations omitted).  Following this precise textual analysis,

the Second Circuit concluded:

> In sum, when we interpret Section 12 "***the way it is written***," we are
> obliged to conclude that its service of process provision can properly
> confer personal jurisdiction over a defendant "only when the action
> is brought in the district where the defendant resides, is found, or
> transacts business," that is, the district where Section 12 venue lies.

*Id.* at 427 (emphasis added).  Thus, the Second Circuit's reading of Section 12 did not turn

specifically on the "such cases" language, but rather on the existence of a venue prerequisite in the

service of process provision.

Section 13(b) of the FTC Act is functionally equivalent to Section 12 of the Clayton Act. Just as the "**such cases**" language in Section 12 refers to cases that meet the venue requirement of the Clayton Act, the "***[i]n any suit under this section***" language in Section 13(b) "plainly refers to those cases qualifying for venue in the immediately preceding clause." *Id.* at 424. And, just as the Second Circuit explained in *Daniel*, the "quality" of the cases specified in the first sentence of Section 13(b) is not simply that they are deceptive advertising cases, or even deceptive advertising cases against individuals; it is that they are deceptive advertising cases against individuals brought in the particular venues approved by Section 13(b): where the defendant "resides" or "transacts business," or "wherever venue is proper under Section 1391 of Title 28." *See* 15 U.S.C. § 53(b). It is "[i]n any suit under this section," *i.e.,* such venued cases, that Section 13(b) makes nationwide service of process available.

### c. Other Cases Outside This District Interpreting Section 13(b) are not Persuasive Following *Daniel*

Plaintiffs have pointed out that certain district courts have agreed with their interpretation of Section 13(b). But no such cases have been decided by the Second Circuit and these cases are not binding on this Court. Moreover, where the district courts have essentially just rubber-stamped the FTC's interpretation of Section 13(b), such decisions are inconsistent with *Daniel* and its rigorous textual analysis. *See, e.g.*, *Federal Trade Comm'n v. Navestad*, No. 09-cv-6329T, 2010 WL 743899, at *3 (W.D.N.Y. Feb. 25, 2010) (holding, without citation, that "[b]ecause the Federal Trade Commission Act authorizes service of process to be effectuated on any defendant wherever that defendant may be found, this court may exercise personal jurisdiction over such a defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure . . . ."; parties did not argue, and the court did not consider, the applicability of *Daniel* or *Goldlawr*); *see also Federal Trade Comm'n v. Construct Data Publishers, A.S.*, No. 13-cv-01999, 2014 WL 7004999, at *3 (N.D. Ill. Dec. 11,

18

2014); *Federal Trade Comm'n v. Mallett*, 818 F. Supp. 2d 142, 147 (D.D.C. 2011); *Federal Trade Comm'n v. Alternatel, Inc.*, No. 08-cv-21433 (AJ), 2006 WL 3106448, slip op. at 2 (S.D. Fla. Oct. 27, 2008); *Federal Trade Comm'n v. Cleverlink Trading Ltd.*, No. 05-cv-2889, 2006 WL 1735276, at *3-4 (N.D. Ill. June 19, 2006).[5]

These decisions are wholly inconsistent with *Daniel* because Section 12 of the Clayton Act—which does ***not*** confer nationwide personal jurisdiction—includes the ***very same "wherever it may be found" language*** as the FTC act.  *See* 15 U.S.C. § 22 ("all process in such cases may be served in the district of which it is an inhabitant, or ***wherever it may be found***.") (emphasis added).  When the Court reads Section 13(b) "the way it is written," and ignores Plaintiffs' superficial comparisons, it will find that the statute does not confer nationwide personal jurisdiction.  Only Congress can fix that.

For this same reason, the FTC's citation in its appellate briefing to *FTC v. Ams. For Fin. Reform*, 720 F. App'x 380 (9th Cir. 2017), is inapt.  The Ninth Circuit has diverged from the Second Circuit in interpreting nationwide service of process provisions—in particular, provisions with venue limitations such as those in the FTC Act.  This circuit split became clear in *Daniel*: whereas the Second Circuit held that the inclusion of a venue qualifier in the Clayton Act meant that venue was a prerequisite for personal jurisdiction, the Second Circuit acknowledged that its conclusion was contrary to the position of the Ninth Circuit (and the Third Circuit), which "hold[s] that Section 12's service of process provision is 'independent of and does not require satisfaction of' the section's venue provision."  *Daniel*, 428 F.3d at 423 (quoting *In re Auto. Refinishing Paint*

---

[5]    Two other cases cited by Plaintiffs, *Federal Trade Comm'n v. Seismic Entm't Prods.,*No. 04-cv-377 (JD), 2005 WL 2319944, at *1 (D.N.H. Sept. 22, 2005) and *Federal Trade Comm'n v. Bay Area Bus. Council, Inc.*, No. 02-cv-5762, 2003 WL 21003711, at *2 (N.D. Ill. May 1, 2003), reach this conclusion with no analysis whatsoever.

*Antitrust Litig.*, 358 F.3d 288, 297 (3d Cir. 2004) and citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1179-80 ( 9th Cir. 2004)); *see also FTC v. Consumer Def., LLC*, 2018 WL 2741039, at \*14 (D. Nev. June 6, 2018) (noting that the Ninth Circuit holds that the Clayton Act allows for nationwide service of process, despite its venue provision, and that because the "FTC Act national service provision is nearly identical to the national service provision in the … Clayton Act," the defendant in the FTC Act claim did not have to satisfy a venue analysis for purposes of personal jurisdiction).  Thus, the Ninth Circuit's interpretation in *Americans for Fin. Reform* of the service of process provision in the FTC Act—without analysis—is inconsistent with the statute, in conflict with Second Circuit law and has no persuasive value for this Court.

Moreover, most of the cases Plaintiffs cite were decided before the Supreme Court's recent trend of limiting personal jurisdiction over out-of-state defendants based on due process concerns. *See, e.g.*, *Walden*, 134 S. Ct. at 1126 (holding that "[p]etitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State [Nevada] does not suffice to authorize jurisdiction"); *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) (holding that foreign company with U.S. subsidiary that has sizable sales in California is not subject to general personal jurisdiction in California); *Goodyear Dunlop Tires Operations,* , 564 U.S. 915 (holding that foreign subsidiaries of U.S. parent company are not subject to general jurisdiction in parent company's domicile for claims unrelated to any activity of the subsidiaries in that jurisdiction); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (holding that foreign manufacturer with no contacts to New Jersey is not subject to jurisdiction in New Jersey state court in products liability suit based on injury that occurred in New Jersey).  These cases make clear that personal jurisdiction requires, at a minimum, actual contacts with the forum state. The FTC's sweeping claim of nationwide personal jurisdiction regardless of a defendant's contact

with the forum state flies in the face of this precedent and goes far beyond what Congress authorized.

Finally, the FTC's reliance in its appellate briefing on *BNSF RR. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017) is misplaced.  In *BNSF*, the Supreme Court considered whether a particular provision in the Federal Employers' Liability Act provided the conditions for venue over claims under that statute or personal jurisdiction over potential defendants.  In her majority opinion, Justice Ginsburg held that the relevant provision only concerned venue, not personal jurisdiction.  In so holding, Justice Ginsburg noted expressions Congress usually uses "to indicate the federal districts in which venue is proper."  *BNSF*, 137 S. Ct. at 1555.  Justice Ginsburg compared these with "Congress' typical mode of providing for the exercise of personal jurisdiction," which is "to authorize service of process."  *Id.*  As an example of a statute that provides for personal jurisdiction by authorizing service of process, Justice Ginsburg cited to Section 13(b) of the FTC Act.  But this (dicta) is not extraordinary; the Individual Defendants do not dispute that the FTC Act—under certain conditions—allows for personal jurisdiction by authorizing service of process.  But—critically— there is a threshold venue requirement that must be met before personal jurisdiction can be found. The dicta from *BNSF* on which Plaintiffs rely does not suggest otherwise.

> **d.**   **The Other Statutes Plaintiffs Cite Do Not Mandate Their Reading of Section 13(b)**

Finally, Plaintiffs are mistaken in their argument that Section 13(b) should be interpreted the way courts have held other federal statutes (*i.e.*, Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1965(d)), the Securities Exchange Act (15 U.S.C. § 78aa), and the Multiemployer Pension Plan Amendments Act (29 U.S.C. § 1451(d)) to permit nationwide personal jurisdiction by virtue of service of process.  Plaintiffs' position is contrary to the law of the Second Circuit as set forth in *Daniel*, where the court distinguished RICO and the Securities

Exchange Act (which both allow for personal jurisdiction based on nationwide service of process) from the Clayton Act (which, like the FTC Act, contains a venue prerequisite for personal jurisdiction)—and even included an entire section of the opinion entitled: "***Expanded Venue and Service of Process Provisions in Other Statutes Are of Little Assistance in Construing Section 12***." *Daniel*, 428 F.3d at 426-27 (emphasis added).

The Second Circuit distinguished the Clayton Act provision from the venue provision in the RICO statute in two ways.  First, the court noted the "important structural difference" between the two statutes:  "[w]hile Section 12 of the Clayton Act discusses venue and service of process in one sentence, RICO separates these provisions into non-sequential, lettered subsections."  *Id.* at 427.  Second, the court relied on a "textual difference":  *i.e.*, in the RICO statute, "the service of process provision [applies] 'in any action or proceeding *under this chapter*,' that is, the chapter dealing with racketeering."  *Id.* (emphasis in original).  These same differences distinguish the RICO provision and Section 13(b).  Section 13(b) does not "separate[ out venue and service of process] provisions into non-sequential, lettered subsections."  And while RICO's service of process provision applies broadly to any case brought under the RICO chapter of the U.S. Code, Section 13(b)'s service of process allowance is limited to only cases brought under that "section" of the statute.

In distinguishing the Securities Exchange Act, the Second Circuit explained that "the venue provision of the Exchange Act reaches even more broadly than Section 12 of the Clayton Act, permitting suit 'in the district where any act or transaction constituting the violation occurred.'" *Daniel*, 428 F.3d at 426 (internal citations omitted).  As such, there is no comparison between the Securities Exchange Act and Section 13(b), which indisputably does not include this broad language.

## CONCLUSION

For the reasons set forth herein, and in the Individual Defendants' prior briefing on the Motion to Dismiss, Defendants Mark Underwood and Michael Beaman respectfully request that the Court dismiss the Complaint against them with prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and grant any further relief the Court deems just and proper.

Dated: New York, New York
      June 18, 2019

<div style="margin-left:40%">

**COZEN O'CONNOR**

  /s/ Michael de Leeuw        
Michael de Leeuw
Tamar S. Wise
Matthew Elkin
45 Broadway
New York, NY 10006
212-908-1331

-and-

JB Kelly (*pro hac vice*)
Bryan Mosca (*pro hac vice*)
1200 19th Street, NW
Washington, DC 20036

*Attorneys for Defendants Mark Underwood and Michael Beaman*

</div>