## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>                Plaintiffs,<br><br>                v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company;<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.; and<br><br>MICHAEL BEAMAN, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.<br><br>                Defendants. | Case No. 1:17-cv-00124-LLS |

**PLAINTIFFS' RESPONSE TO SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF CORPORATE DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ................................................................................ 1

ARGUMENT .......................................................................................................................... 2

    I.      The Vote to Issue the Complaint Complied with the FTC's Longstanding Quorum Rule ........................................................................ 2

    II.     The FTC's Quorum Rule Was Validly Promulgated Pursuant to the FTC Act and Congressional Intent ................................................ 3

    III.    Common Law Does Not Provide Grounds for Striking the FTC's Quorum Rule ............................................................................ 7

    IV.    The Court Should Disregard Defendants' Characterization of the Vote as Improperly Rushed ............................................. 8

    V.     Because the FTC's Vote to File the Complaint was a Valid Agency Action, the Court Should Exercise Pendant Jurisdiction Over the State Law Claims ..................................................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Assure Competitive Transp., Inc. v. U.S.*,
  629 F.2d 467 (7th Cir. 1980) .......................................................................................... 6

*Bd. of Comm'rs of Town of Salem v. Wachovia Loan & Tr. Co.*,
  55 S.E. 442 (N.C. 1906) ................................................................................................. 7

*Falcon Trading Grp., Ltd. v. SEC*,
  102 F.3d 579 (D.C. Cir. 1996) .................................................................................... 5, 7

*FTC v. Flotill Products, Inc.*,
  389 U.S. 179 (1967) ............................................................................................... 5, 6, 7

*Idaho v. ICC*,
  939 F.2d 784 (9th Cir. 1991) .......................................................................................... 8

*IUE AFL-CIO Pension Fund v. Herrmann*,
  9 F.3d 1049 (2d Cir. 1993) ............................................................................................. 9

*La Peyre v. FTC*,
  336 F.2d 117 (5th Cir. 1966) .......................................................................................... 5

*Lee v. Bd. of Ed. of City of Bristol*,
  434 A.2d 333 (Conn. 1980) ............................................................................................ 7

*Nalle v. City of Austin*,
  93 S.W. 141 (Tex. Civ. App. 1906) ................................................................................ 7

*Nat'l Petroleum Refiners Ass'n v. FTC*,
  482 F.2d 672 (D.C. Cir. 1973) ....................................................................................... 4

*New Process Steel, L.P. v. NLRB*,
  560 U.S. 674 (2010) ....................................................................................................... 4

*SEC v. Feminella*,
  947 F. Supp. 722 (S.D.N.Y. 1996) ................................................................................. 5

*State ex rel. Att'y Gen. v. Orr*,
  56 N.E. 14 (Ohio 1899) .................................................................................................. 7

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ....................................................................................................... 4

**Statutes**

15 U.S.C. § 41 ............................................................................................................. 3, 4, 8

15 U.S.C. § 46(g) ............................................................................................................... 4

28 U.S.C. § 1367 ................................................................................................................ 9

47 U.S.C. §154(h) .............................................................................................................. 4

49 U.S.C. § 10301(3) ......................................................................................................... 6

**Rules**

16 C.F.R. § 4.14(b) ........................................................................................................ 2

16 C.F.R. § 4.14(c) ........................................................................................................ 3

**Other Authorities**

BLACK'S LAW DICTIONARY 1446 (10th Ed. 2014) ........................................................... 7

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the People of the State of New York by New York State Attorney General Letitia James ("NYAG") (collectively "Plaintiffs") respectfully oppose the Motion to Dismiss and Supplemental Memorandum by Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, and Quincy Bioscience Manufacturing, LLC (collectively "Defendants").  Defendants have presented no new facts or authority in their Supplemental Memorandum in support of their argument that the FTC lacked a valid quorum to issue the Complaint in this case.  Because Defendants have presented no legitimate reason for dismissal of the FTC's claims, the Court should retain supplemental jurisdiction over the NYAG's claims as well.  Accordingly, their Motion to Dismiss should be denied.

## INTRODUCTION AND SUMMARY

Defendants assert that, at the time the FTC voted to authorize filing the Complaint in this matter, the agency lacked a valid quorum, and thus the vote was *ultra vires*.  When the Commission voted to issue the Complaint in January 2017, there were three Commissioners in office and two vacancies.  Of the three sitting Commissioners, two voted to issue the Complaint, and one responded to the call for votes by declaring that she was "not participating."  Defendants do not deny that the vote complied with the FTC's longstanding quorum rule, but instead claim that the rule *itself* is invalid.  The rule, however, was enacted pursuant to a clear grant of authority by Congress and is consistent with case law upholding an agency's ability to establish its own quorum rules under similar circumstances.  Defendants' assertion that the rule violates the "common law" is incorrect.  In any event, agencies are free to issue procedural rules departing from the common law.

The FTC's vote was not by any means an "unprecedented" action, as Defendants have attempted to characterize it. The Commission has taken action based on a 2-0 vote on many occasions both prior to this vote and since. Indeed, for more than a year from February 2017 through May 2018, during which the Commission had three vacancies, every action the Commission took was by necessity based on a 2-0 vote. Defendant's accusation that the Commission improperly rushed to vote is both baseless and legally irrelevant.

## ARGUMENT

### I. The Vote to Issue the Complaint Complied with the FTC's Longstanding Quorum Rule

It is undisputed that the Commission's vote to issue a Complaint against Defendants for false and deceptive marketing of Prevagen to improve memory complied with agency rules. Rule 4.14(b) of the FTC's Rules of Practice, 16 C.F.R. § 4.14(b), defines a quorum as "[a] majority of the members in office and not recused from participating in the matter." The Commission is a multimember agency with five authorized seats. When the Commission voted on the Complaint, it had three members in office and two vacant seats. Under the clear meaning of the quorum rule, the Commission only needed a quorum of two, since they comprised a majority of those in office. Here, because two Commissioners—a majority of the quorum—voted to authorize issuance of the Complaint, the vote was valid regardless of whether the third Commissioner, Maureen Ohlhausen, counted towards the quorum when she responded to the call for votes by stating that she was "not participating."

Defendants are attempting to distract from that simple truth by parsing Plaintiffs' words about whether Commissioner Ohlhausen's entry on the record as "not participating" counted as a vote or not. The Court need not reach that question because it has no bearing whatsoever on

either the legal validity of the vote or the practical outcome.[1]  Rule 4.14(b) required only a quorum of two, and two Commissioners participated and voted for the Complaint.  The outcome of the vote would be the same no matter what action Commissioner Ohlhausen had taken.  For example, had she decided to participate in deliberations on the matter and then voted *against* the Complaint, the final vote would have been 2-1 to authorize filing.  The vote still would have passed under FTC Rule 4.14(c), which provides that, once a quorum exists, "Commission Action … may be taken … with the affirmative concurrence of a majority of the participating Commissioners."  16 C.F.R. § 4.14(c).  Counsel for Defendants was therefore wrong when he suggested at the scheduling conference that the Commission could only vote out the complaint if it had three "yes" votes.  Under Rule 4.14, the FTC needed only two affirmative votes, whether the number of participating Commissioners was two or three.

## II. The FTC's Quorum Rule Was Validly Promulgated Pursuant to the FTC Act and Congressional Intent

Given that the vote in this matter clearly adhered to the FTC's quorum rule, Defendants resort to an attack on the validity of the rule itself.  They assert that the rule conflicts with Congressional intent.  They ignore, however, the FTC Act's declaration that "[a] vacancy in the Commission shall not impair the right of the remaining Commissioners to exercise all the powers of the Commission."  15 U.S.C. § 41.  Thus, Congress was clear that the FTC can, and must, define quorum in a way that allows the agency to exercise all its powers to serve the public

---

[1] Accordingly, to streamline the issues for resolution, the FTC does not now contend that Commissioner Ohlhausen's "not participating" response included her in the quorum.

unimpeded by vacancies.  The relevant case law affirms the ability of the FTC and agencies with similar authorizing statutes to define a quorum for themselves.[2]

The FTC had authority to promulgate its own quorum rule.  Congress could have specified in the FTC's enabling statute the number of members who must be present for a quorum, but it chose not to.  That was not an accidental omission.  When Congress has deemed it appropriate to impose express quorum requirements on an agency, it has done so.[3]  Instead, Congress declared its intent that vacancies *not* impair the Commission's ability to "exercise all of [its] powers."  15 U.S.C. § 41.  At the same time, Congress gave the Commission wide latitude to adopt its own procedural rules, including rules on quorum.  Section 6(g) of the FTC Act explicitly empowers the agency to "make rules and regulations for the purpose of carrying out the provisions of this subchapter."  15 U.S.C. § 46(g).  That power includes promulgating rules of procedure.  *See Nat'l Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 678 (D.C. Cir. 1973) (construing "rules and regulations" in Section 6(g) to include both substantive and procedural rules); *see also Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.") (internal quotation marks omitted).  In other words, the clear intent of Congress was to allow the

---

[2] Defendants' Supplemental Memorandum cites no legal support for their position that the FTC cannot act with less than three votes.  Their reliance instead on dicta from a 1979 rulemaking, decades before the current rule was promulgated, has no legal weight.

[3] The Federal Communications Commission's statute is one example.  *See* Communications Act, 47 U.S.C. §154(h).  Although Defendants cite *New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010), that case is inapposite, because the NLRB's statute, unlike the FTC Act, expressly requires a quorum of three.  *Id.* at 676.

4

Commission to define quorum for itself and, in doing so, to ensure that vacancies at the agency would not prevent it from continuing to "exercise all its powers." Defendants cite no evidence to the contrary, and we are aware of none.

The D.C. Circuit rejected Defendants' reasoning on a virtually identical set of facts, when it ruled that the SEC's enabling statute, by virtue of its silence on the quorum issue, allowed the agency to create its own quorum rule enabling action by two Commissioners. "If not otherwise constrained by statute, an agency sufficiently empowered by its enabling legislation may create its own quorum rule." *Falcon Trading Grp., Ltd. v. SEC*, 102 F.3d 579, 582 (D.C. Cir. 1996) (citing *La Peyre v. FTC*, 336 F.2d 117, 122 (5th Cir. 1966) (FTC's quorum rule was "within the Commission's power to make and is wholly valid.")).

Defendants' strained analysis of another case involving the SEC's quorum rule does not undercut the validity of the FTC's rule. In *SEC v. Feminella,* this Court examined the SEC's ability to decide a matter with two Commissioners when the other three seats were vacant. *Feminella*, 947 F. Supp. 722 (S.D.N.Y. 1996). As in *Falcon Trading*, this Court upheld the SEC's two-member quorum rule, although relying on a different section of the agency's enabling statute as authority for the rule. *Id.* at 726-27.[4]

Nor does the Supreme Court's 1967 decision in *FTC v. Flotill Products, Inc.* provide support for Defendants' argument. 389 U.S. 179 (1967). Precisely to the contrary, *Flotill*

---

[4] In upholding the two-member quorum rule, the *Feminella* court found that the SEC's authority stemmed from a provision of its enabling statute that allowed the SEC to delegate power to a single Commissioner, rather than a provision giving the agency power to issue regulations. *Feminella*, 947 F. Supp. at 726-27. Although the *Feminella* court questioned the SEC's "authority to establish [its] own internal procedures," *id*. at 726, that reasoning is hard to square with *Vermont Yankee*, and the concern is misplaced here given that the FTC Act empowers the FTC to adopt procedural rules.

5

confirms that the FTC has authority to promulgate its own quorum rule because the FTC Act is silent on quorum. *Id* at 182-83. Defendants incorrectly read *Flotill* to *require* that the FTC adopt the *specific* quorum rule in place at the time. In fact, it does no such thing. The Supreme Court upheld a three-member quorum rule that the FTC had promulgated in 1915, noting that "if any conclusion is to be drawn," it is that Congress must be content with the rule because it acquiesced for more than half a century. *Id.* at 189-90. By that same logic, the acquiescence of Congress to the 2005 amended quorum rule over a 14-year period, during which the FTC has had unfilled and sometimes protracted vacancies, should alone be dispositive of the rule's validity.

In addition, at least one circuit has recognized that where Congress explicitly directs an agency to continue its work despite vacancies, the agency's quorum policy must be construed to be consistent with that intent. In *Assure Competitive Transp., Inc. v. U.S.*, the Seventh Circuit reconciled quorum and vacancy provisions of the Interstate Commerce Act by interpreting the quorum provision as a majority of Commissioners actually in office, excluding vacancies. 629 F.2d 467, 473 (7th Cir. 1980). Like the FTC Act, the Interstate Commerce Act includes an express vacancy provision. 49 U.S.C. § 10301(3) ("A vacancy in the membership of the Commission does not impair the rights of the remaining members to exercise all of the power of the Commission."). The Court inferred from the vacancy provision that "Congress intended those Commissioners in office, *however many there are*, to be 'the Commission' for all purposes," and, accordingly, the phrase "a majority of the Commission" in the quorum provision, "*must mean a majority of those Commissioners in office*.'" *Assure,* 629 F.2d at 473 (emphasis added).

6

**III.     Common Law Does Not Provide Grounds for Striking the FTC's Quorum Rule**

Defendants' suggestion that this Court should strike the FTC's quorum rule as invalid on the grounds that it violates principles of common law also lacks merit.  Even if common law could override a specific legislative grant of authority, it would not do so here.  The FTC's quorum rule is consistent with the ordinary meaning of "quorum" and with common law interpretation of that term.

Defendants do not cite any common-law cases supporting their view that a quorum must consist of three Commissioners.[5]  By contrast, Black's Law Dictionary explains that a quorum may be legitimately calculated based on "the number of sitting members (excluding vacancies)." *Quorum*, BLACK'S LAW DICTIONARY 1446 (10th Ed. 2014).  The D.C. Circuit likewise explained that under the common law, an agency may "permit a quorum made up of a majority of those members of a body *in office* at the time." *Falcon Trading*, 102 F.3d at 582, n.2.  In addition, a long line of cases defines a quorum of a "public body" as a majority of its "actual members" unless a statute provides otherwise.  *See, e.g.*, *Lee v. Bd. of Ed. of City of Bristol*, 434 A.2d 333, 341 (Conn. 1980); *Bd. of Comm'rs of Town of Salem v. Wachovia Loan & Tr. Co.*, 55 S.E. 442, 444 (N.C. 1906); *Nalle v. City of Austin*, 93 S.W. 141, 145 (Tex. Civ. App. 1906); *State ex rel. Att'y Gen. v. Orr*, 56 N.E. 14, 14 (Ohio 1899).

---

[5] Defendants rely exclusively on *Flotill*, which described "[t]he almost universally accepted common-law rule" that "in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body."  389 U.S. at 183.  *Flotill*, however, did not address whether the "simple majority of a collective body" may be calculated based on the number of members *in office* or must also include vacant seats.

## IV.     The Court Should Disregard Defendants' Characterization of the Vote as Improperly Rushed

Defendants' suggestion that the Commission improperly rushed to vote out the Complaint is both baseless and legally irrelevant. Defendants do not even get the basic dates of events right. Chairwoman Ramirez did not resign the same week the Complaint was filed, as their brief asserts, but rather announced her intention to resign a month later, on February 10.[6] The exact date makes no difference anyway, since the Chairwoman voted before she resigned and her vote counts fully. *See Idaho v. ICC*, 939 F.2d 784, 788 (9th Cir. 1991). Defendants' argument that the vote here was "unprecedented" is likewise factually incorrect and of no legal relevance given that the vote was valid under the FTC's quorum rule.[7]

The FTC has an obligation to take action when necessary to protect consumers from deceptive or unfair practices. As already noted, Congress has made it clear that this obligation is not suspended by vacancies. 15 U.S.C. § 41. Defendant's suggestion that the agency's work should simply grind to a halt until all vacancies are filled would have major ramifications for consumers. This was not a matter of postponing one vote for a few days or weeks. From February 2017 until May 2018, the FTC had three vacancies and only two sitting members. In the absence of a quorum rule allowing the FTC to continue its work based on 2-0 votes, all efforts to protect consumers would have been on hold for nearly 15 months. The implications of

---

[6] FTC Press Release, "FTC Chairwoman Edith Ramirez Announces Resignation," (Jan. 13, 2017) (indicating plan to resign effective Feb. 10, 2017), attached to Defendants' Supplemental Memo, Doc. 63, Exhibit B.

[7] The FTC has acted with only two commissioners when the agency had more than two seated Commissioners on several occasions. *See, e.g.*, Defendants' own example, Supp. Memo. at 8, n.2, and FTC Press Release, "FTC Consent Order Remedies Likely Anticompetitive Effects of Procter & Gamble's Acquisition of Gillette," (Sep. 3, 2005), https://www.ftc.gov/news-events/press-releases/2005/09/ftc-consent-order-remedies-likely-anticompetitive-effects-procter.

such a long work stoppage are substantial.  In 2017, the FTC filed 50 consumer protection cases in federal court and returned money to more than three million consumers, with total monetary relief, in the form of redress, disgorgement, and civil penalties of $5.29 billion.[8]

### V. Because the FTC's Vote to File the Complaint was a Valid Agency Action, the Court Should Exercise Pendant Jurisdiction Over the State Law Claims

This Court has supplemental jurisdiction over the NYAG's claims pursuant to 28 U.S.C. § 1367.  Defendants have not challenged the exercise of supplemental jurisdiction except to the extent that the federal claims have been dismissed.  Because Defendants have advanced no valid grounds for dismissal of the FTC's claims, the Court should retain jurisdiction over the NYAG's claims as well.  Where, as here, the federal and state law claims "derive from a common nucleus of operative fact," it is "in the interest of justice and judicial economy" that the Court exercise pendent jurisdiction over the state law claims.  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1059 (2d Cir. 1993).

---

[8] *See* FTC, 2017 Annual Highlights: Stats & Data, https://www.ftc.gov/ reports/annual-highlights-2017/stats-and-data.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss the Complaint should be denied.

Respectfully Submitted,

Dated: July 1, 2019                    ALDEN F. ABBOTT
                                       General Counsel

                                       By:  /s/ Michelle Rusk
                                       MICHELLE RUSK
                                       ANNETTE SOBERATS
                                       Federal Trade Commission
                                       600 Pennsylvania Ave., NW
                                       Mail Drop CC-10528
                                       Washington, DC 20580
                                       Email: mrusk@ftc.gov
                                       Tel: (202) 326-3148; Fax: (202) 326-3259


                                       LETITIA JAMES
                                       Attorney General of the State of New York

                                       By:  /s/ Kate Matuschak
                                       JANE M. AZIA
                                       KATE MATUSCHAK
                                       STEPHEN MINDELL
                                       Consumer Frauds and Protection Bureau
                                       28 Liberty Street
                                       New York, NY 10005
                                       Email: kate.matuschak@ag.ny.gov
                                       Tel: (212) 416-6189; Fax: (212) 416-6003

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2019, I have caused service of the foregoing Plaintiffs' Response to Supplemental Memorandum of Law in Further Support of Corporate Defendants' Motion to Dismiss to be made by electronic filing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Dated:  July 1, 2019                     /s/ Michelle Rusk
       Washington, D.C.            Michelle Rusk