# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company;<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.; and<br><br>MICHAEL BEAMAN, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.<br><br>Defendants. | Case No. 1:17-cv-00124-LLS |

## PLAINTIFFS' RESPONSE TO SUPPLEMENTAL MEMORANUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS MARK UNDERWOOD AND MICHAL BEAMAN PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ....................................................................... 1

ARGUMENT ......................................................................................................... 3

    I.    THIS COURT HAS PERSONAL JURISDICTION
        OVER UNDERWOOD AND BEAMAN ............................................ 3

        A.  Section 13(b) of the FTC Act Provides a Statutory
            Basis for Nationwide Personal Jurisdiction ................................. 4

        B.  The Individual Defendants Have the Requisite
            Minimum Contacts with the United States ................................. 6

        C.  Jurisdiction in this Court Meets Constitutional Due
            Process Notions of Fairness and Reasonableness ....................... 8

        D.  Individual Defendants' Venue Objection is Separate
            and Distinct from Personal Jurisdiction, Lacks
            Merit, and Has Been Waived ...................................................... 9

        E.  New York Long-Arm Statute Provides a Secondary,
            Albeit Unnecessary, Basis for Jurisdiction ............................... 12

    II.   THE COMPLAINT STATES A CLAIM AGAINST
        DEFENDANTS UNDERWOOD AND BEAMAN
        FOR BOTH INJUNCTIVE AND MONETARY RELIEF .................. 15

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
 828 F. Supp. 2d 557 (E.D.N.Y. 2011) ................................................................. 15

*Adamou v. Cnty. Of Spotsylvania*,
 No. 1:12-cv-07789, 2016 U.S. Dist. LEXIS 32505 (S.D.N.Y. Mar. 14, 2016) ....................... 14

*Amy Travel Serv., Inc.*,
 875 F.2d 564 (7th Cir. 1989) ....................................................... 16, 17, 18

*Arma v. Buyseasons, Inc.*,
 591 F. Supp. 2d 637 (S.D.N.Y. 2008) ................................................. 15

*Asahi Metal Indus. Co. v. Supreme Court of Calif.*,
 480 U.S. 102 (1987) ................................................................... 9

*BNSF Ry. Co. v. Tyrrell*,
 137 S. Ct. 1549 (2017) ................................................................. 5

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ................................................................... 8

*Charles Schwab Corp. v. Bank of Am. Corp.*,
 883 F.3d 68 (2d Cir. 2018) ........................................................... 12

*Chloé v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010) ..................................................... 13, 15

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*,
 529 U.S. 193 (2000) ................................................................. 11

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) ................................................................. 8

*Daniel v. Am. Bd. of Emergency Med.*,
 428 F.3d. 408 (2d Cir. 2005) ..................................................... 10, 11

*DaPuzzo v. Reznick Fedder & Silverman*,
 788 N.Y.S.2d 69 (1st Dep't 2005) ................................................... 18

*Dynegy Midstream Servs., LP v. Trammochem*,
 451 F.3d 89 (2d Cir. 2006) ............................................................ 4

*FTC v. Alternatel, Inc.*,
 No. 08-cv-21433-AJ, 2008 WL 11333090 (S.D. Fla. Oct. 27, 2008) .................. 4, 9, 10, 12

*FTC v. Ams. for Fin. Reform*,
 No. 17-15552, 720 F. App'x 380 (9th Cir. 2017) ...................................... 5

*FTC v. Bay Area Bus. Council, Inc.*,
 No. 02-C-5762, 2003 WL 21003711 (N.D. Ill. May 1, 2003) ............................ 5

*FTC v. Cleverlink Trading Ltd.*,
  No. 05-C-2889, 2006 WL 1735276 (N.D. Ill. Jun. 9, 2005) .................................................. 5

*FTC v. Construct Data Publishers*,
  No. 13-cv-01999, 2014 WL 7004999 (N.D. Ill. Dec. 11, 2014) ............................................. 5

*FTC v. Consumer Def., LLC*,
  No. 18-15462, 2019 WL 2503204 (9th Cir. Jun. 17, 2019) ................................................. 5, 6

*FTC v. Consumer Health Benefits Assoc. II*,
  10-CIV-3551, 2012 WL 1890242 (E.D.N.Y May 23, 2012) .................................................. 18

*FTC v. Mallett*,
  818 F. Supp. 2d 142 (D.D.C. 2011) ...................................................................................... 5

*FTC v. Med. Billers Network, Inc.*,
  543 F. Supp. 2d 283 (S.D.N.Y. 2008) .............................................................................. 16, 18

*FTC v. Moses*,
  913 F.3d 297 (2d Cir. 2019) .............................................................................................. 16, 17

*FTC v. Navestad*,
  No. 09-cv-6329T, 2010 WL 743899 (W.D.N.Y. Feb. 25, 2010) ........................................... 5

*FTC v. Seismic Entm't Prods. Inc.*,
  No. 04-377-JD, 2005 WL 2319944 (D.N.H. Sept. 22, 2005) ................................................. 5

*FTC v. Tax Club, Inc.*,
  994 F. Supp. 2d 461 (S.D.N.Y. 2014) ................................................................................... 16

*Goldlawr, Inc. v. Heiman*,
  288 F.2d. 579 (2d Cir. 1961) ............................................................................................... 10

*Goodyear Dunlop Tires Operations v. Brown*,
  564 U.S. 915 (2011) .............................................................................................................. 8

*Gordon v. Invisible Children, Inc.*,
  No. 14-cv-4122, 2015 WL 5671919 (S.D.N.Y. Sept. 24, 2015) ........................................... 14

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) .................................................................................................. 6

*Hetchkop v. George Harms Excavating Corp.*,
  No. 92-Civ-2239-JFK, 1993 WL 88106 (S.D.N.Y. Mar. 26, 1993) ........................................ 7

*ICO Servs., Ltd. v. Coinme, Inc.*,
  No. 18-cv-4276, 2018 U.S. Dist. LEXIS 212081 (S.D.N.Y. Dec. 17, 2018) .......................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ................................... 7

*In re Oil Spill by Amoco Cadiz off Coast of Fr. on Mar. 16, 1978*,
  954 F.2d 1279 (7th Cir. 1992) .............................................................................................. 6

*In re Platinum & Palladium Antitrust Litig.*,
  2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ...................................................................... 10

iii

*In re Prevagen*,
   MDL No. 2783 (J.P.M.L. Mar. 30, 2017)................................................................. 5, 9

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)....................................................................................................... 8

*Karabu Corp. v. Gitner*,
   16 F. Supp. 2d 319 (S.D.N.Y. 1998) .......................................................................... 14

*Kitto v. Thrash Oil & Gas. Co.*,
   No. CIV-88-169E, 1990 WL 33217 (W.D.N.Y. Mar. 20, 1990).......................... 6, 11

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ....................................................................................... 15

*Kreutter v. McFadden Oil Corp.*,
   71 N.Y.2d 460 (1988).......................................................................................... 12, 13

*Leykin v. AT&T Corp.*,
   423 F. Supp. 2d 229 (S.D.N.Y. 2006) ........................................................................ 15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012) ........................................................................................... 3

*Mareno v. Rowe*,
   910 F.2d 1043 (2d Cir. 1990) ..................................................................................... 12

*Mariash v. Morrill*,
   496 F. 2d 1138 (2d Cir. 1974) ........................................................................ 5, 6, 7, 10

*Max Daetwyler Corp. v. R. Meyer*,
   762 F.2d 290 (3d Cir. 1985) ......................................................................................... 6

*Merritt v. Airbus Ams., Inc.*,
   202 F. Supp. 3d 294 (E.D.N.Y. 2016) ........................................................................ 15

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
   308 U.S. 165 (1939)............................................................................................... 10, 11

*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370 (2014) ........................................................................................... 13, 15

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) ..................................................................................... 12

*People v. Allied Mktg. Grp., Inc.*,
   624 N.Y.S.2d 816 (1st Dep't 1995)............................................................................ 13

*People v. Apple Health & Sports Clubs*,
   80 N.Y.2d 803 (1992) ................................................................................................. 19

*People v. Court Reporting Inst.*,
   666 N.Y.S.2d 730 (2d Dep't 1997)............................................................................. 19

*People v. Empyre Inground Pools, Inc.*,
   642 N.Y.S.2d 344 (3d Dep't 1996)............................................................................. 19

*People v. Trump Entrepreneur Initiative LLC*,
No. 451463/13(CSK), 2014 N.Y. Misc. LEXIS 464 (Sup. Ct. N.Y. Co. Jan. 30, 2014) ......... 18

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F. 3d 935 (11th Cir. 1997) ................................................................................................ 9

*Rescuecom Corp. v. Google, Inc.*,
562 F.3d 123 (2d. Cir. 2009) .................................................................................................. 15

*Retail Software Servs., Inc. v. Lashlee*,
854 F.2d 18 (2d Cir. 1988) ..................................................................................................... 13

*SEC v. Montle*,
No. 02-6115, 65 Fed. Appx. 749 (2d Cir. 2003).................................................................... 6

*SEC v. Morton*,
No. 10-cv-1720-LAK, 2011 WL 1344259 (S.D.N.Y. Mar. 31, 2011) .............................. 3, 8, 9

*SEC v. Straub*,
921 F. Supp. 2d 244 (S.D.N.Y. 2013) ..................................................................................... 7

*Shostack v. Diller*,
No. 15-cv-2255, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016).................................................. 14

*Strauss v. Crédit Lyonnaise, S.A.*,
175 F. Supp. 3d 3 (S.D.N.Y. 2016) .......................................................................................... 3

*Sullivan v. Barclays PLC*,
No. 13-CV-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)............................................... 10

*Walden v. Fiore*,
134 S. Ct. 1115 (2014).......................................................................................................... 8, 14

*Wilder v. News Corp.*,
No. 11-cv-4947, 2015 WL 5853762 (S.D.N.Y. Oct. 7, 2015)................................................ 14

**Statutes**

15 U.S.C. § 22......................................................................................................................... 11

15 U.S.C. § 53(b) ............................................................................................................ 1, 4, 11

**Rules**

Fed. R. Civ. P. 12(b)(2)......................................................................................................... 3, 11

Fed. R. Civ. P. 12(b)(3).............................................................................................................. 11

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 3

Fed. R. Civ. P. 12(h).................................................................................................................. 11

Fed. R. Civ. P. 4(k)(1)(C) .......................................................................................................... 4

N.Y. C.P.L.R. 302(a)(1)........................................................................................................ 12, 15

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the People of the State of New York by New York State Attorney General Letitia James ("NYAG") (collectively "Plaintiffs") respectfully oppose the Motion to Dismiss by the Defendants Mark Underwood ("Underwood") and Michael Beaman ("Beaman") (collectively "Defendants"). Plaintiffs' factual and legal bases for opposing this motion are set out in our original April 25, 2017 brief on this matter.  Dkt. 39.  The Defendants Underwood and Beaman have presented no new arguments in their supplemental brief to warrant dismissal of the Complaint against either Underwood or Beaman.[1]

## INTRODUCTION AND SUMMARY

As we set out in our original Opposition, and as Defendants have themselves directly admitted in another forum, Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), confers nationwide personal jurisdiction over all Defendants, including Underwood and Beaman.  The language of the statute is clear on this point.  Multiple federal courts, including the Second Circuit and the Supreme Court, have recognized that Section 13(b) confers nationwide jurisdiction.  This Court has personal jurisdiction over the Defendants as long as two conditions are satisfied: 1) the Defendants had minimum contacts with the *United States*; and 2) the exercise of personal jurisdiction in this Court comports with traditional notions of fairness and reasonableness under the Due Process clause of the Fifth Amendment.  Both conditions are easily met here.  Moreover, by virtue of the FTC's personal jurisdiction, New York has pendent jurisdiction over Beaman

---

[1] Plaintiffs have responded separately to the arguments raised in the Corporate Defendants' Supplemental Memorandum (Dkt. 63) seeking to dismiss this case on the ground that the Commission lacked a quorum to vote out the Complaint.  Plaintiffs' response to the Corporate Defendants' Supplemental Memorandum is incorporated herein by reference.

and Underwood.  There is no need to reach an analysis of New York's long-arm statute, although the facts here support that secondary basis for jurisdiction.

Defendants' argument that the FTC must first satisfy a venue requirement is both incorrect and untimely.  Venue and personal jurisdiction are two distinct and separate concepts, and the suggestion that venue is a threshold limitation on the broad personal jurisdiction conferred by Section 13(b) is simply wrong.  In any event, not only did the Defendants waive their objection to venue by failing to raise it in a timely manner, they even acknowledged in a separate forum that the Southern District of New York was an ideal venue for them.

The argument that the Complaint fails to set out adequate facts in support of individual liability is also unfounded.  Under well-established case law governing violations of the FTC Act, individuals who actively participated in, or had authority to control, deceptive practices are personally liable for injunctive relief.  If the individuals also had knowledge of the deceptive practices, were recklessly indifferent to the deception, or were aware of a high probability of deception and intentionally avoided the truth, they are also liable for monetary relief.  Under New York's consumer protection laws, individuals are liable for illegal or fraudulent acts if they personally participated in the conduct *or* had actual knowledge of it.

The Complaint sets out several facts demonstrating that Underwood and Beaman, by virtue of their ownership, corporate offices, and job responsibilities, had authority to control the challenged conduct.  Those facts alone are sufficient to name them as defendants for purposes of injunctive relief.  The Complaint goes on to set out additional facts showing Underwood's and Beaman's active participation in the deceptive conduct.  Underwood and Beaman were directly involved in national ads and other marketing in which they claimed Prevagen could improve memory.  They were also involved in the very research that failed to show any benefit of

2

Prevagen over placebo.  Their roles in both the deceptive advertising claims and the research contradicting those claims are more than sufficient to create a plausible inference of knowledge. At the very least, it is clear that Underwood and Beaman were recklessly indifferent to the truth. Defendants' position that the Complaint must state specific facts showing "actual knowledge" has been rejected by multiple courts and was directly refuted in a recent Second Circuit decision. Plaintiffs have pled sufficient facts to make a prima facie case that Underwood and Beaman are individually liable for both injunctive relief and monetary relief.

Accordingly, the Defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be denied.

## ARGUMENT

## I. THIS COURT HAS PERSONAL JURISDICTION OVER UNDERWOOD AND BEAMAN

There are three required elements to demonstrate that this Court has personal jurisdiction over Defendants Underwood and Beaman:  1) proper service or waiver of service; 2) a statutory basis for jurisdiction, and; 3) adherence to principles of constitutional due process.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012); *Strauss v. Crédit Lyonnaise, S.A.*, 175 F. Supp. 3d 3, 16 (S.D.N.Y. 2016).  Construing the Complaint in the light most favorable to Plaintiffs and resolving any doubt in Plaintiffs' favor, as required at the Complaint stage, there can be no doubt that Plaintiffs have demonstrated jurisdiction.  *See SEC v. Morton*, No. 10-cv-1720-LAK, 2011 WL 1344259, at *11 (S.D.N.Y. Mar. 31, 2011).  In fact, Defendants Underwood and Beaman appear to concede each of these three elements, basing their challenge instead on inapplicable case law involving a different and more narrow federal statute,

an irrelevant and untimely dispute over venue, and a misapplication of the New York long-arm statute.

### A.  Section 13(b) of the FTC Act Provides a Statutory Basis for Nationwide Personal Jurisdiction

Defendants' Supplemental Memorandum, like their initial Motion to Dismiss, attempts to direct attention away from the actual basis for personal jurisdiction in this case – the FTC Act – focusing instead on a lengthy but irrelevant analysis of New York state case law, New York's long-arm statute, and whether Underwood and Beaman have sufficient contacts with the state of New York.  They gloss over the fact that there is no need to reach New York law as a separate basis for jurisdiction.  The only relevant question in this case is whether the FTC Act gives this Court jurisdiction, and the answer is unequivocally yes.  *See*, *e.g.*, *FTC v. Alternatel, Inc.*, No. 08-cv-21433-AJ, 2008 WL 11333090, at *1 (S.D. Fla. Oct. 27, 2008) (finding Florida long-arm statute inapplicable in federal action where Section 13(b) of FTC Act authorizes nationwide service and provides basis for personal jurisdiction).  Because personal jurisdiction over Underwood and Beaman is authorized by federal statute here, this Court also has pendent personal jurisdiction over the state law claims.

Serving a summons or waiving service establishes personal jurisdiction over a defendant when authorized by a federal statute.  Fed. R. Civ. P. 4(k)(1)(C).  Defendants do not dispute that service was proper here and even waived service in this proceeding.  Section 13(b) of the FTC Act is purposefully broad, allowing the FTC to serve process "on any person, partnership, or corporation *wherever it may be found*."  15 U.S.C. § 53(b) (emphasis added).  Such broad statutory language, authorizing nationwide service, confers nationwide personal jurisdiction. *Dynegy Midstream Servs., LP v. Trammochem*, 451 F.3d 89, 95-96 (2d Cir. 2006) ("when Congress intends to permit nationwide personal jurisdiction it uses language permitting service

4

'wherever the defendant may be found'"); *accord Mariash v. Morrill*, 496 F. 2d 1138, 1142 (2d

Cir. 1974); *see also FTC v. Ams. for Fin. Reform*, No. 17-15552, 720 F. App'x 380, 383 (9th Cir.

2017).  In fact, courts have specifically recognized that Section 13(b) of the FTC Act confers

personal jurisdiction following proper service.  *FTC v. Consumer Def., LLC*, No. 18-15462, 2019

WL 2503204, at *1 (9th Cir. Jun. 17, 2019); *FTC v. Navestad*, No. 09-cv-6329T, 2010 WL

743899, at *1 (W.D.N.Y. Feb. 25, 2010).[2]  The Supreme Court has also cited to Section 13(b) as

an example of Congress conveying nationwide personal jurisdiction.  *See BNSF Ry. Co. v.

Tyrrell*, 137 S. Ct. 1549, 1555-56 (2017).[3]

Even Defendants have conceded the broad scope of Section 13(b).  Just one week before

asserting in this Court that Underwood and Beaman are not subject to personal jurisdiction in

New York, Defendants told the Judicial Panel on Multidistrict Litigation (MDL Panel) that "[t]he

FTC has nationwide jurisdiction and could have filed its action anywhere."  *In re Prevagen*,

MDL No. 2783 (J.P.M.L. Mar. 30, 2017), Mot. to Transfer, Dkt. 1, Doc. 1-1 at 10.  In the MDL

matter, Defendants were seeking to transfer private class actions to the Southern District of New

York to be consolidated with this case for discovery.  Ironically, they argued to the MDL Panel

that this Court was a convenient venue for them to conduct discovery.  *Id.* at 9.

---

[2] *See also FTC v. Construct Data Publishers*, No. 13-cv-01999, 2014 WL 7004999, at *3 (N.D. Ill. Dec. 11, 2014); *FTC v. Mallett*, 818 F. Supp. 2d 142, 147 (D.D.C. 2011); *FTC v. Cleverlink Trading Ltd.*, No. 05-C-2889, 2006 WL 1735276, at *3-4 (N.D. Ill. Jun. 9, 2005); *FTC v. Seismic Entm't Prods. Inc.*, No. 04-377-JD, 2005 WL 2319944, at *1 (D.N.H. Sept. 22, 2005); *FTC v. Bay Area Bus. Council, Inc.*, No. 02-C-5762, 2003 WL 21003711, at *2 (N.D. Ill. May 1, 2003).

[3] In its *BNSF Railway* decision, the Court specifically singled out Section 13(b) of the FTC Act as an example of Congress' grant of personal jurisdiction through nationwide service of process, distinguishing it from the Federal Employers' Liability Act statute before the Court in that matter, and noting, "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process."  137 S. Ct. at 1555-56.

**B. The Individual Defendants Have the Requisite Minimum Contacts with the United States**

Where, as in this case, a federal statute allows nationwide service as a basis for personal jurisdiction, the only limit on the Court's exercise of jurisdiction is the Due Process Clause of the Fifth Amendment. *See*, *e.g.*, *Mariash*, 496 F.2d at 1143. To satisfy due process, defendants must have "minimum contacts" with the United States as a whole, and exercise of personal jurisdiction must otherwise be fair and reasonable. *SEC v. Montle*, No. 02-6115, 65 Fed. Appx. 749, 752 (2d Cir. 2003). The courts have been clear on the national approach to the "minimum contacts" standard specifically in the context of cases brought under Section 13(b) of the FTC Act and with respect to other similarly broad federal statutes. *Consumer Def., LLC*, 2019 WL 2503204, at *1 (national contacts analysis appropriate where FTC Act authorizes nationwide service of process); *see also Mariash*, 496 F.2d at 1143; *Kitto v. Thrash Oil & Gas Co.*, No. CIV-88-169E, 1990 WL 33217, at *1 (W.D.N.Y. Mar. 20, 1990) (minimum contacts with the United States as a whole, rather than New York specifically, sufficient to establish personal jurisdiction in New York over Texas residents in case brought under Securities Exchange Act and RICO).

Any suggestion that Plaintiffs must show minimum contacts with New York is contrary to settled case law in this district.[4] The Southern District of New York has repeatedly applied a

---

[4] Defendants argue that the Second Circuit has "not yet decided" whether to adopt the national contacts approach, citing to *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142, n.21 (2d Cir. 2014). They neglect to mention that the very same opinion acknowledges the reasoning behind the national contacts approach and the fact that "[s]everal of our sister circuits have endorsed the position . . . ." *Id.* (citing *In re Oil Spill by Amoco Cadiz off Coast of Fr. on Mar. 16, 1978*, 954 F.2d 1279, 1294 (7th Cir. 1992); *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293-97 (3d Cir. 1985)). The mere fact that the Second Circuit has not yet had occasion to affirm the many decisions in this district applying the national contacts standard is hardly a persuasive reason to depart from that approach.

national contacts approach, noting in one recent opinion that, "we are persuaded by the weight of authority that the national contacts approach is both sound and consistent with this Circuit's law." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015); *see also SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) ("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process…the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state."); *Hetchkop v. George Harms Excavating Corp.*, No. 92-Civ-2239-JFK, 1993 WL 88106, at *2 (S.D.N.Y. Mar. 26, 1993) (citing *Mariash*, 496 F.2d at 1143).

It is undisputed that Defendants Underwood and Beaman both reside in the United States. That alone would be sufficient to establish the requisite minimum contacts for personal jurisdiction under Section 13(b) of the FTC Act. In addition, Underwood and Beaman directly controlled the operations of the Corporate Defendants – all U.S. companies. They also oversaw a national marketing campaign with ads disseminated in various media throughout the United States, including in New York. Compl. ¶¶22-26. The Court does not need to reach the question of whether Underwood and Beaman had sufficient contacts with New York, although for all the reasons discussed *infra* at Section I.E, their contacts with the state were significant.

Despite their undisputed contacts with the United States, Defendants suggest that this Court is bound by a purported "recent trend" in Supreme Court cases to narrow the scope of personal jurisdiction. Those cases are all easily distinguishable and do not affect this Court's personal jurisdiction over Defendants pursuant to Section 13(b) of the FTC Act. None of the decisions cited by Defendants involved a federal statute with a nationwide service of process

provision.[5]  Instead, each decision concerned either the jurisdiction of a state court over foreign defendants for state law claims (*Goodyear Dunlop*; *J. McIntyre Mach.*), or the jurisdiction of a court over claims based on activity that occurred entirely out-of-state (*Goodyear Dunlop*; *Daimler*; *Walden*).  The central issue in each of those cases was minimum contacts with the specific forum.  To the extent the Supreme Court has adopted any new restrictions on what constitutes sufficient contacts with a state, they have no bearing here, where the relevant test is Defendants' contacts with the United States as a whole.

### C.  Jurisdiction in this Court Meets Constitutional Due Process Notions of Fairness and Reasonableness

The only remaining question the Court need consider is whether bringing this action in New York comports with Fifth Amendment due process principles of fairness and reasonableness.  The burden is on Defendants Underwood and Beaman to show that litigating in this Court would be "so gravely difficult and inconvenient that [they would be] at a severe disadvantage in comparison" to Plaintiffs.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  "As a general matter, such unfairness will rarely be found. . . ."  *Morton*, 2011 WL 1344259, at *12 (citing *Asahi Metal Indus. Co. v. Supreme Court of Calif.*, 480 U.S. 102, 116

---

[5]    *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915 (2011), involved a North Carolina state court's jurisdiction over the foreign subsidiary of an out-of-state U.S. company in a wrongful death action resulting from an accident in France.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), involved a New Jersey state court's jurisdiction over a foreign company in a product liability action.  *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), involved a federal district court's jurisdiction in a suit by Argentinian plaintiffs against a German defendant, filed under the Alien Tort Statute and the Torture Victim Protection Act, for activities that occurred exclusively in Argentina.  *Walden v. Fiore*, 134 S. Ct. 1115 (2014), was a Bivens action filed in a federal district court in Nevada against a Georgia police officer for actions that occurred entirely in Georgia.

(1987)).  Defendants have proffered no evidence to meet that burden and even told the MDL

Panel that the Southern District of New York would be a convenient forum.

Defendants cannot have it both ways.  Their assertion now that it would be unduly

burdensome for Underwood, who resides in Wisconsin, or Beaman, who resides in Texas, to

litigate in New York is not compelling.[6]  *See Alternatel*, 2008 WL 11333090, at \*2 (rejecting the

argument that litigation in Florida would be so inconvenient for defendants based in New Jersey

and Massachusetts as to violate their due process rights).  As one court stated, "a defendant's

contacts with the forum play no magical role in the Fifth Amendment analysis . . . . There is

nothing inherently burdensome about crossing a state line." *Republic of Panama v. BCCI*

*Holdings (Luxembourg) S.A.*, 119 F. 3d 935, 946 (11th Cir. 1997).  Indeed, this Court found it

reasonable to name a California couple as individual defendants in New York because they had

engaged in national sales efforts, occasionally traveled to New York for non-business purposes,

and would not be required to spend much, if any, time in New York in the case.  *Morton*, 2011

WL 1344259 at \*13.  Similarly, this Court should conclude that exercise of jurisdiction over

Underwood and Beaman is fair and reasonable.

### D.  Individual Defendants' Venue Objection is Separate and Distinct from Personal Jurisdiction, Lacks Merit, and Has Been Waived

Defendants improperly conflate the concepts of venue and personal jurisdiction, arguing

that there is no personal jurisdiction because the FTC did not first establish venue.  Venue and

personal jurisdiction, however, are two distinct and separate concepts.  Personal jurisdiction

---

[6] Defendants have been inconsistent in their statements about where Beaman resides, at times
stating that he is located in Wisconsin, and at times stating that he is located in Heath, Texas.  *In
re Prevagen*, MDL No. 2783 (J.P.M.L. Mar. 30, 2017), Mot. to Transfer, Dkt. 1, Doc. 1-1 at 5.
If Beaman resides in Texas, there is no one forum where all Defendants are located, and it is not
clear why Wisconsin would be a more convenient forum for Beaman than New York.

relates to this Court's power to hear this case, whereas venue relates to the convenience of this forum.  *See*, *e.g.*, *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) ("[t]his basic difference between the court's power and the litigant's convenience is historic in the federal courts"); *Alternatel*, 2008 WL 11333090, at *2.  The Second Circuit's analysis in *Mariash* addressed venue and personal jurisdiction separately with no suggestion that the two were in any way interdependent.  496 F.2d at 1143-45.  The assertion that venue is a threshold requirement of the broad nationwide personal jurisdiction conferred by Section 13(b) is incorrect.  *See Alternatel*, 2008 WL 11333090, at *2-3.

Defendants continue to cite cases brought under an entirely different and narrower statute in an effort to bolster their case that the Commission must first establish venue before it can exercise personal jurisdiction.  They cite no authority supporting their improper reading of Section 13(b) of the FTC Act, because there is no such authority.  Instead, they rely exclusively on cases brought under Section 12 of the Clayton Act and conveniently ignore the fact that the two statutes are fundamentally different in their scope.  Supplemental Memo at 16 (citing *Goldlawr, Inc. v. Heiman*, 288 F.2d. 579 (2d Cir. 1961); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d. 408 (2d Cir. 2005); *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017); and *Sullivan v. Barclays PLC*, No. 13-CV-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)).  All of these cases are inapposite because they do not concern the distinctly different language of Section 13(b) of the FTC Act.

Unlike Section 13(b)'s broad language authorizing nationwide service, Section 12 of the Clayton Act explicitly limits service to matters meeting specific venue restrictions.  *Compare* 15

U.S.C. § 53(b) *with* 15 U.S.C. § 22.[7]  The distinction is an important one.  In fact, the Second

Circuit's reversal of the lower court in *Daniel* called out the very same error that Defendants

make when they rely on cases brought under the narrower provisions of a different law.  The

Court specifically warned that analysis of service and venue provisions "must be specific to the

statute" because different statutes are more permissive or more restrictive by design.  *Daniel*, 428

F.3d at 426 (citing *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 204

(2000)).  In *Daniel,* the Court found the broader service provisions of the Securities Exchange

Act and RICO to be irrelevant to its analysis of the narrow, venue-restricted provisions of

Section 12.  *Id.*  Likewise, this Court should not apply the restrictive language of Section 12 of

the Clayton Act to limit the broad jurisdiction afforded under Section 13(b) of the FTC Act.

Instead, the Court should be guided by the case law that has specifically found Section 13(b)

confers nationwide jurisdiction, without regard to venue.  *See supra* at pp. 4-5.

Defendants may be struggling to link the two distinct concepts of jurisdiction and venue

because they failed to assert any objection to venue in a timely manner and have thus waived the

objection.  Fed. R. Civ. P. 12(h).  The federal rules provide separate defenses for the two issues:

Fed. R. Civ. P. 12(b)(2) (lack of jurisdiction over the person) and 12(b)(3) (improper venue).

Defendants' objection to personal jurisdiction does not preserve an objection to venue.

*Bethlehem Shipbuilding Corp.*, 308 U.S. at 168 (noting that venue is a privilege that may be

waived if not timely asserted, even if all parties are non-residents of the district where the suit is

brought); *see also Kitto,* 1990 WL 33217, at *2 (venue defense waived as untimely where

---

[7] The scope of Section 12 is expressly limited to "such cases" as meet the venue provision of
Section 12, whereas Section 13(b) is not limited to "such cases" but instead applies "to any suit
under this section."  This difference in wording belies Defendants' arguments that the service of
process provisions are analogous.

defendants objected only to personal jurisdiction); *Alternatel*, 2008 WL 11333090, at *2.  Even if the Court were to consider the untimely defense, venue is proper because Underwood and Beaman have transacted business in the district by directing and controlling the marketing and sale of Prevagen here.  Moreover, Defendants' past assertion to the MDL Panel that this Court is a convenient forum for them suggests that their later change of heart on venue is disingenuous.

### E.  New York Long-Arm Statute Provides a Secondary, Albeit Unnecessary, Basis for Jurisdiction

Because Section 13(b) of the FTC Act provides a basis for personal jurisdiction in this Court, New York has pendent personal jurisdiction for state-law claims deriving from the "common nucleus of operative facts."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018).  It is unnecessary to reach the question of whether the New York long-arm statute also provides a basis for jurisdiction.  *See, e.g.*, *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (a federal court applies the forum state's long-arm statute only "if the federal statute does not specifically provide for national service") (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).

Nonetheless, even if the FTC Act did not provide for nationwide service of process, New York's long arm statute would allow this Court to adjudicate all the Complaint's claims against Underwood and Beaman.  That statute confers personal jurisdiction "over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. 302(a)(1).  And as the New York Court of Appeals held in *Kreutter v. McFadden Oil Corp.*, an individual is subject to personal jurisdiction in New York under N.Y. C.P.L.R. 302(a)(1) if a corporation transacts business here on his behalf.  71 N.Y.2d 460, 467 (1988).

To establish personal jurisdiction under such a theory, a complaint must plead only that the corporation "engaged in purposeful activities in this State in relation to" the activities underlying the lawsuit "for the benefit of and with the knowledge and consent of the . . . defendants and that they exercised some control over [the corporation] in the matter." *Id.*; *accord People v. Allied Mktg. Grp., Inc.*, 624 N.Y.S.2d 816, 816 (1st Dep't 1995).  For example, the Second Circuit, relying on *Kreutter*, held that a plaintiff adequately alleged personal jurisdiction over nonresident corporate officers who made misrepresentations in California about a transaction that their corporation carried out in New York.  *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 20, 22 (2d Cir. 1988); *see also Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010) (relying on *Kreutter* to impute corporation's in-state activities to corporation's principal, who "shared in the decision-making and execution" of the transaction at issue).  Under that corporate-agency theory of jurisdiction, the complaint sufficiently pleads that Underwood and Beaman are subject to personal jurisdiction in New York.

In support of their argument, Defendants rehash the inapposite case law cited in their original briefing on this subject.  Supp. Mem. at 7-8.  Defendants do not, however, address Plaintiffs' point that this case law is distinct in that it involved the question of whether a corporate defendant could be subject to personal jurisdiction – not whether an individual officer or principal of a corporate defendant could be subject to jurisdiction.  *See* Pls.' Opp. at 15 (Dkt. 39).

Defendants also cite *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014), for the unremarkable proposition that an individual's contacts with the state must be "on his own initiative" in order to subject him to personal jurisdiction.  Supp. Mem. at 7.  But Defendants do not explain how this purported standard is at odds with the allegations in the Complaint, which

plausibly allege that Quincy, controlled by Underwood and Beaman, engaged in a nationwide marketing campaign, including "short-form television advertisements [that] have aired nationally on broadcast and cable networks," and that Quincy transacted business in New York by selling Prevagen here.  Compl. ¶¶ 9-12, 24.  The Complaint also alleges that both Underwood and Beaman, in their official capacities, reviewed Quincy's advertisements, and that Underwood had the final say over the advertisements that Quincy ran.  *Id.* ¶¶ 13-14.  Underwood also personally touted Prevagen's supposed benefits in a nationally distributed guide and a nationally broadcast infomercial.  *Id.* ¶ 14.[8]

The Complaint's granular allegations about Underwood's and Beaman's roles in marketing Prevagen distinguish this case from those in which the plaintiffs' allegations were merely conclusory.  *See, e.g.*, *ICO Servs., Ltd. v. Coinme, Inc.*, No. 18-cv-4276, 2018 U.S. Dist. LEXIS 212081, at *11-12 (S.D.N.Y. Dec. 17, 2018) (plaintiff alleged legal violations but no facts to support what those violations were); *Adamou v. Cnty. Of Spotsylvania*, No. 1:12-cv-07789, 2016 U.S. Dist. LEXIS 32505, at *28 (S.D.N.Y. Mar. 14, 2016) (same); *Shostack v. Diller*, No. 15-cv-2255, 2016 WL 958687, at *3 (S.D.N.Y. Mar. 8, 2016) ("conclusory allegations" bereft of "any facts"); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) (same).  The Complaint's allegations that Prevagen was marketed through a national print-and-broadcast campaign designed to boost sales on the internet and in major retailers and to sell Prevagen through Quincy's interactive website (Compl. ¶¶ 21–26) also distinguish this case from

---

[8] Underwood's and Beaman's marketing efforts, through their agent Quincy, also place this case in stark contrast to the cases they cite (Supp. Mem. at 10-11) in which parties other than the defendants created a relationship with the forum state.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014); *Wilder v. News Corp.*, No. 11-cv-4947, 2015 WL 5853762, at *13 (S.D.N.Y. Oct. 7, 2015); *Gordon v. Invisible Children, Inc.*, No. 14-cv-4122, 2015 WL 5671919, at *8 (S.D.N.Y. Sept. 24, 2015).

those in which an individual defendant was the primary actor only in out-of-state transactions or maintained a merely passive website. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647-48 (S.D.N.Y. 2008); *Merritt v. Airbus Ams., Inc.*, 202 F. Supp. 3d 294, 299 (E.D.N.Y. 2016); *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569 (E.D.N.Y. 2011); *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377-78 (2014); *cf. Chloé*, 616 F.3d at 170 (personal jurisdiction proper because defendant corporation "operated a highly interactive website offering [products] for sale to New York consumers").

Although unnecessary in light of the nationwide personal jurisdiction that exists over the claims in this case, it is clear that the exercise of personal jurisdiction over Defendants would meet the standards of N.Y. C.P.L.R. 302(a)(1).

## II.    THE COMPLAINT STATES A CLAIM AGAINST DEFENDANTS UNDERWOOD AND BEAMAN FOR BOTH INJUNCTIVE AND MONETARY RELIEF

The Complaint lays out ample facts to justify seeking both injunctive and monetary relief against Underwood and Beaman under both FTC law and New York law.  When reviewing Defendants' Motion to Dismiss, the "court must 'accept as true all of the factual allegations set out in plaintiff[s'] complaint, draw inferences from those allegations in the light most favorable to plaintiff[s], and construe the complaint liberally.'" *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d. Cir. 2009).  "In deciding a motion to dismiss, the court may consider exhibits to the complaint, documents incorporated in the complaint by reference, and matters of which judicial notice may be taken. . . ." *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 237 (S.D.N.Y. 2006) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991)).  The Complaint's factual allegations and its exhibits more than satisfy the liberal pleading

requirements of the Federal Rules of Civil Procedure and support Underwood's and Beaman's individual liability.

Applying FTC law, Underwood and Beaman are individually liable for both monetary and injunctive relief "if, with knowledge of the deceptive nature of the scheme, [they] either 'participate[d] directly in the [deceptive] practices or acts or ha[d] authority to control them.' *FTC v. Moses*, 913 F.3d 297, 307 (2d Cir. 2019) (citing *Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989)). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Moses*, 913 F.3d at 307 (quoting *Amy Travel Serv.*, 875 F.2d at 573); *see also*, *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014) (citing *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008)). The Complaint states that Underwood is Quincy's co-founder, largest shareholder, and serves as Quincy's President and board member. Compl. ¶ 13. It also states that Beaman is Quincy's co-founder, former President, current Chief Executive Officer, the Chair of the Board of Directors, and the second largest shareholder. Compl. ¶ 15. These facts alone are sufficient to show that Defendants had authority to control the deceptive practices and are thus individually liable under FTC law for injunctive relief. *See*, *e.g.*, *Moses*, 913 F.3d at 307-08 (corporate officer had the requisite authority to control the deceptive practices where the officer "was a founder of . . . the Corporate Defendants, held a 50 percent ownership stake in them, had signatory authority over their bank accounts, and served as their co-director and general manager.").

Although unnecessary for purposes of FTC law, the Complaint goes beyond establishing the requisite authority to control, with additional facts showing that Underwood and Beaman directly participated in the deceptive conduct. Underwood directed research programs and

activities and even co-authored the primary study on Prevagen. Compl. ¶ 14. He also was a member of the marketing creative team, served as the final decision maker on advertising claims, coordinated advertising claim review with counsel, and translated scientific data into marketing language. *Id.* Underwood even starred in Quincy's infomercials and authored the "Brain Health Guide," a lengthy consumer pamphlet describing how Prevagen purportedly works. Compl. ¶¶ 14, 23, Ex. D. Like Underwood, Defendant Beaman also directly participated in both the deceptive advertising and the underlying research. The Complaint states that Beaman reviewed Prevagen advertising, including the ads at issue in this case. Compl. ¶ 16. He gave media interviews about the product's benefits, signed research agreements, and pre-approved research proposals. *Id.* Finally, according to Underwood's statements in the Brain Health Guide, it was Underwood and Beaman who together developed the idea to create Prevagen. Compl. Ex. D (37).

The Complaint also lays out sufficient facts under FTC law to meet the knowledge prong of individual liability necessary for monetary relief. Contrary to Defendants' assertion, the FTC standard for monetary relief is not "actual knowledge" of the deceptive conduct. *Moses,* 913 F.3d at 307. Proof of actual knowledge is not even required *at trial*, let alone at the complaint stage. The FTC need only plead facts sufficient to draw an inference of knowledge. As the Second Circuit noted, "[i]mposing a more rigid knowledge requirement would be inconsistent with the policies behind the FTC A[ct] and place too great a burden on the FTC." *Id.* In fact, the *Moses* court found that the "degree of participation in business affairs" is relevant to, and can become "dispositive" of, knowledge. *Id.* at 309 (citing *Amy Travel Serv.*, 875 F.2d at 574).

Alternatively, the FTC can meet its burden by showing that the individuals were recklessly indifferent to the deception, or were aware of a high probability of deception and

intentionally avoided the truth.  *Med. Billers Network*, 543 F. Supp. 2d at 320.[9]  For example, in

*FTC v. Consumer Health Benefits*, the complaint alleged that the individual defendants each sat

on the board of directors and were involved in other company activities, such as design of a

medical plan and review of sales scripts and marketing materials.  *FTC v. Consumer Health*

*Benefits Assoc. II*, 10-CIV-3551, 2012 WL 1890242, at *8 (E.D.N.Y May 23, 2012).  The court

deemed those facts sufficient to show "at least a 'reckless indifference to the truth or falsity of

[the] misrepresentations' at issue in the case."  *Id.* (citing *Amy Travel Serv.*, 875 F.2d at 574).

     The Complaint in this case alleges more than sufficient facts about Underwood and

Beaman's direct participation in the companies' business affairs to create such a dispositive

inference of knowledge or, at the very least, demonstrate their reckless indifference to the truth.

It describes how their corporate duties put them in a position to learn that Quincy's ads were

misleading.  Since Underwood and Beaman reviewed and approved research and, in the case of

Underwood, authored the primary study, both would have known that the research failed to show

any statistically significant benefit of Prevagen over placebo.  Those research results directly

contradict the dramatic promises of improved memory in advertising and marketing materials

created and approved by Beaman and Underwood.  Compl. ¶ 28.  Moreover, given their

involvement in the research, both would have been aware of company studies showing that the

jellyfish protein found in Prevagen does not cross the human blood brain barrier but instead is

rapidly digested in the stomach like any other dietary protein.  Compl. ¶ 31.

     For individual liability to attach under New York law, the Complaint must allege that the

individual personally participated in the illegal or fraudulent acts *or* had actual knowledge of

---

[9] The same is true under New York Law.  *DaPuzzo v. Reznick Fedder & Silverman*, 788
N.Y.S.2d 69, 69 (1st Dep't 2005); *People v. Trump Entrepreneur Initiative LLC*, No.
451463/13(CSK), 2014 N.Y. Misc. LEXIS 464, at *8 (Sup. Ct. N.Y. Co. Jan. 30, 2014).

them.  *See People v. Apple Health & Sports Clubs*, 80 N.Y.2d 803, 807 (1992); *People v. Court Reporting Inst.*, 666 N.Y.S.2d 730, 730 (2d Dep't 1997); *People v. Empyre Inground Pools, Inc.*, 642 N.Y.S.2d 344, 344 (3d Dep't 1996).  Although the elements of individual liability are slightly different under New York law, they are clearly satisfied by the factual allegations discussed above that set out the personal participation of Beaman and Underwood in both the advertising for Prevagen and the underlying research that failed to show the product's efficacy.

Accepting all of the Complaint's factual allegations as true and drawing all inferences from those allegations in the light most favorable to plaintiffs, Underwood and Beaman were key officers who controlled corporate policy and directly participated in both the research and challenged deceptive advertising.  The Court can easily infer from the facts set out in the Complaint that they knew the ads were deceptive.  The Complaint thus provides more than sufficient basis to name Underwood and Beaman individually for injunctive relief and monetary relief under both the FTC and New York standard.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons advanced in Plaintiffs' original

brief (Dkt. 39), Defendants' motion to dismiss the Complaint should be denied.

Respectfully Submitted,

Dated: July 2, 2019                    ALDEN F. ABBOTT
                                       General Counsel

                                       By: /s/ Michelle Rusk
                                       MICHELLE RUSK
                                       ANNETTE SOBERATS
                                       Federal Trade Commission
                                       600 Pennsylvania Ave., NW
                                       Mail Drop CC-10528
                                       Washington, DC 20580
                                       Email: mrusk@ftc.gov
                                       Tel: (202) 326-3148; Fax: (202) 326-3259


                                       LETITIA JAMES
                                       Attorney General of the State of New York

                                       By: /s/ Kate Matuschak
                                       JANE M. AZIA
                                       KATE MATUSCHAK
                                       STEPHEN MINDELL
                                       Consumer Frauds and Protection Bureau
                                       28 Liberty Street
                                       New York, NY 10005
                                       Email: kate.matuschak@ag.ny.gov
                                       Tel: (212) 416-6189; Fax: (212) 416-6003

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2019, I have caused service of the foregoing

Plaintiffs' Response to Supplemental Memorandum of Law in Support of Motion to Dismiss by

Defendants Mark Underwood and Michael Beaman to be made by electronic filing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

counsel of record.


Dated:  July 2, 2019                                          /s/ Michelle Rusk
       Washington, D.C.                               Michelle Rusk

21