**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

(212) 808-7800

WASHINGTON, DC
CHICAGO, IL
HOUSTON, TX
LOS ANGELES, CA
SAN DIEGO, CA
PARSIPPANY, NJ
STAMFORD, CT
BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE
(212) 808-7897

www.kelleydrye.com

GEOFFREY W. CASTELLO
DIRECT LINE: (973) 503-5922
EMAIL: gcastello@kelleydrye.com

June 15, 2020

**VIA ECF**

Hon. Louis L. Stanton, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *FTC, et al. v. Quincy Bioscience Holding Co., Inc., et al.*
               Case No. 1:17-cv-00124-LLS

Your Honor:

      Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively "Quincy") respectfully request, pursuant to Local Rule 37.2, a pre-motion discovery conference with regard to Plaintiffs' noticed deposition of Michael Beaman. Quincy intends to seek a protective order to prevent (or significantly limit) Plaintiffs' ability to take Mr. Beaman's deposition. As Your Honor knows, Mr. Beaman is the co-founder and current CEO of Quincy. Mr. Beaman, however, has practically no relationship to the issues involved in this case—indeed, this Court recognized as much when it *twice* dismissed Mr. Beaman as a defendant, most recently for Plaintiffs' failure to state a claim against him in his individual capacity (ECF Nos. 45, 72). Undeterred, Plaintiffs made clear during a meet and confer on discovery issues that their primary reason for deposing Mr. Beaman is to try to find a way to bring him back into the case as a defendant. Quincy believes that this is entirely improper—particularly in light of the fact that the FTC has been investigating Quincy and its executives for more than six years.

      To be clear, Quincy did not immediately refuse to make Mr. Beaman available for a deposition. Instead, Quincy made clear that Mr. Beaman has extremely limited knowledge about the underlying facts and issues in this case and requested that Plaintiffs take the depositions of other employees first in order to obtain the information they seek. And if, after those depositions, they had limited questions for Mr. Beaman, Quincy offered to make him available for a limited

**KELLEY DRYE & WARREN LLP**

Hon. Louis L. Stanton, U.S.D.J.
June 15, 2020
Page Two

time and purpose. Plaintiffs rejected that approach—explicitly stating that they were looking for ways to add Mr. Beaman back into the case as a defendant. They have now noticed Mr. Beaman's deposition. Quincy seeks a protective order to prevent the harassing deposition.

Plaintiffs' additional "justifications" for deposing Mr. Beaman involve a common refrain: i.e., he is a high-level executive of Quincy, so that entitles Plaintiffs to depose him. But Plaintiffs ignore case law from this Circuit that makes clear that a deponent's position in a company—standing alone—*does not provide the justification for a deposition*. Indeed, "[c]ourts have recognized an additional layer of protection for senior corporate executives subject to depositions." *Hallmark Licensing, LLC v. Dickens, Inc.*, 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018). This "apex" doctrine limits depositions of high level executives, like Mr. Beaman, who offer no personal, unique information to the case, in recognition that the Federal Rules of Civil Procedure prohibit discovery that is "unreasonably cumulative or is obtainable from a "more convenient, less burdensome, or less expensive" source." *Id*. To this end, in assessing the propriety of a deposition of a high-level executive, courts in this Circuit consider the following factors: "the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business." *Id.*

These factors militate against allowing Plaintiffs to depose Mr. Beaman. The primary issues in this case involve the marketing, sale, and advertising of Prevagen, as well as the scientific substantiation for marketing statements about Prevagen. Mr. Beaman's role at Quincy, however, does not encompass any of these areas; and—as Mr. Beaman will make clear in an affidavit assuming the Court lets this motion proceed—he has no personal knowledge regarding these issues. He is neither a scientist nor a marketer. And to the extent Plaintiffs are interested in financial information, an area in which Mr. Beaman is admittedly well versed, they have not articulated a single question or subject area that Mr. Beaman would be in a unique position to answer. Indeed, Plaintiffs probably have all of the financial information they will ever need in documents produced during this litigation and in the long FTC investigation that preceded this case. Even if they could articulate additional information that they would like to discover, which they have not, Plaintiffs have the perfect opportunity to do so by deposing lower-level employees, who are likely better situated to provide them with the information they seek. Plaintiffs, for their part, have made clear that they intend to depose other employees at Quincy and to explore financial information during the FRCP 30(b)(6) deposition that has already been noticed. So, for these issues, Mr. Beaman does not have *unique knowledge*.

Plaintiffs have further argued that Mr. Beaman's deposition is appropriate because he attended meetings with the FTC and the FDA. This is also insufficient to mandate his deposition. Mr. Beaman is the CEO of Quincy and, therefore, his attendance at high-level meetings is expected. That the CEO of a company attended meetings with government regulators of existential importance to the company is simply good business, and nothing more. It does not suggest that

**KELLEY DRYE & WARREN LLP**

Hon. Louis L. Stanton, U.S.D.J.
June 15, 2020
Page Three

everyone at the meeting had the same role or knowledge.  Critically, Mr. Beaman did not attend these meetings alone.  Mark Underwood, who also attended, can amply testify regarding those meetings both in his individual capacity and as a 30(b)(6) witness.  Mr. Beaman's attendance at these meetings therefore does little to support any argument that he possesses *personal* and *unique* knowledge of the issues in this case.

It is clear that Plaintiffs' pursuit of Mr. Beaman is simply to harass him.  Plaintiffs have acknowledged as much—they admit that they are seeking Mr. Beaman's deposition to gather more evidence in an attempt to add him back as a defendant in this case.  This admission is critical, as it exposes the only—and improper—motivation for pursuing a deposition of a high-level executive with no personal knowledge relevant to this case.  Fundamentally lacking is the "good cause [that] inheres in the apex doctrine." *Myun-Uk Choi v. Tower Research Capital LLC*, 2019 WL 6271324, at *3 (S.D.N.Y. Nov. 25, 2019).

Plaintiffs' attempts to exploit the deposition tool to harass Mr. Beaman should not be permitted. If, after all these years, Plaintiffs are not yet in a position to supplement their sparse allegations of wrongdoing against Mr. Beaman individually (which this Court found wholly inadequate), they are certainly not entitled to use the mechanism of a deposition to do so.  Allowing Plaintiffs to proceed with this plan would be precisely the harassment that the apex doctrine aims to "thwart[]." *Myun-Uk Choi*, 2019 WL 6271324; *see also Hallmark Licensing*, 2018 WL 6573435, at *5 (denying motion to compel deposition of executive, even where her testimony was relevant to claims at issue, where movant could not demonstrate the executive had unique knowledge, especially where subordinates with similar knowledge were going to be deposed and some of the information sought would be addressed at a 30(b)(6) deposition); *Consolidated Rail Corp. v. Primary Indus. Corp.*, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (granting motion for protective order until parties could establish unique knowledge of high-level executives, including through deposition testimony of other employees, and noting that unless the "highly-placed executive" has some unique knowledge, "it may be appropriate to preclude a redundant deposition" of executive).

For these reasons, Quincy respectfully requests that the Court order a pre-motion conference (under Local Rule 37.2) and ultimately allow it to seek a protective order preventing Plaintiffs from taking Mr. Beaman's deposition.

                          Respectfully submitted,

                          /s/ *Geoffrey W. Castello*

                          Geoffrey W. Castello