# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

(212) 808-7800

WASHINGTON, DC
CHICAGO, IL
HOUSTON, TX
LOS ANGELES, CA
SAN DIEGO, CA
PARSIPPANY, NJ
STAMFORD, CT
BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

GEOFFREY W. CASTELLO
DIRECT LINE:(973) 503-5922
EMAIL:gcastello@kelleydrye.com

August 26, 2020

**VIA ECF**
Hon. Louis L. Stanton, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *FTC, et al. v. Quincy Bioscience Holding Co., Inc., et al.*
                <u>Case No. 1:17-cv-00124-LLS</u>

Dear Judge Stanton:

      We represent Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. and Quincy Bioscience Manufacturing, LLC ("Quincy") in the above-referenced action. We respond to Plaintiffs' Letter dated August 14, 2020 requesting a pre-motion conference for their anticipated Motion to Compel Deposition Answers.  Plaintiffs' request and anticipated motion should be denied on the grounds that Plaintiffs are attempting to invade Quincy's relationship with its counsel and discover Quincy's litigation strategy through the disclosure of work product performed by a consulting, non-testifying expert.  Moreover, one of the issues raised by Plaintiffs' Letter has already been fully briefed in connection with Plaintiffs' Motion to Compel directed to Georgetown Economic Services ("GES"), another consulting, non-testifying expert retained by Quincy's counsel, which was originally filed in the District of Columbia and subsequently transferred to this Court.  For the reasons set forth in Quincy's opposition to that motion (*see* Ex. A hereto), and the additional reasons set forth herein, Quincy respectfully requests that Your Honor deny the requested pre-motion conference.

      The first category of information Plaintiffs seek relates to scientific research on Prevagen® or one of its ingredients, apoaequorin, after the Madison Memory Study was complete.  In discovery, Quincy produced all non-privileged research as part of its 183,736-page document production in this action.  Quincy also described this research in written interrogatory responses and provided individual and Rule 30(b)(6) deposition testimony on this topic from the company's president (Mark Underwood) and head of research (Kenneth Lerner).  When Plaintiffs asked Messers. Lerner and Underwood about *additional* research, Quincy's counsel cautioned against disclosure of privileged information and attorney or consulting expert work product.

**KELLEY DRYE & WARREN LLP**

Hon. Louis L. Stanton, U.S.D.J.
August 26, 2020
Page Two

  These deposition questions are aimed at the core of Quincy's relationship with its counsel and litigation strategy in this action. Rule 26(b)(4)(D) specifically provides that, "[o]rdinarily, a party **may not**, by interrogatories **or deposition**, discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." (emphasis added). *See Williams v. Bridgeport Music, Inc.,* 300 F.R.D. 120, 122 (S.D.N.Y. 2014).

  Quincy's assertion of work product falls squarely within Rule 26(b)(4)(D). On July 27, 2015, the FTC issued a civil investigative demand regarding Quincy's advertising practices relating to Prevagen. (Ex. B, Talati Decl. ¶ 3.) Amin Talati LLP, a law firm, represented Quincy in connection with this investigation and, by February 2016, it had become clear that litigation with the FTC was highly likely, if not inevitable. (*Id.* ¶ 4, 6.) At that time, Amin Talati retained a consulting expert on Quincy's behalf for the purpose of advising counsel with regard to the theories being advanced by the FTC. (*Id.* ¶ 4.) Amin Talati would not have retained this consulting expert absent the real and imminent threat of litigation, and all parties involved have treated the consulting expert's work as protected work product. (*Id.* ¶ 5-6.) Quincy has no intention of calling this consulting expert to testify at trial. Thus, the consulting expert's work product does not consist of "facts learned from counsel," as Plaintiffs suggest, but rather protected work product specifically developed in anticipation of this litigation.

  Consulting expert work product is only discoverable on a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). This rule is intended to allow parties "to use experts to properly evaluate their case without fear that it may 'yield grist for the adversary's mill.'" *800 Front Street Corp. v. Travelers Prop. Cas. Co. of Am.*, No. CV 06-500 (LDW)(ARL), 2006 WL 3370350, at *2 (E.D.N.Y. Nov. 20, 2006). Impracticality exists where the object or condition observed by the non-testifying expert is no longer observable, or where it is possible to replicate the work product but the cost would be prohibitive. *See Bank Brussells Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44 (S.D.N.Y. 1997). Plaintiffs have not established – and cannot establish – either of these circumstances and, in fact, most of their cases are inapposite and involve attorney (as opposed to consulting expert) work product, which is subject to a lower standard of "substantial need." *See Subramanian v. Lupin Inc.*, 17-CV-5040 (RA) (KHP), 2020 WL 4707268, at *3 (S.D.N.Y. Aug. 13, 2020).

  Plaintiffs' argument that the requested materials "would relate directly to the core issue in this case" is simply not enough. No party would spend the time and money to engage a consulting expert with respect to irrelevant areas of inquiry, and Plaintiffs' position would therefore read the "exceptional circumstances" standard right out of Rule 26.

  Nor do Plaintiffs argue that the object of the consulting expert's work product is no longer observable. Prevagen is currently available for Plaintiffs' experts to examine and study in whatever manner they desire—and Plaintiffs have been examining, investigating, and litigating about Prevagen *for more than five years*.

**KELLEY DRYE & WARREN LLP**

Hon. Louis L. Stanton, U.S.D.J.
August 26, 2020
Page Three

      Plaintiffs—legal arms of the federal government and the State of New York—astonishingly attempt to raise a "lack of resources" argument to force disclosure. But their argument is woefully insufficient even under their own authority. In *Bank Brussells* (the only exceptional circumstances case cited), the court compelled the disclosure of a consulting expert's work product where the consultant had spent over 10,000 hours investigating a company's financial records and where the court had reason to believe that some of those documents may have been unavailable or altered, making replication of the consultant's work difficult if not impossible. 175 F.R.D. at 44-45. Thus, the court's finding of impracticability was based on both the unavailability of relevant records as well as the prohibitive cost to replicate 10,000 hours of work. Moreover, while the consulting expert objected to the discovery, the parties that had actually retained the expert did not.

      The facts here are starkly different. While Plaintiffs claim they do not have time to conduct their own study, the FTC has been investigating and/or litigating against Quincy for more than five years. Plaintiffs also claim that such a study would be "prohibitively expensive" when, in fact, they have been collaborating with a number of plaintiffs' attorneys and other state agencies with whom they could have pooled their resources. And while Plaintiffs do not estimate the cost of such a study, Amin Talati's consulting expert did not spend anywhere near 10,000 hours on this matter. Plaintiffs also ignore that Quincy has already provided substantial discovery regarding the Madison Memory Study and other scientific substantiation for the challenged advertising claims, which is all that Plaintiffs need to "assess[] Prevagen's efficacy." Finally, Quincy opposes the requested discovery, where the retaining party in *Bank Brussells* did not. Quincy submits that it would be irreparably prejudiced if Plaintiffs were given access to Quincy and its counsel's litigation strategy and related work product. *See Subramanian*, 2020 WL 4707268, at *3 (denying motion to compel consulting expert's work product where the defendant had produced extensive discovery and the movant was "afforded the opportunity to engage experts . . . to opine on same.").

      The second issue raised by Plaintiffs' Letter relates to the work product of another consulting expert, GES, and has already been fully briefed on Plaintiffs' Motion to Compel Enforcement of a Subpoena. In opposition to that motion, GES and Quincy demonstrated that the requested documents were covered by the attorney client privilege and the attorney and consulting expert work product protections, that Plaintiffs had failed to demonstrate "exceptional circumstances" to overcome these protections, and that there had been no waiver of any asserted privileges. (Ex. A.) These same arguments apply to the deposition questions posed to Messrs. Lerner and Underwood, and Quincy herein incorporates all arguments made in that opposition.

      For these reasons, Quincy respectfully requests that Plaintiffs' request for a pre-motion conference be denied or that the parties be permitted to submit full briefing on these issues.

      Respectfully submitted,

      /s/ *Geoffrey W. Castello*

      Geoffrey W. Castello