# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES,<br>Attorney General of the State of New York,<br><br>        Plaintiffs,<br><br>        v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.;<br><br>        Defendants. | Misc. No.:  1:20-mc-00023-EGS<br><br>[S.D.N.Y. Case No. 1:17-cv-00124-LLS] |

## OPPOSITION TO MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 45

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND ......................................................................... 5

LEGAL STANDARD ................................................................................... 9

ARGUMENT ................................................................................................ 9

I.      THE REQUESTED DOCUMENTS ARE PROTECTED FROM
DISCOVERY UNDER RULE 26(b)(4)(D) BECAUSE GES IS A NON-
TESTIFYING EXPERT ................................................................................10

        A.     The FTC Has Failed to Demonstrate the Required "Exceptional
Circumstances" to Overcome the Consulting Expert Protection .................11

        B.     Neither GES Nor the Quincy Defendants Have Waived The
Consulting Expert Protection .....................................................14

II.     THE REQUESTED DOCUMENTS ARE PROTECTED FROM
DISCOVERY BY THE ATTORNEY-CLIENT PRIVILEGE AND THE
ATTORNEY WORK PRODUCT DOCTRINE ....................................................18

        A.     The Work that GES Performed for the Quincy Defendants is Subject
to the Attorney-Client Privilege and Attorney Work Product
Protection ..............................................................18

        B.     There Has Been No Waiver of the Attorney-Client Privilege or the
Attorney Work Product Protection ..............................................19

III.    DOCUMENTS RELATING TO "OTHER HUMAN CLINICAL
STUDIES" ARE FAR OUTSIDE THE SCOPE OF THE ALLEGED
"SUBJECT MATTER WAIVER" ...................................................................25

IV.   THE SUBPOENA IMPOSES AN UNDUE BURDEN ON GES.........................29

V.    THE MOTION SHOULD BE TRANSFERRED TO THE SOUTHERN
DISTRICT OF NEW YORK ...................................................................32

CONCLUSION ............................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Digital Island, Inc.*,
    2002 WL 1285126 (N.D. Cal. May 30, 2002) ........................................................23

*In re Application of Int'l Mineral Res. B.V.*,
    2015 WL 4555248 (D.D.C. July 28, 2015)........................................................10, 14

*Atari Corp. v. Sega of Am.*,
    161 F.R.D. 417 (N.D. Cal. 1994).........................................................17, 18, 22, 23

*Bowles v. Nat'l Ass'n of Home Builders*,
    224 F.R.D. 246 (D.D.C. 2004).............................................................20, 21,25 27

*In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*,
    860 F.2d 844 (8th Cir. 1988) .................................................................21, 22, 23

*Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*,
    103 F.R.D. 52 (D.D.C. 1984)..............................................................20, 23, 24

*City of Capitola v. Lexington Ins. Co.*,
    2013 WL 1087491 (N.D. Cal. Mar. 13, 2013).......................................................27

*Educ. Fin. Council v. Oberg*,
    2010 WL 3719921 (D.D.C. Mar. 8, 2010)...........................................................29

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*,
    296 F.R.D. 3 (D.D.C. 2013)............................................................... *passim*

*F.T.C. v. GlaxoSmithKline*,
    294 F.3d 141 (D.C. Cir. 2002) .....................................................................19

*F.T.C. v. TRW, Inc.*,
    628 F.2d 207 (D.C. Cir. 1980) .....................................................................19

*Genesco, Inc. v. Visa U.S.A., Inc.*,
    302 F.R.D. 168 (M.D. Tenn. 2014) .................................................................29

*Goldstein v. F.D.I.C.*,
    494 B.R. 82 (D.D.C. 2013) .........................................................................19

*Hughes v. Abell*,
    2012 WL 13054819 (D.D.C. Mar. 7, 2012).........................................................21

*In re Intel Corp. Microprocessor Antitrust Litig.,*
2008 WL 11233766 (D. Del. Mar. 6, 2008) ................................................26, 27

*In re Kellogg Brown & Root, Inc.,*
756 F.3d 754 (D.C. Cir. 2014) .................................................................20

*Lowery v. Circuit City Stores, Inc.,*
158 F.3d 742 (4th Cir. 1998) ..................................................................13

*Ludwig v. Piklington North America, Inc.,*
2004 WL 22242224 (N.D. Ill. Sept. 29, 2003) ..........................................29

*Marine Petroleum Co. v. Champlin Petroleum Co.,*
641 F.2d 984 (D.C. Cir. 1979) .............................................................11, 13

*In re Martin Marietta Corp.,*
856 F.2d 619 (4th Cir. 1988) ..........................................................20, 23, 24

*In re Micron Tech., Inc. Sec. Litig.,*
264 F.R.D. 7 (D.D.C. 2010)................................................................9, 29

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC,*
286 F.R.D. 8 (D.D.C. 2012)................................................................9, 29

*In re Morning Song Bird Food Litig.,*
2015 WL 12791470 (S.D. Cal. Jan. 23, 2015)...........................................17

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans
Affairs,*
257 F.R.D. 12 (D.D.C. 2009)................................................................30

*Navajo Nation v. Peabody Holding Co.,*
255 F.R.D. 37 (D.D.C. 2009)..................................................20, 21, 25, 27

*In re Sealed Case,*
676 F.2d 793 (D.C. Cir. 1982) .................................................................20

*Trustees of Elec. Workers Local No. 26 Pension Tr. Fund v. Tr. Fund Advisors,
Inc.,*
266 F.R.D. 1 (D.D.C. 2010)................................................................20

*US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.,*
274 F.R.D. 28 (D.D.C. 2011)...............................................................25, 26

*Watts v. S.E.C.,*
482 F.3d 501 (D.C. Cir. 2007) .................................................................9

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*,
   288 F.R.D. 222 (D.D.C. 2012) ........................................................................10

*Williams v. Bridge*,
   300 F.R.D. 120 (S.D.N.Y. 2014) ....................................................................29

*Worley v. Avanquest N. Am. Inc.*,
   2013 WL 6576732 (N.D. Cal. Dec. 13, 2013) ................................................17

\*Yeda Research & Dev. Co. v. Abbott GmbH & Co. KG*,
   292 F.R.D. 97 (D.D.C. 2013) ..........................................................10, 11, 18, 19

*Zeiger v. WellPet LLC*,
   2018 WL 10151156 (N.D. Cal. Apr. 10, 2018) ..............................................17

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................... *passim*

Fed. R. Civ. P. 45 ..................................................................................1, 9, 29

Federal Rule of Evidence 408 ..............................................................................14

Federal Rule of Evidence 502 ................................................................20, 21, 27

Georgetown Economic Services, LLC ("GES") submits this memorandum in opposition to Plaintiff The Federal Trade Commission's ("FTC") Motion to Compel Production of Documents Pursuant to Fed. R. Civ. P. 45 (the "Motion").[1] GES respectfully submits that the Motion be denied in its entirety or, in the alternative, be transferred to the United States District Court for the Southern District of New York where the underlying litigation is pending.

## PRELIMINARY STATEMENT

Through its motion, the FTC improperly seeks to invade the very core of the Quincy Defendants' litigation strategy and eviscerate the protection of three separate privileges. The FTC has been investigating (and then litigating against) the Quincy Defendants for five years. I that time, it has received a mountain of documents and information and other discovery through civil investigative demands and civil discovery, and is now seeking documents from GES, a data analytics firm specifically retained by the Quincy Defendants to act as a **consulting, non-testifying expert** to facilitate the provision of legal advice and strategy in connection with the FTC's civil investigation (including settlement discussions) and subsequent false advertising litigation in the Southern District of New York.

The FTC's Motion feigns a need for GES's documents "to determine the accuracy of the results" of the Madison Memory Study (Mot. at 2), the principal clinical study substantiating the

---

[1]     The FTC has listed Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, and Quincy Bioscience Manufacturing, LLC (collectively "Quincy Defendants") on the caption of its Motion. The Quincy Defendants are the defendants in the action pending in the Southern District of New York captioned *Federal Trade Commission, et al. v. Quincy Bioscience Holding Company, Inc.*, *et al.*, No. 1:17-cv-00124-LLS (S.D.N.Y.) (the "S.D.N.Y. Action"). GES is not a party to that action. While the FTC's Motion is directed to GES, it states that, "for purposes of this motion [the FTC] is treating the objections as if they had been made by Defendants." (Mot. at 2 n.2.) Thus, the objections and arguments asserted in this opposition should similarly be treated as if they are asserted by both GES and the Quincy Defendants.

advertising claims being challenged in the underlying litigation.  But that is simply wrong.  The FTC already has everything it needs—and more—to attempt to make whatever arguments it intends to make at trial.  The Quincy Defendants have already produced: (1) the Quincy Defendants' initial report of the Madison Memory Study; (2) thousands of documents relating to the study's design, protocol, recruitment, and performance; (3) documents regarding Quincy's own analysis of the data; (4) **all of the underlying Madison Memory Study data provided to GES**; (5) non-privileged documents in the Quincy Defendants' possession that reflect GES's analyses confirming Quincy's original findings of statistically significant improvements for certain cognitive tasks in the Madison Memory Study; and (6) Quincy's subsequent non-privileged manuscript of the Madison Memory Study data reflecting GES's analyses.

Thus, the FTC's army of in-house economists and data scientists already have everything they need to conduct—and probably have already conducted—the same tests and analyses that GES conducted on the underlying data.  Instead of doing that (or perhaps dissatisfied with the results), the agency has now launched an invasive and improper fishing expedition, seeking to obtain a substantial volume of documents that are either duplicative of what the Quincy Defendants have already produced or—more critically—protected by the consulting expert protection under Fed. R. Civ. P. 26(b)(4)(D), the attorney-client privilege, and/or the attorney work product production.

There is no question that the documents that the FTC seeks are protected by all three privileges, and the FTC has failed to show any exceptional circumstances that would warrant such an unprecedented intrusion on the attorney-client relationship.  The FTC's argument for waiver boils down to this:  Quincy and its lawyers have used GES's work product in trying to defeat the FTC's claims ... therefore … waiver.  But that simply cannot be the case.  Parties must be able to

use the work product that their consultants produce; indeed, that is the whole point of having consultants work on litigation-related matters. The FTC's approach would eviscerate the protections afforded under Fed. R. Civ. P. 26(b)(4)(D), the attorney-client privilege, and the work product doctrine.

Moreover, the FTC is arguing for a waiver that extends beyond GES's work on the Madison Memory Study to *all* work GES performed for the Quincy Defendants, regardless of whether or not such work relates to the Madison Memory Study or formed the basis of the alleged waiver. No legal authority supports the broad waiver argument the FTC is making.

Specifically, the FTC has failed to cite a single case from this District that applies a broad "subject matter waiver" to the work product of a consulting, non-testifying expert. In fact, the FTC fails to disclose that this District has held that the trend among federal courts is that the consulting expert protection is **not** subject to such a broad waiver. Moreover, even the cases from other districts that find a subject matter waiver do so under very different circumstances and construe "subject matter" much more narrowly than the FTC suggests. In those cases, the waiver is typically limited to the documents actually disclosed. In this case, Quincy is not asserting privilege over the documents that the FTC claims resulted in a waiver. The FTC, however, is seeking a much broader set of documents, including all of GES's opinion work product that was not disclosed, privileged communications (including with outside counsel), and/or work product and communications completely unrelated to the Madison Memory Study. The FTC's over-reaching position would upend the structure of the Federal Rules of Civil Procedure entirely, and would permit the FTC to obtain more discovery from the Quincy Defendants' **consulting** experts than they would be able to obtain from its **testifying** experts.

The FTC's arguments regarding the attorney-client privilege and the attorney work product doctrine are similarly mistaken. The FTC relies on cases where the disclosure of **privileged** documents resulted in a waiver of **other privileged** material relating to the same subject matter. In contrast, here, the FTC is relying on the Quincy's Defendants' disclosure of **non-privileged** material to effect a waiver of purportedly related **privileged** material. No waiver is appropriate under these circumstances. The FTC's cases are also inapposite because they (i) are from other jurisdictions, (ii) were decided before a critical rule change limiting the scope of such a waiver, (iii) did not find a subject matter waiver at all, or (iv) find a waiver that is much more narrow than the one being sought by the FTC.

Finally, compliance with the Subpoena would impose an undue burden on GES. The FTC can obtain (and failed to inform the Court that it has already obtained) all of the non-privileged information it seeks relating to the Madison Memory Study from the Quincy Defendants. In addition to the disclosed, non-privileged documents reflecting GES's analyses and all of the raw data relating to those analyses, the Quincy Defendants agreed to review over 73,000 documents that were potentially relevant to the Madison Memory Study as part of its document review in the S.D.N.Y. Action. Because the FTC already has access to all of the documents and data it needs to challenge the Madison Memory Study, this Court should not compel GES, a non-party, to conduct a burdensome review that would only result in the production of documents that have already been produced by the Quincy Defendants.

The FTC's motion should be denied in its entirety. And if the FTC believes that it is entitled to additional information from the Quincy Defendants, it should go to the trial court that has been handling this matter for more than three years in the Southern District of New York and seek them from the Quincy Defendants.

## FACTUAL BACKGROUND

The FTC's Motion seeks to enforce a third party subpoena issued by the FTC to GES in a litigation captioned *Federal Trade Commission, et al. v. Quincy Bioscience Holding Company, Inc., et al.*, Case No. 1:17-cv-00124-LLS, currently pending in the Southern District of New York. In the S.D.N.Y. Action, the FTC and the New York Attorney General ("NYAG") challenge certain advertising practices related to the brain health supplement Prevagen®.  (Compl. ¶¶ 36-41.) Among the challenged advertising statements is the claim that Prevagen has been "clinically shown to improve memory."  (Compl. ¶ 27.)  This claim is largely (although not entirely) based on the findings of a double-blind, placebo-controlled study known as the Madison Memory Study, conducted from approximately December 2009 through April 2011 by Kenneth C. Lerner, an employee of Quincy Bioscience Holding Company, Inc. ("Quincy"). (Villafranco Decl. ¶ 5.)[2]  The Madison Memory Study's results were published online in 2011, presented at a conference in 2011, and published in the peer-reviewed journal *Advances in Mind-Body Science* in 2016.

Prior to filing the S.D.N.Y. Action, the FTC commenced an investigation of Prevagen's advertising claims, including through the use of a civil investigative demand, pursuant to which Quincy produced over 500,000 pages of material.  (Villafranco Decl. ¶ 4.)  As part of that investigation, the FTC raised questions regarding the Madison Memory Study.  (*Id.* ¶ 6.)

In 2016, counsel for the Quincy Defendants hired GES, a third-party data analytics firm, as a non-testifying, consulting expert to advise and assist the Quincy Defendants and their counsel in formulating responses to the FTC's questions.  (Villafranco Decl. ¶ 7.)  The Quincy Defendants' counsel specifically hired GES in anticipation of potential litigation, and in order to facilitate

---

[2]  References to "Villafranco Decl." are to the declaration of John Villafranco, dated May 11, 2020 and submitted herewith.  References to the "Graham Decl." are to the declaration of Glenn T. Graham, dated May 11, 2020 and submitted herewith.

settlement discussions with the FTC.  (*Id*. ¶ 7.)  The Quincy Defendant's counsel requested that GES conduct its own independent analysis of the data collected during the Madison Memory Study.  (*Id*. ¶ 8.)  GES had no involvement with the design or conduct of the Madison Memory Study itself.  (*Id*. ¶ 8.)   GES's analysis confirmed the Quincy Defendants' original finding that Madison Memory Study participants with mild memory impairment due to aging showed statistically significant improvements in certain cognitive tasks when taking Prevagen's active ingredient when compared with individuals who took a placebo.  (*Id*. ¶ 8.)

As part of their efforts to resolve the FTC's civil investigation, the Quincy Defendants' counsel provided the FTC with the results of GES's analysis in a letter dated April 22, 2016 ("April 22 Letter").  (Villafranco Decl. ¶ 9.)  The Quincy Defendants' counsel **also provided to the FTC the entire underlying dataset** used by GES to conduct the analysis.  (*Id.* ¶ 9.)  The April 22 Letter contained, *inter alia*, the following disclaimer, restricting the use of its contents to the furtherance of the FTC's investigation:

> This letter and the information contained herein are exempt from a Freedom of Information Act request, pursuant to Section 21(f) of the Federal Trade Commission Act, 15 U.S.C. § 57b-2(f), and will  maintained strictly in accordance with the custodial obligations set forth in Section 21(b), 15 U.S.C. § 57b-2(b), and the U.S. SAFE WEB Act. To the extent that the FTC shares any information relating to this submission with a foreign law enforcement agency under the limited circumstances permitted by the U.S. SAFE WEB Act of 2006, we request prior written notice of at least 10 business days and expect that the FTC will comply strictly with all applicable procedures to ensure confidentiality and usage for law enforcement purposes only. In all other circumstances, we do not grant the Commission permission to disclose any information relating to this submission to any third party for any purpose. We request that the FTC return all documents at the conclusion of this investigation.

(Villafranco Decl. ¶ 9.)

In 2016, Mr. Lerner—a Quincy Bioscience Holding Company, Inc. employee—considered GES's non-privileged reanalysis in drafting a manuscript regarding the results of the Madison Memory Study (the "Lerner Manuscript").  The Quincy Defendants' counsel provided

the Lerner Manuscript to the FTC as an exhibit to a letter dated October 17, 2016 ("October 17 Letter"). (Villafranco Decl. ¶ 11.)  The October 17 Letter was part of the Quincy Defendants' counsel's continued efforts to resolve the FTC's investigation, and contained a disclaimer restricting the use of the information provided therewith that was substantively identical to the disclaimer included in the April 22 Letter.  (*Id*. ¶ 11.)  Quincy also posted the Lerner Manuscript on its website.  (*Id*. ¶ 12.)

Despite the Madison Memory Study's findings and GES's confirmation of statistically significant results supporting Defendants' advertising, the FTC chose to file the S.D.N.Y. Action on January 9, 2017.  (Graham Decl. ¶ 4.)  Throughout the litigation of the S.D.N.Y. Action, counsel for the Quincy Defendants have continued to rely on GES as a consulting expert to inform their legal analyses, as well as to discuss and coordinate litigation and settlement strategies.  (*Id*. ¶ 4.) In furtherance of those settlement discussions, on July 18, 2019, the Quincy Defendants' counsel shared with the FTC a non-privileged report authored by another consulting expert, Howard J. Beales, reflecting GES's analysis of the data underlying the Madison Memory Study ("the Beales Report").  (Villafranco Decl ¶ 13.)  The Beales Report was provided to the FTC to facilitate settlement negotiations and was attached as an exhibit to a white paper that contained substantively identical disclaimers as those included in the April 22 Letter and the October 17 Letter.  The Beales Report is not publicly available and has not been submitted in the S.D.N.Y. Action.  Quincy has no intention of designating either GES or Dr. Beales as testifying experts in the S.D.N.Y. Action. (*Id*. ¶ 14.)

On September 20, 2019, the FTC served the Quincy Defendants with its first set of document requests in that case.  (Graham Decl ¶ 7; Ex. A.)  Among other things, Document Request No. 11 sought the underlying data supporting GES's analyses presented in the Lerner

Manuscript and the Beales Report. (*Id.*) While the Quincy Defendants had already produced this data to the FTC during the investigation, they produced it to the FTC again during discovery, which is still ongoing. (Villafranco Decl. ¶ 13.)

Despite having already received the results of GES's analysis **and** all of the raw data, on December 11, 2019, the FTC issued a Subpoena to GES (the "Subpoena") seeking five categories of documents:

> Request No 1. All documents concerning the scope of work to be performed, services to be provided, or compensation to be provided for work performed by the Company with regard to the Madison Memory Study.

> Request No. 2. Concerning the Madison Memory Study, all documents concerning any statistical analysis of any data, including but not limited to any pretest analysis, intent-to-treat analysis, within-group or between-group analysis, subgroup analysis, supra-group analysis, re-analysis, post-hoc analysis, or seemingly unrelated regression (SUR) analysis, including but not limited to …

> Request No. 3. Concerning the Madison Memory Study, all documents related to the design, protocol, and recruitment of subjects, including but not limited to any documents evidencing any inclusion or exclusion criteria for participation in the study, whether related to subjects' AD-8 scores or otherwise.

> Request No. 4. All communications with any outside entity or person concerning the Madison Memory Study (including but not limited to any analyses of results or data of such study) …

> Request No. 5. All documents relating to any other human clinical study commenced, discontinued, or completed by or on behalf of any Defendant involving apoaequorin or any product containing apoaequorin, including but not limited to any analysis of any data or results from any such study.

(Graham Decl. ¶ 11 & Ex. B.)

On December 26, 2019, GES objected to each of the requests in the Subpoena on the grounds that they sought information protected by the attorney-client privilege, the work-product doctrine, and the consulting expert protection provided by Fed. R. Civ. P. 26(b)(4)(D). (Graham Decl. ¶ 12; Ex. C.) GES also objected to each of the requests on the grounds that they imposed an undue burden on GES. (*Id.*) The FTC filed its Motion nearly four months later on April 10, 2020.

## **LEGAL STANDARD**

"When a motion to compel is filed, Fed. R. Civ. P. 45 requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 8–9 (D.D.C. 2010) (internal quotations omitted); *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012). "Fed. R. Civ. P. 26(b)(2)(C) further requires the court to limit discovery where (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. at 9 (internal quotations omitted); *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).

## **ARGUMENT**

The information and documents sought by the Subpoena are protected from discovery by (1) the non-testifying expert protection provided by Federal Rule of Civil Procedure 26(b)(4)(D), (2) the attorney-client privilege, and (3) the attorney work-product doctrine. Further, the Subpoena imposes an undue burden because it seeks from non-party GES non-privileged, duplicative materials that have already been produced by the Quincy Defendants in discovery in the S.D.N.Y. Action. Moreover, compliance with the Subpoena would require GES to engage in a time-consuming and expensive document review, and to create and maintain what would likely be an extensive privilege log, a process which, if required at all, would result in a duplicative production of documents that have already been produced to the FTC by the Quincy Defendants. As a result, the Subpoena should be quashed and the FTC's Motion should be denied.

# I. THE REQUESTED DOCUMENTS ARE PROTECTED FROM DISCOVERY UNDER RULE 26(b)(4)(D) BECAUSE GES IS A NON-TESTIFYING EXPERT

"Rule 26(b)(4)(D) … expressly addresses the case of non-testifying experts and" bars discovery of information considered and opinions held by a party's consulting experts. *See Yeda Research & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 107 (D.D.C. 2013); *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 227-8 (D.D.C. 2012). "Experts in this category are treated very differently from those who are expected to be called at trial." *In re Application of Int'l Mineral Res. B.V.*, 2015 WL 4555248, at *2. There are four commonly stated policy considerations for this heightened protection of non-testifying experts from discovery:

> (1) the interest in allowing counsel to obtain the expert advice they need in order [to] properly evaluate and present their clients' positions without fear ...; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 6 (D.D.C. 2013) (citations omitted).

The Quincy Defendants hired GES as a non-testifying expert to advise them in the instant dispute with the FTC, both in the context of the FTC's investigation, as well as in anticipation of litigation should the investigation not resolve the FTC's concern. (Villafranco Decl. ¶ 7.) They also hired GES to facilitate settlement discussions with the FTC. Therefore, GES's communications and work product concerning its work for the Quincy Defendants are protected from discovery under Rule 26(b)(4)(D) and the Court should deny the FTC's request to compel enforcement.

### A.    The FTC Has Failed to Demonstrate the Required "Exceptional Circumstances" to Overcome the Consulting Expert Protection

The FTC does not contest that GES was acting as the Quincy Defendants' consulting expert with respect to all documents requested by the Subpoena.  Accordingly, in order to overcome the protection afforded to these materials under Rule 26(b)(4)(D), the FTC must make a showing of "exceptional circumstances" requiring disclosure.  Fed. R. Civ. P. 26(b)(4)(D)(ii); *see generally Eidos Display*, 296 F.R.D. at 6-7.  To demonstrate exceptional circumstances, the FTC must show, at a minimum, that "it is impracticable for [it] to obtain facts or opinions on the same subject by other means."  *Marine Petroleum Co. v. Champlin Petroleum Co.*, 641 F.2d 984, 996 (D.C. Cir. 1979).  The Federal Rule's "'exceptional circumstances' burden is high."  *Yeda Research & Dev.*, 292 F.R.D. at 107 (collecting cases).  It is not sufficient for the FTC to argue that it cannot obtain the precise facts and opinions known to GES.  *See Marine Petroleum*, 641 F.2d at 996.  Rather, it is the FTC's burden to "show circumstances such that [it] cannot get ***any*** facts or opinions on the subject in which [it] is interested" without the disclosure of facts and opinions held by GES.  *Id.* at 997 (emphasis added) (citing 8 C. Wright & A. Miller, Federal Practice s 2032 at 256 (1970)); *see also Yeda Research & Dev.*, 292 F.R.D. at 107.

The FTC fails to acknowledge this "high" burden in its Motion, much less satisfy it. Indeed, the FTC knows it can—and already has—obtained such information from the Quincy Defendants, both during its investigation and through party discovery in the S.D.N.Y. Action.  For example, Subpoena Request 2 seeks "[a]ll documents concerning any statistical analysis of any data derived from the Madison Memory Study, including but not limited to any pretest analysis, intent-to-treat analysis, within-group or between-group analysis, subgroup analysis, supra-group analysis, re-analysis, post-hoc analysis, or seemingly unrelated regression (SUR) analysis." (Graham Decl. Ex. B, Request No. 2.)

To the extent Subpoena Request No. 2 seeks the Quincy Defendants' analysis of the Madison Memory Study years before GES was retained, such information has also already been provided to the FTC in the S.D.N.Y. Action. Indeed, the FTC served an incredibly broad document request on the Quincy Defendants regarding the Madison Memory Study, with 12 discrete subparts, one of which is nearly identical to Subpoena Request No. 2: "All documents relating to any statistical analysis of any data, including but not limited to any pretest analysis, intent-to-treat analysis, within-group or between-group analysis, subgroup analysis, post-hoc analysis, or seemingly unrelated regression (SUR) analysis performed by Defendants or any other individual or entity." (Graham Decl. Ex. A, Request 11(f).) In response to this request, the Quincy Defendants reviewed an electronic research folder containing 41,550 documents that were potentially responsive to Document Request 11 (and, by extension, Subpoena Request 2). (*Id*. ¶ 8.) Also, the FTC and Quincy negotiated broad ESI search terms to capture documents responsive to this request that were not located in that electronic research folder, and agreed to review an **additional** 31,701 documents that hit on these terms. (*Id*. ¶ 9.)

The FTC is also seeking documents "related to the design, protocol, and recruitment of subjects for the Madison Memory Study, including but not limited to any documents evidencing any inclusion or exclusion criteria for participation in the study." (Graham Decl. Ex. B, Subpoena Request 3.) Since GES was not retained until years after the Madison Memory Study was completed, any documents in GES's possession relating to the study design, protocol and recruitment would have come from the Quincy Defendants. Again, the FTC requested—and received—these very documents from the Quincy Defendants in the S.D.N.Y. Action. (*Id*. Ex. A, Request 11(a) ("All documents related to the design, protocol, and recruitment of subjects [for the Madison Memory Study], including but not limited to any documents evidencing any inclusion or

exclusion criteria for participation in the study, whether related to subjects' AD-8 scores or otherwise.").) Notably, the FTC has not challenged the sufficiency of the Quincy Defendants' production or moved to compel any additional information from them.

The Quincy Defendants have produced comprehensive information about the Madison Memory Study itself, including the raw data collected, the Quincy Defendants' original analysis of that data, and the non-privileged results of GES's analyses. The FTC has everything it needs to "determine the accuracy of" the Madison Memory Study. (Mot. at 2.) And while the FTC claims that it "cannot adequately assess GES's two post hoc re-analyses of the Madison Memory Study without underlying information about related work done by GES" (Mot. at 12), the FTC and its in-house economists and statisticians from the Bureau of Economics routinely analyze data from clinical trials and are well aware that the only salient information underlying a data analysis is the data itself. The FTC has had the underlying data for years, and are free to analyze it in any way it wishes to test the results that GES found. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 765 (4th Cir. 1998) (finding other means when a party was able to conduct its own analyses to challenge the conclusions relied on by the opposing party).

The FTC similarly contends that it is "entitled to know what considerations went into GES applying an econometric methodology rarely used for clinical trials, and whether GES applied more traditional methodologies that were not turned over because they yielded unfavorable results." (Mot. at 14-15.) This simply is not necessary to "determine the accuracy of" the Madison Memory Study.

Because the FTC is not able to show that it "cannot get any facts or opinions on the subject matter in which [it] is interested," *Marine Petroleum Co.*, 641 F.2d at 996, it has failed to

demonstrate the extraordinary circumstances required to overcome the consulting expert protection.

### B. Neither GES Nor the Quincy Defendants Have Waived The Consulting Expert Protection

Instead of attempting to satisfy the "exceptional circumstances" standard applicable to consulting expert materials, the FTC asks the Court to subvert the rule and find that the Quincy Defendants have waived its non-testifying expert protection with regard to **all** analyses performed by GES, whether or not they relate to the Madison Memory Study and whether or not they were disclosed in the Lerner Manuscript or Beales Report. (Mot. at 14-15.) The FTC argues that the Quincy Defendants took three actions that resulted in a waiver of the requested materials: (1) disclosing GES's conclusions in the April 22 Letter, the Lerner Manuscript, and the Beales Report during settlement discussions, (2) relying on the Lerner Manuscript in support of the Quincy Defendants' Motion to Dismiss, and (3) releasing the Lerner Manuscript to the public by posting it on Quincy's website. Contrary to the FTC's position, none of these actions result in a subject matter waiver.

First, the FTC does not cite, and GES is unaware of, any case in which this Court has found the consulting expert protection to be subject to the sort of broad subject matter waiver the FTC now seeks. To the contrary, this Court has held that the trend among federal courts is to hold that the consulting expert protection **cannot** be subject to a subject matter waiver. *See, e.g., In re Application of Int'l Mineral Res. B.V.*, No. CV 14-MC-340(GK), 2015 WL 4555248, at *7 (D.D.C. July 28, 2015); *Eidos Display*, 296 F.R.D. at 7. This Court should not find such a waiver for the first time now, and doing so would be contrary to the purpose and structure of Rule 26(b)(4) (and Federal Rule of Evidence 408).

Rule 26(b)(4) has, since its inception in 1970, provided for discovery regarding testifying experts' opinions, that are required to be disclosed to the opposing party, and more limited discovery related to consulting experts' opinions only in "extraordinary circumstances." Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules – 1970 Amendment. In 2010, Rule 26(b)(4) was amended to make clear that, even though a party is entitled to discovery regarding the bases of *testifying* witness opinions, a party may *not* obtain disclosure of the testifying expert's draft reports or communications with counsel. *See* Fed. R. Civ. P. 26, Committee Notes on Rules – 2010 Amendment. This amendment was adopted because "[t]he Committee ha[d] been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects," forcing attorneys to "adopt a guarded attitude toward … testifying experts that impedes effective communication, and experts [to] adopt strategies that … interfere with their work." *Id.* The Committee reasoned that a party's need for discovery regarding the opinions of their opponent's experts was outweighed by the cost to effective cooperation between a party and their expert. *Id.*

In the Motion, the FTC essentially argues that the Court should adopt the same rule for consulting experts that the Committee **rejected** for testifying experts in the 2010 amendments to Rule 26. It argues that the Quincy Defendants' disclosure of and reliance on GES's opinions requires that the FTC be allowed to obtain discovery of **all** of GES's draft analyses and communications with counsel, whether or not those analyses actually informed GES's conclusions that were disclosed to the FTC (and without acknowledging that the FTC can test those conclusions itself because it has all of the underlying data utilized by GES). Given that Rule 26(b)(4) is specifically drafted to provide for more **limited** discovery related to consulting experts than

testifying experts, it would be illogical to allow more discovery from GES than the FTC will be entitled to from Quincy's testifying experts.

Even if the Court finds that the consulting expert protection may be waived, the scope of the waiver should be limited to documents that have already been produced in the S.D.N.Y. Action. Without determining that the consulting expert protection is subject to waiver, this Court previously addressed the proper scope of such a waiver in *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3 (D.D.C. 2013). In that patent infringement action, the defendant issued a subpoena to a consulting expert who had advised the plaintiff regarding the construction of the patent in suit. *Id.* at 5-6. The subpoena sought "a wide variety of documents, including drafts" of a declaration that the consulting expert made in a prior patent office proceeding regarding the same patent. *Id.* at 5. When the plaintiff moved to quash the subpoena based on the consulting expert protection, the defendant argued that the plaintiff had waived that protection by filing the declaration in the patent office proceeding and citing the declaration in the plaintiff's claim construction briefing before the district court. *Id.* at 7. The Court questioned whether the consulting expert protection could be waived, but held that it could quash the subpoena without deciding that question. *Id.* at 7-8. It found that the plaintiff's reliance on the declaration could only waive the protection, if at all, with regard to the declaration itself and that the subpoena was overbroad insofar as it sought drafts and other documents on which the plaintiff had not relied in its claim construction briefing. *Id.* at 8-9.

Here, even if the Court finds that the consulting expert protection can be waived, and that a waiver has occurred, it should similarly limit the scope of that waiver. The Quincy Defendants have only relied on the Lerner Manuscript in this action and the Beales Report in settlement negotiations. (Villafranco Decl. ¶¶ 10, 13.) To be clear, the Quincy Defendants are not claiming

that these documents are privileged and, in fact, have already produced them, including all underlying data and other related non-privileged materials, to the FTC in discovery. Thus, to the extent the Court finds that any waiver has occurred, such a waiver only extends to documents that have already been disclosed—the Lerner Manuscript, the Beales Report, and the Madison Memory Study data.

Even the minority jurisdictions cited by the FTC that have found a waiver of the consulting expert protection would agree with such a result. Those courts have held that a waiver does not allow a party to obtain discovery of their opponent's consulting expert "without limitation." *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013). (Mot. at 8.) Instead, they "allowed [the] party to discovery [sic] only information related to the expert's statements, findings, or opinions **that were put at issue**. *Id.* (emphasis added). They did not allow discovery "into information or material not put in issue or regarding the contents of any privileged communications." *Id.*; *see also Zeiger v. WellPet LLC*, No. 17-CV-04056-WHO, 2018 WL 10151156, at *3 (N.D. Cal. Apr. 10, 2018) (finding a waiver but limiting it "in scope only to those results specifically mentioned in the FAC"); *In re Morning Song Bird Food Litig.*, No. 12CV1592 JAH(RBB), 2015 WL 12791470, at *3 (S.D. Cal. Jan. 23, 2015), *order clarified,* No. 12CV1592 JAH(RBB), 2015 WL 12791473 (S.D. Cal. July 17, 2015) (requiring the production of materials relied upon or considered in creating the expert reports actually disclosed); *Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 420 (N.D. Cal. 1994) (allowing discovery into only those materials the consulting expert "relied upon in forming the opinions stated in [the] videotaped statement" disclosed to the opposing party).[3] Yet these are exactly the

---

[3]     Courts in this District have specifically distinguished the *Atari* case cited in the FTC's Motion at pages 7 and 11 because, among other things, the consulting expert was a critical fact witness—the inventor of the patent at issue and a former employee of the plaintiff, who the

materials sought by the Subpoena—documents relating to other analyses performed on the Madison Memory Study data that were not disclosed in or relied upon in drafting the Lerner Manuscript or the Beales Report, analyses of other human clinical studies evaluated by GES, and even privileged communications with counsel and other consulting experts.  There is no support for the broad waiver the FTC seeks.  The Court should uphold GES's privilege and deny the FTC's Motion.

II.    **THE REQUESTED DOCUMENTS ARE PROTECTED FROM DISCOVERY BY THE ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK PRODUCT DOCTRINE**

A.    **The Work that GES Performed for the Quincy Defendants is Subject to the Attorney-Client Privilege and Attorney Work Product Protection**

As with the consulting expert protection, the FTC does not contest that the materials it seeks are protected by the attorney-client privilege and the attorney work product doctrine.  Putting aside the purely factual material that GES may have received from the Quincy Defendants, and that the FTC has also received through party discovery in the S.D.N.Y. Action, the materials sought by the Subpoena are protected by the work product doctrine because they were generated by GES in its capacity as a consulting expert hired by the Quincy Defendants' counsel to facilitate the provision of legal advice in anticipation or furtherance of litigation.  *See Yeda Research & Dev. Co.*, 292 F.R.D. at 112 ("documents prepared by Dr. Engelmann as Yeda's consultant in connection with the 2003 experiments are protected from discovery by the work product privilege.").  The materials are also protected by the attorney-client privilege and/or the attorney

---

defendant retained as an expert after the litigation commenced.  *See Eidos*, 296 F.R.D. at 8.  *Eidos* further recognized that the *Atari* court limited discovery from the expert to "topics covered in the interview" that had been provided in discovery and formed the basis of the alleged waiver and facts or opinions held by the expert prior to being retained by the defendant.  *Id.*  In contrast, here, GES does not have any facts or opinions about the Madison Memory Study, Prevagen or apoaequorin outside of its consulting arrangement with the Quincy Defendants.

work product doctrine because they contain and/or reflect the legal advice or strategy of counsel in participating in the FTC's investigatory process, litigating the S.D.N.Y. Action, and/or potential settlement strategy.  *See F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002); *F.T.C. v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980); *Goldstein v. F.D.I.C.*, 494 B.R. 82, 90 (D.D.C. 2013); *Yeda Research*, 292 F.R.D. at 97.

For instance, Subpoena Request No. 1 seeks documents regarding the scope of GES's services that the Quincy Defendants' counsel deemed necessary for the defense of the S.D.N.Y. Action.  Subpoena Request No. 2 seeks documents reflecting all analyses the Quincy Defendants' counsel asked GES to perform in relation to the S.D.N.Y. Action.  Subpoena Request No. 3 seeks information regarding the design and conduct of the Madison Memory Study all of which would have been provided to GES by the Quincy Defendants and therefore also included in the Quincy Defendants' document production in the S.D.N.Y. Action.  Subpoena Request No. 4 seeks all communications with the Quincy Defendants and other individuals (including counsel and other consulting, non-testifying experts) reflecting counsel's legal analyses and strategies.  Subpoena Request No. 5 seeks information regarding any other studies GES may have evaluated at the behest of counsel to inform their legal strategies.  (Graham Decl. Ex. B.)

Each of these requests seeks documents that have either: (1) already been produced by the Quincy Defendants during discovery in the S.D.N.Y. Action or (2) are clearly protected by an applicable privilege, as they will reveal counsel's legal analyses and strategy with respect to the FTC's investigation and litigation.  Thus, the Subpoena should be quashed in its entirety.

**B.**     **There Has Been No Waiver of the Attorney-Client Privilege or the Attorney Work Product Protection**

"[D]isclosing non-privileged communications … does not thereby waive privileged ones," even if those privileged communications relate to the same subject matter as the non-privileged

communications disclosed. *Trustees of Elec. Workers Local No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1, 10 (D.D.C. 2010). In order for a document to be protected by the attorney-client privilege, it must be used for the purposes of seeking or providing legal advice. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). The documents that Defendants have already disclosed to the FTC do not contain any legal advice, but were prepared to further settlement discussions and provided to the FTC with that express caveat. (Villafranco Decl. ¶¶ 9, 11, 13.) Therefore, they are not privileged and their disclosure to the FTC (or, with respect to the Lerner Manuscript, the court or the public) could not have resulted in a waiver.

By contrast, each of the cases the FTC cites to argue that disclosure can result in waiver of the attorney-client privilege all involve the disclosure **of privileged materials**. *See e.g.*, *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 68 (D.D.C. 1984); *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982).

Furthermore, each of these cases were decided prior to the enactment of Federal Rule of Evidence 502, and this Court's approach to waivers has changed significantly since that rule was enacted. Prior to the adoption of Rule 502, this Court applied a "strict" rule of subject matter waiver whenever a party failed to guard its privileged materials "like the crown jewels." *Bowels v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253 (D.D.C. 2004); *see also Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 45 (D.D.C. 2009) (both cited in the FTC's Motion at 9). Under this punitive rule, any disclosure of privileged materials resulted in a "broad waiver appli[cable] to deliberate and inadvertent disclosures alike." *Bowles*, 224 F.R.D at 258; *see also Navajo Nation*, 255 F.R.D. at 45. *See also In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("[d]isclosure is inconsistent with confidentiality" and therefore demands a waiver). In the years

since *Navajo Nation* and *Bowles* were decided, however, this Court has found that "there is no question that Rule 502 modified this Circuit's previously strict rule on subject matter waiver." *Hughes v. Abell*, No. CV 09-0220 (JDB), 2012 WL 13054819, at *5 (D.D.C. Mar. 7, 2012). "[S]ubject matter waiver (of either privilege or work product) is [now] reserved for those unusual situations in which fairness requires a further disclosure of related, protected information." *Id.* at *3. Because the Quincy Defendants have not disclosed any privileged materials that in fairness must be considered with the materials sought by the Subpoena, these cases do not support finding a subject matter waiver here.

In particular, the Court should not find a waiver based on the Quincy Defendants' disclosure of the Lerner Manuscript and the Beales Report to the FTC in settlement discussions. Courts in this Circuit have never recognized a subject matter waiver of any privilege resulting from the disclosure of information in settlement negotiations. *See Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 252 (D.D.C. 2004). Rather, Courts here emphasize that "[s]ettlement discussions and settlement decisions occupy a unique and protected place in our judicial system" and disclosures in that context do not present as clear a case of waiver as they might in other contexts. *Id.* The FTC does not provide any reason for the Court to uproot that precedent by recognizing such a waiver in this case.

The FTC cites only two cases where courts found a waiver resulting from settlement discussions in civil litigation, and both are from other jurisdictions before FRE 502 was enacted. (Mot. at 7.) Even assuming that these cases are still good law and the Court was inclined to follow them, neither case supports the broad subject matter waiver the FTC is seeking. In the first case, *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988), the Court did not impose a subject matter waiver at all and, instead, specifically limited the

waiver to work product that had actually been disclosed. The sole item of work product at issue was a computer tape that defendant Chrysler had disclosed to consumer class action plaintiffs during settlement discussions. *Id.* at 845-46. When the government of Minnesota later sought production of the computer tape, Chrysler opposed on the grounds that the tape was protected work product. *Id.* The Eight Circuit ruled that Chrysler had waived the work product protection with respect to "items actually disclosed" during settlement discussions – *i.e.*, the tape itself – and nothing more. *Id.* at 846. Here, the "items actually disclosed" are the Lerner Manuscript and the Beales Report, and the Quincy Defendants are not asserting privilege over either of these documents.

The second case the FTC cites, *Atari Corp. v. Sega of Am.*, 161 F.R.D. 417 (N.D. Cal. 1994), did find a subject matter waiver, but the scope of that waiver was much more narrow than what the FTC seeks here. In *Atari*, the videogame company Atari sued another video game producer, Sega, for patent infringement. Atari issued a subpoena to Sega's consulting expert seeking "[a]ll documents provided by or on behalf of Sega regarding the" patent at issue. *Id.* at 418. Sega sought to quash the subpoena based on the consulting expert and work product protections. *Id.* The Court only found a subject matter waiver allowing for enforcement of the subpoena after Atari agreed to limit the scope of its requests to "[a]ll documents relied upon in forming the opinions stated" in the consulting expert's materials previously disclosed to Atari. *Id.* at 420. Here, the "documents relied upon in forming the opinions stated" in the Lerner Manuscript and the Beales Reports are the underlying data for the Madison Memory Study and the GES analyses that were produced to the FTC during the investigatory phase and through party discovery in the S.D.N.Y. Action. The Quincy Defendants are not asserting any privilege over those materials and therefore there is nothing left that falls within the proper scope of any alleged waiver.

Moreover, this Court has previously rejected arguments that *Atari* supports a broad subject matter waiver, *see Eidos Display*, 296 F.R.D. at 8, and the Northern District of California, which itself decided *Atari*, has expressly limited *Atari* to its unique facts. In doing so, that court held that *Atari* does not support imposing a subject matter waiver when the disclosing party did not offer the disclosed materials as "voluntary discovery," without a proviso that the materials be maintained in confidence and used only for settlement purposes. *Akamai Techs., Inc. v. Digital Island, Inc.*, No. C-00-3508 CW(JCS), 2002 WL 1285126, at *6 (N.D. Cal. May 30, 2002). Here, unlike in *Atari*, the Quincy Defendants did not provide the April 22 Letter, or the Beales Report as voluntary discovery for use in the underlying action. Rather, they disclosed those materials solely under the proviso that they used to resolve the FTC's investigation and that, except as required by law, Defendants did "not grant [the FTC] permission to disclose any information relating to [those] submission[s] to any third party for any purpose" and "request[ed] that the FTC return all documents at the conclusion of [its] investigation." (Villafranco Decl. ¶¶ 9, 11, 13.) Because the Quincy Defendants took these steps to limit the FTC's use of the information in the April 22 Letter and the Beales Report, their disclosure in settlement discussions does not provide a basis for finding a subject matter waiver.

In addition to *Chrysler* and *Atari*, the FTC also cites *In re Martin Marietta Corp.*, 856 F.2d 619, and *Chubb Integrated Sys. Ltd.*, 103 F.R.D. 52, in support of its argument that disclosures in settlement discussions can result in a subject matter waiver. None of these cases involved claims of waiver resulting from settlement discussions between private parties to civil litigation.

*In re Martin Marietta* involved a subpoena by a former employee of Martin Marietta Corp. who was under indictment for acts committed during his employment. 856 F.2d at 620-621. The former employee sought materials Martin Marietta had disclosed to the government to "settle"

related criminal charges against it.  *Id*.  Martin Marietta moved to quash the subpoena asserting the attorney-client privilege and work product protection.  *Id.*  The Fourth Circuit found that the company had waived those protections by disclosing materials to government prosecutors that cast the blame on its former employee.  *Id.* at 623-624.  In finding such a waiver, however, the Court relied on a strict pre-Rule 502 approach to subject matter waiver.  *Id.*  Even under this approach, the Court refused to find a waiver extending to work product materials containing opinions and mental impressions rather than facts.  *Id.* at 625-26.  The only materials the FTC seeks in this Motion that have not already been provided are those revealing GES's **and counsel's** privileged opinions and analyses.  The FTC already has all of the facts supporting those opinions.  Therefore, *Martin Marietta* does not support a subject matter waiver in this case.

Likewise *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52 (D.D.C. 1984) does not support subject matter waiver resulting from settlement discussions or subject matter waiver at all.  In that case, there were no settlement discussions.  Rather, the plaintiff sought to withhold documents that defendant has requested in discovery, asserting that they were protected by the attorney-client privilege and the work product doctrine.  *Id.* at 63.  The plaintiff had, however, previously allowed counsel for the defendant and an unrelated third party to inspect those "very same documents."  *Id.* at 63, 68.  Plaintiff and defendant had "no agreement or representation that the documents would be subject to such a later review for privilege."  *Id.* at 62. The Court merely held that the plaintiff could not disclose documents one minute and then claim they were privileged the next.  It did not impose a subject matter waiver, and the FTC has not offered any reason for the Court to do so here.  *Id.* at 68.

III.  **DOCUMENTS RELATING TO "OTHER HUMAN CLINICAL STUDIES" ARE FAR OUTSIDE THE SCOPE OF THE ALLEGED "SUBJECT MATTER WAIVER"**

Even if the Court were to find a limited waiver of work product relating to GES's analyses of the Madison Memory Study—the study for which the FTC claims materials were "disclosed" or "used" in the underlying litigation—the FTC's Subpoena and Motion go even further and seek a much broader waiver of "[a]ll documents relating to **any other** human clinical study commenced, discontinued, or completed by or on behalf of any Defendant involving apoaequorin or any product containing apoaequorin, including but not limited to any analysis of any data or results from any such study."  (Graham Decl. Ex. B, Subpoena Request 5 (emphasis added).)  While the FTC phrases this as a "Subject-Matter Waiver" (Mot. at 12), the FTC is actually seeking documents that are **wholly unrelated** to the subject matter of the Madison Memory Study.

No case from this Circuit—or any other jurisdiction for that matter—supports such a broad waiver.  First, the "subject matter waiver" cases the FTC cites do not involve consulting experts, which are subject to a different and much broader level of protection than the attorney-client or work product protection as set forth above.  *See US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 33 (D.D.C. 2011); *Navajo*, 255 F.R.D. at 44-45; *Bowles*, 224 F.R.D. at 257.  Second, the cases that do find a subject matter waiver in the context of the attorney-client privilege or work product protection define the applicable "subject matter" extremely narrowly, and deny overly broad discovery requests for materials that are unrelated to the subject of the alleged waiver – akin to the materials the FTC is seeking from GES.

The FTC relies primarily on *US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 33 (D.D.C. 2011), to obtain GES's analyses of "other human clinical studies" unrelated to the Madison Memory Study.  (Mot. at 12-15.)  *US Airline* involved an investigation conducted by an in-house attorney regarding allegations of a pension plan trustee's breach of fiduciary duty.

The company disclosed the final report prepared at the conclusion of the investigation, but claimed attorney-client and work production privilege over the substance and scope of the investigation. The Court ultimately held that disclosure of the final report resulted in a waiver "regarding undisclosed communications or information concern[ing] the same subject matter' as the report,'" because it found that such materials "could provide an important context for proper understanding of the privileged materials." *Id.* at 32.

*US Airline* is inapposite. As a result of the "subject matter waiver" of the attorney-client privilege and work product protection, the court permitted the plaintiff to depose the in-house attorney about the scope of her investigation, the documents reviewed, related corporate policies, and the attorney's findings. *Id.* at 33 (emphasis added). All of these matters involved the **exact same investigation and corresponding report**, the disclosure of which supported the Court's finding of waiver. Most notably, the court specifically **denied** the plaintiff's request to obtain information about issues that were "related to" the subject matter of the report but that were not "the same" as the subject matter of the report. *Id.* The case does nothing to support the FTC's request to obtain discovery about "other human clinical studies" wholly unrelated to the Madison Memory Study.

Courts in other jurisdictions have applied a similar limitation to subject matter waivers. For instance, in *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717-JJF, 2008 WL 11233766 (D. Del. Mar. 6, 2008), cited by the FTC (Mot. at 8, 11), the plaintiff, AMD, filed an antitrust claim against Intel. *Id.* at *1. To "promot[e] its theory of the case," AMD hired an economic consultant to examine Intel's business conduct and used that consultant's findings in "a well credentialed media campaign that was clearly designed to tarnish" Intel's reputation. *Id.* at *1, *9. When Intel sought discovery of the full report and underlying documents cited in the media

campaign, AMD asserted the consulting expert protection. *Id.* at *3. The Court held that AMD's public use of the report waived its right to assert the protection with regard to the report or the documents on which its consultant relied. *Id.* at *11, *13-14. However, the Court permitted AMD to withhold any portions of the report and underlying documents that dealt with subject matters not specifically addressed in its public relations campaign. *Id.* 11. It did not allow Intel discovery of unrelated materials such as the FTC seeks here.

Nor do the three other "subject matter waiver" cases the FTC cites (Mot. at 9) support its request for discovery related to "other human clinical studies." First, the FTC cites *City of Capitola v. Lexington Ins. Co.*, No. 12-3428 LHK PSG, 2013 WL 1087491 (N.D. Cal. Mar. 13, 2013). In that case, the City of Capitola sought recovery from a company that insured against failures of the City's water system. *Id.* at *1. Prior to filing suit, the City engaged an engineering consultant to investigate the failure of its water system. *Id.* Both parties agreed that the consultant's investigation "provide[d] the undisputed facts of the case. *Id.* at *2. However, the City refused to disclose all of the work product regarding the results of that investigation. *Id.* at *1. The court's decision to require disclosures of such materials providing the "undisputed facts of the case" does not support compelling discovery related to studies that have nothing to do with the Madison Memory Study.

The remaining cases cited by the FTC, *Navajo Nation v. Peabody Holding Co.* and *Bowles v. Nat'l Ass'n of Home Builders*, should be disregarded because they are no longer good law following the 2008 adoption of Federal Rule of Evidence 502. (*See* pp. 20-21, *supra*.) Indeed, even *Navajo Nation,* which was decided under the old regime, limited the subject matter waiver to documents and communications "arising out of the same transaction." 255 F.R.D. at 45. And the FTC itself concedes that waivers after the enactment of Rule 502 are limited to "other information

27

concerning *the same subject matter*" (Mot. at 9 n.4) and therefore would not include documents relating to "other human clinical studies." Other human clinical studies do not "arise out of the same transaction" or constitute "the same subject matter" as the Madison Memory Study.

The FTC has not only failed to demonstrate how those studies involve "the same" subject matter as the Madison Memory Study—they do not—it also fails to show how "fairness requires" discovery of work product regarding such studies. The FTC asserts, but does not explain, how such "other human clinical studies" could possibly provide "context" to the FTC's understanding of the Madison Memory Study. The FTC argues that disclosure of unrelated work product would permit "a more accurate assessment of Madison Memory Study results," that "the Madison Memory Study cannot be fairly assessed in isolation," and that "[a]ny work GES may have done to analyze the results of other clinical studies on Prevagen would have direct bearing on the weight of GES's work on the Madison Memory Study." (Mot. at 15.) The FTC never explains **why** that would be the case. In any event, those alleged circumstances are insufficient to justify a subject matter waiver. Fairness does not require discovery related to "other human clinical studies" simply because the FTC regards such materials as useful.

If the FTC's position were correct, the consulting expert protection afforded by Rule 26(b)(4)(D) would be completely eviscerated, and a party would **always** be able to obtain analyses conducted by consulting experts to provide "for a more accurate assessment" of the testifying expert's opinion. But this is plainly prohibited by the Federal Rules.

In any event, the FTC is fully capable of assessing the validity of the Madison Memory Study without considering GES's work product on other human clinical studies. The FTC employs a virtual army of economists and statisticians who can (and presumably have at some point in the last four years) analyze the Madison Memory Study data, which was provided to the FTC over

four years ago.  The FTC has had ample time and opportunity to conduct (and probably has already

conducted) such an analysis, given their numerous critiques of the results.  Data and privileged

work product for other, unrelated studies (to the extent they exist) simply have no bearing on the

statistical validity of the Madison Memory Study and therefore are not even related to, much less

"the same" as, the Madison Memory Study.  The FTC's requested "subject matter waiver" should

be rejected and the Court should uphold GES's objections to Request No. 5.[4]

## IV.   THE SUBPOENA IMPOSES AN UNDUE BURDEN ON GES

In addition to requiring that subpoenas be quashed if they seek privileged information, Rule

45 requires that the Court quash or modify subpoenas that impose an undue burden on the

subpoenaed party.  Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv); *Micron Tech., Inc. Sec. Litig.*, 264 F.R.D.

at 8–9 (D.D.C. 2010) (internal quotations omitted); *Millennium TGA, Inc. v. Comcast Cable

Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012).  This Court has found a third party subpoena to

be unduly burdensome when it seeks documents that "are available from the defendants to the

underlying litigation themselves."  *Educ. Fin. Council v. Oberg*, No. 10-MC-0079 JDB, 2010 WL

3719921, at *3 (D.D.C. Mar. 8, 2010).  Even a subpoena that seeks "limited information is unduly

burdensome [in] the absence of any showing that the information sought is not available from other

---

[4]    The FTC also complains that GES has not produced a privilege log.  (Motion at 5.)  GES
had no obligation to prepare a privilege log and the failure to do so cannot result in a waiver.  Under
Rule 26(b)(4)(D), "non-testifying expert information is entirely exempt from discovery" and
therefore any claim that "non-testifying expert information is subject to disclosure on a privilege
log under Rule 26(b)(5) is simply incorrect."  *Ludwig v. Piklington North America, Inc.*, No. 03 C
1086, 2004 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003); *Genesco, Inc. v. Visa U.S.A., Inc.*, 302
F.R.D. 168, 191 (M.D. Tenn. 2014) ("Rule 26(b)(4)(D) does not require a privilege log"); *Williams
v. Bridge*, 300 F.R.D. 120 (S.D.N.Y. 2014) (refusing to find that consulting expert protection was
waived due to an insufficient privilege because discovery from a consulting expert is not even
permitted under Rule 26(b)(4)(D)).

sources." *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 19 (D.D.C. 2009).

As discussed in more detail above, the FTC has already sought and obtained comprehensive information regarding the Madison Memory Study from the Quincy Defendants, both during the investigatory phase and through party discovery in the S.D.N.Y. Action. The Quincy Defendants agreed to review over 73,000 documents that were potentially relevant to the Madison Memory Study (in addition to hundreds of thousands of additional documents that were potentially responsive to other issues in the case), either because they hit on ESI search terms negotiated between the parties or because the Quincy Defendants and their counsel manually identified the documents as potentially responsive to the FTC's Document Requests relating to the Madison Memory Study. (Graham Decl. ¶¶ 8-9.) In fact, the Madison Memory Study-related document requests served on Quincy are even broader than those served on GES. (*Compare* Graham Decl. Ex. B *with* Graham Decl. Ex. A, Document Request No. 11.) The FTC has not provided any reason GES should be burdened with the same extensive document requests, especially since it has failed to challenge the Quincy Defendants' production on this issue.

A cursory review of the information the FTC seeks from GES shows that the requested discovery is more appropriately sought from the Quincy Defendants. In fact, it **has** been sought from—and produced by—the Quincy Defendants in the S.D.N.Y. Action. For instance, Subpoena Request Nos. 2 and 3 seek information regarding the conduct and original analysis of the Madison Memory Study. (Graham Decl. Ex. B.) This information should be sought, if at all, from the Quincy Defendants who commissioned the study rather than from GES who took no part in the study and was not even retained by the Quincy Defendants until 2016. Any documents in GES's possession that are relevant to the design and conduct of the Madison Memory Study or the original

statistical analysis could only have been obtained from the Quincy Defendants, and therefore are covered by the Quincy's Defendants' extensive review and production efforts.  Indeed, the Quincy Defendants have already provided thousands of documents responsive to these requests.

Request No. 4 seeks communications between GES and the Quincy Defendants or persons employed by or working with the Quincy Defendants.  (Graham Decl. Ex. B.)  There is no reason the FTC cannot seek such communications from the Quincy Defendants themselves.   Finally Request No. 5 seeks information regarding any other studies conducted by or behalf of the Quincy Defendants.  (*Id*. Ex. B.)  As with the information sought by Subpoena Requests Nos. 2 and 3, such information is more properly sought from the Quincy Defendants who allegedly commissioned or conducted such studies, rather than from GES.  In fact, the Quincy Defendants have already provided such information to the FTC in discovery in the S.D.N.Y. Action.

In addition to being duplicative of the document requests served on the Quincy Defendants, compliance with the Subpoena would be incredibly burdensome for GES.  In order to obtain a general understanding of the burden that would result from responding to the Subpoena, counsel applied the ESI search terms that were negotiated between the FTC and the Quincy Defendants in the S.D.N.Y. Action with respect to the Madison Memory Study to the three GES custodians that worked on the Madison Memory Study.  (Graham Decl. ¶ 13.)  This search resulted in over twenty thousand potentially responsive documents for Subpoena Requests Nos. 2, 3 and 4, and additional documents would have to be reviewed in response to Subpoena Request No. 5.  It would be an incredibly expensive and time-consuming task to identify and produce a set of responsive documents that are duplicative of what has already been produced or would have to be identified on a privilege log (if the FTC is even correct that a log is required, which GES disputes, *see* n. 4, *supra*).

Because the FTC has not even attempted to show that it cannot obtain such information from the Quincy Defendants and because enforcement of the Subpoena would result in an undue and disproportionate burden on GES, a third party, this Court should uphold GES's objections and refuse to enforce the Subpoena.

## V. THE MOTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

GES also requests that the Motion be transferred to the Southern District of New York where the underlying litigation is pending. Rule 45(f) provides as follows:

> When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

Fed. R. Civ. P. 45(f). The Subpoena was issued out of the Southern District of New York, where the underlying action is pending, and GES consents to, and affirmatively requests, a transfer to that Court.

## CONCLUSION

For the foregoing reasons, the Quincy Defendants and GES request that the Court deny the Motion, uphold GES's objections, and quash the Subpoena.

Dated: May 11, 2020
New York, New York

KELLEY DRYE & WARREN LLP

By: /s/ *Bezalel A. Stern*
Bezalel A. Stern
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Tel. (202) 342-8400
Fax: (202) 342-8451

bstern@kelleydrye.com

Geoffrey W. Castello (*pro hac vice forthcoming*)
Jaclyn M. Metzinger (*pro hac vice forthcoming*)
Glenn T. Graham (*pro hac vice forthcoming*)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
gcastello@kelleydrye.com

*Counsel for Defendants Quincy Bioscience*
*Holding Company, Inc., Quincy Bioscience,*
*LLC, Prevagen, Inc. d/b/a Sugar River*
*Supplements, and Quincy Bioscience*
*Manufacturing, LLC*

*Counsel for Third-Party Georgetown Economic*
*Services, LLC*