

Geoffrey W. Castello

Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Tel: (973) 503-5922
Fax: (973) 503-5950
gcastello@kelleydrye.com

October 27, 2020

**Via ECF**

Hon. Louis L. Stanton, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *FTC, et al. v. Quincy Bioscience Holding Co., Inc., et al.*
              Case No. 1:17-cv-00124-LLS

Dear Judge Stanton:

      We write on behalf of Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., Quincy Bioscience Manufacturing, LLC ("Quincy") and Mark Underwood (collectively "Defendants") in the above-referenced action. We respond to Plaintiff the People of the State of New York by Letitia James, Attorney General of the State of New York's ("NYAG") letter dated October 20, 2020 ("Letter") (Dkt. No. 135) requesting leave to move for a protective order with respect to Quincy's Rule 30(b)(6) Deposition Notice (the "Notice"). (Dkt. No. 135-1.) Like its co-Plaintiff, the Federal Trade Commission's ("FTC"), the NYAG's initial position with respect to the Notice was "we don't do that." Unlike the FTC, however, the NYAG's position has not changed despite the parties' painstaking two-month meet-and-confer process. Quincy eventually agreed to withdraw and/or revise at least 15 of its initial topics. The NYAG, however, still obstinately refuses to produce a witness in response to *any* of Quincy's revised topics. The NYAG has failed to satisfy the "heavy burden of demonstrating good cause" to prohibit the requested deposition, and its request for a protective order should be denied in its entirety. *Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, 2020 WL 4041058, at *3 (S.D.N.Y. July 17, 2020).

      Quincy served nearly identical R. 30(b)(6) topics on the NYAG and the FTC on August 21, 2020. (*See* Declaration of Geoffrey W. Castello filed herewith ("Castello Decl.") ¶ 2 and Ex. A.) The parties first conferred telephonically on September 2, 2020. (*Id*. ¶ 3.) During that initial call the NYAG took the position that Quincy was not entitled to take a R. 30(b)(6) deposition at all. (*Id*.) The NYAG advised Quincy that it would continue to meet-and-confer, but made clear that it had "little hope" of reaching a resolution. (*Id*.) After several more telephone calls and written exchanges, Quincy reached substantial agreement with the FTC (agreement on 19 topics and withdrawal of 11 topics) and offered to serve the NYAG with a revised deposition notice reflecting those agreements, but the NYAG remained unwilling to present a witness on any of the proposed topics. (*Id*. ¶¶ 6-10 and Exs. C, D.) Notwithstanding the lack of compromise from the NYAG, Quincy issued the revised Notice to the NYAG on October 9,

October 27, 2020

2020, which incorporated most of the compromises that Quincy had reached with the FTC.  (*See* Dkt. No. 135-1.)  The NYAG now seeks a protective order with respect to Quincy's *entire* 30(b)(6) Notice.

The NYAG's Letter makes many of the same meritless arguments as the FTC's parallel request (Dkt. No. 134) regarding privilege and work product.  As Quincy made abundantly clear during the lengthy meet-and-confer process, it is not seeking to depose trial counsel, obtain attorney work product, or prematurely learn the opinions of the NYAG's experts.  It simply seeks, as the Rules allow, to understand the *factual* basis of the NYAG's allegations.  To avoid duplicative briefing, Quincy hereby incorporates by reference its response to the FTC's request (Dkt. No. 136), and addresses only the additional arguments and topics raised by the NYAG.

**The NYAG Fails to Support Its Privilege Objections to the Notice's "Contention" Topics 6-15.**  The NYAG acknowledges that Topics 6-15 "seek all *facts* that relate to the NYAG's allegations in this matter," but argues that such facts are "protected from disclosure by the work product doctrine, public interest privilege, deliberative process privilege, and common interest privilege." (Letter at 2.) The NYAG fails to even explain what these privileges are, much less argue *why* the requested testimony would be privileged.  Moreover, even if "certain information is protected from discovery by the attorney-client privilege, work product doctrine and/or other applicable privileges, *a party is required to disclose the facts underlying its claims.*"  *F.T.C. v. Cyberspy Software, LLC*, 2009 WL 8708856, at *2 (M.D. Fla. May 26, 2009) (emphasis in original).  "Facts are always discoverable regardless if they have been conveyed to an attorney."  *Id.* (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981)).  Further, "[i]t is well-established that 'the attorney-client privilege cannot at once be used as a shield and a sword.'"  *HSH Nordbank AG N.Y. Branch* v. *Swerdlow*, 259 F.R.D. 64, 74 (S.D.N.Y. 2009) (quoting *U.S. v. Blizerian*, 926 F. 2d 1285, 1292 (2d Cir. 1991)).  Yet this is exactly what the NYAG attempts to do here by refusing to even identify, among other things, which specific marketing statements it is challenging in this action, much less explain the facts that support its position that the marketing is false or unsubstantiated.  To the extent the NYAG continues to claim privilege over these facts, it should be excluded from introducing any such facts as evidence in this action for any purpose.

**Quincy is Not Seeking to Discover the NYAG's "Strategy" in Topics 1, 5, 31 and 32.**  These topics similarly seek facts, not the NYAG's litigation strategy.  Topic 1 seeks the process, phases, and identity of people that participated in the NYAG's pre-suit investigation and Topic 5 seeks the bases and method for the NYAG's alleged damages.  The Federal Rules entitle Quincy to learn the *facts* which form the basis for the NYAG's allegations and the measure of monetary relief it seeks in this action.  Topic 31 relates to the NYAG's written discovery responses, which plainly are not privileged because they have been produced to Quincy in this litigation.  Finally, Topic 32 seeks a description of the NYAG's document preservation, search and production procedures.  Quincy wholeheartedly agrees that this non-privileged information should have been "the subject of good-faith discussions between counsel." (Letter at n.1.)  Unfortunately, because the NYAG has stonewalled Quincy's repeated efforts over the last year to obtain even the most basic information about their document collection efforts, including the names of the individuals whose records were searched, Quincy was compelled to include this as a deposition topic.

**The Notice is Not "Duplicative" of Other Discovery.**  The NYAG also argues, without citing a single case, that the deposition should be precluded because it is "duplicative" of written and document

October 27, 2020

discovery that has taken place.  Written discovery, however, "does not relieve the Agency of its obligation under [Rule 30(b)(6)] to provide a witness to answer questions about the documents for purposes of clarification and interpretation." *EEOC v. Sterling Jewelers Inc.*, 2010 WL 2803017, at *3 (W.D.N.Y. July 15, 2010).  Indeed, the NYAG issued a R. 30(b)(6) deposition notice seeking testimony from Quincy that largely overlapped with its written and document discovery, and Quincy provided three witnesses in response.  (Castello Decl. ¶ 11, Ex. E.)  The NYAG should be required to do the same.

In any event, the NYAG has failed to actually establish any duplication.  The only examples provided are the so-called "Communication" Topics, which request testimony regarding communications between the NYAG and various third parties, including consumers, consumer protection groups, and doctors.  It is not enough for the NYAG to produce written communications or to provide self-serving narrative descriptions of such communications. (Letter at n.3.) Quincy is entitled to ask questions about these written communications, and the substance of any oral communications.

**The NYAG Fails to Support its Conclusory Assertion of "Undue Burden."**  The NYAG's conclusory references to the "burden inherent in preparing a witness for a 30(b)(6) deposition" are meritless.  To establish an undue burden, the NYAG must show that "a 'clearly defined, specific and serious injury' will occur in the absence" of a protective order.  *Michelo*, 2020 WL 4041058, at *3.  "'[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, are not sufficient to satisfy the burden." *Id.* (internal quotations and citation omitted).  No such burden can exist for a statewide governmental agency like the NYAG and, in any event, the NYAG fails to articulate any specific burden, other than the fact that its counsel would have to prepare a witness.  But this is true of every entity ever served with a R. 30(b)(6) notice, and was true of Quincy's counsel who prepared three separate witnesses to respond to the NYAG's 30(b)(6) notice.  *See S.E.C. v. Merkin*, 283 F.R.D. 689, 696, *report and recommendation adopted*, 283 F.R.D. 699 (S.D. Fla. 2012) ("[T]he argument that a lawyer would be involved in the preparation process is simply a truism which, if sufficient to preclude 30(b)(6) depositions, would eliminate that discovery tool.").

**The NYAG Fails to Support its Blanket Relevance Objection.**  Finally, the NYAG's blanket relevance objection is groundless.  Relevance is "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Malzberg v. New York Univ.*, 2020 WL 3618962, at *2 (S.D.N.Y. July 2, 2020).  The NYAG fails to explain why topics relating to its complaint, consumer perception and substantiation of the challenged marketing, or to communications with third parties regarding Prevagen®, its marketing, and its efficacy, would not be relevant.  They plainly are, and the NYAG should be compelled to produce a witness to provide factual testimony about these topics.

For these reasons, Quincy respectfully requests that the NYAG's request for a pre-motion conference motion be denied and that the R. 30(b)(6) deposition of the NYAG proceed as noticed.

Respectfully submitted,

/s/  *Geoffrey W. Castello*

Geoffrey W. Castello

**KELLEY DRYE & WARREN LLP**                                                                                                  3