# EXHIBIT A

# **DEFINITIONS**

In addition to the definitions set forth in Rule 26.3 of the Local Rules of the United States District Courts of the Southern and Eastern Districts of New York, which are expressly incorporated herein, the following definitions shall be used throughout this notice:

1. "Action" shall mean the lawsuit captioned *Federal Trade Commission v. Quincy Bioscience Holding Company, Inc., et al.*, filed in the United States District Court for the Southern District of New York, Case No. 1:17-cv-00124-LLS.

2. "FTC" shall mean plaintiff the United States Federal Trade Commission and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

3. "NYAG" shall mean plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of New York and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

4. "Complaint" shall mean the Complaint for Permanent Injunction and Other Equitable Relief filed in this Action on or about January 9, 2017 (Dkt. No. 1).

5. "Quincy" shall mean Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, and Quincy Bioscience Manufacturing, LLC, collectively.

6. "Defendants" shall mean Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, Quincy Bioscience Manufacturing, LLC, and Mark Underwood, collectively.

7. "Prevagen" shall mean the Prevagen® brand dietary supplement.

8. "Investigation" shall mean the investigation conducted by the Federal Trade Commission relating to the marketing and advertising of Prevagen® prior to filing the Action.

9. "Concerning" or "concern" shall mean directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting on, impinging or impacting upon, affecting, responding to, supporting, pertaining to, showing, describing, analyzing, reflecting, or constituting.

10. "Correspondence" and "communication(s)" shall refer to any and all written or electronic communications of any kind, including without limitation, e-mails, text messages, instant messages, documents, letters, forms, memoranda, reports, notes, worksheets, drafts, working papers, contracts, agreements, or other papers whether handwritten, typed, printed, or reproduced photostatically or photographically, including all film, microfilm, photographs, audiotapes, videotapes, drawings or other visual representations and any computer, magnetic, mechanical or electronic recordings.  The terms "correspondence" and "communication(s)" extend to and specifically encompass all non-identical copies of any responsive documents and all such non-identical copies should be produced.

11. "Document" and "documents" are used herein in the broadest sense possible, and without limitation, to refer to originals (or identical copies where originals are unavailable), copies with notations, comments, analyses, and post-preparation changes and non-

identical copies of originals, of any tangible source of information of every type and description, however, and by whomever created, prepared, produced, reproduced, or disseminated, and regardless of its location, which is, as of the date of service of these document demands in the custody of, or in any way subject to the control of you or your attorneys. "Document" and "documents" also include, but are not limited to, e-mails (including any attachments), text messages, instant messages, writings, sales transaction receipts, cash register receipts, credit card receipts, credit card slips, coupons, checkbook registers, advertisements, marketing materials, letters, minutes, correspondence, telegrams, telexes, faxes, bulletins, instructions, handwritten notes, typewritten notes, notes, transcriptions, sound recordings of any kind, slides, movie film and negatives, photographs and their negatives, printouts, minutes of meetings, memoranda, inter-office communications, studies, analyses, reports, advertisements, sales listings, rental listings, broker agreements, catalogues, results of investigations, leases, contracts, licenses, agreements, working papers, statistical records, ledgers, work sheets, books of account, general ledgers, trial balances, audited and un-audited financial statements, tax returns, vouchers, charge slips, time sheets or logs, telephone messages or logs, telephone diaries, telephone bills, diaries, purchase orders, acknowledgements, invoices, price lists, registers, charts, tables, authorizations, budgets, analyses, projections, brochures, circulars, proofs, sheets, books, magazines, checks, cancelled checks, life insurance applications, illustrations, notices, bills, premium notices, cancellation notices, annual reports, notebooks, computer disks, diskettes, electronic communications of any kind, tapes or any information which can be retrieved from a computer, stenographers' notebooks, diaries, desk calendars, or papers similar to any of the foregoing. "Document" and "documents" are not limited to the manner of representation of any information called for, which includes, but is not limited to, letters, words, numbers, symbols, characters,

electronic data, pictures, graphic presentations, or sounds, or of any combination thereof. "Document" and "documents" also include, but are not limited to, preliminary drafts, versions, or revisions of any of the aforementioned, and underlying, preparatory, or supporting materials thereto.

12. "Including" means including but not limited to.

13. "Person" refers to both individuals and entities, including without limitation, any natural person, corporation, division, subsidiary, partnership, proprietorship, firm, association, company, and joint venture, whether public or private, as well as any governmental agency, division, or department.

14. "Relating to," "regarding," or "concerning," means in connection with, constituting, analyzing, connecting, containing, describing, discussing, embodying, evidencing, reporting or commenting on, inquiring about, setting forth, explaining, reflecting, identifying, stating, considering, referring to, mentioning, alluding to, or in any way pertaining to, in whole or in part or having any logical or factual connection whatsoever with the claims or defenses asserted in this Action.

15. "You" and "Your" shall refer to plaintiff NYAG as defined in paragraph 3 of the definitions set forth herein.

16. "FDA" shall mean the U.S. Food and Drug Administration and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

17. The phrase "Subject Matter of this Action" means the facts and claims alleged in the Complaint and generally any claims or defenses of any party to this Action.

**TOPICS FOR NYAG's RULE 30(b)(6) WITNESS**

1. All steps taken by the NYAG during the Investigation, including the identity and role of each NYAG employee, attorney, or agent who participated in the Investigation.

2. All on-going judicial actions, where the NYAG is a plaintiff involving any form of brain supplement product.

3. All on-going administrative actions and/or investigations conducted by the NYAG involving any form of brain supplement product.

4. All past actions and/or investigations conducted by the NYAG involving any form of brain supplement product.

5. Any and all facts alleged by the NYAG in the Complaint.

6. All damages, remedies, consumer redress or other relief sought by the NYAG in this Action.

7. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 17 of the Complaint.

8. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 27 of the Complaint.

9. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 28 of the Complaint.

10. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 29 of the Complaint.

11. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 30 of the Complaint.

12. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 31 of the Complaint.

13. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 37, 40, 43 and 45 of the Complaint.

14. Each and every fact that supports, contradicts or otherwise relates to the allegation in paragraph 46 of the Complaint that "[c]onsumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act, NY Exec. Law § 63(12), and NY GBL §§ 349 and 350" and that "Defendants have been unjustly enriched as a result of their unlawful acts or practices."

15. All consumer surveys, studies or analyses that support, contradict or otherwise relate to the NYAG's allegations that Defendants' advertising, marketing or labelling of Prevagen is false or unsubstantiated.

16. Each and every fact relating to the retail price at which Prevagen was sold compared to dietary supplements supporting brain function sold by any other manufacturer of routine dietary supplements.

17. All scientific studies, articles, analyses, meta-analyses or other literature that support, contradict or otherwise relates to the NYAG's allegations that Defendants' advertising of Prevagen is false, misleading, or unsubstantiated.

18. Each and every fact that supports, contradicts or otherwise relates to the NYAG's allegation that the Court may award rescission or reformation of any contract.

19. Each and every fact that supports, contradicts or otherwise relates to the NYAG's allegation that the Court may award restitution.

20. Each and every fact that supports or otherwise relates to the NYAG's allegation that the Court may order that monies be refunded to consumers who purchased Prevagen.

21. All communications, whether written or oral, between the NYAG and any medical doctor, epidemiologist, researcher or other medical or scientific expert regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action. This topic shall include, but is not limited to, communications with Dr. Richard P. Bazinet and Dr. Robert C. Speth.

22. All communications, whether written or oral, between the NYAG and FDA regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

23. All communications, whether written or oral, between the NYAG and any state or federal government agency regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

24. All communications, whether written or oral, between the NYAG and the plaintiffs and/or their attorneys from the following actions regarding Prevagen, apoequorin or the Subject Matter of this Action.: *Collins, et al. v. Quincy Bioscience, LLC*, No. 19-22864-Civ-COOKE/GOODMAN (S.D. Fla.); *Racies v. Quincy Bioscience, LLC,* No. 15-cv-00292-HSG (N.D. Cal.); *Vanderwerff v. Quincy Bioscience Holding Co., Inc.*, et al., No. 1:19-cv-07582-RA (S.D.N.Y.); *Karathanos v. Quincy Bioscience Holding Co., Inc.*, et al., No. 1:19-cv-08023-RA (S.D.N.Y.); *Spath v. Quincy Bioscience Holding Co., Inc.*, et al., No. 1:19-cv-03521-RA (S.D.N.Y.); *Engert, et al v. Quincy Bioscience, LLC*, No., 1:19-cv-183-LY (W.D. Tex.); *Miloro v. Quincy Bioscience, LLC*, No. 16PH-cv-01341 (Mo. Cir. Ct.).

25. All communications, whether written or oral, between the NYAG and any state prosecutor, attorneys general or regulator, or any of such state prosecutor's, attorneys general's, or regulator's employees, attorneys or agents regarding any Defendant,

Prevagen, apoaequorin or the Subject Matter of this Action. This topic shall include, but is not limited to, communications with the Orange County, California District Attorney's Office and the Office of the Attorney General of Iowa.

26. All communications, whether written or oral, between the NYAG and any consumer, including such consumer's attorneys or agents, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action, including documents sent to that consumer or such consumer's attorneys or agents.

27. All communications, whether written or oral, between the NYAG and any consumer protection organizations, including such organizations' attorneys, employees or agents, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

28. All communications, whether written or oral, between the NYAG and any manufacturer or seller of any dietary supplement relating to brain health, cognition, memory or other brain functions or any of their employees, attorneys, consultants or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

29. All communications, whether written or oral, between the NYAG and the American Association of Retired Persons, or any of its employees, attorneys, consultants or agents, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

30. All communications, whether written or oral, between the NYAG and Truth In Advertising, Truth In Advertising.org or TINA.org, or any of its employees, attorneys, consultants or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

31. All communications, whether written or oral, between the NYAG and any retailer, wholesaler, reseller, or distributor, including any employees, attorneys, consultants, or agents of such entities, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

32. All communications, whether written or oral, between the NYAG and any radio station, television station, newspaper, magazine, publication, journal, production company, media company, reporter, journalist, or talk show host, including any employees, attorneys, consultants, or agents thereof, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

33. All communications, whether written or oral, between the NYAG and CogState, including any employees, attorneys, consultants, or agents of CogState, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

34. Freedom of Information Act ("FOIA") requests sent to or received by the NYAG that relate to any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action, including the NYAG's responses to such requests and any communications related to such request.

35. The names of each of the NYAG's employees, attorneys, consultants and/or agents who has met or communicated with the employees, attorneys, consultants and/or agents of any manufacturer or seller of any dietary supplement relating to brain health, cognition, memory or other brain functions and, for each such individual, the manufacturer or seller with whom he or she met or communicated.

36. The NYAG's responses to any written discovery requests served by Defendants in this Action.

37. The procedures that the NYAG used to preserve, search for, locate and produce documents and information responsive to any written discovery requests served by Defendants in this Action, including the identification of all individuals whose emails, electronic files, and/or hard copy files were searched for potentially responsive information.

38. All communications, whether written or oral, between or among the NYAG and any of the NYAG's attorneys or agents, and any medical professional organization, or its employees, attorneys, consultants or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

39. All communications, whether written or oral, between or among the NYAG and any of the NYAG's attorneys or agents regarding the NYAG's decision to commence the Investigation.

40. All communications, whether written or oral, between or among the NYAG and any of the NYAG's attorneys or agents regarding the NYAG's decision to commence this Action.

41. All communications, whether written or oral, between the NYAG and any United States Senator or member of the United States House of Representatives, including employees, attorneys, consultants, agents, or staff members of such Senators or Representatives, regarding any Defendant, Prevagen, apoaequorin, or the Subject Matter of this Action.

42. All communications, whether written or oral, between the NYAG and James Lugo.

## **DEFINITIONS**

In addition to the definitions set forth in Rule 26.3 of the Local Rules of the United States District Courts of the Southern and Eastern Districts of New York, which are expressly incorporated herein, the following definitions shall be used throughout this notice:

1. "Action" shall mean the lawsuit captioned *Federal Trade Commission v. Quincy Bioscience Holding Company, Inc., et al.*, filed in the United States District Court for the Southern District of New York, Case No. 1:17-cv-00124-LLS.

2. "FTC" shall mean plaintiff the United States Federal Trade Commission and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

3. "NYAG" shall mean plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of New York and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

4. "Complaint" shall mean the Complaint for Permanent Injunction and Other Equitable Relief filed in this Action on or about January 9, 2017 (Dkt. No. 1).

5. "Quincy" shall mean Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, and Quincy Bioscience Manufacturing, LLC, collectively.

6. "Defendants" shall mean Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, Quincy Bioscience Manufacturing, LLC, and Mark Underwood, collectively.

7. "Prevagen" shall mean the Prevagen® brand dietary supplement.

8. "Investigation" shall mean the investigation conducted by the Federal Trade Commission relating to the marketing and advertising of Prevagen® prior to filing the Action.

9. "Concerning" or "concern" shall mean directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting on, impinging or impacting upon, affecting, responding to, supporting, pertaining to, showing, describing, analyzing, reflecting, or constituting.

10. "Correspondence" and "communication(s)" shall refer to any and all written or electronic communications of any kind, including without limitation, e-mails, text messages, instant messages, documents, letters, forms, memoranda, reports, notes, worksheets, drafts, working papers, contracts, agreements, or other papers whether handwritten, typed, printed, or reproduced photostatically or photographically, including all film, microfilm, photographs, audiotapes, videotapes, drawings or other visual representations and any computer, magnetic, mechanical or electronic recordings. The terms "correspondence" and "communication(s)" extend to and specifically encompass all non-identical copies of any responsive documents and all such non-identical copies should be produced.

11. "Document" and "documents" are used herein in the broadest sense possible, and without limitation, to refer to originals (or identical copies where originals are unavailable), copies with notations, comments, analyses, and post-preparation changes and non-

identical copies of originals, of any tangible source of information of every type and description, however, and by whomever created, prepared, produced, reproduced, or disseminated, and regardless of its location, which is, as of the date of service of these document demands in the custody of, or in any way subject to the control of you or your attorneys.  "Document" and "documents" also include, but are not limited to, e-mails (including any attachments), text messages, instant messages, writings, sales transaction receipts, cash register receipts, credit card receipts, credit card slips, coupons, checkbook registers, advertisements, marketing materials, letters, minutes, correspondence, telegrams, telexes, faxes, bulletins, instructions, handwritten notes, typewritten notes, notes, transcriptions, sound recordings of any kind, slides, movie film and negatives, photographs and their negatives, printouts, minutes of meetings, memoranda, inter-office communications, studies, analyses, reports, advertisements, sales listings, rental listings, broker agreements, catalogues, results of investigations, leases, contracts, licenses, agreements, working papers, statistical records, ledgers, work sheets, books of account, general ledgers, trial balances, audited and un-audited financial statements, tax returns, vouchers, charge slips, time sheets or logs, telephone messages or logs, telephone diaries, telephone bills, diaries, purchase orders, acknowledgements, invoices, price lists, registers, charts, tables, authorizations, budgets, analyses, projections, brochures, circulars, proofs, sheets, books, magazines, checks, cancelled checks, life insurance applications, illustrations, notices, bills, premium notices, cancellation notices, annual reports, notebooks, computer disks, diskettes, electronic communications of any kind, tapes or any information which can be retrieved from a computer, stenographers' notebooks, diaries, desk calendars, or papers similar to any of the foregoing. "Document" and "documents" are not limited to the manner of representation of any information called for, which includes, but is not limited to, letters, words, numbers, symbols, characters,

electronic data, pictures, graphic presentations, or sounds, or of any combination thereof. "Document" and "documents" also include, but are not limited to, preliminary drafts, versions, or revisions of any of the aforementioned, and underlying, preparatory, or supporting materials thereto.

12. "Including" means including but not limited to.

13. "Person" refers to both individuals and entities, including without limitation, any natural person, corporation, division, subsidiary, partnership, proprietorship, firm, association, company, and joint venture, whether public or private, as well as any governmental agency, division, or department.

14. "Relating to," "regarding," or "concerning," means in connection with, constituting, analyzing, connecting, containing, describing, discussing, embodying, evidencing, reporting or commenting on, inquiring about, setting forth, explaining, reflecting, identifying, stating, considering, referring to, mentioning, alluding to, or in any way pertaining to, in whole or in part or having any logical or factual connection whatsoever with the claims or defenses asserted in this Action.

15. "You" and "Your" shall refer to plaintiff FTC as defined in paragraph 2 of the definitions set forth herein.

16. "FDA" shall mean the U.S. Food and Drug Administration and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

17. The phrase "Subject Matter of this Action" means the facts and claims alleged in the Complaint and generally any claims or defenses of any party to this Action.

## TOPICS FOR FTC's RULE 30(b)(6) WITNESS

1. All steps taken by the FTC during the Investigation, including the identity and role of each FTC employee, attorney, or agent who participated in the Investigation.

2. All on-going judicial actions, where the FTC is a plaintiff involving any form of brain supplement product.

3. All on-going administrative actions and/or investigations conducted by the FTC involving any form of brain supplement product.

4. All past actions and/or investigations conducted by the FTC involving any form of brain supplement product.

5. Any and all facts alleged by the FTC in the Complaint.

6. All damages, remedies, consumer redress or other relief sought by the FTC in this Action.

7. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 17 of the Complaint.

8. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 27 of the Complaint.

9. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 28 of the Complaint.

10. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 29 of the Complaint.

11. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 30 of the Complaint.

12. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 31 of the Complaint.

13. Each and every fact that supports, contradicts or otherwise relates to the allegations contained in paragraph 37, 40, 43 and 45 of the Complaint.

14. Each and every fact that supports, contradicts or otherwise relates to the allegation in paragraph 46 of the Complaint that "[c]onsumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act" and that "Defendants have been unjustly enriched as a result of their unlawful acts or practices."

15. All consumer surveys, studies or analyses that support, contradict or otherwise relate to the FTC's allegations that Defendants' advertising, marketing or labelling of Prevagen is false or unsubstantiated.

16. Each and every fact relating to the retail price at which Prevagen was sold compared to dietary supplements supporting brain function sold by any other manufacturer of routine dietary supplements.

17. All scientific studies, articles, analyses, meta-analyses or other literature that support, contradict or otherwise relates to the FTC's allegations that Defendants' advertising of Prevagen is false, misleading, or unsubstantiated.

18. Each and every fact that supports, contradicts or otherwise relates to the FTC's allegation that the Court may award rescission or reformation of any contract.

19. Each and every fact that supports, contradicts or otherwise relates to the FTC's allegation that the Court may award restitution.

20. Each and every fact that supports or otherwise relates to the FTC's allegation that the Court may order that monies be refunded to consumers who purchased Prevagen.

21. All communications, whether written or oral, between the FTC and any medical doctor, epidemiologist, researcher or other medical or scientific expert regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action. This topic shall include, but is not limited to, communications with Dr. Richard P. Bazinet and Dr. Robert C. Speth.

22. All communications, whether written or oral, between the FTC and FDA regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

23. All communications, whether written or oral, between the FTC and any state or federal government agency regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

24. All communications, whether written or oral, between the FTC and the plaintiffs and/or their attorneys from the following actions regarding Prevagen, apoequorin or the Subject Matter of this Action.: *Collins, et al. v. Quincy Bioscience, LLC*, No. 19-22864-Civ-COOKE/GOODMAN (S.D. Fla.); *Racies v. Quincy Bioscience, LLC,* No. 15-cv-00292-HSG (N.D. Cal.); *Vanderwerff v. Quincy Bioscience Holding Co., Inc.*, et al., No. 1:19-cv-07582-RA (S.D.N.Y.); *Karathanos v. Quincy Bioscience Holding Co., Inc.*, et al., No. 1:19-cv-08023-RA (S.D.N.Y.); *Spath v. Quincy Bioscience Holding Co., Inc.*, et al., No. 1:19-cv-03521-RA (S.D.N.Y.); *Engert, et al v. Quincy Bioscience, LLC*, No., 1:19-cv-183-LY (W.D. Tex.); *Miloro v. Quincy Bioscience, LLC*, No. 16PH-cv-01341 (Mo. Cir. Ct.).

25. All communications, whether written or oral, between the FTC and any state prosecutor, attorneys general or regulator, or any of such state prosecutor's, attorneys general's, or regulator's employees, attorneys or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action. This topic shall include, but is not

        limited to, communications with the Orange County, California District Attorney's Office and the Office of the Attorney General of Iowa.

26. All communications, whether written or oral, between the FTC and any consumer, including such consumer's attorneys or agents, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action, including documents sent to that consumer or such consumer's attorneys or agents.

27. All communications, whether written or oral, between the FTC and any consumer protection organizations, including such organizations' attorneys, employees or agents, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

28. All communications, whether written or oral, between the FTC and any manufacturer or seller of any dietary supplement relating to brain health, cognition, memory or other brain functions or any of their employees, attorneys, consultants or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

29. All communications, whether written or oral, between the FTC and the American Association of Retired Persons, or any of its employees, attorneys, consultants or agents, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

30. All communications, whether written or oral, between the FTC and Truth In Advertising, Truth In Advertising.org or TINA.org, or any of its employees, attorneys, consultants or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

31. All communications, whether written or oral, between the FTC and any retailer, wholesaler, reseller, or distributor, including any employees, attorneys, consultants, or agents of such entities, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

32. All communications, whether written or oral, between the FTC and any radio station, television station, newspaper, magazine, publication, journal, production company, media company, reporter, journalist, or talk show host, including any employees, attorneys, consultants, or agents thereof, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

33. All communications, whether written or oral, between the FTC and CogState, including any employees, attorneys, consultants, or agents of CogState, regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

34. All Freedom of Information Act ("FOIA") requests sent to or received by the FTC that relate to any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action, including the FTC's responses to such requests and any communications related to such requests.

35. The names of each of the FTC's employees, attorneys, consultants and/or agents who has met or communicated with the employees, attorneys, consultants and/or agents of any

       manufacturer or seller of any dietary supplement relating to brain health, cognition, memory or other brain functions and, for each such individual, the manufacturer or seller with whom he or she met or communicated.

36. The FTC's responses to any written discovery requests served by Defendants in this Action.

37. The procedures that the FTC used to preserve, search for, locate and produce documents and information responsive to any written discovery requests served by Defendants in this Action, including the identification of all individuals whose emails, electronic files, and/or hard copy files were searched for potentially responsive information.

38. All communications, whether written or oral, between or among the FTC and any of the FTC's attorneys or agents, and any medical professional organization, or its employees, attorneys, consultants or agents regarding any Defendant, Prevagen, apoaequorin or the Subject Matter of this Action.

39. All communications, whether written or oral, between or among the FTC and any of the FTC's attorneys or agents regarding the FTC's decision to commence the Investigation.

40. All communications, whether written or oral, between or among the FTC and any of the FTC's attorneys or agents regarding the FTC's decision to commence this Action.

41. All communications, whether written or oral, between or among the FTC and any of the FTC's attorneys or agents regarding the FTC's vote regarding the commencement of this Action.

42. All communications, whether written or oral, between the FTC and any United States Senator or member of the United States House of Representatives, including employees, attorneys, consultants, agents, or staff members of such Senators or Representatives, regarding any Defendant, Prevagen, apoaequorin, or the Subject Matter of this Action.

43. All communications, whether written or oral, between the FTC and James Lugo.