# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>Defendants. | Case No. 1:17-cv-00124-LLS |

### PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO CORPORATE DEFENDANTS' REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiffs, the Federal Trade Commission ("FTC") and the People of the State of New York by New York State Attorney General Letitia James ("NYAG"), hereby submit their amended responses and objections to the Requests for Admission served by Corporate Defendants.

## GENERAL OBJECTIONS

A.    Plaintiffs object to the Requests to the extent they seek information that is subject to the attorney-client privilege, the attorney work-product doctrine, the investigative privilege, the non-testifying expert privilege, the deliberative process privilege, the law enforcement privilege, the informant privilege, or the common interest privilege.

B.    Plaintiffs object to the Requests to the extent they seek information that is exempt from disclosure pursuant to confidentiality provisions set forth in the FTC Act, applicable New York law, or that is protected from disclosure by the privilege for information given to the FTC on a Pledge of Confidentiality.

C.    By responding to the Requests, Plaintiffs do not concede that the information admitted or denied is relevant, material, or admissible in evidence.

D.    Plaintiffs' objections and responses to the Requests are based on information now known to Plaintiffs.  Plaintiffs have not yet completed fact and expert discovery or prepared for trial and therefore reserve their rights under the Federal Rules and Local Rules to amend, modify, or supplement their objections and responses if they learn of new information.

E.    Plaintiffs object to the definition of "Action" to the extent that it mischaracterizes the caption of the case.

F.    Plaintiffs object to the definitions of "Concerning," "Concern," "Document," "Documents," and "Person" to the extent that they are inconsistent with Local Rule 26.3(c).  For the purposes of their responses to these Requests for Admission, Plaintiffs will treat each of these terms consistently with Local Civil Rule 26.3(c).

G.    Plaintiffs object to the definition of "Correspondence" to the extent that it is inconsistent with the definitions of "communication" and "document" referenced in Local Civil Rule 26.3(c).

H.      Plaintiffs object to the definition of "Relating to" and "Regarding" to the extent that they

are inconsistent with the definition of "concerning" referenced in Local Civil Rule 26.3.

I.       Plaintiffs incorporate each of the foregoing General Objections into each of the

Responses hereinafter set forth.  Subject to and without waiving any General Objections and the

additional objections set forth below, Plaintiffs provide the following responses.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

**Request for Admission 1:**  Admit that Prevagen is a dietary supplement.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case.

The term "dietary supplement" has no legal meaning or significance under the FTC Act and New

York laws at issue in this case.  Food and Drug Administration ("FDA") law and regulations

define the term "dietary supplement," however, that definition does not apply to or modify the

FTC Act or New York law governing whether marketing claims are false, misleading, and/or

unsubstantiated.  Moreover, under FDA law, a product may be either a drug or a dietary

supplement depending on how it is marketed.  A product sold as a dietary supplement is

considered by FDA to be an unapproved drug if it is marketed to diagnose, mitigate, treat, cure,

or prevent a disease.  21 U.S.C. § 343(r)(6).  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 2:**  Admit that Prevagen is not a drug.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case.

FDA law and regulations define the term "drug," however, that definition does not apply to or

modify FTC or New York law governing whether claims are false, misleading, and/or

unsubstantiated.  Under the FTC and New York laws at issue in this case, Plaintiffs require

competent and reliable scientific evidence to substantiate the challenged claims whether or not

Prevagen would be treated as a drug or dietary supplement by the FDA.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 3:**  Admit that the marketing and labeling for Prevagen changed over time.

**Response:**  Plaintiffs object to the term "changed over time" as vague and ambiguous. Notwithstanding this objection, Plaintiffs admit that there have been changes in the wording of statements, the imagery, the use of graphs and charts, and other specific elements of marketing and labeling for Prevagen over time, but deny that there have been material changes in the net impression conveyed by the marketing and labeling that Prevagen provides memory and other cognitive benefits and that such benefits are backed by scientific evidence.

**Request for Admission 4:** Admit that some consumers benefit from consuming Prevagen.

**Response:** Deny.

**Request for Admission 5:**   Admit that Quincy provides a 100% money-back guarantee for individual consumers who wish to return any Prevagen purchased regardless of whether they purchase it directly from Quincy, through a retailer or other authorized seller.

**Response:**  Plaintiffs lack sufficient information to admit or deny this Request as worded because Plaintiffs do not have all records pertaining to Quincy's refund policies and the issuance of refunds.  Plaintiffs admit that Quincy has provided some records indicating that the company has issued refunds for some Prevagen purchases.

**Request for Admission 6:**  Admit that You are unaware of any consumer who was denied a requested refund for Prevagen.

**Response:**  Plaintiffs deny this Request to the extent that the consumer complaints Plaintiffs produced in discovery included some complaints indicating that the consumer wanted a refund. It is not clear from those complaints whether the consumer requested and was denied a refund.

**Request for Admission 7:**  Admit that You are unaware of any retailer or wholesaler who was denied a requested refund for Prevagen.

**Response:**  Admit.

**Request for Admission 8:**  Admit that You apply the competent and reliable scientific evidence standard when evaluating the substantiation of dietary supplement advertising claims.

**Response:**  Plaintiffs admit that a number of factors determine the amount and type of substantiation required to substantiate claims for dietary supplements and that, for claims about the efficacy or safety of dietary supplements and other health-related products, these factors translate to a standard of "competent and reliable scientific evidence."  As applied to the claims challenged in this case, competent and reliable scientific evidence means randomized, controlled human clinical studies ("RCTs") that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.

**Request for Admission 9:**  Admit that Your standard for evaluating the substantiation of dietary supplement advertising claims is sufficiently flexible to ensure that consumers have full access to information about emerging areas of science.

**Response:**  Plaintiffs object that this Request is vague and ambiguous as to the language "sufficiently flexible to ensure that consumers have full access to information about emerging areas of science."  Plaintiffs further object that this Request is not relevant to any claim or defense in this case because there is no emerging area of science for the challenged claims. Defendants have not produced any valid scientific evidence to support any human benefit of

orally-administered apoaequorin for any population.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Claims about the health-related benefits of products, including the claims challenged in this case, should be carefully worded to avoid overstating the certainty of science in areas where the science is still emerging.  Notwithstanding these objections, Plaintiffs admit that emerging science can sometimes be the basis for a carefully qualified claim, provided the advertiser makes consumers aware of any significant limitations or inconsistencies in the scientific literature, including the existence of any studies that fail to show the claimed effect and the need for additional clinical testing to substantiate the claim.  Plaintiffs otherwise deny.

**Request for Admission 10:**  Admit that You have stated that there is no fixed formula for the number or type of studies required to establish competent and reliable scientific evidence to support a dietary supplement advertising claim.

**Response:**  Plaintiffs object that this Request is vague and ambiguous.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Plaintiffs admit that the parameters of an RCT, such as the sample size, duration, and outcome measures, will vary depending on the exact nature of the hypothesis being tested and accepted research norms in the relevant field.  Plaintiffs further admit that there is no requirement for a specific number of RCTs.  Plaintiffs otherwise deny.

**Request for Admission 11:**  Admit that You will consider all forms of competent and reliable scientific research when evaluating substantiation for dietary supplement advertising claims.

**Response:**  Plaintiffs object that this Request is vague and ambiguous.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Plaintiffs admit that they consider high-quality epidemiologic evidence in limited cases where such evidence is considered an acceptable substitute for RCTs by experts in the relevant field and RCTs are not otherwise feasible.  Plaintiffs further admit that animal and *in vitro* studies may provide useful supporting or background information, but, without confirmation by RCTs, they are not sufficient to substantiate claims such as those challenged in this case.  Plaintiffs otherwise deny.

**Request for Admission 12:**  Admit that You will consider results obtained in animal studies when evaluating substantiation of advertising claims for dietary supplements.

**Response:**  Plaintiffs object that this Request is vague and ambiguous.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Plaintiffs admit that they consider high-quality epidemiologic evidence in limited cases where such evidence is considered an acceptable substitute for RCTs by experts in the relevant field and RCTs are not otherwise feasible.  Plaintiffs further admit that animal and *in vitro* studies may provide useful supporting or background information, but, without confirmation by RCTs, they are not sufficient to substantiate claims such as those challenged in this case.  Plaintiffs otherwise deny.

**Request for Admission 13:**  Admit that You have stated that human clinical studies are not required to substantiate advertising claims for dietary supplements.

**Response:**  Plaintiffs object that this Request is vague and ambiguous.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Plaintiffs admit that they consider high-quality epidemiologic evidence in limited cases where such evidence is considered an acceptable substitute for RCTs by experts in the relevant field and RCTs are not otherwise feasible.  Plaintiffs further admit that animal and *in vitro* studies may provide useful supporting or background information, but, without confirmation by RCTs, they are not sufficient to substantiate claims such as those challenged in this case.  Plaintiffs otherwise deny.

**Request for Admission 14:**  Admit that You have stated that you do not require dietary supplement advertising claims to be supported by any specific number of studies.

**Response:**  Plaintiffs object that this Request is vague and ambiguous.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Plaintiffs admit that the parameters of an RCT, such as the sample size, duration, and outcome measures, will vary depending on the exact nature of the hypothesis being tested and accepted research norms in the relevant field.  Plaintiffs further admit that there is no requirement for a specific number of RCTs.  Plaintiffs further state that all relevant studies must be considered in evaluating the adequacy of substantiation for a claim, both those that support the claimed benefit and those that do not.  Plaintiffs otherwise deny.

**Request for Admission 15:**  Admit that You have stated that you will consider published peer-reviewed articles when evaluating substantiation for dietary supplement advertising claims.

**Response:**  Plaintiffs admit that they consider both published, peer-reviewed RCTs and unpublished, proprietary RCTs.  Plaintiffs do not consider the mere fact that a study is published, however, to be a guarantee of quality or proof that the product is effective.  The rigor of peer review varies widely from journal to journal, with some journals accepting studies based on little more than payment of a publication fee.  In evaluating both published and unpublished studies, Plaintiffs consider the quality of the study and whether it meets accepted standards in the relevant field of research to yield accurate and reliable results.  Plaintiffs otherwise deny.

**Request for Admission 16:**  Admit that You have stated that you will consider unpublished, proprietary research when evaluating substantiation for dietary supplement advertising claims.

**Response:**  Plaintiffs admit that they consider both published, peer-reviewed RCTs and unpublished, proprietary RCTs.  Plaintiffs do not consider the mere fact that a study is published, however, to be a guarantee of quality or proof that the product is effective.  The rigor of peer review varies widely from journal to journal, with some journals accepting studies based on little more than payment of a publication fee.  In evaluating both published and unpublished studies, Plaintiffs consider the quality of the study and whether it meets accepted standards in the relevant field of research to yield accurate and reliable results.  Plaintiffs otherwise deny.

**Request for Admission 17:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any human clinical research involving Prevagen.

**Response:**  Plaintiffs object to the extent that this Request seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to the extent that the Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  In addition, Plaintiffs note that it is Defendants' legal responsibility to have adequate

substantiation for their claims before disseminating those claims in advertising and marketing. Subject to and without waiving these objections, Plaintiffs admit.

**Request for Admission 18:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any human clinical research involving apoaequorin.

**Response:**  Plaintiffs object to the extent that this Request seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to the extent that the Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  In addition, Plaintiffs note that it is Defendants' legal responsibility to have adequate substantiation for their claims before disseminating those claims in advertising and marketing. Subject to and without waiving these objections, Plaintiffs admit.

**Request for Admission 19:**  Admit that You have stated that a double-blind, placebo-controlled human clinical trial is not required to establish competent and reliable scientific evidence to support a dietary supplement efficacy claim.

**Response:**  Plaintiffs object that this Request is vague and ambiguous.  Claims such as those challenged in this case require support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Plaintiffs admit that they consider high-quality epidemiologic evidence in limited cases where such evidence is considered an acceptable substitute for RCTs by experts in the relevant field and RCTs are not otherwise feasible.  Plaintiffs further admit that animal and *in vitro* studies may provide useful supporting or background information, but, without confirmation by RCTs, they are not sufficient to substantiate claims such as those challenged in this case.  Plaintiffs otherwise deny.

**Request for Admission 20:**  Admit that Quincy conducted a double-blind placebo-controlled human clinical study measuring the cognitive benefits of apoaequorin.

**Response:**  Plaintiffs deny that Quincy has conducted any properly blinded human clinical study measuring the cognitive benefits of apoaequorin that would meet accepted standards in the relevant field of research to yield accurate and reliable results.

**Request for Admission 21:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any research on animals or human beings to determine whether apoaequorin can cross the human blood brain barrier.

**Response:**  Plaintiffs object to the extent that this Request seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to the extent that the Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  In addition, Plaintiffs note that it is Defendants' legal responsibility to have adequate substantiation for their claims before disseminating those claims in advertising and marketing. Subject to and without waiving these objections, Plaintiffs admit.

**Request for Admission 22:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any research on animals or human beings to determine whether apoaequorin can cross the human gastrointestinal barrier.

**Response:**  Plaintiffs object to the extent that this Request seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to the extent that the Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  In addition, Plaintiffs note that it is Defendants' legal responsibility to have adequate

substantiation for their claims before disseminating those claims in advertising and marketing. Subject to and without waiving these objections, Plaintiffs admit.

**Request for Admission 23:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any study that supports the allegation in paragraph 29 of the Complaint that the "methodology" allegedly used by Quincy in the Madison Memory Study "greatly increases the probability that some statistical significance differences would occur by chance alone."

**Response:**  Plaintiffs object to the premise of this Request as incorrect to the extent it assumes that a study would be necessary to support the allegation that the methodology used in the Madison Memory Study "greatly increases the probability that some statistically significant results would occur by chance alone."  Plaintiffs further object to the extent that this Request seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to this Request as mischaracterizing paragraph 29 of the Complaint, which references "statistically significant differences."  In addition, Plaintiffs object to this Request because it seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Finally, Plaintiffs note that it is Defendants' legal responsibility to have adequate substantiation for their claims before disseminating those claims in advertising and marketing. Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 24:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any consumer market research related to Prevagen and/or the Challenged Advertising.

**Response:**  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to this Request because it seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving these objections, Plaintiffs admit.

**Request for Admission 25:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any consumer surveys related to Prevagen and/or the Challenged Advertising.

**Response:**  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to this Request because it seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving these objections, Plaintiffs admit.

**Request for Admission 26:**  Admit that You have not conducted, nor have You caused any person or entity to conduct, any statistical analysis on the data from the Madison Memory Study.

**Response:**  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object to this Request because it seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 27:**  Admit that there is evidence to support apoaequorin's potential ability to enter the human central nervous system.

**Response:** Plaintiffs object to this Request as vague and ambiguous as to the language "enter the human central nervous system." Plaintiffs further object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Plaintiffs further object to this Request because it seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Notwithstanding these objections, Plaintiffs deny that there is any evidence that orally-administered apoaequorin has the ability to enter the human central nervous system.

**Request for Admission 28:** Admit that there is evidence to support apoaequorin's potential ability to enter the human brain.

**Response:** Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Plaintiffs further object to this Request because it seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Notwithstanding these objections, Plaintiffs deny that there is any evidence that orally-administered apoaequorin has the ability to enter the human brain.

**Request for Admission 29:** Admit that You do not have evidence that apoaequorin does not have a biological effect on the human brain.

**Response:** Plaintiffs object to the extent that this Request seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. In addition, Plaintiffs note that it is Defendants' legal responsibility to have adequate

substantiation for their claims before disseminating those claims in advertising and marketing.

Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 30:**  Admit that apoaequorin does not need to cross the blood brain

barrier to have a biological effect on the human brain.

**Response:**  Plaintiffs object to the extent that this Request seeks information protected from

disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object

to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope

of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local

Rules.  In addition, Plaintiffs note that it is Defendants' legal responsibility to have adequate

substantiation for their claims before disseminating those claims in advertising and marketing.

Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 31:**  Admit that a protein can have a biological effect on the human

brain without crossing the blood brain barrier.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case.

Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior

to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders,

and applicable Local Rules.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 32:**  Admit that an amino acid can have a biological effect on the human

brain without crossing the blood brain barrier.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case.

Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior

to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders,

and applicable Local Rules.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 33:**  Admit that a peptide can have a biological effect on the human brain without crossing the blood brain barrier.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case. Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 34:**  Admit that there are FDA-approved drugs for which the mechanism of action is unknown.

**Response:**  Plaintiffs object that this Request is vague and ambiguous as to the language "mechanism of action is unknown."  Plaintiffs further object on the grounds that this Request is not relevant to any claim or defense in this case.  Plaintiffs further object that they lack sufficient information to respond to this Request, which relates to information and knowledge within the purview of the Food and Drug Administration.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 35:**  Admit that there are dietary supplements currently available for sale in the United States for which the mechanism of action is unknown.

**Response:**  Plaintiffs object that this Request is vague and ambiguous as to the language "mechanism of action is unknown" and that this Request is not relevant to any claim or defense in this case.  Plaintiffs further object that they lack sufficient information to admit or deny.

**Request for Admission 36:**  Admit that You never issued a regulation or guidance precluding statistical analysis of a subgroup of participants of a clinical study.

**Response:**  Plaintiffs object to this Request because the absence of a regulation or guidance specifically precluding such analysis is not relevant to any claim or defense in this case, including the question of whether selective post hoc subgroup analyses conducted on the

- 16 -

Madison Memory Study provide substantiation for the challenged claims. Plaintiffs further state that, for claims such as those challenged in this case, Plaintiffs require substantiation in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field. In addition, FTC case law has addressed the limited evidentiary value of subgroup analyses. *See, e.g.*, *POM Wonderful, LLC v. F.T.C.*, 777 F.3d 478, 485–86 (D.C. Cir. 2015). Notwithstanding these objections, Plaintiffs admit that they have not issued any specific regulation or guidance that precludes statistical analysis of a subgroup of participants of a clinical study.

**Request for Admission 37:** Admit that FDA approval is not required for structure/function claims relating to dietary supplements.

**Response:** Plaintiffs object that this Request is not relevant to any claim or defense in this case. The term "structure/function claims" has no legal meaning or significance under the FTC Act and New York laws at issue in this case. The FDA's definition of and requirements for "structure/function claims" in dietary supplement labeling do not apply to or modify FTC or New York law governing whether claims are false, misleading, and/or unsubstantiated. Moreover, while FDA law does not require prior agency approval of structure/function claims for dietary supplement labeling, FDA does require that the dietary supplement manufacturer have substantiation in the form of competent and reliable scientific evidence that such claims are truthful and not misleading. 21 U.S.C. § 403(r)(6); FDA, "Guidance for Industry: Substantiation for Dietary Supplement Claims Made under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act." (Aug. 31, 2011). Notwithstanding these objections, Plaintiffs admit that the FDA does not require prior approval of structure/function claims relating to dietary supplements.

**Request for Admission 38:**  Admit that the use of subgroup analysis is common in nutrition and dietary supplement research.

**Response:**  Plaintiffs object to the terms "use" and "common" as vague and ambiguous. Plaintiffs object that whether or not the use of subgroup analysis is common in nutrition and dietary supplement research is not relevant to any claim or defense in this case.  Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 39:**  Admit that the FTC, NYAG and/or FDA have never issued a regulation or guidance suggesting that statistical significance must be found in the entire population of a clinical study to support a dietary supplement advertising claim.

**Response:**  Plaintiffs object that the existence or absence of FDA guidance on any issue is not relevant to any claim or defense in this case.  Nor is the absence of FTC or NYAG guidance "suggesting that statistical significance must be found for the entire population of a clinical study to support a dietary supplement advertising claim" determinative of whether the statistical analyses of Defendants' study data have been properly conducted in this case.  For claims such as those challenged in this case, the FTC has provided guidance that it requires support in the form of RCTs that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Notwithstanding these objections, Plaintiffs admit that they have not issued any specific guidance "suggesting that statistical significance must be found in the entire population of a clinical study to support a dietary supplement advertising claim."

**Request for Admission 40:** Admit that the Madison Memory Study showed a statistically significant improvement on the Groton Maze Recall task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 0 as compared to day 90.

**Response:** Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 41:** Admit that the Madison Memory Study showed a statistically significant improvement on the Groton Maze Recall task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 90 as compared to participants in the placebo arm with an AD8 score within the range of 0-1 at day 90.

**Response:** Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 42:** Admit that the Madison Memory Study showed a statistically significant improvement on the Groton Maze Recall task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 0 as compared to day 90.

**Response:** Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 43:**  Admit that the Madison Memory Study showed a trend toward statistically significant improvement on the Groton Maze Recall task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-2 at day 90.

**Response:**  Plaintiffs object to the phrase "trend toward statistically significant improvement" as vague and ambiguous.  Whether or not there was a "trend toward statistically significant improvement" is not relevant to any claim or defense in this case.  Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 44:**  Admit that the Madison Memory Study showed a statistically significant improvement on the Groton Maze Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 0 as compared to day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 45:**  Admit that the Madison Memory Study showed a trend toward statistically significant improvement on the Groton Maze Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-1 at day 90.

**Response:**  Plaintiffs object to the phrase "trend toward statistically significant improvement" as vague and ambiguous.  Whether or not there was a "trend toward statistically significant

improvement" is not relevant to any claim or defense in this case.  Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 46:**  Admit that the Madison Memory Study showed a statistically significant improvement on the Groton Maze Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 0 as compared to day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 47:**  Admit that the Madison Memory Study showed a statistically significant improvement on the Groton Maze Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-2 at day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 48:**  Admit that the Madison Memory Study showed a statistically significant improvement on the International Shopping List task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 0 as compared to day 90.

- 21 -

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 49:**  Admit that the Madison Memory Study showed a trend toward statistically significant improvement on the International Shopping List task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-1 at day 90.

**Response:**  Plaintiffs object to the phrase "trend toward statistically significant improvement" as vague and ambiguous.  Whether or not there was a "trend toward statistically significant improvement" is not relevant to any claim or defense in this case.  Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 50:**  Admit that the Madison Memory Study showed a statistically significant improvement on the International Shopping List task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 0 as compared to day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 51:**  Admit that the Madison Memory Study showed a trend toward statistically significant improvement on the International Shopping List-Delayed Recall task for

participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 0 as compared to day 90.

**Response:**  Plaintiffs object to the phrase "trend toward statistically significant improvement" as vague and ambiguous.  Whether or not there was a "trend toward statistically significant improvement" is not relevant to any claim or defense in this case.  Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 52:**  Admit that the Madison Memory Study showed a trend toward statistically significant improvement on the International Shopping List-Delayed Recall task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 0 as compared to day 90.

**Response:**  Plaintiffs object to the phrase "trend toward statistically significant improvement" as vague and ambiguous.  Whether or not there was a "trend toward statistically significant improvement" is not relevant to any claim or defense in this case.  Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 53:**  Admit that the Madison Memory Study showed a trend toward statically significant improvement on the One Card Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 0 as compared today 90.

**Response:**  Plaintiffs object to the phrase "trend toward statistically significant improvement" as vague and ambiguous.  Whether or not there was a "trend toward statistically significant

- 23 -

improvement" is not relevant to any claim or defense in this case. Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 54:** Admit that the Madison Memory Study showed a statistically significant improvement on the One Card Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-1 at day 90.

**Response:** Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 55:** Admit that the Madison Memory Study showed a statistically significant improvement on the One Card Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 0 as compared to day 90.

**Response:** Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules. Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 56:** Admit that the Madison Memory Study showed a statistically significant improvement on the One Card Learning task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-2 at day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 57:**  Admit that the Madison Memory Study showed a statistically significant improvement on the Detection task for participants in the apoaequorin arm with an AD8 score within the range of 0-1 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-1 at day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 58:**  Admit that the Madison Memory Study showed a statistically significant improvement on the Identification task for participants in the apoaequorin arm with an AD8 score within the range of 0-2 at day 90 as compared to participants in the placebo arm with an AD8 score in the range of 0-2 at day 90.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 59:**  Admit that the FTC and/or FDA have never issued guidance that any specified amount of statistical significance must be found for a dietary supplement to make memory claims.

**Response:**  Plaintiffs object to the phrase "specified amount of statistical significance" as vague and ambiguous.  Plaintiffs further object that the existence or absence of FDA guidance on any issue is not relevant to any claim or defense in this case.  Nor is the absence of FTC guidance specifying a required "amount of statistical significance" that "must be found for a dietary supplement to make memory claims" relevant or determinative of whether Defendants' statistical analyses of study data has been properly conducted in this case.  For claims about health-related benefits, including those challenged in this case, the FTC has provided guidance that it generally expects support in the form of randomized, controlled human clinical studies (RCTs) that are well-designed, well-conducted, and properly analyzed according to standards generally accepted by experts in the relevant field.  Subject to and without waiving these objections, Plaintiff the FTC admits that it has not issued any formal guidance specifying the "amount of statistical significance" for memory claims for dietary supplements.  Subject to and without waiving the foregoing objections, Plaintiff the NYAG has insufficient information to admit or deny.

**Request for Admission 60:**  Admit that in August 2020 FDA approved the use of COVID-19 convalescent plasma to treat hospitalized patients with COVID-19 based, at least in part, on a study using subgroup analysis to establish its efficacy.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case.  Plaintiffs further object that they lack sufficient information to respond to any Request relating to actions taken by the Food and Drug Administration or the basis for such actions, especially when those actions are completely unrelated to the issues in this case.  Accordingly, Plaintiffs neither admit nor deny.

**Request for Admission 61:**  Admit that post hoc analyses of data can be statistically significant.

**Response:**  Plaintiffs object to this Request as ambiguous to the extent that it states that

"analyses" can be "statistically significant."  Plaintiffs objects that this Request is not relevant to

any claim or defense in this case, including the issue of whether Defendants' selective reliance

on a few of the many post hoc subgroup analyses conducted on the Madison Memory study

provides any substantiation for the challenged claims.  Post hoc analyses may provide data that is

valuable for directing future research, but they are not sufficient to substantiate advertising and

marketing claims about a product's efficacy.  Plaintiffs further object on the grounds that an

accurate response to this Request depends on a number of factors that would require disclosure

of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the

Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving these

objections, Plaintiffs admit that, in certain circumstances using accepted statistical methodology,

the results of a post hoc analysis may be statistically significant.

**Request for Admission 62:** Admit that the You do not have any evidentiary or clinical support

for Your allegation in Paragraph 29 of the Complaint regarding the Madison Memory Study that

"the few positive findings on isolated tasks for small subgroups of the study population do not

provide reliable evidence of a treatment effect."

**Response:**  Plaintiffs object to the extent that this Request seeks information protected from

disclosure by the attorney-client privilege or the work product doctrine.  Plaintiffs further object

to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope

of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local

Rules.  Subject to and without waiving these objections, Plaintiffs deny.

**Request for Admission 63:**  Admit that You do not dispute that the Madison Memory Study was a *bona fide* scientific study carried out by qualified professionals using appropriate testing methods.

**Response:**  Plaintiffs object to the phrase "*bona fide* scientific study" as vague and ambiguous. Plaintiffs further object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Notwithstanding these objections, Plaintiffs deny.

**Request for Admission 64:**  Admit that the Madison Memory Study is a 90-day randomized, double-blind, placebo controlled study.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs state that they lack sufficient information to admit or deny that the Madison Memory Study was a 90-day study or that there was a proper placebo control and deny that the Madison Memory Study was properly blinded or randomized.

**Request for Admission 65:**  Admit that You are not challenging the results of any research and/or study on Prevagen and/or apoaequorin.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 66:**  Admit that You are not challenging the results of any research and/or study on Prevagen and/or apoaequorin, other than the Madison Memory Study.

**Response:**  Plaintiffs object to the extent that this Request seeks disclosure of expert testimony prior to, or beyond the scope of, the requirements of Fed. R. Civ. P. 26, the Court's scheduling orders, and applicable Local Rules.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 67:**  Admit that the Challenged Advertising does not make any statements concerning the ability of apoaequorin to cross the human blood-brain barrier.

**Response:**  Deny.

**Request for Admission 68:**  Admit that the Challenged Advertising claims are "structure/function claims."

**Response:**  Plaintiffs object to this Request as vague and ambiguous in that it purports to quote language but does not cite the source of the quote.  Plaintiffs further object that this Request is not relevant to any claim or defense in this case.  The term "structure/function claim" has no legal meaning or significance under the FTC and New York laws at issue in this case.  The Food and Drug Administration defines the term "structure/function claim" for labeling; however, that definition does not apply to or modify FTC or New York law governing whether claims are false, misleading, and/or unsubstantiated.  Subject to and without waiving these objections, Plaintiffs lack sufficient information to admit or deny.

**Request for Admission 69:**  Admit that the Challenged Advertising claims are not disease claims.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case. The term "disease claim" has no legal meaning or significance under the FTC and New York laws at issue in this case.  The Food and Drug Administration defines the term "disease claim" for labeling; however, that definition does not apply to or modify FTC or New York law

governing whether claims are false, misleading, and/or unsubstantiated.  Subject to and without waiving these objections, Plaintiffs lack sufficient information to admit or deny.

**Request for Admission 70:**  Admit that Defendants have not made any disease claims on any Prevagen package between January 9, 2017 and the present.

**Response:**  Plaintiffs object that the term "disease claims" has no legal relevance under the FTC and New York laws at issue in this case.  Plaintiffs further object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Plaintiffs lack sufficient information to admit or deny this Request because Defendants produced only a sample of the Prevagen packages that were disseminated.

**Request for Admission 71:**  Admit that Defendants have not made any disease claims on any Prevagen label between January 9, 2017 and the present.

**Response:**  Plaintiffs object that the term "disease claims" has no legal relevance under the FTC and New York laws at issue in this case.  Plaintiffs further object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Plaintiffs lack sufficient information to admit or deny this Request because Defendants produced only a sample of the Prevagen labels that were disseminated.

**Request for Admission 72:**  Admit that Defendants have not made any disease claims in any Prevagen advertisement or marketing material between January 9, 2017 and the present.

**Response:**  Plaintiffs object that the term "disease claims" has no legal relevance under the FTC and New York laws at issue in this case.  Plaintiffs further object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Plaintiffs lack sufficient information to admit or deny this Request because Defendants produced only a sample of the Prevagen advertisements and marketing materials that were disseminated.

**Request for Admission 73:**  Admit that, between January 9, 2017 and the present, Prevagen's packaging has included the FDA disclaimer that Prevagen is not intended to "diagnose, treat, cure or prevent any disease."

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Plaintiffs lack sufficient information to admit or deny this Request in its entirety because Defendants produced only a sample of the Prevagen packaging that was disseminated.  Notwithstanding these objections, Plaintiffs admit that some Prevagen packaging has included the FDA disclaimer that Prevagen is not intended to "diagnose, treat, or cure or prevent any disease."

**Request for Admission 74:**  Admit that, between January 9, 2017 and the present, Prevagen's labeling has included the FDA disclaimer that Prevagen is not intended to "diagnose, treat, cure or prevent any disease."

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Plaintiffs lack sufficient information to admit or deny this Request in its entirety because Defendants produced only a sample of the Prevagen labeling that was disseminated.  Notwithstanding these objections, Plaintiffs admit that some of Prevagen's labeling has included the FDA disclaimer that Prevagen is not intended to "diagnose, treat, or cure or prevent any disease."

**Request for Admission 75:**  Admit that all of the Challenged Advertising includes the FDA disclaimer that Prevagen is not intended to "diagnose, treat, cure or prevent any disease."

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case. Plaintiffs lack sufficient information to admit or deny this Request because Defendants produced only a sample of the labels, packages, packaging inserts, point-of-sale displays, advertisements,

television commercials, marketing materials, and/or promotional materials concerning Prevagen that were disseminated.  Notwithstanding these objections, Plaintiffs admit that some of the advertising has included the FDA disclaimer that Prevagen is not intended to "diagnose, treat, or cure or prevent any disease."

**Request for Admission 76:**  Admit that You do not allege in the Complaint that Defendants marketed Prevagen to diagnose, treat, cure or prevent any disease between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Notwithstanding this objection, Plaintiffs state that the net impression of Defendants' advertising and marketing may convey to consumers a claim that Prevagen can help treat or prevent cognitive decline associated with age-related diseases, like dementia and Alzheimer's disease.  Subject to and without waiving this objection, Plaintiffs deny.

**Request for Admission 77:**  Admit that any class action settlement that provides injunctive relief would moot the FTC and NYAG's allegations that any consumer was injured as a result of the Challenged Advertising.

**Response:**  Plaintiffs state that an agreement providing for injunctive relief does not "moot" Plaintiffs' factual allegations as to consumer injury.  Plaintiffs do not need to demonstrate injury in order to prevail on their claims in this matter.  Moreover, any injunctive relief obtained in a class action settlement would not preclude Plaintiffs from obtaining appropriate injunctive relief in this matter.  In any event, regardless of the outcome of any class action, substantial consumer injury resulted from the fact that, as a result of Defendants' false and/or unsubstantiated advertising, consumers paid in excess of $165 million (minus refunds) for Defendants' products.

Accordingly, Plaintiffs deny.

**Request for Admission 78:**  Admit that any monies Quincy pays to consumers pursuant to the settlement of a class action regarding the Challenged Advertising will reduce the amount of money that You can recover from Quincy.

**Response:**  Plaintiffs seek relief necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, New York Executive Law, and New York General Business Law, including but not limited to rescission or reformation of contracts, restitution, and the refund of monies paid.  Plaintiffs additionally seek the disgorgement of ill-gotten gains. Plaintiff the NYAG additionally seeks civil penalties in an amount up to $5,000 for each violation of New York General Business Law §§349 and 350, pursuant to New York General Business Law § 350-d.  Plaintiffs additionally seek an award of the costs of bringing this action, as well as such other and additional relief as may be just and proper.  Any monies paid to consumers pursuant to the settlement of a class action regarding the challenged advertising would only be relevant to rescission, reformation of contracts, restitution, and refunds, and would only serve to offset the amount to which Plaintiffs are entitled.  Thus, for example, if a consumer expended $300 to purchase Prevagen, such consumer would be entitled to monetary relief in the amount of $300.  If that consumer received $3 pursuant to the settlement of a class action regarding the challenged advertising, Plaintiffs would still be entitled to $297 in relation to that consumer, in addition to the other categories of monetary relief to which Plaintiffs are entitled.  Accordingly, Plaintiffs deny.

**Request for Admission 79:**  Admit that the bar graph depicted in Exhibit A of the Complaint has not appeared on any Prevagen label between January 9, 2017 and the present.

**Response:**  Plaintiffs object that the phrase "has not appeared" is vague and ambiguous and that

this Request, including the reference to dates, is not relevant to any claim or defense in this case. Plaintiffs further object that they lack sufficient information to determine how long Prevagen products with any specific label remained in either Defendants' inventory or the inventory of third-party retailers. Subject to and without waiving these objections, Plaintiffs neither admit nor deny.

**Request for Admission 80:**  Admit that the bar graph depicted in Exhibit A of the Complaint has not appeared on any Prevagen package between January 9, 2017 and the present.

**Response:**  Plaintiffs object that the phrase "has not appeared" is vague and ambiguous and that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Plaintiffs further object that they lack sufficient information to determine how long Prevagen products with any specific package remained in either Defendants' inventory or the inventory of third-party retailers. Subject to and without waiving these objections, Plaintiffs neither admit nor deny.

**Request for Admission 81:**  Admit that the bar graph depicted in Exhibit A of the Complaint has not appeared on any Prevagen advertisement between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants produced only a sample of the labels, packages, packaging inserts, point-of-sale displays, advertisements, television commercials, marketing materials, and/or promotional materials concerning Prevagen that were disseminated.

**Request for Admission 82:**  Admit that the advertisement depicted in Exhibit B-1 of the Complaint has not been disseminated between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to

any claim or defense in this case.  Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Plaintiffs do not have all advertisements disseminated between January 9, 2017 and the present.

**Request for Admission 83:**  Admit that the website screen-capture attached as Exhibit C to the Complaint was captured on December 10, 2015.

**Response:**  Admit.

**Request for Admission 84:**  Admit that the website screen-captures attached as Exhibit C to the Complaint have not been reflected on the www.prevagen.com website between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced captures of all versions of the website www.prevagen.com between January 9, 2017 and the present.

**Request for Admission 85:**  Admit that The Brain Health Guide, Fourth Edition, depicted in Exhibit D of the Complaint, has not been disseminated by Quincy between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced information sufficient to show all instances of dissemination of The Brain Health Guide, Fourth Edition, depicted in Exhibit D to the Complaint.

**Request for Admission 86:**  Admit that The Better Memory Show depicted in Exhibit E-1 of the Complaint has not been disseminated by Quincy between January 9, 2017 and the present.

- 35 -

**Response:** Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced information sufficient to show all instances of dissemination of The Better Memory Show depicted in Exhibit E-1 to the Complaint.

**Request for Admission 87:** Admit that The Better Memory Show depicted in Exhibit E-2 of the Complaint has not been disseminated by Quincy between January 9, 2017 and the present.

**Response:** Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced information sufficient to show all instances of dissemination of The Better Memory Show depicted in Exhibit E-2 to the Complaint.

**Request for Admission 88:** Admit that the bus depicted in Exhibit F of the Complaint has not appeared on any Prevagen label between January 9, 2017 and the present.

**Response:** Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced information sufficient to show all depictions on Prevagen labels disseminated by Quincy between January 19, 2017 and the present.

**Request for Admission 89:** Admit that the bus depicted in Exhibit F of the Complaint has not appeared on any Prevagen package between January 9, 2017 and the present.

**Response:** Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Moreover, Plaintiffs lack sufficient information to admit or

deny this Request because Defendants have not produced information sufficient to show all depictions on Prevagen packages disseminated by Quincy between January 19, 2017 and the present.

**Request for Admission 90:**  Admit that the bus depicted in Exhibit F of the Complaint has not appeared on any Prevagen advertisement between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Moreover, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced information sufficient to show all depictions in Prevagen advertisements between January 9, 2017 and present.

**Request for Admission 91:**  Admit that the website www.hopetrials.com was taken down prior to January 9, 2017.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Moreover, Plaintiffs lack sufficient information to admit or deny this Request because they do not have information sufficient to show when the website www.hopetrials.com was taken down.

**Request for Admission 92:**  Admit that Quincy did not publish any written analysis of the MS Hope Trial on any of its websites.

**Response:**  Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced all versions of all of Quincy's websites.

**Request for Admission 93:**  Admit that Quincy did not publish any written analysis of the Fibromyalgia Study on any of its websites.

**Response:**  Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced all versions of all of Quincy's websites.

- 37 -

**Request for Admission 94:**  Admit that the phrase "Brain Cell Protection" has not been used on any Prevagen package between January 9, 2017 and the present.

**Response:**  Plaintiffs object to the term "been used" as vague and ambiguous.  Plaintiffs further object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Subject to and without waiving these objections, Plaintiffs state that they lack sufficient information to admit or deny this Request because Defendants have not produced all versions of Prevagen packages disseminated between January 9, 2017 and the present, nor have they produced all versions of Prevagen packages that were available between January 9, 2017 and the present.

**Request for Admission 95:**  Admit that the phrase "Brain Cell Protection" has not been used on any Prevagen label between January 9, 2017 and the present.

**Response:**  Plaintiffs object to the term "been used" as vague and ambiguous.  Plaintiffs further object that this Request, including the reference to dates, is not relevant to any claim or defense in this case. Subject to and without waiving these objections, Plaintiffs state that they lack sufficient information to admit or deny this Request because Defendants have not produced all versions of Prevagen packages disseminated between January 9, 2017 and the present, nor have they produced all versions of Prevagen labels that were available between January 9, 2017 and the present.

**Request for Admission 97:**  Admit that the phrase "Brain Cell Protection" has not been used on any Prevagen advertisement between January 9, 2017 and the present.

**Response:**  Plaintiffs object that this Request, including the reference to dates, is not relevant to any claim or defense in this case.  Notwithstanding this objection, Plaintiffs lack sufficient information to admit or deny this Request because Defendants have not produced information

- 38 -

sufficient to show all depictions in Prevagen advertisements between January 9, 2017 and the present.

**Request for Admission 97:** Admit that the FTC's decision to file the Complaint in this action was approved by a vote of two FTC Commissioners.

**Response:** Plaintiffs object that this Request is not relevant to any claim or defense in this case. Defendants are attempting to resurrect a baseless and spurious charge that the FTC's vote to authorize the complaint against them was improper. The Court has summarily rejected that charge on two occasions, first in its July 24, 2019 Opinion and Order ruling that the FTC's three-Commissioner quorum was valid, and again in its March 2, 2020 Order granting Plaintiffs' motion to strike Defendants' affirmative defense that the FTC's filing of the Complaint lacked a valid quorum. Notwithstanding this objection Plaintiff the FTC denies. Three Commissioners voted on the decision to file the Complaint, with two voting yes, and one voting "not participating." Subject to and without waiving the foregoing objection, Plaintiff the NYAG has insufficient information to admit or deny.

**Request for Admission 98:** Admit that the FTC has never approved the filing of a federal court complaint on a vote of two or less FTC commissioners.

**Response:** Plaintiffs object that this Request is not relevant to any claim or defense in this case. Defendants are attempting to resurrect a baseless and spurious charge that the FTC's vote to authorize the complaint against them was improper. The Court has summarily rejected that charge on two occasions, first in its July 24, 2019 Opinion and Order ruling that the FTC's three-Commissioner quorum was valid, and again in its March 2, 2020 Order granting Plaintiffs' motion to strike Defendants' affirmative defense that the FTC's filing of the Complaint lacked a valid quorum. Notwithstanding this objection, Plaintiff the FTC denies. Subject to and without

waiving the foregoing objection, Plaintiff the NYAG has insufficient information to admit or deny.

**Request for Admission 99:**  Admit that, on or about June 13, 2018, FDA issued a Closeout Letter with respect to the issues raised in FDA's October 16, 2012 Warning Letter.

**Response:**  Plaintiffs object that this Request is not relevant to any claim or defense in this case. Subject to and without waiving this objection, Plaintiffs admit that Defendants have produced a document that appears to be a letter issued by the FDA on or about June 13, 2018, which document speaks for itself.

**Request for Admission 100:** Admit that prior to the August 21, 2020 deposition of Mark Underwood in this Action, You were not aware of the June 13, 2018 Closeout Letter issued by FDA.

**Response:** Plaintiffs object that this Request is not relevant to any claim or defense in this case. Subject to and without waiving this objection, Plaintiffs admit that they were not aware of the document that appears to be a letter issued by the FDA on or about June 13, 2018 prior to August 21, 2020.

Dated:    November 24, 2020

/s/Michelle K. Rusk
MICHELLE K. RUSK
ANNETTE SOBERATS
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20850
202-326-3148, mrusk@ftc.gov
202-326-2921, asoberats@ftc.gov
202-326-3126, eglennon@ftc.gov
202-326-3259 (facsimile)
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

LETITIA JAMES
Attorney General of the State of New York
By:  /s/Kate Matuschak
JANE M. AZIA
Bureau Chief
KATE MATUSCHAK
Assistant Attorney General
STEPHEN MINDELL
Special Assistant Attorney General
Consumer Frauds and Protection Bureau
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6189; Fax: (212) 416-6003
Email: kate.matuschak@ag.ny.gov

## CERTIFICATE OF SERVICE

I CERTIFY that on this 24th day of November, 2020, I served the foregoing Plaintiffs'

Amended Objections and Responses to Corporate Defendants' Requests for Admission

electronically by email to the attorneys of record on the Service List below.

*/s/ Michelle K. Rusk*
Michelle Rusk

## SERVICE LIST

Kate Matuschak
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-6189
kate.matuschak@ag.ny.gov
*Attorney for People of the State of New York*
*by New York State Attorney General Letitia James*

Geoffrey W. Castello, III.
Glenn T. Graham
Jaclyn M. Metzinger
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
(212) 808-7800
gcastello@kelleydrye.com
ggraham@kelleydrye.com
jmetzinger@kelleydrye.com
*Attorneys for Quincy Bioscience Holding*
*Co., Inc., et al.*

John H. Villafranco
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C.  20007
(202) 342-8423
jvillafranco@kelleydrye.com
*Attorney for Quincy Bioscience Holding*
*Co., Inc., et al.*

Michael B. de Leeuw
Tamar S. Wise
Cozen O'Connor
45 Broadway Atrium, Suite 1600
New York, NY 10006
(212) 908-1331
mdeleeuw@cozen.com
twise@cozen.com
*Attorneys for Mark Underwood*