KCEPFTCC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FEDERAL TRADE COMMISSION,
PEOPLE OF THE STATE OF NEW YORK,

                    Plaintiffs,

              v.                          17 CV 0124 (LLS)
                                          Telephone Conference
QUINCY BIOSCIENCE HOLDING
COMPANY, INC., ET AL.,

                    Defendants.

------------------------------x
                                          New York, N.Y.
                                          December 14, 2020
                                          2:03 p.m.

Before:

                    HON. LOUIS L. STANTON,

                                          District Judge

                    APPEARANCES VIA TELECONFERENCE

FEDERAL TRADE COMMISSION
        Attorneys for Plaintiff FTC
BY:  ANNETTE SOBERATS
        MICHELLE K. RUSK

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
        Attorneys for Plaintiff State of New York
BY:  KATHRYN A. MATUSCHAK

KELLEY DRYE & WARREN LLP
        Attorneys for Defendants
BY:  GEOFFREY W. CASTELLO, III
              AND
COZEN O'CONNOR
        Attorneys for Defendants
BY:  MICHAEL B. deLEEUW

KCEPFTCC

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Good afternoon.

3          UNIDENTIFIED SPEAKERS:  Good afternoon.

4          THE COURT:  I hear two male voices and one female, and

5     so I can figure out the first one is Ms. Soberats and/or

6     Ms. Matuschak.  I think you better state your name when you're

7     speaking, which also will be clearer for the record.

8          I have just read Quincy's December 10 letter

9     responding to the FTC.  Maybe the FTC should go first.  I must

10    say, I thought his letter was quite clear, the FTC's letter,

11    but why doesn't the FTC say whatever it wants to say orally and

12    then we can have Quincy reply?

13          MS. SOBERATS:  Yes, your Honor.  This is Annette

14    Soberats speaking on behalf of the Federal Trade Commission.

15          Your Honor, the defendants have communicated to the

16    FTC that they would like to proceed with the rule 30(b)(6)

17    deposition of our agency --

18          THE COURT:  Look, Ms. Soberats --

19          MS. SOBERATS:  Yes.

20          THE COURT:  -- I've read the correspondence.

21          MS. SOBERATS:  Yes.

22          THE COURT:  Don't tell me background stuff that we all

23    know.

24          MS. SOBERATS:  Correct.  Well, as I stated in our

25    letter, we believe that the Court's order was very clear that

KCEPFTCC

1    it was barring the 30(b)(6) deposition of both agencies, and in

2    that order, the Court did not direct the FTC to produce a

3    witness on any topic.

4         It's our understanding that defendants would like

5    clarification of the order, but we believe the Court's order

6    was very clear and that the Court agreed with us that --

7         THE COURT:  Ms. Soberats.

8         MS. SOBERATS:  Yes?

9         THE COURT:  Ms. Soberats, if you're just repeating

10   what you said in the letter, then I feel responsible to answer.

11   I do not think the order was perfectly clear, I'm sorry to say.

12   But the defendant is correct in its interpretation that I was

13   only dealing with the matters before me, which is my usual

14   practice, I think most courts' usual practice.

15        And so the topics which I did not rule on, the

16   remaining ones that I did not regard as being at issue, are

17   open for the deposition.  That's the good news for Quincy.

18        The good news for the government and for the witness

19   is that in allowing those questions to go forward, I am laying

20   great stress on the word "topics."  In other words, in the

21   identification of the topics and the discussion of it in the

22   letters, no precise questions were put and no factual matters

23   were discussed and, therefore, why I am letting the questioning

24   on those topics go forward is simply because it is possible

25   that there may be something interesting to this case that falls

KCEPFTCC

1    under those topics and that could be explored by questioning.

2         The range of topics is very, very broad, but that does

3    not mean that the range of the questioning will be very, very

4    broad.  The issues in this case are quite finite.  What would

5    be allowed in evidence respecting them is quite apparent to any

6    trial lawyer, and it's not going to include the vast amount of

7    material which might be, in an uncontrolled deposition, allowed

8    to be sought.  That is not the procedure that's to be followed.

9         I am merely deferring to the questioning process the

10   responsibility of counsel to confine his questions or her

11   questions to those that have something to do with this case,

12   and a whole lot of discussion with other people and other cases

13   under other circumstances regarding other topics is not part of

14   that inquiry.

15        So that is really the framework of our discussion.

16        MS. SOBERATS:  Yes, your Honor.  This is Annette

17   Soberats from the Federal Trade Commission.

18        And I would just like to clarify that, based on the

19   order, there were certain topics that the Court did prohibit

20   for the FTC.  So the Court is referring to those topics that

21   remain?  That's my understanding.

22        THE COURT:  Exactly.  I should have started by saying

23   that I'm embarrassed that the first sentence of the second full

24   paragraph on page 4 said:  "Accordingly, plaintiff's motion for

25   a protective order barring the rule 30(b)(6) depositions of the

KCEPFTCC

1    NYAG and the FTC is granted."  I think, technically, that may

2    fairly be read to mean there won't be any depositions.  That is

3    not the intention of that order.

4         The intention of the order is that the protective

5    order is granted with respect to those items that were being

6    discussed, and on the others, it simply made no ruling at all.

7    And now the time to go forward with the depositions has come.

8    I am forecasting to counsel, in fairness, what the rules

9    respecting that deposition will be, and I'm sorry to have

10   written something that sent you off on these wild hunts.

11        Now, while I have the floor, I'll deal with another

12   point that was raised and the ruling, of course, is that any

13   ruling that applies to one plaintiff, also applies to the

14   other.  I think the government had some doubt about that but,

15   of course, they get the benefit and the non-benefit of whatever

16   the ruling on the same point made as to their partner in the

17   case applies to them.

18        Now, where does that leave us this afternoon?

19        MS. SOBERATS:  Your Honor, this is Annette Soberats

20   for the FTC.

21        Thank you for your clarification of the order.  We

22   understand the Court's ruling, and we will proceed with

23   conferring with counsel on a date for 30(b)(6) depositions for

24   the FTC on the topics that the Court did not rule upon.

25        THE COURT:  Thank you.  And I must say, from your

KCEPFTCC

1    letters, it looks as though the FTC has been pretty forthcoming

2    on this.

3              MS. SOBERATS:  Yes, your Honor.

4              THE COURT:  I say that simply following the

5    representations of counsel.  I haven't seen any of the

6    underlying data, as you know.

7              MS. SOBERATS:  Your Honor, this status conference was

8    originally calendared for the purpose of setting an expert

9    discovery schedule, and I wanted to let the Court know that the

10   parties have met and conferred and agreed on deadlines for

11   initial expert reports, rebuttal reports and expert

12   depositions.

13             THE COURT:  Oh, yes, yes.  Those have to be expanded

14   to allow the work to be done.

15             MS. SOBERATS:  Yes.

16             THE COURT:  Let me ask you -- who am I talking to?

17             MS. SOBERATS:  This is Annette Soberats from the

18   Federal Trade Commission.

19             THE COURT:  I'm curious, if we're shifting ground, I

20   have a question to put to the lawyers for Quincy, but I'll

21   withhold it.  And from your voice, I suspect that I'm still

22   talking to the government lawyers.  Is there anything further

23   that you wish to present?

24             MS. SOBERATS:  Your Honor, on behalf of the FTC, I

25   just wanted to let the Court know what the parties have decided

KCEPFTCC

1    on the expert discovery schedule, but there is another --

2              THE COURT:  Oh, you can do that in writing.

3              MS. SOBERATS:  Yes, we will.

4              THE COURT:  Whatever you work out, I'm going to

5    approve.

6              MS. SOBERATS:  Okay.

7              THE COURT:  You're the ones that have to do the work,

8    not I.  And it's much better for me to let -- you're

9    experienced, responsible counsel.  I'm not going to second

10   guess you.

11             MS. SOBERATS:  Yes.  And on behalf of plaintiffs,

12   there is another dispute concerning fact discovery that we

13   wanted to bring to the Court's attention.  We have been trying

14   to obtain intelligible dissemination information for the TBN

15   radio advertisements that contain the challenged claim.  This

16   is information that is critical to our ability to prepare for

17   trial and to provide defendants with a sample of the ads that

18   we are challenging, which the Court also ordered us to do.

19             THE COURT:  What is the information you want?

20             MS. SOBERATS:  We would like to know when specific TV

21   and radio ads ran and where.

22             THE COURT:  Oh.

23             MS. SOBERATS:  Yes, that's information that we need,

24   your Honor, to produce a fair representation of the ads that we

25   are challenging, as this Court ordered us to do on

KCEPFTCC

December 3rd.

           THE COURT:  Is that the only way you can get it?

           MS. SOBERATS:  We have tried to obtain that

information from the defendants, and they provided us with a

list that contains titles for ads that we cannot recognize, and

we've been trying to work with them.  We went back and we

identified the ads that we believe they're referring to, and we

simply asked them to confirm, yes or no, that we were matching

up those ads to the proper Bates numbers in their production.

           And the defendants informed us on Friday that they

will not provide us with that simple "yes" or "no"

confirmation, your Honor.

           THE COURT:  Why not?

           MS. SOBERATS:  They believe they are under no

obligation to do that.

           THE COURT:  Let them speak for themselves.

           MS. SOBERATS:  Yes.

           MR. CASTELLO:  Your Honor, this is Castello for the

corporate defendants.

           I don't think the story is as simple as it's being

conveyed to your Honor this afternoon.  We have gone back and

forth on this issue for months and months.  It is our position

that we've provided all of the information regarding the

dissemination of advertisements and marketing pieces that we've

produced.

KCEPFTCC

```
 1            And we apparently have a disagreement, but I would
 2    say, your Honor, I absolutely do not agree that we haven't
 3    produced the data or have refused to give it.  And I would
 4    suggest that there might be a better way of going about this
 5    because if your Honor will recall, the defendants took issue
 6    with the fact that the FTC and the NYAG would not identify the
 7    specific advertisements that they were challenging in this
 8    action.  And your Honor has required, through the order, both
 9    of those agencies to provide us, the defendants, with a sample
10    of those ads.
11            And so we're now being asked to do exactly what the
12    FTC said it wouldn't do, and I suggest that maybe a better way
13    to go about it is for the FTC and NYAG to put together their
14    sample of representative ads and give them to us, to the
15    defendants.  And we will go and try to determine what
16    dissemination information exists for them that we have not
17    already provided.
18            THE COURT:  It seems to me much more practical that if
19    they want to identify what a specific ad is that they ask you,
20    that you should say "yes" or "no."  That allows them a freer
21    and more accurate hand in preparing their sample.
22            While we're talking, what information of value to
23    Quincy -- not in the abstract, but for use at trial -- are you
24    seeking with respect to all of these wide collateral topics of
25    what they did in other cases, what individual employees may
```

KCEPFTCC

1    have seen or said or written or perceived?  What are the jury

2    points that you are seeking?

3             MR. CASTELLO:  With respect to the other cases, your

4    Honor, that we've sought information on, specifically with

5    respect to other manufacturers and advertisers of brain health

6    supplements, we would like to know what it was that the FTC did

7    with those other investigations and actions to determine

8    whether or not the treatment here is disparate compared to

9    those other cases because I believe --

10            THE COURT:  Why is that relevant or interesting?

11            MR. CASTELLO:  Well, your Honor, I think it's relevant

12   because it helps us determine why we are the target of this

13   lawsuit when other manufacturers and advertisers of brain

14   health supplements might not be.

15            Your Honor, the other reason for the depositions, and

16   if your Honor has narrowed it earlier, I understand what your

17   Honor has said, and we will abide by your Honor's direction.

18            But there is no difference between these agencies and

19   any other civil litigant in federal district court.  And part

20   of the issue with depositions is you learn at the deposition

21   things that you did not know before, and if you are foreclosed

22   from taking that deposition, you'll never have the opportunity

23   to even pursue questions and topics for investigation that

24   might be relevant.

25            And so, I am not looking to take a deposition of

KCEPFTCC

1    either one of these agencies just for the purpose of taking a

2    deposition.  I'd like to learn what I don't already know from a

3    litigant, a civil litigant in an action in the same manner in

4    which both of those agencies took the deposition of the

5    defendants.

6           THE COURT:  But there is no general underlying rule

7    that the agency must do in one case, on the facts as perceived

8    in that case, in the same way in this case with the facts as

9    perceived by them in this case.  There's simply no parallel,

10   and I'm trying to speculate on something along that line that I

11   would allow you to argue to a jury, and I simply haven't found

12   it yet and I'm not hearing it.

13          MR. CASTELLO:  Well, your Honor, I don't know what

14   information either one of these agencies may have in their

15   possession that I would consider to be --

16          THE COURT:  I'm allowing you to seek it for that

17   reason.  I don't know either.  But in taking that deposition, I

18   want you to be aware you're on very thin ice because I think

19   the whole search is off the point of the issues that we're

20   going to be trying in this case, which is FTC against Quincy,

21   not FTC against anybody else.

22          MR. CASTELLO:  I appreciate that, your Honor, but if I

23   may just to continue.  For instance, if FTC has considered

24   evidence from another manufacturer that one of -- and for that

25   reason did not pursue either an action or came to some other

KCEPFTCC

determination through the use of that material that was

produced by that defendant, and I thought that that was

something that I wanted to share with my expert to determine

whether we're talking about apples to oranges or apples to

apples, that's the type of information I'd be interested in.

I'd also be interested in learning what type of

exculpatory information or evidence these agencies may possess

because I believe that's directly relevant to their claims in

this action.  We have a fundamental disagreement about science

here, and I would like to be able to visit with our experts

what we learn at these depositions.

There might not be anything of value there, your

Honor, and we certainly wouldn't argue to a jury extraneous or

irrelevant material.  I just don't know right now what I don't

know.

THE COURT:  Of what interest is it in this case that

there's an inconsistency between the way the FTC is approaching

this one and the way it approached some other one?

MR. CASTELLO:  If in another case, your Honor, the

defendant came forward with scientific substantiation for its

claims that my expert believed is exactly the type of

scientific substantiation that Quincy has provided, I'd like to

be able to argue to a jury that the arbitrary decision by an

agency to pursue one defendant or one manufacturer over another

when they have the same level of substantiation is relevant, it

KCEPFTCC

1    means something.  And it should mean something to a juror what

2    those apples and apples are and how that fits in in the context

3    of this action.

4            MS. SOBERATS:  Your Honor, this is Annette Soberats

5    from the FTC --

6            THE COURT:  Excuse me.  Hold on a moment.

7            I would think that if the evidence, the scientific

8    view on the facts was on facts that were very much the same as

9    the issues in this case, that that might give you a ground to

10   argue that they were right in that case and are wrong in this

11   case.  And that might make an argument that you could make to

12   the jury, and it's for considerations like that that I'm

13   allowing you to go forward delicately, narrowly and factually

14   along that line, to see if anything like that turns up.

15           I think that's within your legitimate trial

16   preparation.  But I have no faith in the argument that the mere

17   inconsistency shows some bias or antipathy outside of the facts

18   on the part of the government agency.  But I'm letting you go

19   forward to develop, if you can, just that kind of argument.

20           MR. CASTELLO:  Thank you.  Thank you, your Honor.

21           THE COURT:  I would expect that the source for it

22   would have been found in the scientific community, rather than

23   in the legal community, but I am hopelessly naive in these

24   matters.

25           Ms. Soberats, I think I cut you off.

KCEPFTCC

1          MS. SOBERATS:  Yes.  Your Honor, thank you for

2    allowing me to respond.  I just wanted to clarify that the FTC

3    has responded in writing to defendants' interrogatory asking us

4    to identify, for the past ten years, other actions that we have

5    brought against dietary supplement companies that have marketed

6    products for memory or improved cognition.  And one of the

7    outstanding requests that they have is to question us on

8    identifying every FTC employee who has ever communicated --

9          THE COURT:  I'm not going to entertain that kind of

10   question.  It falls by its own weight.  There's not a judge

11   sitting in this court who wouldn't say that isn't too broad

12   and, of course, it's vacated as too broad.

13         MS. SOBERATS:  Thank you, your Honor.  I also would

14   like to clarify, there have been multiple references to a jury

15   trial.  It is plaintiff's view that this is a case in equity

16   and that, on that basis, it should proceed as a bench trial,

17   your Honor.

18         THE COURT:  I'm not sure I understood what you were

19   saying.  I'm actually sure I didn't understand what you were

20   saying.

21         MS. SOBERATS:  Oh, I'm sorry.  I'll try to be clearer.

22   There have been several references during this status

23   conference to a jury, and it is plaintiff's view that the trial

24   should be a bench trial.

25         THE COURT:  Oh, but are you seeking only injunctive

KCEPFTCC

1  relief?

2          MS. SOBERATS:  We are seeking injunctive relief and

3  ancillary equitable monetary relief.

4          THE COURT:  What's the equitable extra relief?

5          MS. SOBERATS:  We are seeking redress in the form of

6  consumer refunds, and if that is not feasible, your Honor, we

7  would be seeking disgorgement.

8          THE COURT:  Well, you see, there you're edging, I

9  think, out of equity.  I understand, I do, that it's a

10  descendent of equity, but when you get down to dollars and

11  cents and the payment from one to another, you're pretty close

12  to a law situation.  That's why I've been considering it as a

13  jury trial throughout.  I do recognize, of course, that the

14  main relief is the injunction, but the damages in these cases

15  is a non-trivial.

16          MS. SOBERATS:  And, your Honor, courts have routinely

17  rejected jury demands in FTC cases, and we believe that the law

18  in the Second Circuit is clear that the type of relief we're

19  seeking is equitable in nature.

20          And we also believe that the defendants have waived

21  their right to a jury trial.  They filed their answer over a

22  year ago, and they did not raise a jury trial in their answer

23  or 14 days later, as would have been required under rule 38.

24          But regardless, your Honor, we think that the law is

25  very clear in the Second Circuit that the type of relief that

KCEPFTCC

1    plaintiffs are seeking is equitable in nature and, therefore,

2    this case should proceed as a bench trial.

3         THE COURT:  What do you think about that,

4    Mr. Castello?

5         MR. CASTELLO:  Yes, your Honor.  Castello for the

6    corporate defendants.

7         A couple of issues there, your Honor.  We have, and I

8    believe your Honor in the order that was issued on -- I'm

9    sorry, I'm just going to grab the date here; it's document

10   148 -- on December 3rd did reference a jury trial.

11        In our case management order and at the conference,

12   your Honor, we did raise the issue of a jury trial.  And I

13   would also note that NYAG is seeking relief under the GBL and

14   has demanded a relief in the form of civil penalties, and that

15   is not an equitable matter, your Honor.

16        And I would disagree with Ms. Soberats' and the FTC's

17   position that disgorgement or restitution are strictly

18   equitable.  I believe that, as your Honor mentioned, it teeters

19   on the edge of law and equity.  And with the amount of money at

20   issue here, I believe that it is a proper issue to put before a

21   juror.

22        MS. MATUSCHAK:  Your Honor, this is Kate Matuschak for

23   the Attorney General, if I could be permitted to respond?

24        THE COURT:  Sure.

25        MS. MATUSCHAK:  Thank you, your Honor.  We agree with

KCEPFTCC

1    the FTC's position that it's quite clear that there's been a

2    waiver of the jury trial demand here.

3           In addition, yes, we are also seeking restitution and

4    disgorgement, both of which sound in equity, and this case is

5    also seeking injunctive relief; so this case is really

6    equitable in nature.

7           It is true that we are also seeking penalties under

8    GBL section 350(d), but that portion of the relief we were

9    seeking is ancillary to this action, which really does sound in

10   equity.

11          So if the Court is inclined to disagree on that, we

12   would respectfully request the opportunity to brief the Court

13   so that we could show the Court the case law that we have that

14   supports our position that this case is not one in which the

15   defendants are entitled to a jury trial.

16          THE COURT:  I think it's an interesting question, and

17   I'm certainly not going to rule this afternoon from the hip.  I

18   do think you should brief it, and we should all have a chance

19   to think about it.  Frankly, I've simply formed the impression

20   that I described to you earlier, that it was a jury case, but

21   if it's really an issue, it's an issue that's important and

22   should be briefed briefly and thoughtfully and to the point and

23   decided promptly.  You're free to do that.

24          The defendant says they already made a jury demand at

25   a conference, and I think you have to take that seriously in

KCEPFTCC

1    your waiver argument.  But I don't remember the date of the

2    conference or the relationship to the pleading under rule

3    30(a), but it's an important point and I would want to think

4    about it.

5         It makes a big difference to the trial and may make a

6    difference to the outcome because the jury doesn't have to

7    explain their reasoning.  My mind has been a great deal opened

8    on it by what the FTC has said, but as you know, and is in

9    almost every court a kind of a bias towards a jury and if

10   there's any really serious reasons supporting it.  And on that,

11   I'm drawing a blank because this is the first time I've heard

12   it.

13        MS. MATUSCHAK:  This is Kate Matuschak from the

14   New York Attorney General again.  Thank you, your Honor.  I

15   really appreciate your willingness to consider the issue, and

16   we would be happy to brief it for the Court.

17        THE COURT:  Is there anything else we should deal with

18   now?

19        MS. MATUSCHAK:  Your Honor, this is Kate Matuschak

20   again from the New York Attorney General's Office.

21        I just wanted to flag for the Court that we may or may

22   not be coming to the Court with respect to an issue of fact

23   discovery because defendants have not given us a definitive

24   answer on whether they will give us discovery essential for us

25   to determine our financial relief that we would request.

KCEPFTCC

1          Defendants have taken the position that discovery

2     necessary for our financial relief is not relevant until

3     liability is determined.  They have committed to giving us

4     their financial statements after liability is determined in

5     this case because their sales and advertising are continuing,

6     and so the restitution and disgorgement and penalty amounts are

7     accumulating.

8          But in addition to some financial statements, we've

9     also requested an updated response to the written discovery

10    requests related to penalties and to disgorgement, and we have

11    not yet received a response as to whether defendants will do

12    that.  So we may be coming to the Court for relief on that in

13    coming weeks.

14         MR. CASTELLO:  Your Honor, if I may?  This is

15    Castello.  I think that was a pitch, perhaps, for a jury trial,

16    but I'll leave that for your Honor's eye for another day.  But

17    what I did want to say, once again, we have a disagreement over

18    the amount of discovery, I suppose, or the up-to-date nature of

19    the discovery.

20         We have already provided voluminous financial data

21    regarding sales sold, and I would note that it was the NYAG

22    that also proposed holding in abeyance further production of

23    financial information pending a determination on liability,

24    which I think makes good sense.

25         THE COURT:  Are you talking about bifurcating this

KCEPFTCC

1    case?

2           MS. MATUSCHAK:  No, your Honor.  I think the NYAG --

3           THE COURT:  No, I'm asking Mr. Castello.  He wants to

4    withhold financial information pending a determination of

5    liability, I thought he said.

6           MR. CASTELLO:  And that was a proposal that the NYAG

7    had entertained, and all I said, your Honor, was I believe

8    that, at this point, they have all of the financial information

9    up to a date certain.  We have not withheld it.

10          What we are withholding is the continuous

11   back-and-forth production of financial information as that data

12   continues to develop month after month.

13          So it's just going to be numbers that will change,

14   your Honor.  The substance won't.  Just the numbers will, and

15   that information is not relevant at this stage.  There's

16   nothing in the case or at trial that would require that

17   information now.

18          THE COURT:  Well, the bringing of the case does not

19   entitle the FTC to a continuing audit of the defendants'

20   earnings or conduct of its business.  So maybe a suspense in

21   that and then an updating of it, to the extent needed, just

22   before trial might serve everybody's purposes.

23          I must say that, on the whole, and putting aside the

24   flotilla of arguments presented on every point by both sides,

25   that on the whole, the production in this case has been very

KCEPFTCC

| 1 | reasonable.  And after a lot of huffing and puffing, there is a
| 2 | grownup disclosure of the things the other side needs and
| 3 | should have.
| 4 |         And I really urge you to continue in that way.  It's
| 5 | the way trial lawyers should act.  The case has to be, in the
| 6 | end, tried on the whole.  The relevant things have to emerge
| 7 | and be heard.  The lawyers are supposed to facilitate that and
| 8 | not encumber it with a whole lot of petty arguments or hopeful
| 9 | detours.  And I think, on the whole, you've come around in each
| 10 | case to a rather reasonable outcome.  So I urge you to continue
| 11 | that, and I'll try to write clearer orders.
| 12 |         MR. CASTELLO:  Thank you, your Honor.
| 13 |         MS. SOBERATS:  Thank you, your Honor.
| 14 |         MS. MATUSCHAK:  Thank you, your Honor.
| 15 |         THE COURT:  Thanks very much.  Bye now.
| 16 |         (Adjourned)