**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and | Case No. 1:17-cv-00124-LLS |
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | |
| Plaintiffs, | |
| v. | **DEFENDANTS' BRIEF IN REPLY TO PLAINTIFFS' OPPOSITION TO A JURY TRIAL** |
| QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation; | |
| QUINCY BIOSCIENCE, LLC, a limited liability company; | |
| PREVAGEN, INC., a corporation d/b/a SUGAR RIVER SUPPLEMENTS; | |
| QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; | |
| MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................. 2

II.   DEFENDANTS DID NOT WAIVE THEIR RIGHT TO A JURY TRIAL..................... 4

III.  THE PRIMARY RELIEF BEING SOUGHT BY PLAINTIFFS IS LEGAL IN
      NATURE ...................................................................................................... 9

      A.    Plaintiffs Are Primarily Seeking Monetary Relief................................ 10
      B.    The FTC May Not Be Permitted To Recover Monetary Relief At All ............... 12

IV.   CONCLUSION............................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Ins. Co. v. Kennedy to Use of Bogash*,
   301 U.S. 389 (1937)................................................................................................4

*AMG Capital Mgmt., LLC v. Federal Trade Commission*,
   No. 19-508 (U.S. pet. Filed Oct. 18, 2019)..............................................12, 13, 14

*AMG Capital Mgmt., LLC v. Federal Trade Commission*,
   No. 19-508 2019 WL 5390115 (U.S.) (appellate petition Oct. 18, 2019) ..............13

*Beacon Theaters, Inc. v. Westover*,
   359 U.S. 500 (1959)................................................................................................9

*Berisford Capital Corp. v. Syncom Corp.*,
   650 F. Supp. 999 (S.D.N.Y. 1987) .........................................................................4

*Dairy Queen, Inc. v. Wood*,
   369 U.S. 469 (1962)................................................................................................9

*Favors v. Coughlin*,
   877 F.2d  219 (2d Cir. 1989)...................................................................................5

*Ginsberg v. Twayne Publishers, Inc.*,
   600 F. Supp. 247 (S.D.N.Y. 1984) .........................................................................5

*Lanza v. Drexel & Co.*,
   479 F.2d 1277 (2d. Cir. 1973).................................................................................7

*Macheda v. Household Fin. Realty Corp. of New York*,
   No. 1:04-CV-0325 GTS/GJD, 2009 WL 113474 (N.D.N.Y. Jan. 15, 2009)............9

*McCarthy v. Bronson*,
   906 F.2d 835 (2d Cir. 1990)....................................................................................6

*Palmer v. Angelica Healthcare Servs. Grp., Inc.*,
   170 F.R.D. 88 (N.D.N.Y. 1997)...........................................................................5, 8

*People v. First American Corp.*,
   No. 406796/07, 2011 WL 6002680 (Sup. Ct. N.Y. Cnty. Nov. 18, 2011) ..............12

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946)................................................................................................12

*Ross v. Bernhard*,
   396 U.S. 531 (1970)..................................................................................................11

*Tull v. United States*,
   481 U.S. 412 (1987)....................................................................................1, 9, 11, 12

*United States v. Dish Network, L.L.C.*,
   754 F. Supp. 2d 1002 (C.D. Ill. 2010) ......................................................................9

*United States v. J. B. Williams Co., Inc.*,
   498 F.2d 414 (2d Cir. 1974).......................................................................................9

*United States v. United States Currency in the Sum of Ninety Seven Thousand
   Two Hundred Fifty-Three Dollars*,
   No. 95-cv-3982 JG, 1999 WL 84122 (E.D.N.Y. Feb. 11, 2019)..............................6

*Walker v. Edison Chouest Offshore, L.L.C.*,
   No. 04 Civ. 2954 (MBM), 2006 WL 2212464 (S.D.N.Y. Aug. 3, 2006)..................6

*Washington v. New York City Bd. of Estimate*,
   709 F.2d 792 (2d Cir. 1983).......................................................................................7

*Winant v. Carefree Pools*,
   118 F.R.D. 28 (E.D.N.Y. 1988) .................................................................................5

**Statutes**

FTC Act Section 13(b).........................................................................................10, 12, 13, 14

**Other Authorities**

Fed. R. Civ. P. 38.....................................................................................1, 2, 4, 5, 7, 14

Fed. R. Civ. P. 39.............................................................................................2, 8, 9, 15

9 Wright & Miller, Federal Practice and Procedure § 2318 (4th Ed Oct. 2020
   Update)........................................................................................................................5

## PRELIMINARY STATEMENT

Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., Quincy Bioscience Manufacturing, LLC ("Quincy") and Mark Underwood (collectively "Defendants") submit this brief in reply to Plaintiffs' brief in opposition to a jury trial (Dkt. No. 155.)

"The right of trial by jury as declared by the Seventh Amendment to the Constitution – or as provided by a federal statute – is preserved to the parties inviolate." Fed. R. Civ. P. 38(a); *Tull v. United States*, 481 U.S. 412, 416 (1987). Despite this, Plaintiffs—arms of the federal government and the State of New York—seek to vitiate Defendants' right under the guise of a so-called waiver. Defendants provided sufficient and valid notice of their jury demand.

Defendants demanded a jury trial more than a year and a half ago, both in writing in the parties' joint case management statement as well as orally during contemporaneous negotiations over the provisions of that statement. Those negotiations occurred in May 2019, months *before* Defendants filed their answers. Thus, there was no need for Defendants to reiterate their jury demand in their answers, as Plaintiffs suggest. Plaintiffs have known of Defendants' jury demand for well over a year, and their claim that they first became aware of the demand at a December 2020 status conference is disingenuous, at best. There was no waiver.

Waiver aside, Plaintiffs also argue that Defendants are not entitled to a jury trial at all. This argument is also misplaced. While Plaintiffs are seeking traditional equitable relief in the form of an injunction (even though they have never sought a preliminary injunction to halt Quincy's sales of Prevagen during the last four years of this litigation), it is clear, and Plaintiffs have admitted, that the "primary" relief being sought is monetary – both in the form of restitution/disgorgement of Quincy's net profits for its sales of Prevagen since 2007 and, in the case of the NYAG, civil

1

penalties.  This substantial monetary relief is legal in nature, implicating Defendants' right to a

jury trial.  Tellingly, Plaintiffs' brief also fails to inform the Court that the United States Supreme

Court is scheduled to rule on the nature of the monetary relief being sought in this action this term

and will decide whether such monetary relief is recoverable at all under Section 13(b) of the FTC

Act.  If the Supreme Court rules against the FTC, like many commentators believe it is likely to

do, the FTC's request for monetary relief will have to be stricken from the Complaint entirely,

leaving both Plaintiffs' claims for equitable injunctive relief and the NYAG's claim for legal

monetary relief.

This Court should (1) rule that Defendants have not waived their right to a jury trial and

order this case to be tried before a jury under Fed. R. Civ. P. 38; or, alternatively, (2) exercise its

discretion under Fed. R. Civ. P. 39 to order a jury trial given that Plaintiffs have been aware of

Defendants' intention to seek a jury trial from the outset of discovery and would suffer no prejudice

if ordered to proceed in this manner.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs commenced this action by filing the Complaint on January 9, 2017.  (Dkt. No.

1.)  On April 6, 2017, Defendants moved to dismiss the Complaint.  (Dkt. Nos. 33, 36.)  On

September 28, 2017, the Court dismissed the Complaint and Plaintiffs appealed that dismissal

order. (Dkt. Nos. 45, 47, 48.)  On May 7, 2019, following the Second Circuit's reversal and before

Defendants filed their answers, the Court scheduled a status conference for May 28, 2019 (the

"May 2019 Order").  (Dkt. No. 54.)  The May 2019 Order specifically required the parties to

submit a proposed scheduling order that included whether the trial will be "to court or jury."  (Dkt.

No. 54 ¶ 7.)

In accordance with the May 2019 Order, the parties extensively discussed their positions

on the jury trial issue during the meet-and-confer process.  At all relevant times, Defendants

2

maintained and fully advised Plaintiffs that they sought and demanded a jury trial in this matter. The FTC's counsel sent an email during the scheduling order negotiations confirming this discussion: "*[a]s we discussed yesterday*," it was Plaintiffs position that "there is no basis for a jury trial in this matter so we have reinserted 'bench'" in the draft joint case management statement.  (Graham Decl. Ex. A Michelle Rusk 5/24/2019 1:07 pm email to Defendants (emphasis added).)  Defendants' counsel responded with a revised version of the statement which set forth the parties' conflicting positions on the availability of a jury trial.  (Graham Decl. Ex. B.)  The parties continued to discuss the issue, and ultimately agreed on the following language in the case management statement:

> **Anticipated Length of Trial**:  The Parties currently anticipate a ten-day trial.  It is Plaintiffs' position that this matter should proceed as a bench trial because this case is fundamentally about equitable relief and Defendants are therefore not entitled to a jury trial.  Defendants submit they are entitled to a jury trial.

(Dkt. No. 59.)

Plaintiffs' portrayal of this statement as "not sufficient to put Plaintiffs on notice that they needed to go to Court on this issue" is incredulous.  (Dkt. No. 155 at 3.)  The scheduling conference proceeded, and the Court's scheduling order incorporated the parties' proposed language regarding their different views on the availability of a jury trial.  (*See* Dkt. No. 59.)  Defendants' written jury demand was made, and they anticipated that the parties would brief the merits of the jury trial issue before Your Honor, if necessary—which is exactly what is occurring now.  Defendants then filed their respective Answers months later, on August 7, 2019.  (Dkt. Nos. 73-74.)

Despite the parties' extensive discussions more than a year-and-a-half ago about the availability of a jury trial, and despite Defendants' written demand in the May 2019 joint case management statement which was incorporated into the Court's scheduling order, Plaintiffs

nevertheless claim that "it was not until the December 14, 2020 status conference that Plaintiffs learned Defendants intended to seek a jury trial[.]" (Dkt. No. 155 at 1-2.) This is simply not true.

It is against this backdrop that Plaintiffs argued at the December 14, 2020 conference that Defendants had "waived" the right to a jury trial. (Graham Decl. Ex. C, 12/14/20 Tr. at 15:20-21.) During that conference, this Court warned Plaintiffs that because Quincy "says they already made a jury demand at a conference, and I think you [Plaintiffs] have to take that seriously in your waiver argument." (Graham Decl. Ex. C, 12/4/20 Tr. at 17:24-18:2.) As the uncontroverted history of this case makes clear, Plaintiffs knew that Defendants had demanded a jury trial and waited more than a year-and-a-half to raise their challenges with the Court.

## II.    DEFENDANTS DID NOT WAIVE THEIR RIGHT TO A JURY TRIAL

The right of a jury trial is "fundamental" and courts "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937). Plaintiffs would have this Court turn that presumption on its head, demanding the Court find a waiver because Defendants did not use the exact words that Plaintiffs demand at the exact time that Plaintiffs expected. But this is not the law. The purpose of the jury demand is to put the opposing party on notice that a jury trial will be sought. *See Berisford Capital Corp. v. Syncom Corp*., 650 F. Supp. 999, 1001 (S.D.N.Y. 1987) ("The goal of Rule 38's requirement of a timely jury demand . . . is to provide adequate notice to the parties of whether they will appear before a court or a jury."). Given the parties' discussions specifically concerning the availability of a jury trial and Defendants' written demand that was incorporated into the Court's scheduling order, Plaintiffs cannot credibly assert that they were not on notice that Defendants would seek a jury trial. (Dkt. No. 155 at 1.)

Rule 38 is not nearly as exacting as Plaintiffs suggest. It "requires only that a jury demand be made in writing, not that it be contained in a pleading or indeed take any particular form."

4

*Ginsberg v. Twayne Publishers, Inc.*, 600 F. Supp. 247, 248 (S.D.N.Y. 1984); *see also Winant v. Carefree Pools*, 118 F.R.D. 28, 29 (E.D.N.Y. 1988) (holding that Rule 38 "requires only that the [jury] demand be in writing and it be timely served[;]" it need not be in any particular document). In fact, "[t]he Second Circuit has never required 'that the jury demand be technically perfect or unequivocal on the face of the pleadings,'" and "the form of the writing has not been narrowly prescribed." *Palmer v. Angelica Healthcare Servs. Grp., Inc.*, 170 F.R.D. 88, 90 (N.D.N.Y. 1997) (quoting *Favors v. Coughlin,* 877 F.2d 219, 220 (2d Cir. 1989)). All that is required is a "written demand" which "may" (not "must") "be included in a pleading [] no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1). The leading federal practice treatise confirms that Plaintiffs' unduly strict interpretation of a jury demand is misplaced, as it guides practitioners that "[n]o particular form of writing is required; the demand may be 'included in a pleading' *or in a variety of other papers*." 9 Wright & Miller, Federal Practice and Procedure § 2318 (4th Ed Oct. 2020 Update) (emphasis added).

Here, Defendants made their jury demand in writing in the case management statement that was entered by the Court months before they even filed their respective Answers. This exact procedural history has been found *not* to effect a waiver. In *Palmer*, the plaintiff "indicated that a jury was demanded" in the proposed civil case management plan filed with the Clerk's Office and that demand "was incorporated into" the court's scheduling order. 170 F.R.D. at 89. The court found that this was sufficient because "the filing and notice requirements of Rule 38(b) were met." *Id*. at 90. The same is true here. Defendants' service and filing of the proposed case management plan months before "the last pleading directed to the issue" was served constitutes a valid jury demand. The key is notice, and Plaintiffs cannot in good faith argue that they lacked notice of Defendants' intent to seek a jury trial. Moreover, since Defendants had already included their

demand in writing in the parties' joint case management statement, there was no need to make it again when they filed their Answers three months later.

The cases Plaintiffs cite in an effort to support their waiver argument are all inapposite, either because no written demand was ever served or because the demand was served too late.  In *McCarthy v. Bronson*, 906 F.2d 835, 837 (2d Cir. 1990), a prisoner-plaintiff agreed "in open court" "to have the case tried by a magistrate" rather than in front of a jury.  *Id.*  Likewise, in *Walker v. Edison Chouest Offshore, L.L.C.*, No. 04 Civ. 2954 (MBM), 2006 WL 2212464 (S.D.N.Y. Aug. 3, 2006), which appears to be an outlier case not relied upon or cited in any other reported decision, the plaintiff waived his right to a jury trial where his pleading alleged that "nothing in these jurisdictional allegations is to be construed as a waiver of the plaintiff's right to a jury trial in plaintif[f]'s action at law under the Jones Act, nor of the right to have all of the claims asserted herein tried to a jury, as plaintiff's option."  *Id.* at *1.  The Court found that this "statement of non-waiver and reservation of rights" failed to satisfy Rule 38 because it was "merely a warning to the opposing parties and the court that [the plaintiff] might, at some undetermined time in the future, elect to demand a jury.  *Id.* at *2.  Finally, in *United States v. United States Currency in the Sum of Ninety Seven Thousand Two Hundred Fifty-Three Dollars*, No. 95-cv-3982 JG, 1999 WL 84122, at *3 (E.D.N.Y. Feb. 11, 2019), the party found to have waived the right to a jury "never asserted a jury demand in any of his submissions in th[e] case."  The conduct leading to the waivers in these cases (an affirmative consent to proceed before a magistrate in *McCarthy,* a reservation to demand a jury in the future in *Walker*, and a complete lack of any written demand in *U.S. Currency*) are a far cry from Defendants' explicit and affirmative jury demand in the parties' joint case management statement.  (Dkt. No. 59.)

Plaintiffs' citations to *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310 (2d. Cir. 1973), and *Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 797 (2d Cir. 1983), are similarly misplaced, as they both involved **untimely** jury demands. In *Lanza*, the defendant served a jury demand in response to an *amended* complaint, but not the original complaint. *See Lanza*, 479 F.2d at 1310. Because the amended complaint was based on the same issues as the original complaint, the defendant's failure to serve a jury demand in response to the original complaint effected a waiver. *Id.* Similarly, in *Washington*, the first request for a jury was made many months past the deadline set by Rule 38(b) and just five days before the trial was scheduled to start. *See Washington*, 709 F.2d at 794. In contrast, here, there is no doubt that Defendants' jury demand, was timely. Rule 38 requires jury demands to be filed "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1). Here, Defendants' jury demand in the parties' joint case management statement was served and filed months *before* the last pleading directed to the issue was served.

Plaintiffs' bald assertion that they "might have" conducted discovery differently if they had known the case would proceed as a jury trial is meritless. Again, Plaintiffs were on notice of Defendants' jury demand long-before discovery commenced and should have planned their discovery accordingly. Moreover, it is hard to imagine what further discovery Plaintiffs could have even sought (or how they would have conducted discovery differently) given the inordinate exchange of information in this case. Defendants produced over 180,000 pages of documents to Plaintiffs during discovery in addition to the over 548,000 pages of documents to Plaintiffs *prior* to the Complaint being filed. Indeed, Defendants have been providing information to Plaintiffs since 2015. During the litigation, Plaintiffs propounded 22 interrogatories (many with multiple subparts) on Defendants, 100 requests for admissions, and took the depositions of three of

Quincy's employees over the course of six days, both in their individual capacities and pursuant to Rule 30(b)(6), on a wide array of topics.  Plaintiffs' claim that they "might have" taken additional depositions or hired different experts or sought *more* written discovery is pure speculation, *i.e.,* they fail to specify who they would have deposed or retained,[1] or what further discovery they may have sought.  Plaintiffs were on notice long-before discovery began that Defendants intended to pursue a jury trial.  If they were seriously concerned about the impact of a potential jury trial on discovery, they could easily have sought a ruling from the Court at the outset of discovery.  It is telling that Plaintiffs chose not to do so, and they cannot now claim that they have been prejudiced as a result.

Finally, even if this Court finds that Defendants did not properly make a written demand for a jury trial, this Court can and should exercise its discretion under Federal Rule of Civil Procedure 39 to order a jury trial on any issue for which a jury might have been demanded.  *See* Fed. R. Civ. P. 39(b); *Palmer*, 170 F.R.D. at 90.  In *Palmer*, the court found that *even if* the plaintiff's jury demand in a civil case management plan effected a waiver, her demand was "a known and stated intention from the inception of the case" and not the result of a change in litigation strategy.  170 F.R.D. at 90.  Thus, given that the defendant "received timely, actual notice of the demand," the defendant "suffered no prejudice from the late filing of a formal demand" and therefore the discretion afforded by Rule 39(b) to order a trial by jury was appropriate exercised.  *Id*.  Here, too, Plaintiffs will suffer no prejudice if this case proceeds as a jury trial because they have known about Defendants' jury demand for approximately a year-and-a-half.  Thus, in the

---

[1] The expert report deadline is March 31, 2021.  If Plaintiffs wanted to retain additional experts, they had plenty of time to do so between the December 2020 conference and that deadline.

event this Court finds a waiver, it should nevertheless exercise its discretion under Rule 39(b) and order this case to proceed as a jury trial.

## III.   THE PRIMARY RELIEF BEING SOUGHT BY PLAINTIFFS IS LEGAL IN NATURE

A defendant has a right to a jury trial in cases in which the government seeks to impose monetary civil penalties, even if the government also seeks equitable remedies. *See United States v. J. B. Williams Co., Inc.*, 498 F.2d 414, 422-23 (2d Cir. 1974) ("There can be no doubt that in general 'there is a right of jury trial when the United States sues . . . to collect a penalty, even though the statute is silent on the right of jury trial'"); *Tull*, 481 U.S. at 425 (1987); *United States v. Dish Network, L.L.C.*, 754 F. Supp. 2d 1002, 1004 (C.D. Ill. 2010); *Macheda v. Household Fin. Realty Corp. of New York*, No. 1:04-CV-0325 GTS/GJD, 2009 WL 113474, at *8 (N.D.N.Y. Jan. 15, 2009).   Importantly, this right extends to all issues necessary to decide the legal claims, including those facts common to both the equitable and legal claims. *See Tull*, 481 U.S. at 425. In other words, the constitutional right to a jury cannot be impaired by blending legal claims with equitable ones. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959).

Plaintiffs have repeatedly confirmed in discovery that the primary relief they are seeking in this action is monetary and therefore legal in nature – not equitable.   That Plaintiffs now characterize the relief they seek as "equitable" is immaterial; such self-serving language does not preclude the Court from finding that Plaintiffs are *actually* seeking legal remedies. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962) (noting that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.").   Defendants are therefore entitled to a jury trial on all of Plaintiffs' claims.

A.    **Plaintiffs Are Primarily Seeking Monetary Relief**

Despite Plaintiffs' attempt to frame their position as seeking only equitable remedies, the FTC's Rule 30(b)(6) witness and Plaintiffs' litigation tactics generally confirm the "primary remedy" being sought is money damages.  The Rule 30(b)(6) deposition of the FTC included a topic seeking testimony about "[t]he bases for and methods of calculating damages, remedies, consumer redress, restitution, refund, or other relief sought by the FTC in this Action[.]" (Dkt. No. 157-2 (Topic 3).)   In response to that topic, the FTC's designated 30(b)(6) representative repeatedly confirmed that the "primary remedy" the FTC is seeking is monetary relief in the form of redress to consumers, which she defined as gross sales minus refunds.  (Graham Decl. Ex. D Rosso Tr. 28:9-29:12.); (*see also id.* at 73:9-20) (Q: "And your response to Interrogatory 7 specifically mentions economic injury.  Is the FTC alleging any other type of injury in this action against consumers?"  A: "The monetary remedy is economic injury.  So that is the *primary remedy being sought* . . . the remedies that we are seeking and the case that we are making is economic injury.") (emphasis added.).

In fact, while the FTC is expressly permitted under Section 13(b) to seek a preliminary injunction to halt Quincy's sales of Prevagen during the pendency of the litigation (which, to date, has lasted over four years), ***it has never done so***.

The NYAG similarly argues that its "claims and the relief sought are equitable in nature." (Dkt. No. 155 at 6.)  However, the NYAG's discovery responses also confirm that the primary relief being sought is monetary.  Like the FTC, the NYAG intends to calculate restitution and disgorgement as the full amount of Quincy's net profits from the sale of Prevagen Products in New York from 2007 through the present.  (Graham Decl. Ex. E at 10-11 (NYAG Amended Rog 2 Response).)  The NYAG is also seeking civil penalties in the amount of $5000 for each violation of GBL Article 22-A.  (*Id.* Ex. E at 11.)  The NYAG claims that it will define "each 'violation'"

as the following excessively-broad list of occurrences:  *each airing* of a radio or television ad in the State of New York; *each dissemination* of a book or pamphlet advertising the Prevagen Products in the State of New York; and *each day* on which the Prevagen Products were available for purchase in New York either at retail or online over the last nearly 14 years.  (*Id.* Ex. E at 11.) By the NYAG's own calculations, the NYAG alone is seeking some unknown multiple of $50 million in civil penalties (based on its purported claim it can receive $5,000 for *each day* Prevagen has been sold and *each day* Prevagen was available via a website).  Again, given that Plaintiffs have not moved for injunctive relief, the exorbitant penalty amounts they seek are, in reality, the primary form of relief.

Despite this clearly outsized financial remedy being pursued, the NYAG broadly declares that "[c]ivil penalties . . . are part and parcel of the equitable case and therefore sound in equity as well."  (Dkt. No. 155 at 7.)  But Plaintiffs cite no support for this assertion, and the Supreme Court has held otherwise.  In *Tull*, the Supreme Court ruled that an exorbitant potential penalty ($23 million in 1987) "could hardly be considered 'incidental' to the modest equitable relief sought" by the government.  *Tull*, 481 U.S. at 413.  Here, the civil penalties being sought are so expansive they are almost incalculable.  Thus, it is clear that the penalties being sought are purely legal, rather than "incidental" to the equitable relief being sought.  *See also Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (finding that a treble damages remedy for securities violation is a penalty, which constitutes legal relief).

The remaining cases cited by the NYAG do not contradict Defendants' right to a jury trial when civil penalties are being in sought.  Most fail to even address the issue.  Of the eight New York state and federal cases Plaintiffs cite (Dkt. No. 155 at 7), only one discusses the availability of a jury trial in a cases where civil penalties were sought – the New York State trial court's

unpublished decision in *People v. First American Corp.*, No. 406796/07, 2011 WL 6002680 (Sup. Ct. N.Y. Cnty. Nov. 18, 2011).  *First American* notes the absence of New York authority indicating whether there is a right to a jury trial in actions for civil penalties, but follows a number of *other* states' decisions interpreting *other* states' statutes that deny the right to a jury trial in such cases. *First American* is neither binding nor persuasive here, as it specifically distinguishes itself from federal jurisprudence addressing the Seventh Amendment right to a jury trial (including *Tull*, discussed *supra*).  The other out-of-state cases cited in Plaintiffs' brief are similarly inapposite, as they interpret different state's statutes and state jurisprudence with respect to the availability of a jury trial.  (Dkt. No. 155 at 8.)

Finally, Plaintiffs cite *Porter v. Warner Holding Co.*, 328 U.S. 395, 401-02 (1946), which confirms that civil penalties are a legal remedy.  In *Porter*, the United States Supreme Court expressly stated that when a court awards statutory penalties, it "acts as a court of law rather than as a court of equity."  *Id.* at 402.

Thus, because the NYAG's request for civil penalties is plainly legal in nature, Defendants are entitled to a jury trial with respect to both the penalties themselves, as well as all factual issues necessary to decide those penalties, which are common to Plaintiffs' legal claims *and* equitable claims.  *See Tull*, 481 U.S. at 412, 425.

**B.**     **The FTC May Not Be Permitted To Recover Monetary Relief At All**

Plaintiffs' brief contends that "[t]he relief the FTC seeks in its actions under Section 13(b) of the FTC Act is equitable in nature, and, indeed, that is the only relief available to it in such a case."  (Dkt. No. 155 at 5-6.)  However, the FTC has failed to inform the Court that the very viability of this argument, as well as all of the cases cited in support, is in question while the United States Supreme Court decides *AMG Capital Mgmt., LLC v. Federal Trade Commission*, No. 19-

12

508 (U.S. pet. Filed Oct. 18, 2019), which has been fully briefed and was argued on January 13,

2021.  (*See* Graham Decl. Ex. F.)

Specifically, the question before the Supreme Court in *AMG Capital* is "[w]hether § 13(b)

of the Act, by authorizing 'injunction[s],' also authorizes the Commission to demand monetary

relief such as restitution – and if so, the scope of the limits or requirements for such relief."  *AMG*

*Capital Mgmt.*, No. 19-508, 2019 WL 5390115, at *i (U.S.) (appellate petition Oct. 18, 2019).

Thus, the Supreme Court will decide *this term* whether the restitution and other monetary relief

being sought in this action is even permissible under Section 13(b) of the FTC Act.  If the Supreme

Court rules that such remedies are legal in nature, and not "incidental" to the equitable remedy of

"injunctions" expressly authorized in Section 13(b), the FTC's claim for monetary relief will have

to be stricken from the Complaint altogether.

At oral argument in *AMG Capital*, the Supreme Court appeared skeptical of the FTC's

broad interpretation of equitable relief under Section 13(b) to include restitution and other

monetary relief—the same broad interpretation they set forth in this case.  A sampling of the

justices' questions illustrates this skepticism:

> JUSTICE SOTOMAYOR:  Counsel, how do you explain Section
> 5(1), which was passed at the same time as Section 13(b) and
> separately authorizes mandatory injunctions and further equitable
> relief?
>
> Why would Congress use a different language for injunctive relief
> in one section and just stop at 'injunctive relief' and in the other add
> 'and further equitable relief' in a different section?

(Graham Decl. Ex. G at 43:17-44:1.)

> JUSTICE SOTOMAYOR: . . . What am I to make of the fact that I
> saw nothing in the history of this bill suggesting that Congress
> understood that Section 13(b) authorized monetary awards?
>
> Quite to the contrary, the prior version of what became Section 19
> triggered extensive debate because there wasn't money damages

13

available, and Section 19 was passed to remedy what was perceived
as a fault in the bill as it existed.

So what I missing in terms of the absence of anything to do with this
issue before Congress?

(Graham Decl. Ex. G at 45:4-16.)

JUSTICE KAGAN:  [I]t seems to me that the best argument against
your position, and – and it's a strong one, comes from Section 5 and
Section 19, which have these protection in them that Section 13 do
not, that there has to be a repeated violation, that there has to be a
certain kind of mens rea and so forth.

And – and it – it does seem as though your interpretation of Section
13 makes those pretty much entirely irrelevant.

(Graham Decl. Ex. G at 46:12-21.)

JUSTICE BARRETT:  But this is what I'm - - I'm getting at.  It
seems to me that equitable remedies attempt to restore the plaintiff
to the position in which the plaintiff stood before the plaintiff was
defrauded. This money isn't traceable back to the FTC, and the
money that's gained isn't all being distributed to the plaintiffs.  *So
it seems like it functions more like a fine.  It doesn't really seem
analogous to, say, restitution to me.*

(Graham Decl. Ex. G at 56:22-57:7 (emphasis added).)

A decision in *AMG Capital* is expected this term and will undoubtedly impact the remedies

available in this case.  At a minimum, the expected decision will likely redefine the contours of

what is considered equitable relief under Section 13(b) of the FTC Act, likely rendering the cases

the FTC cites on this issue outdated and irrelevant.[2]

## IV.   CONCLUSION

Defendants respectfully request that this Court order this action to be tried before a jury

because (i) Defendants made a timely written jury demand under Fed. R. Civ. P. 38 and have not

---

[2] This anticipated decision also cuts against Plaintiffs' "waiver" argument and would further support this Court's
exercise of discretion to order a jury trial pursuant to Rule 39.

waived their right to a jury trial; or, in the alternative, (ii) the Court finds that the exercise of discretion under Fed. R. Civ. P. 39(b) is appropriate in this matter given that Plaintiffs have been aware of Defendants' intent to seek a jury trial for over a year-and-a-half and would not be prejudiced by such a result.


Dated:  March 5, 2021

KELLEY DRYE & WARREN LLP

/s/ Geoffrey W. Castello, III
John E. Villafranco (admitted pro hac vice)
Geoffrey W. Castello, III
Jaclyn M. Metzinger
Glenn T. Graham
101 Park Avenue
New York, NY 10178
(212) 808-7800
jvillafranco@kelleydrye.com
gcastello@kelleydrye.com
jmetzinger@kelleydrye.com
ggraham@kelleydrye.com

Attorneys for Defendants
Quincy Bioscience Holding Company, Inc.,
Quincy Bioscience, LLC,
Prevagen Inc. d/b/a Sugar River Supplements,
and Quincy Bioscience Manufacturing, LLC

COZEN O'CONNOR

/s/ Michael B. de Leeuw
Michael B. de Leeuw
Tamar S. Wise
45 Broadway Atrium, Suite 1600
New York, NY 10006
(212) 908-1331
mdeleeuw@cozen.com
twise@cozen.com

Attorneys for Defendant
Mark Underwood

15