# Exhibit G

# SUPREME COURT
# OF THE UNITED STATES

---

IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

AMG CAPITAL MANAGEMENT, LLC,          )

ET AL.,                               )

       Petitioners,          )

        v.                    ) No. 19-508

FEDERAL TRADE COMMISSION,             )

       Respondent.           )

- - - - - - - - - - - - - - - - - -

Pages:  1 through 62

Place:  Washington, D.C.

Date:   January 13, 2021

---

### HERITAGE REPORTING CORPORATION

*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.   20005
(202) 628-4888
www.hrccourtreporters.com

1

```
 1      IN THE SUPREME COURT OF THE UNITED STATES
 2    - - - - - - - - - - - - - - - - - -
 3    AMG CAPITAL MANAGEMENT, LLC,          )
 4    ET AL.,                              )
 5                  Petitioners,           )
 6              v.                         ) No. 19-508
 7    FEDERAL TRADE COMMISSION,             )
 8                  Respondent.            )
 9    - - - - - - - - - - - - - - - - - -
10
11                  Washington, D.C.
12                  Wednesday, January 13, 2021
13
14              The above-entitled matter came on for
15    oral argument before the Supreme Court of the
16    United States at 10:00 a.m.
17
18    APPEARANCES:
19    MICHAEL PATTILLO, ESQUIRE, Fernandina Beach, Florida;
20        on behalf of the Petitioners.
21    JOEL R. MARCUS, ESQUIRE, Washington, D.C.;
22        on behalf of the Respondent.
23
24
25
```

1                    C O N T E N T S

2    ORAL ARGUMENT OF:                        PAGE:

3    MICHAEL PATTILLO, ESQ.

4         On behalf of the Petitioners        3

5    ORAL ARGUMENT OF:

6    JOEL R. MARCUS, ESQ.

7         On behalf of the Respondent         30

8    REBUTTAL ARGUMENT OF:

9    MICHAEL PATTILLO, ESQ.

10        On behalf of the Petitioners        59

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

0124-LLS   Subject to Final Review

3

```
 1              P R O C E E D I N G S
 2                               (10:00 a.m.)
 3              CHIEF JUSTICE ROBERTS:  We will hear
 4    argument this morning in Case 19-508, AMG
 5    Capital Management versus the Federal Trade
 6    Commission.
 7              Mr. Pattillo.
 8              ORAL ARGUMENT OF MICHAEL PATTILLO
 9                ON BEHALF OF THE PETITIONERS
10              MR. PATTILLO:  Thank you, Mr. Chief
11    Justice, and may it please the Court:
12              The FTC Act's test, structure, and
13    purpose make clear that when Section 13(b)
14    authorizes the Commission to seek a permanent
15    injunction, it means just that, a permanent
16    injunction as traditionally understood.  It does
17    not mean injunctions and all equitable relief or
18    injunctions and monetary relief for past harms.
19              Three features of the Act make that
20    especially clear.  First, 13(b) is limited to
21    cases where someone is violating or is about to
22    violate the Act.  That limit to ongoing or
23    imminent violations would make no sense if 13(b)
24    authorized retrospective monetary relief for
25    past harms.
```

1           Second, where the Act allows relief
2     beyond injunctions, it says so.  Section 5(l)
3     authorizes an injunction and further equitable
4     relief as appropriate.  That language would have
5     been pointless if the word "injunction" itself
6     implied all equitable relief.
7           Third, another provision, Section 19,
8     authorizes monetary relief for past consumer
9     injury.  But it provides safeguards, including a
10    statute of limitations, a heightened proof
11    requirement, and notice to victims.  Those
12    limits would be meaningless if they could be
13    evaded under 13(b).
14          Even if there were a presumption that
15    mentioning a specific type of equitable relief
16    meant all equitable relief, and there should not
17    be, those three features overcome it.
18          To be clear, the Commission can get
19    retrospective relief for consumer harm, but it
20    must invoke Section 19, the mechanism Congress
21    provided for that purpose.  That makes sense.
22    Because the Act's prohibitions are broad and
23    general, Congress, since 1914, made agency
24    processes the primary enforcement mechanism so
25    the agency can apply its expertise and give

1   businesses notice on what is prohibited.

2          Section 13(b), by contrast, is a

3   narrow supplement for threatened harm where the

4   Commission must come to court to stop the

5   conduct quickly.  Where there is more time, like

6   for backward-looking remedies, there was no

7   reason for Congress to bypass agency

8   responsibilities to provide guidance.

9          CHIEF JUSTICE ROBERTS:  Mr. Pattillo,

10  one of the issues with your reading of the

11  statute is that it was passed roughly 50 years

12  ago, and in the intervening years, there's been

13  a significant change in how this Court

14  interprets statute -- statutes.

15         Back when this one was passed, we had

16  a pretty free-wheeling approach.  You know, we

17  weren't as confined to the specific language.

18  You sort of looked at what Congress had in mind

19  and -- and figured out the meaning in light of

20  that.

21         And, of course, today, we have a more

22  disciplined approach, you know, I think more

23  suited to our role under the Constitution.  But

24  shouldn't we construe this statute in the

25  environment in which Congress passed it in light

1    of the, as I said, more free-wheeling approach?

2         And I think there'd be a lot more

3    leeway to your friend on the other side argument

4    about an expansive reading of some of the

5    language.

6         So why -- why do we sort of adopt a --

7    I don't know what it is -- a view that -- that

8    is current today but wasn't current back then?

9         MR. PATTILLO:  Your Honor, I have two

10   responses to that question.  The first is that

11   this Court rejected a very similar argument in

12   Alexander v. Sandoval.  The argument was made

13   that, listen, at the time that Title VI of the

14   Civil Rights Act was enacted, the Court at that

15   time followed what you referred to as the more

16   free-wheeling approach to implying causes of

17   action and implied remedies.

18         And the Court said, be that as it may,

19   you know, we have since sworn off that method of

20   statutory interpretation and we decline, you

21   know, one -- one last drink.  And I think that

22   that applies equally here.  Whether or not that

23   was the motive at the time 13(b) was enacted,

24   the reasoning of Alexander versus Sandoval --

25         CHIEF JUSTICE ROBERTS:  Yeah, no, I --

```
 1              MR. PATTILLO:  -- holds --
 2              CHIEF JUSTICE ROBERTS:  -- I know
 3      that's -- I know that's what we said.  Maybe I
 4      just don't find that so -- so compelling.
 5      It's -- it's -- it's -- you know, we try to look
 6      at language as it was understood in other
 7      contexts when we're interpreting provisions.
 8      You know, we go back to the, you know, 1860
 9      treatise and say what did that mean back then,
10      and we don't look at a contemporary dictionary.
11              Do you have any argument besides what
12      we said in Sandoval?
13              MR. PATTILLO:  Yes, I do.  The theory
14      that Congress somehow thought permanent
15      injunction carried with it all equitable relief
16      when it enacted 13(b) itself defies the three
17      features I mentioned in my opening.
18              In the very same legislation that
19      enacted 13(b), Congress expressly authorized an
20      injunction and other and further equitable
21      relief in Section 5(l).  So that cannot be
22      reconciled with the notion that Congress somehow
23      thought in -- the word "injunction" itself
24      automatically included all equitable relief a la
25      Porter's method of interpretation, much like the
```

```
 1      --
 2                CHIEF JUSTICE ROBERTS:  Thank you,
 3      counsel.
 4                Justice Thomas.
 5                JUSTICE THOMAS:  Thank you, Mr. Chief
 6      Justice.
 7                Counsel, let's -- continuing along the
 8      lines of the Chief Justice, let's assume that we
 9      did not have Sections 5 and 19 and -- but you --
10      you still have the same language that we have in
11      13.
12                Would -- would it be reasonable to say
13      that Congress legislated against -- in that
14      case, in that instance, against the backdrop of
15      cases like Porter and Mitchell, and, if so, then
16      how would that change your argument?
17                MR. PATTILLO:  This Court looks to how
18      equitable terms are traditionally understood,
19      and permanent junctions traditionally exclude
20      monetary relief as compensation for past harm,
21      as Great-West noted.  And, here, the -- the
22      phrase, 13(b) itself refers to a permanent
23      injunction.
24                And you wouldn't ordinarily think of a
25      one-time order to turn over property as a
```

1    permanent -- as a permanent injunction, and so

2    the -- the specific language used in 13(b)

3    itself, even without reference, but also 13(b)

4    is limited to cases of imminent or ongoing harm.

5            And it wouldn't have made any sense to

6    authorize retrospective -- to -- to -- to link

7    the authority for retrospective monetary relief

8    to the availability of imminent or ongoing harm.

9    Consumers don't become more or less worthy of

10   redress for their injuries depending on whether

11   or not the conduct is ongoing.

12           JUSTICE THOMAS:  So, with that

13   argument, how would you address or deal with the

14   19th Century intellectual property cases that

15   allowed monetary relief incident to the

16   injunction?

17           MR. PATTILLO:  All of those cases

18   involve a situation where there was -- the

19   parties had a general right to seek all

20   equitable relief, and that is simply not the

21   case here.  This case, 13(b) is just limited to

22   injunctions, so whether or not the other relief

23   of an accounting might be available where all

24   equitable relief is available to the plaintiff,

25   that's not the case here.

1          Injunction means injunction in 13(b),

2    and we know that, and it's limited by the three

3    features of the Act that I've mentioned.

4          JUSTICE THOMAS:  Thank you.

5          CHIEF JUSTICE ROBERTS:  Justice

6    Breyer.

7          JUSTICE BREYER:  Good morning.  Here,

8    I thought the briefs were very good in this

9    case.  Blue brief, I think you're right.  Red

10   brief, I think you are right.  They can't both

11   be right, that's right.  All right.  You see

12   that's the old joke, but that's where I am.

13         So I'm pretty familiar with the

14   arguments and I see which way do we go, and the

15   argument, it seems to me, that's against you --

16   and I'll put the other half to the other side.

17         The argument that's against you is

18   simply this to me:  Law isn't perfect.  Courts

19   make mistakes.  We make mistakes too.  And this,

20   if it is a mistake, has been around for 50 years

21   and there's a pretty uniform interpretation

22   before the Seventh Circuit.

23         And if we never say let bygones be

24   bygones, I mean, we're going to be here to

25   Marbury versus Madison and beyond.  So too much

1    time has passed, water under the bridge,

2    good-bye.  Why doesn't that apply?

3             MR. PATTILLO:  Well, Your Honor, this

4    is the first time that the Court was called

5    to -- to step in to -- to resolve this conflict,

6    and the mode of interpretation has -- has

7    changed over -- over time, and the -- when the

8    courts of appeals took this approach during --

9             JUSTICE BREYER:  Oh, just wait.  For

10   my question, I'm assuming you're right on all

11   that, okay?  My question is still -- it's close,

12   and still the lower courts at least have been

13   uniform for 50 years.  We cannot undo everything

14   that was, in your opinion or mine or somebody

15   else's, decided not perfectly and may be wrong.

16   That's what I just asked.

17            MR. PATTILLO:  Well --

18            JUSTICE BREYER:  And so why wouldn't I

19   follow that very basic principle about courts

20   and how the judiciary has to function in a

21   society that's continuously changing?

22            MR. PATTILLO:  There are now two

23   courts of appeals, one on either side -- or,

24   excuse me, on -- there are courts of appeals on

25   either side.  There are now two courts of

1    appeals that have rejected the notion that 13(b)

2    carries with it all monetary relief, and there's

3    simply no rule that the first court of appeals

4    to issue its ruling on a particular version of

5    the law wins. And so there's no reason to give

6    a -- a presumption to the -- the courts of

7    appeals that decided it first.

8              JUSTICE BREYER:  Okay.  Thank you.

9              CHIEF JUSTICE ROBERTS:  Justice Alito.

10             JUSTICE ALITO:  Mr. Pattillo, could I

11    ask you about the practicalities of -- of this

12    case.  Have some of the money in question here

13    already been distributed to the victims of this

14    scheme?

15             MR. PATTILLO:  Yes.  My understanding

16    is that around 500 million dollars has been

17    distributed.

18             JUSTICE ALITO:  If we rule in your

19    favor, what will happen with respect to those

20    individuals?  Will they be required to return

21    that money?

22             MR. PATTILLO:  I honestly don't know.

23    I would be surprised if -- if that is the

24    result.  One option would perhaps be for -- the

25    Commission would have to repay us out of -- out

1    of the federal Judgment Fund, which, you know,

2    is a reservoir that exists for paying

3    liabilities of the United States.  I suppose it

4    would be up to the Commission to decide whether

5    the United States bears the burden of its error.

6         JUSTICE ALITO:  What is the

7    relationship between the -- the order in

8    question here and the forfeiture order that was

9    issued in the Southern District of New York in

10   Tucker's criminal case?  There, he was, as I

11   understand it, required to return 3 billion

12   dollars.  Is that -- does that encompass the

13   amount of money that's involved here?

14        MR. PATTILLO:  There is -- my

15   understanding is that there is some overlap

16   between the assets that were at issue.  I mean,

17   it -- Mr. Tucker just had -- had one pool of --

18   of resources, and to date, my understanding is

19   that the Commission and the Southern District

20   have been divvying up the different

21   responsibilities.

22        But it's also worth noting here that

23   the order in this case encompasses --

24   encompasses money paid by innocent parties, such

25   as Mrs. Tucker and Park 269, which were never

1    alleged to have been -- and that amount is over

2    27 million dollars.  They were never alleged to

3    have participated in any wrongdoing.  And so

4    those assets certainly couldn't be subject to

5    the criminal forfeiture as well.

6          JUSTICE ALITO:  Let me turn back

7    briefly to basically the same question that the

8    Chief Justice asked.  If -- I mean, most of the

9    members of Congress are not lawyers.  That was

10   true when this provision was enacted.  And even

11   those who were lawyers, perhaps like me, never

12   heard the word "equity" when they were in law

13   school.

14          So suppose one of those members said,

15   well, here, we're going to authorize the

16   Commission to seek an injunction, so I'm going

17   to look at the most recent edition of Black's

18   Law Dictionary, which defines an injunction in

19   part as "a judicial process operating in

20   personam and requiring a person to whom it is

21   directed to do or refrain from doing a

22   particular thing."

23          If the member read that definition,

24   wouldn't they think that it would authorize

25   exactly what was done here?

1          MR. PATTILLO:  Perhaps there --

2    injunctions are broad and flexible, and,

3    certainly, as -- as the Court explained in

4    Great-West, with lawyerly inventiveness, just

5    about any order could be framed in terms of

6    injunction -- of an injunction.

7          But this Court has held that it --

8    it's not just what Black's Law Diction --

9    Dictionary says.  It's how the terms are

10   traditionally understood in equity.  And

11   permanent injunctions traditionally exclude

12   monetary relief as compensation for past harm.

13          JUSTICE ALITO:  All right.

14          MR. PATTILLO:  The fact that the

15   Commission --

16          JUSTICE ALITO:  Thank -- thank you.  I

17   -- I think --

18          CHIEF JUSTICE ROBERTS:  Justice --

19          JUSTICE ALITO:  -- my time has

20   expired.

21          CHIEF JUSTICE ROBERTS:  -- Justice

22   Sotomayor.

23          JUSTICE SOTOMAYOR:  Counsel, you argue

24   that there would be no reason for Congress to

25   provide for monetary remedies under Section 19

```
 1     if the FTC could obtain disgorgement under

 2     13(b).  But it makes sense to me that the FTC

 3     might sometimes want to establish new rules

 4     through agency adjudications that are binding on

 5     absent parties and to which courts will defer.

 6              So the more important question for me

 7     is -- and I hope you can answer it -- is, why

 8     would Congress authorize the FTC to seek a

 9     permanent injunction if no other equitable

10     remedies were available?  It seems that under

11     your understanding of the statute, why would the

12     FTC ever pursue a permanent injunction under

13     13(b) rather than a cease-and-desist order that

14     could lead to monetary relief?  It could --

15              MR. PATTILLO:  The answer is that --

16              JUSTICE SOTOMAYOR:  Go ahead.

17              MR. PATTILLO:  -- sometimes -- I'm

18     sorry.  The answer is that 13(b) is a -- it's a

19     narrow supplement to the overall FTC Act, which

20     is -- which almost every other single provision

21     is about or in service of administrative

22     processes.  13(b) exists for situations where

23     there is threatened or ongoing harm, and it

24     allows the Commission to come to court to stop

25     the conduct quickly --
```

```
 1              JUSTICE SOTOMAYOR:  But it could do
 2      that --
 3              MR. PATTILLO:  -- in order to get --
 4              JUSTICE SOTOMAYOR:  -- it could do
 5      that with a temporary injunction, and so it
 6      doesn't need to do it with a permanent
 7      injunction.  And if it's barred from getting
 8      permanent relief and remedies, why would it ever
 9      seek a permanent injunction?
10              MR. PATTILLO:  It would -- it just --
11      if it -- if -- there's no need if it's a routine
12      case where the agency doesn't need to
13      pronounce -- as is its statutory obligation, to
14      define whether or not -- apply its expertise and
15      define whether particular conduct is prohibited.
16      The -- the permanent injunction path through
17      district court might be a -- a quicker and more
18      expedient remedy.
19              But the fact is that the -- the Act's
20      prohibitions are broad and general.  And
21      Congress made agency processes the primary
22      enforcement mechanism, and its job is to
23      apply its expertise --
24              JUSTICE SOTOMAYOR:  So why -- why even
25      give it a permanent injunction when it wasn't,
```

1    according to your reading, able to recover

2    anything else under that process?

3            It could always do a temporary

4    injunction and stop impend -- and stop impending

5    harm that way and then always have to pursue

6    administrative process to get monetary relief.

7    It makes no sense to me.

8            MR. PATTILLO:  Because sometimes that

9    would be -- that would be good enough.

10   Sometimes just stopping the conduct is a

11   sufficient remedy in and of itself.  There won't

12   always need to be consumer redress in every

13   case.  And, in fact, you know, for most of

14   the -- most of the FTC's early history, it had

15   no authority to seek consumer redress whatsoever

16   until it was enacted in -- in Section 19.

17   Stopping the conduct was its primary

18   responsibility.

19           CHIEF JUSTICE ROBERTS:  Justice Kagan.

20           JUSTICE KAGAN:  Mr. Pattillo, I'd like

21   to go back to the Chief Justice's first

22   questions about which approach we're supposed to

23   use, our old approach, which was very liberal in

24   finding rights and remedies, or our new

25   approach, which is decidedly not.

1          And you said, well, Alexander v.

2    Sandoval, and the Chief asked you to put that --

3    the Chief Justice asked you to put that aside.

4    And I'd like you to put that aside as well.  I

5    think it's at least arguably very different.

6          Do you have a -- a theoretical

7    argument for why it is that we should be using

8    the new approach?  Because I would have thought

9    that the whole idea behind the new approach is

10   that what matters most is what Congress thinks

11   about a question, not what the Court thinks

12   about it, and that that would suggest, well,

13   we're supposed to be looking at what Congress

14   thought in 1973 given the backdrop of all of our

15   precedents.

16         MR. PATTILLO:  Well, as I mentioned,

17   the -- the words of the statute are the law.

18   The words of the statute tell you what Congress

19   intended.  And even under the old approach, what

20   -- if we're trying to discern whether Congress

21   thought that -- you know, that "injunction"

22   actually meant all relief, all we need to know

23   is that at the same time that Congress enacted

24   13(b) it also enacted Section 5(l).  And at that

25   time --

```
1              JUSTICE KAGAN:  So that --
2              MR. PATTILLO:  -- it expressly
3    authorized --
4              JUSTICE KAGAN:  -- that's an argument
5    -- I mean, that's an argument on a different
6    point, the point about what Congress would have
7    understood back then, but -- but I take that to
8    be assuming my premise, which is that the very
9    issue is -- I mean, that the thing we're
10   supposed to be figuring out is what Congress
11   would have assumed back then, isn't it?
12             MR. PATTILLO:  Yes, but I think we --
13   in -- in under -- in trying to think what
14   Congress understood about Porter and Mitchell,
15   we have to look at what else Porter and Mitchell
16   said, and notwithstanding Porter and Mitchell's
17   broad language, Congress also would have known
18   that Porter and Mitchell said you have to look
19   at the entire statute --
20             JUSTICE KAGAN:  Well, in -- in just --
21             MR. PATTILLO:  -- and you have to see
22   the --
23             JUSTICE KAGAN:  Sorry, Mr. Pattillo.
24   In -- in -- in -- in just two years before
25   Congress enacted this legislation, the Second
```

```
 1    Circuit, you know, obviously, an important
 2    circuit when it comes to these matters, held
 3    that the FTC had power to seek restitution
 4    because its statute said that the agency could
 5    seek an injunction, the exact same question as
 6    is -- as -- as we're confronting.
 7              And the Second Circuit relies on
 8    Porter, relies on Mitchell, relies on all the
 9    old cases that you say are distinguishable, and
10    -- and said yes, an injunction includes
11    restitution according to Supreme Court law on
12    the subject.
13              So doesn't that suggest that the FTC
14    has a pretty good point about what Congress
15    understood in 1973?
16              MR. PATTILLO:  No, I don't think so.
17    If -- if the -- if Congress were looking to what
18    Porter held, Porter acknowledged that it was
19    looking to see whether an implied remedy was
20    consist -- it had to look and see if the implied
21    remedy was consistent with the statutory scheme.
22    And Porter found that even though there was
23    nothing that precluded an implied restitution
24    remedy, it said, look, there is another section
25    of the Emergency Price Control Act and that
```

 1    provision addresses damages.  So the fact that

 2    the -- that the statute elsewhere mentions

 3    damages supersedes the possibility that there

 4    could be an implied damages remedy.

 5               JUSTICE KAGAN:  Thank you, Mr.

 6    Pattillo.

 7               MR. PATTILLO:  So, if Congress wanted

 8    --

 9               JUSTICE KAGAN:  Thank you very much.

10               CHIEF JUSTICE ROBERTS:  Justice

11    Gorsuch.

12               JUSTICE GORSUCH:  Good morning,

13    counsel.  I'd like your help with a -- a

14    line-drawing problem.  I -- I -- I think you

15    agree that an injunction can be used to provide

16    certain forms of equitable relief, including

17    restitution perhaps, an accounting, requiring a

18    freezing of assets, or handing over a thing of

19    value, but -- but it's -- it -- it can't go this

20    far.

21               How would you have us draw that line

22    and describe it?

23               MR. PATTILLO:  I think it's a -- I

24    think it's a fairly simple line, and we can look

25    to how Justice Story described it.  There's a

```
1    difference between -- there's a difference
2    between the initial determination as to who owns
3    the property, whether property should be
4    returned, and that principle is articulated in
5    terms of other equitable doctrines, such as
6    restitution.
7            Now there were instances in the past,
8    and these were, you know, more the -- certainly,
9    more the exception than the rule, where an
10   injunction might use -- be used to enforce that
11   prior decree, where -- where someone had already
12   been given the award of restitution that
13   determines the property right.
14           And then, if there was some other
15   reason why an additional coercive remedy was
16   needed, the injunction might issue to force
17   that.  As Justice Story explained in his
18   treatise, that type of injunction was issued
19   "after a decree in the nature of an execution to
20   enforce the underlying decree."  And that's
21   completely different from what the Commission
22   seeks here.
23           The Commission doesn't seek to use an
24   injunction to enforce a right to restitution.
25   It doesn't have a right to restitution under
```

1    13(b).  It -- it's trying to -- to bootstrap

2    that.  And so I -- I think that the distinction

3    at equity was actually pretty clear.

4              JUSTICE GORSUCH:  Thank you, counsel.

5              CHIEF JUSTICE ROBERTS:  Justice

6    Kavanaugh.

7              JUSTICE KAVANAUGH:  Thank you, Chief

8    Justice.

9              And good morning, counsel.  Your

10   argument here is strikingly similar to the

11   argument advanced in the dissent in Porter by

12   Justice Rutledge, joined by Justices Reed and

13   Frankfurter, and the dissent in Mitchell written

14   by Justice Whittaker, joined by Justices Black

15   and Clark.

16             The Rutledge dissent, Justice Rutledge

17   dissent in Porter, for example, said "Congress

18   could not have been ignorant of the remedy of

19   restitution.  It knew how to give remedies it

20   wished to confer.  There was no need to add this

21   one, nor do I think it did so.  It did not give

22   it expressly."  That kind of argument.

23             What do we do with Porter and Mitchell

24   if we decide this case in your favor?  In other

25   words, how should we write the opinion with

1    respect to those cases?

2         MR. PATTILLO:  This Court doesn't need

3    to overrule Porter and Mitchell any more than it

4    needed to do so in Meghrig, which held that in

5    the context of RCRA, "injunction" did not mean

6    all equitable relief.

7         Neither Porter nor Mitchell involved a

8    statute with the three features that I mentioned

9    at the outset.  In neither case did Congress

10   elsewhere authorize an injunction and other and

11   further equitable relief, making it clear that

12   Congress didn't presume that an injunction

13   carried with it all equitable relief.

14        Neither Porter nor Mitchell addressed

15   a statute limited to ongoing or threatened

16   violations, which is the sort of thing that an

17   injunction would address but is totally

18   inconsistent with backwards-looking monetary

19   relief.

20        And neither statute in Porter or

21   Mitchell provided the very same monetary relief

22   in a separate provision -- here, that's Section

23   19 -- subject to various protections like a

24   statute of limitations that would be rendered

25   entirely meaningless if the Commission could

1    implicitly get the same relief under 13(b)

2    instead.

3              So Porter and Mitchell are entirely

4    distinguishable based on the statutory scheme.

5              JUSTICE KAVANAUGH:  And picking up on

6    one of Justice Breyer's questions, when you have

7    the combination of Porter and Mitchell plus some

8    maybe broad, you would say too tangential, but

9    some Congressional ratification argument, and

10   all the court of appeals for a number of years

11   interpreting it in the FTC's favor, at some

12   point, does all that combine, do you think, to

13   get us to a point of leave well enough alone?

14             I mean, certainly, stability in the

15   law is important.  And when you have Porter and

16   Mitchell plus ratification plus courts of

17   appeals, at some point, does that kick in?

18             MR. PATTILLO:  I -- I don't think so.

19   Long-standing error doesn't make it any less

20   error.  The statute is still the statute, and

21   now that the issue is before this Court, it's

22   the Court's duty to give the correct

23   interpretation of the statute, notwithstanding a

24   long history of error.

25             JUSTICE KAVANAUGH:  Thank you.

1            CHIEF JUSTICE ROBERTS:  Justice

2    Barrett.

3            JUSTICE BARRETT:  Counsel, let's say

4    that we agree with you about 13(b).  Your

5    client, I don't understand you to be arguing

6    that he has clean hands.  I mean, he's been

7    convicted.  He has the dubious distinction of

8    being the subject of an episode of "Dirty Money"

9    on Netflix.

10           But you -- you suggested in your brief

11   that because of the safeguards of Section 19, in

12   particular, you know, the -- the reasonable man

13   standard, knowing and understanding that the

14   conduct was deceptive, that the FTC couldn't

15   have gotten a monetary remedy from him under 19.

16           So is -- is it your position that if

17   we adopt your view, there's no way for the FTC

18   to get the ill-gotten gains back from someone

19   who has violated the law like your client?

20           MR. PATTILLO:  I'm sorry, I didn't

21   mean to suggest that the FTC could not have

22   proven its case under Section 19, although I --

23   I do think there is a substantial question about

24   that.

25           In the -- in Judge Bea's dissent in

1    the decision below, he noted that, you know, the

2    three judges on the Ninth Circuit have looked at

3    the disclosures and they thought that they were

4    accurate and they were not deceived by that.

5         But notwithstanding that, the fact is

6    that, you know, the decision here doesn't just

7    affect my client, it doesn't just affect, you

8    know, payday lenders.  As our amici, the

9    Chamber, has pointed out and as, you know,

10   this -- the sweep of the FTC Act is about as

11   broad as you can get, reaching into every single

12   area of commerce, and it's precisely because the

13   prohibitions of the Act are so broad and general

14   that it's important to hold the Commission to

15   its primary responsibility of, you know, telling

16   businesses what the law is prospectively instead

17   of running to court instead, you know, trying to

18   seek retrospective monetary relief.

19        JUSTICE BARRETT:  Thank you, counsel.

20        CHIEF JUSTICE ROBERTS:  A minute to

21   wrap up, Mr. Pattillo.

22        MR. PATTILLO:  The question here is

23   whether 13(b)'s reference to "permanent

24   injunction" means permanent injunction or

25   whether it instead means all equitable relief

1    and money for past harms.

2         The three features of the Act that

3    I've discussed confirm that "injunction" is

4    limited to an injunction as that term was

5    traditionally understood.

6         To be any clearer, Congress would have

7    to take the absurd step of saying, and by

8    "injunction," we mean only injunction, not other

9    remedies.  But this Court does not impose and

10   never has imposed any such requirement.

11        The FTC Act, moreover, is striking in

12   its consistent focus on agency processes to

13   prospectively define prohibited conduct.  Yet,

14   under the Commission's view, the single

15   sentence, second-level proviso in 13(b)

16   authorizing permanent injunctions is virtually

17   all the statute it needs.

18        The Commission can get all the

19   injunctions and monetary relief it wants without

20   the burdens of the administrative processes that

21   were its very reason for being.  That cannot be

22   right.  The Court should return the Commission

23   to the limits that Congress placed on its

24   authority.

25        CHIEF JUSTICE ROBERTS:  Thank you,

1   counsel.

2          Mr. Marcus.

3          ORAL ARGUMENT OF JOEL R. MARCUS

4            ON BEHALF OF THE RESPONDENT

5          MR. MARCUS:  Thank you, Mr. Chief

6   Justice, and my it please the Court:

7          The Petitioners are asking you to rule

8   that when Congress allowed the Commission to

9   enforce the FTC Act in federal court, it

10  intended that the Court would merely stop the

11  violations while letting the violator keep his

12  stolen money.

13         Such a ruling would radically depart

14  from the foundational principle of equity

15  recognized just last term in Liu that wrongdoers

16  should not profit from their own wrongdoing.

17         It would also profoundly deviate from

18  the understanding of injunctive remedies that

19  was embedded in the law when Congress enacted

20  Section 13(b), as many of the Court's questions

21  have recognized.

22         Courts of equity have recognized since

23  before the founding that the equitable power to

24  issue an injunction inherently includes the

25  power to order the return of unlawful gains.  As

1    the Court summed it up in Porter, nothing is

2    more clearly the subject of a suit for an

3    injunction than the recovery of that which has

4    been illegally acquired and which has given rise

5    to the necessity for injunctive relief.

6         Sections 19 and 5(l) of the Act, which

7    provide remedies when the Commission chooses to

8    enforce the Act administratively, do not create

9    an unmistakable inference that Congress intended

10   to limit traditional equitable powers when the

11   Commission chooses instead to proceed in court.

12   Section 19 expressly says otherwise in the

13   savings clauses.  Section 5(l) serves a

14   fundamentally different role in the Act than

15   Section 13(b), and its language reflects its

16   function.

17        A cease-and-desist order works like a

18   prohibitory injunction.  Congress therefore had

19   to specify the additional remedies it wanted for

20   a violation.  It did not need to do that in

21   Section 13(b) but could instead invoke its

22   understanding of the traditional equitable

23   powers of injunction without the need for

24   elaboration.

25        Together, the -- Sections 9 --

1   Sections 13(b), 19, and 5(l) work in harmony to

2   give the Commission a choice between effective

3   enforcement pathways that can provide meaningful

4   relief to victimized consumers.

5           CHIEF JUSTICE ROBERTS:  Counsel, a lot

6   of the cases you -- you cite in support of a

7   broad reading of injunction -- injunction and

8   equitable powers -- in fact, I think most of

9   them involve courts, not agencies.  And -- and

10  courts have broad inherent equitable power.  You

11  -- you don't sort of parse and construe their

12  authority very carefully, at least I don't think

13  so.  But this involves an agency, and an agency

14  only has the authority delegated to it by

15  Congress.  And I'm not sure we can assume that

16  those precedents involving courts apply so

17  smoothly in the context of an agency.

18          MR. MARCUS:  Well, certainly, the

19  agency has whatever power Congress has accorded

20  it, which is exactly why Congress had to be more

21  specific when it was talking about remedies for

22  the agency's own adjudicatory orders.

23          But Section 5 -- I'm sorry, Section

24  13(b) says the Commission may seek and the court

25  may grant a permanent injunction.  So what

 1    Congress is saying there is that the Commission
 2    can invoke the courts' equitable authority.  And
 3    that then puts the issue squarely within the
 4    courts' authority, as you just alluded to.
 5              CHIEF JUSTICE ROBERTS:  Well, I'm not
 6    sure that follows.  I mean, "the agency can seek
 7    and the court can enforce" doesn't mean that the
 8    same authority that a court has the agency has;
 9    just that the court can enforce whatever
10    authority the agency has.
11              MR. MARCUS:  It doesn't say "enforce";
12    it says "grant."  And the court can enforce
13    under a different provision, Section 5, the
14    Commission's own orders.  But what Section 13(b)
15    is doing is it's giving the Commission the
16    ability to go to court to seek the relief that a
17    court can grant.  This is no different than what
18    the price administrator did in Porter or the
19    Department of Labor in --
20              CHIEF JUSTICE ROBERTS:  The -- your
21    friend on the other side makes the point that
22    "injunction" appears in the United States Code
23    throughout the code hundreds of times.  And is
24    your position that, whenever it does, a broader
25    range of equitable powers is conferred on an

1    agency?

2              MR. MARCUS:  Well, again, it's not

3    that the power is conferred on the agency; it's

4    that the court has inherent powers.  Now, in --

5    in many cases, it -- it may be appropriate in --

6    in conjunction with an injunction to engage in

7    other types of equitable remedies, but it's not

8    always appropriate.  These are case-by-case

9    determinations.

10             CHIEF JUSTICE ROBERTS:  Thank you,

11   counsel.

12             Justice Thomas.

13             JUSTICE THOMAS:  Thank you, Mr. Chief

14   Justice.

15             Mr. Marcus, Section 13(b)(1) says that

16   whenever the Commission has reason to believe

17   that a person, partnership, or corporation is

18   violating or is about to violate any provision

19   of law.  That seems to suggest that that

20   provision is focused on forward-looking,

21   preventing a -- a future or a present action.

22             It seems that what you're doing here

23   is using it for something that has already

24   happened.  Would you be kind enough to reconcile

25   your approach with the language of 13(b)?

```
 1              MR. MARCUS:  I'd be happy to, Justice

 2    Thomas.  "Is or is about to" echoes the standard

 3    for the grant of an injunction.  For example,

 4    the -- typically, an injunction requires there

 5    to be ongoing or expected conduct, and -- but,

 6    once the court's equity jurisdiction has been

 7    properly invoked, the court can order associated

 8    remedial relief.  And that's what happened in

 9    all of the 19th Century intellectual property

10    cases.  And, in fact, in the Root case in

11    particular, the Court said your injunction --

12    I'm sorry, your patent has expired.  Therefore,

13    you can't seek an injunction and you cannot get

14    a naked monetary remedy.

15              But, here, there was ongoing conduct

16    at the time the FTC sued.  The court granted an

17    injunction.  And the question is, once the court

18    has had its authority triggered, once the court

19    has exercised that authority, can it also engage

20    in the traditional mechanisms of injunctive

21    relief?  And I think the answer in centuries of

22    law is pretty clear.

23              JUSTICE THOMAS:  Would you just take a

24    minute and explain again why -- from my

25    perspective, it seems as though what you're
```

1    doing here fits more comfortably under Section

2    19.  But would you explain why the Commission

3    chooses to use Section 13 rather than Section 19

4    again?

5              MR. MARCUS:  Certainly.  Well, it --

6    for one thing, it is easier to use Section 13 in

7    many respects than it is in Section 19.  But,

8    also, there are many cases where it doesn't take

9    a lot of Commission expertise to explain why a

10   particular act is deceptive.  And, here,

11   certainly, it did not take the agency or even

12   the U.S. Attorney's Office for that matter to

13   explain to Scott Tucker that misleading people

14   about the terms of their loan was a deceptive

15   act.  So, when the Commission feels that it

16   doesn't need to expound on the -- the meaning

17   and boundaries of the FTC Act, it can bring

18   cases under Section 13.

19             Now, keep in mind, when it does that,

20   it gives up a bunch of stuff.  It gives up the

21   ability to find its own facts.  It gives up the

22   somewhat broader remedies that Section 19

23   allows, including -- Section 19 allows us to sue

24   in state court, as well as federal court.

25             And so each -- it's a little bit like

1    the choice between rulemaking and adjudication

2    in, you know, Bell Aerospace.  Congress wanted

3    the Commission to have flexibility to choose

4    between enforcement pathways.  They both --

5              CHIEF JUSTICE ROBERTS:  Justice

6    Breyer.

7              JUSTICE BREYER:  History matters.  I

8    think Justice Brandeis, when he started, was

9    faced with a business community that was very

10   suspicious of the FTC's power and thought it

11   would be abused and a progressive community that

12   thought it's absolutely necessary to bring bad

13   business practices under control.  So they

14   compromised.

15             The compromise was you've got to do

16   what the FTC says, but before it tells you to do

17   something, it will find that what you're doing

18   now is wrong.  It will find that.  It will be a

19   cease-and-desist order, later expanded under

20   Moss-Magnuson, I think, to include violation of

21   a rule.

22             So Section 5, cease-and-desist order

23   or violation of a rule, ha, damage of some kind.

24   Nineteen, the same thing.  And now we have right

25   in the middle 13, no protection like that

1    whatsoever.  Do not worry, says the FTC, we will

2    only use it in exceptional cases.

3            Ha!  In 2012, they repeal that.  And

4    now, 10 years later, after this has been in

5    effect for a few years, I read that 100 cases

6    under this provision are in the courts, compared

7    with 10 or 12 under the regular cases.

8            And you say it's just obvious, we're

9    going to get those people who think their bad

10   conduct is obvious.  Look at Skechers.  Look at

11   the Cardinal case.  Go back to the famous Unburn

12   case.  Add substantiation.

13           People wouldn't know that it is an

14   unfair practice that a chiropractor who was

15   married to a wife who had some income from the

16   company and therefore is a conclusion as to the

17   muscle toning of the company should be

18   discounted.  And that's the kind of case they're

19   bringing now.

20           Now do you see my point?  On the one

21   hand, it's well-established law in the lower

22   court.  On the other hand, if we interpret it

23   your way, we -- we -- we say your fears,

24   business community, were absolutely right.  It

25   is now up to the FTC.  Before you know the thing

39

```
1    is wrong, they hit you with bad damages.
2              This case?  Perhaps you're right.  But
3    Skechers, Cardinal, even Unburn, build strong
4    bodies eight ways, that was Wonder Bread.  They
5    only did it six ways.  I mean, you see, it's
6    giving the FTC -- that -- that -- you get my
7    point.  Now I'd like to hear an answer.
8              MR. MARCUS:  I do get your point,
9    Justice Breyer, and the answer is that in 1914,
10   when the -- when the Commission was created,
11   there was a bargain struck.  And in 1973, when
12   consumer fraud became rampant in the economy and
13   people were complaining about the toothless FTC,
14   there was a new bargain struck where the
15   Commission could go into court and seek remedies
16   in court as a litigant in the first instance.
17             Courts are, of course, bound by
18   principles of constitutional due process and
19   notice.  And if the court concludes that the --
20   that the chiropractor couldn't possibly
21   understand what was required of him, it will
22   find that a remedy is not available.
23             Many of the cases that you're
24   referring to, though, Justice Breyer, actually
25   involve settlements that were made with the
```

1    Commission in the course of administrative

2    proceedings.  These things do get complicated.

3    But those are companies that agreed to settle.

4              CHIEF JUSTICE ROBERTS:  Justice Alito.

5              JUSTICE ALITO:  In answer to Justice

6    Thomas's question, well, his -- your answer to

7    Justice Thomas's question leads me to ask this:

8    If the activity here had ceased before this

9    order was entered, would the court have been

10   able to enter it?

11             MR. MARCUS:  Well, so, if the activity

12   had ceased and it was -- there was no

13   possibility that it could have resumed again,

14   then the answer is typically no.  Of course,

15   there are some people who, when the FTC starts,

16   you know, inquiring about them, they stop for

17   the time being, only to resume again later.  But

18   if they --

19             JUSTICE ALITO:  And why would Congress

20   -- why would Congress draw that line?  Why would

21   it provide a -- a -- a restitution remedy when

22   there is still ongoing activity but no

23   restitution remedy when all of the harm has

24   already been completed?

25             MR. MARCUS:  Well -- well, because the

41

```
1       -- the remedy goes along with the injunctive

2       remedy.  It's inherent in the injunction that

3       the court can issue.  And that's what the

4       Congress has traditionally done.  It's what it

5       did in the 19th Century patent and copyright

6       cases.

7              JUSTICE ALITO:  What would be the

8       policy -- what would be the policy justification

9       for doing that?  Why would Congress draw that

10      line?

11             MR. MARCUS:  I can't tell you why

12      Congress would want to have a less-than-complete

13      remedy, but it's -- it's something that Congress

14      does quite often.  It does -- it's still to this

15      day in the Securities and Exchange Act cases.

16      It requires -- it -- there is an about to

17      requirement -- before they can get the equitable

18      relief.

19             JUSTICE ALITO:  We asked Mr. Pattillo

20      questions about how this provision would have

21      been understood in 1973.  His brief cites

22      comments made by a former FTC official,

23      Mr. FitzGerald, that addresses that directly,

24      and they are pretty damaging to your position.

25             Mr. FitzGerald says that when 13(b)
```

        1    was enacted, nobody on the Commission imagined

        2    that it would become an important part of its --

        3    the Commission's consumer protection program.

        4           But the Commission decided that

        5    Section 19 was too time-consuming, so it

        6    wanted -- it looked for a workaround, and

        7    "neither the text of 13(b) nor its legislative

        8    history disclosed a basis to argue for broad

        9    equitable relief.  The Commission's attorneys

       10    thought these arguments were not going to

       11    succeed, but, to their surprise, they were

       12    successful."

       13           And you don't say anything about

       14    Mr. FitzGerald.  Do you want to say something

       15    about him now?

       16           MR. MARCUS:  I'd be happy to, Justice

       17    Alito.  Mr. FitzGerald, for one thing, is not

       18    Congress.  So the question is what Congress

       19    understood.  And there was a huge body of law

       20    indicating that Congress understood what it was

       21    doing.

       22           But, beyond that, what

       23    Mr. FitzGerald's article does indicate is that

       24    in the 1970s, at the time when people were

       25    complaining that the FTC was lackadaisical about

1    enforcement, the Commission's mindset was all

2    about rulemaking, making broad rules to govern

3    large industrial sectors, and it did take a

4    little while for the Commission's mindset to

5    change from a rulemaking to an enforcement

6    perspective.

7            But, once it did, it vigorously

8    started invoking Section 13(b), and, as has been

9    pointed out by the questioning, courts for 40

10   years now have accepted those things.  And

11   before the FTC even did this, courts had been

12   accepting the exact same arguments in the SEC

13   context.

14           JUSTICE ALITO:  All right.  Thank you.

15           CHIEF JUSTICE ROBERTS:  Justice

16   Sotomayor.

17           JUSTICE SOTOMAYOR:  Counsel, how do

18   you explain Section 5(l), which was passed at

19   the same time as Section 13(b) and separately

20   authorizes mandatory injunctions and further

21   equitable relief?

22           Why would Congress use a different

23   language for injunctive relief in one section

24   and just stop at "injunctive relief" and in the

25   other add "and further equitable relief" in a

1    different section?

2            MR. MARCUS:  Well, the textual

3    differences in the two provisions reflect their

4    functional differences.  Section 5(l) is used to

5    enforce cease-and-desist orders, the

6    administrative orders, and -- and so there

7    already basically is an injunction on the books,

8    and it's an injunction that doesn't come with

9    any traditional remedies.  So Congress had to

10   say exactly what remedies it wanted.  And that's

11   why it's limited to mandatory injunctions and

12   other equitable relief.

13           But, in Section 13, Congress didn't

14   need to do that.  It could rely on, could

15   piggyback on, all of the traditional remedies

16   inherent in a permanent injunction, which is

17   different from a mandatory injunction.  And so,

18   you know, you could look at it that, in fact,

19   what Congress wanted to make sure of was that,

20   no matter how the Commission proceeded, whether

21   it proceeded by administrative, by a

22   cease-and-desist order, or whether it went into

23   court as a litigant, that each time consumers

24   were harmed they would have the opportunity to

25   get redress for their victimization.

1          JUSTICE SOTOMAYOR:  Now I'm following

2    up slightly on Justice Alito's question.

3    Legislative history is not unimportant to me.

4    What am I to make of the fact that I saw nothing

5    in the history of this bill suggesting that

6    Congress understood that Section 13(b)

7    authorizes monetary awards?

8          Quite to the contrary, the prior

9    version of what became Section 19 triggered

10   extensive debate because there wasn't money

11   damages available, and Section 19 was passed to

12   remedy what was perceived as a fault in the bill

13   as it existed.

14         So what am I missing in terms of the

15   absence of anything to do with this issue before

16   Congress?

17         MR. MARCUS:  Well, you are correct,

18   Justice Sotomayor, that the legislative history

19   does not -- 13(b) itself does not explicitly

20   address money.  But there is a presumption that

21   Congress legislates against the backdrop of the

22   law.  And the backdrop of the law of injunction

23   really couldn't be clearer.

24         Now, when it comes to Section 19, the

25   debate about monetary remedies in Section 19 had

1    to do with the Commission's own ability to order

2    monetary remedies in its own administrative

3    processes as part of a cease-and-desist order.

4    The -- as Section 19 was being debated, the

5    Ninth Circuit ruled in the Heder case, which is

6    cited in our brief, that the Commission could

7    not order monetary remedies in its own

8    proceedings, and that's why money was front and

9    center in Congress's mind.  But it --

10          CHIEF JUSTICE ROBERTS:  Justice Kagan.

11          JUSTICE KAGAN:  Mr. Marcus, it seems

12   to me that the best argument against your

13   position, and -- and it's a strong one, comes

14   from Section 5 and Section 19, which have these

15   protections in them that Section 13 do not, that

16   there has to be a repeated violation, that there

17   has to be a certain kind of mens rea and so

18   forth.

19          And -- and it -- it does seem as

20   though your interpretation of Section 13 makes

21   those pretty much entirely irrelevant.  I mean,

22   you say, well, this is a choice.  There are two

23   pathways of different kinds of administrative

24   action.

25          But what -- what -- what seems

1    significant about those two pathways as you've
2    led them -- as you've laid them out, is that one
3    is so clearly better from the agency's
4    perspective.  And so I'm wondering if that's the
5    kind of choice that Congress really gave to the
6    agency.
7         MR. MARCUS:  Well, Justice Kagan, the
8    -- I think that the core of the answer goes back
9    to what Justice Breyer was describing in his
10   answer to me, which was a fear of Congress that
11   an agency would have too much power, and if
12   Congress gave the Commission the ability to
13   address economy-wide practices in -- in -- under
14   fairly broad terms, and it was concerned that
15   the agency was going to declare novel practices
16   to be deceptive or unfair or anticompetitive.
17        And so Congress was understandably
18   concerned and, therefore, included procedural
19   protections in -- you know, in -- in the
20   provisions regarding relief for agency
21   processes.  But what it --
22        JUSTICE KAGAN:  It seems as though
23   that's exactly why we should maintain the
24   integrity of those protections rather than your
25   interpretation, which essentially makes them

    1    irrelevant.  It was nice that Congress once
    2    thought that, but we don't have to deal with
    3    that anymore.
    4              MR. MARCUS:  It -- it doesn't make
    5    them irrelevant.  It just makes one pathway more
    6    attractive in certain instances than another,
    7    but, if the Commission does encounter a novel
    8    practice or if the Commission wishes to make its
    9    own fact-finding in -- in particularly
   10    complicated cases or difficult cases, then it
   11    can do that only in the administrative pathway.
   12              So it's not just a -- it's not just a
   13    freebie.  The Commission has to give something
   14    up when it decides to go to federal court.  It
   15    just so happens that, you know, there's a lot of
   16    cases that we deal with that are not
   17    particularly complicated and that do not require
   18    a lot of explanation of what deception is.
   19    There are scams that run amok all over the
   20    place.
   21              JUSTICE KAGAN:  If you could --
   22              MR. MARCUS:  It's happening right now.
   23              JUSTICE KAGAN:  Just going back to
   24    Justice Breyer's numbers, I mean, can you give
   25    me any sense of the empirics of this, how often

1    the FTC uses the cease-and-desist order route as

2    opposed to the go-to-court route?

3              MR. MARCUS:  I don't have exact

4    numbers for you, Justice Kagan, but, in most

5    antitrust cases, the Commission uses the

6    administrative route.  Of -- in at least several

7    cases a year, the Commission uses the

8    administrative route in consumer protection

9    cases, but there's no question that the agency

10   brings far more cases in court than it does in

11   the administrative process.

12             CHIEF JUSTICE ROBERTS:  Justice

13   Gorsuch --

14             MR. MARCUS:  But, again, that largely

15   reflects the --

16             CHIEF JUSTICE ROBERTS:  Justice

17   Gorsuch.

18             JUSTICE GORSUCH:  Oh, counsel, finish

19   your answer.  I'm -- I'm interested.

20             MR. MARCUS:  Oh, thank you.  That

21   largely reflects the -- the kind of basic

22   deceptiveness of much of the stuff that we deal

23   with on the consumer protection side.

24             JUSTICE GORSUCH:  Well, let -- let's

25   focus on the consumer protection side because I

 1  think the antitrust side, there are a lot more

 2  standards out there that people are familiar

 3  with.  But -- but Justice Breyer really does

 4  remind us of -- of the history here.  The FTC

 5  was set up in part to enact rules about

 6  deceptive conduct.  It chose not to go that

 7  route, preferred an enforcement route.  And --

 8  and recognizing that a term like "deceptive

 9  practices" in Section 5 is not exactly

10  self-defining -- it may lack some of the

11  substance that we now have at least under the

12  Sherman Act in the antitrust context -- laid out

13  a bunch of protections in Section 19 before your

14  money can be taken away.

15          We've all kind of wandered around this

16  question, but is -- isn't -- I think our core

17  concern is you're rendering that -- those

18  protections superfluous, that there's very

19  little incentive for the agency to ever comply

20  with them, and it's just a -- another step away

21  from what Congress had anticipated would be a

22  regulatory regime that's never materialized.

23          MR. MARCUS:  Well, certainly, Justice

24  Gorsuch, Congress did seem to recognize the

25  issue, and that's why it included savings

1   clauses in Section 19.  You know, I -- I -- I
2   don't see much other explanation for very broad
3   provisions that clearly on their face say this
4   is in addition to other remedies and you can't
5   use the existence of this provision to interpret
6   other remedies.
7           JUSTICE GORSUCH:  Let -- let me put
8   the question a different way:  What incentive
9   does the Commission have today to use Section
10  19?
11          MR. MARCUS:  The -- the Commission has
12  the incentive that I discussed, which are if it
13  wishes to engage in its own fact-finding and
14  use -- and draw its own legal conclusions to
15  address novel conduct --
16          JUSTICE GORSUCH:  Yes, but it -- it's
17  inherently difficult, and Section 13 is so
18  comparatively easy.  What -- what incentive
19  remains to do that?  I know it can, but why
20  would it?  Just as it can come up with rules
21  defining what unfair trade practices are but --
22  but chooses not to do so.
23          MR. MARCUS:  Well, it -- well, it
24  does.  I mean, so it -- it doesn't do it as
25  often, but it does do it.  And so that proves

1    that there are cases where the Commission thinks
2    we need to take this one.  This one's difficult
3    enough.  This one's uncertain enough.  This one
4    requires our application of agency expertise,
5    and the Commission has to give up all that when
6    it goes to federal court.
7            Now some would say that it's actually
8    better to have a commission litigating cases in
9    federal court than it is to have the Commission
10   making broad-based rules that may apply to
11   non-parties.
12           JUSTICE GORSUCH:  Thank you, counsel.
13           MR. MARCUS:  So --
14           CHIEF JUSTICE ROBERTS:  Justice
15   Kavanaugh.
16           JUSTICE KAVANAUGH:  Thank you, Chief
17   Justice.
18           And good morning, Mr. Marcus.  Good to
19   be with you again.  I want to pick up on Justice
20   Alito's question and Mr. FitzGerald's article,
21   which I've read.  You obviously put forward good
22   arguments on Porter and the Court's precedent
23   and Congress's intent, as well as the body of
24   court of appeals cases, but it seems that the
25   problem you have is the text.  And in that

1    sense, this case really is a separation of

2    powers case.

3            I -- I -- I worked in the Executive

4    Branch for many years, so I understand how this

5    happens.  When you're in the Executive Branch or

6    an independent agency, you want to do good

7    things and prevent or punish bad things, and

8    sometimes your statutory authority is

9    borderline.  And it could be war policy or

10   immigration or environmental or what have you,

11   but with good intentions, the agency pushes the

12   envelope and stretches the statutory language to

13   do the good or prevent the bad.

14           The problem is -- is it results in a

15   transfer of power from Congress to the Executive

16   Branch to decide whether to exercise this new

17   authority.  That's a particular concern, at

18   least for me, with independent agencies.  So --

19   now why isn't the answer here, for the agency to

20   seek this new authority from Congress, for us to

21   maintain the principle that separation of

22   powers, that the agency should stick to the

23   authority in the -- in the text and not -- and

24   not go beyond that?

25           A 30,000-foot question.  Interested in

1   your responses to that.

2              MR. MARCUS:  Well, so, again, the

3   question, the real question, is what was

4   Congress's intent when it gave the Commission

5   the authority to seek a permanent injunction in

6   federal court.  And if it intended to accord the

7   agency the -- the ability to go ask the court

8   for all of the inherent equitable remedies, then

9   I think that resolves your concern about

10  separation of powers issues.

11             And, you know, again, it -- it

12  couldn't be clearer that -- that Congress,

13  legislating against the backdrop of injunctions,

14  would have had the intent to accord all the

15  traditional equitable remedies.

16             And, you know, this is not a -- this

17  is not a new question.  Even, you know, in the

18  California versus American Stores cases we cite

19  in our brief, the Court held that "injunction"

20  as used in the Clayton Act indicates Congress's

21  intention that traditional principles of equity

22  govern the grant of injunction -- of injunctive

23  relief.

24             And so, you know, ultimately, I -- I

25  think the -- the -- your concern is a valid one

1    but is resolved if you look at what Congress

2    would have understood the words to mean when it

3    used them.  And there was, in fact, a common

4    understanding of what "injunction" meant in

5    1973.

6              JUSTICE KAVANAUGH:  Appreciate it, Mr.

7    Marcus.  Thank you.

8              CHIEF JUSTICE ROBERTS:  Justice

9    Barrett.

10             JUSTICE BARRETT:  Counsel, the -- the

11   damages award here or the money at stake here

12   was 1.3 billion dollars and then the 27 million

13   dollars collected from Mr. Tucker's wife.  And

14   when Justice Alito asked Mr. Pattillo how much

15   of that had been distributed to the victims, he

16   said about 500 million dollars.  So I -- I take

17   it the rest of that is in the Treasury, or does

18   the FTC have it right now?

19             MR. MARCUS:  So I'm glad you ask that

20   question, Justice Barrett.  I will get you a

21   clarification on what Mr. Pattillo said because

22   the money that's actually been distributed from

23   consumers comes from a different defendant, not

24   Tucker, not Mrs. Tucker, not any of the

25   Petitioners before this Court.  It comes from a

1    bank that settled separately with the government

2    and agreed to a restitution remedy in the

3    criminal case that the Justice Department then

4    turned over to the FTC to distribute to

5    consumers.  So none of that money is the

6    judgment in this particular case.

7         JUSTICE BARRETT:  So what happens or

8    has happened to the judgment, the money flowing

9    from the judgment, in this particular case?

10        MR. MARCUS:  So, right now, there's

11   some money that is being held in an account

12   separately for -- for redress should the

13   Commission ultimately wind up with the ability

14   to distribute --

15        JUSTICE BARRETT:  How much money --

16        MR. MARCUS:  -- that money.

17        JUSTICE BARRETT:  -- in that account

18   compared to the 1.3 billion?

19        MR. MARCUS:  I don't know the exact

20   number, but it's tens of millions.  It's a --

21   it's a lot of money.

22        JUSTICE BARRETT:  But this is what I'm

23   -- I'm getting at.  It seems to me that

24   equitable remedies attempt to restore the

25   plaintiff to the position in which the plaintiff

```
1    stood before the plaintiff was defrauded.  This
2    money isn't traceable back to the FTC, and the
3    money that's gained isn't all being distributed
4    to the plaintiffs.  So it seems like it
5    functions almost more like a fine.  It doesn't
6    really seem analogous to, say, restitution to
7    me.
8              MR. MARCUS:  Well, I -- I'm not sure
9    that's quite correct, because the point here is
10   that it's a -- it's -- it's an equitable remedy
11   meant to restore the victims to the place that
12   they were in before they were ripped off, and --
13             JUSTICE BARRETT:  But, if the victims
14   don't get the money or if all the money is not
15   traceable to the victims, that -- then all the
16   money is not remedying that wrong.
17             MR. MARCUS:  Well, no, we know -- we
18   know who the victims were and we know how much
19   they were -- we know how much was stolen from
20   each of them.  It's just a matter of collecting
21   the money, figuring out from this case whether
22   we are allowed to give back the money, and then
23   basically cutting checks to everybody.  Right
24   now, the money's being held in safekeeping.
25             JUSTICE BARRETT:  So the full 1.3
```

58

1    billion dollars will be distributed to the

2    victims?

3            MR. MARCUS:  As much of it as we can

4    get, yes.  We're not going to get 1.3 billion

5    dollars.  A lot of it was spent and it doesn't

6    exist anymore, and, you know, Tucker is now

7    judgment-proof for the most part.  But there

8    were bank accounts, houses, race cars, whatever,

9    assets that were seized and are being held

10   basically in trust forever.

11           JUSTICE BARRETT:  Thank you, counsel.

12   My time's expired.

13           CHIEF JUSTICE ROBERTS:  A minute to

14   wrap up, Mr. Marcus.

15           MR. MARCUS:  Thank you, Chief Justice.

16           I want to reiterate that a court with

17   the power of injunction sits as -- as a court of

18   equity.  And one thing that the Court should not

19   overlook is the basic principle of equity that

20   wrongdoers have to give back the money that they

21   took unlawfully.  AMG asks the Court to

22   disregard that principle.  But the Court should

23   have that principle firmly in mind when it

24   decides this case.

25           It should uphold the history and

1    tradition and affirm once again that a permanent

2    injunction includes the power to restore victim

3    money that was wrongfully taken from them.  And

4    I don't think that -- that anything in Sections

5    19 or 5(l) rise to the level of an unmistakable

6    inference, which is the standard that is

7    required under Porter.

8              So the Court should affirm the

9    judgment below.  Thank you.

10             CHIEF JUSTICE ROBERTS:  Thank you,

11   counsel.

12             Rebuttal, Mr. Pattillo.

13        REBUTTAL ARGUMENT OF MICHAEL PATTILLO

14            ON BEHALF OF THE PETITIONERS

15             MR. PATTILLO:  I heard the Commission

16   say that this case should be decided by looking

17   at Congress's intent when it enacted 13(b).  And

18   the way we determine Congress's intent is by

19   looking at the words on the page.

20             Congress used the word "injunction"

21   with a clear historical meaning.  Even if, in

22   certain cases like Porter and Mitchell, that

23   term might be construed to carry with it other

24   equitable remedies, we know that's not the case

25   here.

1            Even under Porter and Mitchell, Porter

2     and Mitchell make clear that you must look at

3     the statute and ask if another feature impliedly

4     precludes broader relief.  The Commission

5     suggests that standard isn't met here.  But all

6     we have to do is look at Porter.

7            In Porter, the existence of another

8     provision providing a damages remedy was

9     sufficient for the Court to conclude that it

10    should not also imply that same damages remedy

11    into the provision at issue.  That is precisely

12    what the Commission is trying to do here.  It is

13    trying to get precisely the same relief that

14    would have been available under 5(l),

15    injunctions and other equitable relief.

16            It's trying to get precisely the same

17    relief available under Section 19 but without

18    complying with any of its safeguards.  I heard

19    the Commission say that sometimes pathways --

20    one pathway might be more attractive.  Well, of

21    course, it's going to be more attractive for the

22    Commission to proceed under Section 13 than

23    Section 19, where it doesn't have to comply

24    with, for example, the heightened proof

25    requirement, where it doesn't have to comply

1    with the limitations period.  I -- I didn't hear

2    a single response to why Congress would have

3    intended to allow the same relief under two

4    pathways yet only provide protections in one but

5    not the other.

6         And the absence of a limitations

7    period is something that Meghrig pointed out.

8    It would be truly striking for a statute to

9    award retrospective monetary relief but not

10   include a statute of limitations.  That applies

11   equally here but even more so when you consider

12   what the Commission's core mission is here.

13        Here, the -- the Commission first

14   investigated this conduct, it first asked

15   Mr. Tucker about his disclosures, in 2002.  Yet,

16   subject to no limitations period, it sat on its

17   hands for a decade.

18        Now, if it were following the

19   prescriptions that Congress provided, in 2002,

20   if it thought that there was something wrong

21   with the disclosures, it should have gone in

22   then.  It should have thought to bring a stop to

23   it.  It could have gone -- it should have gone

24   to administrative processes to make clear that

25   this particular remedy -- or, excuse me, that

1    these particular disclosures, which are

2    widespread throughout the industry, were, in

3    fact, not acceptable and a violation of the 5(l)

4    act.  But it didn't do that.  And this case

5    shows precisely why holding the Commission to

6    its core mission of providing prospective

7    monetary -- prospective guidance to business

8    about what conduct is prohibited is so

9    important.  It's exactly what Congress intended.

10            And the entire structure of the -- of

11   the Commission's mission is being altered by it

12   choosing to go down the easy path of render --

13   racking up huge judgments under 13(b) without

14   the protections that Congress provided under

15   Section 19.

16            If there are no further questions, I

17   would ask that the judgment of the court of

18   appeals be reversed.  Thank you.

19            CHIEF JUSTICE ROBERTS:  Thank you,

20   counsel.  The case is submitted.

21            (Whereupon, at 11:07 a.m., the case

22   was submitted.)

23

24

25

**1**

**1.3** [4] 55:12 56:18 57:25 58:4
**10** [2] 38:4,7
**10:00** [2] 1:16 3:2
**100** [1] 38:5
**11:07** [1] 62:21
**12** [1] 38:7
**13** [11] 1:12 8:11 36:3,6,18 37:25 44:13 46:15,20 51:17 60:22
**13(b** [38] 3:13,20,23 4:13 5:2 6:23 7:16,19 8:22 9:2,3, 21 10:1 12:1 16:2,13,18,22 19:24 24:1 26:1 27:4 29:15 30:20 31:15,21 32:1,24 33:14 34:25 41:25 42:7 43:8,19 45:6,19 59:17 62:13
**13(b)'s** [1] 28:23
**13(b)(1** [1] 34:15
**1860** [1] 7:8
**19** [31] 4:7,20 8:9 15:25 18:16 25:23 27:11,15,22 31:6,12 32:1 36:2,3,7,22,23 42:5 45:9,11,24,25 46:4,14 50:13 51:1,10 59:5 60:17,23 62:15
**19-508** [1] 3:4
**1914** [2] 4:23 39:9
**1970s** [1] 42:24
**1973** [5] 19:14 21:15 39:11 41:21 55:5
**19th** [3] 9:14 35:9 41:5

**2**

**2002** [2] 61:15,19
**2012** [1] 38:3
**2021** [1] 1:12
**269** [1] 13:25
**27** [2] 14:2 55:12

**3**

**3** [2] 2:4 13:11
**30** [1] 2:7
**30,000-foot** [1] 53:25

**4**

**40** [1] 43:9

**5**

**5** [6] 8:9 32:23 33:13 37:22 46:14 50:9
**5(l** [11] 4:2 7:21 19:24 31:6, 13 32:1 43:18 44:4 59:5 60:14 62:3
**50** [3] 5:11 10:20 11:13
**500** [2] 12:16 55:16
**59** [1] 2:10

**9**

**9** [1] 31:25

**A**

**a.m** [3] 1:16 3:2 62:21
**ability** [6] 33:16 36:21 46:1

**47**:12 54:7 56:13
**able** [2] 18:1 40:10
**above-entitled** [1] 1:14
**absence** [2] 45:15 61:6
**absent** [1] 16:5
**absolutely** [2] 37:12 38:24
**absurd** [1] 29:7
**abused** [1] 37:11
**acceptable** [1] 62:3
**accepted** [1] 43:10
**accepting** [1] 43:12
**accord** [2] 54:6,14
**accorded** [1] 32:19
**according** [2] 18:1 21:11
**account** [2] 56:11,17
**accounting** [1] 9:23 22:17
**accounts** [1] 58:8
**accurate** [1] 28:4
**acknowledged** [1] 21:18
**acquired** [1] 31:4
**Act** [22] 3:19,22 4:1 6:14 10:16 16:19 21:25 28:10,13 29:2,11 30:9 31:6,8,14 36:10,15,17 41:15 50:12 54:20 62:4
**Act's** [3] 3:12 4:22 17:19
**action** [6] 17:3,4 21:24 46:24
**activity** [4] 40:8,11,22
**actually** [5] 19:22 24:3 39:24 52:7 55:22
**add** [3] 24:20 38:12 43:25
**addition** [1] 51:4
**additional** [2] 23:15 31:19
**address** [5] 9:13 25:17 45:20 47:13 51:15
**addressed** [1] 25:14
**addresses** [2] 22:1 41:23
**adjudication** [1] 37:1
**adjudications** [1] 16:4
**adjudicatory** [1] 32:22
**administrative** [13] 16:21 18:6 29:20 40:1 44:6,21 46:2,23 48:11 49:6,8,11 61:24
**administratively** [1] 31:8
**administrator** [1] 33:18
**adopt** [2] 6:6 27:17
**advanced** [1] 24:11
**Aerospace** [1] 37:2
**affect** [2] 28:7,7
**affirm** [1] 59:1,8
**agencies** [2] 32:9 53:18
**agency** [30] 4:23,25 5:7 16:4 17:12,21 21:4 29:12 32:13,13,17,19 33:6,8,10 34:1,3 36:11 47:6,11,15,20 49:9 50:19 52:4 53:6,11,19,22 54:7
**agency's** [2] 32:22 47:5
**ago** [1] 5:12
**agree** [2] 22:15 27:4
**agreed** [2] 40:3 56:2
**ahead** [1] 16:16
**AL** [1] 1:4

**Alexander** [3] 6:12,24 19:1
**Alito** [16] 12:9,10,18 13:6 14:6 15:13,16,19 40:4,5,19 41:7,19 42:17 43:14 55:14
**Alito's** [2] 45:2 52:20
**alleged** [2] 14:1,2
**allow** [1] 61:3
**allowed** [3] 9:15 30:8 57:22
**allows** [4] 4:1 16:24 36:23, 23
**alluded** [1] 33:4
**almost** [2] 16:20 57:5
**alone** [1] 26:13
**already** [5] 12:13 23:11 34:23 40:24 44:7
**altered** [1] 62:11
**although** [1] 27:22
**American** [1] 54:18
**AMG** [3] 1:3 3:4 58:21
**amici** [1] 28:8
**amok** [1] 48:19
**amount** [2] 13:13 14:1
**analogous** [1] 57:6
**another** [6] 4:7 21:24 48:6 50:20 60:3,7
**answer** [3] 16:7,15,18 35:21 39:7,9 40:5,6,14 47:8, 10 49:19 53:19
**anticipated** [1] 50:21
**anticompetitive** [1] 47:16
**antitrust** [3] 49:5 50:1,12
**appeals** [4] 11:8,23,24 12:1,3,7 26:10,17 52:24 62:18
**APPEARANCES** [1] 1:18
**appears** [1] 33:22
**application** [1] 52:4
**applies** [2] 6:22 61:10
**apply** [4] 4:25 11:2 17:14, 23 32:16 52:10
**Appreciate** [1] 55:6
**approach** [12] 5:16,22 6:1, 16 11:8 18:22,23,25 19:8,9, 19 34:25
**appropriate** [3] 4:4 34:5,8
**area** [1] 28:12
**arguably** [1] 19:5
**argue** [2] 15:23 42:8
**arguing** [1] 27:5
**argument** [24] 1:15 2:2,5,8 3:4,8 6:3,11,12 7:11 8:16 9:13 10:15,17 19:7 20:6,4,5, 24 10,11,22 26:9 30:3 46:12 59:13
**arguments** [4] 10:14 42:10 43:12 52:22
**around** [3] 10:20 12:16 50:15
**article** [2] 42:23 52:20
**articulated** [1] 23:4
**aside** [2] 19:3,4
**asks** [1] 58:21
**assets** [4] 13:16 14:4 22:18 58:9

**associated** [1] 35:7
**assume** [2] 8:8 32:15
**assumed** [1] 20:11
**assuming** [2] 11:10 20:8
**attempt** [1] 56:24
**Attorney's** [1] 36:12
**attorneys** [1] 42:9
**attractive** [3] 48:6 60:20, 21
**authority** [9] 9:7 18:15 29:24 32:12,14 33:2,4,8,10 35:18,19 53:8,17,20,23 54:5
**authorize** [5] 9:6 14:15,24 16:8 25:10
**authorized** [3] 3:24 7:19 20:3
**authorizes** [5] 3:14 4:3,8 43:20 45:7
**authorizing** [1] 29:16
**automatically** [1] 17:24
**availability** [1] 9:8
**available** [7] 9:23,24 16:10 39:22 45:11 60:14,17
**award** [3] 23:12 55:11 61:9
**awards** [1] 45:7
**away** [2] 50:14,20

**B**

**Back** [15] 5:15 6:8 7:8,9 14:6 18:21 20:7,11 27:18 38:11 47:8 48:23 57:2,22 58:20
**backdrop** [3] 8:14 19:14 45:21,22 54:13
**backward-looking** [1] 5:6
**backwards-looking** [1] 25:18
**bad** [5] 37:12 38:9 39:1 53:7,13
**bank** [2] 56:1 58:8
**bargain** [2] 39:11,14
**barred** [1] 17:7
**Barrett** [13] 27:2,3 28:19 55:9,10,20 56:7,15,17,22 57:13,25 58:11
**based** [1] 26:4
**basic** [3] 11:19 49:21 58:19
**basically** [4] 14:7 44:7 57:23 58:10
**basis** [1] 42:8
**Bea's** [1] 27:25
**Beach** [1] 1:19
**bears** [1] 13:5
**became** [2] 39:12 45:9
**become** [2] 9:9 42:2
**behalf** [8] 1:20,22 2:4,7,10 3:9 30:4 59:14
**behind** [1] 19:9
**believe** [1] 34:16
**Bell** [1] 37:2
**below** [2] 28:1 59:9
**besides** [1] 7:11
**best** [1] 46:12
**better** [2] 47:3 52:8

**between** [7] 13:7,16 23:1,2 32:2 37:1,4
**beyond** [4] 4:2 10:25 42:22 53:24
**bill** [2] 45:5,12
**billion** [5] 13:11 55:12 56:18 58:1,4
**binding** [1] 16:4
**bit** [1] 36:25
**Black** [1] 24:14
**Black's** [2] 14:17 15:8
**Blue** [1] 10:9
**bodies** [1] 39:4
**body** [2] 42:19 52:23
**books** [1] 44:7
**bootstrap** [1] 24:1
**borderline** [1] 53:9
**both** [2] 10:10 37:4
**bound** [1] 39:17
**boundaries** [1] 36:17
**Branch** [3] 53:4,5,16
**Brandeis** [1] 37:8
**Bread** [1] 39:4
**Breyer** [11] 10:6,7 11:9,18 12:8 37:6,7 39:9,24 47:9 50:3
**Breyer's** [2] 26:6 48:24
**bridge** [1] 11:1
**brief** [6] 10:9,10 27:10 41:21 46:6 54:19
**briefly** [1] 14:7
**briefs** [1] 10:8
**bring** [3] 36:17 37:12 61:22
**bringing** [1] 38:19
**brings** [1] 49:10
**broad** [13] 4:22 15:2 17:20 20:17 26:8 28:11,13 32:7, 10 42:8 43:2 47:14 51:2
**broad-based** [1] 52:10
**broader** [3] 33:24 36:22 60:4
**build** [1] 39:3
**bunch** [2] 36:20 50:13
**burden** [1] 13:5
**burdens** [1] 29:20
**business** [4] 37:9,13 38:24 62:7
**businesses** [2] 5:1 28:16
**bygones** [1] 10:23,24
**bypass** [1] 5:7

**C**

**California** [1] 54:18
**called** [1] 11:4
**came** [1] 1:14
**cannot** [4] 7:21 11:13 29:21 35:13
**CAPITAL** [2] 1:3 3:5
**Cardinal** [2] 38:11 39:3
**carefully** [1] 32:12
**carried** [2] 7:15 25:13
**carries** [1] 12:2
**carry** [1] 59:23
**cars** [1] 58:8

**Case** [32] 3:4 8:14 9:21,21, 25 **10:**9 12:12 13:10,23 17: 12 18:13 24:24 25:9 27:22 **35:**10 38:11,12,18 39:2 46: 5 53:1,2 56:3,6,9 57:21 58: 24 59:16,24 62:4,20,21
**case-by-case** [1] 34:8
**cases** [30] 3:21 8:15 9:4,14, 17 21:9 25:1 32:6 34:5 35: 10 36:8,18 38:2,5,7 39:23 41:6,15 48:10,10,16 49:5,7, 9,10 52:1,8,24 54:18 59:22
**causes** [1] 6:16
**cease-and-desist** [8] 16: 13 31:17 37:19,22 44:5,22 46:3 49:1
**ceased** [2] 40:8,12
**center** [1] 46:9
**centuries** [1] 35:21
**Century** [3] 9:14 35:9 41:5
**certain** [4] 22:16 46:17 48: 6 59:22
**certainly** [8] 14:4 15:3 23: 8 26:14 32:18 36:5,11 50: 23
**Chamber** [1] 28:9
**change** [3] 5:13 8:16 43:5
**changed** [1] 11:7
**changing** [1] 11:21
**checks** [1] 57:23
**CHIEF** [42] 3:3,10 5:9 6:25 7:2 8:2,5,8 10:5 12:9 14:8 15:18,21 18:19,21 19:2,3 22:10 24:5,7 27:1 28:20 29:25 30:5 32:5 33:5,20 34:10,13 37:5 40:4 43:15 46:10 49:12,16 52:14,16 55:8 58:13,15 59:10 62:19
**chiropractor** [2] 38:14 39: 20
**choice** [4] 32:2 37:1 46:22 47:5
**choose** [1] 37:3
**chooses** [4] 31:7,11 36:3 51:22
**choosing** [1] 62:12
**chose** [1] 50:6
**Circuit** [6] 10:22 21:1,2,7 28:2 46:5
**cite** [2] 32:6 54:18
**cited** [1] 46:6
**cites** [1] 41:21
**Civil** [1] 6:14
**clarification** [1] 55:21
**Clark** [1] 24:15
**clauses** [2] 31:13 51:1
**Clayton** [1] 54:20
**clean** [1] 27:6
**clear** [9] 3:13,20 4:18 24:3 25:11 35:22 59:21 60:2 61: 24
**clearer** [3] 29:6 45:23 54: 12
**clearly** [3] 31:2 47:3 51:3

**client** [3] 27:5,19 28:7
**close** [1] 11:11
**Code** [2] 33:22,23
**coercive** [1] 23:15
**collected** [1] 55:13
**collecting** [1] 57:20
**combination** [1] 26:7
**combine** [1] 26:12
**come** [4] 5:4 16:24 44:8 51: 20
**comes** [5] 21:2 45:24 46: 13 55:23,25
**comfortably** [1] 36:1
**comments** [1] 41:22
**commerce** [1] 28:12
**COMMISSION** [57] 1:7 3:6, 14 4:18 5:4 12:25 13:4,19 14:16 15:15 16:24 23:21, 23 25:25 28:14 29:18,22 30:8 31:7,11 32:2,24 33:1, 15 34:16 36:2,9,15 37:3 39:10,15 40:1 42:1,4 44: 20 46:6 47:12 48:7,8,13 49:5,7 51:9,11 52:1,5,8,9 54:4 56:13 59:15 60:4,12, 19,22 61:13 62:5
**Commission's** [9] 29:14 33:14 42:3,9 43:1,4 46:1 61:12 62:11
**common** [1] 55:3
**community** [3] 37:9,11 38: 24
**companies** [1] 40:3
**company** [2] 38:16,17
**comparatively** [1] 51:18
**compared** [2] 38:6 56:18
**compelling** [1] 7:4
**compensation** [2] 8:20 15: 12
**complaining** [2] 39:13 42: 25
**completed** [1] 40:24
**completely** [1] 23:21
**complicated** [3] 40:2 48: 10,17
**comply** [3] 50:19 60:23,25
**complying** [1] 60:18
**compromise** [1] 37:15
**compromised** [1] 37:14
**concern** [4] 50:17 53:17 54:9,25
**concerned** [2] 47:14,18
**conclude** [1] 60:9
**concludes** [1] 39:19
**conclusion** [1] 38:16
**conclusions** [1] 51:14
**conduct** [15] 5:5 9:11 16: 25 17:15 18:10,17 27:14 29:13 35:5,15 38:10 50:6 51:15 61:14 62:8
**confer** [1] 14:20
**conferred** [2] 33:25 34:3
**confined** [1] 5:17
**confirm** [1] 29:3

**conflict** [1] 11:5
**confronting** [1] 21:6
**Congress** [27] 4:20,23 5:7, 18,25 7:14,19,22 8:13 14:9 15:24 16:8 17:21 19:10,13, 18,20,23 20:6,10,14,17,25 21:14,17 22:7 24:17 25:9, 12 29:6,23 30:8,19 31:9,18 32:15,19,20 33:1 37:2 40: 19,20 41:4,9,12,13 42:18, 18,20 43:22 44:9,13,19 45: 6,16,21 47:5,10,12,17 48:1 50:21,24 53:15,20 54:12 55:1 59:20 61:2,19 62:9, 14
**Congress's** [6] 46:9 52:23 54:4,20 59:17,18
**Congressional** [1] 26:9
**conjunction** [1] 34:6
**consider** [1] 61:11
**consist** [1] 21:20
**consistent** [2] 21:21 29:12
**Constitution** [1] 5:23
**constitutional** [1] 39:18
**construe** [2] 5:24 32:11
**construed** [1] 59:23
**consumer** [9] 4:8,19 18:12, 15 39:12 42:3 49:8,23,25
**Consumers** [5] 9:9 32:4 44:23 55:23 56:5
**contemporary** [1] 7:10
**context** [4] 25:5 32:17 43: 13 50:12
**contexts** [1] 7:7
**continuing** [1] 8:7
**continuously** [1] 11:21
**contrary** [1] 45:8
**contrast** [1] 5:2
**Control** [2] 21:25 37:13
**convicted** [1] 27:7
**copyright** [1] 41:5
**core** [4] 47:8 50:16 61:12 62:6
**corporation** [1] 34:17
**correct** [3] 26:22 45:17 57: 9
**couldn't** [5] 14:4 27:14 39: 20 45:23 54:12
**counsel** [18] 8:3,7 15:23 22:13 24:4,9 27:3 28:19 30:1 32:5 34:11 43:17 49: 18 52:12 55:10 58:11 59: 11 62:20
**course** [5] 5:21 39:17 40:1, 14 60:21
**COURT** [67] 1:1,15 3:11 5: 4,13 6:11,14,18 8:17 11:4 12:3 15:3,7 16:24 17:17 19:11 21:11 25:2 26:10,21 28:17 29:9,22 30:6,9,10 31:1,11 32:24 33:7 37:8,9,12, 16,17 34:4 35:7,11,16,17, 18 36:24,24 38:22 39:15, 16,19 40:9 41:3 44:23 48:

14 49:10 52:6,9,24 54:6,7, 19 55:25 58:16,17,18,21, 22 59:8 60:9 62:17
**Court's** [4] 26:22 30:20 35: 6 52:22
**Courts** [18] 10:18 11:8,12, 19,23,24,25 12:6 16:5 26: 16 30:22 32:9,10,16 38:6 39:17 43:9,11
**courts'** [2] 33:2,4
**create** [1] 31:8
**created** [1] 39:10
**criminal** [3] 13:10 14:5 56: 3
**current** [2] 6:8,8
**cutting** [1] 57:23

## D

**D.C** [2] 1:11,21
**damage** [1] 37:23
**damages** [8] 22:1,3,4 39:1 45:11 55:11 60:8,10
**damaging** [1] 41:24
**date** [1] 13:18
**day** [1] 41:15
**deal** [4] 9:13 48:2,16 49:22
**debate** [2] 45:10,25
**debated** [1] 46:4
**decade** [1] 61:17
**deceived** [1] 28:4
**deception** [1] 48:18
**deceptive** [6] 27:14 36:10, 14 47:16 50:6,8
**deceptiveness** [1] 49:22
**decide** [3] 13:4 24:24 53: 16
**decided** [4] 11:15 12:7 42: 4 59:16
**decidedly** [1] 18:25
**decides** [2] 48:14 58:24
**decision** [2] 28:1,6
**declare** [1] 47:15
**decline** [1] 6:20
**decree** [3] 23:11,19,20
**defendant** [1] 55:23
**defer** [1] 16:5
**defies** [1] 7:16
**define** [3] 17:14,15 29:13
**defines** [1] 14:18
**defining** [1] 51:21
**definition** [1] 14:23
**defrauded** [1] 57:1
**delegated** [1] 32:14
**depart** [1] 30:13
**Department** [2] 33:19 56:3
**depending** [1] 9:10
**describe** [1] 22:22
**described** [1] 22:25
**describing** [1] 47:9
**determination** [1] 23:2
**determinations** [1] 34:9
**determine** [1] 59:18
**determines** [1] 23:13
**deviate** [1] 30:17

**Diction** [1] 15:8
**dictionary** [3] 7:10 14:18 15:9
**difference** [1] 23:1,1
**differences** [2] 44:3,4
**different** [13] 13:20 19:5 20:5 23:21 31:14 33:13,17 43:22 44:1,17 46:23 51:8 55:23
**difficult** [3] 48:10 51:17 52: 2
**directed** [1] 14:21
**directly** [1] 41:23
**Dirty** [1] 27:8
**discern** [1] 19:20
**disciplined** [1] 5:22
**disclosed** [1] 42:8
**disclosures** [4] 28:3 61:15, 21 62:1
**discounted** [1] 38:18
**discussed** [2] 29:3 51:12
**disgorgement** [1] 16:1
**disregard** [1] 58:22
**dissent** [3] 24:11,13,16,17 27:25
**distinction** [2] 24:2 27:7
**distinguishable** [2] 21:9 26:4
**distribute** [2] 56:4,14
**distributed** [6] 12:13,17 55:15,22 57:3 58:1
**District** [3] 13:9,19 17:17
**divvying** [1] 13:20
**doctrines** [1] 23:5
**doing** [7] 14:21 33:15 34: 22 36:1 37:17 41:9 42:21
**dollars** [8] 12:16 13:12 14: 2 55:12,13,16 58:1,5
**done** [2] 14:25 41:4
**down** [1] 62:12
**draw** [4] 22:21 40:20 41:9 51:14
**drink** [1] 6:21
**dubious** [1] 27:7
**due** [1] 39:18
**during** [1] 11:8
**duty** [1] 26:22

## E

**each** [3] 36:25 44:23 57:20
**early** [1] 18:14
**easier** [1] 36:6
**easy** [2] 51:18 62:12
**echoes** [1] 35:2
**economy** [1] 39:12
**economy-wide** [1] 47:13
**edition** [1] 14:17
**effect** [1] 38:5
**effective** [1] 32:2
**eight** [1] 39:4
**either** [2] 11:23,25
**elaboration** [1] 31:24
**else's** [1] 11:15
**elsewhere** [2] 22:2 25:10

**embedded** [1] 30:19
**Emergency** [1] 21:25
**empirics** [1] 48:25
**enact** [1] 50:5
**enacted** [12] 6:14,23 7:16, 19 14:10 18:16 19:23,24 20:25 30:19 42:1 59:17
**encompass** [1] 13:12
**encompasses** [2] 13:23, 24
**encounter** [1] 48:7
**enforce** [10] 23:10,20,24 30:9 31:8 33:7,9,11,12 44: 5
**enforcement** [7] 4:24 17: 22 32:3 37:4 43:1,5 50:7
**engage** [3] 34:6 35:19 51: 13
**enough** [5] 18:9 26:13 34: 24 52:3,3
**enter** [1] 40:10
**entered** [1] 40:9
**entire** [2] 20:19 62:10
**entirely** [3] 25:25 26:3 46: 21
**envelope** [1] 53:12
**environment** [1] 5:25
**environmental** [1] 53:10
**episode** [1] 27:8
**equally** [2] 6:22 61:11
**equitable** [37] 3:17 4:3,6, 15,16 7:15,20,24 8:18 9:20, 24 16:9 22:16 23:5 25:6, 11,13 28:25 30:23 31:10, 22 32:8,10 33:2,25 34:7 41:17 42:9 43:21,25 44:12 54:8,15 56:24 57:10 59:24 60:15
**equity** [9] 14:12 15:10 24:3 30:14,22 35:6 54:21 58:18, 19
**error** [4] 13:5 26:19,20,24
**especially** [1] 3:20
**ESQ** [3] 2:3,6,9
**ESQUIRE** [2] 1:19,21
**essentially** [1] 47:25
**establish** [1] 16:3
**ET** [1] 1:4
**evaded** [1] 4:13
**Even** [13] 4:9,3 14:10 17: 24 19:19 21:22 36:11 39:3 43:11 54:17 59:21 60:1 61: 11
**everybody** [1] 57:23
**everything** [1] 11:13
**exact** [4] 21:5 43:12 49:3 56:19
**exactly** [6] 14:25 32:20 44: 10 47:23 50:9 62:9
**example** [3] 24:17 35:3 60: 24
**exception** [1] 23:9
**exceptional** [1] 38:2
**Exchange** [1] 41:15

**exclude** [2] 8:19 15:11
**excuse** [2] 11:24 61:25
**execution** [1] 23:19
**Executive** [3] 53:3,5,15
**exercise** [1] 53:16
**exercised** [1] 35:19
**exist** [1] 58:6
**existed** [1] 45:13
**existence** [2] 51:5 60:7
**exists** [2] 13:2 16:22
**expanded** [1] 37:19
**expansive** [1] 6:4
**expected** [1] 35:5
**expedient** [1] 17:18
**expertise** [4] 4:25 17:14, 23 36:9 52:4
**expired** [2] 15:20 35:12 58: 12
**explain** [5] 35:24 36:2,9,13 43:18
**explained** [2] 15:3 23:17
**explanation** [2] 48:18 51:2
**explicitly** [1] 45:19
**expound** [1] 36:16
**expressly** [4] 7:19 20:2 24: 22 31:12
**extensive** [1] 45:10

---

**F**

**face** [1] 51:3
**faced** [1] 37:9
**fact** [11] 15:14 17:19 18:13 22:1 28:5 32:8 35:10 44: 18 45:4 55:3 62:3
**fact-finding** [2] 48:9 51:13
**facts** [1] 36:21
**fairly** [2] 22:24 47:14
**familiar** [2] 10:13 50:2
**famous** [1] 38:11
**far** [2] 22:20 49:10
**fault** [1] 45:12
**favor** [2] 12:19 24:24 26:11
**fear** [1] 47:10
**fears** [1] 38:23
**feature** [1] 60:3
**features** [6] 3:19 4:17 7:17 10:3 25:8 29:2
**FEDERAL** [9] 1:7 3:5 13:1 30:9 36:24 48:14 52:6,9 54:6
**feels** [1] 36:15
**Fernandina** [1] 1:19
**few** [1] 38:5
**figured** [1] 5:19
**figuring** [2] 20:10 57:21
**find** [5] 7:4 36:21 37:17,18 39:22
**finding** [1] 18:24
**fine** [1] 57:5
**finish** [1] 49:18
**firmly** [1] 58:23
**First** [9] 3:20 6:10 11:4 12: 3,7 18:21 39:16 61:13,14
**fits** [1] 36:1

**FitzGerald** [4] 41:23,25 42: 14,17
**FitzGerald's** [2] 42:23 52: 20
**flexibility** [1] 37:3
**flexible** [1] 15:2
**Florida** [1] 1:19
**flowing** [1] 56:8
**focus** [2] 29:12 49:25
**focused** [1] 34:20
**follow** [1] 11:19
**followed** [1] 6:15
**following** [2] 45:1 61:18
**follows** [1] 33:6
**force** [1] 23:16
**forever** [1] 58:10
**forfeiture** [2] 13:8 14:5
**former** [1] 41:22
**forms** [1] 22:16
**forth** [1] 46:18
**forward** [1] 52:21
**forward-looking** [1] 34:20
**found** [1] 21:22
**foundational** [1] 30:14
**founding** [1] 30:23
**framed** [1] 15:5
**Frankfurter** [2] 24:13
**fraud** [1] 39:12
**free-wheeling** [3] 5:16 6:1, 16
**freebie** [1] 48:13
**freezing** [1] 22:18
**friend** [2] 6:3 33:21
**front** [1] 46:8
**FTC** [30] 3:12 16:1,2,8,12, 19 21:3,13 27:14,17,21 28: 10 29:11 30:9 35:16 36:17 37:16 38:1,25 39:6,13 40: 15 41:22 42:25 43:11 49:1 50:4 55:18 56:4 57:2
**FTC's** [3] 18:14 26:11 37: 10
**full** [1] 57:25
**function** [2] 11:20 31:16
**functional** [1] 44:4
**functions** [1] 57:5
**Fund** [1] 13:1
**fundamentally** [1] 31:14
**further** [4] 4:3 7:20 25:11 43:20,25 62:16
**future** [1] 34:21

---

**G**

**gained** [1] 57:3
**gains** [2] 27:18 30:25
**gave** [3] 47:5,12 54:4
**general** [4] 4:23 9:19 17:20 28:13
**getting** [2] 17:7 56:23
**give** [12] 4:25 12:5 17:25 24:19,21 26:22 32:2 48:13, 24 52:5 57:22 58:20
**given** [3] 19:14 23:12 31:4
**gives** [3] 36:20,20,21

**giving** [2] 33:15 39:6
**glad** [1] 55:19
**go-to-court** [1] 49:2
**good-bye** [1] 11:2
**Gorsuch** [11] 22:11,12 24: 4: 49:13,17,18,24 50:24 51: 7,16 52:12
**got** [1] 37:15
**gotten** [1] 27:15
**govern** [2] 43:2 54:22
**government** [1] 56:1
**grant** [5] 32:25 33:12,17 35: 3 54:22
**granted** [1] 35:16
**Great-West** [2] 8:21 15:4
**guidance** [2] 5:8 62:7

---

**H**

**ha** [2] 37:23 38:3
**half** [1] 10:16
**hand** [2] 38:21,22
**handing** [1] 22:18
**hands** [2] 27:6 61:17
**happen** [1] 12:19
**happened** [3] 34:24 35:8 56:8
**happening** [1] 48:22
**happens** [3] 48:15 53:5 56: 7
**happy** [2] 35:1 42:16
**harm** [9] 4:19 5:3 8:20 9:4, 8 15:12 16:23 18:5 40:23
**harmed** [1] 44:24
**harmony** [1] 32:1
**harms** [3] 3:18,25 29:1
**hear** [3] 3:3 39:7 61:1
**heard** [3] 14:12 59:15 60: 18
**Heder** [1] 46:5
**heightened** [2] 4:10 60:24
**held** [8] 15:7 21:2,18 25:4 54:19 56:11 57:24 58:9
**help** [1] 22:13
**historical** [1] 59:21
**history** [9] 18:14 26:24 37: 7 42:8 45:3,5,18 50:4 58: 25
**hit** [1] 39:1
**hold** [1] 28:14
**holding** [1] 62:5
**holds** [1] 7:1
**honestly** [1] 12:22
**Honor** [2] 6:9 11:3
**hope** [1] 16:7
**houses** [1] 58:8
**huge** [2] 42:19 62:13
**hundreds** [1] 33:23

---

**I**

**idea** [1] 19:9
**ignorant** [1] 24:18
**ill-gotten** [1] 27:18
**illegally** [1] 31:4
**imagined** [1] 42:1

**immigration** [1] 53:10
**imminent** [3] 3:23 9:4,8
**impend** [1] 18:4
**impending** [1] 18:4
**implicitly** [1] 26:1
**implied** [4] 6:6 17:21 19, 20,23 22:4
**impliedly** [1] 60:3
**imply** [1] 60:10
**implying** [1] 6:16
**important** [6] 16:6 21:1 26: 15 28:14 42:2 62:9
**impose** [1] 29:9
**imposed** [1] 29:10
**incentive** [4] 50:19 51:8,12, 18
**incident** [1] 9:15
**include** [2] 37:20 61:10
**included** [3] 7:24 47:18 50: 25
**includes** [3] 21:10 30:24 59:2
**including** [3] 4:9 22:16 36: 23
**income** [1] 38:15
**inconsistent** [1] 25:18
**independent** [2] 53:6,18
**indicate** [1] 42:23
**indicates** [1] 54:20
**indicating** [1] 42:20
**individuals** [1] 12:20
**industrial** [1] 43:3
**industry** [1] 62:2
**inference** [2] 31:9 59:6
**inherent** [6] 32:10 34:4 41: 2 44:16 54:8
**inherently** [2] 30:24 51:17
**initial** [1] 23:2
**injunction** [69] 3:15,16 4:3, 5 7:15,20,23 8:23 9:1,16 10:1,1 14:16,18 15:6,6 16: 9,12 17:5,7,9,16,25 18:4 19:21 21:5,10 22:15 23:10, 16,18,24 25:5,10,12,17 28: 24,24 29:3,4,8,8 30:24 31: 3,18,23 32:7,7,25 33:22 34: 6 35:3,4,11,13,17 41:2 44: 7,8,16,17 45:22 54:5,19,22 55:4 58:17 59:2,20
**injunctions** [3] 3:17,18 4: 2 9:22 15:2,11 29:16,19 43:20 44:11 54:13 60:15
**injunctive** [7] 30:18 31:5 35:20 41:1 43:23,24 54:22
**injuries** [1] 9:10
**injury** [1] 4:9
**innocent** [1] 13:24
**inquiring** [1] 40:16
**instance** [2] 8:14 39:16
**instances** [2] 23:7 48:6
**instead** [6] 26:28:16,17, 25 31:11,21
**integrity** [1] 47:24
**intellectual** [2] 9:14 35:9

Heritage Reporting Corporation

**intended** [6] **19**:19 **30**:10 **31**:9 **54**:6 **61**:3 **62**:9
**intent** [5] **52**:23 **54**:4,14 **59**:17,18
**intention** [1] **54**:21
**intentions** [1] **53**:11
**interested** [2] **49**:19 **53**:25
**interpret** [2] **38**:22 **51**:5
**interpretation** [7] **6**:20 **7**:25 **10**:21 **11**:6 **26**:23 **46**:20 **47**:25
**interpreting** [2] **7**:7 **26**:11
**interprets** [1] **5**:14
**intervening** [1] **5**:12
**inventiveness** [1] **15**:4
**investigated** [1] **61**:14
**invoke** [3] **4**:20 **31**:21 **33**:2
**invoked** [1] **35**:7
**invoking** [1] **43**:8
**involve** [3] **9**:18 **32**:9 **39**:25
**involved** [2] **13**:13 **25**:7
**involves** [1] **32**:13
**involving** [1] **32**:16
**irrelevant** [3] **46**:21 **48**:1,5
**isn't** [7] **10**:18 **20**:11 **50**:16 **53**:19 **57**:2,3 **60**:5
**issue** [11] **12**:4 **13**:16 **20**:9 **23**:16 **26**:21 **30**:24 **33**:3 **41**:3 **45**:15 **50**:25 **60**:11
**issued** [2] **13**:9 **23**:18
**issues** [2] **5**:10 **54**:10
**itself** [7] **4**:5 **7**:16,23 **8**:22 **9**:3 **18**:11 **45**:19

**J**

**January** [1] **1**:12
**job** [1] **17**:22
**JOEL** [3] **1**:21 **2**:6 **30**:3
**joined** [2] **24**:12,14
**joke** [1] **10**:12
**Judge** [1] **27**:25
**judges** [1] **28**:2
**Judgment** [6] **13**:1 **56**:6,8, 9 **59**:9 **62**:17
**judgment-proof** [1] **58**:7
**judgments** [1] **62**:13
**judicial** [1] **14**:19
**judiciary** [1] **11**:20
**junctions** [1] **8**:19
**jurisdiction** [1] **35**:6
**JUSTICE** [145] **3**:3,11 **5**:9 **6**:25 **7**:2 **8**:2,4,5,6,8 **9**:12 **10**:4,5,5,7 **11**:9,18 **12**:8,9,9,10, 18 **13**:6 **14**:6,8 **15**:13,16,18, 18,19,21,21,23 **16**:16 **17**:1, 4,24 **18**:19,19,20 **19**:3 **20**:1, 4,20,23 **22**:5,9,10,10,12,25 **23**:17 **24**:4,5,5,7,8,12,14, 16 **26**:5,6,25 **27**:1,1,3 **28**:19,20 **29**:25 **30**:6 **32**:5 **33**:5,20 **34**:10,12,13,14 **35**:1, 23 **37**:5,5,7,8 **39**:9,24 **40**:4, 4,5,5,7,19 **41**:7,19 **42**:16 **43**:14,15,15,17 **45**:1,2,18

**46**:10,10,11 **47**:7,9,22 **48**:21,23,24 **49**:4,12,12,16,16, 18,24 **50**:3,23 **51**:7,16 **52**:12,14,14,16,17,19 **55**:6,8,8, 10,14,20 **56**:3,7,15,17,22 **57**:13,25 **58**:11,13,15 **59**:10 **62**:19
**Justice's** [1] **18**:21
**Justices** [2] **24**:12,14
**justification** [1] **41**:8

**K**

**Kagan** [15] **18**:19,20 **20**:1,4, 20,23 **22**:5,9 **46**:10,11 **47**:7, 22 **48**:21,23 **49**:4
**Kavanaugh** [7] **24**:6,7 **26**:5,25 **52**:15,16 **55**:6
**keep** [2] **30**:11 **36**:19
**kick** [1] **26**:17
**kind** [8] **24**:22 **34**:24 **37**:23 **38**:18 **46**:17 **47**:5 **49**:21 **50**:15
**kinds** [1] **46**:23
**knowing** [1] **27**:13
**known** [1] **20**:17

**L**

**la** [1] **7**:24
**Labor** [1] **33**:19
**lack** [1] **50**:10
**lackadaisical** [1] **42**:25
**laid** [1] **47**:2 **50**:12
**language** [11] **4**:4 **5**:17 **6**:5 **7**:6 **8**:10 **9**:2 **20**:17 **31**:15 **34**:25 **43**:23 **53**:12
**large** [1] **43**:3
**largely** [1] **49**:14,21
**last** [2] **6**:21 **30**:15
**later** [3] **37**:19 **38**:4 **40**:17
**Law** [17] **10**:18 **12**:5 **14**:12, 18 **15**:8 **19**:17 **21**:11 **26**:15 **27**:19 **28**:16 **30**:19 **34**:19 **35**:22 **38**:21 **42**:19 **45**:22, 22
**lawyerly** [1] **15**:4
**lawyers** [2] **14**:9,11
**lead** [1] **16**:14
**leads** [1] **40**:7
**least** [6] **11**:12 **19**:5 **32**:12 **49**:6 **50**:11 **53**:18
**leave** [1] **26**:13
**led** [1] **47**:2
**leeway** [1] **6**:3
**legal** [1] **51**:14
**legislated** [1] **8**:13
**legislates** [1] **45**:21
**legislating** [1] **54**:13
**legislation** [2] **7**:18 **20**:25
**legislative** [3] **42**:7 **45**:3,18
**lenders** [1] **28**:8
**less** [2] **9**:9 **26**:19
**less-than-complete** [1] **41**:12
**letting** [1] **30**:11

**level** [1] **59**:5
**liabilities** [1] **13**:3
**liberal** [1] **18**:23
**light** [2] **5**:19,25
**limit** [2] **3**:22 **31**:10
**limitations** [6] **4**:10 **25**:24 **61**:1,6,10,16
**limited** [7] **3**:20 **9**:4,21 **10**:2 **25**:15 **29**:4 **44**:11
**limits** [2] **4**:12 **29**:23
**line** [4] **22**:21,24 **40**:20 **41**:10
**line-drawing** [1] **22**:14
**lines** [1] **8**:8
**link** [1] **9**:6
**listen** [1] **6**:13
**litigant** [2] **39**:16 **44**:23
**litigating** [1] **52**:8
**little** [3] **36**:25 **43**:4 **50**:19
**Liu** [1] **30**:15
**LLC** [1] **1**:3
**loan** [1] **36**:14
**long** [1] **26**:24
**Long-standing** [1] **26**:19
**look** [14] **7**:5,10 **14**:17 **20**:15,18 **21**:20,24 **22**:24 **38**:10,10 **44**:18 **55**:1 **60**:2,6
**looked** [3] **5**:18 **28**:2 **42**:6
**looking** [5] **19**:13 **21**:17,19 **59**:16,19
**looks** [1] **8**:17
**lot** [8] **6**:2 **32**:5 **36**:9 **48**:15, 18 **50**:1 **56**:21 **58**:5
**lower** [2] **11**:12 **38**:21

**M**

**made** [6] **4**:23 **6**:12 **9**:5 **17**:21 **39**:25 **41**:22
**Madison** [1] **10**:25
**maintain** [2] **47**:23 **53**:21
**man** [1] **27**:21
**MANAGEMENT** [2] **1**:3 **3**:5
**mandatory** [3] **43**:20 **44**:11, 17
**many** [6] **30**:20 **34**:5 **36**:7,8 **39**:23 **53**:4
**Marbury** [1] **10**:25
**MARCUS** [41] **1**:21 **2**:6 **30**:2,3,5 **32**:18 **33**:11 **34**:2,15 **35**:1 **36**:5 **39**:8 **40**:11,25 **41**:11 **42**:16 **44**:2 **45**:17 **46**:11 **47**:7 **48**:4,22 **49**:3,14,20 **50**:23 **51**:11,23 **52**:13,18 **54**:2 **55**:7,19 **56**:10,16,19 **57**:8,17 **58**:3,14,15
**married** [1] **38**:15
**materialized** [1] **50**:22
**matter** [4] **1**:14 **36**:12 **44**:20 **57**:20
**matters** [1] **19**:10 **21**:2 **37**:7
**mean** [19] **3**:17 **7**:9 **10**:24 **13**:16 **14**:8 **20**:5,9 **25**:5 **26**:

**14** **27**:6,21 **29**:8 **33**:6,7 **39**:5 **46**:21 **48**:24 **51**:24 **55**:2
**meaning** [3] **5**:19 **36**:16 **59**:21
**meaningful** [1] **32**:3
**meaningless** [2] **4**:12 **25**:25
**means** [4] **3**:15 **10**:1 **28**:24, 25
**meant** [4] **4**:16 **19**:22 **55**:4 **57**:11
**mechanism** [3] **4**:20,24 **17**:22
**mechanisms** [1] **35**:20
**Meghrig** [2] **25**:4 **61**:7
**member** [1] **14**:23
**members** [2] **14**:9,14
**mens** [1] **46**:17
**mentioned** [4] **7**:17 **10**:3 **19**:16 **25**:8
**mentioning** [1] **4**:15
**mentions** [1] **22**:2
**merely** [1] **30**:10
**met** [1] **60**:5
**method** [2] **6**:19 **7**:25
**MICHAEL** [5] **1**:19 **2**:3,9 **3**:8 **59**:13
**middle** [1] **37**:25
**might** [7] **9**:23 **16**:3 **17**:17 **23**:10,16 **59**:23 **60**:20
**million** [4] **12**:16 **14**:2 **55**:12,16
**millions** [1] **56**:20
**mind** [4] **5**:18 **36**:19 **46**:9 **58**:23
**mindset** [2] **43**:1,4
**mine** [1] **11**:14
**minute** [3] **28**:20 **35**:24 **58**:13
**misleading** [1] **36**:13
**missing** [1] **45**:14
**mission** [3] **61**:12 **62**:6,11
**mistake** [1] **10**:20
**mistakes** [2] **10**:19,19
**Mitchell** [17] **8**:15 **20**:14,15, 18 **21**:8 **24**:13,23 **25**:3,7,14, 21 **26**:3,7,16 **59**:22 **60**:1,2
**Mitchell's** [1] **20**:16
**mode** [1] **11**:6
**monetary** [3] **3**:18,24 **4**:8 **8**:20 **9**:7,15 **12**:2 **15**:12,25 **16**:14 **18**:6 **25**:18,21 **27**:15 **28**:18 **29**:19 **35**:14 **45**:7,25 **46**:2,7 **61**:9 **62**:7
**money** [28] **12**:12,21 **13**:13, 24 **27**:8 **29**:1 **30**:12 **45**:10, 20 **46**:8 **50**:14 **55**:11,22 **56**:5,8,11,15,16,21 **57**:2,3,14, 14,16,21,22 **58**:20 **59**:3
**money's** [1] **57**:24
**moreover** [1] **29**:11
**morning** [5] **3**:4 **10**:7 **22**:12 **24**:9 **52**:18
**Moss-Magnuson** [1] **37**:

**20**
**most** [8] **14**:8,17 **18**:13,14 **19**:10 **32**:8 **49**:4 **58**:7
**motive** [1] **6**:23
**much** [12] **7**:25 **10**:25 **22**:9 **46**:21 **47**:11 **49**:22 **51**:2 **55**:14 **56**:15 **57**:18,19 **58**:3
**muscle** [1] **38**:17
**must** [4] **4**:20 **5**:4 **60**:2

**N**

**naked** [1] **35**:14
**narrow** [2] **5**:3 **16**:19
**nature** [1] **23**:19
**necessary** [1] **37**:12
**necessity** [1] **31**:5
**need** [17] **16**:11,12 **18**:12 **19**:22 **24**:20 **25**:2 **31**:20,23 **36**:16 **44**:14 **52**:2
**needed** [2] **21**:16 **25**:4
**needs** [1] **29**:17
**Neither** [5] **25**:7,9,14,20 **42**:7
**Netflix** [1] **27**:9
**never** [6] **10**:23 **13**:25 **14**:2, 11 **29**:10 **50**:22
**New** [9] **13**:9 **16**:3 **18**:24 **19**:8,9 **39**:14 **53**:16,20 **54**:17
**nice** [1] **48**:1
**Nineteen** [1] **37**:24
**Ninth** [2] **28**:2 **46**:5
**nobody** [1] **42**:1
**non-parties** [1] **52**:11
**none** [1] **56**:5
**nor** [4] **24**:21 **25**:7,14 **42**:7
**noted** [2] **8**:21 **28**:1
**nothing** [3] **21**:23 **31**:1 **45**:4
**notice** [3] **4**:11 **5**:1 **39**:19
**noting** [1] **13**:22
**notion** [2] **7**:22 **12**:1
**notwithstanding** [3] **20**:16 **26**:23 **28**:5
**novel** [3] **47**:15 **48**:7 **51**:15
**number** [2] **26**:10 **56**:20
**numbers** [2] **48**:24 **49**:4

**O**

**obligation** [1] **17**:13
**obtain** [1] **16**:1
**obvious** [2] **38**:8,10
**obviously** [2] **21**:1 **52**:21
**Office** [1] **36**:12
**official** [1] **41**:22
**often** [3] **41**:14 **48**:25 **51**:25
**okay** [2] **11**:11 **12**:8
**old** [4] **10**:12 **18**:23 **19**:19 **42**:3
**once** [6] **35**:6,17,18 **43**:7 **48**:1 **59**:11
**one** [23] **5**:10,15 **6**:21,21 **11**:23 **12**:24 **13**:17 **14**:14 **24**:21 **26**:6 **36**:6 **38**:20 **42**:17 **43**:23 **46**:13 **47**:2 **48**:5 **52**:

2,3 **54**:25 **58**:18 **60**:20 **61**:
4
**one's** [2] **52**:2,3
**one-time** [1] **8**:25
**ongoing** [9] **3**:22 **9**:4,8,11
**16**:23 **25**:15 **35**:5,15 **40**:22
**only** [7] **29**:8 **32**:14 **38**:2 **39**:
5 **40**:17 **48**:11 **61**:4
**opening** [1] **7**:17
**operating** [1] **14**:19
**opinion** [2] **11**:14 **24**:25
**opportunity** [1] **44**:24
**opposed** [1] **49**:2
**option** [1] **12**:24
**oral** [5] **1**:15 **2**:2,5 **3**:8 **30**:3
**order** [18] **8**:25 **13**:7,8,23
**15**:5 **16**:13 **17**:3 **30**:25 **31**:
17 **35**:7 **37**:19,22 **40**:9 **44**:
22 **46**:1,3,7 **49**:1
**orders** [4] **32**:22 **33**:14 **44**:
5,6
**ordinarily** [1] **8**:24
**other** [24] **6**:3 **7**:6,20 **9**:22
**10**:16,16 **16**:9,20 **23**:5,14
**24**:24 **25**:10 **29**:8 **33**:21 **34**:
7 **38**:22 **43**:25 **44**:12 **51**:2,
4,6 **59**:23 **60**:15 **61**:5
**otherwise** [1] **31**:12
**out** [11] **5**:19 **12**:25,25 **20**:
10 **28**:9 **43**:9 **47**:2 **50**:2,12
**57**:21 **61**:7
**outset** [1] **25**:9
**over** [7] **8**:25 **11**:7,7 **14**:1
**22**:18 **48**:19 **56**:4
**overall** [1] **16**:19
**overcome** [1] **4**:17
**overlap** [1] **13**:15
**overlook** [1] **58**:19
**overrule** [1] **25**:3
**own** [10] **30**:16 **32**:22 **33**:14
**36**:21 **46**:1,2,7 **48**:9 **51**:13,
14
**owns** [1] **23**:2

## P

**PAGE** [2] **2**:2 **59**:19
**paid** [1] **13**:24
**Park** [1] **13**:25
**parse** [1] **32**:11
**part** [4] **14**:19 **42**:2 **46**:3 **50**:
5 **58**:7
**participated** [1] **14**:3
**particular** [1] **12**:4 **14**:22
**17**:15 **27**:12 **35**:11 **36**:10
**53**:17 **56**:6,9 **61**:25 **62**:1
**particularly** [2] **48**:9,17
**parties** [3] **9**:19 **13**:24 **16**:5
**partnership** [1] **34**:17
**passed** [6] **5**:11,15,25 **11**:1
**43**:18 **45**:11
**past** [4] **3**:18,25 **4**:8 **8**:20
**15**:12 **23**:7 **29**:1
**patent** [2] **35**:12 **41**:5
**path** [2] **17**:16 **62**:12

**pathway** [3] **48**:5,11 **60**:20
**pathways** [6] **32**:3 **37**:4 **46**:
23 **47**:1 **60**:19 **61**:4
**PATTILLO** [47] **1**:19 **2**:3,9
**3**:7,8,10 **5**:9 **6**:9 **7**:1,13 **8**:
17 **9**:17 **11**:3,17,22 **12**:10,
15,22 **13**:14 **15**:1,14 **16**:15,
17 **17**:3,10 **18**:8,20 **19**:16
**20**:2,12,21,23 **21**:16 **22**:6,7,
23 **25**:2 **26**:18 **27**:20 **28**:21,
22 **41**:19 **55**:14,21 **59**:12,
13,15
**payday** [1] **28**:8
**paying** [1] **13**:2
**people** [7] **36**:13 **38**:9,13
**39**:13 **40**:15 **42**:24 **50**:2
**perceived** [1] **45**:12
**perfect** [1] **10**:18
**perfectly** [1] **11**:15
**perhaps** [5] **12**:14 **14**:11
**15**:1 **22**:17 **39**:2
**period** [3] **61**:1,7,16
**permanent** [22] **3**:14,15 **7**:
14 **8**:19,22 **9**:1,1 **15**:11 **16**:
9,12 **17**:6,8,9,16,25 **28**:23,
24 **29**:16 **32**:25 **44**:16 **54**:5
**59**:1
**person** [2] **14**:20 **34**:17
**personam** [1] **14**:20
**perspective** [3] **35**:25 **43**:6
**47**:4
**Petitioners** [8] **1**:5,20 **2**:4,
10 **3**:9 **30**:7 **55**:25 **59**:14
**phrase** [1] **8**:22
**pick** [1] **52**:19
**picking** [1] **26**:5
**piggyback** [1] **44**:15
**place** [2] **48**:20 **57**:11
**placed** [1] **29**:23
**plaintiff** [4] **9**:24 **56**:25,25
**57**:1
**plaintiffs** [1] **57**:4
**please** [2] **3**:11 **30**:6
**plus** [3] **26**:7,16,16
**point** [11] **20**:6,6 **21**:14 **26**:
12,13,17 **33**:21 **38**:20 **39**:7,
8 **57**:9
**pointed** [3] **28**:9 **43**:9 **61**:7
**pointless** [1] **4**:5
**policy** [3] **41**:8,8 **53**:9
**pool** [1] **13**:17
**Porter** [28] **8**:15 **20**:14,15,
16,18 **21**:8,18,18,22 **24**:11,
17,23 **25**:3,7,14,20 **26**:3,7,
15 **31**:1 **33**:18 **52**:20 **59**:7,
22 **60**:1,1,6,7
**Porter's** [1] **7**:25
**position** [5] **27**:16 **33**:24
**41**:24 **46**:13 **56**:25
**possibility** [2] **22**:3 **40**:13
**possibly** [1] **39**:20
**power** [11] **21**:3 **30**:23,25
**32**:10,19 **34**:3 **37**:10 **47**:11
**53**:15 **58**:17 **59**:2

**powers** [8] **31**:10,23 **32**:8
**33**:25 **34**:4 **53**:2,22 **54**:10
**practicalities** [1] **12**:11
**practice** [2] **38**:14 **48**:8
**practices** [5] **37**:13 **47**:13,
15 **50**:9 **51**:21
**precedent** [1] **52**:22
**precedents** [2] **19**:15 **32**:
16
**precisely** [5] **28**:12 **60**:11,
13,16 **62**:5
**precluded** [1] **21**:23
**precludes** [1] **60**:4
**preferred** [1] **50**:7
**premise** [1] **20**:8
**prescriptions** [1] **61**:19
**present** [1] **34**:21
**presume** [1] **25**:12
**presumption** [2] **4**:14 **12**:6
**45**:20
**pretty** [8] **5**:16 **10**:13,21 **21**:
14 **24**:3 **35**:22 **41**:24 **46**:21
**prevent** [2] **53**:7,13
**preventing** [1] **34**:21
**Price** [2] **21**:25 **33**:18
**primary** [4] **4**:24 **17**:21 **18**:
17 **28**:15
**principle** [7] **11**:19 **23**:4 **30**:
14 **53**:21 **58**:19,22,23
**principles** [2] **39**:18 **54**:21
**prior** [2] **23**:11 **45**:8
**problem** [8] **22**:14 **52**:25
**53**:14
**procedural** [1] **47**:18
**proceed** [2] **31**:11 **60**:22
**proceeded** [2] **44**:20,21
**proceedings** [2] **40**:2 **46**:8
**process** [5] **14**:19 **18**:2,6
**39**:18 **49**:11
**processes** [4] **4**:24 **16**:22
**17**:21 **29**:12,20 **46**:3 **47**:21
**61**:24
**profit** [1] **30**:16
**profoundly** [1] **30**:17
**program** [1] **42**:3
**progressive** [1] **37**:11
**prohibited** [4] **5**:1 **17**:15
**29**:13 **62**:8
**prohibitions** [3] **4**:22 **17**:
20 **28**:13
**prohibitory** [1] **31**:18
**pronounce** [1] **17**:13
**proof** [2] **4**:10 **60**:24
**properly** [1] **35**:7
**property** [8] **8**:25 **9**:14 **23**:3,
3,13 **35**:9
**prospective** [2] **62**:6,7
**prospectively** [2] **28**:16
**29**:13
**protection** [5] **37**:25 **42**:3
**49**:8,23,25
**protections** [8] **25**:23 **46**:
15 **47**:19,24 **50**:13,18 **61**:4
**62**:14

**proven** [1] **27**:22
**proves** [1] **51**:25
**provide** [7] **5**:8 **15**:25 **22**:
15 **31**:7 **32**:3 **40**:21 **61**:4
**provided** [4] **4**:21 **25**:21 **61**:
19 **62**:14
**provides** [1] **4**:9
**providing** [2] **60**:8 **62**:6
**provision** [13] **4**:7 **14**:10
**16**:20 **22**:1 **25**:22 **33**:13 **34**:
18,20 **38**:6 **41**:20 **51**:5 **60**:
8,11
**provisions** [4] **7**:7 **44**:3 **47**:
20 **51**:3
**proviso** [1] **29**:15
**punish** [1] **53**:7
**purpose** [2] **3**:13 **4**:21
**pursue** [2] **16**:12 **18**:5
**pushes** [1] **53**:11
**put** [6] **10**:16 **19**:2,3,4 **51**:7
**52**:21
**puts** [1] **33**:3

## Q

**question** [25] **6**:10 **11**:10,
11 **12**:12 **13**:8 **14**:7 **16**:6
**19**:11 **21**:5 **27**:23 **28**:22 **35**:
17 **40**:6,7 **42**:18 **45**:2 **49**:9
**50**:16 **51**:8 **52**:20 **53**:25 **54**:
3,3,17 **55**:20
**questioning** [1] **43**:9
**questions** [5] **18**:22 **26**:6
**30**:20 **41**:20 **62**:16
**quicker** [1] **17**:17
**quickly** [2] **5**:5 **16**:25
**quite** [3] **41**:14 **45**:8 **57**:9

## R

**race** [1] **58**:8
**racking** [1] **62**:13
**radically** [1] **30**:13
**rampant** [1] **39**:12
**range** [1] **33**:25
**rather** [3] **16**:13 **36**:3 **47**:24
**ratification** [2] **26**:9,16
**RCRA** [1] **25**:5
**rea** [1] **46**:17
**reaching** [1] **28**:11
**read** [3] **14**:23 **38**:5 **52**:21
**reading** [4] **5**:10 **6**:4 **18**:1
**32**:7
**real** [1] **54**:3
**really** [5] **45**:23 **47**:5 **50**:3
**53**:1 **57**:6
**reason** [5] **5**:7 **12**:5 **15**:24
**23**:15 **29**:21 **34**:16
**reasonable** [2] **8**:1 **27**:12
**reasoning** [1] **6**:24
**REBUTTAL** [3] **2**:8 **59**:12,
13
**recent** [1] **14**:17
**recognize** [1] **50**:24
**recognized** [3] **30**:15,21,
22

**recognizing** [1] **50**:8
**reconcile** [1] **34**:24
**reconciled** [1] **7**:22
**recover** [1] **18**:1
**recovery** [1] **31**:3
**Red** [1] **10**:9
**redress** [5] **9**:10 **18**:12,15
**44**:25 **56**:12
**Reed** [1] **24**:12
**reference** [2] **9**:3 **28**:23
**referred** [1] **6**:15
**referring** [1] **39**:24
**refers** [1] **8**:22
**reflect** [1] **44**:3
**reflects** [3] **14**:15 **49**:15,21
**refrain** [1] **34**:11
**regarding** [1] **47**:20
**regime** [1] **50**:22
**regular** [1] **38**:7
**regulatory** [1] **50**:22
**reiterate** [1] **58**:16
**rejected** [2] **6**:11 **12**:1
**relationship** [1] **13**:7
**relief** [55] **3**:17,18,24 **4**:1,4,
6,8,15,16,19 **7**:15,21,24 **8**:
20 **9**:7,15,20,22,24 **12**:2 **15**:
17 **40**:6,7 **46**:18 **19**:9 **22**:
**22**:16 **25**:6,11,13,19,21 **26**:
1 **28**:18,25 **29**:19 **31**:5 **32**:
4 **33**:16 **35**:8,21 **41**:18 **42**:
9 **43**:21,23,24,25 **44**:12 **47**:
20 **54**:23 **60**:4,13,15,17 **61**:
3,9
**relies** [3] **21**:7,8,8
**rely** [1] **44**:14
**remains** [1] **51**:19
**remedial** [1] **35**:8
**remedies** [27] **5**:6 **6**:17 **15**:
25 **16**:10 **17**:8 **18**:24 **24**:19
**29**:9 **30**:18 **31**:7,19 **32**:21
**34**:7 **36**:22 **39**:15 **44**:9,10,
15 **45**:25 **46**:2,7 **51**:4,6 **54**:
8,15 **56**:24 **59**:24
**remedy** [22] **17**:18 **18**:11
**21**:19,21,24 **22**:4 **23**:15 **24**:
18 **27**:15 **35**:14 **39**:22 **40**:
21,23 **41**:1,12,13 **45**:12 **56**:2
**57**:10 **60**:8,10 **61**:25
**remedying** [1] **57**:16
**remind** [1] **50**:4
**render** [1] **62**:12
**rendered** [1] **25**:24
**rendering** [1] **50**:17
**repay** [1] **12**:25
**repeal** [1] **38**:3
**repeated** [1] **46**:16
**require** [1] **48**:17
**required** [4] **12**:20 **13**:11
**39**:21 **59**:7
**requirement** [4] **4**:11 **29**:
10 **41**:17 **60**:25
**requires** [3] **35**:4 **41**:16 **52**:
4
**requiring** [2] **14**:20 **22**:17

**reservoir** [1] 13:2
**resolve** [1] 11:5
**resolved** [1] 55:1
**resolves** [1] 54:9
**resources** [1] 13:18
**respect** [2] 12:19 25:1
**respects** [1] 36:7
**Respondent** [4] 1:8,22 2:7 30:4
**response** [1] 61:2
**responses** [2] 6:10 54:1
**responsibilities** [2] 5:8 13:21
**responsibility** [2] 18:18 28:15
**rest** [1] 55:17
**restitution** [13] 21:3,11,23 22:17 23:6,12,24,25 24:19 40:21,23 56:2 57:6
**restore** [3] 56:24 57:11 59:2
**result** [1] 12:24
**results** [1] 53:14
**resume** [1] 40:17
**resumed** [1] 40:13
**retrospective** [6] 3:24 4:19 9:6,7 28:18 61:9
**return** [4] 12:20 13:11 29:22 30:25
**returned** [1] 23:4
**reversed** [1] 62:18
**Rights** [2] 6:14 18:24
**ripped** [1] 57:12
**rise** [2] 31:4 59:5
**ROBERTS** [30] 3:3 5:9 6:25 7:2 8:2 10:5 12:9 15:18, 21 18:19 22:10 24:5 27:1 28:20 29:25 32:5 33:5,20 34:10 37:5 40:4 43:15 46:10 49:12,16 52:14 55:8 58:13 59:10 62:19
**role** [2] 5:23 31:14
**Root** [1] 35:10
**roughly** [1] 5:11
**route** [6] 49:1,2,6,8 50:7,7
**routine** [1] 17:11
**rule** [6] 12:3,18 23:9 30:7 37:21,23
**ruled** [1] 46:5
**rulemaking** [1] 37:1 43:2,5
**rules** [5] 16:3 43:2 50:5 51:20 52:10
**ruling** [2] 12:4 30:13
**run** [1] 48:19
**running** [1] 28:17
**Rutledge** [3] 24:12,16,16

**S**

**safeguards** [1] 4:9 27:11 60:18
**safekeeping** [1] 57:24
**same** [15] 7:18 8:10 14:7 19:23 21:5 25:21 26:1 33:8 37:24 43:12,19 60:10,13,

16 61:3
**Sandoval** [4] 6:12,24 7:12 19:2
**sat** [1] 61:16
**savings** [2] 31:13 50:25
**saw** [1] 45:4
**saying** [2] 29:7 33:1
**says** [4] 2:15 9:31 12:32: 24 33:12 34:15 37:16 38:1 41:25
**scams** [1] 48:19
**scheme** [3] 12:14 21:21 26:4
**school** [1] 14:13
**Scott** [1] 36:13
**SEC** [1] 43:12
**Second** [3] 4:1 20:25 21:7
**second-level** [1] 29:15
**Section** [9] 3:13 4:2,7,20 5:2 7:21 15:25 18:16 19:24 21:24 25:22 27:11,22 30:20 31:12,13,15,21 32: 23,23 33:13,14 34:15 36:1, 3,3,6,7,18,22,23 37:22 42: 5 43:8,18,19,23 44:1,4,13 45:6,9,11,24,25 46:4,14,14, 15,20 50:9,13 51:1,9,17 60: 17,22,23 62:15
**Sections** [5] 8:9 31:6,25 32:1 59:4
**sectors** [1] 43:3
**Securities** [1] 41:15
**see** [8] 10:11,14 20:21 21: 19,20 38:20 39:5 51:2
**seek** [17] 3:14 9:19 14:16 16:8 17:9 18:15 21:3,5 23: 23 28:18 32:24 33:6,16 35: 13 39:15 53:20 54:5
**seeks** [1] 23:22
**seem** [4] 16:19 50:24 57:6
**seems** [11] 10:15 16:10 34: 19,22 35:25 46:11,25 47: 22 52:24 56:23 57:4
**seized** [1] 58:9
**self-defining** [1] 50:10
**sense** [7] 3:23 4:21 9:5 16: 2 18:7 48:25 53:1
**sentence** [1] 29:15
**separate** [1] 25:22
**separately** [3] 43:19 56:1, 12
**separation** [3] 53:1,21 54: 10
**serves** [1] 31:13
**service** [1] 16:21
**set** [1] 50:5
**settle** [1] 40:3
**settled** [1] 56:1
**settlements** [1] 39:25
**Seventh** [1] 10:22
**several** [1] 49:6
**Sherman** [1] 50:12
**shouldn't** [1] 5:24
**shows** [1] 62:5

**side** [8] 6:3 10:16 11:23,25 33:21 49:23,25 50:1
**significant** [5] 5:13 47:1
**similar** [2] 6:11 24:10
**simple** [1] 22:24
**simply** [9] 9:20 10:18 12:3
**since** [4] 4:23 6:19 30:22
**single** [4] 16:20 28:11 29: 14 61:2
**sits** [1] 58:17
**situation** [1] 9:18
**situations** [1] 16:22
**six** [1] 39:5
**Skechers** [2] 38:10 39:3
**slightly** [1] 45:2
**smoothly** [1] 32:17
**society** [1] 11:21
**somebody** [1] 11:14
**somehow** [2] 7:14,22
**someone** [3] 3:21 23:11 27:18
**sometimes** [6] 16:3,17 18: 8,10 53:8 60:19
**somewhat** [1] 36:22
**sorry** [5] 16:18 20:23 27:20 32:23 35:12
**sort** [4] 5:18 6:6 25:16 32: 11
**Sotomayor** [10] 15:22,23 16:16 17:1,4,24 43:16,17 45:1,18
**Southern** [2] 13:9,19
**specific** [4] 4:15 5:17 9:2 32:21
**specify** [1] 31:19
**spent** [1] 58:5
**squarely** [1] 33:3
**stability** [1] 26:14
**stake** [1] 55:11
**standard** [4] 27:13 35:2 59: 6 60:5
**standards** [1] 50:2
**started** [2] 37:8 43:8
**starts** [1] 40:15
**state** [1] 36:24
**STATES** [5] 1:1,16 13:3,5 33:22
**statute** [21] 4:10 5:11,14, 24 16:11 19:17,18 20:19 21:4 22:2 25:8,15,20,24 26:20,20,23 29:17 60:3 61: 8,10
**statutes** [1] 5:14
**statutory** [6] 6:20 17:13 21: 21 26:4 53:8,12
**step** [3] 11:5 29:7 50:20
**stick** [1] 53:22
**still** [6] 8:10 11:11,12 26:20 40:22 41:14
**stolen** [2] 30:12 57:19
**stood** [1] 57:1
**stop** [8] 5:4 16:24 18:4,4 30:10 40:16 43:24 61:22
**stopping** [2] 18:10,17

**Stores** [1] 54:18
**Story** [2] 22:25 23:17
**stretches** [1] 53:12
**striking** [2] 29:11 61:8
**strikingly** [1] 24:10
**strong** [2] 39:3 46:13
**struck** [2] 39:11,14
**structure** [2] 3:12 62:10
**stuff** [2] 36:20 49:22
**subject** [6] 14:4 21:12 25: 23 27:8 31:2 61:16
**submitted** [2] 62:20,22
**substance** [1] 50:11
**substantial** [1] 27:23
**substantiation** [1] 38:12
**succeed** [1] 42:11
**successful** [1] 42:12
**sue** [1] 36:23
**sued** [1] 35:16
**sufficient** [2] 18:11 60:9
**suggest** [4] 9:19 12 21:13 27:21 34:19
**suggested** [1] 27:10
**suggesting** [1] 45:5
**suggests** [1] 60:5
**suit** [1] 31:2
**suited** [1] 5:23
**summed** [1] 31:1
**superfluous** [1] 50:18
**supersedes** [1] 22:3
**supplement** [2] 5:3 16:19
**support** [1] 32:6
**suppose** [2] 13:3 14:14
**supposed** [3] 18:22 19:13 20:10
**SUPREME** [3] 1:1,15 21: 11
**surprise** [1] 42:11
**surprised** [1] 12:23
**suspicious** [1] 37:10
**sweep** [1] 28:10
**sworn** [1] 6:19

**T**

**tangential** [1] 26:8
**tells** [1] 37:16
**temporary** [2] 17:5 18:3
**tens** [1] 56:20
**term** [4] 29:4 30:15 50:8 59: 23
**terms** [3] 8:18 15:5,9 23:5 36:14 45:14 47:14
**test** [1] 3:12
**text** [3] 42:7 52:25 53:23
**textual** [1] 44:2
**theoretical** [1] 19:6
**theory** [1] 7:13
**there'd** [1] 6:2
**there's** [12] 5:12 10:21 12: 2,5 17:11 22:25 23:1 27: 17 48:15 49:9 50:18 56:10
**therefore** [4] 31:18 35:12 38:16 47:18
**thinks** [3] 19:10,11 52:1

**Third** [1] 4:7
**Thomas** [8] 8:4,5 9:12 10: 4 34:12,13 35:2,23
**Thomas's** [2] 40:6,7
**though** [5] 21:22 35:25 39: 24 46:20 47:22
**threatened** [5] 3:16:23 25:15
**Three** [7] 3:19 4:17 7:16 10: 2 25:8 28:2 29:2
**throughout** [2] 33:23 62:2
**time's** [1] 58:12
**time-consuming** [1] 42:5
**Title** [1] 6:13
**today** [5] 5:21 6:8 51:9
**Together** [1] 31:25
**toning** [1] 38:17
**took** [2] 11:8 58:21
**toothless** [1] 39:13
**totally** [1] 25:17
**traceable** [2] 57:2,15
**TRADE** [3] 1:7 3:5 51:21
**tradition** [1] 59:1
**traditional** [7] 31:10,22 35: 20 44:9,15 54:15,21
**traditionally** [3] 3:16 8:18, 19 15:10,11 29:5 41:4
**transfer** [1] 53:15
**Treasury** [1] 55:17
**treatise** [2] 7:9 23:18
**triggered** [2] 35:18 45:9
**true** [1] 14:10
**truly** [1] 61:8
**trust** [1] 58:10
**try** [1] 7:5
**trying** [9] 19:20 20:13 24:1 28:17 60:12,13,16
**Tucker** [7] 13:17,25 36:13 55:24,24 58:6 61:15
**Tucker's** [2] 13:10 55:13
**turn** [2] 8:25 14:6
**turned** [1] 56:4
**two** [8] 6:9 11:22,25 20:24 44:3 46:22 47:1 61:3
**type** [2] 4:15 23:18
**types** [1] 34:7
**typically** [2] 35:4 40:14

**U**

**U.S** [1] 36:12
**ultimately** [2] 54:24 56:13
**Unburn** [2] 38:11 39:3
**uncertain** [1] 52:3
**under** [32] 4:13 5:23 11:1 15:25 16:1,10,12 18:2 19: 19 20:13 23:25 26:1 27:15, 22 29:14 33:13 36:1,18 37: 13,19 38:6,7 47:13 50:11 59:7 60:1,14,17,22 61:3 62:13,14
**underlying** [1] 23:20
**understand** [4] 13:11 27:5 39:21 53:4
**understandably** [1] 47:17

**understanding** [8] 12:15 13:15,18 16:11 27:13 30:18 31:22 55:4
**understood** [13] 3:16 7:6 8:18 15:10 20:7,14 21:15 29:5 41:21 42:19,20 45:6 55:2
**undo** [1] 11:13
**unfair** [3] 38:14 47:16 51:21
**uniform** [2] 10:21 11:13
**unimportant** [1] 45:3
**UNITED** [5] 1:1,16 13:3,5 33:22
**unlawful** [1] 30:25
**unlawfully** [1] 58:21
**unmistakable** [2] 31:9 59:5
**until** [1] 18:16
**up** [18] 13:4,20 26:5 28:21 31:1 36:20,20,21 38:25 45:2 48:14 50:5 51:20 52:5,19 56:13 58:14 62:13
**uphold** [1] 58:25
**uses** [3] 49:1,5,7
**using** [2] 19:7 34:23

## V

**valid** [1] 54:25
**value** [1] 22:19
**various** [1] 25:23
**version** [2] 12:4 45:9
**versus** [4] 3:5 6:24 10:25 54:18
**VI** [1] 6:13
**victim** [1] 59:2
**victimization** [1] 44:25
**victimized** [1] 32:4
**victims** [8] 4:11 12:13 55:15 57:11,13,15,18 58:2
**view** [3] 6:7 27:17 29:14
**vigorously** [1] 43:7
**violate** [2] 3:22 34:18
**violated** [1] 27:19
**violating** [2] 3:21 34:18
**violation** [5] 31:20 37:20,23 46:16 62:3
**violations** [3] 3:23 25:16 30:11
**violator** [1] 30:11
**virtually** [1] 29:16

## W

**wait** [1] 11:9
**wandered** [1] 50:15
**wanted** [6] 22:7 31:19 37:2 42:6 44:10,19
**wants** [1] 29:19
**war** [1] 53:9
**Washington** [2] 1:11,21
**water** [1] 11:1
**way** [6] 10:14 18:5 27:17 38:23 51:8 59:18
**ways** [2] 39:4,5

**Wednesday** [1] 1:12
**well-established** [1] 38:21
**whatever** [3] 32:19 33:9 58:8
**whatsoever** [2] 18:15 38:1
**whenever** [2] 33:24 34:16
**Whereupon** [1] 62:21
**Whether** [15] 6:22 9:10,22 13:4 17:14,15 19:20 21:19 23:3 28:23,25 44:20,22 53:16 57:21
**Whittaker** [1] 24:14
**whole** [1] 19:9
**whom** [1] 14:20
**widespread** [1] 62:2
**wife** [2] 38:15 55:13
**will** [11] 3:3 12:19,20 16:5 37:17,18,18 38:1 39:21 55:20 58:1
**wind** [1] 56:13
**wins** [1] 12:5
**wished** [1] 24:20
**wishes** [2] 48:8 51:13
**within** [1] 33:3
**without** [5] 9:3 29:19 31:23 60:17 62:13
**Wonder** [1] 39:4
**wondering** [1] 47:4
**word** [4] 4:5 7:23 14:12 59:20
**words** [5] 19:17,18 24:25 55:2 59:19
**work** [1] 32:1
**workaround** [1] 42:6
**worked** [1] 53:3
**works** [1] 31:17
**worry** [1] 38:1
**worth** [1] 13:22
**worthy** [1] 9:9
**wrap** [2] 28:21 58:14
**write** [1] 24:25
**written** [1] 24:13
**wrongdoers** [2] 30:15 58:20
**wrongdoing** [2] 14:3 30:16
**wrongfully** [1] 59:3

## Y

**year** [1] 49:7
**years** [10] 5:11,12 10:20 11:13 20:24 26:10 38:4,5 43:10 53:4
**York** [1] 13:9