ORIGINAL

# Kelley Drye

## MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/12/21

**Geoffrey W. Castello**

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Tel: (973) 503-5922
Fax: (973) 503-5950
gcastello@kelleydrye.com

November 2, 2021

Via ECF

Hon. Louis L. Stanton, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*Pre-motion conference held. Objection over-ruled - Sano deposition to be resumed.*
*Louis L. Stanton*
*11/12/21*

Re:  *FTC, et al. v. Quincy Bioscience Holding Co., Inc., et al.*
     Case No. 1:17-cv-00124-LLS

Your Honor:

   We represent Defendants in this action. Pursuant to Local Rule 37.2 and Section 2.A. of Your Honor's Individual Practice Rules, we write to request a pre-motion conference to discuss Defendant's anticipated motion to compel further deposition testimony from Plaintiffs' expert witness, Dr. Mary Sano. Specifically, Defendants seek to compel Dr. Sano to identify the portion of the Federal Trade Commission's Dietary Supplements: An Advertising Guide For Industry ("FTC Guidance" available at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry) she reviewed on the day prior to her deposition and to compel Dr. Sano to respond to deposition questions with respect to the FTC Guidance.

   During initial questioning by Defendants' counsel at her deposition on October 22, 2021, Dr. Sano repeatedly testified that she had not reviewed the FTC Guidance, which was marked as an exhibit at her deposition. (See, e.g., Ex. A at 34:20-35:4; 35:13-22; 36:8-12.) After Defendants concluded their initial questioning of Dr. Sano and following a nearly hour-long break, Dr. Sano abruptly changed her testimony when questioned by counsel for the FTC. The FTC's counsel asked Dr. Sano whether she "would like to modify [her] answer, that [she] gave previously" concerning whether she had seen the FTC Guidance (Id. at 258:18-259:6; 263:19-264:6.) She testified that she did wish to modify her testimony. (Id. at 263:25-264:7.) Next, the FTC's counsel asked Dr. Sano whether she had "seen [the FTC Guidance] prior to today[.]" (Id. at 264:18-19.) Dr. Sano then testified—in contrast to the position she had taken when questioned by Defendants' counsel—that she had "not seen the whole document" but "would clarify and say that [she's] seen a paragraph from the document" on the day prior to her deposition. (Id. at 264:20-22.)

   Defendants' counsel then asked Dr. Sano some follow up questions about which paragraph she reviewed from the FTC Guidance, but the FTC's counsel objected on the grounds of attorney work product, and instructed Dr. Sano not to answer Defendants' counsel's question. (Id. at 266:15-23.)

November 2, 2021

    Plaintiffs' position finds no support in the law. The identity of the paragraph of the FTC Guidance that Dr. Sano reviewed on the day before her deposition is simply not attorney work product. Defendants did not—and do not intend to—ask Dr. Sano questions that would require her to divulge conversations that she had with Plaintiffs' counsel. Defendants are, however, entitled to know which paragraph she reviewed. It is clear that Plaintiffs' counsel agrees on this point, as they permitted their other expert witnesses to answer questions identifying the documents they reviewed in preparation for their depositions, and insisted that one of Defendants' expert witnesses identify documents that he reviewed in advance of his deposition. In fact, to the extent Dr. Sano considered this paragraph in connection with her opinion in this action, Plaintiffs were required to disclose such materials under the Federal Rules of Civil Procedure, but have failed to do so.[1] (See Fed. R. Civ. P. 26(a)(2) (parties' expert must provide "the facts or data considered by the witness in forming" his or her opinion.)

    This issue is critical because none of Plaintiffs' experts were able to testify that the scientific evidence, including the results of Quincy Bioscience's clinical trials, failed to meet the FTC's own standard for substantiation ("competent and reliable scientific evidence"), as set forth in applicable case law and the FTC Guidance. Indeed, none of Plaintiffs' experts had even reviewed the FTC Guidance prior to rendering the opinions contained in their respective reports. It was only after Defendants had finished questioning all of the Plaintiffs' experts that Dr. Sano suddenly had the epiphany (which appeared nowhere in either of her reports) that she had reviewed one paragraph of the FTC Guidance on the day prior to her deposition.

    Accordingly, Defendants request a pre-motion conference to discuss their anticipated motion to compel or, in the alternative, request an Order directing Plaintiffs to identify the portion of the FTC Guidance that Dr. Sano reviewed the day before her deposition. Defendants also request an Order directing Plaintiffs to make Dr. Sano available for questioning under oath, at Defendants' discretion, with respect to the FTC Guidance. Defendants specifically left Dr. Sano's deposition open and, at that time, there was approximately 52 minutes remaining for Defendants' questioning on the record.

Respectfully submitted,

/s/ Geoffrey W. Castello                          /s/ Michael B. de Leeuw

Geoffrey W. Castello                            Michael B. de Leeuw

---

[1] Dr. Sano did not cite, nor did she refer to, the FTC Guidance in either her affirmative report or her rebuttal report.

KELLEY DRYE & WARREN LLP                                                                           2

# Exhibit A

Page 1

1        Sano - rough draft

2        THE VIDEOGRAPHER:  Good morning,
3   counsel.  My name is Phil Rizzuti.  I am a
4   legal videographer in association with
5   TSG Reporting, Inc.
6        Due to the severity of the COVID-19
7   and following the practice of social
8   distancing, I will not be in the same room
9   with the witness.  Instead, I will record
10  this videotaped deposition remotely.
11       The reporter, Jeffrey Benz, also will
12  not be in the same room and will swear the
13  witness remotely.
14       Do all parties stipulate to the
15  validity of this video recording, and
16  remote swearing, and that it will be
17  admissible in the courtroom as if it had
18  been taken following Rule 30 of the Federal
19  Rules of Civil Procedure and the state's
20  rules where this case is pending?
21       MS. METZINGER:  Yes for the Quincy
22  corporate defendants.
23       MR. GLENNON:  Yes for the FTC.
24       THE VIDEOGRAPHER:  Thank you.
25       MS. MATUSCHAK:  Yes for the New York

Page 2

1      Sano - rough draft
2  State Attorney General's office.
3      THE VIDEOGRAPHER:  Thank you.
4      This is the start of media labeled
5  Number 1 of the video-recorded deposition
6  of Dr. Mary Sano, in the matter of the
7  Federal Trade Commission and the People of
8  the State of New York, by Letitia James,
9  Attorney General of the State of New York,
10 versus Quincy Bioscience Holding Company,
11 Inc., a corporation, et al., in the United
12 States District Court for the Southern
13 District of New York,
14 Case Number 117 CV 00124 LLS.
15     This deposition is being held on
16 October 22, 2021, at approximately
17 10:01 a.m.
18     My name is Phil Rizzuti.  I am the
19 legal video specialist from TSG Reporting,
20 Inc.  The court reporter is Jeffrey Benz in
21 association with TSG Reporting.  Counsel
22 please introduce yourself.
23     MS. METZINGER:  Good morning.  Jaclyn
24 Metzinger from Kelley Drye & Warren for the
25 Quincy corporate defendants.  And I have

Page 3

1      Sano - rough draft
2  with me today my colleagues, Geoffrey
3  Castello, Glenn Graham, and Lauren
4  Margolies.
5      MR. DE LEEUW:  Michael de Leeuw on
6  behalf of Mark Underwood.  I have with me
7  today Tamar Wise.
8      MR. GLENNON:  This is Edward Glennon
9  for the Federal Trade Commission.  Also
10 participating for the FTC are attorneys
11 Andrew Warren and Annette Soberats and
12 investigator Will Ducklow.
13     MS. MATUSCHAK:  This is Kate
14 Matuschak, and I'm here for the New York
15 State Attorney General's office.
16     THE VIDEOGRAPHER:  Thank you.
17     Will the court reporter please swear
18 in the witness.
19 DR. MARY SANO,
20     called as a witness, having been first
21     duly sworn by Jeffrey Benz, a Notary
22     Public within and for the State of New
23     York, was examined and testified as
24     follows:
25 EXAMINATION BY MS. METZINGER:

Page 4

1      Sano - rough draft
2      Q.  Good morning, Dr. Sano.  We met
3  briefly before we got on the record, but again,
4  my name is Jaclyn Metzinger.  And I represent
5  the Quincy corporate defendants -- excuse me --
6  in this matter.
7      Have you been deposed before,
8  Dr. Sano?
9      A.  I have.
10     Q.  How many times have you been deposed?
11     A.  I'm not sure.  It's been many years.
12     Q.  Would you say less than five times?
13     A.  Maybe between five and ten times.
14     Q.  And have those depositions been given
15 in your professional capacity or personal
16 capacity?
17     A.  They have.
18     Q.  Were you designated as an expert
19 witness in any of the matters in which you gave
20 a deposition?
21     A.  I was.
22     Q.  In all of them?
23     A.  Yes.
24     Q.  And do you recall any of the names of
25 the cases in which you gave your deposition?

Page 5

1      Sano - rough draft
2      A.  I do not.
3      Q.  Do you recall whether you were
4  retained as an expert on behalf of the plaintiff
5  or the defendant in those cases?
6      A.  I had -- on both.
7      Q.  Have you ever been retained as an
8  expert witness by the Federal Trade Commission
9  in a prior matter?
10     A.  I have not.
11     Q.  Have you ever been retained as an
12 expert witness by the New York Attorney
13 General's office?
14     A.  I have not.
15     Q.  Have you ever been retained as an
16 expert witness by any other governmental agency?
17     A.  I think I have.  By the U.S. Attorney
18 General.
19     Q.  Do you recall what that matter
20 involved?
21     A.  I don't recall.
22     Q.  Have any of the matters in which
23 you've been retained as an expert witness
24 involved a dietary supplement product?
25     A.  They have not.

Page 34
Sano - rough draft
1  
2  "competent and reliable scientific evidence,"
3  has been incorporated into any state or federal
4  law?
5          MR. GLENNON: Objection. Outside the
6      scope of the witness's expert report in
7      this matter.
8          You can answer, Dr. Sano.
9      A.  Okay. Yeah. I -- I don't know.
10         I've not looked at the law so...
11     Q.  Okay. And do you agree that Prevagen
12 is a dietary supplement?
13     A.  I don't know how it's -- what -- how
14 it identifies itself. I don't know that it's
15 specific dietary supplement medical food, et
16 cetera.
17     Q.  It's not a drug, though, correct?
18     A.  I don't know that it markets itself as
19 a drug or that it is a drug.
20     Q.  Are you familiar with the document
21 titled "Dietary Supplements and Advertising
22 Guide for Industry"?
23     A.  I am not.
24     Q.  You've never reviewed the -- I'm going
25 to refer to this document as the FTC guidance.

Page 35
Sano - rough draft
1  
2  You've never reviewed the FTC guidance before?
3      A.  I do not -- I don't recall that I
4  have.
5      Q.  And do you recall seeing references to
6  the FTC guidance in the expert reports that
7  are -- have been submitted by Quincy?
8      A.  I believe there was references to the
9  guidance.
10     Q.  And --
11     A.  In -- I would need a review to see
12 exactly what was said there.
13     Q.  And after seeing references to the FTC
14 guidance in Quincy's expert reports, you did not
15 then go and review the FTC guidance?
16     A.  No, I did not.
17     Q.  So you're not offering an opinion
18 today rebutting anything that Quincy's experts
19 had said with respect to the FTC guidance?
20     A.  I don't believe I am. My -- my
21 commentary is based on the work that I reviewed,
22 the primary works that I reviewed.
23     Q.  And are you offering an opinion that
24 the marketing claims for Prevagen comply with
25 the FTC guidance?

Page 36
Sano - rough draft
1  
2      A.  I'm not making any statements about
3  the marketing claims.
4      Q.  Are you aware that the FTC guidance
5  has its own definition of "competent and
6  reliable scientific evidence"?
7      A.  I'm not aware.
8      Q.  Is there any reason why you chose not
9  to review the FTC guidance after seeing
10 references to it in Quincy's experts' reports?
11     A.  It wasn't part of the work I was
12 engaged to do.
13     Q.  And can you explain to me exactly what
14 your assignment was in this case?
15     A.  It was --
16         MR. GLENNON: Excuse me, sorry.
17     Sorry, could you read -- I didn't hear the
18     question. Could you please -- could the
19     court reporter read it back, please.
20         (The record was read back.)
21         MR. GLENNON: Thank you.
22     A.  I believe it's as stated as in the
23 report. I was reviewing the -- the material
24 that was provided to me to determine if it was
25 coming to conclusions that one would expect,

Page 37
Sano - rough draft
1  
2  given the standards of how that data is
3  collected.
4      Q.  And that standard is your definition
5  of "competent and reliable scientific evidence";
6  is that correct?
7          MR. GLENNON: Objection.
8      A.  Yes. My standard is the standards of
9  the material in the field -- of the expectations
10 in the field.
11     Q.  Did you draft that phrase, "competent
12 and reliable scientific evidence"? Did you come
13 up with that phrase for your report?
14     A.  I believe I did. I edited -- I
15 created the first version of the report, and I
16 believe it was in there, but I'm not -- I'm not
17 sure.
18         It may have -- the words may have
19 occurred separately. I don't remember the
20 versions.
21     Q.  And -- but you said that you don't
22 recall seeing that exact phrase prior to
23 being -- working in this case. Is that correct?
24     A.  Can you ask the question again?
25     Q.  Sure. I believe you testified earlier

Page 258

1  Sano - rough draft
2  MR. GLENNON: Objection.
3  A.  What people know. Marketing claims.
4  Q.  And you're not qualified to offer an
5  opinion on whether a marketing claim is
6  adequately substantiated. Is that correct?
7  MR. GLENNON: Objection.
8  A.  I don't know about marketing claims.
9  I know about claims about cognition
10 and memory.
11 MS. METZINGER: I don't have any
12 further questions. Thank you for your
13 time, Dr. Sano.
14 THE VIDEOGRAPHER: Is that it? Anyone
15 else?
16 MR. DE LEEUW: Nothing for Mark
17 Underwood.
18 MR. GLENNON: Okay, this is Ed Glennon
19 for FTC. I would like to take a break. We
20 might have some clarifications questions
21 for -- or cross, rather.
22 THE VIDEOGRAPHER: Okay.
23 MR. GLENNON: Can we go off the
24 record.
25 THE VIDEOGRAPHER: The time is

Page 259

1  Sano - rough draft
2  6:38 p.m. and we are going off the record.
3  (A recess was taken from 6:38 to
4  time   .)
5  THE VIDEOGRAPHER: The time is
6  7:28 p.m. and we are back on the record.
7  EXAMINATION BY MR. GLENNON:
8  Q.  Hi, Dr. Sano.
9  So, earlier, today, you were asked
10 about clinical meaningfulness with regard to the
11 Madison Memory Study. Do you remember that?
12 A.  I do.
13 Q.  Okay.
14 And paragraph 13 of your rebuttal
15 report, which is Exhibit 2, can I direct you to
16 that paragraph, please?
17 A.  Okay. I'm there.
18 Q.  Okay.
19 So, for the record, the first sentence
20 of that paragraph reads, finally with regard to
21 the results of the Madison Memory Study I see no
22 evidence that any purported improvements on the
23 cog state tasks would be clinically meaningful.
24 Do you see that statement?
25 A.  I do.

Page 260

1  Sano - rough draft
2  Q.  Do you still agree with that statement
3  in your report?
4  A.  I do.
5  Q.  Okay.
6  A.  Yes.
7  Q.  Okay. And could you -- take a look at
8  the rest of that paragraph, there.
9  A.  Uh-huh. Yes.
10 Q.  Paragraph 13. Do you still stand by
11 the other statements made in paragraph 13?
12 A.  I do.
13 Q.  Okay.
14 Do you consider yourself to be an
15 expert in the field of memory?
16 A.  Yes. I do.
17 Q.  Okay. Did you consider standards in
18 that field of memory when opining on what
19 constitutes competent or reliability scientific
20 evidence in this case?
21 A.  I did. Yes.
22 Q.  Okay.
23 Do you consider yourself to be an
24 expert in the field of cognition?
25 A.  Yes.

Page 261

1  Sano - rough draft
2  Q.  Did you consider standards in that
3  field when opining on what constitutes competent
4  and reliable scientific evidence, in this case?
5  A.  Yes, I did.
6  MR. DE LEEUW: Objection to the form
7  of the question. W sorry.
8  Q.  Okay. You can answer it Dr. Sano.
9  A.  Yes, I did.
10 Q.  Do you consider yourself to be an
11 expert in the field of cognitive impairment?
12 A.  I do. Yes.
13 Q.  Did you consider standards in that
14 field when appointing on what constitutes
15 competent and reliable scientific evidence, in
16 this case?
17 A.  I did.
18 MR. DE LEEUW: Objection to form.
19 Q.  What was your answer, Dr. Sano?
20 A.  Yes, I did.
21 Q.  Okay.
22 And do you -- yourself to be an expert
23 in the field of neuro psychology?
24 A.  Yes, I do.
25 Q.  And did you consider standards in that

Page 262
Sano - rough draft

 2  field when opining on what constitutes competent
 3  and reliable scientific evidence, in this case?
 4       MR. DE LEEUW: Objection to the form
 5    of the question.
 6    A.   Yes, I did.
 7    Q.   Okay.
 8         And do you consider yourself to be an
 9  experts notice field of neuroscience of aging
10  and dementia?
11    A.   Yes, I'm an expert in those areas.
12    Q.   Okay. Did you consider standards in
13  those feels when opining on what constitutes
14  competent and reliable scientific evidence, in
15  this case?
16       MR. DE LEEUW: Object to the form of
17    the question.
18    A.   Yes, I did.
19    Q.   Okay.
20         Now, you've testified earlier today,
21  also about the protocol, and standards, for
22  standards in the field of clinical trials, for
23  reporting elements of a protocol. Do you
24  remember that?
25    A.   I do.

Page 263
Sano - rough draft

 2    Q.   Did you consider the protocol of the
 3  Madison Memory Study in determining whether the
 4  analyses of the AD8 zero to 1 and zero to 2 sub
 5  groups were post hoc?
 6       MR. DE LEEUW: Objection to the form
 7    of the question. Leading.
 8    A.   I did. Consider it. The protocol
 9  didn't mention them. And I considered them to
10  be after the protocol was developed.
11    Q.   Have you stated in your report, that
12  the protocol does not refer to the subgroup
13  analyses?
14       MR. DE LEEUW: Object to the form.
15    A.   I -- stated in the report that
16  there's -- that there was no description of
17  those subgroups in the protocol.
18    Q.   Okay.
19         Okay. And I will refer you to the
20  document that was marked earlier today as
21  Exhibit 3.
22         Do you see that?
23         Do you see it?
24    A.   I do see it, yes.
25    Q.   Okay. And were you asked about

Page 264
Sano - rough draft

 2  whether you had seen that document, prior to
 3  today?
 4    A.   Yes, I was asked that.
 5    Q.   Okay. A would you like to modify your
 6  answer, that you gave previously?
 7    A.   Yeah. Yes. Thank you. I --
 8       MS. METZINGER: Objection. Hold on,
 9    Dr. Sano. I'm going to place an objection
10    to that question.
11       THE WITNESS: I'm sorry.
12       Okay.
13    A.   I didn't hear what you said, it broke
14  up. So where do we --
15       MR. DE LEEUW: We were both note be
16    our objections.
17    A.   Okay.
18    Q.   Have you seen that document prior to
19  today?
20    A.   I have not seen the whole document. I
21  would clarify and say that I've seen a paragraph
22  from the document.
23    Q.   Okay. I have no --
24    A.   I -- I saw the paragraph, I did not
25  receive the document.

Page 265
Sano - rough draft

 2       MR. GLENNON: Okay. I have no further
 3    questions.
 4       MS. METZINGER: We're going to have to
 5    take another break. Can we take five
 6    minutes, please.
 7       THE VIDEOGRAPHER: The time is
 8    7:34 p.m., and we are going off the record.
 9       (A recess was taken from 7:34 to
10    7:39.)
11       THE VIDEOGRAPHER: The time is
12    7:39 p.m. and we are back on the record.
13  EXAMINATION BY MS. METZINGER:
14    Q.   Dr. Sano, did you speak with any other
15  experts in the field of memory to determine
16  whether they agree with the opinions set forth
17  in your report?
18    A.   Did not.
19    Q.   Did you speak with any other experts
20  in the field of cognition to determine whether
21  they agreed with the opinions expressed in your
22  reports?
23    A.   I did not.
24    Q.   Did you speak with any experts in the
25  field of cognitive impairment to determine

Page 266

Sano - rough draft

1  
2  whether they agreed with the opinions expressed
3  in your reports?
4       A.   I did not.
5       Q.   Did you speak with any other experts
6  in the field of neuropsychology to determine
7  whether they agree with the opinions expressed
8  in your report?
9       A.   I did not.
10      Q.   Did you speak with any experts in the
11 field of neurosciences of aging and dementia, to
12 determine whether they agreed with the opinions
13 expressed in your report?
14      A.   I did not.
15      Q.   I would like to draw your attention
16 back to Exhibit 3, please.
17      A.   To Exhibit 3, is that what you said?
18 DIR Q.   Yes.
19      Which paragraph in this document have
20 you seen before today?
21      MR. GLENNON:  I'll object.  On the
22 basis of work product, and instruct the
23 witness not to answer that.
24      Q.   Are you --
25      MR. DE LEEUW:  She assessed, just want

Page 267

Sano - rough draft

1  
2  to respond to the objection she testified
3  that she saw one paragraph.  I think --
4  we're then allowed to ask her which
5  paragraph that was.  You can say that --
6  you can certainly -- you know interpose an
7  objection about any discussion you had
8  about it but she specifically testified
9  that she reviewed a paragraph.  And
10 therefore we're entitled to find out what
11 that was.
12      MR. GLENNON:  I disagree.
13      Q.   Dr. Sano when did you see this
14 unidentified paragraph from Exhibit 3?
15      A.   Yesterday.
16      Q.   Was that the first time that you saw
17 this -- this paragraph from the unidentified
18 Exhibit 3?
19      A.   It is.
20      Q.   And is that why it's not listed in
21 your report?
22      A.   That's correct.
23      Q.   Either your reports?
24      A.   That's correct.
25      MR. GLENNON:  Objection.

Page 268

Sano - rough draft

1  
2       Q.   Did counsel remind you, over a break,
3  that he had shown you this paragraph yesterday
4  in preparation for today's deposition?
5       A.   I don't recall whether or not counsel
6  reminded me or I recalled it as we were meeting.
7       Q.   Did you have that recollection during
8  a conversation with counsel over the break?
9       A.   Did I -- I did have the recollection.
10 Over the --
11      Q.   While you were speaking with counsel
12 over a break?
13      A.   I did.
14      Q.   Dr. Sano, did you see the unidentified
15 referenced paragraph, prior to submitting either
16 of your reports in this case?
17      A.   Never.
18      MS. METZINGER:  And Mr. Glennon, I
19 just wanted to confirm that you're
20 directing Dr. Sano not 0 identify which
21 paragraph of the dietary supplement
22 guidelines that she has reviewed prior to
23 today, are you instruct her not answer?
24      MR. GLENNON:  Yes, I am.
25      MS. METZINGER:  Okay.  Then we're

Page 269

Sano - rough draft

1  
2  going to have to leave Dr. Sano's
3  deposition open because we're going to go
4  to seek a ruling from Judge Stanton on that
5  point.  The despite of -- a fair amount of
6  this deposition today, has been based on
7  the fantastic that Dr. Sano testified that
8  she had never seen the FTC dietary
9  supplement guide prior to today's
10 deposition.  And we're going to reserve the
11 right to question Dr. Sano about that
12 paragraph, and any other paragraphs from
13 the dietary supplement guidance that we see
14 fit.
15 A.   So can I make a comment.
16      MR. GLENNON:  Hole on.  I understand
17 your position, Jaclyn, I disagree with it,
18 I don't believe you're entitled to keep the
19 deposition open.  I think -- which
20 paragraph she reviewed, is -- which -- the
21 that we reviewed with her is privileged so
22 yes that's the basis of my instruction.
23      And I -- ask the witness not to --
24      MS. METZINGER:  I will disagree with
25 that, and I will remind you that during