## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK,<br>by LETITIA JAMES,<br>Attorney General of the State of New York,<br><br>     Plaintiffs,<br><br>     v.<br><br>QUINCY BIOSCIENCE HOLDING<br>COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited<br>liability company;<br><br>PREVAGEN, INC., a corporation<br>d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE<br>MANUFACTURING, LLC, a limited liability<br>company;<br><br>MARK UNDERWOOD, individually and as<br>an officer of QUINCY BIOSCIENCE<br>HOLDING COMPANY, INC., QUINCY<br>BIOSCIENCE, LLC, and PREVAGEN,<br>INC.,<br><br>     Defendants. | Case No. 1:17-cv-00124-LLS |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS ................................................................................................ 4

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT ................................................................................................................... 9

    I.   The NYAG Cannot Use the FTC's Claim Under the FTC Act as an "Anchor"
         to Avail Itself of the Pendent Personal Jurisdiction Doctrine Over Mr. Underwood. ........ 9

    II.  The NYAG Cannot Establish Specific Personal Jurisdiction Over Mr. Underwood
         in New York ................................................................................................................. 15

        A.  The "Imputation" Theory of Personal Jurisdiction is Extremely Limited .................. 17

        B.  There Is No Record Evidence that Mr. Underwood Exercised Control
           over Quincy's New York Actions .......................................................................... 18

CONCLUSION ................................................................................................................ 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
    828 F. Supp. 2d 557 (E.D.N.Y. 2011) ...................................................................19

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ...........................................................................15

*Allen v. ConAgra Foods Inc.*,
    No. 13-cv-01279, 2019 WL 5191009 (N.D. Cal. Oct. 15, 2019) ...........................15

*Anderson v. Indiana Black Expo, Inc.*,
    81 F. Supp. 2d 494 (S.D.N.Y. 2000)..................................................................8, 17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................7

*Arma v. Buyseasons, Inc.*,
    591 F. Supp. 2d 637 (S.D.N.Y. 2008)............................................................17, 19

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990).................................................................................8

*Bank Leumi USA v. Ehrlich*,
    98 F. Supp. 3d 637 (S.D.N.Y. 2015).....................................................................3

*In re Bard IVC*,
    No. 15-2641, 2016 WL 6393596 (D. Ariz. Oct. 27, 2016)..............................11, 15

*Bartlett v. Societe Generale de Banque Au Liban SAL*,
    No. 19 CV 00007, 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020) ...........................9

*Canaday v. Anthem Cos., Inc.*,
    9 F.4th 392 (6th Cir. 2021) ...........................................................................11, 13

*Carlson v. United Natural Foods, Inc.*,
    No. C20-5476, 2021 WL 3616786 (W.D. Wash. Aug. 14, 2021) ...........................14

*Carter v. Ford Motor Co.*,
    No. 19-62646, 2021 WL 1165248 (S.D. Fla. Mar. 26, 2021)................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................................7

*Charles Schwab Corp. v. Bank of America Corp.*,
   883 F.3d 68 (2d Cir. 2018).................................................................................8, 9, 10

*Chizniak v. CertainTeed Corp.*,
   No. 17-CV-1075, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020)................................10

*Connor v. Permanent Gen. Assur. Corp.*,
   No. 20-CV-91979, 2021 WL 6135155 (S.D. Fl. Nov. 18, 2021) ...........................13

*Densmore v. Colby-Sawyer College*,
   No. 15-cv-346, 2016 WL 9405316 (D. Me. Mar. 1, 2016) ...................................14

*Fam. Internet, Inc. v. Cybernex, Inc.*,
   No. 98 Civ. 0637, 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ........................16, 17

*Famular v. Whirlpool Corp.*,
   No. 16 Civ. 944, 2017 WL 2470844 (S.D.N.Y. Jun. 6, 2017)................................10

*In re: FCA US LLC Monostable Elec. Gearshift Litig.*,
   No. 16-md-02744, 2017 WL 11552971 (E.D. Mich. Apr. 19, 2017).........................11, 12, 14

*Fujitsu Ltd. v. Fed. Express Corp.*,
   247 F.3d 423 (2d Cir. 2001)........................................................................................8

*Greene v. Mizuho Bank, Ltd.*,
   289 F. Supp. 3d 870 (N.D. Ill. 2017) ......................................................................14

*Group One Ltd. v. GTE GmbH*,
   523 F. Supp. 3d 323 (E.D.N.Y. 2021) .....................................................................23

*Grove Press Inc. v. Angleton*,
   649 F.2d 121 (2d Cir. 1981).....................................................................................17

*Hanly v. Powell Goldstein, LLP*,
   290 Fed. App'x 435 (2d Cir. 2008)...........................................................................10

*HSM Holdings, LLC v. Mantu I.M. Mobile, Ltd.*,
   No. 20 Civ. 00967, 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ........................8, 9

*IMAX Corp. v. The Essel Grp.*,
   154 A.D. 3d 464 (1st Dep't 2017) ............................................................................16

*IUE AFL-CIO Pension Fund v. Herrmann*,
   9 F.3d 1049 (2d Cir. 1993).........................................................................3, 10, 11, 12

*Joint Stock Co. Channel One Russia Worldwide v. Infomir, LLC, et al.*,
   No. 16 Civ. 1318, 2018 WL 4681616 (S.D.N.Y. Sept. 11, 2018)....................14, 18

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)...............................................................17, 18

*King County v. IKB Deutsche Industriebank AG*,
    769 F. Supp. 2d 309 (S.D.N.Y. 2011)...........................................................19, 24

*La Piel, Inc. v. Richina Leather Indus. Co. Ltd.*,
    No. 10 CV 1050, 2013 WL 1315125 (E.D.N.Y. Mar. 29, 2013) .........................7, 8

*Leger v. Kalitta*,
    No. 16 Civ. 6545, 2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) ...........................24

*In re Lyman Good Dietary Supplements Litig.*,
    No. 17 Civ. 8047, 2018 WL 3733949 (S.D.N.Y. Aug. 6, 2018) ............................23

*New York v. Mountain Tobacco Co.*,
    55 F. Supp. 3d 301 (E.D.N.Y. 2014)..............................................................18, 23

*Ontel Prods., Inc. v. Project Strategies Corp.*,
    899 F. Supp. 1144 (S.D.N.Y. 1995)..............................................................17, 23

*Pennington v. D'Ippolito*,
    855 F. App'x 779 (2d Cir. 2021) .........................................................................7

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
    No. 14-8390, 2016 WL 7177532 (C.D. Cal. May 26, 2016) .................................14

*Retail Software Services, Inc. v. Lashlee*,
    854 F.2d 18 (2d Cir. 1988)..................................................................................22

*Rosenshine v. A Meshi Cosms. Indus. Ltd.*,
    No. 18 CV 3572, 2021 WL 4487840 (E.D.N.Y. Sept. 30, 2021) ..........................19

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................................15

*Tenet Solutions, LLC v. Amberstone Enters. LLC*,
    No. 21-80649, 2021 WL 4991299 (S.D. Fl. Jul. 15, 2021) ...................................14

*Time, Inc. v. Simpson*,
    No. 02 Civ. 4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003)...................19, 20

*Travers v. Fedex Corp.*,
    No. 19-6106, 2022 WL 407398 (E.D. Pa. Feb. 10, 2022) ....................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................12

*Wiggins v. Bank of Am., N.A.*,
    488 F. Supp. 3d 611 (S.D. Ohio 2020) ........................................................................12

*Yash Venture Holdings, LLC v. Moca Fin. Inc.*,
    No. 19-cv-04176, 2020 WL 7345655 (C.D. Ill. Dec. 14, 2020) ....................................15

*Yoomi Babytech, Inc. v. Anvyl, Inc.*,
    No. 20 Civ. 7933, 2021 WL 4332258 (S.D.N.Y. Sept. 22, 2021) ..................................12

**Statutes**

FTC Act ...............................................................................................................2, 10, 12, 15

New York General Business Law 349-350 ...........................................................................2

**Other Authorities**

CPLR Section 302 ..............................................................................................................16

CPLR § 302(a)(1) ...............................................................................................................19

CPLR § 302(a)(2) ...............................................................................................................17

C.P.L.R. § 302(a) ...............................................................................................................16

Rule 12(b) .......................................................................................................................1, 20

Rule 30(b)(6) ....................................................................................................................3, 5

Rule 56(a) ..............................................................................................................................7

Defendant Mark Underwood is not a resident of New York, has never lived in New York, has never personally transacted business in New York, and owns no property in New York—and yet, Mr. Underwood has been forced to defend this lawsuit in New York—a lawsuit that asserts claims against him individually, including claims brought by the New York Attorney General (the "**NYAG**").   While this Court denied Mr. Underwood's Rule 12(b) challenge to personal jurisdiction at the outset of this case, discovery has now made clear that this Court may not properly exercise personal jurisdiction over Mr. Underwood for the NYAG's claims, which concern allegedly deceptive marketing and advertising by Quincy[1] (not Mr. Underwood) in New York. Exercising personal jurisdiction over Mr. Underwood for these claims would go far beyond any jurisdictional theory the Second Circuit has ever sanctioned and would ignore the Due Process safeguards guaranteed by the United States Constitution and built into personal jurisdiction analysis.  This is especially so because the United States Supreme Court has been reining in the reach of personal jurisdiction over non-residents over the last decade.[2]

The NYAG's flawed jurisdictional argument relies on two theories—neither of which have anything to do with Mr. Underwood's personal connection to New York, and neither of which are applicable to the facts of this case.  First, the NYAG relies on the theory of "pendent personal jurisdiction," a doctrine that allows a plaintiff who asserts a claim for which personal jurisdiction is properly exercised (against a non-resident) also to bring additional, related claims against that same defendant.  Under those limited circumstances, courts may choose (but are not required) to assert pendent personal jurisdiction over the non-resident even if the additional, related claims

---

[1] As used herein, the term "Quincy" refers to Quincy Bioscience Holding Company, Inc., along with its subsidiaries, including the other corporate defendants, Quincy Bioscience, LLC, Prevagen, Inc., and/or Quincy Bioscience Manufacturing, LLC.

[2] As the Court is aware from the parties' prior submissions, Mr. Underwood brings this motion for partial summary judgment separately and without waiver of his right to join in the arguments raised by, and relief sought in, the forthcoming Motion for Summary Judgment on merits issues alongside the Corporate Defendants.  *See* Dkt. #195, 196, 207.

would not themselves allow for personal jurisdiction in the forum state.  Those limited circumstances do not exist here.  Instead, the NYAG seeks to extend this limited doctrine to an entirely new set of facts—allowing *an additional plaintiff* to take advantage of the personal jurisdiction over Mr. Underwood that is arguably created for the FTC's claims under the FTC Act, so that the NYAG can assert *additional claims*.[3]  The NYAG is not the same party as the FTC, and the Second Circuit has never recognized the application of the pendent personal jurisdiction doctrine to allow an *additional* plaintiff to piggyback on the "anchor" claim of another plaintiff. In the last several years, courts nationwide—including the first federal court of appeals to address this issue—have rejected the application of the pendent personal jurisdiction doctrine in this very context.  While this Court indicated otherwise in ruling on Mr. Underwood's motion to dismiss, the case law that has continued to emerge and develop on this issue, makes clear that pendent personal jurisdiction is not available to the NYAG in this case.

Because the NYAG cannot base jurisdiction on "piggyback" pendent personal jurisdiction, it must rely on another attenuated theory of personal jurisdiction under New York's long-arm statute.  In this case, however, NYAG seeks to impose personal jurisdiction on Mr. Underwood as a result of actions allegedly taken by *Quincy* (not Mr. Underwood) in New York—actions that the NYAG claims constitute violations of New York General Business Law 349-350.  But this theory of imputation also has limits:  it can only be invoked if the NYAG can demonstrate that Mr. Underwood completely controlled Quincy's actions that gave rise to the NYAG claims.  In other words, the NYAG must show that Mr. Underwood was the "primary actor" behind those specific

---

[3] In his motion to dismiss for lack of personal jurisdiction, Mr. Underwood argued, *inter alia*, that the FTC Act does not confer nationwide jurisdiction and therefore cannot be the ground for personal jurisdiction over Mr. Underwood for the FTC's claims.  (Dkts. #36, 65.)  This Court denied Mr. Underwood's motion (Dkt. #72), and Mr. Underwood seeks to preserve his challenge to this ruling as to the FTC Act for appeal.  To the extent Mr. Underwood argues in this Motion that the FTC Act functions as an "anchor claim" in the pendent personal jurisdiction analysis, that argument is made without waiver of Mr. Underwood's right to challenge this premise regarding the FTC Act.

New York transactions that specifically targeted New Yorkers.  But after lengthy discovery, the NYAG is left without any evidentiary support to demonstrate that Mr. Underwood was the "primary actor" for Quincy's actions in New York.  Despite being on notice from the outset of this action that Mr. Underwood was contesting personal jurisdiction in New York (a challenge that Mr. Underwood raised in his motion to dismiss and again as an affirmative defense), and despite having the opportunity, the NYAG failed to elicit ***any*** New York-specific testimony from Mr. Underwood (or any deponent for that matter).  In fact, Mr. Underwood sat for two depositions in this case (as both an individual and Rule 30(b)(6) witness) and counsel for the NYAG—while present for both depositions—declined to ask a *single* question at either deposition.  In light of this evidentiary void, the NYAG cannot satisfy its burden to demonstrate the propriety of exercising personal jurisdiction over Mr. Underwood.  Perhaps the reason the NYAG did not attempt to gather such evidence is because it knew that such evidence did not exist.

For these reasons, Mr. Underwood respectfully requests that this Court dismiss all claims brought against him by the NYAG for lack of personal jurisdiction.[4]

---

[4] The NYAG has suggested that Mr. Underwood is somehow foreclosed by time in challenging personal jurisdiction. Mr. Underwood's summary judgment challenge to personal jurisdiction—a prerequisite finding before proceeding to ruling on the merits of an action—is not  a motion for reconsideration of this Court's July 2019 denial of Mr. Underwood's motion to dismiss, as the NYAG argues.  (Dkt. #203.)  Mr. Underwood's proposed summary judgment motion is a new challenge to this Court's exercise of personal jurisdiction, and is brought with the benefit of new case law and discovery that took place in the intervening two and a half years.  The NYAG's argument ignores that:  (1) the last two years have seen the first federal appellate case in the country to address the issue, holding, as Mr. Underwood argues, that the doctrine of pendent personal jurisdiction does not apply where the anchor claim and pendent claims are being brought by two different plaintiffs; (2) discovery has revealed that, despite Plaintiffs' allegations in the pleadings, they cannot satisfy the "primary actor" test courts apply to extend specific personal jurisdiction from the corporation to an agent (an argument Mr. Underwood could not have made on the pleadings alone); and (3) in any event, a district court has the right to diverge from prior opinions—such as the one made at the pleading stage—and it should do so here because the updated law makes clear that reliance on *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) was in error.  *See, e.g., Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 646 (S.D.N.Y. 2015) (noting that it is within the "Court's discretion" to diverge from law of prior ruling).  This is particularly so where the prior order was decided under a different standard of review than the proposed motion for summary judgment.  *Id.* at 647.

## STATEMENT OF FACTS

Defendant, Mark Underwood, is not a resident of New York, has never lived in New York, does not own property in New York (and never has), and does not personally transact business in New York.  (Declaration of Mark Underwood dated March 18, 2022 ("Underwood Decl.") at ¶¶ 1-3.)

Mr. Underwood is a founder and President of Quincy.  Quincy's operations are handled by its now approximately 80 employees and are governed by a board of directors comprised of a majority of independent directors.  (*Id.* at ¶ 4.)  Quincy has employed marketing professionals since its inception.  (*Id.* at ¶ 5.)  Now, at least five senior sales and marketing executives oversee and manage its sales and marketing department, headed by Thomas Dvorak, Quincy's Vice President of Sales and Marketing.  (*Id.* at ¶¶ 5, 6, 8.)  Quincy also has a Director of Sales (Dakota Miller) as well as a Media Director (Ryan Liebl).  (*Id.* at ¶¶ 7, 9.)  Todd Olson, Quincy's market development director, is the "main account representative or account manager for several regional retail accounts, and point on some national accounts," (Declaration of Michael de Leeuw dated March 18, 2022 ("de Leeuw Decl."), Ex. 1, Deposition of Todd Olson as Individual, at 15:2-10), whereas Mr. Dvorak leads "the production effort of [television, radio and print marketing] and the media buying for it."  (*Id.* at 21:2-19.)

The media budget and spend for marketing relating to Prevagen® is, and has always been, national.  (Underwood Decl. at ¶ 13.)  This budget is decided by a group of Quincy employees, including Mr. Underwood, Mr. Dvorak, and Mr. Miller, among others.  (*Id.* at ¶ 14.)  Advertising and marketing for Prevagen is national in scope, but prior to 2015, advertising and marketing for Prevagen included direct response advertising, meaning that certain infomercials were played on regional television and radio channels.  (*Id.* at ¶ 15.)  Prevagen infomercials have never been targeted to a specific geographic market, including New York.  (*Id.* at ¶ 16.)  To place these

infomercials, Quincy's media buyers would buy spot purchases for television and radio slots on television and radio channels throughout the country.  (*Id.* at ¶ 17.)  Quincy's media buyers would analyze the response to the infomercials that had aired in different markets and would decide whether the advertisements were successful enough to purchase additional spots for infomercials in those markets.  (*Id.* at ¶ 18.)  These decisions were made by the media buyers who reported directly to Mr. Miller as part of this process.  (*Id.*)  Mr. Underwood was not involved in directing any New York-market specific advertising for Prevagen.  (*Id.* at ¶ 19.)  Indeed, Quincy does not have, and has never had, a New York-specific marketing, sales or advertising team, nor has it ever made any New York-specific marketing claims for Prevagen. (*Id.* at ¶¶ 10, 21.)

The undisputed record testimony is that Mr. Underwood was part of the marketing team at Quincy:

- The marketing department collectively made decisions about advertising and marketing content, (de Leeuw Decl. Ex. 2, Deposition of Mark Underwood Pursuant to Rule 30(b)(6), at 81:20-82:13; de Leeuw Decl. Ex. 1, at 37:16-38:22), or otherwise outsourced marketing and media placement responsibilities to third-party companies, (de Leeuw Dec. Ex. 3, Deposition of Mark Underwood as Individual, at 46:20-23 (testifying that Quincy's marketing team "bring[s] in other team members that are not . . . internal to Quincy, but agency resources, other designers, other specialized marketers").

- Mr. Underwood testified, on behalf of Quincy, that "we all worked on this together.  So it wasn't like a direct—you know, a situation where they had to just tell Mark they did it.  Most of our digital marketing team reports up through Todd Olson [Quincy's market development director], but it wasn't just their—their

effort or their project, we all worked on it together.  And different questions that we had, we would consult with counsel to make sure we, you know—I don't know, I guess were doing it right—'right'" (de Leeuw Decl. Ex. 2, at 82:14-83:3);

- Mr. Underwood testified that he is "part of the marketing team" at Quincy, and that Quincy's marketing is all done as a "team activity" involving the entire marketing team (de Leeuw Decl. Ex. 3, at 46:24-47:2);

- Mr. Underwood testified that "[d]eveloping creatives is done in-house, … sort of the collaborative work of our marketing team" (de Leeuw Decl. Ex. 3, at 53:9-10);

- Mr. Underwood testified that he is "one of the people that approved edits to Prevagen's packaging, but not the sole individual," and that others included "[i]nternally, people that are part of our marketing and advertising team, as well as counsel" (de Leeuw Decl. Ex. 3, at 60:2-9);

- Mr. Underwood testified that with regard to the process of translating scientific data into marketing language, the "entire team is involved in this process in terms of our marketing and advertising personnel." (de Leeuw Decl. Ex. 3, at 85:2-86:25);

- Todd Olson testified that scripts for radio ads were drafted as "a team effort" comprised of him, Mr. Underwood, Tom Dvorak, and Dakota Miller (de Leeuw Decl. Ex. 1, at 63:2-9);

- Mr. Olson testified that content for Quincy's television commercials was done by "a team of video production people and marketing people that might work together

on that," including Dakota Miller, Tom Dvorak, Mr. Underwood, and him (de Leeuw Decl. Ex. 1, at 78:1-25);

- Mr. Olson testified that Quincy had a "team to find—or take the findings that we had from [the Madison Memory] study and help translate that into advertising or marketing language or copy that would be understandable to a consumer," and "this team" was "the marketing team" (de Leeuw Decl. Ex. 1, at 95:6-96:19).

## LEGAL STANDARD

Rule 56(a) permits courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). Initially, the movant bears the burden of demonstrating "the absence of a genuine material issue of fact." *Pennington v. D'Ippolito*, 855 F. App'x 779, 781 (2d Cir. 2021) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). If satisfied, the burden shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Id.* To do that, the non-movant must "designate specific facts showing that there is a genuine issue for trial." *Id.* "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also La Piel, Inc. v. Richina Leather Indus. Co. Ltd.*, No. 10 CV 1050, 2013 WL 1315125, at *5 (E.D.N.Y. Mar. 29, 2013) ("'the mere existence of *some* alleged factual dispute between the parties' alone will not defeat a properly supported motion for summary judgment" (quoting

*Anderson*, 477 U.S. at 249-50))).  And the non-movant "may not rely on conclusory allegations or unsubstantiated speculation" to satisfy its burden.  *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see also La Piel, Inc.*, 2013 WL 1315125 at *5 ("it is insufficient for a party opposing summary judgment 'merely to assert a conclusion without supplying supporting arguments or facts.'" (quoting *BellSouth Telecomms, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996))).

Where a motion for summary judgment presents a jurisdictional dispute, "the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  Critically, "[w]hile bare legal allegations may be sufficient to survive a pre-discovery dismissal motion for lack of personal jurisdiction, 'without factual support, [such allegations] . . . fail to make a *prima facie* showing at the summary judgment stage.'" *Anderson v. Indiana Black Expo, Inc.*, 81 F. Supp. 2d 494, 499 (S.D.N.Y. 2000) (quoting *Ball*, 902 F.2d at 199).  Instead, at this juncture, a plaintiff seeking to invoke personal jurisdiction "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball*, 902 F.2d at 197.  Put differently, following discovery, the *prima facie* showing necessary to establish personal jurisdiction "must be factually supported." *Id.*

"A plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal citations and quotation marks omitted); *see also HSM Holdings, LLC v. Mantu I.M. Mobile, Ltd.*, No. 20 Civ. 00967, 2021 WL 918556, at *11 (S.D.N.Y. Mar. 10, 2021) (clarifying that "[p]laintiff must separately allege personal jurisdiction for *each* of the sixteen causes of action brought against" certain defendants.) (emphasis added).  And "[a] plaintiff bears the burden of demonstrating that

the court may exercise jurisdiction over each defendant." *HSM Holdings, LLC*, 2021 WL 918556, at *15 (quoting *King County v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011)).  Accordingly, a plaintiff may establish that this Court has personal jurisdiction over certain claims or over certain defendants, but not others.  *See HSM Holdings, LLC*, 2021 WL 918556 at *26 (concluding that plaintiff had satisfied its burden to demonstrate that this Court could assert personal jurisdiction over certain defendants, but not others); *see also Bartlett v. Societe Generale de Banque Au Liban SAL*, No. 19 CV 00007, 2020 WL 7089448, at *16 (E.D.N.Y. Nov. 25, 2020) (concluding that plaintiff had satisfied its burden to demonstrate that the court could assert personal jurisdiction over defendants with respect to three of the four claims asserted in the complaint and dismissing the remaining claim for lack of personal jurisdiction).

## **ARGUMENT**

I.    **The NYAG Cannot Use the FTC's Claim Under the FTC Act as an "Anchor" to Avail Itself of the Pendent Personal Jurisdiction Doctrine Over Mr. Underwood.**

The doctrine of "pendent personal jurisdiction" allows a court to find personal jurisdiction over a defendant for ***claim b*** where the plaintiff already has personal jurisdiction over that defendant for ***claim a***.  The court can exercise this jurisdiction even where it would not independently have jurisdiction over that defendant for ***claim b***.  It is a limited doctrine that applies "where a federal statute authorizes nationwide service of process, and the federal and state-law claims derive from a common nucleus of operative fact." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (quoting *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993)).  Under those circumstances, "the district court may assert personal jurisdiction over the parties to the related state-law claims even if personal jurisdiction is not otherwise available." *Id.*  The "traditional" application of pendent personal jurisdiction—and the only form that the Second Circuit has ever recognized—concerns an even more limited fact-

pattern:  where the jurisdictionally-sufficient claim (*i.e.*, the "anchor" claim) and the additional, pendent claims are brought by the ***same plaintiff*** or group of plaintiffs.  *See, e.g.*, *IUE AFL-CIO*, 9 F.3d at 1053 (applying pendent personal jurisdiction doctrine where all plaintiffs raised the jurisdictionally-sufficient and pendant claims against defendants); *Charles Schwab Corp.*, 883 F.3d at 80-81, 88 (applying pendent personal jurisdiction doctrine where all plaintiffs raised the jurisdictionally-sufficient and pendant claims against defendants); *Hanly v. Powell Goldstein, LLP*, 290 Fed. App'x 435, 437-38 (2d Cir. 2008) (applying pendent personal jurisdiction doctrine where all plaintiffs raised the jurisdictionally-sufficient and pendant claims against defendants).

In this case, however, the Court's exercise of pendent personal jurisdiction would require a non-traditional and unprecedented, expansive application of the doctrine.  Here, the "anchor" claim (***claim a***) that would serve as the predicate for personal jurisdiction over Mr. Underwood is the *FTC's claim* under the FTC Act,[5] but it is the NYAG—*a different plaintiff*, and one who cannot assert any claims under the FTC Act claim—that is seeking to use ***claim a*** to gain personal jurisdiction over Mr. Underwood for ***claim b***, which is asserted under New York law *only by the NYAG*.  The Complaint is very clear that Count I and Count II are brought solely by the FTC (because Congress solely authorized the FTC to bring claims under that statute) while Counts III and IV are brought solely by the NYAG.  Compl. at 26-29, Dkt. #1.

The Second Circuit has never allowed this broad extension of the pendent personal jurisdiction doctrine,[6] even in the case to which this Court cited when denied Mr. Underwood's

---

[5]    Mr. Underwood does not concede that the FTC Act confers personal jurisdiction.  Mr. Underwood respectfully disagrees with the conclusion reached by this Court to the contrary in its ruling on Mr. Underwood's motion to dismiss, and Mr. Underwood wishes to preserve his challenge to this ruling for appeal.

[6]    Nor have district courts in this Circuit. *See, e.g.*, *Chizniak v. CertainTeed Corp.*, No. 17-CV-1075, 2020 WL 495129, at *5 n.4 (N.D.N.Y. Jan. 30, 2020) (rejecting application of pendent personal jurisdiction doctrine to allow additional plaintiffs to piggyback on anchor claim brought by other set of plaintiffs because doing so "would counteract the Due Process Clause requirement that personal jurisdiction comports with traditional notions of fair play and substantial justice"); *Famular v. Whirlpool Corp.*, No. 16 Civ. 944, 2017 WL 2470844, at *5-6 (S.D.N.Y. Jun.

motion to dismiss for lack of personal jurisdiction.  In that case, *IUE AFL-CIO Pension Fund* (and unlike this case), the "anchor" claim and pendent claims were brought by the ***same set of plaintiffs***. 9 F.3d at 1056-57.  Here, none of the claims in the Complaint are asserted on behalf of both plaintiffs.

Nor has the Second Circuit stretched *IUE AFL-CIO* beyond its specific fact pattern.  And, indeed, federal courts nationwide have consistently recognized this limitation in construing the "traditional" application of pendent personal jurisdiction.  *See, e.g.*, *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 401 (6th Cir. 2021) ("[p]endant *party* personal jurisdiction recognizes that a court's exercise of personal jurisdiction over one defendant as to a particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by other plaintiffs"); *In re Bard IVC*, No. 15-2641, 2016 WL 6393596, at n. 4 (D. Ariz. Oct. 27, 2016) (noting that "[s]ome cases have recognized a form of pendent personal jurisdiction with respect to multiple claims of a single plaintiff," and citing to *IUE AFL-CIO*, but concluding, "[e]ven if this doctrine is viable, it applies to claims asserted *by a single plaintiff*, not claims asserted by different plaintiffs."); *In re: FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-md-02744, 2017 WL 11552971, at *4 (E.D. Mich. Apr. 19, 2017) (citing *IUE AFL-CIO* for the proposition that "[t]he courts of appeals that accept the notion of 'pendent personal jurisdiction' … reasoned that because the defendant was summoned properly before the court, due process was not offended by exercising personal jurisdiction over the defendant for the purpose of hearing additional, factually intertwined claims brought in the same case, *by the same plaintiffs*, without regard to whether personal jurisdiction separately could be obtained over those claims alone" (emphasis in original)).

---

6, 2017) (rejecting as inappropriate a "non-traditional application of pendent personal jurisdiction," which sought personal jurisdiction over one set of plaintiffs' claims grounded in the anchor claim brought by another set of plaintiffs).

The reluctance of courts to extend the reach of pendent personal jurisdiction is consistent with the United States Supreme Court's caution, emphasized in recent years, that the exercise of personal jurisdiction must be grounded in contacts that the "defendant *himself*" creates with the forum State. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). To find Mr. Underwood, a non-New York resident, subject to personal jurisdiction in New York in the absence of either a statutory authority (*e.g.*, the FTC Act) or substantial acts of his own in New York would run afoul of this fundamental Due Process limitation. As the Supreme Court made clear in *Walden*,

> Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.

571 U.S. at 284; *see also Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933, 2021 WL 4332258, at *8 (S.D.N.Y. Sept. 22, 2021). Thus, even were *IUE AFL-CIO* applicable to the unique fact pattern of this case, its suggestion that the "justification [of the pendent personal jurisdiction doctrine] lies in considerations of judicial economy, convenience and fairness to litigants," 9 F.3d at 1059, is an antiquated approach to personal jurisdiction that is simply incompatible with *Walden*'s caution that convenience cannot substitute for forum-specific activity by the defendant in asserting personal jurisdiction.[7]

---

[7]    In this vein, courts that have rejected expansive versions of pendent personal jurisdiction have expressed concern with the incompatibility of this expansion with Due Process requirements. *See, e.g., Wiggins v. Bank of Am., N.A.*, 488 F. Supp. 3d 611, 624 (S.D. Ohio 2020) ("[t]his Court has previously declined to exercise its discretion to apply pendent jurisdiction when *multiple plaintiffs*—not a single plaintiff—assert separate claims against the same defendants [because] this application of pendent jurisdiction raised serious Due Process Clause concerns" and "the Court cannot offend Due Process Clause in order to create efficiency") (internal citations and quoataion marks omitted); *FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 11552971, at *5 (noting the absence of "any court of appeals decision in any circuit that has extended the concept of pendent personal jurisdiction with such sweeping effect that can be squared with the constraints of the Due Process Clause.").

Indeed, "no federal circuit court of appeals has adopted this pendent-*party* variety of personal jurisdiction." *Carter v. Ford Motor Co.*, No. 19-62646, 2021 WL 1165248, at *9 (S.D. Fla. Mar. 26, 2021). And in August 2021, the Sixth Circuit—the only Court of Appeals even to have *considered* this novel application of the pendent personal jurisdiction doctrine—squarely rejected it. In *Canaday*, the Sixth Circuit refused to apply a version of the pendent personal jurisdiction that would allow a court's "exercise of personal jurisdiction over one defendant as to a particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by *other plaintiffs*." 9 F.4th at 401 (emphasis added). In reaching this conclusion, the Sixth Circuit noted that "no federal statute or rule authorizes" this form of pendent personal jurisdiction, and "[n]o such law exists—not in [] the supplemental jurisdiction statute, not in the Federal Rules of Civil Procedure." *Id.* at 401-02.

Similarly, district courts in the vast majority of jurisdictions nationwide have flatly rejected this expansion of the reach of personal jurisdiction to a plaintiff not a party to the anchor claim. *See, e.g.*, *Travers v. Fedex Corp.*, No. 19-6106, 2022 WL 407398, at *5 (E.D. Pa. Feb. 10, 2022) (noting that "pendent party jurisdiction [] has endured heavy criticism in other circuits," that it is "judge made," supported by "no federal statute or rule," "has a dubious origin," and that "rejection of the doctrine appears to be the majority position" because "the doctrine obviates constitutional requirements"; declining to exercise the doctrine because the Third Circuit only allows "pendent personal jurisdiction over additional *claims*, not necessarily over additional *parties*") (internal citations and quotation marks omitted) (emphasis added); *Connor v. Permanent Gen. Assur. Corp.*, No. 20-CV-91979, 2021 WL 6135155, at *3 (S.D. Fl. Nov. 18, 2021) ("Plaintiffs here seek for the Court to expand this doctrine to include additional pendent party plaintiffs, not just pendent claims. Notably absent in the Eleventh Circuit is support for exercising personal jurisdiction on this

basis."); *Carlson v. United Natural Foods, Inc.*, No. C20-5476, 2021 WL 3616786, at *4 (W.D. Wash. Aug. 14, 2021) (rejecting application of pendent personal jurisdiction and noting that "the Ninth Circuit has never endorsed … using this doctrine to extend a court's personal jurisdiction to reach claims asserted by a separate plaintiff"); *Tenet Solutions, LLC v. Amberstone Enters. LLC*, No. 21-80649, 2021 WL 4991299, at *6 (S.D. Fl. Jul. 15, 2021) (rejecting application of pendent personal jurisdiction to allow additional plaintiff to rely on personal jurisdiction afforded by other plaintiff's claims; "The Court does not find support within the Eleventh Circuit to exercise personal jurisdiction on this basis."); *Densmore v. Colby-Sawyer College*, No. 15-cv-346, 2016 WL 9405316, at *5 (D. Me. Mar. 1, 2016) (rejecting application of pendent personal jurisdiction to additional plaintiff relying on other plaintiff's anchor claim; noting "the scope of the doctrine of pendent personal jurisdiction … applies to causes of action brought by a single plaintiff, not to claims raised by additional plaintiffs over whom the forum court would not otherwise have personal jurisdiction"); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 875 (N.D. Ill. 2017) (rejecting application of pendent personal jurisdiction to additional plaintiff relying on anchor claim of a different plaintiff, distinguishing Seventh Circuit case that defined the doctrine to apply where "a court has personal jurisdiction over a defendant as to *one* claim brought by the plaintiff, the court may assert jurisdiction over *additional* claims brought by that plaintiff" (emphasis in original)); *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, No. 14-8390, 2016 WL 7177532, at *2 (C.D. Cal. May 26, 2016) (rejecting application of pendent personal jurisdiction to additional plaintiffs relying on other plaintiff's anchor claim; "This doctrine does not apply … to situations like the one here where Plaintiffs seek to piggyback personal jurisdiction over one set of Plaintiffs' claims (the non-California plaintiffs) onto claims by a different set of plaintiffs (the California plaintiffs)"); *In re: FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL

11552971, at *5 (rejecting pendent personal jurisdiction to allow related claims by additional plaintiffs, noting the absence of "any court of appeals decision in any circuit that has extended the concept of pendent personal jurisdiction …"); *In re Bard IVC*, 2016 WL 6393596, at n. 4 (noting that "[e]ven if this doctrine [of pendent personal jurisdiction] is viable, it applies to claims asserted *by a single plaintiff*, not claims asserted by different plaintiffs."); *see also Yash Venture Holdings, LLC v. Moca Fin. Inc.*, No. 19-cv-04176, 2020 WL 7345655, at *4 (C.D. Ill. Dec. 14, 2020) (describing the pendent personal jurisdiction doctrine as applicable where "a court has personal jurisdiction over a defendant with respect to one of the ***plaintiff's*** claims, the court can exercise personal jurisdiction over the defendant for the ***plaintiff's*** other claims so long as they arise out of the same nucleus of operative facts").[8]

There is simply no basis and no support for asserting pendent personal jurisdiction over Mr. Underwood for the NYAG's claims.

## II.    The NYAG Cannot Establish Specific Personal Jurisdiction Over Mr. Underwood in New York.

Absent the "hook" of the FTC Act, the NYAG may only bring its claim against the non-resident Mr. Underwood if a New York court can exercise specific personal jurisdiction over him

---

[8]    Some (but not all) district courts in California are the outliers on this issue.  Critically, the Ninth Circuit has never sanctioned extension of pendent personal jurisdiction to claims by additional plaintiffs.  To the extent California *district* courts have done so, it is usually in unique circumstances, such as where the related claims were being brought by different plaintiffs as part of a class action or mass tort and based on a Ninth Circuit-specific broad read of a Ninth Circuit case.  *See, e.g., Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 861 (N.D. Cal. 2018) (noting that the pendent jurisdiction derived from *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) does not "extend[ ] categorically to claims brought by different plaintiffs," but it was appropriate to extend in a putative nationwide class action). Indeed, in one of the more influential California district court cases, the court specifically relied upon the class action nature of the case in extending pendent personal jurisdiction to claims by additional plaintiffs—and, when the class was not certified, the court rescinded application of the pendent personal jurisdiction doctrine to cover claims by additional plaintiffs.  *Allen v. ConAgra Foods Inc.*, No. 13-cv-01279, 2019 WL 5191009, at *3 (N.D. Cal. Oct. 15, 2019) ("Now that plaintiffs have failed to achieve certification of a nationwide class, the foundation for my decision to exercise of pendent personal jurisdiction is no longer present. The potential for greater efficiency and the avoidance of piecemeal litigation are not enough. It is no longer appropriate to allow the non-California plaintiffs to proceed in this Court; I will dismiss their claims.").

under CPLR Section 302.[9]  Section 302 permits personal jurisdiction over a non-domiciliary only

under the limited circumstances where the non-domiciliary:

> (1) transacts any business within the state or contracts anywhere to supply good or services in the state; (2) commits a tortious act within the state . . .; or (3) commits a tortious act without the state causing injury to person or property within state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered, in the state; or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or; (4) owns, uses or possesses any real property within the state.

N.Y. C.P.L.R. § 302(a).

The NYAG cannot satisfy that standard.  The record is devoid of any evidence connecting

Mr. Underwood, personally, to New York.  Mr. Underwood is not domiciled in New York, and

does not personally have continuous or permanent contacts with New York.  (Underwood Decl. at

¶¶ 1-3.)  The NYAG has never argued otherwise in any of its jurisdictional briefing.

Indeed, in recognition of Mr. Underwood's insufficient **personal** contacts with New York,

the NYAG has relied solely on ***Quincy's*** alleged New York-based conduct to argue that Mr.

Underwood subject to suit in New York.  *See* Pls.' Memo of Law in Opp'n to Mot. to Dismiss at

12-16, Dkt. #39.  But the imputation theory the NYAG seeks to invoke can only be applied

"[u]nder limited circumstances," *Fam. Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637, 1999 WL

796177, at *8 (S.D.N.Y. Oct. 6, 1999), and the undisputed facts in this case plainly do not warrant

its application here.

---

[9]      As it is undisputed that Mr. Underwood is not domiciled in New York and has limited to no contacts with New York, the only inquiry applicable here is whether this Court may exercise long-arm jurisdiction over him pursuant to CPLR § 302.  *See IMAX Corp. v. The Essel Grp.*, 154 A.D.3d 464, 465-66 (1st Dep't 2017) ("New York courts may not exercise general jurisdiction against a defendant under the United States Constitution or under CPLR § 301 unless the defendant is domiciled in the state or in an exceptional case where 'an individual's contacts with the forum [are] so extensive as to support general jurisdiction notwithstanding domicile elsewhere.'").

A.      The "Imputation" Theory of Personal Jurisdiction is Extremely Limited

The bar for invoking "imputation" as a basis for specific personal jurisdiction is high:  a plaintiff must establish not only that the corporation whose acts are to be imputed "engaged in purposeful activities in this State" relating to the events that serve as a basis for the complaint, but that those activities were "***for the benefit of*** and ***with the knowledge and consent of***" the individual defendant, ***and*** that the individual defendant exercised control over the corporation's New York-specific conduct at issue in the case.  *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988)); *see also Grove Press Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) (holding that "before an agency relationship will be held to exist under CPLR § 302(a)(2), a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal"); *Anderson v. Indiana Black Expo, Inc.*, 81 F. Supp. 2d 494, 503 (S.D.N.Y. 2000) (employing same standard in assessing motion for summary judgment asserting lack of personal jurisdiction).

In practice, sufficient "control" is established only where the individual is the "*primary actor*" or "*driving force*" behind the New York-specific conduct at issue in the case.  *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998); *see also Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (requiring evidence that the individual defendant "personally took part in the activities giving rise to the action at issue").  Because of the obvious Due Process concerns involved in exercising personal jurisdiction over an out-of-state individual based on the imputed acts of another, this theory of jurisdiction is narrow and only applies "[u]nder limited circumstances." *Fam. Internet, Inc.*, 1999 WL 796177 at *8.

Indeed, to prevail on this limited theory, the record must contain "facts sufficient to establish all [the] elements of the agency test." *Arma*, 529 F. Supp. 2d at 647 (internal citations

omitted); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir, LLC, et al.*, No. 16 Civ. 1318, 2018 WL 4681616, at *16 (S.D.N.Y. Sept. 11, 2018) ("Even where the alleged foreign principal is the parent company (or an officer) of the instate agent, none of the necessary factors— benefit, consent, control—may be assumed; all must be specifically alleged or, after jurisdictional discovery, factually supported."). Here, the undisputed record contains no evidence by which the NYAG could invoke the agency theory of specific personal jurisdiction over Mr. Underwood.

**B.   There Is No Record Evidence that Mr. Underwood Exercised Control over Quincy's New York Actions.**

To demonstrate that an individual defendant "exercised control" over the transactions at issue, there must be "sufficient[] detail" that the individual defendant "was a ***primary actor*** in the specific matter in question." *New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 312 (E.D.N.Y. 2014) (quoting *Barron Partners, LP v. Lab123, Inc.*, 07 Civ. 11135, 2008 WL 2902187, at *10 (S.D.N.Y. July 25, 2008)) (emphasis added). Put differently, for the court to exercise personal jurisdiction over an individual defendant under an agency theory, the individual defendant must be the "driving force" behind the New York-specific conduct at issue. *Karabu Corp.*, 16 F. Supp. 2d at 325.

Summary judgment on personal jurisdiction is warranted because the record contains no evidence that Mr. Underwood was the primary actor in—let alone the "driving force" behind—the alleged New York-based conduct that gives rise to the NYAG's claims in this case. To the extent the NYAG's claims involve allegedly false claims in advertising in New York or on Prevagen labels sold in New York or to New York residents, the record is undisputed that Quincy did not have a New York-specific marketing, sales, or advertising team (let alone one that Mr. Underwood controlled). (Underwood Decl. at ¶¶ 10, 11.) To the contrary, the undisputed testimony is that Quincy's advertising was "national in scope" and that the media budget and spend was "national."

(de Leeuw Decl., Ex. 1, at 30:1-15; Underwood Decl. at ¶ 13.)   Courts in this Circuit have held that a national advertising campaign that "equally targets New York consumers and all other consumers throughout the [country] means, by definition, that they are not directly soliciting New Yorkers," and cannot serve as a basis for finding specific personal jurisdiction pursuant to CPLR § 302(a)(1).   *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 566 (E.D.N.Y. 2011); *see Rosenshine v. A Meshi Cosms. Indus. Ltd.*, No. 18 CV 3572, 2021 WL 4487840, at *2-3 (E.D.N.Y. Sept. 30, 2021) (concluding that proposed amendment to add defendants who were allegedly "directing promotional and marketing efforts of the counterfeit Star Gel products across the U.S., including the State of New York" would be futile, as those allegations were insufficient for the exercise of personal jurisdiction absent specific showing of defendant's involvement in targeting New York); *see also Arma*, 591 F. Supp. at 647 (declining to exercise agency jurisdiction over the individual even where an individual defendant was allegedly "actively engaged in the day to day decisions" related to the actions underlying the complaint, where there was no evidence that he or she was the "'primary actor' in any conduct targeting New York"); *King County, Wash v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 320-21 (S.D.N.Y. 2011) (declining to exercise agency jurisdiction where, "[a]side from the mere fact of their positions within the corporations," plaintiffs offered no evidence that individual defendants "exercised control over [company's] activities in New York").

This Court's decision in *Time, Inc. v. Simpson*, No. 02 Civ. 4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003), is particularly instructive here.   With the benefit of jurisdictional discovery, this Court declined to exercise agency jurisdiction over the president, chairman, and sole shareholder of a corporate defendant in an infringement action where it found no evidence that the individual defendant "exercised control over" or "had any personal involvement in" any

of the decisions or actions that served as the basis for the New York-specific conduct in the complaint. *Id.* at *6. In reaching this conclusion, this Court recognized that while the individual defendant, as president of the company, communicated with and was "involved in" the corporate defendant's board of directors, which was responsible for "determin[ing] policy and directives" for the corporate defendant, that was not enough to exercise jurisdiction over the individual defendant. *Id.* It was critical to the personal jurisdiction analysis that there was no record evidence that the individual defendant was specifically "'involved' in making policy, much less a specific policy concerning the solicitations ***sent to New York residents***." *Id.* (emphasis added). In concluding that it could not exercise agency jurisdiction over the individual defendant as a result of this evidentiary defect, the court chided plaintiff for failure to elicit testimony about the extent to which the individual defendant had a role in any New York-specific conduct. *Id.*

Similarly, here there is simply no evidence in the record that Mr. Underwood was the primary actor with respect to Prevagen's marketing, much less the non-existent marketing that the NYAG alleges was directed specifically at New York residents or the content of labeling on Prevagen sold to New York residents. While the NYAG similarly did not seek evidence that would support this point, it would not have mattered because the evidence does not exist.

Mr. Underwood made clear at the outset of this case in a motion to dismiss, and then in his affirmative defenses, that he was challenging personal jurisdiction in New York. *See* Mem. of Law in Support of Mot. to Dismiss by Defs. Mark Underwood and Michael Beaman Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) at 3-9, Dkt. #37, Apr. 6, 2017; *see also* Answer with Affirmative Defenses on Behalf of Def. Mark Underwood at 8, Dkt. #74, Aug. 7, 2019 (raising lack of personal jurisdiction as second affirmative defense). And yet the NYAG, even with the benefit of full discovery, and despite having the opportunity to develop evidence on this issue,

including two depositions of Mr. Underwood, failed to elicit any testimony regarding the existence of New York-specific marketing and advertising conduct, let alone any testimony connecting Mr. Underwood to this conduct.  Based on this evidentiary void alone, the NYAG is unable to support with sufficient factual assertions the exercise of agency jurisdiction over Mr. Underwood for its claims under GBL 349 and 350, and summary judgment on this issue should be found in Mr. Underwood's favor.

In any event, while prior to 2015 Quincy played its infomercials on regional television and radio channels around the country, Prevagen infomercials have never been targeted to a specific geographic market, including New York, and Quincy has never made any New York-specific marketing claims for Prevagen.  (Underwood Decl. at ¶¶ 15, 16, 21.)  To the extent that Quincy played any infomercials in New York, the undisputed record evidence is that New York was not a specific target market for any infomercial (instead, infomercials were placed in all markets nationwide).  (*Id.* at ¶¶ 16, 17.)  Moreover, it is undisputed that Mr. Underwood was *not* responsible for the actual purchase of the media spots in any particular market, including New York; he did not make decisions on which markets Quincy should subsequently purchase more media.  (*Id.* at ¶¶ 18, 20.)  These actions were taken and decisions made by Quincy's media buyers, who reported at the time directly to Dakota Miller.  (*Id.* at ¶¶ 18, 20.)  Mr. Underwood testified—and there is no record evidence to the contrary—that he was not involved in directing any New York-market specific advertising for Prevagen and that neither he, nor Quincy, has ever made any New York-specific marketing claims for Prevagen.  (*Id.* at ¶¶ 19, 21.)

Moreover, even the nationwide marketing responsibilities at Quincy are diffused among a group of individuals, including marketing executives and counsel.  Mr. Underwood was not responsible for placing Quincy's advertisements.  (de Leeuw Decl. Ex. 3, at 47:3-6.)  Rather, the

undisputed evidence is that Quincy employs a marketing department, headed by Dakota Miller (de Leeuw Decl. Ex. 2, at 18:6-8), and that the marketing department collectively made decisions about advertising and marketing content, (*see id.* at 82:2-13; de Leeuw Decl. Ex. 1, at 37:16-38:22), or otherwise outsourced marketing and media placement responsibilities to third-party companies. (de Leeuw Decl. Ex. 3, at 46:20-23 (testifying that Quincy's marketing team "bring[s] in other team members that are not . . . internal to Quincy, but agency resources, other designers, other specialized marketers"), 72:25-73:7 (testifying that Quincy employed an outside production team to shoot an advertisement)).  Todd Olson, Quincy's market development director, testified that he is the "main account representative or account manager for several regional retail accounts, and point on some national accounts," (de Leeuw Decl. Ex. 1, at 15:2-10), whereas Tom Dvorak, Quincy's Vice President of Sales and Marketing, leads "the production effort of [television, radio and print marketing] and the media buying for it."  (*Id.* at 21:2-19.) [10]

The undisputed record evidence supports only one conclusion: that Mr. Underwood was just one member of a larger team of Quincy employees (and, in Mr. Underwood's own—and undisputed—words, "not the sole individual") involved with editing packaging, reviewing advertisements, and translating scientific research into marketing claims.  *See* de Leeuw Decl. Ex. 2, at 82:14-83:3; de Leeuw Decl. Ex. 3, at 46:6-47:8; 53:4-10; 60:2-9; 85:2-86:25; de Leeuw Decl. Ex. 1, at 63:2-9; 78:1-25; 95:6-96:19).  This undisputed testimony precludes any issue of fact on

---

[10]     The record evidence concerning Mr. Underwood's New York conduct stands in direct contrast to circumstances where the Second Circuit has found it appropriate to exercise agency jurisdiction over an individual defendant.  For example, in *Retail Software Services, Inc. v. Lashlee*, the Second Circuit concluded that it could exercise personal jurisdiction over three individual defendants through agency jurisdiction where those individual defendants participated in meetings and negotiations with plaintiff related to the New York-based transaction at issue, prepared "a misleading offering prospectus" that was filed in New York as part of the New York-based transaction, and specifically advertised for that transaction in New York. 854 F.2d 18, 22 (2d Cir. 1988).

the question of whether Mr. Underwood functioned as the "primary actor" or "driving force" in any New York-centric activities giving rise to the NYAG's claims.

Ultimately, the NYAG is left to argue that Mr. Underwood's role as Quincy's *President* is sufficient to demonstrate the requisite "control" over the transactions at issue in the NYAG's claims.  But courts in this Circuit have consistently held that that "control," for purposes of agency jurisdiction, "cannot be shown based merely upon a title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Mountain Tobacco Co.*, 55 F. Supp. 3d at 312 (quoting *Barron Partners, LP*, 2008 WL 2902187, at *10); *see also Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 339-40 (E.D.N.Y. 2021) (declining to exercise jurisdiction over the chief executive officer, sole employee, and sole owner of corporate defendant where individual defendant was not a primary actor in the transactions at issue); *In re Lyman Good Dietary Supplements Litig.*, No. 17 Civ. 8047, 2018 WL 3733949, at *8 (S.D.N.Y. Aug. 6, 2018) (finding no specific personal jurisdiction over claims against president/CEO of vitamin company where plaintiffs alleged that he had "overall management responsibility" because such allegations showed only that he "had general authority over" the corporation, not that he was "the primary actor[] in the specific transactions giving rise to this action").

Because the record contains absolutely no evidence that Mr. Underwood was the "primary actor" or "driving force" behind the allegedly infringing advertisements specifically targeted to New York consumers, there is no material issue of fact on these issues; and the Court should grants summary judgment in Mr. Underwood's favor on the claims brought by the NYAG.[11]

---

[11]     There is also no evidence that Quincy's New York-based actions were taken "for the benefit of" Mr. Underwood—a separate, independent ground for finding no personal jurisdiction over Mr. Underwood in New York. Instead, the record makes clear that whatever actions Mr. Underwood took that related to Plaintiffs' claims were undertaken to benefit Quincy, not himself.  *See Ontel*, 899 F. Supp. at 1148 (declining to exercise agency jurisdiction over president, CEO, and owner of 100% of the capital stock in corporate defendant where there was no evidence that the corporate defendant acted for the benefit of the individual defendant "rather, there is every indication that whatever activities [the individual defendant] may have personally taken were to further [the corporate defendant's] business").

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendant Mark Underwood respectfully requests that this

Court dismiss all claims as against him brought by the New York Attorney General for lack of

personal jurisdiction.

Dated: New York, New York
       March 18, 2022

<div align="center" style="display:block"></div>

COZEN O'CONNOR

  /s/ Michael de Leeuw
Michael de Leeuw
Tamar S. Wise
175 Greenwich Street
New York, NY 10007
mdeleeuw@cozen.com
212-908-1331

*Attorneys for Defendant Mark Underwood*

---

Evidence that Mr. Underwood is a shareholder in Quincy, without more, is insufficient to satisfy this requirement. *See King County, Wash*, 769 F. Supp. 2d 309, 320 (S.D.N.Y. 2011) (rejecting argument that individual defendant's receipt of compensation based on corporate defendant's performance in New York could serve as basis for agency jurisdiction as "such an attenuated and generalized benefit is insufficient to support a theory of agency"); *see also Leger v. Kalitta*, No. 16 Civ. 6545, 2018 WL 2057142, at *5 (E.D.N.Y. Jan. 26, 2018) (declining to exercise agency jurisdiction over CEO and owner of corporate defendant absent allegations "that the company's activity was performed for the corporate officer's benefit").