UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK,<br>by LETITIA JAMES,<br>Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING<br>COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited<br>liability company;<br><br>PREVAGEN, INC., a corporation<br>d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE<br>MANUFACTURING, LLC, a limited liability<br>company;<br><br>MARK UNDERWOOD, individually and as<br>an officer of QUINCY BIOSCIENCE<br>HOLDING COMPANY, INC., QUINCY<br>BIOSCIENCE, LLC, and PREVAGEN,<br>INC.,<br><br>Defendants. | Case No. 1:17-cv-00124-LLS |

**RULE 56.1 STATEMENT IN SUPPORT OF MARK UNDERWOOD'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant Mark Underwood submits the following statement of undisputed facts in support of his motion for partial summary judgment as to the claims asserted by the New York Attorney General.

1. Mark Underwood is not a resident of New York, has never lived in New York, does not own property in New York (and never has), and does not personally transact business in New York. (Declaration of Mark Underwood dated March 18, 2022 ("Underwood Decl.") at ¶¶ 1-3.)

2. Mr. Underwood is a co-founder and President of Quincy[1]. (Compl. ¶ 13.)

3. Quincy's operations are handled by its now approximately 80 employees and governed by a board of directors comprised of a majority of independent directors. (Underwood Decl. at ¶ 4.)

4. Quincy has employed marketing professionals since its inception. (Underwood Decl. at ¶ 5.)

5. Currently, at least five senior sales and marketing executives oversee and manage Quincy's sales and marketing department, headed by Thomas Dvorak. (Underwood Decl. at ¶¶ 6, 8.) Mr. Dvorak leads "the production effort of [television, radio and print marketing] and the media buying for it." (Declaration of Michael de Leeuw dated March 18, 2022 ("de Leeuw Decl."), Ex. 1, Deposition of Todd Olson as Individual, at 21:2-19.)

6. Quincy also has a Director of Sales (Dakota Miller) as well as a Media Director (Ryan Liebl). (Underwood Decl. at ¶¶ 7, 9.)

7. Todd Olson, Quincy's market development director, is the main account representative or account manager for several regional retail accounts, and point on some national accounts. (de Leeuw Decl., Ex. 1 (Olson dep.) at 15:2-10.)

8. The media budget and spend for marketing relating to Prevagen is, and has always been, national. (Underwood Decl. at ¶ 13.)

---

[1] As used herein, the term "Quincy" refers to Quincy Bioscience Holding Company, Inc., along with its subsidiaries, including the other corporate defendants, Quincy Bioscience, LLC, Prevagen, Inc., and/or Quincy Bioscience Manufacturing, LLC.

9. The media budget for Prevagen is decided by a group of Quincy employees, including Mr. Underwood, Mr. Dvorak, and Mr. Miller, among others. (Underwood Decl. at ¶ 14.)

10. Advertising and marketing for Prevagen is national in scope. Prior to 2015, advertising and marketing for Prevagen included direct response advertising, meaning that infomercials were played on regional television and radio channels. (Underwood Decl. at ¶ 15.)

11. Prevagen infomercials have never been targeted to a specific geographic market, including New York. (Underwood Decl. at ¶ 16.)

12. To place these infomercials, Quincy's media buyers would buy spot purchases for television and radio slots on television and radio channels throughout the country. (Underwood Decl. at ¶ 17.) Quincy's marketing and advertising team would send infomercials to these channels to be aired. (*Id.*)

13. Quincy's media buyers would analyze the response to the infomercials that had aired in different markets and then decide whether the advertisements were successful enough to purchase additional spots for infomercials in those markets. (Underwood Decl. at ¶ 18.) These decisions were made by the media buyers who reported directly to Mr. Miller as part of this process. (*Id.*)

14. Mr. Underwood was not involved in directing any New York-market specific advertising for Prevagen, nor did he purchase any media spots. (Underwood Decl. at ¶¶ 19-20.)

15. Quincy does not have, and has never had, a New York-specific marketing, sales or advertising team, nor has it ever made any New York-specific marketing claims for Prevagen. (Underwood Decl. at ¶¶ 10, 21.)

16. Quincy's marketing department collectively made decisions about advertising and marketing content, (de Leeuw Decl. Ex. 2, Deposition of Mark Underwood Pursuant to Rule 30(b)(6), at 81:20-82:13; de Leeuw Decl. Ex. 1 (Olson dep.) at 37:16-38:22), or otherwise outsourced marketing and media placement responsibilities to third-party companies (de Leeuw Decl. Ex. 3, Deposition or Mark Underwood as Individual, at 46:20-23.)

17. Mr. Underwood testified that he is "part of the marketing team" at Quincy, and that Quincy's marketing is all done as a "team activity" involving the entire marketing team. (de Leeuw Decl. Ex. 3 (Underwood Individual dep.) at 46:24-47:2.)

18. Quincy developed the creatives for its advertising in-house, collaboratively among its marketing team. (de Leeuw Decl. Ex. 3 (Underwood Individual dep.) at 53:9-10.)

19. Mr. Underwood is one of the people that approved edits to Prevagen's packaging, but not the sole individual. Instead, this group included marketing and advertising personnel at Quincy, as well as counsel. (de Leeuw Decl. Ex. 3 (Underwood Individual dep.) at 60:2-9.)

20. The entire marketing and advertising team at Quincy is involved in the process of translating scientific data into marketing language. (de Leeuw Decl. Ex. 3 (Underwood Individual dep.) at 85:2-86:25.)

21. Scripts for Quincy's radio ads are drafted by a team comprised of Todd Olson, Mark Underwood, Tom Dvorak, and Dakota Miller. (de Leeuw Decl. Ex. 3 (Underwood Individual dep.) at 63:2-9.)

22. Content for Quincy's television commercials is done by a team of video production people and marketing personnel at Quincy, including Dakota Miller, Tom Dvorak, Todd Olson, and Mr. Underwood. (de Leeuw Decl. Ex. 1 (Olson dep.) at 78:1-25.)

23. Quincy's marketing team took the findings from the Madison Memory Study and helped translate them into advertising or marketing language or copy. (de Leeuw Decl. Ex. 1 (Olson dep.) at 95:6-96:19.)

24. Mr. Underwood sat for two depositions in this litigation. The first was on August 20, 2020, during which he testified as a Rule 30(b)(6) witness on behalf of Quincy. The second was on August 21, 2020, during which he testified in his individual capacity. Counsel for the New York Attorney General was present at both depositions but declined the opportunity to ask Mr. Underwood any questions. (de Leeuw Decl., Ex. 2 (Underwood 30(b)(6) dep.), at 160; de Leeuw Decl., Ex. 3 (Underwood Individual dep.) at 214.)

Dated: New York, New York
March 18, 2022

**COZEN O'CONNOR**

  /s/ Michael de Leeuw
Michael de Leeuw
Tamar S. Wise
175 Greenwich Street
New York, NY 10007
mdeleeuw@cozen.com
212-908-1331

*Attorneys for Defendant Mark Underwood*