## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF<br>NEW YORK, by LETITIA JAMES,<br>Attorney General of the State of<br>New York,<br><br>      Plaintiffs,<br><br>    v.<br><br>QUINCY BIOSCIENCE HOLDING<br>COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a<br>limited liability company;<br><br>PREVAGEN, INC., a corporation<br>d/b/a/ SUGAR RIVER<br>SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE<br>MANUFACTURING, LLC, a<br>limited liability company; and<br><br>MARK UNDERWOOD, individually<br>and as an officer of QUINCY<br>BIOSCIENCE HOLDING<br>COMPANY, INC., QUINCY<br>BIOSCIENCE, LLC, and<br>PREVAGEN, INC.,<br><br>      Defendants. | Case No. 1:17-cv-00124-LLS<br><br><br><br>**OPPOSITION TO DEFENDANT<br>MARK UNDERWOOD'S<br>PARTIAL MOTION FOR<br>SUMMARY JUDGMENT BY<br>PEOPLE OF THE STATE OF<br>NEW YORK BY LETITIA JAMES,<br>ATTORNEY GENERAL OF THE<br>STATE OF NEW YORK** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 4

I.    This Court Has Pendent Personal Jurisdiction Over the NYAG's Claims Against Underwood.... 4

    A.    The Exercise of Pendent Personal Jurisdiction is Warranted Where the Federal Claims Provide for Nationwide Service of Process and the Claims Arise From a Common Nucleus of Operative Fact. ........................................................................................ 4

    B.    Underwood Fails to Demonstrate That Pendent Personal Jurisdiction Is Inappropriate Here................................................................................................................................. 7

    C.    Underwood's Motion is a Motion to Reconsider That Should Be Denied...................... 10

II.    This Court Has Personal Jurisdiction Over the NYAG's Claims Against Underwood Based on His Contacts With the State of New York........................................................................ 11

    A.    Underwood Is Subject to Personal Jurisdiction Because of the Corporate Defendants' Activities in New York State. ......................................................................................... 13

    B.    The Corporate Defendants Are Agents of Underwood for Purposes of Personal Jurisdiction Under CPLR § 302(a). ............................................................................... 14

    C.    Underwood Transacted Business in New York, Satisfying § 302(a)(1). ........................ 18

    D.    This Court's Exercise of Jurisdiction Over Underwood Comports With Due Process..... 19

III.    The Court Should Grant Partial Summary Judgment That It Has Jurisdiction Over the NYAG's Claims Against Underwood.................................................................................... 21

CONCLUSION ................................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) ................................................. 19

*American Med. Ass'n v. United Healthcare Corp.*,
  No. 00-cv-2800, 2001 WL 863561 (S.D.N.Y. July 31, 2001) ............................. 4-6

*Arma v. Buyseasons, Inc.*,
  591 F. Supp. 2d 637 (S.D.N.Y. 2008) ................................................. 17

*AWLI Group, Inc. v. Amber Freight Shipping Lines*,
  828 F. Supp. 2d 557 (E.D.N.Y. 2011) ................................................. 16

*Bigsby v. Barclays Capital Real Estate, Inc.*,
  841 Fed. Appx. 331 (2d Cir. 2021) ................................................. 10

*Branham v. Isi Alarms, Inc.*,
  No. 12-cv-1012, 2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) ............................ 14

*Bros. Pac Four, LLC v. War Ent., LLC*,
  101 N.Y.S.3d 596 (N.Y. 1st Dep't 2019) ................................................. 20

*Canaday v. Anthem Cos.*,
  9 F.4th 392 (6th Cir. 2021) ................................................. 7-8

*Carlson v. United Natural Foods, Inc.*,
  No. C20-5476, 2021 WL 3616786 (W.D. Wash. Aug. 14, 2021) .......................... 8-10

*Carter v. Ford Motor Co.*,
  No. 19-62646, 2021 WL 1165248 (S.D. Fla. Mar. 26, 2021) ................................ 8

*Chizniak v. CertainTeed Corp.*,
  No. 17-cv-1075, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) ............................... 8-9

*Comprehensive Inv. Servs. v. Mudd*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012) ................................................. 6

*Connor v. Permanent Gen. Assur. Corp.*,
  No. 20-cv-9179, 2021 WL 6135155 (S.D. Fla. Nov. 18, 2021) .............................. 8

*Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*,
  No. 15-cv-5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) .............................. 15

*Densmore v. Colby-Sawyer College*,
    No. 15-cv-346, 2016 WL 9405316 (D. Me. Mar. 1, 2016)......................................... 9

*Deutsche Bank Secs., Inc. v. Montana Bd. of Invs.*,
    7 N.Y.3d 65 (2006)................................................................................................. 20

*Eastway Construction Corp. v. City of New York*,
    762 F.2d 243 (2d Cir. 1985)..................................................................................... 4

*Famular v. Whirlpool Corp.*,
    No. 16 Civ. 944, 2017 WL 2470844 (S.D.N.Y. Jan. 6, 2017) ................................. 8

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (2007)................................................................................................. 20

*FTC v. Am. Future Sys., Inc.*,
    No. 20-cv-2266, 2021 WL 199612 (E.D. Pa. Jan. 20, 2021) .................................. 6

*FTC v. BINT Operations, LLC*,
    No. 4:21-cv-00518 (E.D. Ark.).................................................................................. 6

*FTC v. Educare Ctr. Servs., Inc.*,
    414 F. Supp. 3d 960 (W.D. Tex. 2019) ..................................................................... 6

*FTC v. Next-Gen, Inc.*,
    No. 4:18-cv-128, 2018 WL 5310414 (W.D. Mo. 2018) ........................................... 6

*FTC v. Quincy Bioscience Holding Co.*,
    389 F. Supp. 3d 211 (S.D.N.Y. 2019)..........................................................1-2, 5, 10

*Greene v. Mizuho Bank, Ltd.*,
    289 F. Supp. 3d 870 (N.D. Ill. 2017) ....................................................................... 9

*Hargrave v. Oki Nurserym Inc.*,
    646 F.2d 716 (2d Cir. 1980)..................................................................................... 7

*In re Bard IVC*,
    No. 15-2641, 2016 WL 6393596 (D. Ariz. Oct. 27, 2016)....................................... 9

*In re Bernard L. Madoff Sec. LLC*,
    440 B.R. 274 (Bankr. S.D.N.Y. 2010) ..................................................................... 20

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    No. 16-md-02744, 2017 WL 11552971 (E.D. Mich. Apr. 19, 2017) ........................ 9

*In re Packaged Seafood Prods. Antitrust Litig.*,
    338 F. Supp. 3d 1118 (S.D. Cal. 2018) .................................................................... 4

*In re People v. Applied Card Sys., Inc.*,
  27 A.D.3d 104 (N.Y. 3d Dep't 2005), *aff'd on other grounds*, 11 N.Y.3d 105
  (2008)....................................................................................................................... 3

*In re Sumitomo Copper Litig.*,
  120 F. Supp. 2d 328 (S.D.N.Y. 2000)............................................................... 15

*Int'l Controls Corp. v. Vesco*,
  593 F.2d 166 (2d Cir. 1979)................................................................................. 7

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ...................................................................................... 19, 21

*IUE AFL-CIO Pension Fund v. Herrmann*,
  9 F.3d 1049 (2d Cir. 1993)........................................................................... 1, 4, 7

*Jian Yang Lin v. Shanghai City Corp.*,
  950 F.3d 46 (2d Cir. 2020).................................................................................. 21

*King Cnty. v. IKB Deutsche Industriebank AG*,
  769 F. Supp. 2d 309 (S.D.N.Y. 2011)............................................................... 17

*Kreutter v. McFadden Oil Corp.*,
  71 N.Y.2d 460 (N.Y. 1988)......................................................................... 13-14, 18

*La Belle Creole Int'l v. Attorney General*,
  10 N.Y.2d 192 (1961) ......................................................................................... 21

*Maersk, Inc. v. Neewra, Inc.*,
  554 F. Supp. 2d 424 (S.D.N.Y. 2008)............................................................... 15

*MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*,
  No. 05-cv-10773, 2007 WL 1489806 (S.D.N.Y. May 21, 2007)........................ 14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995).............................................................................................. 3

*Parke-Bernet Galleries, Inc. v. Franklyn*,
  26 N.Y.2d 13 (1970)............................................................................................ 19

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997).............................................................................. 11

*People v. Allied Mktg. Grp., Inc.*,
  213 A.D.2d 256 (N.Y. 1st Dep't 1995)............................................................... 14

*People v. British & Am. Cas. Co.*,
  133 Misc. 2d 352 (Sup. Ct. N.Y. Cnty. 1986) .................................................... 21

*People v. Concert Connection*,
 211 A.D.2d 310 (N.Y. 2d Dep't 1995)..............................................................14, 20

*Piccoli v. Cerra, Inc.*,
 105 N.Y.S.3d 499 (N.Y. 2d Dep't 2019)................................................................ 18

*Rational Strategies Fund v. Hill*,
 2013/651625, 2013 WL 3779731 (Sup. Ct. N.Y. Cnty. July 18, 2013)................... 15

*Renren, Inc. v. XXX*, 127 N.Y.S.3d 702 (Sup. Ct. N.Y. Cnty. 2020), *aff'd sub nom.
 Matter of Renren, Inc.*,
 192 A.D.3d 539 (N.Y. 1st Dep't 2021)................................................................... 14

*Retail Software Servs., Inc. v. Lashlee*,
 854 F.2d 18 (2d Cir. 1988)..................................................................................... 13

*Reynolds Corp. v. Nat'l Operator Servs.*,
 73 F. Supp. 2d 299 (W.D.N.Y. 1999).................................................................... 14

*Rushaid v. Pictet & Cie*,
 28 N.Y.3d 316 (2016)......................................................................................18, 20

*Seymore v. Reader's Digest Ass'n, Inc.*,
 493 F. Supp. 257 (S.D.N.Y. 1980)........................................................................... 4

*Shrader v. CSX Transp.*,
 70 F.3d 255 (2d. Cir. 1995).................................................................................... 10

*Skutnik v. Messina*,
 178 A.D.3d 744 (N.Y. 2d Dep't 2019).................................................................... 19

*State v. Colorado State Christian Coll. of Church of Inner Power, Inc.*,
 76 Misc. 2d 50 (1973)........................................................................................... 3-4

*State v. Feldman*,
 210 F. Supp. 2d 294 (S.D.N.Y. 2002)...................................................................... 3

*Tenet Solutions, LLC v. Amberstone Enterprises LLC*,
 No. 21-80649, 2021 WL 4991299 (S.D. Fla. July 16, 2021)..................................... 8

*Time, Inc. v. Simpson*,
 No. 02-cv-4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003)........................... 17

*Town of Orangetown v. Ruckelshaus*,
 740 F.2d 185 (2d Cir. 1984)..................................................................................... 4

*Travers v. FedEx Corp.*,
 No. 19-6106, 2022 WL 407398 (E.D. Pa. Feb. 10, 2022)........................................ 8

*U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*,
No. 15-cv-4961, 2020 WL 2530180 (S.D.N.Y. May 19, 2020)..............................................10

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
746 F.2d 112 (2d Cir. 1984).................................................................................................4

*Wiggins v. Bank of Am., N.A.*,
488 F. Supp. 3d 611 (S.D. Ohio Sept. 21, 2020).................................................................9

FEDERAL STATUTES

15 U.S.C.
§ 45(a)...........................................................................................................................1, 3
§ 45 et seq.................................................................................................................1-3, 5-6
§ 52................................................................................................................................1, 3

28 U.S.C. § 1367...........................................................................................................5-6

28 U.S.C. § 1367(a).........................................................................................................5

STATE STATUTES

N.Y. General Business Law
§ 349.................................................................................................................................3
§ 350.................................................................................................................................3

New York Executive Law § 63(12).................................................................................3

RULES

CPLR § 302(a)...........................................................................................11, 13-15, 20, 22

CPLR § 302(a)(1)......................................................................................11, 13, 16-18, 21

Fed. R. Civ. P. 56............................................................................................................4

Fed. R. Civ. P. 56(a).......................................................................................................2

Fed. R. Civ. P. 56(f)(1)..................................................................................................21

Plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of New York ("NYAG"), respectfully opposes the Motion for Partial Summary Judgment filed by Defendant Mark Underwood on March 18, 2022 [Dkt. No. 210] and respectfully requests that the Court grant summary judgment in the NYAG's favor.[1]

## INTRODUCTION

The NYAG brought this action against Underwood, the founder and President of Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, the "Corporate Defendants"),[2] alleging that both Underwood and the Corporate Defendants violated New York consumer protection laws in the advertising and sale of their dietary supplement, Prevagen. The NYAG's co-Plaintiff, the Federal Trade Commission ("FTC"), alleges that Underwood and the Corporate Defendants violated Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in the same advertising and sales of the same product. This case is the classic scenario for which the exercise of pendent personal jurisdiction is warranted – a case in which "the federal and state claims 'derive from a common nucleus of operative fact.'" *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Indeed, in 2019, this Court correctly concluded that it could assert personal jurisdiction over Underwood, citing *IUE AFL-CIO Pension Fund. See FTC v. Quincy Bioscience Holding Co.*, 389 F. Supp. 3d 211, 219 (S.D.N.Y. 2019).

Underwood does not dispute that the FTC and NYAG claims derive from a common nucleus of operative fact and he has already lost his legal challenge that he was not subject to

---

[1] The NYAG is respectfully seeking leave to file a cross-motion for partial summary judgment in a letter-brief filed contemporaneously herewith.

[2] Rule 56.1 Statement in Support of Mark Underwood's Motion for Partial Summary Judgment (filed Mar. 18, 2022) [Dkt. No. 212] ("Rule 56.1 Statement") ¶ 2 & n.1.

nationwide service under the FTC Act.  *FTC*, 389 F. Supp. 3d at 218-19.  When these two factors

are met, "the district court may assert personal jurisdiction over the parties to the related state law

claims even if personal jurisdiction is not otherwise available."  *Id*. at 219 (quoting *IUE AFL-CIO*

*Pension Fund*, 9 F.3d at 1056).  Underwood has cited no new facts or law to warrant revising that

result.

       Not only is Underwood's argument an untimely motion to reargue, but it is also premised

on a misunderstanding of the law.   He argues that pendent personal jurisdiction can only be

asserted over claims when the plaintiff asserts all the claims in the case – the "anchor" claims and

the claims over which the court has pendent personal jurisdiction.  (Mem. of Law in Support of

Mot. for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56(a) (filed Mar. 18, 2022) [Dkt.

No. 211] ("MOL") at 9-10.)  However, the cases Underwood cites for this proposition are mainly

inapplicable diversity cases from other states' district courts involving state law claims of residents

and non-residents of the forum state.  In cases like the present one, where all claims in the case are

premised on the same set of facts, and the "anchor" claim provides for nationwide service of

process, courts routinely exercise pendent personal jurisdiction over the claims of additional

plaintiffs.

       Underwood also argues that the NYAG does not have personal jurisdiction over him under

New York's long-arm statute, an argument the Court need not reach because it has pendent

jurisdiction.  Underwood misstates the standard for exercising personal jurisdiction under New

York's long-arm statute by arguing that Underwood must be the "primary actor" in directing

Corporate Defendants' contacts with the State of New York.  (MOL at 17.)  There is no "primary

actor" test.  The NYAG's claims against Underwood easily meet the actual standard for personal

jurisdiction under New York's long-arm statute given his own activities directed to New York as

well as those of the Corporate Defendants.

Underwood asserts that "[a]dvertising and marketing for Prevagen is national in scope." (Rule 56.1 Statement ¶ 10.)  He does not argue that the advertising at issue in the FTC's federal claims is any different from the advertising at issue in the NYAG's state law claims.  He does not argue that Prevagen was not sold to New York consumers.

In this case, the allegations made by both Plaintiffs, the FTC and NYAG, are premised on the same conduct, which is actionable under the statutes enforceable by these respective agencies. The FTC alleges that Underwood's conduct violates Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.  Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce," while Section 12 prohibits the false advertising of foods or drugs. The NYAG alleges that Underwood's conduct violates New York Executive Law § 63(12) and New York General Business Law ("GBL") §§ 349 and 350.  Section 63(12) prohibits persistent fraud or illegal conduct, with fraud defined as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions."  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  Section 350 prohibits false advertising that is "misleading in a material respect."

Case law under Section 5 of the FTC Act is given great weight in construing statutory fraud under Executive Law § 63(12) and deceptive practices and false advertising under the GBL.  *See In re People v. Applied Card Sys., Inc.*, 27 A.D.3d 104, 105 (N.Y. 3d Dep't 2005), *aff'd on other grounds*, 11 N.Y.3d 105 (2008) (explicitly "recognizing that the interpretations of the Federal Trade Commission Act (*see* 15 U.S.C. § 45 et seq.) are useful in determining the aforementioned violations under both the Executive Law and General Business Law"); *State v. Feldman*, 210 F. Supp. 2d 294, 302 (S.D.N.Y. 2002); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *State v. Colorado State Christian Coll.*

*of Church of Inner Power, Inc.*, 76 Misc. 2d 50, 54 (1973).

## LEGAL STANDARD

A party is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure only upon a demonstration "(1) that there is no genuine issue of material fact to be tried in the case and (2) that the moving party is entitled to judgment as a matter of law." *Seymore v. Reader's Digest Ass'n, Inc.*, 493 F. Supp. 257, 262 (S.D.N.Y. 1980); *see also Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir. 1984); *Town of Orangetown v. Ruckelshaus*, 740 F.2d 185, 190 (2d Cir. 1984). The moving party bears the burden of showing the absence of any material issues of fact, and in reviewing a Rule 56 motion, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

I.   **This Court Has Pendent Personal Jurisdiction Over the NYAG's Claims Against Underwood.**

   A.   **The Exercise of Pendent Personal Jurisdiction is Warranted Where the Federal Claims Provide for Nationwide Service of Process and the Claims Arise From a Common Nucleus of Operative Fact.**

As this Court has previously recognized, pursuant to the doctrine of pendent personal jurisdiction, this Court has personal jurisdiction over the NYAG's claims against Underwood. "[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *IUE AFL-CIO Pension Fund*, 9 F.3d at 1056 (internal quotations and citations omitted). *IUE AFL-CIO Pension Fund* is still good law, and Underwood cites no case that warrants disregarding its holding, which is consistent with the conclusions of other courts that have considered this issue. *See, e.g., American Med. Ass'n v. United Healthcare Corp.*, No. 00-cv-2800, 2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001); *In re*

4

*Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1173 (S.D. Cal. 2018) (exercising pendent jurisdiction over state law claims asserted by some plaintiffs because "pendent personal jurisdiction is permissible when the other Plaintiffs bring federal questions based on the same nucleus of operative fact").

Here, as this Court has previously concluded, Plaintiff FTC is asserting claims under the FTC Act, which provides for nationwide service of process, and therefore New York-specific contacts are not required to assert personal jurisdiction for the FTC's claims. *FTC*, 389 F. Supp. 3d at 216-219. This Court also correctly concluded that it could assert personal jurisdiction with respect to the NYAG's claims because "the federal and state law claims derive from the same facts concerning the alleged false advertising of Prevagen." *Id.* at 219. That conclusion was correct.

This Court encountered a similar scenario in a case brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), in which the plaintiffs asserted both ERISA claims and state law claims. *Amer. Med. Ass'n v. United HealthCare Corp.*, No. 00-cv-2800, 2001 WL 863561, at *1. The court concluded that it could exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, including claims brought by a plaintiff who *only* asserted state law claims. *Id.* at *3. Certain defendants moved to dismiss the case for lack of personal jurisdiction based on their lack of contacts with the State of New York. Because ERISA provides for nationwide service of process, the Court concluded that contacts with the United States, not specific to New York, were sufficient to establish personal jurisdiction over the ERISA claims. *Id.* at *5. The court also concluded that, "because the Court has already determined that plaintiffs' state law claims derive from a common nucleus of operative fact, the Court also has personal jurisdiction over [defendant] pursuant to 28 U.S.C. § 1367(a) for the state law claims brought

against it." *Id.* Similarly, this Court can exercise pendent personal jurisdiction over the NYAG's state law claims against Underwood.[3]

Courts have exercised pendent personal jurisdiction in cases such as the present one, in which the FTC and a state law enforcement agency jointly brought a case asserting FTC Act claims and similar state law claims. *See, e.g.*, 3/31/22 Order [Dkt. No. 29], *FTC v. BINT Operations, LLC*, No. 4:21-cv-00518-KGB (E.D. Ark.);[4] *FTC v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960, 975 n.4 (W.D. Tex. 2019); *see also FTC v. Am. Future Sys., Inc.*, No. 20-cv-2266, 2021 WL 199612, at *3 (E.D. Pa. Jan. 20, 2021) (exercising supplemental jurisdiction over state law claims parallel to FTC Act claims, based on similar analysis); *FTC v. Next-Gen, Inc.*, No. 4:18-cv-128, 2018 WL 5310414, at *3 (W.D. Mo. 2018) (same). As this Court has explained:

> [O]nce a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. A defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim.

*Comprehensive Inv. Servs. v. Mudd*, 891 F. Supp. 2d 458, 480 (S.D.N.Y. 2012) (quoting *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D.Tex. 2008)).

---

[3] Significantly, Underwood does not challenge this Court's exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which applies when the court has original jurisdiction over some claims and exercises supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" and includes "claims that involve the joinder or intervention of additional parties." This Court's conclusion that the NYAG's claims and FTC's claims are so related is unchallenged.

[4] A copy of this order is attached as Exhibit A to the Declaration of Kate Matuschak in Support of the NYAG's Opposition to Def. Underwood's Mot. for Partial Summary Judgment (May 6, 2022), which is filed contemporaneously herewith.

**B.     Underwood Fails to Demonstrate That Pendent Personal Jurisdiction Is Inappropriate Here.**

Underwood does not cite a single case that holds that pendent personal jurisdiction, in a case involving a federal statute providing for nationwide service of process, is limited to claims involving the same plaintiff. *IUE AFL-CIO Pension Fund* made clear that, in the Second Circuit, pendent personal jurisdiction over a defendant for state law claims arising out of the same nucleus of operative fact as claims under a federal statute providing for nationwide service of process is appropriate. 9 F.3d at 1056. It did not limit its holding to scenarios in which one plaintiff asserted both the federal and state law claims. *See also Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980) ("by giving jurisdiction over an 'action' to enforce a federal right Congress granted the district courts power also to consider state law claims provided they had a nucleus of pertinent facts in common with a substantial federal claim"); *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 175 (2d Cir. 1979) (finding personal jurisdiction over state law claims where federal claims were brought under the Securities and Exchange Act of 1934, which authorizes nationwide service of process).

The primary case on which Underwood relies, *Canaday v. Anthem Cos.*, is not remotely relevant because, unlike here and *IUE-AFL-CIO Pension Fund*, the federal statute invoked in *Canaday* did *not* authorize nationwide service of process. In fact, *Canaday* explicitly distinguishes *IUE-AFL-CIO Pension Fund* on this basis. 9 F.4th 392, 402 (6th Cir. 2021). Specifically, the court noted that when a court exercises personal jurisdiction over a defendant with respect to related claims that it could not adjudicate in the absence of the "anchor claim," it was "usually because the underlying federal statute . . . authorized nationwide service of process and the plaintiff filed claims related to the federal anchor claim." *Id.* (citing, inter alia, *IUE AFL-CIO Pension Fund*, 9 F.3d at 1056. It is only because the federal statute being invoked in *Canaday* did not authorize nationwide service of process that the court then needed to address whether the defendant was subject to

general or specific personal jurisdiction in the state in which the district court resided, Tennessee, over claims by non-resident plaintiffs that were based solely on conduct that occurred outside of Tennessee.  9 F.4th at 396.

Underwood acknowledges that pendent personal jurisdiction applies "where a federal statute authorizes nationwide service of process, and the federal and state-law claims derive from a common nucleus of operative fact."  (MOL at 9 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018)).)  However, ignoring that clear Second Circuit law, Underwood goes on to cite cases that purportedly stand against the proposition of "pendent party jurisdiction."  The majority of these cases are fundamentally different from the present one in that they were diversity cases in which state law was asserted.  Because there was no federal statute providing for nationwide service of process in those cases, the relevant inquiry was whether there was specific jurisdiction over the out-of-state plaintiffs' claims – i.e., whether there was a connection between those plaintiffs' claims and forum state.[5]  *See Chizniak v. CertainTeed Corp.*, No. 17-cv-1075, 2020 WL 495129, at *4 (N.D.N.Y. Jan. 30, 2020); *Famular v. Whirlpool Corp.*, No. 16 Civ. 944, 2017 WL 2470844, at *6 (S.D.N.Y. Jan. 6, 2017) (declining to exercise "non-traditional application of pendent personal jurisdiction" where foreign defendant "contests pendent personal jurisdiction with respect to state law claims brought by other plaintiffs pursuant to the laws of non-forum states"); *Travers v. FedEx Corp.*, No. 19-6106, 2022 WL 407398, at *1,*4 (E.D. Pa. Feb. 10, 2022); *Connor v. Permanent Gen. Assur. Corp.*, No. 20-cv-9179, 2021 WL 6135155, at *2 (S.D. Fla. Nov. 18, 2021); *Carter v. Ford Motor Co.*, No. 19-62646, 2021 WL 1165248, at *4-5 & n.16 (S.D. Fla. Mar. 26, 2021) (distinguishing cases in which federal statutes authorizing nationwide service of process were invoked); *Carlson v. United Natural Foods, Inc.*, No. C20-

---

[5] Underwood also cites an inapposite case in which the sole jurisdictional question was whether the court had general jurisdiction over a non-resident plaintiff's patent non-infringement and related tort claims.  *Tenet Solutions, LLC v. Amberstone Enterprises LLC*, No. 21-80649, 2021 WL 4991299 (S.D. Fla. July 16, 2021).

5476, 2021 WL 3616786 (W.D. Wash. Aug. 14, 2021); *Wiggins v. Bank of Am., N.A.*, 488 F. Supp. 3d 611, 619 (S.D. Ohio Sept. 21, 2020) ("pendent jurisdiction is most often utilized in cases where jurisdiction is based on a nationwide service of process provision not a state long-arm statute") (citing *Bilek v. Burris*, No. 3:10:13, 2010 WL 4629616, at *19 (E.D. Ky. Nov. 8, 2010)); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 871-72 (N.D. Ill. 2017); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-md-02744, 2017 WL 11552971, at *1 (E.D. Mich. Apr. 19, 2017); *In re Bard IVC*, No. 15-2641, 2016 WL 6393596, at *3-4 (D. Ariz. Oct. 27, 2016); *Densmore v. Colby-Sawyer College*, No. 15-cv-346, 2016 WL 9405316, at *3 (D. Me. Mar. 1, 2016). The due process concerns expressed in certain of these cases are premised on the fact that "exercising pendent personal jurisdiction over the Out-of-State Plaintiffs' claims, when it only has specific jurisdiction over [the resident plaintiff's] claims," would be unfair. *Chizniak*, No. 17-cv-1075, 2020 WL 495129, at *5 n.4. Here, unlike in the diversity cases, specific jurisdiction over New York-based claims is not required because nationwide service of process is authorized.

A case Underwood cites in which federal claims were asserted by different plaintiffs is also distinguishable because the federal statute at issue did not provide for nationwide service of process. (MOL at 14.) In *Carlson v. United Natural Foods, Inc.*, the plaintiffs brought suit pursuant to the Fair Labor Standards Act ("FLSA") and the defendant challenged jurisdiction over the out-of-state plaintiffs' claims. No. C20-5476, 2021 WL 3616786, at *1 (W.D. Wash. Aug. 14, 2021). The court recognized that jurisdiction could be had in the context of a statute authorizing nationwide service of process (such as the case here). *Id.* at *4. But, because the FLSA does not have such authorization, the court declined to exercise personal jurisdiction over the out-of-state plaintiffs. *Id.* (citing *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2005)). Because the FSLA does not provide for nationwide service of process, the court analyzed whether it has specific personal jurisdiction under the forum state's long-arm statute and

declined to exercise jurisdiction on that basis. *Id*. No such inquiry is needed here, where the Court has pendent personal jurisdiction as a matter of law.

C.   **Underwood's Motion is a Motion to Reconsider That Should Be Denied.**

Underwood's motion is effectively a motion for reconsideration of this Court's prior Order denying his motion to dismiss for lack of personal jurisdiction. As made clear above, Underwood has cited neither case law nor factual developments that warrant this Court revisiting the legal question that has already been decided – that Underwood is subject to pendent personal jurisdiction in this matter. *FTC*, 389 F. Supp. 3d at 219. "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." S*hrader v. CSX Transp.*, 70 F.3d 255, 257 (2d. Cir. 1995) (citations omitted). Nearly three years after this Court's ruling, Underwood returns to the Court seeking to overturn its decision without citing any relevant facts or binding case law that have emerged since this Court first addressed the issue. To the extent that any of Underwood's arguments could be considered "new," they are waived because he failed to raise them the first time, and fails to present any reason why he could not raise them until now. *See Bigsby v. Barclays Capital Real Estate, Inc.*, 841 Fed. Appx. 331, 333 & n.4 (2d Cir. 2021) (deeming arguments raised for the first time on a motion for reconsideration waived); *see also U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, No. 15-cv-4961, 2020 WL 2530180, at *8 (S.D.N.Y. May 19, 2020) (noting that a "subsequent attempt to replead the same legal claim under the same or similar facts would be precluded by the law of the case doctrine"). Underwood briefed personal jurisdiction arguments, and the NYAG opposed, in support of his April 6, 2017, motion to dismiss [Dkt. No. 37] and in his June 18, 2019 supplemental brief on his

10

motion to dismiss [Dkt. No. 65]. Now, having availed himself of discovery of the NYAG, Underwood seeks to have the NYAG start from scratch in state court.

This Court correctly concluded that it could assert personal jurisdiction over Underwood, and Underwood cites nothing that warrants disregarding its holding. There are no facts related to this Court's exercise of pendent jurisdiction that were not known at the time this Court first addressed Underwood's motion to dismiss for lack of personal jurisdiction. (*See* MOL at 9-15.)

## II.    This Court Has Personal Jurisdiction Over the NYAG's Claims Against Underwood Based on His Contacts With the State of New York.

It is unnecessary to reach the question of whether the New York long-arm statute also provides a basis for jurisdiction. *See, e.g.*, *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (a federal court applies the forum state's long-arm statute only "if the federal statute does not specifically provide for national service of process") (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)). Nevertheless, Underwood is subject to personal jurisdiction in this Court under New York's long-arm statute, CPLR § 302(a), both because of the acts of his agents, the Corporate Defendants, and his own acts. CPLR § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the State" where the cause of action arises from such activities. CPLR § 302(a)(1). Underwood has transacted business in New York through his agents, the Corporate Defendants, and through his own conduct directed to New York consumers. Further, exercising personal jurisdiction over Underwood comports with due process.

Underwood is the co-founder, President, and Chief Operating Officer of Corporate Defendants, is part of the marketing creative team, directs research programs and activities, and translates scientific data into marketing language. (Resp. to Def. Mark Underwood's Rule 56.1 Statement (filed contemporaneously herewith) ("Rule 56.1 Response" at 18-20.) He is the largest

11

individual shareholder of Quincy Bioscience Holding Company, Inc. and is on the Board of Directors. (*Id.* at 18-19.) The Corporate Defendants' chief financial officer and the directors of sales and marketing, market development, business development, systems and logistics, national accounts, human resources, technical and quality, manufacturing sciences, and media procurement all report directly to Underwood. (*Id.* at 20.) Underwood originated the idea to create Prevagen; participated in naming it and in designing and editing the product labels and packaging; and is listed as the inventor on patents for aequorin (from which Prevagen's active ingredient, apoaequorin, was derived) and apoaequorin. (*Id.* at 19.) Underwood has direct oversight over Corporate Defendants' financial condition, research and development, and sales and marketing. (*Id.* at 20.)

Underwood oversaw, and continues to oversee, the development, conduct, and evaluation of scientific research, including the Madison Memory Study, on which Defendants' advertising claims are based. (*Id.* at 20.) Underwood has participated in creating content for television and radio advertisements, including advertisements that have aired in the State of New York, and is the final decision maker on Defendants' advertising claims. (*Id.* at 19, 21.) Underwood also participated in designing and editing the product labels and packaging that were distributed in the State of New York. (*Id.* at 21.) Underwood has also appeared in infomercials that aired on local television stations in the State of New York. (*Id.* at 19-20.)

Underwood and the Corporate Defendants have marketed Prevagen nationally, including in New York, since at least ███████. (*Id.* at 21.) Commercials and infomercials for Prevagen televised nationally, including in the State of New York, have made the advertising claims at issue in this case. Defendants, including Underwood, have also marketed Prevagen on the radio since at least ████. (*Id.*) Nationally disseminated radio advertisements, including advertisements disseminated in the State of New York, made deceptive claims at issue in this case. (*Id.*)

Defendants also make advertising claims on their website, which is available to consumers in New York, that are at issue in this case. (*Id.* at 20-21.) Television and radio advertisements, including infomercials, aired on local New York television and radio stations. (*Id.* at 18-19.) As a result of Underwood's advertising claims, which are not substantiated, New Yorkers spent more than ███ ███ on Prevagen from 2015 through 2019, and sales to New Yorkers continue to this day. (*Id.* at 21-22.)

A.   **Underwood Is Subject to Personal Jurisdiction Because of the Corporate Defendants' Activities in New York State.**

Underwood argues that because he is "not a resident of New York, has never lived in New York, has never personally transacted business in New York, and owns no property in New York," he cannot be subjected to the jurisdiction of this Court. (MOL at 1.) This is incorrect. It is axiomatic under New York law that an officer or principal of a foreign corporation may be subject to personal jurisdiction under CPLR § 302(a) through the corporation's contacts with the state. In *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988), the Court found that a non-domiciliary officer or principal of a corporation may be subject to personal jurisdiction if the *corporation* engaged in "purposeful activities" in New York "for the benefit of and with the knowledge and consent of" the individual and the individual exercised "some control" over the corporation. *See also Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) ("*Kreutter* thus resolves the issue of whether a corporation can act as an agent for an individual for the purposes of § 302(a)(1)"). The *Kreutter* Court held that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter*, 71 N.Y.2d at 467. Underwood need not have ever physically entered the state of New York in order to subject themselves to the jurisdiction of the New York courts. *Id.*

13

In applying this standard, courts have regularly exercised personal jurisdiction over non-New York corporations and their principals and operating officers on the basis of corporate contacts with the state.  *See, e.g.*, *People v. Allied Mktg. Grp., Inc.*, 213 A.D.2d 256 (N.Y. 1st Dep't 1995) (Texas corporation and its president subject to personal jurisdiction); *People v. Concert Connection*, 211 A.D.2d 310, 315-16 (N.Y. 2d Dep't 1995) (Connecticut ticket broker and its principal subject to personal jurisdiction); *Branham v. Isi Alarms, Inc.*, No. 12-cv-1012, 2013 WL 4710588, at *8 (E.D.N.Y. Aug. 30, 2013) (president and sole shareholder subject to personal jurisdiction due to purposeful activity of corporation); *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, No. 05-cv-10773, 2007 WL 1489806, at *5 (S.D.N.Y. May 21, 2007) (imputing acts of the corporation in New York to the corporation's president); *Reynolds Corp. v. Nat'l Operator Servs.*, 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999).

## B.      The Corporate Defendants Are Agents of Underwood for Purposes of Personal Jurisdiction Under CPLR § 302(a).

Under CPLR § 302(a), a corporation may be an agent for a non-domiciliary individual, such as a corporate officer, when the agent "engaged in purposeful activities in [the] State in relation to [a] transaction for the benefit of and with the knowledge and consent of the [defendant] and that [the defendant] exercised some control over [the agent] in the matter."  *Kreutter*, 71 N.Y.2d at 467. In order to satisfy the element of "some control over the company in the matter," the plaintiff need not "establish a formal agency relationship" and instead needs only to "allege in sufficient detail that the defendant was *a* primary actor in the subject transaction."  *Renren, Inc. v. XXX*, 127 N.Y.S.3d 702 (Sup. Ct. N.Y. Cnty. 2020), *aff'd sub nom. Matter of Renren, Inc.*, 192 A.D.3d 539 (N.Y. 1st Dep't 2021) (emphasis added) (omitting quotations).  Courts are clear that the nondomiciliary does not need to "exercise absolute control over the decisions or acts" of the § 302(a) agent, but rather control may be shown through the nondomiciliary's ability "to influence

14

such acts or decisions by virtue of the parties' respective roles." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 446 (S.D.N.Y. 2008).

Contrary to Underwood's assertion (MOL at 17-23), the NYAG does not have to show that he was "the" primary actor or that he alone controlled the Corporate Defendants. New York courts may find personal jurisdiction over multiple officers and directors related to the same transactions under § 302(a). *See, e.g.*, *Rational Strategies Fund v. Hill*, 2013/651625, 2013 WL 3779731, at *3-4 (Sup. Ct. N.Y. Cnty. July 18, 2013) (noting that "although the alleged contacts with New York are those of [company] and not the individual defendants directly, it is unfathomable that those contacts could have been instigated without the participation of the individual defendants."); *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792, at *1, *8-9 (S.D.N.Y. Dec. 2, 2016) (finding personal jurisdiction for numerous "interconnected corporate entities or individuals" including a group of officers and directors who "had knowledge of, consented to, and exercised control over, the scheme").

Here, each of the requirements outlined by *Kreutter* is met. First, Defendants undertook multiple purposeful activities in New York, advertising in New York via television, radio, and their website, and selling ███████████ of its product to New York consumers. (Rule 56.1 Response at 19-22.) Second, the activities were for the benefit of Underwood and undertaken with his knowledge and consent. Moreover, Underwood has a large financial stake in the Corporate Defendants (*id.* at 19), and stands to benefit directly from sales of Prevagen in New York. *See, e.g.*, *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000) (finding individual defendants benefitted where they had a "substantial financial stake" in the agent company).

Finally, Underwood exhibited at least "some control" over the Corporate Defendants and was a primary actor in the transactions at issue. He was an active member of the Board of Directors and had "final say" over the Corporate Defendants' marketing. (Rule 56.1 Response at

15

18-19.)  Underwood signed off on numerous deceptive, unfair, and inappropriate advertisements that were presented to New York consumers.  (*Id.* at 18-21.)  He was knowledgeable about the purported substantiation Defendants relied upon for their advertising claims, and actively participated in developing it.  (*Id.* at 20.)

Once again, Underwood cites a number of cases that serve only to underscore the NYAG's point.  (MOL at 19.)  For example, he cites *AWLI Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557 (E.D.N.Y. 2011), for the proposition that "a national advertising campaign that 'equally targets New York consumers and all other consumers throughout the [country] means, by definition, that they are not directly soliciting New Yorkers,' and cannot serve as a basis for finding specific personal jurisdiction pursuant to CPLR § 302(a)(1)."  (MOL at 19 (quoting *AWLI*, 828 F. Supp. 2d at 566).  Underwood neglects to note that, in *AWLI*, the plaintiff had not alleged *any* business transactions in New York – only that a nationally-available website solicited business transactions.  *AWLI*, 828 F. Supp. 2d at 565-66.  Indeed, the defendant had submitted an affidavit from the defendant's owner "expressly stating that (1) it has not sold its services to any New York customers; (2) it has no customers in New York; and (3) it has derived no revenue from the state." *Id.* at 566.  The court did recognize the proper standard for specific personal jurisdiction, which is easily met here:

> A single transaction may suffice for personal jurisdiction under § 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999); *Deutsche Bank Sec., Inc. v Montana Bd. of Invs*., 21 A.D.3d 90, 93-94, 797 N.Y.S.2d 439, 442 (1st Dep't 2005) (quoting *Kreutter v McFadden Oil Corp*., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988)) (stating that Section 302(a)(1) "is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York' as long as the requisite purposeful activities and the connection between the activities and the transaction are shown.").

*Id.* at 565.

The other cases cited by Underwood are distinguishable because the plaintiffs in those cases failed to show the requisite level of involvement by the individual defendant. (*See* MOL at 19 (citing *Rosenshine v. A Meshi Cosmetics Indus., Ltd.*, No. 18-cv-3572, 2021 WL 4487840, at *2 (E.D.N.Y. Sept. 30, 2021) (noting that "in cases involving corporate defendants, the court's exercise of personal jurisdiction over a corporation's officer can be predicated on a showing that the officer engaged in personal conduct that is related to the transaction that underlines the claim" and noting that plaintiffs "conclusory and vague allegations . . . fail to describe any of the defendants' specific roles") (internal quotations and citation omitted); *King Cnty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 320-21 (S.D.N.Y. 2011) (noting that plaintiffs had not alleged that individual defendant had control over any activities related to their litigation claims); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647-48 (S.D.N.Y. 2008) (same); *Time, Inc. v. Simpson*, No. 02-cv-4917, 2003 WL 23018890, at *6 (S.D.N.Y. Dec. 22, 2003) (plaintiff presented no evidence that individual defendant "exercised control over the [alleged agent vendor] or had any personal involvement in any decision made by or actions taken by the vendor").

Here, by contrast, Underwood participated in developing substantiation for claims made in advertising directed to New York; participated in drafting and approving advertising that was disseminated in New York; and, through his agent Corporate Defendants (over whom he exercises control), sold more than ███████ of Prevagen to New Yorkers. (*See* Rule 56.1 Response at 18-22.) Underwood also transacted business in New York for purposes of § 302(a)(1) personally and through his agents, the Corporate Defendants. For instance, Defendants' interrogatory responses show that an infomercial in which Underwood made advertising claims at issue in this case appeared on the following television stations during a one-year period:



17



(Matuschak Decl. Ex. C (10/23/20 Second Supplemental Interrogatory Responses) Ex. A; *see also* Rule 56.1 Response at 19-20.)

### C.   Underwood Transacted Business in New York, Satisfying § 302(a)(1).

CPLR § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the State," where the cause of action arose from the action.  Courts conduct a two-prong inquiry to find personal jurisdiction under § 302(a)(1): "[u]nder the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016).  Here, both prongs are met.

The first prong – "sufficient activities to have transacted business" – is "determined under the totality of the circumstances," and "is met so long as the defendant's activities here were 'purposeful.'" *Piccoli v. Cerra, Inc.*, 105 N.Y.S.3d 499, 502 (N.Y. 2d Dep't 2019).  New York courts have held that § 302(a)(1) is a single-act statute, meaning that "proof of one transaction in New York"—even through a corporate agent—"is sufficient to invoke jurisdiction, even though the defendant never enters New York." *Kreutter*, 71 N.Y.2d at 467.

The second prong requires that "there exists a substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) (internal quotation marks and citations omitted). This requires "merely a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Skutnik v. Messina*, 178 A.D.3d 744, 645 (N.Y. 2d Dep't 2019).

The NYAG's claims in this litigation are premised on the fact that Defendants made deceptive advertising claims in New York and elsewhere. Based on those claims, Defendants have sold more than ███████ worth of Prevagen to New York consumers. The NYAG is seeking restitution for those consumers as well as disgorgement of ill-gotten gains from sales in the State of New York. (*See* Complaint (filed Jan. 9, 2017) [Dkt. No. 1] at 30-31 (Prayer for Relief).) Additionally, the NYAG is seeking civil penalties based on each instance of deceptive advertising in the State of New York. (*See id.*) There is, therefore, a substantial nexus between Underwood's targeting of advertising to New Yorkers, his sales of Prevagen to New Yorkers, and the NYAG's claims in this case.

**D.    This Court's Exercise of Jurisdiction Over Underwood Comports With Due Process.**

Jurisdiction over Underwood comports with due process. Due process is met when a nondomiciliary defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). A non-domiciliary has minimum contacts when he has "purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Parke-Bernet Galleries, Inc. v. Franklin*, 26 N.Y.2d 13, 17-18 (1970) (internal quotation

19

marks and citations omitted); *see also Deutsche Bank Secs., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006); *Concert Connection*, 211 A.D.2d at 315.

Due process is typically satisfied where, as here, there is jurisdiction under CPLR § 302(a). *In re Bernard L. Madoff Sec. LLC*, 440 B.R. 274, 280 (Bankr. S.D.N.Y. 2010) ("As section 302 of the CPLR does not reach as far as the Constitution permits, due process will be satisfied if the New York long arm statute is satisfied."). Indeed, it is rare that a case would be permitted under New York's long-arm statute but denied on due process grounds. *Rushaid*, 28 N.Y.3d at 331. As described above, Underwood, both individually and through his agents the Corporate defendants, had substantial contacts with New York. Once the "minimum contacts" element is satisfied, the "burden . . . shift[s] to defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bros. Pac Four, LLC v. War Ent., LLC*, 101 N.Y.S.3d 596, 597 (N.Y. 1st Dep't 2019) (internal citation and quotation omitted).

The test of reasonableness depends on "the burden on the defendant, the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies." *Rushaid*, 28 N.Y.3d at 331 (citation omitted). These factors weigh heavily in favor of the NYAG, especially given the Corporate Defendants' advertising and sales in New York and Underwood's role in that conduct.

"So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 384-85 (2007) (quoting *Kreutter*, 71 N.Y.2d at 466). In determining whether a non-resident has sufficient "minimum contacts" with the State such that the exercise of

personal jurisdiction "does not offend traditional notions of fair play and substantial justice" (*Int'l Shoe Co.*, 326 U.S. at 316 (citations omitted)), courts consider the nature of the defendants' contacts with the forum state as well as the State's interest in adjudicating the dispute.  Because New York has a substantial interest in protecting its consumers from illegal, fraudulent, and deceptive business practices, the standard for exercising jurisdiction is more relaxed than if a private litigant had brought suit.  *See La Belle Creole Int'l v. Attorney General*, 10 N.Y.2d 192, 197-98 (1961) ("[T]he right of a litigant to bring an action against a foreign corporation is not necessarily the measure of the State's power to regulate it . . . . Where the purpose of the proceeding is to protect the citizens of the State from potentially dangerous consequences, less is required than might otherwise be the case.) (citations omitted); *People v. British & Am. Cas. Co.*, 133 Misc. 2d 352, 356 (Sup. Ct. N.Y. Cnty. 1986).

There can be no doubt that the exercise of personal jurisdiction over Underwood meets the standards of CPLR § 302(a)(1) and passes muster under the Due Process Clause.  Underwood, an officer and director of the Corporate Defendants, controlled and had the authority to control the deceptive conduct alleged in this proceeding, including their direct participation in conduct that was directed throughout the United States, including New York, that resulted in sales throughout the United States, including to New York consumers.

### III.   The Court Should Grant Partial Summary Judgment That It Has Jurisdiction Over the NYAG's Claims Against Underwood.

As requested in the NYAG's letter-motion for leave to file for partial summary judgment, filed contemporaneously herewith, the Court should grant partial summary judgment in the NYAG's favor.  *See* Fed. R. Civ. P. 56(f)(1) (court may "grant summary judgment for a nonmovant" upon notice and an opportunity to be heard); *Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 49 (2d Cir. 2020) ("District courts have the discretion to grant summary judgment sua

sponte, even without notice in certain circumstances.") (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)).

Summary judgment in the NYAG's favor is warranted for two reasons.  First, the question of pendent personal jurisdiction has been resolved as a matter of law.  *See supra* Part I.  The NYAG is therefore entitled to judgment, as a matter of law, that this Court has personal jurisdiction over the NYAG's claims against Underwood.

Second, even if the Court needed to meet the requirements of New York's long-arm statute (which it does not), the NYAG has presented sufficient evidence of Underwood's contacts with the State to warrant the exercise of specific personal jurisdiction pursuant to New York CPLR § 302(a). (*See* Rule 56.1 Response.)  Based on his misunderstanding of the law, Underwood disputes the meaning of those contacts (*see* MOL at 1, 5-7), but he cannot credibly dispute those facts.  As a result, any dispute of fact with respect to Underwood's contacts is not "genuine."

There is reason to be concerned that Underwood will continue trying to raise this argument, in a newly mutated form, and that this will lead to unnecessary evidence, testimony, objections, motions in limine, briefing, and/or disputes during trial.  Underwood already lost this issue once and has re-raised old arguments, already briefed by the parties and decided by the Court, without adequate justification.  (*See supra* Part I.C.)  This issue should be definitively laid to rest.  The NYAG respectfully suggests that the Court's Order also: (1) declare that it is the "law of the case" that it has personal jurisdiction over Underwood for the NYAG's claims; (2) preclude Underwood from introducing evidence or examining or cross-examining witnesses concerning his contacts with the State of New York; and/or (3) otherwise preclude Underwood from re-raising this issue.

## CONCLUSION

For the foregoing reasons, the NYAG respectfully requests that Underwood's motion for summary judgment be denied.  The NYAG further respectfully requests that the Court grant

summary judgment in the NYAG's favor, confirming its personal jurisdiction over Underwood for the NYAG's claims.

Date:   May 6, 2022                          Respectfully submitted,

                                             LETITIA JAMES
                                             Attorney General of the State of New York


                                             ___/s/ *Kate Matuschak*_____
                                             Jane M. Azia
                                             Bureau Chief
                                             Kate Matuschak
                                             Assistant Attorney General
                                             28 Liberty Street
                                             New York, NY 10005
                                             Tel: (212) 416-6189; Fax: (212) 4416-2003
                                             Email: kate.matuschak@ag.ny.gov

## CERTIFICATE OF SERVICE

I certify that on this 6th day of May 2022, I served via ECF the foregoing Opposition to Defendant Mark Underwood's Partial Motion for Summary Judgment by Plaintiff People of the State of New York, by Letitia James, Attorney General of the State of New York, to the attorneys of record on the Service List below.

                                                  */s/ Kate Matuschak*
                                                 Kate Matuschak

Geoffrey W. Castello, III.
Glenn T. Graham
Jaclyn M. Metzinger
Kelley Drye & Warren LLP
3 WTC, 175 Greenwich St.
New York, NY 10007
(212) 808-7800
gcastello@kelleydrye.com
ggraham@kelleydrye.com
jmetzinger@kelleydrye.com

*Attorneys for Quincy Bioscience*
*Holding Co., Inc., Quincy Bioscience, LLC,*
*Prevagen Inc., Quincy Bioscience*
*Manufacturing, LLC*

Michael B. de Leeuw
Tamar S. Wise
Cozen O'Connor
3 WTC, 175 Greenwich St
55th Floor
New York, NY 10007
(212) 908-1331
mdeleeuw@cozen.com
twise@cozen.com

*Attorneys for Mark Underwood*

John H. Villafranco
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C.  20007
(202) 342-8423
jvillafranco@kelleydrye.com

*Attorneys for Quincy Bioscience*
*Holding Co., Inc., Quincy Bioscience, LLC,*
*Prevagen Inc., Quincy Bioscience*
*Manufacturing, LLC*

John B. Kelly
Wachtell, Lipton, Rosen & Katz
51 W. 52nd Street
New York, NY 10019
(212) 413-1000
jbkelly@wlrk.com

*Attorney for Mark Underwood*

24

Annette Soberats
Edward Glennon
Andrew Wone
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20850
(202) 326-2921
asoberats@ftc.gov
eglennon@ftc.gov
awone@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*