# Exhibit E

# In the Matter of:

# FTC, et al. v. Quincy Bioscience Holding, et al.

*August 20, 2020*
*Mark Underwood - 30(b)(6) - Confidential*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

## 1

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3
 4   FEDERAL TRADE COMMISSION and    )
 5   THE PEOPLE OF THE STATE OF      )
 6   NEW YORK, by LETITIA JAMES,     ) Matter No.
 7   Attorney General of the State   ) 1:17-cv-00124-LLS
 8   of New York,                    ) CONFIDENTIAL
 9              Plaintiffs,          ) ATTORNEYS' EYES
10         v.                        ) ONLY
11   QUINCY BIOSCIENCE HOLDING       )
12   COMPANY, et al.,                )
13              Defendants.          )
14   -----------------------------------)
15
16                          Thursday, August 20, 2020
17                          Via Zoom
18
19         The above-entitled matter came on for the
20   30(b)(6) deposition of MARK YANCEY UNDERWOOD, pursuant
21   to notice, at 9:43 a.m., Central time; 10:43 a.m.,
22   Eastern time.
23
24
25
```

## 2

```
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE FEDERAL TRADE COMMISSION:
 4         ANNETTE SOBERATS, ESQ.
 5         MICHELLE RUSK, ESQ.
 6         EDWARD GLENNON, ESQ.
 7         Federal Trade Commission
 8         600 Pennsylvania Avenue, N.W.
 9         Washington, DC 20850
10         (202) 326-2921
11         asoberats@ftc.gov
12
13
14   ON BEHALF OF THE STATE OF NEW YORK:
15         KATE MATUSCHAK, ESQ.
16         Assistant Attorney General for the
17           State of New York
18         Consumer Frauds and Protection Bureau
19         120 Broadway
20         New York, New York 10271
21         (212) 416-6189
22         kate.matuschak@ag.ny.gov
23
24
25
```

## 3

```
 1   ON BEHALF OF CORPORATE DEFENDANTS:
 2         GEOFFREY W. CASTELLO, ESQ.
 3         JACLYN M. METZINGER, ESQ.
 4         GLENN T. GRAHAM, ESQ.
 5         Kelley Drye & Warren
 6         One Jefferson Road
 7         Second Floor
 8         Parsippany, New Jersey 07054
 9         (973) 503-5922
10         gcastello@kelleydrye.com
11
12
13   ON BEHALF OF THE DEFENDANT UNDERWOOD:
14         MICHAEL B. DeLEEUW, ESQ.
15         TAMAR WISE, ESQ.
16         Cozen O'Connor
17         45 Broadway
18         16th Floor
19         New York, New York 10006
20         (212) 908-1331
21         mdeleeuw@cozen.com
22
23
24   ALSO PRESENT:
25         William Ducklow, FTC
```

## 4

```
 1                  FEDERAL TRADE COMMISSION
 2                         I N D E X
 3
 4   WITNESS:                                   EXAMINATION:
 5   MARK YANCEY UNDERWOOD
 6   BY MS. SOBERATS:                                    9
 7
 8
 9   EXHIBITS          DESCRIPTION              FOR ID
10   Number MU-1   Underwood 30(b)(6) Notice       13
                   of Deposition
11
     Number MU-2   11/13/13 Miller Email Re:       17
12                 Verbatims #3
13   Number MU-3   Complaint Exhibits              24
14   Number MU-4   Goodman Draft Report            28
15   Number MU-5   Talati/FDA Letter               43
16   Number MU-6   Custom Biologics Animal ID      46
17   Number MU-7   Custom Biologics Report         50
18   Number MU-8   September 2012 Helina           56
                   Communication
19
     Number MU-9   Helina Abstract                 61
20
     Number MU-10  Pencharz Letter                 72
21
     Number MU-11  2/17/16 Talati/FDA Letter       76
22
     Number MU-12  12/22/12 Underwood/Beaman       79
23                 Summary Email
24   Number MU-13  Collins v. Quincy               92
                   Bioscience Settlement
25
```

1 (Pages 1 to 4)

97

1  Q. Let's look at the disclosure that appears at the
2  bottom of this chart. It states, "In a computer
3  assessed, double-blinded, placebo-controlled study,
4  Prevagen improved recall tasks in subjects."
5      Mr. Underwood, when we met with you and your
6  attorneys in April of 2016, you explained that this
7  chart and the disclosure that I have just read to you
8  was a reference to the Madison Memory Study, and
9  specifically that it was depicting results for the
10 Groton Maze Recall Complete task of the Madison Memory
11 Study. Is that correct?
12     MR. CASTELLO: Objection.
13     THE WITNESS: Yes. So the GML data -- I believe
14 the AD8 score 0 to 2, more specifically.
15     BY MS. SOBERATS:
16 Q. Okay, when you say GML, what does that stand
17 for?
18 A. Oh, I'm sorry, you said Groton Maze Learning,
19 that's the acronym for Groton Maze Learning. GML,
20 sorry.
21 Q. Okay, so this depicts the results for the Groton
22 Maze Learning, not the Groton Maze Recall?
23 A. Oh, you know, my mistake. You could be correct.
24 Q. Okay. And does this chart show the results just
25 for the treatment group of the Madison Memory Study?

98

1  A. Yes.
2  Q. Why does it not show the results of the
3  treatment group versus placebo?
4      MR. CASTELLO: Objection.
5      THE WITNESS: Well, the entire context of the
6  study has always been on our website, with the posting
7  of the Madison Memory Study results. There's simply not
8  room in the graphic to illustrate all the details.
9      BY MS. SOBERATS:
10 Q. Okay. And let's look at the x axis. I see
11 depictions here for 8 days, 30 and 90. The Madison
12 Memory Study had five time points, correct?
13 A. Yes.
14 Q. Days 0, 8, 30, 60 and 90?
15 A. That's correct.
16 Q. Okay. So why is the data for day 60 not
17 depicted on the x axis in this graphic?
18 A. Same reason as the day 0 is not there. It's not
19 meaningful to the viewer, if you will. Of course, at
20 day 0, there's no improvement to be expected. The
21 consumers have three basic questions. For one, how long
22 is your study? The study was 90 days. Two, what's it
23 going to do for me quickly? Hence the eight-day result.
24 And since their purchase is based off of buying a
25 one-month supply, the 30-day data was included. So it's

99

1  really as much as you can fit on the graph, or in this
2  format, without becoming too complex, and that
3  complexity is provided in the context of the entire
4  study, which has always been posted on our own website.
5  Q. And who made the decision to leave out the day
6  60 data from this graphic?
7      MR. CASTELLO: Objection.
8      THE WITNESS: Our marketing team.
9      BY MS. SOBERATS:
10 Q. Were you involved in those discussions?
11 A. Yes.
12 [redacted]
13 [redacted]
14 [redacted]
15 [redacted]
16 [redacted]
17 [redacted]
18 [redacted]
19 [redacted]
20 [redacted]
21     MR. CASTELLO: Before the witness answers,
22 Annette, can you just tell me which interrogatory and
23 which one of the responses, because there were some
24 supplemental responses in addition to the original
25 response.

100

1      MS. SOBERATS: I would have to go back. I don't
2  actually have that information readily available, Geoff.
3  Just a moment.
4      THE WITNESS: And could I ask, the entirety of
5  this document, which document is this?
6      MS. SOBERATS: As I indicated earlier, this is
7  the complaint that Plaintiffs filed in this case.
8      THE WITNESS: Okay, I'm sorry. I -- I have to
9  admit, when I see one legal document, they all tend to
10 look a little bit alike. Let's see here.
11     MR. CASTELLO: Just for my own edification, I'm
12 sorry, if the court reporter can just read back the
13 question. Annette, the witness can answer the question.
14     MS. SOBERATS: Okay.
15     MR. CASTELLO: My struggle is just that because
16 you referenced the interrogatory responses, I think it's
17 fair to for us to know which one it is. You can make a
18 representation that you've summarized one of the
19 interrogatory responses, but for the record, without
20 that type of a representation and caveat, you know, if
21 you're going to reference a specific interrogatory
22 response, I would just ask if you could identify it so
23 we'll make certain that we're on the same page.
24     MS. SOBERATS: Sure. And I apologize for not
25 having the reference available.

157

1   Q. Okay. It does have a UPC number, correct?
2   A. In typical printing it would, yeah. UPC is
3   applied at the printer.
4   Q. Okay.
5   A. Yeah.
6   Q. And if you can please look at the three -- the
7   three-bar chart here under Clinically Tested.
8   A. Um-hmm.
9   Q. Can you tell me in this chart what outcome from
10  the Madison Memory Study is this chart based on?
11  A. Based on our previous conversations, I'm not
12  certain.
13  Q. And who created this three-bar chart?
14  A. I don't know the date of the packaging. There's
15  no version number on what you've provided. So I don't
16  know when this was -- and by the way, this is just the
17  artwork with the bleed and the varnish on it for the
18  printer to use. So I don't know the exact time frame.
19  Q. Okay. Mr. Castello, Mr. Underwood was
20  designated as the corporate representative for topic C,
21  which pertains to advertising, that would include this
22  bar chart which was included in Prevagen's advertising,
23  and I've been unable to get any answers from him about
24  what outcome from the Madison Memory Study this bar
25  chart is based on. He's unable to tell me who created

158

1   this bar chart. And my colleagues tried to elicit this
2   information from Mr. Olson, who has marketing
3   responsibilities at Quincy, and from Kenneth Lerner, who
4   was, as you know, the principal investigator of the
5   Madison Memory Study, and no witness has been able to
6   answer these very basic questions about this chart which
7   was prominently featured in advertising for Prevagen.
8       So we will need to follow up on this issue.
9   We've tried multiple ways and multiple times and we're
10  simply not getting the information that should be
11  readily forthcoming from the corporate representative
12  and the other witnesses that we have deposed during fact
13  discovery.
14      MR. CASTELLO: If you wanted testimony from a
15  corporation through Rule 30(b)(6) to this level of
16  granularity, there should be a topic that sets forth,
17  with specificity, exactly what you intended to do by
18  using that chart or whatever iteration. So I disagree.
19  I would be happy to talk to you in a meet and confer
20  context to see what we can do to provide that
21  information, but reading this 30(b)(6) notice that has
22  been marked as this deposition today, at that level of
23  granularity, it is not -- it is not called for in the
24  topic list.
25      MS. SOBERATS: And I would refer you,

159

1   Mr. Castello, to the very last sentence of topic C,
2   which very clearly states that it includes the creation,
3   development, revision, evaluation and approval of the
4   specific advertising and marketing materials attached as
5   exhibits to the complaint, and as I've established in my
6   questioning, this bar chart appeared in the complaint.
7   We had excerpts of it on multiple pages of the
8   complaint, and it was also attached in exhibits to the
9   complaint.
10      And we've also asked for this information -- we
11  have asked for information about this bar chart in the
12  interrogatories that we served on the Defendants.
13  Presumably the corporate representative would have
14  reviewed those interrogatory responses and been on
15  notice that we would be asking about this chart.
16      MR. CASTELLO: We are in disagreement, but as I
17  said, we'll meet and confer and attempt to come to a
18  resolution.
19      MS. SOBERATS: Okay. Thank you.
20      I would also like to note that we are going to
21  have to keep this deposition open, since Mr. Underwood
22  did not answer my questions about research at Quincy
23  that was started after the Madison Memory Study. Those
24  questions pertain to an ongoing dispute that is
25  currently being briefed in the Southern District of New

160

1   York, and so we will keep this deposition open pending
2   resolution of that discovery dispute.
3       MR. CASTELLO: Just for the record, my silence
4   is not accepted as an admission that Plaintiffs are
5   entitled to it. It is the company's, the Defendants'
6   position that, in fact, the Plaintiffs are not entitled
7   to that information, but yes, it is the subject of an
8   open dispute.
9       MS. SOBERATS: Thank you.
10      Kate, do you have any questions that you would
11  like to ask of the witness?
12      MS. MATUSCHAK: I have no questions today, but I
13  may have questions if and when this deposition resumes
14  after our discovery dispute is resolved.
15      MS. SOBERATS: Geoff, do you -- Mr. Castello, do
16  you have any redirect?
17      MR. CASTELLO: No.
18      MS. SOBERATS: Okay. Well, that concludes our
19  30(b)(6) deposition, but as I said, we will keep it open
20  pending resolution of the ongoing discovery dispute.
21      MR. CASTELLO: And I'll refer to my most recent
22  statement on that topic.
23      MR. DELEEUW: Could you guys say it one more
24  time?
25      VIDEO TECHNICIAN: This concludes today's