

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

JANE M. AZIA, CHIEF
CONSUMER FRAUDS AND PROTECTION BUREAU
KATE MATUSCHAK
ASSISTANT ATTORNEY GENERAL
E-MAIL: Kate.Matuschak@ag.ny.gov
(212) 416-6189

June 16, 2022

**By ECF**

Hon. Louis L. Stanton, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *FTC et al. v. Quincy Bioscience Holding Co., Inc. et al.* (No. 17-cv-00124-LLS)

Dear Judge Stanton:

    Plaintiffs the People of the State of New York, by Letitia James, Attorney General of the State of New York ("NYAG") and Federal Trade Commission ("FTC") respectfully submit this letter in opposition to the letter-motion to seal submitted by Corporate Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, "Defendants") (filed Apr. 14, 2022) [Dkt. No. 219] ("Letter-Motion"). Because Defendants have articulated no legitimate basis for withholding the designated information from public view, Defendants' request should be denied and the sealed materials should be made public in their entirety.

    There is a strong presumption of public access to federal court filings under the common law and the First Amendment and any sealing should be narrowly tailored. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120-21 (2d Cir. 2006); *see also In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (sealing requires "particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test"). A party wishing to seal materials has the burden to show good cause for concealing the material from the public, and that reason must outweigh the presumption of public access. *See id*. Defendants concede that every document they propose to seal is a "judicial document[] entitled to a strong presumption of access." (Letter-Motion at 3 (citing *Lugosch*, 435 F.3d at 121).) Indeed, the presumption of access is at its "highest:

'documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.'" *Lugosch*, 435 F.3d at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Defendants' request to seal should be denied for three reasons.

First, Defendants have made inadequate effort to narrowly tailor their proposed redactions. For example, they seek to seal each of their expert reports in their entirety because they purportedly "includ[e] confidential information regarding the studies supporting the Challenged Claims." (Letter-Motion at 2.) These expert reports address a broad range of issues, including the experts' background and qualifications; descriptions of what they were asked to do in this matter and the methods by which they formed their opinions; and general discussion of apoaequorin, vitamin D, memory, and cognition in aging adults. Defendants even seek to seal the lists of materials relied upon and the curricula vitae of each of their experts.

Second, much of what Defendants have designated as confidential is in the public domain. For example, Defendants seek to seal the protocol for their primary human clinical study, the Madison Memory Study (Ex. R to the Underwood Declaration), even though many of the protocol's elements have been described verbatim, or in similar language, in papers that Defendants have published on their websites. (*See, e.g.*, Moran et al., *Effects of a Supplement Containing Apoaequorin on Verbal Learning in Older Adults in the Community*, Advances (Winter 2016) (attached hereto as Exhibit A) at 3.)

Third, Defendants have not articulated any actual harm from disclosure of the materials they have designated. For example, they fail to explain how a discussion of an email about working over a long weekend (Graham Decl. Ex. A) or the fact that the Madison Memory Study protocol was an exhibit to a deposition (*Id.* Ex. S at 4:13-14; *id.* Ex. Y at 4:19) would cause harm. They also apparently seek to shield the number of analyses that were conducted on the Madison Memory Study data – a post hoc analysis that goes to a fundamental flaw in the conduct of that study – by selectively redacting the number of analyses in one part of a deposition transcript but leaving it unredacted elsewhere. (*See id.* Ex. U at 204:2; *id.* at 203:16-18.)

Defendants cite one case in which the confidential marketing strategies of litigants were protected due to the potential for competitive harm. (Letter-Motion at 3.)[1] In that case, the documents in question contained marketing trade secrets that were "highly proprietary" and were allegedly wrongfully appropriated by former employees of the party seeking to seal those documents. *GoSMiLE, Inc. v. D. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649 (S.D.N.Y. 2011). In contrast, the purported "marketing" material cited here is neither proprietary nor has anything to do with marketing. For example, Defendants assert that the number of post hoc analyses done on the Madison Memory Study data relates to "developing marketing strategies." (Letter-Motion at 3.) Defendants fail to explain how the number of post hoc analyses relates to development of marketing strategies. Defendants also fail to explain how the protocol for their clinical study constitutes a "methodolog[y] employed in . . . marketing

---

[1] Defendants also cite *Kewazinga Corp. v. Microsoft Corp.* in support of sealing marketing materials, but that case was actually addressing business models (e.g., sources of revenue), settlement agreements, and technical information. No. 1:18-cv-4500-GHW, 2021 WL 1222122, at *6-7 (S.D.N.Y. Mar. 31, 2021).

Matuschak and Wone to Hon. Louis L. Stanton, U.S.D.J.
Page 3

Prevagen." (*Id.* at 1.)  Similarly, there is nothing related to "marketing strategy" in the redacted testimony of Defendant Mark Underwood, which simply discusses language that appeared in public advertisements and his own confusion about which data was reflected in those advertisements. (*See* Graham Decl. Ex. C at 57:8-59:25.)

In support of their Letter-Motion, Defendants provide only a generalized assertion that the "public disclosure of the Confidential materials would harm Quincy's commercial position by providing its competitors with access to marketing strategies and data that Quincy has expended significant funds to develop."  Defendants do not identify any competitors or articulate how disclosure of the information would cause any harm.  Nor could they, since the material they are seeking to hide from public disclosure could only harm their position that the advertising claims made in this case have adequate substantiation.  However, "the fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order." *Parmalat*, 258 F.R.D. at 244; *see also Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98 Civ. 8721 (LAK), 2001 WL 225040, at *2 (S.D.N.Y. Mar. 7, 2001) (denying motion to remove documents from the public court file where the movant's "real concern is the possibility of public embarrassment").

In contrast, the cases cited by Defendants illustrate the categories of proprietary information that is commonly sealed – none of which apply here. *See, e.g.*, *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 1:21-cv-11003-LTS, 2022 WL 890184, at *3 (S.D.N.Y. Mar. 25, 2022) (supply agreements that could be used to compete with plaintiff in the market or to negotiate future supply agreements with plaintiff); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kenectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 4706199, at *2 (S.D.N.Y. Oct. 8, 2021) (ongoing research and development and potential future design methods); *Playtex Prod., LLC v. Munchkin, Inc.*, No. 14-cv-1308 (RJS), 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (product development specifics).

Importantly, the material Defendants seek to seal bears on fundamental issues in this case.  Defendants have filed this material in support of their summary judgment motion, the heart of which relates to the advertising of Prevagen; purported scientific substantiation for Defendants' advertising claims; both sides' expert opinions on these materials; and Defendants' marketing practices.  Such material should not be shielded from public view. *See Lugosch*, 435 F.3d at 121 ("[S]ummary judgment is an adjudication, and an 'adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'") (quoting *Joy*, 692 F.2d at 893; *cf. Diageo v. W.J. Deutsch & Sons*, No. 17-cv-04259-LLS, 2020 WL 1037809, at *1 (S.D.N.Y. Feb. 13, 2020) (denying request to seal or redact material related to subject matter to be considered at trial).

Because Defendants have failed to narrowly identify the material that should be protected from disclosure and failed to articulate appropriate justification for any of their proposed sealings, their motion to seal should be denied.  Plaintiffs respectfully request that the materials submitted at Docket Nos. 225 and 226 (Underwood and Graham Declarations and their exhibits) be unsealed in their entirety, and available for public scrutiny, without further delay.

Matuschak and Wone to Hon. Louis L. Stanton, U.S.D.J.
Page 4

Respectfully submitted,

| | |
|---|---|
| /s/ *Kate Matuschak* | /s/ *Andrew Wone* |
| Kate Matuschak | Andrew Wone |
| Assistant Attorney General | Federal Trade Commission |
| New York State Office of the Attorney General | |

Attachment

cc: Counsel of Record (via ECF)