**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK,<br>by LETITIA JAMES,<br>Attorney General of the State of New York,<br><br>     Plaintiffs,<br><br>     v.<br><br>QUINCY BIOSCIENCE HOLDING<br>COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited<br>liability company;<br><br>PREVAGEN, INC., a corporation<br>d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE<br>MANUFACTURING, LLC, a limited liability<br>company;<br><br>MARK UNDERWOOD, individually and as<br>an officer of QUINCY BIOSCIENCE<br>HOLDING COMPANY, INC., QUINCY<br>BIOSCIENCE, LLC, and PREVAGEN,<br>INC.,<br><br>     Defendants. | Case No. 1:17-cv-00124-LLS |

**DEFENDANT MARK UNDERWOOD'S REPLY IN FURTHER SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT BY NEW YORK ATTORNEY GENERAL**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      The Pendent Jurisdiction Doctrine Does Not Cover the NYAG's Independent
        Claims Against Mr. Underwood ................................................................................ 3

II.     The NYAG Cannot Establish Specific Personal Jurisdiction Over Mr. Underwood
        in New York.................................................................................................................. 8

III.    This Motion is Not a Motion for Reconsideration ............................................ 16

CONCLUSION............................................................................................................................ 16

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arma v. Buyseasons, Inc.*,
    591 F. Supp. 2d 637 (S.D.N.Y. 2008).........................................................................8

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)..............................................................................8, 14

*Bank Leumi USA v. Ehrlich*,
    98 F. Supp. 3d 637 (S.D.N.Y. 2015)......................................................................16

*Branham v. Isi Alarms, Inc.*,
    No. 12 CV 1012, 2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) ...........................15

*Canaday v. Anthem Cos.*,
    9 F.4th 392 (6th Cir. 2021) ...........................................................................4, 5, 16

*Comprehensive Inv. Servs. v. Mudd*,
    891 F. Supp. 2d 458 (S.D.N.Y. 2012).....................................................................6

*Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*,
    No. 15 Civ. 5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016)..............................15

*Fam. Internet, Inc. v. Cybernex*,
    No. 98 Civ. 0637, 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ................................8

*Flores v. United States*,
    885 F.3d 119 (2d Cir. 2018)................................................................................14

*FTC v. Am. Future Sys. Inc.*,
    No. 20-cv-2266, 2021 WL 199612 (E.D. Pa. Jan. 20, 2021)...................................6

*FTC v. BINT Operations, LLC*,
    No. 4:21 CV 00518, 2022 WL 990276 (E.D. Ark. 2022)..........................................6

*FTC v. Educare Ctr. Servs., Inc.*,
    414 F. Supp. 3d 960 (W.D. Tex. 2019)....................................................................6

*FTC v. Nex Gen., Inc.*,
    No. 4:18-cv-128, 2018 WL 5310414 (W.D. Mo. 2018) ...........................................6

*Gray v. Town of Darien*,
    927 F.2d 69 (2d Cir. 1991)..................................................................................14

*Hargrave v. Oki Nursery Inc.*,
646 F.2d 716 (2d Cir. 1980)...................................................................................6

*IUE AFL-CIO Pension Fund v. Herrmann*,
9 F.3d 1049 (2d Cir. 1993)...............................................................................7, 16

*King County, Wash. v. IKB Deutsche Industriebank, AG*,
769 F. Supp. 2d 309 (S.D.N.Y. 2011)..................................................................10

*Maersk, Inc. v. Neewra, Inc.*,
554 F. Supp. 2d 424 (S.D.N.Y. 2008)..................................................................15

*MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*,
No. 05 Civ. 10773, 2007 WL 1489806 (S.D.N.Y. May 21, 2007).......................15

*Ontel Prods., Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144 (S.D.N.Y. 1995)....................................................................12

*Ostreicher v. Chase Bank USA, N.A.*,
No. 19 Civ. 8175, 2020 WL 6809059 (S.D.N.Y. Nov. 19, 2020) ..........................9

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018)..................................................................6

*People v. Concert Connection*,
211 A.D.2d 310 (2d Dep't 1995) .........................................................................14

*Rational Strategies Fund v. Hill*,
No. 651625/2013, 2013 WL 3779731 (N.Y. Sup. Jul. 18, 2013).....................12, 15

*Renren, Inc. v. XXX*, 68 Misc.3d 1219(A) (Sup. Ct. N.Y. Cnty. May 20, 2020),
*aff'd sub nom.*, *Matter of Renren, Inc.*, 192 A.D.3d 539 (1st Dep't 2021)............................15

*Reynolds Corp. v. Nat'l Operator Servs.*,
73 F. Supp. 2d 299 (W.D.N.Y. 1999) ..................................................................15

*Time, Inc. v. Simpson*,
No. 02 Civ. 4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003)........................10

*Walden v. Fiore*,
571 U.S. 277 (2014)..........................................................................................1, 4

*Wolo Mfg. Corp. v. ABC Corp.*,
349 F. Supp. 3d 176 (E.D.N.Y. 2018) .................................................................13

**Statutes**

28 U.S.C. § 1367.......................................................................................5, 6, 7

FTC Act .................................................................................................................................1

**Other Authorities**

CPLR § 302 ......................................................................................................................8, 15

Rule 56.1 .............................................................................................................................9

The NYAG's Opposition to Mark Underwood's motion for partial summary judgment relies on distortions of the case law and manipulation of the record evidence to argue that Mr. Underwood is subject to personal jurisdiction in this Court.  The NYAG fails to point to a single controlling case applying the doctrine of pendent personal jurisdiction that allows an *additional plaintiff* to bring a separate claim against a defendant without making an independent demonstration of personal jurisdiction for that claim.  And, tellingly, the NYAG ignores altogether the legion of courts cautioning against this broad expansion of personal jurisdiction.  Indeed, the NYAG's expansive proposed interpretation of the so-called "pendent party" personal jurisdiction doctrine is (by far) the exception in the federal courts—and that is for good reason.  The idea that a defendant like Mr. Underwood can be subject to suit in New York for a claim asserted *by the New York Attorney General **solely*** because the FTC can maintain a claim against Mr. Underwood in New York deeply offends the very basic principles of personal jurisdiction and due process.  This suggestion elevates convenience over the fundamental requirement of personal jurisdiction: a nexus between the defendant and the forum for each claim asserted.  The NYAG's attempt to sidestep its burden of independently demonstrating personal jurisdiction for its claims against Mr. Underwood is not rooted in any legal authority; worse, it ignores the Supreme Court's admonition that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Here, the NYAG's attempt to piggyback off the jurisdictional-hook of a different plaintiff[1] is particularly egregious because the NYAG's separate claims against Mr.

---

[1]      Mr. Underwood does not waive, and preserves for appeal, the right to challenge the Court's finding that the FTC Act allows for personal jurisdiction over Mr. Underwood in this Court.

Underwood expose him to an entirely different set of potential relief (disgorgement and civil penalties) that the FTC might be able to request.[2]

The NYAG fares no better in arguing that Mr. Underwood is subject to New York's long-arm jurisdiction simply by virtue of *Quincy*'s contacts with New York.  To avail itself of this "agency" theory of jurisdiction—a doctrine New York courts have aptly termed "limited"—the NYAG would have to show that Mr. Underwood was a "primary actor" and "driving force" in Quincy's New York-targeted conduct.  Mr. Underwood put forth undisputed evidence that he had no such role.  Quincy does not have, and never had, any New York-targeted advertising or marketing conduct, and, in any event, Mr. Underwood's relationship to Quincy's advertising and marketing has always been—at most—as a member of a team.  In its Opposition, the NYAG fails to create a material dispute of fact on these dispositive points.  Instead, the NYAG points to Mr. Underwood's general role at Quincy but not to any specific New York conduct and makes sweeping generalizations about Mr. Underwood's role that are not supported by the record evidence at all, including steps that Mr. Underwood "might have" hypothetically taken in his role at Quincy.  Glaringly missing from the NYAG's Opposition is any meaningful dispute as to the relevant facts showing that Mr. Underwood was not a "primary actor" in any New York-targeted conduct by Quincy.  The NYAG therefore fails to withstand a motion for summary judgment as to the application of the limited doctrine of agency jurisdiction to the NYAG's claims.

Finally, the NYAG's suggestion that Mr. Underwood should somehow be precluded from challenging personal jurisdiction because this Court made a ruling on the pleadings (before discovery even commenced) is ludicrous.  The NYAG does not—and cannot—argue that it was not on notice that Mr. Underwood was going to continue to challenge personal jurisdiction; indeed,

---

[2]     This Court previously ruled that the FTC is not entitled to monetary relief in this action.  (Order, ECF No. 184.)

after it was raised in the motion to dismiss, it was again raised as an affirmative defense in Mr.

Underwood's answer.  (Answer with Affirmative Defenses on Behalf of Def. Mark Underwood at

8, ECF No. 74)  Mr. Underwood's grounds for his challenge to personal jurisdiction include facts

that were developed during discovery (after the motion to dismiss was decided) and case law that

has continued to develop and evolve rejecting the expansive pendent personal jurisdiction doctrine

the NYAG advocates (also after the motion to dismiss was decided).  This Court is well within its

authority to review its prior rulings in advance of proceeding to trial, especially for a threshold

matter such as personal jurisdiction.  Indeed, the Court has already rejected this argument by the

NYAG by allowing Mr. Underwood to bring this summary judgment motion over the NYAG's

objection on this very basis.

For the reasons set forth herein, there is no material issue of fact precluding entry of

summary judgment in favor of Mr. Underwood on the issue of personal jurisdiction on the

NYAG's claim.  For the same reason, the NYAG's belated cross-motion for summary judgment

on the issue of personal jurisdiction should be denied.

## I.   The Pendent Jurisdiction Doctrine Does Not Cover the NYAG's Independent Claims Against Mr. Underwood

The NYAG's argument in favor of applying the pendent personal jurisdiction doctrine to

an *additional plaintiff* with an *additional claim* (that carries with it additional remedies) is fatally

flawed.  Most egregiously, the NYAG wholly ignores the growing consensus in the federal courts

that this type of pendent jurisdiction is unsupported, inappropriate, and constitutionally suspect.

Indeed, nowhere in its Opposition does the NYAG address the specific concerns that these courts

have raised in refusing to extend this doctrine to a case with two plaintiffs—*i.e.*, that the broad

application "obviates constitutional requirements," "raise[s] serious Due Process Clause

concerns," "has dubious origins," and that applying the doctrine to cover claims by an additional

plaintiff is an "expan[sion]" of the doctrine that has never been endorsed by any court of appeals. (*See* Mem. of Law in Support of Mot. for Partial Summ. J. ("Underwood Br.") at 12-14, ECF No. 211.) It is unsurprising that no court of appeals has adopted this theory given that this expansion would require "such sweeping effect that can[not] be squared with the constraints of the Due Process Clause." (*Id.* at 12 n.7.) The NYAG, in turn, does not argue that the expansion of the doctrine *is* constitutionally sound, for example, nor does the NYAG argue that there *is* a statutory basis for expanding the doctrine. And, critically, the NYAG does not attempt to reconcile its personal jurisdiction argument with the Supreme Court's admonition that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284.

The NYAG does not address the mountain of cases that refuse to expand the pendent personal jurisdiction doctrine at all, other than trying to differentiate them on entirely irrelevant grounds. For example, the NYAG's attempt to avoid the impact of the Sixth Circuit's ruling in *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021), the first appellate decision to address— and reject—the NYAG's expansive version of pendent personal jurisdiction, relies on a blatant mischaracterization of that case's holding. (Opp. at 7-8.) The NYAG states in its Opposition that the *Canaday* court "noted that when a court exercises personal jurisdiction over a defendant with respect to related claims that it could not adjudicate in the absence of the 'anchor claim,' it was 'usually because the underlying federal statute . . . authorized nationwide service of process and the plaintiff filed claims related to the federal anchor claim.'" (Opp. at 7.) But this excerpt is from a section of the opinion dealing with pendent *claim* personal jurisdiction—the "traditional" application of this doctrine to anchor and additional claims being brought by the *same plaintiff*. *Canaday*, 9 F.4th at 401. The *Canaday* court goes on to distinguish a *different* type of pendent

personal jurisdiction, one it terms "pendent *party* personal jurisdiction," which asks a court to exercise "personal jurisdiction over one defendant as to a particular claim by one plaintiff [to] allow[] it to exercise personal jurisdiction with respect to claims brought by other plaintiffs." *Id.* The *Canaday* court expressly rejects *this* version of pendent personal jurisdiction, noting that "no federal statute or rule" authorizes it and that while supplemental subject matter jurisdiction has a statutory basis in 28 U.S.C. 1367, "no such law exists" for supplemental personal jurisdiction. *Id.* at 401-02.

The NYAG also argues that the litany of cases that Mr. Underwood cites—which is a non-exhaustive sampling of cases nationwide rejecting the expansion of the pendent personal jurisdiction doctrine—are not cases in which the *anchor*, jurisdictionally-proper claim allowed for nationwide service of process. This is a red herring. It does not matter at all how the *anchor* claim got before the federal court and enabled personal jurisdiction over the non-resident defendant, because personal jurisdiction *needs to be assessed as to each claim by each plaintiff*. Indeed, there is absolutely no reason that an *additional* plaintiff who tries to bring a tagalong claim should be able to do so without demonstrating personal jurisdiction—regardless of how the primary plaintiff has jurisdiction over the defendant. There is no federal law, rule, or controlling holding that allows for it. Similarly, there is nothing in New York state law that would purport to expand the reach of personal jurisdiction in New York. The foundational principle is that *every* claim by *every* plaintiff needs to satisfy personal jurisdiction, and the NYAG offers no basis to deviate from that principle.

Unable to offer such an argument, the NYAG instead misleads the Court by insisting that courts "routinely exercise pendent personal jurisdiction over the claims of additional plaintiffs." (Opp. at 2.) But that is simply not true. A careful review of the NYAG's Opposition reveals only ***three*** instances in which a federal court has applied this doctrine to claims brought by additional

plaintiffs.  *See FTC v. BINT Operations, LLC*, No. 4:21 CV 00518, 2022 WL 990276 (E.D. Ark. 2022); *FTC v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960 (W.D. Tex. 2019).[3]  These non-controlling cases are outliers:  the issue of pendent personal jurisdiction was not raised or briefed by the parties and the concern with expanding the doctrine to an additional plaintiff was therefore not even addressed, let alone challenged, by the defendant.  Nor did these courts wrestle with the propriety of applying the doctrine of pendent personal jurisdiction to an additional plaintiff's claims and find that the application was proper; these courts just simply (and wrongly) applied it without discussion.  That the NYAG can point to three district courts outside of New York who have, without elaboration or challenge, applied the doctrine incorrectly is wholly unpersuasive in the face of many more courts nationwide rejecting an expansion of the doctrine and in the face of the Supreme Court's limitations on personal jurisdiction to comport with the Due Process Clause.

The remaining cases that the NYAG cites have no application to their argument.  These cases either concern *subject matter jurisdiction* (as opposed to personal jurisdiction) (*see, e.g.*, *FTC v. Am. Future Sys. Inc.*, No. 20-cv-2266, 2021 WL 199612, at *4 (E.D. Pa. Jan. 20, 2021); *FTC v. Nex Gen., Inc.*, No. 4:18-cv-128, 2018 WL 5310414, at *3 (W.D. Mo. 2018)), or the cases do not involve the application of the pendent personal jurisdiction doctrine to an additional plaintiff (*Hargrave v. Oki Nursery Inc.*, 646 F.2d 716, 718 (2d Cir. 1980); *Comprehensive Inv. Servs. v. Mudd*, 891 F. Supp. 2d 458, 481 (S.D.N.Y. 2012)).  Moreover, while the court in *American Med. Ass'n v. United Healthcare Corp.*, found personal jurisdiction over supplemental claims, including by an additional plaintiff, the court rooted this finding in 28 U.S.C. § 1367—a ***subject matter***

---

[3]        The NYAG also cites to a California federal court case, *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118 (S.D. Cal. 2018), which extended the doctrine of pendent personal jurisdiction to a claim brought by an additional plaintiff.  However, as Mr. Underwood made clear in his Opening Brief, some (but not all) district courts in California are the outliers on this issue.  Critically, the Ninth Circuit has never sanctioned extension of pendent personal jurisdiction to claims by additional plaintiff, and in one of the more influential California district court cases, the court rescinded application of the pendent personal jurisdiction doctrine to cover claims by additional plaintiffs. (Underwood Br. at 15 n. 8.)

*jurisdiction* statute.  No. 00 Civ. 2800, 2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001).  That case is therefore wrongly decided, and, in any event, over two decades old.  In the same vein, the NYAG's unremarkable proposition that Mr. Underwood "does not challenge this Court's exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1367" (Opp. at 6 n.3) has no bearing on the issues in this case, which deal with personal jurisdiction, not subject matter jurisdiction.  Indeed, supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 specifically allows for expanded subject matter jurisdiction to additional parties.  *See* 28 U.S.C. § 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").  Critically, there is no such statutory authority for pendent personal jurisdiction, let alone the expansive version that the NYAG seeks to impose.

Ultimately, the NYAG is left to argue that the case on which this Court relied in denying Mr. Underwood's motion to dismiss—*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)—is "still good law."  (Opp. at 4, 7.)  Mr. Underwood does not disagree.  But, as many courts have since recognized, that case does not provide authority for the expansive reach of the doctrine of pendent personal jurisdiction that the NYAG advocates here.  *IUE AFL-CIO Pension Fund* deals with **one plaintiff** bringing a jurisdictionally-proper claim and a tagalong claim—and those are indisputably not the facts of this case.

At bottom, the NYAG is asking this Court to read into the case law an implied jurisdictional "hook" for a second plaintiff's tagalong claim—**despite** the absence of any support in any Second Circuit opinion; **despite** the absence of support in any court of appeals decision; **despite** the absence of support in any federal law or rule; **despite** courts nationwide expressly rejecting such an application; and **despite** the Supreme Court's reining in of personal jurisdiction.  This Court should not sanction the NYAG's unprecedented—and unsupported—expansive reach of personal

jurisdiction to draw Mr. Underwood into court in New York to answer to a claim brought by the NYAG, that carries with it the threat of more expansive and onerous financial remedies, on the sole ground that the FTC can bring a claim for injunctive relief against Mr. Underwood in New York.

## II.    The NYAG Cannot Establish Specific Personal Jurisdiction Over Mr. Underwood in New York.

The NYAG's backup position fares no better.  In its Opposition, the NYAG does not dispute that Mr. Underwood himself lacks sufficient connections to New York to establish jurisdiction under CPLR § 302(a) and that it seeks to impose personal jurisdiction on Mr. Underwood solely through *Quincy*'s contacts with New York.[4]  Opp. at 13.  But the NYAG ignores that New York courts have cautioned that this "agency theory" of jurisdiction should only be applied "[u]nder limited circumstances."  *Fam. Internet, Inc. v. Cybernex*, No. 98 Civ. 0637, 1999 WL 796177, at *8 (S.D.N.Y. Oct. 6, 1999).  And, of course, any application of the rule must comport with due process.  Moreover, the NYAG misrepresents its burden in opposing summary judgment on personal jurisdiction:  it must demonstrate that there is a dispute of material fact that Quincy engaged in or directed purposeful conduct to New York that bears a substantial relationship to the instant claims *and* that Mr. Underwood was a primary actor *as to this New York conduct*.  *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (establishing standard for assessing questions of personal jurisdiction on summary judgment; *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008) (overviewing standard for the "agency theory" of jurisdiction).  The NYAG devotes significant ink in its Opposition to addressing Mr.

---

[4]     The NYAG appears to argue that Mr. Underwood is subject to personal jurisdiction as a result of his own individual contacts with New York.  (Opp. at 18-19.)  But the two New York "acts" that the NYAG cites—his alleged "targeting of advertising to New Yorkers" and his alleged "sales of Prevagen to New Yorkers"—are conduct undertaken by Quincy, not Mr. Underwood personally.

Underwood's purported control over Quincy *generally*.  (Opp. at 11-13.)  What is glaringly absent, however, are any undisputed facts showing that Mr. Underwood was a primary actor in Quincy's advertisements and marketing activity that allegedly targeted New York consumers.  Because of this, the cases that the NYAG cites—all of which considered the extent of the individual's control over the corporation's New York-specific conduct—do not support a finding of personal jurisdiction here.

The NYAG's attempt to support its argument regarding Mr. Underwood's alleged control over Quincy's New York-targeted conduct falls way short.  Some of the conduct that the NYAG points to is simply not specific to New York.  For example, the NYAG states that Mr. Underwood is an "active member of [Quincy's] board of directors"[5] (Opp. at 15)—but this in no way demonstrates that Mr. Underwood had any role with respect to Quincy's (alleged) New York-directed conduct.  That Mr. Underwood allegedly "sold Prevagen to New Yorkers" (Opp. at 15) is similarly unavailing; Quincy sold (and continues to sell) Prevagen to customers nationwide, not just to New Yorkers, and there is no evidence that Mr. Underwood was a "primary actor" in or the "driving force" behind the sale of Prevagen to New Yorkers.  For the same reason, the NYAG's statements that Mr. Underwood "was knowledgeable about the purported substantiation Defendants relied upon for their advertising claims, and actively participated in developing it"

---

[5]     For this proposition, the NYAG cites to a statement of "additional material facts" that it appended to its response to Mr. Underwood's 56.1 Statement in support of Mr. Underwood's Motion for Partial Summary Judgment. Resp. to Def. Mark Underwood's Rule 56.1 Statement by Pl. People of the State of New York ("Resp. 56.1 Statement") at 18-22, ECF No. 238.  Mr. Underwood requests that this Court strike those "additional material facts."  To the extent that the NYAG believes these to be undisputed statements of fact in further opposition to Mr. Underwood's motion, such a statement is not permitted under Local Rule 56.1.  "There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute."  *Ostreicher v. Chase Bank USA, N.A.*, No. 19 Civ. 8175, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020).  If the NYAG believed these facts to be material in support of its cross-motion for summary judgment on the issue of personal jurisdiction, the NYAG could have indicated that these facts constituted its Local Rule 56.1 statement in support of its cross-motion.  But it did not. As such, these "additional facts" should be stricken and not considered in the Court's evaluation of Mr. Underwood's motion for partial summary judgment.

(Opp. at 16) lacks any specific connection to New York (and in any event, in the NYAG's own words, undermines any suggestion that Mr. Underwood had a "primary" or "driving force" role).

To the extent the NYAG offers more specific allegations about Mr. Underwood's participation in Quincy's advertising (*see, e.g.*, Opp. at 17-18), all are related to Quincy's *nationwide* advertising campaign—not New York specific advertising.[6]  The NYAG does not—and cannot—dispute that Quincy did not have a New York-specific marketing, sales, or advertising team or strategy.  Nor does the NYAG offer any evidence that Quincy created marketing or advertisements that were specifically directed to New York residents.  The NYAG points only to conduct that *incidentally* affects New York:  *i.e.*, that Quincy's "national advertising" has aired in New York, that Quincy's products were distributed nationwide, including in New York; and that New Yorkers were able to access Quincy's website.[7]  (Opp. at 12-23.)  This is not New York-targeted conduct that justifies the exercise of long-arm jurisdiction.  *See King County, Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 320-21 (S.D.N.Y. 2011) (declining to exercise agency jurisdiction over former CEOs of corporation where plaintiffs failed to show that the CEOs "directed [the company] to perform any act in New York" or "exercised control over [the company's] activities in New York"); *Time, Inc. v. Simpson*, No. 02 Civ. 4917, 2003 WL 23018890, at *6 (S.D.N.Y. Dec. 22, 2003) (declining to exercise agency jurisdiction over president, chairman, and sole shareholder of corporation as there was no record evidence that he was specifically involved in making policy "much less a specific policy concerning the

---

[6]     The NYAG baldly claims that Mr. Underwood "participated in developing substantiation for claims made in advertising directed to New York" (Opp. at 17) but offers no support for its position that the advertisements at issue were specifically directed to New Yorkers.  Instead, the NYAG cites the entirety of its improper "Statement of Additional Material Facts," which itself makes clear that the advertisements at issue "have been disseminated to consumers nationwide," not specifically to New Yorkers.  (Resp. to 56.1 Statement at 20-21.)

[7]     The NYAG notes that Defendants have sent "marketing materials directly to consumers via email" and attaches two examples of such direct marketing, but does not suggest in any way that these recipients were in New York.  (Resp. to 56.1 Statement ¶ 10.)

solicitations sent to New York residents"). Moreover, the NYAG's reference to the fact that Quincy infomercials played in New York still does not qualify as New York-targeted conduct; the same piece of evidence the NYAG cites for this fact demonstrates that Quincy played infomercials in 46 other states as well as the District of Columbia. Indeed, the NYAG does not—and cannot—dispute Mr. Underwood's testimony that New York was not a specific target market for any infomercial because infomercials were placed in all markets nationwide. (Resp. 56.1 Statement ¶ 11.) Critically, the NYAG has not disputed Mr. Underwood's evidence that he did not have any role whatsoever in the placement, purchase, or content creation of infomercials in any specific market, including New York.

Other conduct the NYAG seeks to attribute to Mr. Underwood is simply not supported by the record. The NYAG suggests that Mr. Underwood "signed off on numerous advertisements that were presented to New York consumers" (Opp. at 15), but—despite Mr. Underwood sitting for two depositions and having conducted extensive discovery—the NYAG presents absolutely no evidence of specific advertisements that were presented to New York customers, let alone Mr. Underwood's role as to these "numerous"—but unspecified—advertisements. And the evidence belies the NYAG's suggestion that Mr. Underwood "had final say over the Corporate Defendants' marketing." (Opp. at 15.) The NYAG itself admits that Mr. Underwood was part of a team at Quincy that made advertising and marketing decisions: the NYAG concedes that Mr. Underwood "*participated* in creating content" for advertisements, "*participated* in designing and editing" product labels, "*participated* in drafting and approving" advertising, and "*participated* in developing substantiation" for claims made in advertising.[8] (Opp. at 12, 17 (emphasis added).)

---

[8]     The NYAG, without record support, states that Mr. Underwood participated in creating labels that were disseminated in New York and in creating content for advertisements aired in New York. (Opp. at 12.) The NYAG presents no evidence connecting any specific label or advertisement to New York. (*See id.* (citing Resp. 56.1 Statement at 21).)

This concession is consistent with Mr. Underwood's undisputed evidence demonstrating that he was part of a team for all of Quincy's marketing and advertising conduct, and that Mr. Underwood was not primarily responsible for any of Quincy's marketing efforts, much less marketing that the NYAG argues (but fails to prove) was directed to New York consumers. (*See, e.g.*, Resp. 56.1 Statement ¶¶ 10-11, 14, 17, 19-23.)

Tellingly, the NYAG offers no legal support for the suggestion that a member of a team who participates—along with other employees and counsel—in conduct at a company can be deemed the "driving force" or "primary actor" to satisfy the "limited" doctrine of agency jurisdiction. Indeed, one of cases the NYAG cites for this proposition does not address agency jurisdiction or the "primary actor" test at all. *See Rational Strategies Fund v. Hill*, No. 651625/2013, 2013 WL 3779731 (N.Y. Sup. Jul. 18, 2013). The NYAG's inability to ground its expansive view of agency jurisdiction in the case law is not surprising; taking the NYAG's version of this doctrine to its logical conclusion, everyone who "participates" in advertising—the drafters of the content of the advertising, the illustrators of the advertising, the individuals who purchased the media spots, the finance team that set aside funds to pay for the spots, the actors in a commercial, and the management that approved the advertising—would all be equally subject to personal jurisdiction wherever that advertising was aired. The NYAG offers no guidepost or blueprint for differentiating, for purposes of agency jurisdiction, among and between these individual actors. Instead, according to the NYAG's interpretation, each of these individuals might all be considered "primary actors" in an advertising case. That read is irreconcilable with the plain language of the word "primary" in the New York courts' limitation of this doctrine to a "primary actor," and has been rejected by courts in this Circuit. *See Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (finding that an individual defendant's authority

to direct activities giving rise to a lawsuit cannot, without more, serve as a basis for agency jurisdiction because "[i]f that were the case, the President of every company would be subject to jurisdiction in New York based on activities with which he or she had no personal involvement and over which he or she exercised no decisionmaking authority"); *see also Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 199 (E.D.N.Y. 2018) (declining to exercise agency jurisdiction over owner, president, officer, manager, and operator of corporate defendant who allegedly "direct[ed] and control[led]" corporate defendant's activities where plaintiff "group[ed]" individual's activities with corporation's and "provide[d] no basis for the Court to determine whether [he] was a primary actor" behind the transactions in New York that gave rise to the litigation).  The NYAG's attempt to stretch the personal jurisdiction doctrine is in clear conflict with the United States Supreme Court's caution to limit personal jurisdiction to acts of the defendant himself with the forum.

In its most desperate attempt to manufacture a relationship between Mr. Underwood and Quincy's New York-targeted conduct, the NYAG repeatedly suggests that Mr. Underwood "*may have been* the sole individual responsible for reviewing and editing packaging and advertising, and translating scientific research into language used in marketing" simply because Mr. Underwood testified that *at Quincy's inception* (more than fourteen years ago), he handled all corporate functions and all corporate functions reported to him.  (Resp. to 56.1 Statement ¶¶ 3-5, 7, 14, 16-22 (citing Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 28:16-24, 33:16-34-21).)  In other words, the NYAG attempts to manufacture an issue of fact by speculating about Mr. Underwood's responsibilities at Quincy *when the company was first founded and had only one or two employees.* Moreover, this absurd speculation is based on non-specific deposition testimony by Mr. Underwood.  (*See id.*)  This self-serving manipulation of Mr. Underwood's testimony is

insufficient to create a material dispute of fact as to Mr. Underwood's role in Quincy's marketing and advertising as it relates to this case.  *See, e.g.*, *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment") (internal citations omitted); *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991) (affirming grant of summary judgment where "plaintiffs were left with only the 'mere hope' that evidence might develop at trial which would breathe life into their claim" as such was "insufficient to overcome" summary judgment).  Critically, the NYAG nowhere argues, let alone demonstrates with the requisite level of proof, that advertisements or marketing created *at Quincy's inception*—when Mr. Underwood "might have" handled many of the corporate functions—are the advertisements or marketing that are at issue in this case, that such advertisements and marketing were directed to New York, or that they made the same marketing claims about which the NYAG now complains.  This is not enough to defeat summary judgment.

The cases cited by the NYAG in support of its position are not helpful.  Not one of the cases the NYAG cites is at the correct procedural posture—a challenge to personal jurisdiction at summary judgment.  Instead, the NYAG's case law largely addresses whether a plaintiff stated a prima facie case for personal jurisdiction on the pleadings.[9]  But the plaintiff's burden to demonstrate personal jurisdiction on summary judgment is heightened—and far more onerous than on a pre-discovery motion to dismiss.  *Ball*, 902 F.2d at 196-97 (clarifying that, at motion to dismiss stage, plaintiff "need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction," but at summary judgment court must determine whether "undisputed facts exist that warrant the relief sought").  Thus, the NYAG's reliance on cases where

---

[9]    The NYAG's citation to *People v. Concert Connection*, 211 A.D.2d 310, 316 (2d Dep't 1995) is confusing because that case does not even engage with the agency theory for personal jurisdiction.  Rather, it simply rejects the fiduciary shield doctrine and, without analysis or discussion, finds that an individual executive is subject to personal jurisdiction in New York.

the courts found *allegations* sufficient to withstand a *motion to dismiss* has simply no relevance to this case.  (*See* Opp. at 14-15, citing *People v. Allied Mktg. Grp., Inc.*, 213 A.D.2d 256, 256 (1st Dep't 1995); *Branham v. Isi Alarms, Inc.*, No. 12 CV 1012, 2013 WL 4710588, at *7 (E.D.N.Y. Aug. 30, 2013); *Reynolds Corp. v. Nat'l Operator Servs.*, 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999); *Renren, Inc. v. XXX*, 68 Misc.3d 1219(A), at *17 (Sup. Ct. N.Y. Cnty. May 20, 2020), *aff'd sub nom.*, *Matter of Renren, Inc.*, 192 A.D.3d 539 (1st Dep't 2021); *Rational Strategies Fund v. Hill*, No. 651625/2013, 2013 WL 3779731, at *3-4 (Sup. Ct. N.Y. Cnty. July 18, 2013)[10]; *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15 Civ. 5211, 2016 WL 7188792, at *8-9 (S.D.N.Y. Dec. 2, 2016).)  The NYAG's citations to *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 446 (S.D.N.Y. 2008) and *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, No. 05 Civ. 10773, 2007 WL 1489806, at *5 (S.D.N.Y. May 21, 2007) are similarly unavailing because they address personal jurisdiction challenges after jurisdictional discovery—not at the more onerous juncture of summary judgment, where the standard for asserting personal jurisdiction is even higher.

The NYAG therefore presented no material issue of fact as to whether Mr. Underwood was the "primary actor" or "driving force" behind the allegedly infringing advertisements targeting New York consumers, and his role as president, founder, and board member of Quincy does not evince otherwise.  Absent this factual support, there is no basis on which the NYAG can assert personal jurisdiction over Mr. Underwood under CPLR § 302 and this Court should grant summary judgment in Mr. Underwood's favor on the NYAG's claims.

---

[10]     *Rational Strategies Fund* is particularly inapt because that case assessed only whether the pleadings amounted to a "sufficient start" to warrant jurisdictional discovery.  2013 WL 3779731 at *2.

## III.    This Motion is Not a Motion for Reconsideration

Finally, as Mr. Underwood has repeatedly made clear (*see* Underwood Br. at 3, n.4), Mr. Underwood's motion for partial summary judgment is not an untimely motion for reconsideration of this Court's earlier decision on Mr. Underwood's motion to dismiss.  This motion presents a new challenge to this Court's exercise of personal jurisdiction that is based both on both case law developments over the last two years expressly rejecting the novel application of the pendent personal jurisdiction doctrine the NYAG advocates, and the significant discovery that has taken place undermining the satisfaction of New York's long-arm jurisdiction—a showing that could have been made only upon completion of discovery.  By arguing otherwise, the NYAG ignores that:  (1) since Mr. Underwood's motion to dismiss, *Canaday*, the first federal appellate case in the country to address the issue of whether pendent personal jurisdiction can apply where the anchor claim and pendent claim are brought by two different plaintiffs was decided (and the theory was rejected); (2) discovery has revealed that this Court cannot exercise long-arm jurisdiction over Mr. Underwood based on Quincy's alleged conduct in New York; and (3) most critically, this Court has the right to diverge from prior opinions—such as the one made at the pleading stage— and should do so here, particularly as intervening case law developments make clear that reliance on *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049 (2d Cir. 1993) was an error.  *See, e.g.*, *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 646 (S.D.N.Y. 2015) (noting that it is within the "Court's discretion" to diverge from law of prior ruling).  Indeed, courts are encouraged to revisit prior opinions where, like here, the prior order at issue was decided under a different standard of review.  *Id.* at 647.

## **CONCLUSION**

For the reasons set forth herein, and in Mark Underwood's opening brief, Mr. Underwood respectfully requests that the Court grant summary judgment in his favor on the claims brought by

the New York Attorney General for lack of personal jurisdiction.


Dated: New York, New York
       June 23, 2022

                                        **COZEN O'CONNOR**

                                        ___/s/ Michael de Leeuw_____
                                        Michael de Leeuw
                                        Tamar S. Wise
                                        175 Greenwich Street
                                        New York, NY 10007
                                        mdeleeuw@cozen.com
                                        212-908-1331

                                        *Attorneys for Defendant Mark Underwood*

17