UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation<br><br>d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>Defendants. | Case No. 1:17-cv-00124-LLS |

**DEFENDANT MARK UNDERWOOD'S RESPONSE TO THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Defendant Mark Underwood respectfully asks this Court to strike the "additional material facts" appended by the New York Attorney General to its response to Mr. Underwood's 56.1 Statement in support of Mr. Underwood's Motion for Partial Summary Judgment. To the extent that the NYAG believes these to be undisputed statements of fact in further opposition to Mr. Underwood's motion, such a statement is not permitted under Local Rule 56.1. "There is no

provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute." *Ostreicher v. Chase Bank USA, N.A.*, No. 19 Civ. 8175, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020). To the extent the NYAG believes these facts to be material in support of its cross-motion for summary judgment on the issue of personal jurisdiction, the NYAG could have—but did not—indicated that these facts constituted its Local Rule 56.1 statement in support of its cross-motion. As such, these "additional facts" should be stricken and not considered in the Court's evaluation of Mr. Underwood's motion for partial summary judgment.

Subject to, and without waiver of, the request to strike the additional facts, Mr. Underwood responds as follows:

1. Quincy Bioscience Holding Company, Inc., wholly owns: Prevagen, Inc., which markets, manufactures, and sells Prevagen Products to consumers nationwide; Quincy Bioscience Manufacturing, LLC; and Quincy Bioscience, LLC, the holder of Prevagen-related patents and trademarks. (Matuschak Decl. Ex. C (Defs.' 2d Supp. Resps. to Pls.' 2d Interrogatories (Oct. 23, 2020)) No. 18; Matuschak Decl. Ex. B (Defs.' Resps. to Pls.' Requests for Admission (Sept. 30, 2020)) at 6.)

**RESPONSE:** Contested. First, this is not a material fact for purposes of the summary judgment motion. Second, Quincy Bioscience Holding Company, Inc., wholly owns: Prevagen, Inc., which markets Prevagen Products, oversees the manufacturing of Prevagen Products by a third party, and sells Prevagen Products to consumers, retailers, distributors and healthcare professionals nationwide; Quincy Bioscience Manufacturing, LLC; and Quincy Bioscience, LLC, the holder of Prevagen-related patents and trademarks. (de Leeuw Decl. Ex. 3 (QUI-FTCNY-

00005389); de Leeuw Decl. Ex. 1 (Deposition of Mark Underwood as Individual ("Underwood Individual Dep.")) at 32:25-33:5.)

2. Corporate Defendants share the same officers, including individual Defendant Mark Y. Underwood. (Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 37:13-38:6.)

**RESPONSE:** Uncontested, but Mr. Underwood disputes whether this is a material fact for purposes of the summary judgment motion.

3. Corporate Defendants share the same Board of Directors, and Underwood serves on that board. (Matuschak Decl. Ex. F (Underwood 8/21 Tr.) at 37:13-38:6.)

**RESPONSE:** Contested. This is not a material fact for purposes of the summary judgment motion. Moreover, only Quincy Bioscience Holding Company, Inc. has a board of directors. (Underwood Individual Dep. at 37:21-38:6.)

4. Underwood is the co-founder, President, and Chief Operating Officer of Corporate Defendants. (Matuschak Decl. Ex. B (Defs.' Resps. to Pls.' 1st Requests for Admission (Sept. 30, 2020)) No. 99.)

**RESPONSE:** Uncontested.

5. Underwood has participated in creating content for Prevagen television and radio ads and is the final decision maker on final advertising claims. (Matuschak Decl. Ex. B (Defs.' Resps. to Pls.' 1st Requests for Admission (Sept. 30, 2020) at 62-63; Matuschak Decl. Ex. J (Quincy's Answers to FTC's CID Interrogatories (Sept. 15, 2015)) at 6

███████████████████████████████████████

███████████████████████████████████████

██████; Matuschak Decl. Ex. E (Underwood 8/20/20 Tr.) at 99:5-11 (describing Underwood's involvement in determining what data to include in an advertisement); Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 46:6-47:11 (discussing leadership role in developing marketing messaging); *id.* at 60:2-5 (discussing role in approving edits to Prevagen's packaging); *id.* at 67:16-68:12 (discussing Underwood's role in an infomercial that aired in New York); *id.* at 80:16-82:5 (same); *id.* at 85:2- 86:17 (discussing Underwood's role in translating scientific data into marketing language); Matuschak Decl. Ex. G (Olson 8/4/20 Tr.) at 63:2-9 (discussing Underwood's role in drafting scripts for radio advertisements); *id.* at 78:1-21 (describing Underwood as one of the "primary people" drafting content for television commercials).)

**RESPONSE:** Contested. Mr. Underwood is part of a marketing team that, among other things, collaboratively creates, review and approves content for Prevagen advertising in various mediums.  Mr. Underwood is not the sole decision maker on advertising claims; this is a collaborative effort with the marketing team as well as with legal counsel.  (Underwood Individual Dep. at 46:6-47:8, 60:2-9; de Leeuw Decl. Ex. 4 (Defs.' 2d Suppl. Resp. and Obj. to Pls.' 2d Set of Interrog. dated Oct. 23, 2020) at Response to Interrog. 7.)

6. Underwood is the largest individual shareholder of Quincy Bioscience Holding Company, Inc. (Matuschak Decl. Ex. O (9/19/2016 Executed Corporate Financial Form) at 3 & Item 7.)

**RESPONSE:** Uncontested but Mr. Underwood disputes whether this is a material fact for purposes of the summary judgment motion.

7. Underwood originated the idea to create Prevagen with the active ingredient apoaequorin based on independent research he did as a hobby while he was an undergraduate student. (Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 29:12-32:6.)

**RESPONSE:** Uncontested but Mr. Underwood disputes whether this is a material fact for purposes of the summary judgment motion.

8. Underwood participated in naming Prevagen and designing and editing the product labels and packaging. (Matuschak Dec. Ex. F (Underwood 8/21/20 Tr.) at 60:2-5.)

**RESPONSE:** Contested.  Mr. Underwood, along with Mike Moran and Dakota Miller, came up with the name Prevagen.  Mike Moran, Dakota Miller, and Mr. Underwood, together with counsel, "worked on [designing the Prevagen] label together," and Mr. Moran "would have put … mouse to keyboard, so to speak, in terms of doing the graphics for it."  (Underwood Individual Dep. at 29:12-16, 30:10-23, 31:23-32:4.)

9. Underwood is listed as an inventor on patents for aequorin (from which Prevagen's active ingredient, apoaequorin, was derived) and apoaequorin. (Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 31:23-32:6.).

**RESPONSE:** Contested.  First, Mr. Underwood disputes whether this is a material fact for purposes of the summary judgment motion.  Second, Mr. Underwood is listed as the inventor on patents for aequorin and only one patent for apoaequorin.  (Underwood Individual Dep. at 31:23-32:4.)

10. Underwood has appeared in infomercials on TV and radio to promote Prevagen. (Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 51:14-52:7 (discussing appearance on untitled infomercial); *id.* at 67:16-68:12 (discussing appearance on infomercial "The Better Memory Show"); *id.* at 80:16-82:5 (same); Matuschak Decl. Ex. G (Olson 8/4/20 Tr.) at 62:4-25 (noting that Mr. Underwood was "the primary" person who conducted radio interviews advertising Prevagen).) At least one of those infomercials in which Underwood appeared aired on specific television stations in the State of New York. (Matuschak Decl. Ex. C (Defs.' 2d Supp. Resps. to Pls.' 2d Interrogatories (Oct. 23, 2020)) Ex. A (detailing dissemination schedule for infomercials that aired on New York-specific television and radio stations).)

**RESPONSE:** Uncontested but Mr. Underwood notes that this statement of fact is not bound in any way by time or geography.

11. Underwood has direct oversight over Corporate Defendants' financial condition, research and development, and sales and marketing. Corporate Defendants' chief financial officer and the directors of sales and marketing, market development, business development, systems and logistics, national accounts, human resources, technical and quality, manufacturing sciences, and media procurement all report directly to Underwood. (Matuschak Decl. Ex. F (Underwood 8/21 Tr.) at 34:1-21, 40:19-41:21.)

**RESPONSE:** Contested. The directors of sales and marketing, market development, business development, systems and logistics, national accounts, human resources, technical and quality, manufacturing sciences, and media procurement reported to Mr. Underwood, but Mr. Underwood did not testify that they were "direct" reports. Mr. Underwood testified as to these facts in August 2020, and also testified at that time that he then had responsibility for the oversight

of the financial conditions of Quincy and had direct oversight over every department at Quincy. (Underwood Individual Dep. at 34:9-16, 40:19-41:21.)

12. In his role as President of Corporate Defendants, Underwood oversaw, and continues to oversee, the development, conduct, and evaluation of scientific research, including the Madison Memory Study, on which Defendants' advertising claims are based. (Matuschak Decl. Ex. J (Quincy's Answers to FTC's CID Interrogatories (Sept. 15, 2015)) No. 4 ███████████████████████████████████████████████████████████████████████████; Matuschak Decl. Ex. P (Lerner 8/6/20 Tr.) at 30:8-24 (noting that Underwood was involved in discussions about the Madison Memory Study and in writing up the results); *id.* at 43:17-24 (noting that Underwood was the sole person who decided to conduct the Madison Memory Study); Matuschak Decl. Ex. F (Underwood 8/21/20 Tr.) at 82:24-84:23 (discussing Underwood's role in the Madison Memory Study); *id.* at 88:14-90:9 (same); *id.* at 91:11-92:20 (same).)

**RESPONSE:** Contested. A team within Quincy, comprised of Todd Olson, KC Lerner, Taylor Gabourie, Peggy Sivesind, Stephanie Hobbins, Amadeus Benitez, Kelsey Harter, Dr. Dan Moran, and Mr. Underwood, were involved in the development, conduct and evaluation of scientific research, including the Madison Memory Study. This same team came up with the idea to conduct the Madison Memory Study. No single person came up with or is responsible for the idea to conduct the Madison Memory Study. (Underwood Individual Dep. at 89:23-91:3; de Leeuw Decl. Ex. 2 (Deposition of Kenneth Lerner as Individual ("Lerner Individual Dep.")) at 39:9-41:8.)

13. Prevagen advertisements have been disseminated to consumers nationwide, including in the State of New York, through a variety of media, including but not limited to television, radio, the internet, and product labeling and packaging. ((Rule 56.1 Statement in Support of Mark Underwood's Motion for Partial Summary Judgment (filed Mar. 18, 2022) [Dkt. No. 212] ¶ 10 ("Advertising and marketing for Prevagen is national in scope."); Defs.' Answer (Aug. 7, 2019) [Dkt. No. 73] ¶¶ 23-24 (confirming that Prevagen has been advertised through various means, including television); Matuschak Decl. Ex. C (Defs.' 2d Supp. Resps. to Pls.' 2d Interrogatories) No. 3 & Ex. A (television); *id.* No. 4 & Ex. A thereto (radio); *id.* no. 8 (labeling and packaging); Matuschak Decl. Ex. G (Olson 8/4/20 Tr. at 33:24-34:6 (internet).) Indeed, Defendants do not dispute that "Prevagen advertisements have been disseminated to consumers nationwide, including in the State of New York, through a variety of media, including television, radio, print, the internet, social media, product labeling and packaging, and press releases, including during the time periods shown in [Exhibit H to the Matuschak Declaration]." (Matuschak Decl. Ex. I (Defs.' Resps. & Proposed Counter-Findings to Pls.' Proposed Findings of Fact (Mar. 3, 2022)) at 15.)

**RESPONSE:** Uncontested.

14. Defendants have marketed Prevagen nationally on television since at least ■ ■. (Matuschak Dec. Ex. I (Defs.' Resps. & Proposed Counter-Findings to Pls.' Proposed Findings of Fact (Mar. 3, 2022)) at 15.) Defendants do not dispute that Prevagen has been marketed on the radio since at least . (*Id.* at 24.)

**RESPONSE:** Uncontested.

15. Defendants' television, radio, and internet advertisements, as well as Prevagen product packaging, have made the claims at issue in this case. (Matuschak Decl. Ex. I (Defs.' Resps. & Proposed Counter-Findings to Pls.' Proposed Findings of Fact (Mar. 3, 2022) at 15-33.)

**RESPONSE:** Contested to the extent that this additional fact is extraordinarily vague and confusing. It is unclear to what the NYAG is referring when it references "the claims at issue in this case." Moreover, Quincy's television, radio, internet advertisements and product packaging have evolved over time and made various and different claims, and it is unclear to what subset the NYAG is referring.

16. Defendants, including Mr. Underwood, created, edited, reviewed, approved, and placed the advertisements for Prevagen. (Matuschak Decl., Ex. C (Defs.' 2d Supp. Resps. to Pls.' 2d Interrogatories (Oct. 23, 2020)) No. 7.)

**RESPONSE:** Contested. The majority of the advertisements for Prevagen were created, edited, reviewed, approved, and placed by Prevagen, Inc., but Prevagen, Inc. sometimes utilized the services of third parties in the creating, editing, review, clearance, placement, and/or dissemination of advertisements for Prevagen, including, but not limited to, the Landon Group, Avalaunch Media, and the Richards Group. The standards and practices or similar division within a specific network, for example, reviews advertising that runs on that network. Legal counsel has been involved in connection with the creation, editing, review, clearance, approval, placement, and/or dissemination of advertisements for Prevagen. (de Leeuw Decl. Ex. 4 (Defs.' 2d Suppl. Resp. and Obj. to Pls.' 2d Set of Interrog. dated Oct. 23, 2020) at Response to Interrog. 7.)

17.    Defendants' New York State sales, from 2011 to present, totaled (in terms of bottles and revenue amount, for each year):



(Matuschak Decl. Ex. D (Defs.' 4th Supp. Resps. to Pls.' 1st Interrogatories (Oct. 23, 2020)) No.

**RESPONSE:** Contested. Paragraph 17 is an incomplete factual assertion. Except in limited cases, Defendants do not possess information sufficient to identify the number of units of Prevagen Products sold at retail by third-party retailers and distributors, the retail prices at which such units were sold, or the gross sales revenue of such third-party retailers and distributors. Moreover, when Prevagen, Inc. sells Prevagen Products to multi-state or national chains or other third-party retailers, it does not have direct knowledge regarding distribution by those third party entities to store or outlets in individual states. Subject to these qualifications, the data set forth in Paragraph 17 accurately reflects the number of bottles of Prevagen Products that Prevagen, Inc. sold and shipped to addresses in located in New York, and the revenue received from such sales. These include sales to third-party retailers and distributors (which may or may not have been re-sold to New York retailers or consumers) as well as direct-to-consumer sales shipped to addresses in New York State. The data set forth in Paragraph 17 also does not account for refunds issued for Prevagen Products sold and shipped to addresses located in New York. (de Leeuw Decl. Ex. 5 (Quincy's 4th Suppl. Resp. and Obj. to Pls.' 1st Set of Interrogs., dated and served October 23, 2020) at Response to Interrog. 1, Exs. C and E.)

Dated: New York, New York
June 23, 2022

                                      **COZEN O'CONNOR**

                                      <u>/s/ Michael de Leeuw</u>
                                      Michael de Leeuw
                                      Tamar S. Wise
                                      175 Greenwich Street
                                      New York, NY 10007
                                      mdeleeuw@cozen.com
                                      212-908-1331

                                      *Attorneys for Defendant Mark Underwood*