# EXHIBIT B

1     UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF NEW YORK

3

4 ————————————————————————

5 FTC and THE PEOPLE OF THE )Case No.
  STATE OF NEW YORK    )17-cv-124 (LLS)
6             )
  Plaintiff      )
7             )
  vs.         )
8             )
  QUINCY BIOSCIENCE HOLDING )
9  COMPANY, INC., QUINCY  )
  BIOSCIENCE, LLC, PREVAGEN )
10 INC., et al.,    )
  Defendants     )
11 ————————————————————————

12

13

14

15

16    Remote Videotaped Deposition of

17      Janet Wittes, Ph.D.

18       October 7, 2021

19        10:13 a.m.

20

21

22

23

24 Reported by:  Bonnie L. Russo

25 Job No. 200430

1   Remote Videotaped Deposition of Janet Wittes,

2   Ph.D. held through:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   Pursuant to Notice, when were present on behalf

22   of the respective parties:

23

24

25

Page 3

```
 1   APPEARANCES:

 2   On behalf of the Plaintiff Federal Trade
     Commission:
 3
         ANNETTE SOBERATS, ESQ.
 4       FEDERAL TRADE COMMISSION
         1 Bowling Green
 5       New York, New York 10004

 6

 7   On behalf of the Plaintiff State of New York:

 8       KATE MATUSCHAK, ESQ.
         Assistant Attorney General
 9       120 Broadway
         New York, New York 10271
10

11
     On behalf of the Defendant Quincy Bioscience
12   Holding Company, Inc., Quincy Bioscience LLC,
     Prevagen, Inc., Quincy Bioscience
13   Manufacturing, LLC:

14       GLENN GRAHAM, ESQ.
         CAITLIN HICKEY, ESQ.
15       GEOFFREY CASTELLO, ESQ.
         JACLYN METZINGER, ESQ.
16       KELLEY DRYE & WARREN
         One Jefferson Road
17       Parsippany, New Jersey 07054

18

19

20

21

22

23

24

25
```

```
 1    APPEARANCES (CONTINUED):

 2

 3    On behalf of Defendant Mark Underwood:

 4        MARK De LEEUW, ESQ.
          TAMAR WISE, ESQ.
 5        COZEN O'CONNOR
          3 World Trade Center
 6        175 Greenwich Street
          New York, New York 10007
 7

 8

 9

10

11

12    Also Present:
      Andrew Wone, FTC
13    Will Ducklow, FTC
      David Ovadia, FTC
14    Jane Azia, Director of Consumer Protection
      Michael Pineiro, Videographer
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  JANET WITTES, PH.D.
 2  reports you submitted in this action, do you
 3  have any other experience with Prevagen or
 4  apoaequorin?
 5       A.    No, I don't.
 6       Q.    In Paragraph 16 of your report, Dr.
 7  Wittes, you state that you discussed some of
 8  the elements of designing and analyzing an RCT
 9  that are relevant to your analysis of the
10  Madison Memory Study; is that right?
11       A.    Yes, that's what I wrote.
12       Q.    In your discussion of the elements
13  of designing and analyzing an RCT, what
14  standard are you applying to your analysis as
15  it relates to the Madison Memory Study?
16       A.    I am -- the standard I am applying
17  are -- are -- are standard methods of designing
18  and analyzing randomized clinical trials, basic
19  methods in, you know, elementary statistical
20  and clinical trial literature.
21       Q.    Are those standards that you are
22  applying to the Madison Memory Study, are they
23  applicable to RCT drug trials?
24       A.    Yes, they are applicable to RCT drug
25  trials and to RCTs whatever the intervention
```

1                    JANET WITTES, PH.D.

2    is.

3         Q.    What do you mean by "whatever the

4    intervention is"?

5         A.    Drug trials, device trials,

6    supplement trials, behavioral trials.  It

7    doesn't matter what the intervention is.  The

8    principles are the same.

9         Q.    When you say "supplement," are you

10   referring to dietary supplement?

11        A.    Dietary supplements, food, yes.

12        Q.    So in your opinion, is the drug

13   trial standard the same as the dietary

14   supplement trial standard?

15             MS. SOBERATS:  Objection.

16             THE WITNESS:  From -- from a

17   scientific --

18             MS. SOBERATS:  Just a -- just a

19   moment --

20             THE WITNESS:  Sorry.

21             MS. SOBERATS:  -- let me just place

22   the objection on the record.

23             Objection.  That is outside the

24   scope of Dr. Wittes's report and expertise.

25             BY MR. GRAHAM:

1                   JANET WITTES, PH.D.

2        Q.    You can answer, Dr. Wittes.

3               MS. SOBERATS:  You can answer.

4               THE WITNESS:  Okay.  I can answer?

5               MS. SOBERATS:  Yes.

6               THE WITNESS:  Okay.  I am referring

7    to the way in which scientific -- one -- one

8    interprets, designs, and interprets data from a

9    scientific point of view, and that has -- I

10   actually forgot the language in your -- your

11   question.  Can you repeat the question.

12              BY MR. GRAHAM:

13       Q.    Sure.  So is the standard -- is the

14   drug trial standard for an RCT the same as the

15   dietary supplement standard for an RCT?

16              MS. SOBERATS:  Objection.  Falls

17   outside the scope of the expert's report and

18   expertise.

19              THE WITNESS:  So when I am talking

20   about the standard, I am talking about the --

21   the scientific standard of -- of trials, and

22   those are the same for -- for supplements and

23   for -- for dietary supplements and for drugs.

24              BY MR. GRAHAM:

25       Q.    Do you agree with your counsel's

```
 1                   JANET WITTES, PH.D.
 2   objection that the standard for a dietary
 3   supplement clinical trial falls outside your
 4   expertise?
 5        A.    The -- I am having trouble with your
 6   word "standard."  If you're talking about -- I
 7   am talking about the standard -- if I look up
 8   in a textbook about how to do a randomized
 9   clinical trial, that is in my expertise.  If
10   you are talking more generally about standard
11   that has something other than that, that is
12   outside my expertise.
13        Q.    So in that textbook example, would
14   there be example of how to do a RCT for a
15   dietary supplement?
16        A.    The textbook example wouldn't
17   necessarily talk about what the intervention
18   was.  It would just talk about study
19   intervention.  It wouldn't make a -- it
20   wouldn't distinguish between drug and dietary
21   supplement.
22        Q.    So sitting here today, do you know
23   if there is a standard for RCTs for dietary
24   supplements?
25              MS. SOBERATS:  Objection to the form
```

1                    JANET WITTES, PH.D.

2    of that question.

3              THE WITNESS:  I don't know what you

4    mean by standard, so I can't answer the

5    question.

6              BY MR. GRAHAM:

7       Q.    Is there somewhere that a dietary

8    supplement manufacturer can look to for

9    guidance on how to perform an RCT for its

10   dietary supplement?

11             MS. SOBERATS:  Objection.  Falls

12   outside the scope of the expert's report and

13   expertise.

14             THE WITNESS:  Yeah.  I -- I don't

15   know what dietary supplement manufacturers look

16   at when they are designing their studies.

17             BY MR. GRAHAM:

18      Q.    So just to clarify, in your opinion

19   is there a different standard for RCTs for

20   drugs and dietary supplements?

21             MS. SOBERATS:  Objection to the form

22   of the question.

23             THE WITNESS:  Again, I am having a

24   very hard time understanding what you mean by

25   the word standard.  So from my point of view

```
 1                  JANET WITTES, PH.D.
 2   when I think about the standard for the
 3   scientific interpretation and design of
 4   studies, it's the same.  That's the same
 5   whether it's a drug or a -- or a biologic or a
 6   vaccine or a supplement or a device or
 7   behavioral modification.  Those are the same.
 8   If you are using the word standard in some
 9   other sense, that is outside my expertise.
10            BY MR. GRAHAM:
11       Q.    Why do you believe they are the
12   same?
13       A.    Why do I believe they are the same?
14   Because it's the same -- this is -- this is
15   seventh grade science.  You make a hypothesis;
16   you -- you describe what you are supposed to
17   do; you test it.  That's the same.  It doesn't
18   matter what the intervention is.
19            The -- the process of making
20   inference is the same when you are comparing --
21   in -- in a parallel group randomized trial,
22   which is what we are talking about, it's --
23   it's the nature of the design, not the nature
24   of the intervention, that defines how you
25   design it and how you analyze the data.
```

1               JANET WITTES, PH.D.

2      Q.    So in your opinion, are you saying

3   that the process for a drug manufacturer to get

4   a drug approved should be the same as the

5   process for a dietary supplement manufacturer

6   to --

7            MS. SOBERATS:  Objection.

8            BY MR. GRAHAM:

9      Q.    -- sell a dietary supplement.

10           MS. SOBERATS:  Objection.

11   Mischaracterizes the witness's testimony and

12   this is outside the scope of her expertise and

13   reports.

14           THE WITNESS:  Yeah.  I have not

15   opined at all about the standards for

16   approve -- for drug or supplement approval.

17   That's a whole different -- what a manufacturer

18   does, that is a whole different field that's

19   outside my field of expertise.

20           BY MR. GRAHAM:

21      Q.    Okay.  And your -- your opinions on

22   this -- on the standard, as we called it, for

23   RCTs, what are you basing your opinions on?

24      A.    Fifty years of -- of training and

25   experience and teaching and reading and

1                      JANET WITTES, PH.D.

2    designing studies and giving talks, writing

3    papers, writing books.

4         Q.    Anything else?

5         A.    I think that covers it.

6         Q.    Are you basing your opinion on any

7    law or regulation?

8         A.    I am not basing my opinion on laws

9    or regulations.

10        Q.    In Paragraph 78 of your report, you

11   conclude that it is your opinion that the

12   Madison Memory Study does not provide evidence

13   of any benefit of Prevagen.

14             Do you see that?

15             MS. SOBERATS:  What -- what part of

16   70 -- are you on Paragraph 75, Glen?

17             MR. GRAHAM:  78.

18             THE WITNESS:  78.

19             MS. SOBERATS:  78.  What part of

20   Paragraph 78 are you referring to again?

21             MR. GRAHAM:  It is the last sentence

22   of Paragraph 78, last three lines.  Begins

23   after report.  It is my opinion that the

24   Madison Memory Study does not provide evidence

25   of any benefit of Prevagen.

1                    JANET WITTES, PH.D.

2        Q.    Didn't the inclusion criteria of the

3   Madison Memory Study protocol focus on those

4   individuals who would have scoring between zero

5   to two on the AD8 screening test?

6        A.    No, it did not.  The -- the protocol

7   did not focus on those.

8        Q.    And what is your -- the basis for

9   your opinion on that?

10       A.    Entry criteria number one.

11       Q.    You mean the Inclusion Criteria?

12       A.    Yes, Inclusion Criteria Number One.

13  It has nothing to -- it doesn't talk about the

14  degree of mem- -- cognitive or memory decline.

15  It just says that the subject has ongoing

16  difficulties, doesn't say how much, and ongoing

17  concern.

18       Q.    You're referring to number one in

19  the inclu- -- Inclusion Criteria:  "Subject has

20  ongoing memory difficulties and concern about

21  the current status of their memory/decline or

22  cognitive abilities associated with the aging

23  process"?  Is that what you're referring to?

24       A.    That's what I'm referring to.

25             And it's actually -- it's really

```
 1                    JANET WITTES, PH.D.

 2   hard to read because the "or" isn't clear,

 3   right?  Concern about -- you can read it in one

 4   of two ways.  Concerned about the current

 5   status of their memory decline, A; or B,

 6   cognitive abilities associated with the aging

 7   process.

 8            The other way you could read it is

 9   "and concerned about the current status of the

10   memory/decline cognitive abilities) associated

11   with the aging process."

12            So this is a very ambiguous -- and

13   is another problem.  There is -- there's an

14   "and" and an "or."  It's very ambiguous, but it

15   seems to be anybody who has ongoing memory

16   difficulties and concern, and then I don't

17   really know how the "or" fits in.

18       Q.    So your opinion that the protocol in

19   the Madison Memory Study did not focus on the

20   AD8 zero to two subgroups is because of this

21   sentence in Paragraph 1 of Inclusion Criteria?

22            MS. SOBERATS:  Objection to the

23   form.

24            THE WITNESS:  This sentence doesn't

25   specify zero to two, nor does anything else in
```

```
1                    JANET WITTES, PH.D.
2    the protocol.
3                    BY MR. GRAHAM:
4         Q.    So is it your opinion because the
5    letters AD8, zero to two, are not in the
6    protocol that is not prespecified analysis?
7                    MS. SOBERATS:  Objection.
8    Mischaracterizes the witness's testimony.
9                    THE WITNESS:  There is nothing in
10   the protocol that specifies that the degree of
11   impairment has to be mild or moderate or
12   anything that would correspond to a zero, one,
13   or two.  There's nothing in the protocol.
14                   I mean, can we keep on going down?
15   Let's look at the rest of the protocol.  Let's
16   look at the Exclusion Criteria.
17                   BY MR. GRAHAM:
18        Q.    Sure.  So in the --
19        A.    Oh, I can't do this.  Sorry.  Sorry.
20   I have to -- yes.  So --
21        Q.    In the exclusion -- Dr. Wittes, in
22   the Exclusion Criteria, the Madison Memory --
23   excuse me, the Madison Memory Study protocol in
24   the Exclusion Criteria section includes those
25   with a significant neurological disease or
```

Page 158

1              JANET WITTES, PH.D.

2

3          CERTIFICATE OF NOTARY PUBLIC

4            I, Bonnie L. Russo, the officer before

5    whom the foregoing deposition was taken, do

6    hereby certify that the witness whose testimony

7    appears in the foregoing deposition was duly

8    sworn by me; that the testimony of said witness

9    was taken by me in shorthand and thereafter

10   reduced to computerized transcription under my

11   direction; that said deposition is a true

12   record of the testimony given by said witness;

13   that I am neither counsel for, related to, nor

14   employed by any of the parties to the action in

15   which this deposition was taken; and further,

16   that I am not a relative or employee of any

17   attorney or counsel employed by the parties

18   hereto, nor financially or otherwise interested

19   in the outcome of the action.

20   Dated: October 15th, 2021

21          _____
                  *Bonnie L. Russo*
22                Bonnie L. Russo
                  Notary Public in and for
23                the District of Columbia

24

25   My Commission expires:  August 14, 2025

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>            Plaintiffs,<br><br>            v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>            Defendants. | Case No. 1:17-cv-00124-LLS |

I, Janet Wittes, hereby make the following corrections to the transcript of my deposition,

which occurred on October 7, 2021:

| PAGE | LINE(S) | CORRECTION | REASON |
|---|---|---|---|
| 13 | 3 | "encompass" should be "encompasses" | Typographical error |
| 16 | 11 | "study that is" should be "study; that is," | Punctuation error |
| 26 | 16 | "standard" should be "standards" | Typographical error |

| 46 | 22 | "structured or" should be "structure" | Typographical error |
|---|---|---|---|
| 51 | 18 | "is" should be "are" | Typographical error |
| 59 | 18 | "design analysis" should be "design and analysis" | Typographical error |
| 60 | 6 | "president emeritus" should be "President Emerita" | Typographical error |
| 61 | 25 | "shared" should be "chaired" | Typographical error |
| 62 | 9, 10 | "women's health initiative" should be "Women's Health Initiative" | Typographical error |
| 65 | 20 | "Hotline" should be "Heart, Lung," | Typographical error |
| 65 | 24 | "ARID" should be "AREDS" | Typographical error |
| 66 | 17 | "INCAM" should be "NCAM" | Typographical error |
| 66 | 23 | "MIDDK" should be "NIDDK" | Typographical error |
| 67 | 12-14 | Should read "All of these were NIH funded" | Typographical error |
| 75 | 3 and 4 | "NIHOBI" should be "NHLBI" | Typographical error |
| 75 | 8 | "NIHOBI" should be "NHLBI" | Typographical error |
| 75 | 13 | "stat collab" should be "Stat Collab" | Typographical error |
| 75 | 18 | "it'" should be "it's" | Typographical error |
| 79 | 10 | "ti" should be "it" | Typographical error |
| 96 | 14 | "collected" should be "conducted" | Typographical error |
| 99 | 18 | "painted" should be "tainted" | Typographical error |
| 107 | 18 | "there for" should be "therefore" | Typographical error |

| 107 | 24 | "mention" should be "mentions" | Typographical error |
|---|---|---|---|
| 113 | 2 | "as" should be "of" | Typographical error |
| 119 | 7 | "chose" should be "choose" | Typographical error |
| 127 | 25 | "pseudo ram" should be "pseudo random" | Typographical error |
| 134 | 20 | "they were" should be "there were" | Typographical error |
| 135 | 24 | "preserved" should be "is preserved" | Typographical error |
| 136 | 5 | "sentence" should be "sense" | Typographical error |
| 138 | 21 | "are" should be "is" | Typographical error |
| 140 | 19 | "can" should be "can't" | Typographical error |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 9, 2021.

_____

JANET WITTES