# EXHIBIT E

# In the Matter of:

# FTC, et al. v. Quincy Bioscience Holding, et al.

*September 24, 2021*
*Dominik Alexander - Confidential*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

## 1

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3
 4   FEDERAL TRADE COMMISSION and    )
 5   THE PEOPLE OF THE STATE OF      )
 6   NEW YORK, by LETITIA JAMES,     ) Matter No.
 7   Attorney General of the State   ) 1:17-cv-00124-LLS
 8   of New York,                    ) CONFIDENTIAL
 9              Plaintiffs,          ) ATTORNEYS' EYES
10        v.                         ) ONLY
11   QUINCY BIOSCIENCE HOLDING       )
12   COMPANY, et al.,                )
13              Defendants.          )
14   -----------------------------------)
15
16                    Friday, September 24, 2021
17                    Via Zoom
18
19        The above-entitled matter came on for the
20   remote video deposition of DOMINIK ALEXANDER PH.D.,
21   pursuant to notice, at 11:00 a.m., Eastern Standard
22   Time; 8:00 a.m., Pacific Standard Time, before Sally Jo
23   Quade, Notary Public.
24
25
```

## 2

```
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE FEDERAL TRADE COMMISSION:
 4        ANDREW WONE, ESQ.
 5        ANNETTE SOBERATS, ESQ.
 6        EDWARD GLENNON, ESQ.
 7        Federal Trade Commission
 8        600 Pennsylvania Avenue, N.W.
 9        Washington, DC 20850
10        (202) 326-2921
11        awone@ftc.gov
12
13
14   ON BEHALF OF THE STATE OF NEW YORK:
15        KATE MATUSCHAK, ESQ.
16        Office of the New York State Attorney General
17        Consumer Frauds and Protection Bureau
18        28 Liberty Street
19        New York, New York 10005
20        (212) 416-6189
21        kate.matuschak@ag.ny.gov
22
23
24
25
```

## 3

```
 1   ON BEHALF OF CORPORATE DEFENDANTS:
 2        GEOFFREY CASTELLO, ESQ.
 3        GLENN T. GRAHAM, ESQ.
 4        LAUREN MARGOLIES, ESQ.
 5        Kelley Drye & Warren
 6        One Jefferson Road
 7        Second Floor
 8        Parsippany, New Jersey 07054
 9        (973) 503-5922
10        gcastello@kelleydrye.com
11
12   ON BEHALF OF THE DEFENDANT UNDERWOOD:
13        MICHAEL B. DeLEEUW, ESQ.
14        TAMAR WISE, ESQ.
15        Cozen O'Connor
16        45 Broadway
17        16th Floor
18        New York, New York 10006
19        (212) 908-1331
20        mdeleeuw@cozen.com
21
22   ALSO PRESENT:
23        William Ducklow, FTC
24        Jaclyn Daboula, New York AG
25
```

## 4

```
 1                FEDERAL TRADE COMMISSION
 2                      I N D E X
 3
 4   WITNESS:                                   EXAMINATION:
 5   Dominik D. Alexander, Ph.D.
 6    By Mr. Wone                                    5
 7
 8
 9   EXHIBITS         DESCRIPTION              FOR ID
10   Number 1     Alexander Report               9
11   Number 2     Alexander Meta-Analysis       43
                  Study
12
     Number 3     Alexander Meta-Analysis of    44
13                RCTs
14   Number 4     Revised Cochrane              50
                  risk-of-bias tool for
15                randomized trials
16   Number 5     Moran Study                   107
17   Number 6     Lerner Study                  108
18   Number 7     Madison Memory Study          109
19   Number 8     Re-analysis of Madison        115
                  Memory Study
20
     Number 9     Quincy Spreadsheet            159
21
     Number 10    Mixed Model Results - ISL     160
22
     Number 11    Yurko-Mauro PLOS One Study    162
23
     Number 12    MMS List of Subgroup          198
24                Analyses
25
```

5

|   | EXHIBITS | DESCRIPTION | FOR ID |
|---|---|---|---|
| | Number 13 | MMS Write-up Interim Data | 199 |
| | Number 14 | SUR Analysis | 230 |
| | Number 15 | Impact of Prevagen on Memory | 231 |
| | Number 16 | Monitoring Test Results for Prevagen | 232 |
| | Number 17 | Memory Improvement Trial | 234 |

6

                    P R O C E E D I N G S
                         - - - - -
         VIDEO TECHNICIAN:  Here begins disk 1 in the video deposition of Dominik D. Alexander, Ph.D., M.S.P.H., taken in the matter of Federal Trade Commission and the People of the State of New York by Letitia James, Attorney General of the State of New York, v. Quincy Bioscience Holding Company, et al. in the United States District Court, Southern District of New York, Matter Number 1:17-CV-00124-LLS.
         Today's date is September 24th, 2021.  The time on the video monitor is 8:02 a.m., Pacific time.  This deposition is being held remotely via Zoom video teleconference.  The court reporter is Sally Quade, on behalf of For The Record, Inc.  The video camera operator is Eric Vavrasek on behalf of For The Record, Inc.
         Counsel and others, please introduce themselves and state whom they represent, beginning with the party noticing the deposition.
         MR. WONE:  Good morning.  My name is Andrew Wone and I am appearing on behalf of the Federal Trade Commission.  Joining me are attorneys Edward Glennon and Annette Soberats and investigator William Ducklow.
         MS. MATUSCHAK:  Kate Matuschak, I'm here on

7

behalf of the New York state Attorney General's Office.
         MR. CASTELLO:  Good morning, Geoffrey Castello, Kelley, Drye & Warren, LLP.  I have with me Glenn Graham on behalf of the corporate defendants.
         MR. DE LEEUW:  Michael de Leeuw from Cozen O'Connor, and I have with me Tamar Wise on behalf of Mark Underwood.
         VIDEO TECHNICIAN:  Will the court reporter please swear in the witness.
         Whereupon--
              DOMINIK D. ALEXANDER, PH.D.
a witness, called for examination, having been first duly sworn, was examined and testified as follows:
         VIDEO TECHNICIAN:  Please proceed.
                    EXAMINATION
         BY MR. WONE:
     Q.  Good morning, Dr. Alexander.
     A.  Good morning.
     Q.  Would you please state and spell your name for the record.
     A.  Dominik Dane Alexander, D O M I N I K, Dane, D A N E, Alexander, A L E X A N D E R.
     Q.  Thank you.  Okay.  So I'm going to start off going over some procedures, which will hopefully make this a little bit easier for all of us.  If you don't

8

hear a question that I say, please say so and I will repeat it.  If you don't understand a question that I ask, please let me know and I will rephrase it.
         If you realize an earlier answer that you gave was incomplete or incorrect, please say that -- you let me know and you'll be given a chance to supplement or modify your answer.
         If you would like to take a break at any point throughout the day, please let me know.  If a question is pending, I ask that you answer the question before we take a break.
     A.  Understood.
     Q.  Great.  If you answer a question, I'll assume you have heard it and understood it and have given me your best recollection.  Because the deposition is being recorded or conducted remotely, it's important that you speak your answers.  The court reporter cannot record nodding or head shaking.  Do you understand?
     A.  I do.
     Q.  It's also important that only one person speak at a time because the court reporter can only record one person talking.  So if you could please let me finish my question before you begin your answer, and I'll do my best to give you a chance to finish your responses before asking the next question.

Page 61

1  numerical result being assessed likely to have been
2  selected, on the basis of the results from ... multiple
3  eligible outcome measurements (e.g. scales, definitions,
4  time points) within the outcome domain?"
5        BY MR. WONE:
6     Q.  And in the next column, the one that's
7  contained -- do you see that, Dr. Alexander?
8        MR. CASTELLO:  Andrew, you're breaking up again.
9  Every time you look away.  I know it's hard, I'm not
10 being critical, I just, I can't hear at all.  I don't
11 know if the court reporter can, but I can't.
12       MR. WONE:  I understand.
13       In the next column, the one labeled Elaboration,
14 do you see that, Dr. Alexander?
15       THE WITNESS:  I see the column, yes, the middle
16 column.
17       BY MR. WONE:
18    Q.  So in the row 5.2, let's see, starting and go to
19 the third line, there's a sentence that starts with,
20 "If."  Do you see that, Dr. Alexander?
21    A.  I do, I do, yes.
22    Q.  And do you agree with that sentence?
23       MR. CASTELLO:  Objection, falls outside of the
24 scope of the expert -- the witness' expert report.
25       THE WITNESS:  No, as stated, not necessarily.

Page 62

1  There may be an instance where that could occur, but we
2  would have to unpack that a bit more.  It says --
3  there's a "high" at the end, it says, "there is a high
4  risk of bias in the fully reported result."  That's not
5  necessarily true.  What you would have to consider when
6  interpreting that statement is the totality of the
7  patterns of associations across all of those multiple
8  measurements.
9        So if we had a situation where we're looking at
10 multiple outcome measurements, for example, and let's
11 say if we're doing some kind of genetic profiling and we
12 have 100 different outcomes, and two of them were
13 statistically significant, and 98 were completely
14 divergent, that could be an example where that outcome
15 may not -- may contribute to bias or may be biased and
16 not consistent with the fully reported result.
17       So, again, we would have to go back and look at
18 the context of that evaluation for those outcomes to
19 determine the patterns of associations across those
20 other end points.
21       BY MR. WONE:
22    Q.  And that is something you do when you're
23 evaluating -- when you evaluated the RCTs for the
24 Omega-3 heart study, look at how -- what measures were
25 used in the study and what was reported?

Page 63

1        MR. CASTELLO:  Objection.
2        THE WITNESS:  Well, I certainly consider all
3  elements of the published and reported data, if
4  available, and epidemiology is about looking at patterns
5  of associations, and it's investigating patterns of
6  associations and trends, and that's certainly in line
7  with what I do epidemiologically.
8        MR. WONE:  Okay.  I think we can take a break
9  now, if that's fine with you, Geoff.
10       MR. CASTELLO:  Yeah, thank you, Andrew,
11 appreciate it.
12       MR. WONE:  We'll go off the record.
13       VIDEO TECHNICIAN:  Just let me read us off.  We
14 are going off the record at 9:40 a.m. [Pacific Standard
15 Time.]
16       (Whereupon, there was a recess in the
17 proceedings.)
18       VIDEO TECHNICIAN:  We are going back on the
19 record at 10:02 a.m. [Pacific Standard Time.]
20       BY MR. WONE:
21    Q.  Dr. Alexander, I wanted to pick up with something
22 you mentioned earlier.  I think you mentioned the
23 distinction between medical and general causation.  Is
24 that right?
25    A.  I mentioned medical causation, I mentioned

Page 64

1  general causation.  I said they are not mutually
2  exclusive.
3     Q.  What is medical causation?
4     A.  Medical causation typically involves a specific
5  cause in a specific person that a clinician commonly
6  assesses and makes.
7     Q.  So is medical causation within general causation?
8     A.  Medical causation is informed by general
9  causation, meaning if exposure to X does not cause
10 disease Y, then Mr. So and so's disease was not caused
11 by exposure X.
12    Q.  Okay.  And going back to the -- before the break
13 we were talking about pre-specification, in terms -- in
14 the context of an RCT.  Could you explain how -- how
15 would you determine whether something in an RCT was
16 pre-specified?
17    A.  Well, what -- first of all, what do you mean by
18 pre -- what was pre-specified I guess is my question for
19 clarity.
20    Q.  For example, how would you determine whether the
21 measure being reported was -- in the report was
22 pre-specified?
23    A.  The measure being reported meaning the type of
24 outcome being reported, that could be stated in the
25 objective of the study, that could be in the

## Page 245

1  "healthy and able to comply," in terms of the
2  individuals with the scores. And I said, again,
3  "participants were randomized." And something I recited
4  to you earlier, "exclusion and inclusion criteria is
5  most applicable to that AD8 0-2 grouping." And I wrote
6  the words, "Uniform, standardized and harmonized."
7      **Q. And how about on the study protocol, did you**
8  **write any words on that?**
9      A. Not a single word.
10     **Q. Did you otherwise make any markings on the**
11 **document like underlining?**
12     A. I underlined a few things, but nothing of
13 substance. It was just during -- during the break.
14     **Q. Okay. Those are the questions I have. I repeat**
15 **our request on the record that the defendants produce**
16 **the documents that Dr. Alexander printed out and**
17 **referred to throughout his deposition, and that the**
18 **deposition be held open given that Dr. Alexander**
19 **reviewed documents that have not been identified with**
20 **specificity to the plaintiffs.**
21         MR. CASTELLO: We will take the document request
22 under advisement, and as I mentioned earlier, we would
23 oppose that motion, but we will talk that through with
24 you.
25         MR. DE LEEUW: We will oppose that as well.

## Page 246

1          MR. WONE: Do the defendants plan to produce a
2  list of documents -- either the documents themselves or
3  a list of Bates numbers that correspond to the documents
4  that Dr. Alexander reviewed?
5          MR. CASTELLO: I'm going to speak to my
6  co-counsel and we will get back to you and we should be
7  able to get back to you on Monday.
8          MR. WONE: Okay. Kate?
9          MS. MATUSCHAK: Thank you. This is Kate
10 Matuschak from New York State Attorney General's Office.
11 I have no questions today, but I also would hold the
12 deposition open and reserve the right to ask additional
13 questions once we know the identity of all of the
14 documents that Dr. Alexander has reviewed.
15         MR. CASTELLO: I don't have any questions.
16         MR. WONE: Okay.
17         MR. DE LEEUW: Yeah, Dr. Alexander, Michael de
18 Leeuw. Could you read the entire contents of the white
19 pages to us right now? No, I'm just kidding, we're
20 done, no questions.
21         THE WITNESS: On the screen you mean?
22         MR. DE LEEUW: Yeah, put it on there.
23         THE WITNESS: Yeah, put it on.
24         VIDEO TECHNICIAN: Okay. This concludes the
25 deposition of Dominik Alexander, we are going off the

## Page 247

1  record at 4:51 p.m. [Pacific Standard Time.]
2          (Reading and signature reserved.)
3          (Whereupon, at 7:51 p.m., the deposition was
4  adjourned.)

## Page 248

DISTRICT OF COLUMBIA, to wit:

       I, Sally Jo Quade, CERT, the officer before whom
the foregoing deposition was taken, do hereby certify
that the within-named witness personally appeared before
me at the time and place herein set out, and after
having been duly sworn by me, according to law, was
examined by counsel.
       I further certify that the examination was
recorded stenographically by me and this transcript is a
true record of the proceedings.
       I further certify that I am not of counsel to any
of the parties, nor an employee of counsel, nor related
to any of the parties, nor in any way interested in the
outcome of this action.

       As witness my hand and notarial seal this 1st day
of October, 2021.


                    s/Sally Jo Quade
                    Sally Jo Quade, CERT
                    Notary Public


MY COMMISSION EXPIRES:
       7/14/2023

249

1     CERTIFICATE OF DEPONENT
2
3
4     I hereby certify that I have read and examined the foregoing transcript, and the same is a true and accurate record of the testimony given by me.
5
6
7     Any additions or corrections that I feel are necessary, I will attach on a separate sheet of paper to the original transcript.
8
9
10    I hereby certify, under penalty of perjury, that I have affixed my signature hereto on the date so indicated.
11
12
13              DATED:
14
15
16
17    _____
      DOMINIK D. ALEXANDER, Ph.D.
18
19
20
21
22
23
24
25

250

1     WITNESS: DOMINIK D. ALEXANDER, PH.D.
2     DATE: FRIDAY, SEPTEMBER 22, 2021
3     CASE: FTC, et al., v. ZURIXX, et al.
4     Please note any errors and the corrections thereof on this errata sheet. The rules require a reason for any
5     change or correction. It may be general, such as "To correct stenographic error," or "To clarify the record,"
6     or "To conform with the facts."
7     PAGE LINE  CORRECTION     REASON FOR CHANGE
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

63 (Pages 249 to 250)