## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>Defendants. | Case No. 1:17-cv-00124-LLS<br><br><br>**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS** |

Plaintiffs, the Federal Trade Commission and the People of the State of New York, by Letitia James, Attorney General of the State of New York, respectfully submit the attached proposed jury instructions.[1]

---

[1] Plaintiffs reserve their right to supplement these proposed jury instructions based on Defendants' proposed jury instructions and the final charging conference with the Court.

## GENERAL PRE-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 1

### General Background About the Case

  This is a lawsuit bought by two Plaintiffs—the Federal Trade Commission and the New York Attorney General—against the companies, Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Quincy Bioscience Manufacturing, LLC and Prevagen, Inc., whom I will collectively refer to as "Quincy Bioscience," and the Individual Defendant Mark Underwood, an officer of Quincy Bioscience.  When I refer to Quincy Bioscience and Mark Underwood collectively, I will use the term "Defendants."

  This case involves a product called Prevagen, which Defendants advertise, market, and sell nationwide, including in the state of New York.  The FTC and the New York Attorney General allege that Defendants' advertising claims for Prevagen are deceptive because Defendants lack substantiation for the claims they have made about Prevagen—in other words, Defendants lack scientific evidence sufficient to support the claims being made.  Defendants have denied the allegations.

### Source/Authority

  *See* Complaint (ECF No. 1); Quincy Bioscience Answer (ECF No. 73); Underwood Answer (ECF No. 74).

2

**GENERAL PRE-TRIAL INSTRUCTIONS**

**Plaintiffs' Requested Instruction No. 2**

**Opening Instructions**

You will sometimes hear me refer to "counsel."   "Counsel" is another way of saying lawyer or attorney.   I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.   When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.   When I say, "admitted into evidence," or "received into evidence," I am indicating that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact.   I will decide all questions of law that arise during the trial.   Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.   Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses.   During the trial, you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.   It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible.   You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.   If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.   You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.

The lawyers are not allowed to speak with you during this case.   When you see the lawyers at recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.   Sometimes, you may be excused from the courtroom

during these discussions.   I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**<u>Source/Authority</u>**

3 Fed. Jury Prac. & Instr. § 101:01 (6th ed.) (modified).

## GENERAL PRE-TRIAL INSTRUCTIONS

### <u>Plaintiffs' Requested Instruction No. 3</u>

### <u>Order of Trial</u>

The case will proceed as follows:

First, the lawyers for each side may make opening statements.   What is said in the opening statements is not evidence, but is simply an outline or summary to help you understand what each party expects the evidence to show.   A party is not required to make an opening statement.

After the opening statements, the lawyers representing the Plaintiffs, the FTC and the New York Attorney General, will present evidence in support of their counts and lawyers for Quincy Bioscience and Mark Underwood may cross-examine the witnesses.   Lawyers for Quincy Bioscience and Mark Underwood may also present evidence and the lawyers representing the Plaintiffs, the FTC and the New York Attorney General, may cross-examine those witnesses.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown.   What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.   You will then decide the case.

### <u>Source/Authority</u>

3 Fed. Jury Prac. & Instr. § 101:02 (6th ed.) (modified to reflect the facts of the case).

## GENERAL PRE-TRIAL INSTRUCTIONS
### Plaintiffs' Requested Instruction No. 4

### Province of Judge and Jury

After all the evidence has been heard and argument and instructions are finished, you will meet to make your decision.  Your will determine the facts from all the testimony and other evidence that is presented.  You are the sole and exclusive judge of the facts.  I must stress that you must accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury.  Such comments are only expressions of my opinion as to the facts.  You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

### Source/Authority
3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.)

## GENERAL PRE-TRIAL INSTRUCTIONS
### Plaintiffs' Requested Instruction No. 5

### Jury Conduct

To ensure fairness, you must obey the following rules:

1. Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2. Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.   You may tell people you are a juror, but do not tell them anything else about the case.

3. Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it, until the trial has ended.   If someone should try to talk to you about the case during the trial, please report it to me immediately.

4. During the trial, you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them.   It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5. Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case, or about anyone involved with it.

6. Do not make up your mind during the trial about what the verdict should be.   Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

7. If you need to tell me something, simply give a signed note to the clerk to give to me.

### Source/Authority

3 Fed. Jury Prac. & Instr. § 101:11 (6th ed.).

## GENERAL PRE-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 6

#### Juror Use of Technology

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.   This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or corporations involved in the case.   In other words, you should not consult dictionaries or reference materials, search the Internet, websites, or blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.   Do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, not even your fellow jurors.   After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I know that many of you use cell phones, the Internet and other tools of technology. You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case.   This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, through e-mail or text messaging, or through any blog, website, or app, including Twitter, Facebook, Instagram, Snapchat, Tik Tok, LinkedIn, or YouTube.   You may not use any similar technology or social media, even if I have not specifically mentioned it here.   I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

#### Source/Authority

3 Fed. Jury Prac. & Instr. § 101:13 (6th ed.) (modified).

## GENERAL PRE-TRIAL INSTRUCTIONS

### <u>Plaintiffs' Requested Instruction No. 7</u>

### <u>Juror Questions</u>

I do not permit jurors to ask questions of witnesses or of the lawyers.   Please do not interrupt the lawyers during their examination of witnesses.   If you are unable to hear a witness or a lawyer, please raise your hand immediately and I will see that this is corrected.

### <u>Source/Authority</u>

3 Fed. Jury Prac. & Instr. § 101:18 (6th ed.).

# GENERAL PRE-TRIAL INSTRUCTIONS

## Plaintiffs' Requested Instruction No. 8

### Evidence in the Case

The evidence in the case will consist of the following:

1. The sworn testimony of the witnesses, no matter who called a witness.

2. All exhibits received in evidence, regardless of who may have produced the exhibits.

3. All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence.   Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.   In some cases, a deposition may be played for you on video.   Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.   You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence.   The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Some evidence is admitted for a limited purpose only.   When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.   But in your consideration of the evidence, you are not limited to the statements of the witness.   In other words, you are not limited solely to what you see and hear as the witnesses testified.   You may draw from the facts that you find have been proved such reasonable inferences or conclusions as you feel are justified in light of your experience.

### Source/Authority

3 Fed. Jury Prac. & Instr. §§ 101.40, 101.43, 101.44 (6th ed.) (modified).

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 9

#### Role of the Jury

Now that you have heard the evidence and the arguments, it is my duty to give you instructions about the law applicable to this case.  If anyone has stated a legal principle different from any that I state to you in my instructions, it is my instructions you must follow. It is your duty as jurors to follow the law as stated in these instructions and to apply the rules of law I give you to the facts as you find them from the evidence in the case.

Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty as jurors to base a verdict on any other view of the law than that given in the instructions of the Court, just as it would be a violation of your sworn duty as judges of the facts to base a verdict on anything but the evidence in the case.

Nothing I say in these instructions and no ruling I made during the trial, nor anything I may have said or done during the trial, is to be taken as an indication that I have any view about the facts in this case.   It's not my function to determine the facts, but rather yours.

You have been chosen and sworn as jurors in this case to try the issues of fact.   You are to perform your duty without bias or prejudice as to any party.   Our system of law does not permit jurors to be governed by sympathy or prejudice or public opinion.   Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences to any party.

#### Source/Authority

*See* Jury Instructions, *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, No. 17-cv-4259-LLS (S.D.N.Y. June 1, 2022); *see also* Jury Instructions, *Tesla Wall Sys., LLC v. Budd*, No. 14-cv-08564-LLS (S.D.N.Y. Nov. 7, 2016); 4 Modern Federal Jury Instructions—Civil P 71.1 (2022) ("You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.  You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict.").

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 10

### Statement of the Case

The FTC has brought two counts that it has the burden to prove.  The FTC contends that Quincy Bioscience and Mark Underwood made deceptive advertising claims for Prevagen in violation of the Sections 5 and 12 of the Federal Trade Commission Act.

The New York Attorney General has brought two counts that it has the burden to prove. The New York AG contends that Quincy Bioscience made deceptive advertising claims for Prevagen in violation of Section 63(12) of New York Executive Law and Sections 349 and 350 of New York General Business Law.

I will detail each of the elements of these counts in the instructions I give you.  Each of these counts should be evaluated separately, although the counts may have similar elements of proof.  Quincy Bioscience and Mark Underwood have asserted affirmative defenses.  I will detail each of these affirmative defenses in these instructions.

### Source/Authority

*See* Complaint (ECF No. 1); Corporate Defendants' Answer (ECF No. 73); Underwood Answer (ECF No. 74).

## GENERAL POST-TRIAL INSTRUCTIONS

### <u>Plaintiffs' Requested Instruction No. 11</u>

### <u>Burden of Proof—Preponderance of the Evidence</u>

In this civil case, the party with the burden of proof on an issue must usually prove the truth of the assertions by a preponderance of the evidence.   To prove something by a preponderance of the evidence means to establish that something is more likely so than not so. In other words, the preponderance of evidence in this case means such evidence, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proven is more likely true than not.

The burden of proving something by a preponderance means that if, after hearing all of the evidence, you believe it's more likely than not that some event occurred, then that fact has been proved to you by a preponderance of the evidence.   If you believe it more likely that it did not occur, or that it is equally likely that the event occurred or did not occur, then the party having the burden of proving that fact to you has not succeeded.   A preponderance-of-the-evidence standard does not require proof "beyond a reasonable doubt," which is the standard in criminal cases.  Instead, it only requires that you believe it is slightly more likely that the event occurred than it did not occur.   If you believe there is a 51% chance that the event occurred, then the preponderance standard has been met.

### <u>Source/Authority</u>

*See* Jury Instructions, *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, No. 17-cv-4259-LLS (S.D.N.Y. June 1, 2022); *see also* Jury Instructions, *Tesla Wall Sys., LLC v. Budd*, No. 14-cv-08564-LLS (S.D.N.Y. Nov. 7, 2016) (modified); 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.) (describing the preponderance of the evidence standard) ("[A] preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true . . . You may have heard of the term 'proof beyond a reasonable doubt.' That is a stricter standard applicable in criminal cases.  It does not apply in civil cases such as this.").

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 12

### Evidence in this Case

The evidence in the case consists of the sworn testimony of the witnesses, regardless of which side called them, and of all exhibits received in evidence, regardless of who produced them.  There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts in a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect, or circumstantial, evidence, the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.  For example, if you wake up in the morning and smell bacon and hear noise in the kitchen, you may conclude that someone is making breakfast.  That's all there is to circumstantial evidence.  From facts established as true, you determine that some other fact is or is not so.  As a general rule, the law makes no distinction between direct and circumstantial evidence.  It simply requires that the jury find the facts in accordance with all of the evidence in the case, whether direct or circumstantial.  You are permitted to draw from facts which you find to have been proved such reasonable inferences about other facts as seem justified in light of your experience.  An inference is not a guess, and it is not speculation.  It's a reasoned, logical deduction based on the proof as to some fact that some other fact did or did not exist.

### Source/Authority

*See* Jury Instructions, *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, No. 17-cv-4259-LLS (S.D.N.Y. June 1, 2022); *see also* 3 Fed. Jury Prac. & Instr. § 103:30 (6th ed.) ("Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to."); 4 Modern Federal Jury Instructions-Civil 74-2 (2022) ("Direct evidence is when a witness testifies about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.  The other type of evidence is circumstantial evidence.  This evidence which tends to prove a disputed fact by proof of other facts.").

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 13

#### Credibility of Witnesses

As the sole judges of the facts, you must determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you attach to it.  In your everyday affairs, you determine for yourselves the reliability or unreliability of statements made to you by others.  The same tests that you use in your everyday dealings are the tests which you apply in your deliberations.  The interest or lack of interest of any witness in the outcome of the case, the bias or prejudice of the witnesses, if there would be any, the appearance, the manner in which the witness gives his testimony on the stand, the opportunity that the witness had to observe the facts concerning which he testified, the probability or the improbability of the witness' testimony when viewed in the light of all the other testimony in the case, these are all items to be taken into your consideration in determining the weight, if any, that you will give to that witness' testimony.

#### Source/Authority

*See* Jury Instructions, *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, No. 17-cv-4259-LLS (S.D.N.Y. June 1, 2022); 4 Modern Federal Jury Instructions-Civil P 76.01 (2022) ("You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life . . . In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.").

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 14

#### Opinion Evidence – Expert Witness

You've heard testimony from experts.  An expert is a witness who is permitted to testify as to his or her opinion of a matter in which they have special knowledge or skill or experience or training.  An expert's testimony is offered only to assist you.  You must weigh the expert testimony according to the considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the testimony whatever weight, if any, you find it deserves in the light of all of the evidence in the case.  If you should find that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound or are outweighed by other evidence, you may disregard the opinion entirely, or accept those portions which you find have merit.

#### Source/Authority

*See* Jury Instructions, *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, No. 17-cv-4259-LLS (S.D.N.Y. June 1, 2022).

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 15

### Common Enterprise

A common enterprise means that each company that is a defendant in a case may be held liable for the deceptive acts and practices of the other companies that are defendants.

Here, the FTC and the New York Attorney General allege that Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Quincy Bioscience Manufacturing, LLC and Prevagen, Inc. operated as a common enterprise while engaged in deceptive advertising practices.

When determining whether a common enterprise exists, the pattern and framework of the whole enterprise must be taken into consideration.  To determine whether a common enterprise exists among Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Quincy Bioscience Manufacturing, LLC and Prevagen, Inc., you can evaluate factors such as:  common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence that reveals that no real distinction exists between the companies.

If you find that Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Quincy Bioscience Manufacturing, LLC and Prevagen, Inc. operated as a common enterprise, then all will be responsible for any deceptive acts and practices attributed to any of these companies.  You do not need to decide which deceptive acts and practices are attributable to each defendant.

### Source/Authority

*See FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010) (finding common enterprise where companies pooled resources, staff, and funds); *New York v. Debt Resolve*, 387 F. Supp. 3d 358, 365-66  (S.D.N.Y. 2019) (stating relevant factors for finding common enterprise include employees in common, common control, sharing offices, commingling funds, and sharing advertising and marketing) (quoting *FTC v. Consumer Health Benefits Ass'n II*, No. 10-civ-3551, 2012 U.S. Dist. LEXIS 72161, at *15 (E.D.N.Y. May 12, 2012)); *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 470 (S.D.N.Y. 2014) ("The very nature of this theory is that corporate entities that are a part of the common enterprise are liable for the conduct of other entities in the enterprise, regardless of whether the particular entity engaged in the behavior at issue."); *FTC v. LoanPointe*, No. 2:10-CV-225DAK, 2011 U.S. Dist. LEXIS 104982, at *24-25 (D. Utah Sept. 16, 2011) (stating common enterprise exists where companies share common control, office space, employees, interrelated funds); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1182-84 (N.D. Ga. 2008) (finding common enterprise where companies shared officers, office space, advertising materials); *FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1116 (C.D. Cal. 2008) (finding corporations to be in common enterprise and thus held

jointly and severally liable where corporations shared office space, executives and employees, payroll funds, and advertising); *FTC v. J.K. Publ'ns, Inc*., 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000) (finding no real distinction among the companies).

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 16

#### Individual Liability

The FTC contends that Individual Defendant Mark Underwood is individually liable for violating the FTC Act.  To establish individual liability, the FTC must prove that Mr. Underwood:  1) participated directly in Quincy Bioscience's wrongful acts or practices, or had the authority to control Quincy Bioscience; and 2) had knowledge or awareness of the deceptive acts or practices.

Participation can be established by showing that Mr. Underwood was involved in the unlawful conduct.  Authority to control can be shown by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer. Evidence that Mr. Underwood formulated policies, oversaw and directed employees, signed corporate documents, controlled finances or day-to-day operations, or otherwise held himself out as an authorized officer indicates control over Quincy Bioscience.  Ultimate or sole control is not necessary to establish individual liability.

Evidence of intent is not necessary to hold Mr. Underwood individually liable.  The knowledge requirement may be fulfilled by showing that Mr. Underwood had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.  The degree of participation in business affairs is probative of knowledge. In other words, you may find that Mr. Underwood was so involved in the activities of the company that he had the knowledge required to establish liability.

#### Source/Authority

*See FTC v. Moses*, 913 F.3d 297, 306-07 (2d Cir. 2019) (stating individual can be held liable for corporation's deceptive acts if he has knowledge of deceptive acts and directly participates in the acts or has authority to control them); *FTC v. Med. Billers Net.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (stating evidence of intent not necessary to hold individual personally liable).

## GENERAL POST-TRIAL INSTRUCTIONS

### __Plaintiffs' Requested Instruction No. 17__

__Intent__

Evidence of intent to deceive is not required to establish liability.  You may find Defendants liable even if there is no evidence of an intent to deceive.

__Source/Authority__

*See FTC v. Moses*, 913 F.3d 297, 306 (2d. Cir. 2019) (stating there can be deception without an intent to deceive); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000) (stating it is not necessary to show intent to defraud to establish a Section 5 violation); *FTC v. Med. Billers Net.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (stating evidence of intent not necessary to hold individual personally liable); *People v. Trump Entrepreneur Initiative LLC*, 137 A.D.3d 409, 417 (N.Y. App. Div. 2016); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 2003) (noting intent to deceive not required under N.Y. GBL § 349); *People v. Apple Health & Sports Clubs, Ltd.*, 206 A.D.2d 266, 267 (N.Y. App. Div. 1994) (noting intent not required for N.Y. Exec. Law § 63(12) fraud).

## GENERAL POST-TRIAL INSTRUCTIONS

### Plaintiffs' Requested Instruction No. 18

**Advice of Counsel**

You may not consider reliance on the advice of counsel as a defense to liability.

**Source/Authority**

*See FTC v. Cyberspace*, 453 F.3d 1196, 1202 (9th Cir. 2006) (stating that reliance on advice of counsel is not a valid defense on the question of knowledge required for individual liability); *FTC v. Direct Benefits Grp., LLC*, No. 6:11-CV-1186-ORL-28, 2013 LEXIS 162696, at *10 (M.D. Fla. Nov. 14, 2012) (stating "reliance on advice of counsel [is] not a valid defense on the question of knowledge required for individual liability . . . because counsel cannot sanction something that the defendant should have known was wrong") (internal citations omitted); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 321-322 (S.D.N.Y. 2008) (stating reliance on the advice of counsel is not a defense on the question of knowledge for individual liability).

## FTC'S COUNTS I AND II – UNSUBSTANTIATED EFFICACY CLAIMS AND FALSE PROOF CLAIMS

### Plaintiffs' Requested Instruction No. 19

### FTC Count I – Efficacy Claims

The FTC contends that Quincy Bioscience and Mark Underwood violated the FTC Act by making deceptive advertising claims for Prevagen.

In Count I of the complaint, the FTC contends that Defendants made the following representations in their advertising without adequate substantiation—that is, adequate scientific evidence:

1. Prevagen improves memory;
2. Prevagen improves memory within 90 days;
3. Prevagen reduces memory problems associated with aging; and
4. Prevagen provides other cognitive benefits, including, but not limited to, healthy brain function, a sharper mind, and clearer thinking.

These representations are known as efficacy claims. An efficacy claim is a claim about a product's attributes, performance, or efficacy, without indicating any particular level of support for such claim.

### Source/Authority

*See* Complaint (ECF No. 1) ¶ 36; *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2016) ("an efficacy claim suggests that a product successfully performs the advertised function or yields the advertised benefit, but includes no suggestion of scientific proof of the product's effectiveness"); *FTC v. NPB Advertising*, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) ("a health-related efficacy claim" states that the product yields the benefit promised); *Daniel Chapter One*, 2009 FTC LEXIS 157, at *226 (Aug. 5, 2009) (initial decision) ("A non-establishment claim is simply a claim about a product's attributes, performance, or efficacy, without indicating any particular level of support for such claim." (citing *Thompson Medical Co.*, 104 F.T.C. 648, 815, 1984 FTC LEXIS 6, at *370 (Nov. 23, 1984))).

## FTC'S COUNTS I AND II – UNSUBSTANTIATED EFFICACY CLAIMS AND FALSE PROOF CLAIMS

### Plaintiffs' Requested Instruction No. 20

#### FTC Count II—Establishment Claims

In Count II of the complaint, the FTC contends that Quincy Bioscience and Mark Underwood made the following representations in its advertising for Prevagen and that these representations were false:

1. Prevagen is clinically shown to improve memory;
2. Prevagen is clinically shown to improve memory within 90 days;
3. Prevagen is clinically shown to reduce memory problems associated with aging; and
4. Prevagen is clinically shown to provide other cognitive benefits, including, but not limited to, healthy brain function, a sharper mind, and clearer thinking.

These representations are known as establishment claims.  Establishment claims are those that contain representations regarding the amount of support the advertiser has for its claims.

#### Source/Authority

*See* Complaint (ECF No. 1) ¶¶ 39-40; *Daniel Chapter One*, 2009 FTC LEXIS 157, at *225 (Aug. 5, 2009) (initial decision) ("Establishment claims are those that contain representations regarding the amount of support the advertiser has for its product claims.") (citations omitted); *FTC v. Direct Mktg. Concepts*, 569 F. Supp. 2d 285, 298-99 (D. Mass. 2008) (stating that examples of establishment claims include statements such as 'tests prove,' 'doctors recommend,' or 'studies show') (citations omitted).

## FTC'S COUNTS I AND II – UNSUBSTANTIATED EFFICACY CLAIMS AND FALSE PROOF CLAIMS

### Plaintiffs' Requested Instruction No. 21

**Elements of Proof for FTC Counts**

To find for the FTC on Counts I and II of the Complaint, you must conclude that each of the following has been proved by a preponderance of the evidence:

1) The representation was conveyed in Defendants' advertising;
2) The representation was likely to mislead consumers acting reasonably under the circumstances; and
3) The representation was material.

**Source/Authority**

*See FTC v. LeadClick Media*, 838 F.3d 158, 168 (2d Cir. 2016); *POM Wonderful, LLC*, 777 F.3d 478, 490 (D.C. Cir. 2015); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1188-89 (N.D. Ga. 2008); *FTC. v. QT, Inc*., 448 F. Supp. 2d 908, 957 (N.D. Ill. 2006); Joint Pre-Trial Order (ECF No. 299), Agreed Findings ¶¶ 6, 11-12 & Exh. A; Declaration of Todd Olson (Apr. 14, 2022) (ECF No. 224) ¶¶ 12-24.

## NYAG'S COUNT III – UNSUBSTANTIATED ADVERTISING CLAIMS

### Plaintiffs' Requested Instruction No. 22

### NYAG Count III – Repeated Fraudulent or Illegal Acts

The NYAG contends that Quincy Bioscience violated New York Executive Law § 63(12) by making deceptive advertising claims for Prevagen.

In Count III of the Complaint, the NYAG contends that Quincy Bioscience made the following representations in their advertising without adequate substantiation:

1. Prevagen improves memory;
2. Prevagen is clinically shown to improve memory;
3. Prevagen improves memory within 90 days;
4. Prevagen is clinically shown to improve memory within 90 days;
5. Prevagen reduces memory problems associated with aging;
6. Prevagen is clinically shown to reduce memory problems associated with aging;
7. Prevagen provides other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking; and
8. Prevagen is clinically shown to provide other cognitive benefits, including, but not limited to, healthy brain function, a sharper mind, and clearer thinking.

The NYAG contends that these representations were false or misleading, and/or were not substantiated at the time the representations were made.  The NYAG therefore contends that these representations constituted fraudulent and illegal conduct, which is prohibited by § 63(12).

### Source/Authority

*See* Complaint (ECF No. 1) ¶¶ 42-43; N.Y. Exec. Law § 63(12); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314 (N.Y. App. Div. 2003) (describing § 63(12) fraudulent conduct); *State v. Princess Prestige*, 42 N.Y.2d 104, 107 (N.Y. 1977) (noting that violation of state or federal law constitutes illegality within the meaning of § 63(12)).

## NYAG'S COUNT III – UNSUBSTANTIATED ADVERTISING CLAIMS

### Plaintiffs' Requested Instruction No. 23

**Elements of Proof for NYAG Count III**

To find for the NYAG on Count III of the Complaint, you must conclude that each of the following has been proved by a preponderance of the evidence:

1. The representations were conveyed in Quincy Bioscience's advertising;
2. The representations were repeated or persistent;
3. The representations had the capacity or tendency to deceive not only the average consumer, but also the ignorant, the unthinking, and the credulous, or created an atmosphere conducive to fraud;
4. The representations were material.

Unlike with common law fraud, the NYAG does not need to establish that there was an intent to deceive or that consumers relied on Quincy Bioscience's representations.

**Source/Authority**

*See* N.Y. Exec. Law § 63(12); *People v. Trump Entrepreneur Initiative LLC*, 137 A.D.3d 409, 417 (N.Y. App. Div. 2016); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314 (N.Y. App. Div. 2003) (noting that § 63(12) protects "not only the average consumer, but also 'the ignorant, the unthinking and the credulous'") (quoting *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (N.Y. 1977)); *People v. Apple Health & Sports Club, Ltd.*, 206 A.D.2d 266, 267 (N.Y. App. Div. 1994); *State v. Princess Prestige*, 42 N.Y.2d 104, 107 (N.Y. 1977) (noting that violation of state or federal law constitutes illegality within the meaning of § 63(12)); Joint Pre-Trial Order (ECF No. 299), Agreed Findings ¶¶ 6, 11-12 & Exh. A; Declaration of Todd Olson (Apr. 14, 2022) (ECF No. 224) ¶¶ 12-24.

## NYAG'S COUNT IV – DECEPTIVE ACTS OR PRACTICES OR FALSE ADVERTISING

### Plaintiffs' Requested Instruction No. 24

### NYAG Count IV – Deceptive Acts or Practices or False Advertising

The NYAG contends that Quincy Bioscience violated New York General Business Law § 349, which prohibits deceptive acts or practices, and violated New York General Business Law § 350, which prohibits false advertising.  In Count IV of the Complaint, the NYAG contends that Quincy Bioscience made the following representations in their advertising without adequate substantiation:

1. Prevagen improves memory;
2. Prevagen is clinically shown to improve memory;
3. Prevagen improves memory within 90 days;
4. Prevagen is clinically shown to improve memory within 90 days;
5. Prevagen reduces memory problems associated with aging;
6. Prevagen is clinically shown to reduce memory problems associated with aging;
7. Prevagen provides other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking;
8. Prevagen is clinically shown to provide other cognitive benefits, including, but not limited to, healthy brain function, a sharper mind, and clearer thinking.

The NYAG contends that these representations were false or misleading, and/or were not substantiated at the time the representations were made.  The NYAG therefore contends that these representations constituted violations of both §§ 349 and 350.

### Source/Authority

*See* Complaint (ECF No. 1) ¶¶ 44-45; N.Y. GBL §§ 349 & 350.

## NYAG'S COUNT IV – DECEPTIVE ACTS OR PRACTICES OR FALSE ADVERTISING

### Plaintiffs' Requested Instruction No. 25

**Elements of Proof for NYAG Count IV**

To find for the NYAG on Count IV of the Complaint, you must conclude that each of the following has been proved by a preponderance of the evidence:

1. The representations were conveyed in Quincy Bioscience's advertising;
2. The representations had the capacity to mislead or deceive a reasonable person acting reasonably under the circumstances; and
3. The representations were material.

Unlike with common law fraud, the NYAG does not need to establish that there was an intent to deceive or that consumers relied on Quincy Bioscience's representations.

**Source/Authority**

*See* N.Y. GBL §§ 349 & 350; *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 2003); Joint Pre-Trial Order (ECF No. 299), Agreed Findings ¶¶ 6, 11-12 & Exh. A; Declaration of Todd Olson (Apr. 14, 2022) (ECF No. 224) ¶¶ 12-24.

**CLAIMS CONVEYED**

**<u>Plaintiffs' Requested Instruction No. 26</u>**

**<u>Net Impression/Express and Implied Representations</u>**

Now, I will give you instructions regarding the first element of proof for each of Plaintiffs' counts—whether the claims that Plaintiffs contend are deceptive were conveyed by Defendants' advertisements for Prevagen.

To determine whether the claims identified by Plaintiffs were conveyed by the advertisements for Prevagen, you must assess the overall net impression of the advertisement, not an isolated phrase or word or the literal truth or falsity of the words in the advertisement.  A claim can be express or implied.  An express claim is one that, based on the net impression, is unequivocally stated, which itself establishes the meaning of the claim.  An implied claim is one that is made indirectly.  To illustrate, suppose a certain car gets poor gas mileage, say, 10 miles per gallon.  One advertisement boasts that this car gets 30 miles per gallon while another identifies the car as the "Miser," depicts it rolling through the countryside past one gas station after another, and proclaims that the car is inexpensive to operate.  Both ads make deceptive claims; the first does so expressly, the second does so impliedly.

You may find that an advertisement contains a claim even if the advertisement contains other claims, as well.  If an advertisement is capable of conveying more than one impression to the consumer and any one of them is false or misleading, the advertisement may be found to be false or misleading.  In addition, an advertiser can be liable for misleading claims made through consumer testimonials or endorsements.

If the advertisement makes an express claim or an implied claim that is reasonably clear on its face, you need not look to other evidence to ascertain whether the advertisement made the claim.  Plaintiffs are not required to put forth any evidence of ad meaning in the form of consumer research or surveys.

If you find that Plaintiffs have proven that the claims in Counts I through IV were conveyed by Defendants' advertisements for Prevagen, then you must consider the second element of proof.

**<u>Source/Authority</u>**

*See FTC v. NPB Advertising*, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) (stating that it is the overall impression of an ad, not an isolated word or phrase, that determines representation conveyed); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008) (stating that the court must look to the net impression rather than literal truth or falsity of the words in the ad; if an ad explicitly states claims, there is no need to look to extrinsic evidence); *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 125 (D. Conn. 2008) ("It is therefore necessary in these cases to consider the advertisement in its entirety . . . .  The entire mosaic should be viewed rather than each tile separately.") (quoting *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 675 (2d Cir.

1963))); *FTC v. Med. Billers Net.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (stating that "each representation must stand on its own merit, even if other representations contain accurate, non-deceptive information") (citing *FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999))); *Kraft, Inc. v. FTC*, 970 F.2d 311, 319 (7th Cir. 1992) (the "Miser" example); *Kraft, Inc*., 114 F.T.C. 40, 121-22 (Jan. 30, 1991) (stating that the primary evidence of what claims an ad can convey to reasonable consumers consists of the ad itself, and that, if the court can't conclude with confidence that a particular message was conveyed, it will not find that claim without extrinsic evidence; such extrinsic evidence can include reliable results from a methodologically sound survey); *Thompson Med. Co*., 1984 FTC LEXIS 6, at *312-13 (Nov. 23, 1984) (stating that express claims are directly stated, that implied claims are any claims that are not express, and that if a claim can't be discerned, one then looks to extrinsic evidence); *Bristol-Myers Co*, 1983 FTC LEXIS 64, at *123 (July 5, 1983) (stating that an ad is capable of conveying more than one impression); *FTC v. Colgate-Palmolive Co*., 380 U.S. 374, 391-92 (1965) (stating that it is not necessary for the Commission to conduct a survey of the viewing public before it can determine that commercials had a tendency to mislead).

### FTC'S COUNTS I AND II AND NYAG'S COUNT IV – LIKELY TO MISLEAD

### Plaintiffs' Requested Instruction No. 27

**Likely to Mislead—Reasonable Consumer**

Now, I will give you instructions regarding the second element of proof for the FTC Counts I and II and the NYAG Count IV—whether the claims were likely to mislead consumers acting reasonably under the circumstances.

Whether a representation is likely to mislead is evaluated from the perspective of the reasonable consumer in the audience targeted by the advertiser.  Plaintiffs do not need to show that consumers were actually deceived.  Rather Plaintiffs only need to show that the representation was likely to mislead consumers acting reasonably under the circumstances.

**Source/Authority**

*See ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 610-11 (6th Cir. 2017) (an ad conveys a claim "if consumers acting reasonably under the circumstances would interpret the advertisement to contain that message") (citing *Pom Wonderful v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015))); *FTC v. Fleetcor Technologies, Inc.*, No. 1:19-CV-5727, 2022 WL 3273286, at *6 (N.D. Ga. Aug. 9, 2022) (stating that the FTC is not required to prove that customers were actually deceived); *FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012) ("Advertising deception is evaluated from the perspective of the reasonable prospective purchaser, that is, a reasonable consumer in the audience targeted by the advertisement."); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1188 (N.D. Ga. 2008) (stating that an ad is deceptive if it is likely to mislead customers acting reasonably under the circumstances).

## NYAG's COUNT III – CAPACITY TO DECEIVE

### Plaintiffs' Requested Instruction No. 28

**Capacity to Deceive—Credulous Consumer**

Now, I will give you instructions regarding the second element of proof for the NYAG Count III—whether the claims have the capacity to deceive.

Whether a representation has the capacity to deceive is evaluated from the perspective of the credulous consumer.  Plaintiffs do not need to show that consumers were actually deceived. Rather, Plaintiffs only need to show that the representation was likely to mislead consumers. The NYAG's Count III protects not only the average consumer but also the ignorant, the unthinking, and the credulous.

**Source/Authority**

*See* N.Y. Exec. Law § 63(12); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314 (N.Y. App. Div. 2003) (noting that § 63(12) protects "not only the average consumer, but also 'the ignorant, the unthinking and the credulous'") (quoting *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (N.Y. 1977))).

**FTC'S COUNT I AND NYAG'S COUNTS III AND IV – LIKELY TO MISLEAD**

**Plaintiffs' Requested Instruction No. 29**

**Competent and Reliable Scientific Evidence**

Plaintiffs contend that the representations in Counts I, III, and IV are misleading.  The representations are likely to mislead consumers if Defendants lack competent and reliable scientific evidence supporting them.  Competent and reliable scientific evidence means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.  To determine what constitutes competent and reliable scientific evidence, you should look to what experts would consider to be adequate in determining the amount and type of evidence that is sufficient to demonstrate that a representation is truthful.

You have heard the testimony of several expert witnesses in this case.  As I stated earlier, you may give that testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.

**Source/Authority**

*See FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1381, 1387-89 (M.D. Fla. 2018) (stating that, for health-related claims, an advertiser must demonstrate that it has competent and reliable scientific evidence to support any claimed reasonable basis to assert that the claims are true); *FTC v. NPB Advertising, Inc.*, 218 F. Supp. 3d 1352, 1358 (M.D. Fla. 2016) (same); *Daniel Chapter One*, 405 F. App'x 505, 506 (D.C. Cir. 2010) (stating that there is nothing unreasonable about the specific type of basis required, namely competent and reliable scientific evidence including clinical trials with human subjects); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1202 (N.D. Ga. 2008) (stating efficacy claims must be substantiated with competent and reliable scientific evidence); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 961 (N.D. Ill. 2008) (an advertiser must possess competent and reliable scientific evidence to substantiate a health claim); POM Wonderful, 777 F.3d 478, 505 (D.C. Cir. 2008) (requiring at least one RCT); *FTC v. Direct Mktg. Concepts, Inc.* 569 F. Supp. 2d 285, 303-04 (D. Mass. 2008) (courts have found that double-blind placebo-controlled studies are required to provide adequate substantiation for the truthfulness of health-related efficacy claims); *FTC v. Braswell*, No. CV 03-3700, 2005 WL 4227194, at *10 (C.D. Cal. Sept. 27, 2005) (stating that courts can look to what experts in the relevant area of study would consider to be adequate in determining the amount of and type of evidence that is sufficient).

# ANECDOTAL EVIDENCE

## Plaintiffs' Requested Instruction No. 30

### Consumer Testimonials

Anecdotal evidence in the form of consumer testimonials or endorsements is not competent and reliable scientific evidence.

### Source/Authority

*See FTC v. Alcoholism Cure Corp.*, No. 3-10-CV-266, 2011 WL 13137951, at *38 (M.D. Fla. Sept. 16, 2011) (granting FTC's motion for summary judgment where defendant cited "no legal authority in support of his argument that anecdotal customer testimonials . . . may supplant competent and reliable scientific evidence to substantiate his health-related claims" concerning a dietary supplement); *FTC v. Ewing*, No. 14-CV-683, 2017 WL 4797516, at *5 (D. Nev. Oct. 24, 2017) ("'[a]necdotal evidence, such as testimonials by satisfied patients or statements by doctors that, based on their experience, they 'believe' a drug is effective,' does not constitute competent and reliable scientific evidence" (citing *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1143-44 (9th Cir. 1978))); *FTC v. COORGA Nutraceuticals*, 201 F. Supp. 3d 1300, 1312 (D. Wyo. 2016) (noting that testimonials are not a form of proof); *Removatron Int'l Corp.,* 1985 FTC LEXIS 21, at *59 (July 15, 1987) ("[I]t is well established that subjective assessments, such as consumer testimonials and consumer surveys, are anecdotal evidence at best and are not adequate substantiation for claims of product performance or the device's scientific or biomedical efficacy.")..

**BURDEN SHIFTING**

**Plaintiffs' Requested Instruction No. 31**

**Shifting Burden**

Defendants have the burden of establishing the substantiation they relied on for their claims. Plaintiffs then have the burden of proving that Defendants' purported substantiation is not competent and reliable scientific evidence as defined in these instructions. However, Plaintiffs are not required to conduct or present clinical studies showing that Prevagen does not perform as claimed.

If you determine that the substantiation put forth by Defendants to support the claims for Prevagen is not competent and reliable scientific evidence as defined in these instructions, then you must find that the claims in Counts I, III, and IV are misleading.

**Source/Authority**

*See Daniel Chapter One*, 2009 FTC LEXIS 157, at *137 (Aug. 5, 2009) (initial decision) ("the advertiser has the burden of establishing the substantiation it relied on for its claim") (citing *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 959 (N.D. Ill. 2008))); *FTC v. Direct Marketing Concepts*, 624 F.3d. 1, 8 (1st Cir. 2010) (stating that, where advertisers lack adequate substantiation, they lack a reasonable basis, and where advertisers lack a reasonable basis, the ads are deceptive as a matter of law); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 959 (N.D. Ill. 2008) (stating that, after the advertiser satisfies its burden, the Commission then has the burden of proving that the purported substantiation is inadequate but is not required to conduct or present clinical studies showing that the products do not perform as claimed).

**FTC'S COUNT II – FALSE PROOF CLAIMS**

**Plaintiffs' Requested Instruction No. 32**

**Likely to Mislead—False Proof**

The FTC contends that the representations in Count II are false.  The representations in Count II are false if they are likely to mislead consumers acting reasonably under the circumstances. You do not have to find that a representation is literally untrue.  You may consider a representation to be false if it is misleading in a material respect.

As I said earlier, the representations in Count II are also known as establishment claims. If an establishment claim identifies a specific type of substantiation, then the advertiser must have the type of evidence claimed.  For example, if you find that the advertisements for Prevagen identify a clinical study as the substantiation for the claims in Count II, then Defendants must possess such a clinical study establishing that Prevagen has the effects listed in those claims.

To determine whether Defendants' substantiation for the representations in Count II is competent and reliable scientific evidence, you should look to what experts would require to demonstrate that the representation is truthful.

If you find that the clinical study specified in the establishment claims in Count II is not competent and reliable scientific evidence to support the claims, then you must find that the establishment claims are false.

**Source/Authority**

*See FTC v. Pantron I*, 33 F.3d 1088, 1099 (9th Cir. 1994) (stating that a false advertisement need not be "false"; it need only be "misleading in a material respect") (citations omitted); *FTC v. Direct Mktg. Concepts, Inc*., 569 F. Supp. 2d 285, 298-99 (D. Mass. 2008) (stating that an advertiser must have the level of support claimed in ads); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 966 (N.D. Ill. 2006) ("Because defendants' [establishment] claim is inherently a substantiation claim, the falsity and reasonable basis theories collapse into the same inquiry: Did Defendants possess adequate substantiation to make such a claim?").

## MATERIALITY

### Plaintiffs' Requested Instruction No. 33

**Materiality**

  If you find that the claims in Counts I, III, and IV are misleading or the claims in FTC Count II are false, then you must consider the third and final element of proof – whether the claims are material.

  A representation is material if it involves information important to consumers and is likely to affect their choice of or conduct regarding a product.  Claims that are express or significantly involve health are presumed material.

**Source/Authority**

  *See Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (claims that significantly involve health are presumptively material); *FTC v. NPB Advertising*, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) (stating that, because an express claim inherently misleads a consumer, an express claim is presumptively material); *FTC v. Washington Data Resources*, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012) (stating a representation is material if likely relied upon by a reasonable prospective consumer); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190-91(N.D. Ga. 2008) (applying the presumption of materiality to claims that dietary supplements were effective to treat weight loss and sexual dysfunction); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 965 (N.D. Ill. 2008) (stating that a medical, health related claim is material); *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007) (stating that a representation is material if it is the kind relied upon by a reasonable person); *People v. Image Plastic Surgery, LLC*, No. 450389/19, 2022 N.Y. App. Div. LEXIS 6082, at *2 (N.Y. App. Div. Nov. 3, 2022) (accepting the substance of defendants' misrepresentations as evidence of materiality)..

## DISCLAIMERS

### Plaintiffs' Requested Instruction No. 34

### Disclaimers

Defendants contend that ads containing their new disclaimer do not violate the laws at issue in this case.  However, the presence of a disclaimer or a qualifier does not necessarily alter the deceptive net impression of an ad.

To be effective, the disclaimer or qualifier must be sufficiently clear and conspicuous to cure the alleged deception and leave an accurate impression.  Small print disclaimers at the bottom of advertisements are insufficient as disclaimers.

If you find that the claims are misleading or false and the new disclaimer is not sufficiently clear and conspicuous to cure the deception or untruthfulness, then you must find Defendants liable for the deceptive representations in those ads.

### Source/Authority

*See FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200-01 (9th Cir. 2006); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989) ("Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression. Anything less is only likely to cause confusion by creating contradictory double meanings."); *Thomson Medical Co*., 1984 FTC LEXIS 6, at *303 (1984) (order requiring disclosure to be clear and prominent), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986); *Indep. Directory Corp. v. FTC*, 188 F.2d 468 (2d Cir. 1951) (finding solicitations to be deceptive despite the fine print disclosure); *FTC v. Medlab, Inc.,* 615 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009) ("Defendants cannot innoculate [sic] themselves from the representations that appear in the body of the text by including cautionary statements at the foot of the advertisements."); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 345 (N.Y. 1999) (finding disclaimers inadequate to overcome deceptive practices claim under N.Y. GBL § 349); *People v. Orbital Publ. Group, Inc.*, 169 A.D.3d 564, 566 (N.Y. App. Div. 2019) (finding disclaimers inadequate to overcome claims under N.Y. GBL §§ 349 and 350).

## DEFENDANTS' AFFIRMATIVE DEFENSES

### Plaintiffs' Requested Instruction No. 35

### Good Faith

Defendants contend that they acted in good faith in all aspects of their marketing and advertising.  An assertion of good faith does not immunize the Defendants from liability under the FTC Act or New York law.

You may not consider good faith in making your determination about liability.

### Source/Authority

*See* Order Granting In Part Denying In Part Motion to Strike (ECF No. 99) at 7 (stating that good faith is not a defense to liability); *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 125 (D. Conn. 2008) (stating that an advertiser's good faith does not immunize it from responsibility for its misrepresentations); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000) (stating that it is not necessary to prove misrepresentations were made in bad faith to establish a Section 5 violation); *FTC v. Sabal*, 32 F. Supp. 2d 1004, 1009 (N.D. Ill. 1998) (stating that good faith is not a valid defense to a Section 5 claim); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314-15 (N.Y. App. Div. 2003) (noting that neither good faith nor scienter is required under New York Executive Law § 63(12) and intent is not required for a claim under New York GBL § 349).

## DEFENDANTS' AFFIRMATIVE DEFENSES

### Plaintiffs' Requested Instruction No. 36

### Commercial Speech

Defendants contend that the claims challenged by Plaintiffs are protected commercial speech under the First Amendment of the U.S. Constitution that cannot be regulated by government.

However, deceptive or false commercial speech is not entitled to any constitutional protection.  If you find that the claims challenged by the Federal Trade Commission and the New York Attorney General are deceptive or false, then Defendants are not immune from liability.

### Source/Authority

*See Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading . . . ."); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980) ("The government may ban forms of communication more likely to deceive the public than to inform it . . . ."); *Bristol-Myers Co. v. FTC*, 738 F.2d 554, 562 (2d Cir. 1984) (stating that "deceptive advertising enjoys no constitutional protection and it may be regulated").

## DEFENDANTS' AFFIRMATIVE DEFENSES

### Plaintiffs' Requested Instruction No. 37

**New York GBL Counts**

Quincy Bioscience contends that the NYAG's counts under New York General Business Law §§ 349 and 350 fail because the alleged deceptive acts and practices occurred outside the State of New York.  Because it is undisputed that Quincy Bioscience's advertisements were disseminated in the State of New York and that Quincy Bioscience sold Prevagen to New York consumers, you cannot use this defense as a basis to absolve Quincy Bioscience of liability for deceptive practices or false advertising that occurred in New York or was directed to New York. The scope of Quincy Bioscience's advertising and sales in New York are relevant only to the amount of penalties.

**Source/Authority**

*See* N.Y. GBL §§ 349, 350.

**STATUTORY PENALTIES**

**Plaintiffs' Requested Instruction No. 38**

**NYAG's Claims for Statutory Penalties**

If you conclude that Plaintiffs have met their burden of proving that Quincy Bioscience is liable, then you must determine the amount of civil penalties that should be assessed against Quincy Bioscience for its conduct in New York.  Under New York law, penalties can be assessed in an amount up to $5000 per violation.  That means that you can assess an amount equal to or less than $5000 per violation, but the amount should meet the purposes of penalties under New York law.  The purposes of penalties are to punish unlawful conduct and to deter future violations.  The time period for which violations can be measured in this case is from October 6, 2013 to the present day.

Violations can be measured in a number of ways.  For example, each sale of Prevagen in New York can be a violation.  As another example, each airing of an advertisement on television or radio in New York can also be a violation.  You are not, however, obligated to adhere to a rigid mathematical formula but, rather, are required to ensure that the penalty amount serves the purposes of punishment and deterrence.

In assessing the amount of penalties, you can consider a variety of factors, including:

- The length of time in which the wrongdoing occurred;
- The extent of the wrongdoing;
- The size and finances of the company, including the amount expended on deceptive advertising;
- Whether the penalty would eliminate the benefit derived by the violations;
- Whether the penalty would shock one's sense of fairness; and
- Whether the deceptive acts were deliberate and/or egregious.

In imposing the penalty, you should ensure that it is not so small as to represent merely a cost of doing business, and large enough to serve as a warning to other potential violators of the law.

**Source/Authority**

*See* N.Y. Gen. Bus. Law §§ 349, 350, 350-d; *United States v. J.B. Williams Co., Inc.*, 354 F. Supp. 521, 547, 549 (S.D.N.Y. 1973), *aff'd in part and rev'd in part*, *United States v. J.B. Williams Co., Inc.*, 498 F.2d 414 (2d Cir. 1974); *People v. Orbital Publ. Group*, 193 A.D.3d 661, 662 (N.Y. App. Div. 2021); *Meyers Bros. Parking Sys. v. Sherman*, 87 A.D.2d 562, 563 (N.Y. App. Div. 1982), *aff'd*, 57 N.Y.2d 653 (1982); *People v. Applied Card Sys., Inc.*, No. 2073-03, 2006 N.Y. Misc. LEXIS 9527, at *23-24, 30, 42 (N.Y. Sup. Ct. Jan. 19, 2006); *People v. Image Plastic Surgery, LLC*, No. 450389/19, 2022 N.Y. App. Div. LEXIS 6082, at *3 (N.Y. App. Div. Nov. 3, 2022); Judgment, *People v. Credit Solutions of Am., Inc.*, No. 401225/09 (N.Y. Sup. Ct. Dec. 14, 2012); *People v. McNair*, 9 Misc. 3d 1121[A], 2005 N.Y. Slip Op. 51727[U], at *3 (N.Y. Sup. Ct. 2005).

# CLOSING INSTRUCTIONS

## Plaintiffs' Requested Instruction No. 39

### Election of Foreperson, Duty to Deliberate, Communications with Court, Cautionary, Unanimous Verdict, Verdict Form

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember you should not tell anyone – including me – how your votes stand numerically.

Fourth, your verdict must be based solely upon the evidence and on the law I have given you in these instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict[s], your foreperson will fill in the form, sign, and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

### Source/Authority

3 Fed. Jury Prac. & Instr. § 103:50 (6th ed.).

Dated:  November 17, 2022

FEDERAL TRADE COMMISSION

*/s/ Annette Soberats*
ANNETTE SOBERATS
EDWARD GLENNON
ANDREW WONE
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20850
202-326-2921, asoberats@ftc.gov
202-326-3126, eglennon@ftc.gov
202-326-2934, awone@ftc.gov
202-326-3259 (facsimile)

*Attorneys for Plaintiff*
*FEDERAL TRADE COMMISSION*

PEOPLE OF THE STATE OF NEW YORK
BY LETITIA JAMES

LETITIA JAMES
Attorney General of the State of New
     York

By:  */s/ Kate Matuschak*
JANE M. AZIA
Bureau Chief
KATE MATUSCHAK
Assistant Attorney General
Consumer Frauds and Protection
     Bureau
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6189; Fax: (212) 416-
     6003
Email: kate.matuschak@ag.ny.gov