UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION and

THE PEOPLE OF THE STATE OF NEW
YORK, by LETITIA JAMES, Attorney
General of the State of New York,

                Plaintiffs,

         - against -

QUINCY BIOSCIENCE HOLDING
COMPANY, INC., a corporation;

QUINCY BIOSCIENCE, LLC, a limited
liability company;

PREVAGEN, INC., a corporation
d/b/a/ SUGAR RIVER SUPPLEMENTS;

QUINCY BIOSCIENCE
MANUFACTURING, LLC, a limited
liability company; and

MARK UNDERWOOD, individually and as
an officer of QUINCY BIOSCIENCE
HOLDING COMPANY, INC., QUINCY
BIOSCIENCE, LLC, AND PREVAGEN, INC.,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/22

17 Civ. 124 (LLS)

OPINION & ORDER

Plaintiffs Federal Trade Commission ("FTC") and the People
of the State of New York, by the Attorney General of the State
of New York ("NY AG" and, together with FTC, "plaintiffs")
brought this action against Quincy Bioscience, Inc., Quincy
Bioscience, LLC, Prevagen, Inc., Quincy Bioscience
Manufacturing, LLC, and Mark Underwood (together "defendants")
alleging violations of the Federal Trade Commission Act and New

1

York law for deceptive advertising of Prevagen, a dietary supplement marketed by defendants, which purports to improve memory.

On July 5, 2022, defendant Mark Underwood moved for, and was granted, partial summary judgment in his favor for the claims brought against him by the NY AG for lack of personal jurisdiction.

Following discovery regarding the defendants' development of Prevagen, defendants move for summary judgment. For the following reasons, defendants' motion for summary judgment is denied.

Defendants also move to exclude the testimony, in whole or in part, of plaintiffs' experts, Drs. Sano, Wittes, Berg, and Malaspina. Dkt. No. 306. For the following reasons, defendants' motion is denied in part, and reserved in part.

Plaintiffs move to exclude the testimony, in whole or in part, of defendants' experts: Drs. David Schwartz, David Katz, Lee-Jen Wi, Mindy Kurzer, Richard Goodman, and David Gortler. Dkt. No. 303. For the following reasons, plaintiffs' motion is granted in part, and reserved in part.

## BACKGROUND

Defendant Quincy Bioscience Holding Company, Inc. is a Wisconsin corporation. Defendants' Reply to Plaintiffs' Response to Rule 56.1 statement ("56.1 statement") (Dkt. No. 281).

Defendants Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC are wholly owned subsidiaries of Quincy. Id. Defendants market and sell Prevagen, a dietary supplement that includes Apoaequorin as an active ingredient. Id. Defendants advertise Prevagen through a variety of platforms. Id.

While developing Prevagen, defendants conducted a Randomized Control Test ("RCT"), referred to as the Madison Memory Study, to determine the effectiveness of Prevagen's ability to improve memory.

Defendants assert the Madison Memory Study "was a randomized, double-blind, placebo-controlled study designed to examine the effect of apoaequorin on cognitive function in older adults" that involved in 218 adults. Graham Decl. Ex. 1 at 2, 4 (Dkt. No. 35). Plaintiffs challenge the Madison Memory Study's claim to be double-blind. 56.1 statement at 61. "The primary objective of the Madison Memory Study was to determine whether Prevagen with apoaequorin (10 mg) improves quantitative measures of cognitive function in community dwelling, older adults." Graham Decl. Ex. 1 at 1.

In 2017, the FTC and the NY AG brought this action against defendants, alleging that defendants' advertising of Prevagen is false advertising in violation of Sections 5(a) and 12 of the FTC Act, NY Exec. Law section 63(12) and NY GBL sections 349 and

3

350. Complaint ("Comp.") at 26-29 (Dkt. No. 1). In their complaint, plaintiffs alleged that the Madison Memory Study did not support the defendants' statements made in connection with Prevagen's advertising. See generally, id. The FTC seeks injunctive relief under Section 13(b) of the FTC Act. Id. at 30. The NY AG seeks both injunctive relief and monetary restitution. Id.

In count I, the FTC pleads a false efficacy claim against defendants' statements that Prevagen (1) improves memory, (2) improves memory within 90 days, (3) reduces memory problems associated with aging, and (4) provides other cognitive benefits (the "efficacy statements"). Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Opp. to SJ.") at 1 (Dkt No. 254).

In count II, the FTC pleads a false establishment claim against defendants' statements that Prevagen (1) "has been clinically shown to improve memory," (2) was developed through "a landmark double-blind and placebo controlled trial [that] demonstrated Prevagen improved short-term memory, learning, and delayed recall over 90 days," (3) "helps with memory problems associated with aging," (4) "is clinically shown to help with mild memory problems associated with aging," and (5) supports "healthier brain function, a sharper mind and clearer thinking"

4

statements, this action is not a "proper case" for relief under
FTC Act Section 13(b), the NY AG's claims are preempted by
federal law, the NY AG's claims are barred by the General
Business Law's safe harbor provisions, and the NY AG is barred
from seeking restitution in light of the Collins settlement.

## LEGAL STANDARDS

I.   Summary Judgment

Summary judgment is warranted if, based upon admissible
evidence, "the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for
summary judgment, a court must "construe all evidence in the
light most favorable to the nonmoving party, drawing all
inferences and resolving all ambiguities in its favor."
Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).
"Nevertheless, the non[-]moving party must come forward with
specific facts showing that there is a genuine issue of material
fact for trial. Conclusory allegations, conjecture, and
speculation ... are insufficient to create a genuine issue of
fact." Joseph v. N. Shore Univ. Hosp., 473 F. App'x 34, 36 (2d
Cir. 2012)(quoting Shannon v. N.Y. City Transit Auth., 332 F.3d
95, 99 (2d Cir.2003))(internal citations omitted)(alterations in
the original).

II.   The FTC Act

Section 5 of the FTC Act provides that "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1); Fed. Trade Comm'n v. Verity Int'l, Ltd., 443 F.3d 48, 54-55 (2d Cir. 2006). Section 12 of the FTC Act provides that "it shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—(1) By United States mails, or in or having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, services, or cosmetics; or (2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics." 15 U.S.C. § 52(a).   A "false advertisement means an advertisement, other than labeling, which is misleading in a material respect." Id. at § 55(a)(1).

False advertising in violation of Section 12 is a deceptive act or practice in violation of Section 5. See id. at §  52(b). Therefore, Section 12 and Section 5 are often "applied in tandem as the basis for an FTC action against an alleged false advertiser." Fed. Trade Comm'n v. Direct Mktg. Concepts, Inc.,

7

624 F.3d 1, 7-8 (1st Cir. 2010); see e.g., Fed. Trade Comm'n v. COORGA Nutraceuticals Corp., 201 F. Supp. 3d 1300, 1308 (D. Wyo. 2016).

To prove deceptive advertising under the FTC Act, the FTC has the burden to show: "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc., 753 F. App'x 87, 89 (2d Cir. 2019); Fed. Trade Comm'n v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008). Each challenged representation "must stand on its own merit, even if other representations contain accurate, non-deceptive information." Med. Billers Network, Inc., 543 F. Supp. 2d at 304.

III. Federal Rule of Evidence 702

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2)

the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evidence 702.

Under Rule 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 589 (1993). While the "inquiry envisions by Rule 702 is… a flexible one," the "gatekeeping inquiry must be tied to the facts of a particular case." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) (citing Daubert, 509 U.S. at 579 and Kumho Tire, Ltd. V. Carmichael, 526 U.S. 137, 150 (1999)) (internal citations omitted) (alterations in the original).

"The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." Amorgianos, 303 F.3d at 267.

IV.  NY Law

A. General Business Law Sections 349 and 350

"To successfully assert a claim under General Business Law § 349 or § 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of

9

the allegedly deceptive act or practice." <u>Quincy Bioscience</u>

<u>Holding Co., Inc.,</u> 753 F. App'x at 89 (citing <u>Koch v. Acker,</u>

<u>Merrall & Condit Co.,</u> 18 N.Y.3d 940, 941 (2012)) (internal

quotation marks omitted).

      B. New York Executive Law § 63(12)

Under NY Exec. Law § 63(12), "[w]henever any person shall

engage in repeated fraudulent or illegal acts or otherwise

demonstrate persistent fraud or illegality in the carrying on,

conducting or transaction of business, the attorney general may

apply, in the name of the people of the state of New York, to

the supreme court of the state of New York, on notice of five

days, for an order enjoining the continuance of such business

activity or of any fraudulent or illegal acts, directing

restitution and damages."

## DISCUSSION

I. Whether Defendants' Claims Regarding Prevagen Violated the
   FTC Act is a Question of Material Fact

The Defendants are not moving for summary judgment for lack

of a genuine issue of material fact that representations

regarding the effectiveness of Prevagen while advertising that

dietary supplement[1] were made. What parties disagree about is whether the statements were misleading.

The FTC brings both "efficacy" and "establishment" claims against Defendants' advertising of Prevagen. The FTC argues there is a genuine issue of material fact about whether both the efficacy claims and establishment claims were misleading. Whether they are misleading depends on the level of substantiation required to market each claim.

"An efficacy claim suggests that a product successfully performs the advertised function or yields the advertised benefit, but includes no suggestion of scientific proof of the product's effectiveness. An establishment claim, by contrast, suggests that a product's effectiveness or superiority has been scientifically established." POM Wonderful, LLC v. Fed. Trade Comm'n, 777 F.3d 478, 490 (D.C. Cir. 2015)(citing Removatron Int'l Corp. v. Fed. Trade Comm'n, 884 F.2d 1489, 1492 n. 3 (1st Cir. 1989) and Thomson Med. Co v. Fed. Trade Comm'n. 791 F.2d 189, 194 (D.C. Cir. 1986))(internal citations omitted).

If an ad conveys an efficacy claim, the advertiser must possess a "reasonable basis" for that claim. E.g. POM Wonderful, 777 F.3d at 490. Even though it need not be specified in the ad, to have a "reasonable basis" for the claim, the claims must have

---

[1] Notably, the parties now agree that Prevagen constitutes a dietary supplement; however, they disagree as to the impact of that label.

the support of "competent and reliable scientific evidence."
COORGA Nutraceuticals Corp., 201 F. Supp. 3d at 1309; see
"Dietary Supplements: An Advertising Guide for the Industry" at
9 ("the FTC typically requires claims about the efficacy or
safety of dietary supplements to be supported with 'competent
and reliable scientific evidence.'")

"[W]hat constitutes competent and reliable scientific
evidence ... is a question of fact for expert interpretation. In
the case of dietary supplements or health related claims,
'competent and reliable scientific evidence' consists of 'tests,
analyses, research, studies, or other evidence based on the
expertise of professionals in the relevant area, that have been
conducted and evaluated in an objective manner by persons
qualified to do so, using procedures generally accepted in the
profession to yield accurate and reliable results.'" E.g., Fed.
Trade Comm'n v. Alcoholism Cure Corp., 2011 WL 13137951, at *27
(M.D. Fla. Sept. 16, 2011), aff'd sub nom. Fed. Trade Comm'n v.
Krotzer, 2013 WL 7860383 (11th Cir. May 3, 2013)(quoting Fed.
Trade Comm'n v. Nat'l Urological Grp., Inc., 645 F. Supp. 2d
1167, 1190 (N.D. Ga. 2008), aff'd, 356 F. App'x 358 (11th Cir.
2009))(alterations in the original).

If an ad conveys an establishment claim, the level of
substantiation required for the claim depends on whether the
challenged claim is a specific or non-specific claim:

12

If an establishment claim "states a specific type of
substantiation," the "advertiser must possess the
specific substantiation claimed." Removatron, 884 F.2d
at 1492, n. 3. If an ad instead conveys a non-specific
establishment claim—e.g., an ad stating that a
product's efficacy is "medically proven" or making use
of "visual aids" that "clearly suggest that the claim
is based upon a foundation of scientific evidence"—the
advertiser "must possess evidence sufficient to
satisfy the relevant scientific community of the
claim's truth." Bristol-Myers Co., 102 F.T.C. 21, 321
(1983), aff'd, 738 F.2d 554 (2d Cir.1984). The
Commission therefore "determines what evidence would
in fact establish such a claim in the relevant
scientific community" and "then compares the
advertisers' substantiation evidence to that required
by the scientific community." Removatron, 884 F.2d at
1498.

POM Wonderful, 777 F.3d at 491.

As such, each of the efficacy claims and the establishment

claims requires expert opinion that it is based upon sufficient

scientific evidence to satisfy the "relevant scientific

community of its truth" to comply with the FTC Act. So:

1. whether Quincy's statements that Prevagen (1) improves

memory, (2) improves memory within 90 days, (3) reduces memory

problems associated with aging, and (4) provides other cognitive

benefits, (all efficacy claims), are misleading will require

expert opinion on whether they are supported by competent and

reliable scientific evidence;

2. whether Quincy's statements Prevagen (1) "has been

clinically shown to improve memory," (2) "helps with memory

problems associated with aging," and (3) "is clinically shown to

help with mild memory problems associated with aging," and (4)

13

can support "healthier brain function, a sharper mind and clearer thinking," (non-specific establishment claims) are misleading will require expert opinion on whether Quincy has sufficient evidence to satisfy the relevant scientific community of that claim's truth; and

3. whether Quincy's statement that "a landmark double-blind and placebo-controlled trial demonstrated Prevagen improved short-term memory, learning, and delayed recall over 90 days," (a specific establishment claim) is misleading will require expert testimony on whether the Madison Memory Study supports that claim.

On this summary judgment motion the court applying the efficacy and establishment tests, "must determine whether there was uncontroverted evidence regarding: (1) what sort of evidence would scientifically establish the claims the Defendants made in their infomercials; and (2) whether the Defendants were actually possessed of such evidence." Direct Mktg, 624 F.3d at 8-9 (citing Removatron, 884 F.2d at 1498).

The defendants here have not shown such uncontroverted evidence on those points as to support the entry of summary judgment in their favor.

The thrust of the defendants' argument for summary judgment—and their motions in limine as it seeks the preclusion of to Dr. Mary Sano and Dr. Wittes—is that plaintiffs, rather

14

than applying the "competent and reliable scientific evidence" standard described in the FTC's "Dietary Supplements: An Advertising Guide for the Industry" (the "FTC Guidance"), have simply presumed that a randomized clinical study is required to support Prevagen's advertising claims. Defendants argue that requiring an RCT artificially holds defendants to a higher "drug level" substantiation standard than the standard required for dietary supplements' advertisements.

That argument misses the mark. The critical question for trial does not turn on an interpretation of the FTC Guidance. The question for trial is whether defendants had the necessary scientific evidence to support the claims defendants made while advertising Prevagen. That is an issue for the experts in the field and is not necessarily limited or expanded in scope, as discussed below, by experts' reference to the FTC Guidance. Its determination depends on the match between the defendants' statements and the proof.

An RCT is not specifically required for the efficacy claims for this level of substantiation. However, expert testimony may show that it is required. If so, that will not represent a higher standard than the FTC requires; several other courts have found that an RCT may be required to substantiate challenged marketing statements. Fed. Trade Comm'n v. Braswell, 2005 WL 4227194, at *10 (C.D. Cal. Sept. 27, 2005) (collecting cases).

15

Defendants are correct that, apart from the specific establishment claim, which requires a double-blind and placebo-controlled trial, other research conducted into the effects of Prevagen and Apoaequorin may be considered in determining whether their challenged claims were substantiated.

The lack of evidence of consumer perception does not mean finding that the challenged statements were not misleading. "Where the advertisers lack adequate substantiation evidence, they necessarily lack any reasonable basis for their claims. And where the advertisers so lack a reasonable basis, their ads are deceptive as a matter of law." Direct Mktg. Concepts, Inc., 624 F.3d at 8 (citing Removatron, 884 F.2d at 1498). Therefore, evidence of consumer perception is superfluous if the FTC proves at trial that defendants did not possess the necessary scientific substantiation to support the challenged statements.

There remains a genuine issue of fact for trial of what constitutes "competent and reliable" scientific evidence regarding the defendants' efficiency claims and whether defendants possessed specific substantiation for the FTC's specific and non-specific establishment claims. The battle of the experts on these points defeats defendants' motion for summary judgment.

II.  Motions in Limine to Exclude Experts

   A. Defendants' Motion to Exclude Plaintiffs' Testimony

16

1. Dr. Sano and Dr. Wittes

Defendants challenge the testimony of Dr. Sano and Dr. Wittes on the basis that they hold defendants to a higher, "gold standard" than what is required under the FTC Guidelines. Defendants argue that failure to apply the correct legal standard renders their opinions irrelevant.

Defendants state that Dr. Sano fashioned "her own standard by which to hold Quincy accountable, detailing the various hurdles that she believes scientific evidence must clear to be considered 'competent and reliable' under the FTC Act and New York law." Defendants' Motion to Exclude at 11.  At great length, defendants rehearse the amount of evidence favorable to Quincy, which they claim Drs. Sano and Wittes disregarded. In effect, Quincy argues the duty of the expert (presumed to be independent) is to form her opinion on the bases of the evidence as a whole, resting on accepted principles.

But these experts are simply reviewed science related to Prevagen and concluded that despite the other evidence, an effective human clinical trial is necessary.

Defendants fault Drs. Sano and Wittes for failing to weigh the defendants' evidence in support of Prevagen.

The law does not specify what evidence the expert is to take into consideration.  The appropriate response to the

17

experts' choice of omissions is to test that opinion at trial through cross examination.

                2. Dr. Malaspina

        Defendants argue that Dr. Malaspina does not have the proper expertise to opine on the Seemingly Unrelated Regressions ("SUR") analysis because he is not an expert in the fields of clinical trials and epidemiology and therefore lacks the qualifications to testify about the SUR economic model. However, an opinion on the SUR analysis requires an expertise in economics, econometrics, and statistics, not clinical trials epidemiology. As Dr. Malaspina is qualified as an expert in economics, econometrics, and statics, he will be allowed to testify to the econometric and statistical errors of the SUR analysis conducted, which is relevant to the question to be considered at trial.

            B. Plaintiffs' Motion to Exclude Defendants' Experts

                1. Drs. Schwartz, Katz, and Wei

        Plaintiffs challenge the admissibility of Drs. Schwartz, Katz, and Wei on the ground that their testimony constitutes improper legal opinions. The experts are prohibited from opining on the proper legal standard, which has been described in detail, supra.

The experts may also not opine on the development of the FDA regulatory scheme or on Congress' intent in passing certain laws, such as the Dietary Supplement Health and Education Act.

2. Dr. Kurzer

Dr. Kurzer is qualified to evaluate the quality of the defendants' scientific support for the challenged statements and whether the studies conducted by defendants to substantiate their marketing claims constitute competent and reliable scientific evidence. However, Dr. Kurzer may not draw an ultimate conclusion as to whether Prevagen impacts cognition or memory.

Dr. Kurzer may not opine on any conclusion she draws based upon her own "logic" and "common sense." Under Federal Rule of Evidence 702, expert testimony must be the "product of reliable principles and methods," and conclusions based upon "logic" or "common sense" may well be intuitive and subjective rather an objective and testable principle or method.

C. Remaining Objections

Those objections raised in the defendants' and plaintiffs' motions in Limine that are not resolved by this opinion are reserved for trial.

III. Relief Sought

The FTC requests injunctive relief under Section 13(b) of the FTC Act. Defendants argue that injunctive relief is unavailable to the FTC because it is not a "proper case" for relief under Section 13(b), and the Collins qualifiers will prevent any future violations.

"Generally, '[a]n injunction is a matter of equitable discretion.'" E.E.O.C. v. KarenKim, Inc., 698 F.3d 92, 100 (2d Cir. 2012)(quoting Winter v. Natural Res. Defense Council Inc., 555 U.S. 7, 32 (2008) (alteration in the original). "[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct." Id. (citing United States v. W.T. Grant, 345 U.S. 629, 633 (1953) (alteration in the original).

In view of the discretionary nature of injunctions and the variety of factors which are considered in the decision whether to impose one, discussion of that topic in this case will be left until the relevant evidence has been refined in the crucible of trial and the verdict.

IV.   New York Attorney General Claims

Defendants argue the NY AG's claims are preempted by federal law, or that defendants are protected by the safe harbor provision under N.Y. Gen. Bus. Law §§ 349 and 350, and the NY AG is barred from seeking restitution.

20

A. Preemption

Defendants argue the NY AG improperly seeks to impose a higher substantiation requirement on Quincy than the analogous federal law. SJ at 43.  In making this argument, defendants rely on 21 U.S.C. § 343-1(a)(5), which states "no State or political subdivision of a State may directly or indirectly establish" any labeling requirement "that is not identical to the requirement" imposed by the FDCA.

But defendants misconstrue the nature of the NY AG's claims in this case, which are focused on deceptive advertising, not labeling requirements. See e.g., Warren v. Whole Foods Mkt. Grp., Inc., 574 F. Supp. 3d 102, 113 (E.D.N.Y. 2021).  The applicable federal law to be considered in this case is the FTC Act, not the FDCA and the DSHEA.  In Jovel v. i-Health, Inc., the court found that a deceptive advertising claim based on a product, which was "labeled as supporting brain development and function, improving memory, supporting mental clarity and protecting against normal cognitive decline" was not preempted by federal law because although "those statements are part of the products' labeling and may touch on an area regulated by the FDA, consumer protection claims founded on their falsity are not preempted." 2013 WL 5437065, at *5 (E.D.N.Y. Sept. 27, 2013; See e.g., Hughes v. Ester C Co., 99 F. Supp. 3d 278, 287 (E.D.N.Y. 2015) ("The FDCA is not focused on the truth or falsity of

21

advertising claims, but is directed to protecting the public by ensuring that drugs sold in the marketplace are safe, effective and not misbranded...") (internal citations omitted). The NY AG's claims are not preempted by the FDCA and the DSHEA.

B. N.Y. Gen. Bus. Law §§ 349 and 350 Safe Harbor

Defendants seek the protection of the Safe Harbor provision in N.Y. Gen. Bus. Law §§ 349(d) and 350, which provides, "[i]n any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts."

The defendants' argument and applicability of this "safe harbor" provision rests on its assumption of compliance with federal law. There being a genuine issue of material fact whether the defendants have complied with federal law, summary judgment as to the NY AG's claims under the "safe harbor" provision cannot be granted until it prevails at trial.

C. NY AG's Ability to Gain Restitution

Under the fundamental principle of res judicata, the NY AG is prohibited from obtaining restitution on behalf of those

22

class members who are covered by the Collins Settlement. *See*

*Matter of People v. Applied Card Sys., Inc.*, 11 NY.3d 105, 124-

25 (NY Ct. of App. 2008). However, the NY AG may seek

restitution on behalf of those who are not covered by the

settlement.

     So ordered.

Dated:    New York, New York
          December 19, 2022

                                   Louis L. Stanton
                                  LOUIS L. STANTON
                                   U.S.D.J.