Final Pretrial Conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  FEDERAL TRADE COMMISSION and
   NEW YORK STATE OFFICE OF THE
4  ATTORNEY GENERAL,

5              Plaintiffs,

6         v.                          17 CV 0124(LLS)

7  QUINCY BIOSCIENCE HOLDING CO.
   et al.,
8
                Defendants.
9
   ------------------------------x
10                               New York, N.Y.
                                 September 15, 2023
11                               12:45 p.m.

12  Before:

13                 HON. LOUIS L. STANTON,

14                                    District Judge

15                      APPEARANCES

16  FEDERAL TRADE COMMISSION
        Attorneys for Plaintiff
17  BY:  CHRISTINE DeLORME
        TIFFANY M. WOO
18      EDWARD GLENNON
        ANDREW WONE
19
   NEW YORK OFFICE OF THE ATTORNEY GENERAL
20      Attorneys for Plaintiff
   BY:  KATHRYN A. MATUSCHAK
21      MARY F. ALESTRA

22  KELLEY DRYE & WARREN LLP
        Attorneys for Defendant Quincy Bioscience, et al
23  BY:  GEOFFREY W. CASTELLO
        JACLYN  M. METZINGER
24      GLENN C. GRAHAM
        CAITLIN R. HICKEY

25

N9F6FTCC                    Final Pretrial Conference

1                          APPEARANCES (Continued)

2

3    COZEN O'CONNOR PC
          Attorneys for Defendant Underwood
4    BY:  MICHAEL B. de LEEUW
          TAMAR WISE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Obviously, what this meeting needs is an

2     agenda, and I'm not quite clear on what the agenda is, but it

3     seems to me that it should follow the excellent letter that I

4     got on September 13 laying out the situation in a well

5     thought-out way.  And if we answer the questions in that

6     letter, understandably, there are many layers to this case.

7     But if we accomplished that much, it seems to me we've done a

8     good day's work.

9          As a background, the interplay, of course, between the

10    law and the equities and the jury questions and nonjury

11    questions don't clarify things much.  But in a funny sense,

12    they isolate them in useful ways.  And it seems to me that in

13    the overall, the picture is wrong, simple, if you approach it

14    in linear time.

15         It's not going to be one trial and all of these

16    questions presented at once.  It's really a series of layers of

17    trial, and these problems will come sequentially.  And as we

18    approach each one of them in real life -- we're following the

19    English method, which is you don't decide in advance a whole

20    lot of things that you're not aware of in full at once.  When

21    you get to those, you will be just as smart as you are now, and

22    you will be much better informed.  And that's the way these

23    questions will fall into order.  And then taken like that, it's

24    not going to be particularly difficult, so you should not be

25    awed, but methodical.

1          And it sounds oversimplified, but it seems to me that

2     perhaps the controlling picture is this really starts with a

3     separate trial of the state's case on its statute, 349 to 350,

4     and that goes to the jury, and it's tried to the jury with

5     consequences that later have their affects, but those should

6     not be allowed to complicate the fact that it's that trial.

7     And you have opening statements relative to that trial, and we

8     proceed.  The state thinks it's seven days, and the defendants

9     15 days.  Well, it will take something in that area, and when

10    we get to real life, it will take whatever it takes.

11         So these are very useful questions against that

12    concept.  And if it's deeply wrong, for heaven's sake, tell me

13    now.

14         Okay.  First question is a very sensible one of trial

15    structure.  I think it accurately describes exactly what I've

16    just said was the proper way to view it.  Underwood, of course,

17    presents a somewhat specialized problem, but I don't think it

18    should complicate the first trial.  It is a fair question,

19    should Underwood be allowed to address the jury with respect to

20    the state claims, because they will later be binding as against

21    him.  And I'm open, very much open, to thoughtful arguments

22    about that.

23         It sounds like a basic fairness.  On the other hand,

24    there is a good deal to be said to letting the jury focus on

25    its own duty in its own case without worrying about the

1    consequences that my follow in another setting.

2              I think I'm a little inclined towards that, but I'm

3    open to argument.  The good thing is we have plenty of time.

4              I find that what I'm doing is probably not what I

5    should be doing, which is reading these and giving my own

6    action.  The more common and much better procedure is I should

7    hear your desires and reactions first.  So we will have that.

8    It's a question I regard as, for one, easily postponed because

9    it really doesn't arise until post-verdict.  And post-verdict,

10   we'll know a lot more about the actual case.  But anybody who

11   has questions or suggestions they want to make, that's why

12   we're here.

13             MR. GLENNON:  Your Honor, Edward Glennon with the

14   Federal Trade Commission.

15             I want to ask you, you said the first section of the

16   trial, phase of the trial would involve the state court claims,

17   which we agree with that.  To clarify, our position is that the

18   Federal Trade Commission, we would argue that we would be able

19   to participate in that phase of the trial.

20             THE COURT:  You would do what?

21             MR. GLENNON:  Would we be able to participate in that

22   phase of the trial since the Court would be bound with regard

23   to our claims by the jury's findings?

24             THE COURT:  Yes.  Does anybody think they should not

25   be allowed to participate in the actual trial of the case, the

N9F6FTCC                      Final Pretrial Conference

1    examination of witnesses?  That's what you're asking?

2              MR. GLENNON:  Correct.  Also in terms of opening

3    statement, closing argument as well.

4              THE COURT:  That, I would regard as a separate

5    question.  A lot of argument about something that they're not

6    going to be allowed to decide has some drawbacks.  But I'd like

7    to hear, or I'd like to let you talk among yourselves about

8    what your preference is.  What interests are involved in the

9    answer to that question?

10             MR. CASTELLO:  Geoffrey Castello.  I represent the

11   corporate defendants.

12             If we're talking in terms of the FTC addressing the

13   jury --

14             THE COURT:  You'll be defending the case against the

15   same fact, really, but under the name of the New York State

16   statute.

17             MR. CASTELLO:  Correct.  Right.  I think the only --

18             THE COURT:  It seems to me you're going to be doing

19   exactly what you would want to be doing if you were trying one

20   or both or either of the two cases in any sequence.

21             MR. CASTELLO:  I agree with that.  The difference that

22   the parties have, the difference that the FTC and the

23   defendants have relates to opening and closing statements.

24             THE COURT:  Yeah.

25             MR. de LEEUW:  It's our position --

1          THE COURT:  And what is your position on that?

2          MR. CASTELLO:  Our position is that under the FTC Act,

3     under FTC law, the FTC does not have a right to a jury.  That

4     was invoked because of the claims raised by the NYAG.  So I

5     don't think we have a disagreement that the FTC would

6     participate in a conduct of the trial in terms of examining

7     witnesses and presenting evidence or attempting to present

8     evidence.  The difference comes, I think, strictly in the realm

9     of opening and closing statements, which they can do outside of

10    the jury's hearing but still make those arguments to you.

11         THE COURT:  But you don't want them to be able to,

12    that's your position?

13         MR. CASTELLO:  Yes, your Honor.  That they should not

14    be permitted to open or close in front of a jury.

15         THE COURT:  And why do you think that is better?

16         MR. CASTELLO:  I don't know if it's better or not.

17    It's a matter of whether or not the law would entitle the FTC

18    to present opening and closing statements to the jury.  That

19    would be unprecedented.  There are some differences in the

20    two -- or the various statutes, state and federal, at issue

21    here.  I don't want to suggest how that should be navigated by

22    plaintiffs.  But it is our position that because they are not

23    entitled to present in front of a jury, if it were strictly a

24    claim brought by the FTC only under the FTC Act, this would be

25    a bench trial.

N9F6FTCC                          Final Pretrial Conference

1          THE COURT:  Well, the person that would have to be

2    directed to the interesting point in that situation, which is

3    that their findings with respect to the state statute, the

4    factual findings, are later going to be binding on me as they

5    effect the nonjury points.  So it's not a simple as it looks at

6    first.

7          MR. CASTELLO:  It never is, your Honor.  I agree.  I

8    understand.  But that is our position.  And, your Honor, I

9    should say, I represent the corporate defendants.  Ms. Wise and

10   Mr. De Leeuw represent Underwood individually.  And I think

11   Mr. De Leeuw might have something he might want to say, or I'm

12   happy to entertain more questions.

13         MR. de LEEUW:  I think you laid out our position very

14   well.  They can participate in the trial, cross-examine

15   witnesses, examine witnesses, but they shouldn't be presenting

16   in front of a jury.  And the one thought is that it could

17   confuse the jury to have the FTC addressing them as the FTC at

18   the outset.  It could also potentially prejudice the jury to

19   think that both the federal government and the New York

20   Attorney General are trying the case against the company.  So

21   we think there's reason the FTC should not participate in

22   opening and closing arguments.

23         MS. MATUSCHAK:  Your Honor, may I --

24         THE COURT:  Is the better time for you to make your

25   opening statements when we get to the FTC case and the nonjury

N9F6FTCC                         Final Pretrial Conference

1    trial?

2                 MR. GLENNON:  Well, your Honor, the FTC's position is

3    that I think it is a question of basic fairness, as you had

4    referenced earlier, since the Court will be bound with regard

5    to the FTC's claims.  Then with regard to the jury findings for

6    the FTC claims, we think we should have a right to argue to the

7    jury.  We think the Court could handle any issue of confusion

8    by explaining our position to the jury, if necessary, if the

9    Court thought it was necessary.

10                But basically, we think it is a matter of fairness

11   since we will be bound -- our claims will be determined by the

12   jury's findings, then we should have a right to not only

13   examine witnesses, but present opening statements and closing

14   argument.

15                THE COURT:  And present evidence?

16                MR. GLENNON:  Correct.

17                MS. MATUSCHAK:  Your Honor, I'm Kate Matuschak.

18                THE COURT:  I had my doubts.

19                MS. MATUSCHAK:  I'm with the New York

20   Attorney General, and I just wanted to say that we are in

21   agreement with the FTC, that they should have a seat at the

22   table because they are going to be bound by what the jury ends

23   up with on the NYAG claims, and this has been an FTC and

24   New York Attorney General case from the beginning.

25                THE COURT:  Who are you representing?

1          MS. MATUSCHAK:  I'm with the New York

2     Attorney General's Office.

3          THE COURT:  Oh, okay.

4          MS. MATUSCHAK:  Yes.  And so our statutes are very

5     similar.  They have common facts.  These facts are going to be

6     presented to the jury first, and the Court is going to be bound

7     by what the jury comes up with.  So we think as a matter of

8     fairness that the FTC should have a full seat at the table.

9     When the facts are being presented to the fact-finder, that's

10    going to end up binding both the AG and the FTC.

11         MR. GLENNON:  And your Honor, if the Court is

12    concerned, we could discuss with defendants or discuss with you

13    an allotment of time so that if you were concerned about the

14    plaintiffs having two bites of the apple, perhaps we can

15    apportion time in some way so that that wouldn't be the case.

16    So we would have the plaintiffs as a whole, two plaintiffs

17    together, perhaps could have an equal amount of time to

18    defendants in making those statements and arguments.

19         THE COURT:  It seems to me that the time for the FTC

20    case is after the AG's case.  It's a question of how you regard

21    it.  If you regard it as foreclosed, because the jury's verdict

22    will be binding, then that argues for some degree of

23    presentation to the jury in the AG's case.  On the other hand,

24    a more healthy way of regarding it may be to say, look, it's a

25    separate trial, and there's a different basis, and the time for

1   you to present your evidence, which would be different from

2   something that would otherwise be the only evidence before the

3   jury, and make your case then on its merits with the arguments

4   and the evidence that pertains to that.  And that's really the

5   sound way to go, than to try to shoehorn a different purpose

6   into the decision of the jury in the jury case.

7           Again, these are intriguing questions, and the thing

8   to do is clarify, and my mind is now open — it is not closed,

9   it's open — and there's some advantage in keeping it empty

10   because these are things that ought to be considered carefully.

11           MR. GLENNON:  If I could --

12           THE COURT:  But my bias would be towards regarding

13   them as two separate trials — one of which has some limitations

14   imposed by the findings, factual findings by the jury in the

15   first case.

16           MR. GLENNON:  Your Honor, I would say I think the

17   scenario is close -- the first one you described.  I think the

18   jury's findings with regard to the state claims would be

19   conclusive with regard to the FTC claims.  So I don't think

20   there would be a need to have a separate trial, a second trial

21   with additional evidence.  I think it would be exactly the same

22   evidence, so I think it should be considered more as one trial.

23   And the jury's findings with regard to the state claims would

24   determine liability.

25           At least with regard to the corporate defendants in

1   the second stage, those findings would also be binding against

2   the individual defendant, but the FTC would have to approve

3   additional elements against the individual defendant.  So

4   those, we could address those issues separately and at a second

5   hearing or second stage of the trial involving the individual

6   defendant, but we do think that the overlap between claims

7   against the corporate defendants, against the state, those

8   would cover the FTC claims entirely.  So it would be the same

9   evidence for the state claims and the FTC claims.

10          So we don't think it's necessary to consider them two

11   wholly different trials.  It would be the same evidence, same

12   argument.  So that's why we think we would be bound, or the

13   Court would be bound with regard to the FTC's claims by the

14   jury's finding.  We think the FTC should get a seat at the

15   table and be able to argue, present opening statements and

16   closing arguments.

17          THE COURT:  What are you going to say to them that

18   would make their judgment different from what it would be from

19   them just listening to the state?

20          MR. GLENNON:  Well, your Honor, we would talk to the

21   state about how to divide up the issues.  As Ms. Matuschak did

22   say, the FTC has been involved.  This has been an FTC case.  We

23   have done a lot of the work during the case, so we would want

24   to combine our efforts to make the opening statements, to make

25   our best arguments to the jury.

1          THE COURT:  And what's the answer to my question?

2          MR. GLENNON:  Well, of course the skill of the federal

3   attorneys, of course, would be very helpful, without a doubt.

4   That would be to supplement the skill of the New York

5   attorneys, of course.

6          THE COURT:  So you would be saying the same things to

7   them, except saying it better?

8          MR. GLENNON:  Well, we'd try not to say the same

9   things.  We are cognizant of the argument of unfairness about

10  not having two bites of the apple, so we're happy to divide the

11  issues in making any opening statements and/or closing

12  arguments.  But we would want a seat at the table, having

13  prosecuted the case throughout.  And since we will be bound, we

14  do want to have a say.  We want the jury to hear what we, the

15  FTC, has to say and how we present the issues.

16         THE COURT:  What do the defendants think about that?

17         MR. de LEEUW:  Our view is the exact opposite.  We

18  represent Mr. Underwood, and the New York Attorney General does

19  not have a claim against Mr. Underwood, only the FTC does.

20  We're concerned if the FTC is in front of the jury discussing

21  its full case, that is going to be a potential problem for us.

22  We're going to be bound by also whatever happens in front of

23  the jury, as your Honor will be.

24         THE COURT:  You say discussed its full case?

25         MR. de LEEUW:  So if it discusses it in any way.

1          THE COURT:  So they say they'd like to add some things

2     to the evidence that would be useful for them.

3          MR. de LEEUW:  Well, we just think the dividing line

4     is going to be difficult.  We represent an individual, but he's

5     also a principal at the company.  It's going to be difficult.

6     And a lot easier way to do it is to do what your Honor

7     suggested, is essentially two trials, a separate trial for the

8     FTC claims afterward.

9          I know that my friend has suggested that they can

10     divide it up and leave all of the individual parts about

11     Mr. Underwood until afterwards, but I just see that as being

12     very difficult.  And I think, again, we're willing to let the

13     FTC participate in examining witnesses and cross-examining

14     them.  We don't think they should be addressing the jury in the

15     opening and closing remarks.  We think that's where the

16     confusion can be created.

17          MR. GLENNON:  If I could clarify our position, the

18     FTC's position.  We would not argue the issues involving only

19     Underwood's individual liability to the jury.  We would leave

20     those to the second stage in the elements of our case, only

21     against the individual defendant.  We would leave those to a

22     second hearing only before the Court.

23          So in making our opening statements and closing

24     argument to the jury, we would not be addressing those elements

25     that pertain only to Mr. Underwood.  We would not want to

N9F6FTCC                          Final Pretrial Conference

1    confuse the jury in that way.

2            MR. CASTELLO:  Your Honor, may I add something that I

3    think is being lost here?  These two agencies partnered

4    together.  They made a decision.  They could have brought their

5    actions separately.  They partnered together.  And when they

6    did that, they had to understand that there are two bodies of

7    law:  One of which permits a jury trial, and one doesn't.  And

8    I think a practical problem could come at closing when the jury

9    will hear charges relating to the NYAG's claims only; and yet,

10   the FTC wants to close.

11           And this isn't a matter of fairness, as I see it.

12   This is a matter of law.  The FTC does not have a right to a

13   jury trial when it brings an action, an enforcement under the

14   FTC Act.  So the only reason why we're having this conversation

15   — your Honor has to decide the issue — is because they decided

16   to partner together.

17           Your Honor's initial reaction to how to conduct the

18   trial is sound.  They chose to bring these two separate actions

19   together, then let's do a staged trial, and they still have

20   not -- the FTC still has an opportunity to participate when it

21   comes to examining witnesses and presenting or attempting to

22   present evidence.

23           THE COURT:  I listened to these are very intelligent

24   arguments.  I have a growing fear that to the degree that the

25   FTC improves its case by the contributions it makes in the AG's

1    case, it is corrupting the simple trial of the AG's case.  And

2    it's entirely innocent, but that is the purpose of addressing

3    them, opening, and closing.  Whatever evidence is put in, it's

4    put in to benefit the plaintiffs in the FTC case in a way that

5    they would not otherwise have.  And, by definition, I think

6    that is a corruption of the separation that goes to the

7    separation between the jury trial and the nonjury trial.  So

8    I'm concerned about whether that is the right path.

9            MR. GLENNON:  I understand, your Honor.  And I agree,

10   this is a very unusual posture for the case.  The FTC,

11   typically — in cases which I have been involved, at least — has

12   only its claims, so a jury is not involved.  This is an unusual

13   posture in that we, the FTC, would be affected by the jury's

14   findings.  So that is the reason for the difference in this

15   case.

16           And, again, from our point of view, it does

17   essentially come down to fairness since we will be bound and

18   affected by the jury's finding.  We feel we should have a seat

19   and be able to participate fully.

20           MR. CASTELLO:  Your Honor, I think that states well my

21   view that this is a matter of law, not a matter of fairness.

22           MR. de LEEUW:  And just representing Mr. Underwood, we

23   would not expect to be allowed to participate in the opening

24   and closing arguments in the New York Attorney General case

25   because we're not a party to that case.  And so our expectation

1    is that we shouldn't be doing an opening or closing to the

2    jury.  We can participate to the same extent the FTC can, but

3    we think it runs both ways.  But we are not arguing that we

4    should be allowed to present in front of the jury opening or

5    closing arguments in a case to which we are not a party.

6          MR. GLENNON:  Your Honor, the FTC would not object to

7    Mr. Underwood's participation or presentation of opening

8    statements or closing argument with the understanding that they

9    wouldn't address issues that the jury didn't have to decide.

10   But we would not oppose Mr. Underwood's participation of the

11   same extent as the FTC because he would be bound and affected

12   by the jury's findings as well.

13         THE COURT:  I think for present purposes, we should

14   regard the two trials as completely separate, and the FTC is

15   not to participate in the nonjury trial.

16         MR. GLENNON:  Would we be able to examine witnesses in

17   the jury trial, your Honor?

18         THE COURT:  Would you consider that participating?

19         MR. GLENNON:  I would, your Honor.  Defendants don't

20   have a problem --

21         THE COURT:  Would anybody not consider it

22   participating?

23         MR. GLENNON:  Yes.  I note the defendants don't have

24   an objection to the FTC participating to that extent in the

25   first phase of the trial.

1          THE COURT:  My present inclination is to think that

2     you are really separate, and you will not be participating,

3     even to the small extent of examining witnesses.  Now, that

4     might be subject to amendment.  As we go along, there might be

5     some fluke corner to the case where it's a perfectly fair thing

6     to do.  But I think the line we should be following is the

7     complete separation.  And the jury's verdict will be nothing

8     but a proper jury's verdict on the germane evidence in that

9     case, not as embellished by other considerations that would

10     affect its judgment.

11          MR. GLENNON:  Your Honor, just to fully state our

12     position, I would note that in a proceeding before the second

13     stage of a trial before the Court, there would not be any

14     additional evidence with regard to many of the factual claims,

15     like whether --

16          THE COURT:  To many, you're saying?

17          MR. GLENNON:  Correct.  With regard to whether the

18     advertisements were made or whether they were false or

19     misleading, basically.  The core issues with regard to the

20     corporate defendants, certainly there would not be any

21     additional evidence in the second stage of the trial.  So all

22     the evidence under those issues would come out before the jury,

23     and we would be bound by the jury's findings.  So I understand

24     the Court's position, again, given that there would be no

25     further evidence produced on those particular factual issues

1    before the Court, the FTC would like to -- we believe we do

2    have a place, at least in the examination of witnesses and

3    presentation of evidence.

4         MS. MATUSCHAK:  Your Honor, I'd like to add that the

5    government agencies chose to collaborate in this case because

6    our statutes are basically the same.  There are some minor

7    nuances, but the fundamental issue in this case is were the

8    advertising claims made and were they substantiated.  If they

9    were not substantiated, then they were deceptive, and they

10   therefore violate the FTC Act and the New York statutes at

11   issue in this case.

12        So there wouldn't be any difference in the

13   presentation by FTC lawyers versus the AG lawyers of our case

14   to the jury.  We're all looking to establish the same facts,

15   and those same facts will meet the legal requirements of both

16   statutes at issue.  So it's not as if Mr. Glennon, standing in

17   front of the jury, is going to present something different from

18   what someone from the AG's office will present.

19        We've been working as a team of co-plaintiffs in this

20   case.  Given that we're government agencies doing law

21   enforcement with limited resources, we decided to pull together

22   to pursue what we perceive as a violator of both federal and

23   state law.  So as a matter of fairness, we think that the FTC

24   should be with us at the table, and there won't be any

25   difference, your Honor, in terms of presentation.

1          Ms. Azia is one of the attorneys from my office, and I

2     don't think her presentation to the jury in terms of examining

3     witnesses is going to be any different from what Mr. Glennon

4     will do, because we're establishing the same set of facts.

5          MR. GLENNON:  And we have conducted discovery

6     together.  So the FTC has deposed certain witnesses, the

7     New York Attorney General's Office has deposed certain

8     witnesses.  So we have handled discovery together.  We've gone

9     through that phase, working with the New York

10    Attorney General's Office, and have developed the case with

11    them.

12         And I agree with what Ms. Matuschak just said.  There

13    wouldn't be any difference in terms of interacting with the

14    witnesses at trial.  So, again, we wouldn't be doing a second

15    examination of the same witnesses for two plaintiffs, it would

16    just be one.

17         MR. CASTELLO:  Your Honor, I see a big difference

18    between two bodies of law that plaintiffs bring their actions

19    under — that is that one allows a jury trial and one doesn't.

20    That's the issue we're discussing now.  Whether or not the

21    claims relating to the merits of either one of their individual

22    statutes are similar or not is not the point for purposes of

23    this discussion.

24         The corporate defendants should not face a very

25    important aspect of the trial — opening and especially closing

1    statements — where an agency that does not have a right to a

2    jury trial, because of their choice to partner together in this

3    case, now will be addressing the jury.  So, again, I don't

4    think it's a matter of fairness in that sense.  It's more a

5    matter of the law that tells us whether or not a jury trial is

6    permitted.

7            MR. de LEEUW:  Also, they just argued that the

8    presentations wouldn't be different.  Whether that's true or

9    not, they said that, and if that's true, doesn't that that

10   auger toward keeping the trial separate?  If it's not going to

11   be different, then why risk the bleeding of one case over into

12   another as well?

13           MR. GLENNON:  Certainly, with regard to examination of

14   witnesses and presentation of evidence, I don't think there's a

15   danger, your Honor, of the FTC corrupting the process or

16   inserting any additional argument at all improperly -- at all

17   that would affect the jury.

18           THE COURT:  Well, I think the law gives you a nonjury

19   trial.  And even if that's, to some extent or a great extent,

20   limited by considerations of what happened in the jury trial,

21   you still get the nonjury trial, and you can't sneak into the

22   jury trial and affect it in a way that would lead to your

23   advantage in a nonjury trial.  They are separate.  And I think

24   the simplest way to try the jury trial is always the best, and

25   the best way is to try it as the jury trial.  And without

1    bringing in nonjury matters, such as an opening, closing by

2    people who are only entitled to a nonjury --

3                MR. GLENNON:  What the --

4                THE COURT:  -- that leads to a blurring.  And the

5    Court does its best to avoid blurring.

6                MR. GLENNON:  Your Honor, I understand with regard to

7    opening statements and closing argument.  Again, would the FTC

8    then be allowed to participate to the extent of examining

9    witnesses that would not involve argument?

10               THE COURT:  I was a lawyer for 30 years.  I tried a

11   lot of cases.  And I always felt that when I was examining the

12   witness, I was taking part in the case.  If something has

13   happened to change that -- my time examining witnesses was a

14   great deal of the case, and the rest was argument or opening

15   statements, things like that.  So I think the answer is,

16   unfortunately, no.

17               MR. GLENNON:  Could we have the opportunity to perhaps

18   brief the issue, your Honor?

19               THE COURT:  Yes, you may.  And the only way that I

20   would base it, as presently thinking, that I would be very

21   interested in what you have to say is if it first made clear

22   what the difference to the jury, having your presentation in

23   the middle of the jury case, as compared to not having it.  The

24   risk is one of distortion, and the more the distortion benefits

25   the person not entitled to a jury trial, the less just it is.

1    MS. MATUSCHAK:  Your Honor --

2    THE COURT:  These are of course preliminary views, but

3    it's good to air them when we have time to think about them.

4    MS. MATUSCHAK:  Thank you, your Honor.  I just wanted

5    to seek a bit of clarification in terms of the risk of

6    distortion.  I wonder if you can give us a little more guidance

7    as to when it's just a strict Q and A and presentation of

8    evidence, what the distortion risk is there based on who the

9    attorney is.

10    THE COURT:  You're dragging a jury case into a

11    situation which it is not entitled to.  That's the distortion,

12    to start with.

13    Should we be moving along?

14    MR. de LEEUW:  Yes.

15    THE COURT:  Mr. Underwood.  What of the Underwood

16    participation should we address now?

17    MR. de LEEUW:  Well, we think that your Honor is right

18    in your preliminary view on the FTC, and we think we would not

19    have the ability to participate in the trial when we're not a

20    party.

21    THE COURT:  Yes.

22    MR. de LEEUW:  So we agree with your Honor.

23    THE COURT:  Yes, I think the consequence of the jury's

24    findings being binding, they are binding as far as they go and

25    as far as they express the evidence that's before them.  They

can't be expanded much beyond that.  And it's an advantage of

keeping separate things separate.

Oh, next question.  Maybe I'm jumping ahead.  If I am,

it's simply out of a sense of what I should eat, thinking about

lunch.

The calling and recalling of witnesses by the two

sides, we do it all the time, and as much as is practical in

every case.  There's no problem with it.  He is first called as

a hostile witness, and then he testifies as a friendly witness,

and then he has a reply.  But the jury understands and

everybody understands it's not a difficulty.

Trial lengths and trial days.  My own lawyer here, who

is very hard-driving, thinks that those are sort of languid

dates.  I think they're pretty reasonable, so I don't think

you'll have a fight over that.

Motions *in limine*, I think the process is under

control.  Don't be surprised if all or a large portion are

reserved until trial.  It's in their nature.  And the avoidance

of -- well, let me put it the other order.  The benefit of

reserving that kind of question until trial is that then it's

resolved in view of all of the proceedings that have happened

up until that point and all of the things that have been said

up until that point.

And any judge who has been on the bench as long as I

have has had the rather discouraging experience of having, for

1   sound intellectual reasons, excluded evidence in advance, and

2   who finds in the middle of trial the whole bases for that

3   determination is no longer a fact, and now the ends of justice

4   require that you are to get that evidence back and have it

5   heard.  And that, of course, from some sense, is the advantage

6   of the motion *in limine*.  But it's a disadvantage also.

7          And the common experience is that the motion *in*

8   *limine*, which is reserved until trial decided then, that

9   presents a lot fewer problems than it does in the material

10  submitted with the motion *in limine*.  A lot of them go away,

11  including some of the experts.  But they certainly don't

12  reoccur at trial.  So there are powerful motors towards

13  treating them that way.  And it really takes an exceptional

14  case that says that this one -- they really ought to know is

15  getting in or is not, or this would really be a waste of time,

16  something like that.

17          MS. MATUSCHAK:  Your Honor, could I just, on that one

18  point, in terms of Daubert, there are a number of witnesses

19  that the Court has just cited to reserve judgment on, and it

20  could fundamentally change the length and content of the trial.

21  And so the parties --

22          THE COURT:  That's for the good, because that's when

23  they should be heard.

24          MS. MATUSCHAK:  Understood.  Yes.  The parties had

25  inserted into a letter just a question for the Court --

N9F6FTCC                          Final Pretrial Conference

1      THE COURT:  We're not trying to shorten the trial by

2   deciding the questions one by one first.  It's not a good

3   procedure.  The best procedure is trying it.

4      MR. GLENNON:  Your Honor, with regard to the motions

5   *in limine*, we did want to see what procedure you'd like the

6   parties to follow in terms of filing those.  Should we file a

7   letter requesting a pre-motion conference?

8      THE COURT:  No, no.  No pre-motion.

9      MR. GLENNON:  Okay.

10      THE COURT:  Just the barebones of the motion *in*

11   *limine*.

12      MR. GLENNON:  Thank you, your Honor.

13      THE COURT:  And the Daubert reasons.  And like

14   anything else, the clearer the statements are, the more

15   effective they are.

16      Is there anything else that we should be doing today?

17      MR. de LEEUW:  Trial date, a date for trial.

18      THE COURT:  A date for trial seems to be shaping up

19   for January.

20      Mike, the latter half?

21      DEPUTY CLERK:  I think you had thought about

22   February 6.

23      THE COURT:  February 6.  These things are still, to

24   some degree, in the hands of the committee that was forced on

25   us by COVID, but they are getting more and more back to the old

N9F6FTCC                        Final Pretrial Conference

1  system where you can claim a date with a pretty fair chance of

2  getting it.  I'd look at a date in that line.

3          MR. de LEEUW:  Okay.

4          THE COURT:  One of the Court's greatest specialists in

5  this field is Mike Lee.

6          MR. de LEEUW:  Absolutely.

7          THE COURT:  He knows all about it.

8          MR. GLENNON:  Your Honor, a question about the second

9  stage involving Mr. Underwood, his individual liability.

10          THE COURT:  Yes.

11          MR. GLENNON:  Would the Court envision a hearing on

12  that to follow immediately after the jury proceedings?

13          THE COURT:  Yes.  No.  We're going to know so much

14  more about this, what the issues are, at that point and how

15  much time we have and when we would like to schedule.  But to

16  try to do it now is just fooling yourself.  It will come along

17  in due course.

18          MR. GLENNON:  Okay.

19          THE COURT:  But basically if it were necessary to be

20  addressed to Mr. Underwood, it can be regarded as postponed

21  until after the trial because you will have a sure sense of

22  what it involves.

23          MR. GLENNON:  I understand, your Honor.  Thank you.

24          THE COURT:  Thank you, all.  Have a good weekend.

25          (Adjourned)