# Exhibit 3

```
 1                  UNITED STATES DISTRICT COURT
 2                  SOUTHERN DISTRICT OF NEW YORK
 3
 4    FEDERAL TRADE COMMISSION and        )
 5    THE PEOPLE OF THE STATE OF          )
 6    NEW YORK, by LETITIA JAMES,         ) Matter No.
 7    Attorney General of the State      ) 1:17-cv-00124-LLS
 8    of New York,                        ) CONFIDENTIAL
 9              Plaintiffs,               ) ATTORNEYS' EYES
10         v.                             ) ONLY
11    QUINCY BIOSCIENCE HOLDING           )
12    COMPANY, et al.,                    )
13              Defendants.               )
14    ------------------------------------)
15
16                                Thursday, August 20, 2020
17                                Via Zoom
18
19         The above-entitled matter came on for the
20    30(b)(6) deposition of MARK YANCEY UNDERWOOD, pursuant
21    to notice, at 9:43 a.m., Central time; 10:43 a.m.,
22    Eastern time.
23
24
25
```

```
 1    APPEARANCES:
 2
 3    ON BEHALF OF THE FEDERAL TRADE COMMISSION:
 4         ANNETTE SOBERATS, ESQ.
 5         MICHELLE RUSK, ESQ.
 6         EDWARD GLENNON, ESQ.
 7         Federal Trade Commission
 8         600 Pennsylvania Avenue, N.W.
 9         Washington, DC 20850
10         (202) 326-2921
11         asoberats@ftc.gov
12
13
14    ON BEHALF OF THE STATE OF NEW YORK:
15         KATE MATUSCHAK, ESQ.
16         Assistant Attorney General for the
17            State of New York
18         Consumer Frauds and Protection Bureau
19         120 Broadway
20         New York, New York 10271
21         (212) 416-6189
22         kate.matuschak@ag.ny.gov
23
24
25
```

3

Underwood - 30(b)(6) - Confidential
FTC, et al. v. Quincy Bioscience Holding, et al.                              8/20/2020

```
 1    ON BEHALF OF CORPORATE DEFENDANTS:
 2         GEOFFREY W. CASTELLO, ESQ.
 3         JACLYN M. METZINGER, ESQ.
 4         GLENN T. GRAHAM, ESQ.
 5         Kelley Drye & Warren
 6         One Jefferson Road
 7         Second Floor
 8         Parsippany, New Jersey 07054
 9         (973) 503-5922
10         gcastello@kelleydrye.com
11
12
13    ON BEHALF OF THE DEFENDANT UNDERWOOD:
14         MICHAEL B. DeLEEUW, ESQ.
15         TAMAR WISE, ESQ.
16         Cozen O'Connor
17         45 Broadway
18         16th Floor
19         New York, New York 10006
20         (212) 908-1331
21         mdeleeuw@cozen.com
22
23
24    ALSO PRESENT:
25         William Ducklow, FTC
```

Underwood - 30(b)(6) - Confidential
FTC, et al. v. Quincy Bioscience Holding, et al.                    8/20/2020

1      Q.   And this is dated July 8th, 2010, correct?
2      A.   It is.
3      Q.   So for ease of reference, I'm going to refer to
4    this report as the pepsin digestion report.  I have a
5    few questions about it.
6      A.   Sure.  But this -- just for note, this is part
7    of a larger project, because this is not a digestion
8    study.
9      Q.   Okay.
10     A.   This is an allergenicity study.
11     Q.   Okay.
12     A.   And I guess just for the record, although this
13   is 26 pages, I believe the entire allergenicity study is
14   much longer.  So I don't think this is the whole thing,
15   but we may be getting to that as well, but --
16     Q.   Okay.  Who initiated the idea to conduct a study
17   assessing the stability of apoaequorin in pepsin assays?
18     A.   Well, we pursued an allergenicity study with
19   Dr. Goodman's lab.
20     Q.   Okay.  But that doesn't answer my question.  Who
21   came up with the idea to conduct a study assessing the
22   stability of apoaequorin in pepsin digestion assays?
23          MR. CASTELLO:  Objection.
24          THE WITNESS:  That determination was made in
25   conjunction with -- with advice from counsel.

```
 1                BY MS. SOBERATS:
 2        Q.   And why was this study done?
 3                MR. CASTELLO:  I'm going to caution the witness
 4     that if in order to answer that question he would be
 5     required to divulge any communications that the company
 6     had with counsel, that he not answer that question.
 7                THE WITNESS:  I'll have to defer to the advice
 8     from counsel.
 9                BY MS. SOBERATS:
10        Q.   How were you involved in this study, Mr.
11     Underwood?
12        A.   I guess I would be considered, on behalf of the
13     company, the sponsor.
14        Q.   Did you have any input in the design of the
15     study?
16                MR. CASTELLO:  Objection.
17                THE WITNESS:  In conjunction with the advice of
18     counsel.
19                BY MS. SOBERATS:
20        Q.   You were not -- sorry, I take that back.
21             Did you review this draft report?
22                MR. CASTELLO:  Objection.
23                THE WITNESS:  I did.
24                BY MS. SOBERATS:
25        Q.   And did you participate in drafting this report?
```

83
Underwood - 30(b)(6) - Confidential
FTC, et al. v. Quincy Bioscience Holding, et al.                    8/20/2020

1   different questions that we had, we would consult with
2   counsel to make sure we, you know -- I don't know, I
3   guess were doing it right -- "right".
4           BY MS. SOBERATS:
5       Q.  Did you discuss the --
6       A.  I'm sorry.
7       Q.  Did you discuss the FDA warning letter at board
8   meetings?
9       A.  Yes.
10      Q.  And what was the nature of those discussions?
11          MR. CASTELLO:  I'm going to caution the witness
12  that if in order to answer that question he would be
13  required to divulge communications that the company had
14  with its counsel, that he not answer that question.
15          THE WITNESS:  Geoff is correct.
16          BY MS. SOBERATS:
17      Q.  So after the company -- well, did the company
18  engage in any corrective actions in response to the FDA
19  warning letter?
20      A.  Yes.
21          MR. CASTELLO:  Objection.  I'm going to caution
22  the witness that if in order to answer that question he
23  would be required to divulge any communications that the
24  company had with its counsel, that he not answer it.
25          MR. DELEEUW:  And this is Michael deLeeuw, I

101

Underwood - 30(b)(6) - Confidential

FTC, et al. v. Quincy Bioscience Holding, et al.                                 8/20/2020

```
 1             MR. CASTELLO:  That's okay.  Not a problem.
 2             MS. SOBERATS:  So would the court recorder
 3   please read back my last question.
 4             (The record was read as follows:)
 5             "QUESTION:  So according to the Defendants'
 6   interrogatory responses, from approximately February
 7   2012 through June 2016, the packaging of Prevagen
 8   included a bar graph concerning data from the Madison
 9   Memory Study.  If you look at this back label on the
10   complaint here on page 10, is this the bar graph that
11   was included on the Prevagen label?"
12             THE WITNESS:  Yes.
13             MS. SOBERATS:  Thank you.  And, Geoff, this
14   would be interrogatory 8, and the responses -- I took
15   the information from Defendants' supplemental responses
16   and objections to our second set of interrogatories.
17   And this document is dated July 6th, 2020.
18             MR. CASTELLO:  Thank you.
19             BY MS. SOBERATS:
20       Q.  Why did Quincy stop using this chart on the
21   Prevagen label after -- sorry, why did Quincy stop using
22   this chart on the Prevagen label?
23             MR. CASTELLO:  I'm going to caution the witness
24   that if in order to answer that question he would be
25   required to divulge communication that the company had
```

1   with its counsel, that he not answer the question.
2           THE WITNESS:  Okay, just to be clear, when you
3   refer to the back label, you mean the back side of the
4   box?
5           BY MS. SOBERATS:
6       Q.  Yes.
7       A.  As opposed to the sticky label?
8       Q.  Yes.
9       A.  That would go in the cylinder?
10      Q.  This is the back side of the box, yes.
11      A.  Okay.  This was removed because we had to put on
12  a security tag.  I guess it's -- is it a radio frequency
13  tag I think they're called.
14      Q.  And is this chart still being used in any of
15  Quincy's marketing?
16          MR. CASTELLO:  Objection.
17          THE WITNESS:  Forms of it, yes, but I don't know
18  if it's exactly like what you see.  Just like the last
19  image was, you know, a screenshot, which was
20  approximating what was in the TV commercial, but --
21          BY MS. SOBERATS:
22      Q.  And in which marketing is a chart of this nature
23  being used?
24      A.  Well, it basically may still exist in some
25  old -- old collateral materials.

162
Underwood - 30(b)(6) - Confidential
FTC, et al. v. Quincy Bioscience Holding, et al.                    8/20/2020

```
 1   DISTRICT OF COLUMBIA, to wit:
 2
            I, Sally Jo Quade, CERT, the officer before whom
 3   the foregoing deposition was taken, do hereby certify
     that the within-named witness personally appeared before
 4   me at the time and place herein set out, and after
     having been duly sworn by me, according to law, was
 5   examined by counsel.
 6          I further certify that the examination was
     recorded stenographically by me and this transcript is a
 7   true record of the proceedings.
 8          I further certify that I am not of counsel to
     any of the parties, nor an employee of counsel, nor
 9   related to any of the parties, nor in any way interested
     in the outcome of this action.
10
            As witness my hand and notarial seal this 24th
11   day of August, 2020.
12
13
14                         _____
15                         Sally Jo Quade, CERT
                           Notary Public
16
17
18   MY COMMISSION EXPIRES:
19                         7/14/2023
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company;<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.; and<br><br>Defendants. | Case No. 1:17-cv-00124-LLS |

**ERRATA SHEET FOR THE TRANSCRIPT
OF THE DEPOSITION OF MARK UNDERWOOD
AUGUST 20, 2020**

I, Mark Underwood, hereby certify that I have read and examined the transcript of the Federal Rule of Civil Procedure 30(b)(6) deposition of Mark Underwood, which occurred on August 20, 2020, and hereby make the following corrections to the transcript of my deposition:

| PAGE | LINE(S) | CORRECTION | REASON |
|---|---|---|---|
| 38 | 21 | Replace "allergistic" with "allergenic" | Transcription Error |
| 55 | 20 | Replace "Neutrics" with "Neutricks" | Typo |
| 56 | 3, 9 | Replace "Neutrics" with "Neutricks" | Typo |
| 57 | 4 | Replace "Helina" with "Halina" | Typo |
| 58 | 8 | Replace "Helina" with "Halina" | Typo |
| 59 | 6, 15 | Replace "Helina" with "Halina" | Typo |
| 60 | 2 | Replace "Helina" with "Halina" | Typo |
| 62 | 16 | Replace "Helina" with "Halina" | Typo |
| 63 | 20 | Replace "Helina" with "Halina" | Typo |
| 69 | 24 | Replace "Helina" with "Halina" | Typo |

I declare under penalty of perjury that the foregoing is true and correct. Executed at Madison, Wisconsin on September 21, 2020.

_____
MARK UNDERWOOD