O2L6FTC1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FEDERAL TRADE COMMISSION and
PEOPLE OF THE STATE OF NEW
YORK, by Letitia James,
Attorney General of the State
of New York,

         Plaintiffs,

         v.                  17 CV 124 (LLS)

QUINCY BIOSCIENCE HOLDING
COMPANY, INC., *et al.*,

         Defendants.      Jury Trial
------------------------------x
                              New York, N.Y.
                              February 21, 2024
                              10:56 a.m.

Before:

               HON. LOUIS L. STANTON,

                              District Judge
                              -and a jury -

                     APPEARANCES

EDWARD GLENNON
TIFFANY WOO
ANDREW D. WONE
CHRISTINE L. DeLORME
    Attorneys for Plaintiff Federal Trade Commission

LETITIA JAMES, Attorney General of
The State of New York
Department of Law
    Attorney for Plaintiff People of the State of New York
BY:  KATHRYN ANN MATUSCHAK
     MARY F. ALESTRA
     NOAH POPP
     EMILY SMITH

```
O2L6FTC1
```

1                       APPEARANCES (cont'd)

2    KELLY DRYE & WARREN LLP
          Attorneys for Defendants Quincy Bioscience Holding
3         Company, Inc.; Quincy Bioscience, LLC; Prevagen, Inc.;
          and Quincy Bioscience Manufacturing, LLC
4    BY:  GEOFFREY W. CASTELLO
          JACLYN M. METZINGER
5         GLENN T. GRAHAM
          CAITLIN R. HICKEY
6         WILLIAM A. ESCOBAR

7    COZEN O'CONNOR
          Attorneys for Defendant Mark Underwood
8    BY:  MICHAEL B. de LEEUW
          TAMAR S. WISE
9         AMANDA GIGLIO

1             (In the robing room)
2             THE COURT:  What is the problem about the FTC
3    advertising guide?
4             MS. WISE:  Your Honor, this is Tamar Wise, for the
5    defendants.
6             We filed this letter last night.
7             THE COURT:  I just read it.
8             MS. WISE:  Great.  We just -- nothing further than
9    what's in the letter.  We wanted to just make sure there were
10   no objections.
11            THE COURT:  All right.  I'll hear the other side.
12            MS. MATUSCHAK:  Your Honor, defendants have been on
13   notice, but we do not think the evidence and argument related
14   to the Dietary Supplement Guide is admissible.  It's not
15   relevant to the case.  And they've been on notice of that for a
16   long time.  This is not an eve-of-trial surprise.
17            THE COURT:  Hmm?
18            MS. MATUSCHAK:  This is not an eve-of-trial surprise
19   for them because they know that it's not on the joint exhibit
20   list, and they know that we filed a motion *in limine* seeking to
21   exclude any use of the Dietary Supplement Guide.  So they have
22   been on notice that we would oppose, and we intend to oppose,
23   if they seek to introduce any evidence or argument related to
24   the guide.
25            THE COURT:  Well, it couldn't be a surprise because

there's been so much discussion about that item for months and years now.  So I'm unimpressed by the claim of surprise.  I'm somewhat disappointed if there's a shifting of positions, but it's still possible.  The trial hasn't started, and what is it that you're going to do?  Do you object to its use of one of your client's guidance publications?

            MS. MATUSCHAK:  Well, I do object to its use.  I am Kate Matuschak with the New York Attorney General.  So this is not a guidance that was issued by my agency.

            THE COURT:  That's true.  Your co-plaintiffs.

            MS. MATUSCHAK:  Yes.  But it's also just -- it's not relevant to any issue in the case.  And you can see --

            THE COURT:  How can it not be?  It's an explanation by the government of how to do to its satisfaction something which a citizen is trying to do, and there was a large enough segment of the population that they thought it should be addressed to all of them and published.  It may have become outdated, but it is the guidance that they gave then.  What is irrelevant about it?

            MS. MATUSCHAK:  Well, the guidance is being sought -- the defendants are seeking to use the guidance to establish what the law is.  The law is that competent and reliable scientific evidence is needed to substantiate advertising claims, and the basis for that requirement is the law.  It is not the guidance.  So to the extent that defendants intend to

1   use the guidance to say what was required to support the claims
2   in this case, that is using the guidance to explain what the
3   law is.
4          The second way in which defendants seek to use it is
5   to have their fact witnesses say they designed their
6   advertising around -- in reliance upon this guidance, so that
7   goes to good faith.  And that is also not an issue before the
8   jury.  There's no other permissible use for the --
9          THE COURT:  When was this guidance revoked?
10         MR. GLENNON:  It wasn't revoked.  The FTC did issue an
11  updated version basically setting forth the same principles
12  that the initial guidance did.  I believe it was actually 2023.
13         MR. CASTELLO:  December 2022, your Honor.
14         THE COURT:  Thank you.  What happened then?
15         MR. CASTELLO:  They revised the guideline, your Honor
16  after almost 25 years of its existence.
17         THE COURT:  Well, I think that's part of the story.
18  And it should be told with the rest of it.  But --
19         MR. GLENNON:  Well, we were not planning to introduce
20  the revised guidance.  Defendants actually, I think, took
21  issue, did not want us to bring up the revised guidance.  So we
22  were not -- we don't think the guidance either is relevant at
23  all for the reasons -- in terms of expert witnesses, the
24  experts in this case, the Court in its order and *Daubert* said
25  that the critical issue -- whether there's scientific support

1   for the claims.  And that has nothing to do with the guidance.

2               The guidance doesn't talk about memory or cognition or

3   what you need to do, you know, in those fields to support a

4   claim for efficacy for those specific scientific fields.  So

5   expert testimony about the guidance is completely irrelevant.

6   And it basically amounts to an explanation of the law, you

7   know, in the scientific experts' view, did these clients -- did

8   these defendants, comply with the FTC Act, essentially.  And

9   that's irrelevant.  That's also offering a legal opinion.

10              MS. WISE:  Your Honor, if I may respond?

11              THE COURT:  Sure.

12              MS. WISE:  A few points.  First of all, it's quite

13  disingenuous for the plaintiffs to now say that the guidance is

14  not relevant to this case.  They included it as part of the

15  joint stipulated facts in this case.  The guidance is quoted in

16  their jury instructions.  So they've adopted -- first of all,

17  as your Honor noted the FTC authored it, the FTC is one of the

18  plaintiffs in this case, and the New York Attorney General

19  adopted it.  These are party admissions in this case.  The

20  New York Attorney General has relied on the case law

21  interpreting the guidance in support of the claims in this

22  case.

23              I don't think that's funny.

24              MS. MATUSCHAK:  I'm sorry.  I think it's funny because

25  case law doesn't interpret the guidance.  Case law interprets

1	the law.  Case law applies the law.  The source of the law is
2	the regulations and statutes.  Okay?
3	         THE COURT:  Is there any difference between the
4	guidance and the law, any difference of substance?
5	         MS. MATUSCHAK:  Yes.  Yes, your Honor.  The guidance
6	goes into great detail, and it is intended to give advice to
7	industry, but it is not a legally binding document.  And what
8	defendants are intending to do here is to use the guidance to
9	say what the law is, and that's inappropriate because it is --
10	you know, as the Court has already ruled --
11	         THE COURT:  Let me oversimplify.
12	         I'm a citizen trying to comply with the law, the law
13	is the law, and nothing else is the law.  But my government
14	nicely writes me a letter telling me how I can best comply with
15	the law, which I say thank you and follow and intend to do and
16	rely on.  Later, the law was changed in some slight degree, and
17	the advice went out of date, but it is part of the history, it
18	is part of the record, and it is part of what the government
19	told the citizen would satisfy the government.  And to claim
20	that's irrelevant is simply unreasonable.
21	         MR. GLENNON:  Well, your Honor --
22	         MS. WISE:  I didn't finish my -- if I could please
23	continue.
24	         THE COURT:  Well, anyway, the answer is they can use
25	it the way they're proposing to use it.

1     MS. MATUSCHAK:  Can I just ask, your Honor, to the
2  extent that they use it the way they're proposing to use it,
3  they will give the impression to the jury that they, you know,
4  that this is what the law is, even though --
5     THE COURT:  Well, you can explain it to them, and I
6  will explain to them any time you ask me, that it is not the
7  law, it's merely a way to comply with the law.
8     MS. MATUSCHAK:  Well, your Honor, I think that's
9  essentially equivalent.  To comply with the law, you are to --
10    THE COURT:  Well, to that extent the guidance is
11 equivalent --
12    MS. MATUSCHAK:  Well, your Honor, but the New York
13 Attorney General did not issue the guidance.  The New York
14 Attorney General is not bound by the guidance.  It's not bound
15 by case law regarding the guidance.  The New York
16 Attorney General goes to case law regarding the FTC Act and any
17 regulations thereunder.  It is not under any sort of guidance
18 that the FTC unilaterally issues.
19    MR. CASTELLO:  Your Honor -- if I may, your Honor.
20    THE COURT:  I think this is a debate that will be
21 seized with more interest by the Court of Appeals than I am
22 giving it.  To me, it seems open and shut.
23    MR. GLENNON:  Your Honor, defendants aren't -- they
24 haven't offered a reasonable reliance defense in this case, nor
25 could they.  So, again, as the Court identified, the critical

1   issue is whether there is scientific support to back up the
2   advertising claims.
3          What the defendants did, what they looked at to the
4   guidance, whether they did, is, in fact, irrelevant.  That
5   might be part of the historical context of what they did, but
6   the prejudice that I think that the jury will take away, that
7   good faith, they made a good effort, they looked at what the
8   government told them and, hey, if they did, they should get
9   off, and that's not the case.  Good faith is not an issue for
10  liability.
11         THE COURT:  How does it injure your case for them to
12  use it?
13         MR. GLENNON:  Well, again, I think there's a danger
14  that the jury will think that good faith, if their fact
15  witnesses testify as to how they looked at the guide, they did
16  their best, they looked to what the government told them in
17  developing their substantiation and their claims.  We thought
18  we complied with everything in this guidance.  There's a very
19  real danger the jury will say, well, that's good enough, they
20  shouldn't be sued, they shouldn't be held liable for that, if
21  they looked at the guidance.  But that is not a relevant issue.
22         THE COURT:  Did they comply with the guidance?
23         MR. GLENNON:  Not in our view, no.
24         THE COURT:  Excuse me?
25         MR. GLENNON:  No, we don't believe that they have

O2L6FTC1

1  scientific support for their claims, and that is the
2  ultimate --
3          THE COURT:  Oh, I see.
4          MR. GLENNON:  Yeah.
5          THE COURT:  That goes back to the core question.
6          MR. GLENNON:  Right.
7          THE COURT:  Okay.  Well, they can use it.
8          MS. MATUSCHAK:  Thank you.
9          MR. CASTELLO:  Thank you, your Honor.
10         THE COURT:  As far as it reaches.  And you can point
11 out that it doesn't reach very far, but it is part of the
12 story.
13         (Recess)
14         (Jury selection followed)

1           (Jury present)

2           THE COURT:  Members of the jury, I have probably 10 or
3    12 minutes' worth of instructions about the trial and that will
4    finish up our day I think.  Mr. Lee will want to get some
5    information from you in the jury room after that, but that's
6    quick.  And then we'll resume tomorrow morning with the opening
7    statements from the lawyers and then the evidence from the
8    witnesses.  And I just want to tell you about what will be
9    happening when we're doing the trial, which will be starting
10   tomorrow.  Actually it started today.  But I want to describe
11   how it will be conducted and explain what we'll be doing, you
12   and I and the lawyers for both sides.  At the end of the trial,
13   I'll give you more detailed guidance on how you're to go about
14   reaching your decision.  But now, I simply want to explain how
15   the trial will proceed and the jobs that you and I are to
16   perform during a trial.  As I said, it will take ten or 15
17   minutes.

18           I'll decide which rules of law apply to this case.
19   I'll decide this in response to questions raised by the lawyers
20   as we go along and in the final instructions given to you after
21   the evidence and arguments are completed.

22           It's your function in this case to decide the issues
23   of fact.  Your decision on the issues of fact is to be based
24   solely on evidence.  Nothing I say is evidence.  Nothing any of
25   the lawyers say is evidence.  Questions by themselves are not

evidence.  The evidence consists of the sworn testimony of the witnesses and of the exhibits which will be received in evidence for your consideration.

Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You're to decide the case solely, only, on the evidence presented here in the courtroom.

How do you decide what to believe and what not to believe?  Listen to the witnesses, watch them, observe them, and then decide whether you believe them or disbelieve them, or credit some parts of what they say and other parts the same way that you decide such questions in your ordinary life.  Did they know what they were talking about?  Do they have a reason to falsify or distort or minimize their testimony?  Use your common sense and your good judgment to evaluate their testimony based on all of the circumstances.

The best test for evidence is how well it comports with the other evidence.  If it stands alone and in contrast to them, then it will need sufficient support for you to give it credence.

It's very important that you keep an open mind throughout this case.  Don't form any judgments until the evidence is concluded and the case is given to you to discuss and decide.  Remember that the evidence comes in step by step.  First, a witness testifies on direct examination.  Then, the

other side has the opportunity to cross-examine him or her. First, one side presents its evidence and then the other side has an opportunity to present evidence.

Remember that there may be two or more sides to any story. And remember how when you were a child, something that you heard towards the end of a story changed your whole understanding of everything that had gone before. You can't make up your mind about what you believe until you've heard all of it and can evaluate all of it.

From one or two facts you find to have been proved, you may infer some other fact existed. An inference is not a suspicion and it's not a guess. It's a reasonable, logical deduction on the basis of facts that you find to have been proved that some other fact occurred or did not occur. But you will not be in a position to form any judgment as to what you believe until you've heard all of the evidence in this case and discussed it with your fellow jurors. Often, you get a lot of insight that hadn't occurred to you from the discussion. It's a learning process as well as a decision process.

During the course of the trial, you shouldn't talk with any witness or with any of the parties or with any of the lawyers in the case. Please do not talk with any of those people about any subject at all. They're not allowed to talk with you. And if you see them in the hall or pass them and go up in an elevator or whatever, and they see you, they see you.

They know you're there and they ignore you, and they're not being rude.  They're only acting properly and they expect you to understand that that's what's going on.

In addition, during the trial you shouldn't talk about the trial with anyone else.  Not your family, not your friends, not the people you work with, and not the media.

Also, you should not discuss this case among yourselves until after I've instructed you on the law and you have gone to the jury room to make your decision at the end of the trial.  It's important that you wait until all of the evidence is received and you've heard my instructions on the rules of law which apply to this case before you even start to discuss it among yourselves.  Keep your opinions to yourselves and you're free to change them from time to time with nobody knowing.  I sat as a juror on a case and I thought it was quite a luxury to be able to keep my own thoughts to myself and change them when I heard something further.

I assume that many of you use cell phones, the internet, and other technology.  You must not use these tools to communicate with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, through phone calls, e-mail, text messaging, any blog or website or internet chatroom, or by way of any other social networking website, including Facebook, Instagram, LinkedIn, X formerly known as Twitter, TikTok,

1    YouTube, or anything of that nature.
2              After you retire to deliberate, you will discuss the
3    case with your fellow jurors, but you cannot discuss the case
4    with anyone else, including the media, until you have returned
5    a verdict and the trial is at an end.  Then you are restored to
6    all your rights of free speech.
7              Let me add that during the course of the trial, you
8    will receive all the evidence that you can properly consider to
9    decide the case.  Because of this, you should not attempt to
10   gather any information on your own which you might think would
11   be helpful.  Don't engage in any outside reading on any of the
12   topics that come up in this case.  Do not attempt to visit any
13   of the places that are referred to.  Don't check files or
14   sources of any nature, and don't in any other way try to learn
15   about the case outside the courtroom.  The reason for this
16   rule, and it is a rule that you must follow, is that your
17   verdict must be based only on the evidence produced in the
18   courtroom.
19             Now, trial procedure.  First, starting tomorrow
20   morning the lawyers have the opportunity to make opening
21   statements to you.  These statements are not evidence.  They
22   serve no purpose other than to give you an idea in advance of
23   the evidence of what the lawyers expect you to hear from the
24   witnesses.  These statements permit the lawyers to tell you a
25   bit about what the case is all about, but the evidence comes

only from the witnesses and the exhibits.

After opening statements, we'll start hearing the testimony of the witnesses. Probably most of them experts in one field or another germane to the issues.

Remember that the lawyers present the evidence to you. They ask questions, but they don't give evidence themselves. Objections to questions are not evidence either. Lawyers have an obligation to their client to make an objection when they believe something being offered is improper under the rules of evidence. They're not being obstructive when they object. It's their duty and you shouldn't be influenced by the objection or by my ruling on it.

If the objection is sustained, ignore the question. Don't try to guess what the answer would have been if the witness had been allowed to answer. If the objection is overruled, treat the answer like any other. If you're instructed that some item of evidence is received for a limited purpose only, then follow that instruction and use it only for that purpose. Testimony that I exclude or tell you to disregard is not evidence and you must not consider it or refer to it in your deliberations on your verdict.

After all the evidence is received, the lawyers have an opportunity to sum up and make their closing arguments to you. They may review the evidence and suggest what conclusions they think you should draw from it. Remember that these

summations, again, are not evidence. You may find it very helpful, but it is only argument. And after the summations, I'll instruct you on the rules of law that you're to use in reaching your verdict.

For the moment I'll just say that a party with the burden of proof must prove the claim by a preponderance of the evidence. This burden of proof by a preponderance of the evidence is different from the burden on the government in a criminal case where the prosecution's allegations must be proven beyond a reasonable doubt.

A preponderance of the evidence means that if after hearing all of the evidence you believe it more likely than not that some event occurred, that event has been proven to you by a preponderance of the evidence. If you believe it more likely that it did not occur, then it has not been proved. And if you find the likelihood evenly balanced, maybe yes, maybe no, then the party with the burden of proving that event has not succeeded.

Following my instructions, you'll go into the jury room, review the evidence, review the exhibits, and discuss the evidence among yourselves. Based on that evidence and your discussions of it, you'll determine your verdict. Your deliberations will be secret and you will never have to explain your verdict to anyone.

I think now we'll recess for the day. Mr. Lee has

O2LAFTC2

1  some information he needs from you and we'll get in the jury
2  room.  If you haven't been in the jury room, you will notice
3  one of the great views of Manhattan.  It's really very
4  attractive.  We have trouble making the juries go home at
5  night.  They want to look at that view.
6         We'll resume at 11:00 in the morning.  Welcome aboard.
7         THE DEPUTY CLERK:  All rise.
8         (Continued on next page)

O2LAFTC2

1           (Jury not present)
2           THE COURT:  Good evening.  Have a good evening.  See
3  you tomorrow.
4           (Adjourned to February 22, 2024, at 11:00 a.m.)
5                              * * *