UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>Defendants. | Case No. 1:17-cv-00124-LLS |

**MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW BY PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK**

## TABLE OF CONTENTS

I. Relevant Procedural History ................................................................................................ 1

II. Standard for a Rule 50(b) Motion for Judgment as a Matter of Law ..................................... 3

III. Quincy's Challenged Marketing Claims are Material as a Matter of Law ............................. 4

    A. Standard of Law for the Materiality of Deceptive Claims .................................................. 5

    B. Quincy Failed to Rebut the Presumption of Materiality ..................................................... 7

CONCLUSION .......................................................................................................................... 11

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amalfitano v. NBTY, Inc.*,
   No. 2011-24819, 2013 WL 11021642 (N.Y. Sup. Ct. Mar. 25, 2013) ......................................5

*Bildstein v. MasterCard Intern. Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004) ..................................................................................5

*Cangemi v. United States*,
   13 F.4th 115 (2d Cir. 2021) ..................................................................................................4

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980) ..............................................................................................................6

*Conte v. Emmons*,
   895 F.3d 168 (2d Cir. 2018) ..................................................................................................4

*Fanning v. FTC*,
   821 F.3d 164 (1st Cir. 2016) .................................................................................................7

*FTC v. 1st Guar. Mortg. Corp.*,
   No. 09-cv-61840, 2011 WL 1233207 (S.D. Fla. Mar. 30, 2011) ..........................................9

*FTC v. Bronson Partners, LLC*,
   564 F. Supp. 2d 119 (D. Conn. 2008) ...................................................................................6

*FTC v. Nat'l Urological Group, Inc.*,
   645 F. Supp. 2d 1167 (N.D. Ga. 2008) .................................................................................7

*FTC v. NPB Advertising*,
   218 F. Supp. 3d 1352 (M.D. Fla. 2016) ................................................................................6

*FTC v. QT, Inc.*,
   448 F. Supp. 2d 908 (N.D. Ill. 2006) ....................................................................................7

*FTC v. Wellness Support Network*,
   No. 10-cv-04879, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014) ............................................9

*Kraft, Inc. v. FTC*,
   970 F.2d 311 (7th Cir. 1992) .................................................................................................7

*Novartis Corp. v. FTC*,
 223 F.3d 783 (D.C. Cir. 2000) .................................................................................................7

*People v. Image Plastic Surgery, LLC*,
 210 A.D.3d 444 (N.Y. App. Div. 2022) ............................................................................ 6-7

*People v. Orbital Publ. Group, Inc.*,
 169 A.D.3d 564 (N.Y. App. Div. 2019) ..................................................................................6

*Rooney v. Tyson*,
 956 F. Supp. 213 (N.D.N.Y. 1997) ..........................................................................................4

*SEC v. Ginder*,
 752 F.3d 569 (2d Cir. 2014) ............................................................................................... 3-4

*State v. Terry Buick Inc.*,
 520 N.Y.S.2d 497 (N.Y. Sup. Ct. 1987) ..................................................................................6

**State Statutes**

N.Y. General Business Law ("GBL")
 § 349 ............................................................................................................................ 1-2, 5, 12
 § 350 ............................................................................................................................ 1-2, 5, 12

New York Executive Law
 § 63(12) ....................................................................................................................................2

**Rules**

Fed. R. Civ. P. 50(a) ..................................................................................................................... 1-2

Fed. R. Civ. P. 50(b) ................................................................................................................... 1-2, 4

Plaintiff, the People of the State of New York, by Letitia James, Attorney General of the State of New York ("Plaintiff" or "NYAG"), now renews its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) as to the element of materiality for Plaintiff's claims under General Business Law ("GBL") Sections 349 and 350.  The challenged advertising claims in this case are presumed to be material as a matter of law and Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, "Quincy") failed to present any evidence to rebut that presumption. Accordingly, the NYAG is entitled to judgment as a matter of law that all of the challenged advertising claims are material.  Because the jury found that the challenged claims were made and lacked competent and reliable scientific evidence, each claim is therefore materially misleading and represents a violation of New York GBL Sections 349 and 350.[1]

## I.   Relevant Procedural History

On March 6, 2024, after the close of Quincy's case, Plaintiff made a motion under Rule 50(a) for judgment as a matter of law on the element of materiality:

> Third point, your Honor, we are seeking a Rule 50(a) determination on materiality. As you know, your Honor, information is material if it involves information that's important to consumers or likely to affect their choice of product or their conduct regarding a product. Defendants have not presented any evidence here that these claims are not material. In fact, there's a presumption of materiality under the law for claims like these, express claims, claims specifically involving health and safety, or related to the central characteristics of the product, and therefore, your Honor, we believe a Rule 50(a) determination on materiality is appropriate here, and the jury should not be asked to find whether these claims were material.

---

[1] (*See* Mar. 7, 2024 Trial Tr., 1445:4-6 ("A challenged statement is misleading to a reasonable customer if the Quincy defendants lacked, did not have, competent and reliable scientific evidence to support it.").)

1

(Mar. 6, 2024 Trial Tr., 1329:6-18.)[2]  The Court reserved judgment on the motion.  (*See id*. at 1322:18-21; 1333:16-21.)[3]  On March 7, the Court submitted this case to the jury, asking for a determination—with respect to each of the challenged advertising claims (referred to by the Court as "Challenged Statements")—whether those statements were conveyed by Quincy; whether the statements lacked support by competent and reliable scientific evidence; whether those statements were materially misleading; and whether those claims were consumer oriented. (Verdict Form (ECF No. 421) at 1-6).  The eight Challenged Statements are:

   a. Prevagen improves memory;

   b. Prevagen is clinically shown to improve memory;

   c. Prevagen improves memory within 90 days;

   d. Prevagen is clinically shown to improve memory within 90 days;

   e. Prevagen reduces memory problems associated with aging;

   f. Prevagen is clinically shown to reduce memory problems associated with aging;

   g. Prevagen provides other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking; and

   h. Prevagen is clinically shown to provide other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking.

These questions were posed to the jury with respect to the NYAG's claims under New York GBL Sections 349 and 350.[4]

---

[2] Plaintiff Federal Trade Commission also moved for judgment as a matter of law pursuant to Rule 50(a) on the grounds stated at the close of Quincy's case and as set forth herein.

[3] Under Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal question raised by the motion."  Fed. R. Civ. P. 50(b).

[4] The jury was also asked to answer questions with respect to the NYAG's claims under New York Executive Law § 63(12), but this portion of the verdict is not a subject of the present motion.

2

On March 11, 2024, the jury returned a verdict finding Quincy lacked "competent and reliable scientific evidence" to support any of Quincy's eight Challenged Statements. (*See* Verdict Form (ECF No. 421) at 1-2, 4-5 (Questions 1, 3(a)-(h), 9(a)-(h)).) Accordingly, the jury found that each of these eight challenged marketing claims was misleading to a reasonable consumer. (*See* Mar. 7, 2024 Trial Tr., 1445:4-6 ("A challenged statement is misleading to a reasonable customer if the Quincy defendants lacked, did not have, competent and reliable scientific evidence to support it.") (Court instructing the jury).)

However, the jury nevertheless found that six of the eight Challenged Statements were not "materially" misleading. (S*ee* Verdict Form (ECF No. 421) at 2-3, 5 (Questions 4(a)-(d), (g), (h), 10(a)-(d), (g), (h)).) The six Challenged Statements the jury found to lack materiality were the marketing claims that Prevagen "improves memory," "improves memory within 90 days," "provides other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking," and is clinically shown to do each of these things.

## II.  Standard for a Rule 50(b) Motion for Judgment as a Matter of Law

"A court may grant judgment against a party as a matter of law if 'the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party.'" *SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014) (quoting Fed. R. Civ. P. 50(a)(1)). "A Rule 50 motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Id*. (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (alterations in original)).

The Second Circuit has typically found this standard to be met where a party fails to present any evidence as to an element of a claim, or where the only evidence presented as to that element would require conjecture or speculation rather than reasonable inferences in order to reach the factual conclusion. *See, e.g.*, *Cangemi v. United States*, 13 F.4th 115, 136-39 (2d Cir. 2021) (affirming district court's grant of Rule 50(b) motion as a matter of law and finding jury's verdict lacked a factual basis because plaintiffs did not present any evidence to suggest that defendant constructed, repaired, maintained, or had any control over the project that allegedly caused a nuisance, nor did plaintiff present any evidence that defendant knew the project would cause damage to plaintiffs' properties sufficient for trespass liability); *Conte v. Emmons*, 895 F.3d 168, 171-74 (2d Cir. 2018) (reversing district court's denial of Rule 50 judgment as a matter of law, and reversing jury verdict of liability on claim of tortious interference, in light of lack of evidence in the record from which to reasonably infer intent and causation); *Ginder*, 752 F.3d at 574-76 (2d Cir. 2014) (reversing district court's denial of Rule 50 motion along with jury verdict finding defendant liable for negligent violation of the SEC Act because plaintiff failed to present any evidence regarding the existence of, or violation of a standard of care, but rather focused its evidence and theory of the case on showing defendant had acted intentionally); *see also Rooney v. Tyson*, 956 F. Supp. 213, 217 (N.D.N.Y. 1997) (directing judgment as a matter of law and finding jury's verdict unsupported in light of presumption of at will employment under New York law as well as a complete lack of written evidence to rebut that presumption and support the verdict).

### III.   Quincy's Challenged Marketing Claims are Material as a Matter of Law

Here, Plaintiff's Rule 50(b) motion as to the materiality of Quincy's marketing claims under the GBL should be granted, because Quincy failed to overcome the presumption of

materiality that applies to claims that are made expressly, that are health-related, or that relate to the central characteristics of a product. Quincy offered no evidence at trial to rebut the presumption of materiality or to contradict the testimony elicited at trial that its marketing claims are relevant to consumers' choice of whether or not to purchase Prevagen. To the contrary, Quincy's Market Development Director testified that its marketing claims were intended to "move" consumers to take further action towards purchasing Prevagen, while Quincy's own expert witness, a former physician, testified that consumers are looking for products to help with memory problems and cognitive functioning. As a result, there exists a complete absence of evidence supporting the jury's verdict that six of the eight challenged claims were not material to a reasonable consumer.

### A. Standard of Law for the Materiality of Deceptive Claims

Under New York GBL Sections 349 and 350, a deceptive or misleading statement or omission is "material" if it "pertains to an issue that may bear on a consumer's decision to participate in a particular transaction." *Amalfitano v. NBTY, Inc.*, No. 2011-24819, 2013 WL 11021642, at *5 (N.Y. Sup. Ct. Mar. 25, 2013) (quoting *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 13 (N.Y. App. Div. 2012)); *see also Bildstein v. MasterCard Intern. Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (looking to FTC caselaw to evaluate "materiality" under GBL Section 349 since Section 349 is modeled after the FTC Act, and stating that a material claim is one that "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product") (internal quotation marks and citation omitted).

Moreover, under GBL Sections 349 and 350, materiality may be appropriately determined as a matter of law, without evidentiary factfinding, where it is uncontroverted in the

5

record that the deceptive statements concern issues that are important to consumers. *See, e.g.*, *People v. Image Plastic Surgery, LLC*, 210 A.D.3d 444, 445 (N.Y. App. Div. 2022) (accepting the "substance of the alleged misrepresentations and deceptions" regarding the treatment of medical conditions as the evidentiary basis for those misrepresentations' materiality in light of defendants' failure to meaningfully contest the issue); *People v. Orbital Publ. Group, Inc.*, 169 A.D.3d 564, 565-66 (N.Y. App. Div. 2019) (reversing New York trial court and finding *as a matter of law* that respondents' deceptive solicitations for newspaper and magazine subscription were "material" under GBL Sections 349 and 350 because they implied that the publishers of the periodicals were providing lower rates pursuant to these solicitations).

Under established law, express marketing claims, claims that are significantly related to health, and claims pertaining to central characteristics of a product are all presumed to be material under the law. Express claims are presumed material because of "the assumption that the willingness of a business to promote its products reflects a belief that the consumers are interested in the advertising." *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 135 (D. Conn. 2008) (internal quotation marks and citation omitted)); *see also Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 567-568 (1980) ("[W]e may assume that the willingness of a business to promote its products reflects a belief that consumers are interested in the advertising."). Stated in other words, "[b]ecause an express claim inherently misleads a consumer, an express claim is presumptively material." *FTC v. NPB Advertising*, 218 F. Supp. 3d 1352, 1358 (M.D. Fla. 2016); *see also State v. Terry Buick Inc.*, 520 N.Y.S.2d 497, 500 (N.Y. Sup. Ct. 1987) (defendant's intent to attract consumers through express false statements about the cost for vehicles "did not have to be explained by testimony," because the "message spoke for itself and could not be misread" and was thus "misleading in a material respect").

6

Claims that significantly involve health are presumed to be material. *See, e.g.*, *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (noting that claims that significantly involve health are presumed material); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190-91 (N.D. Ga. 2008) (applying the presumption of materiality to claims that dietary supplements were effective to treat weight loss and sexual dysfunction); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 965-66 (N.D. Ill. 2006) (finding a claim that the product provided pain relief to be unquestionably health-related and therefore material); *Image Plastic Surgery,* 210 A.D.3d at 445 (holding defendants' "alleged misrepresentations and deceptions" regarding the treatment of medical conditions to be material, where defendants did "not meaningfully dispute" the presumptive materiality of those statements).

Claims related to central characteristics of a product are also presumed material because a reasonable consumer would be concerned about such claims. *See, e.g.*, *Fanning v. FTC*, 821 F.3d 164, 172-173 (1st Cir. 2016) (holding that the FTC correctly applied a legal presumption that "information pertaining to the central characteristic of the product of service will be presumed material") (citation omitted); *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000) (describing presumption of materiality for claims that concern areas with which a reasonable consumer would be concerned, including the purpose, safety, efficacy, or cost of the product).

**B.   Quincy Failed to Rebut the Presumption of Materiality**

Here, the challenged marketing claims Quincy made about Prevagen were both express and touted purported significant health benefits of Prevagen. Each claim, such as "Prevagen improves memory," "Prevagen is clinically shown to improve memory within 90 days," "Prevagen is clinically shown to help with mild memory loss associated with aging," and "Prevagen supports healthier brain function, supports a sharper mind, and supports clearer

7

thinking," was stated clearly and explicitly in Quincy's television ads and on its packaging and labels.  The jury unequivocally concluded that every one of these claims was conveyed in Quincy's advertising.  (Verdict Form (ECF No. 421) at 1, 4.)  That these claims were expressly made was demonstrated definitively at trial by the actual ads themselves and a sworn submission attaching Prevagen packaging and labels.  (*See, e.g.*, Popp Decl., Ex. A, Prevagen commercial ("Memory Improvement") (PX-116) (stating that "researchers have discovered a protein, that actually supports healthier brain function"); *id*. (stating that "Prevagen . . . has been clinically shown to improve memory"); Popp Decl., Ex. D, Prevagen commercial ("Trisha") (PX-256) (stating that "Prevagen Improves Memory" in the lower right corner throughout nearly the entire ad); *id*. (showing packaging that says "Clinically Tested Ingredient: Prevagen Improves Memory" and "Supports: Healthy Brain Function; Sharper Mind; Clearer Thinking"); Popp Decl., Ex. G, attaching April 14, 2022 Decl. of Todd Olson (PX-587) at Ex. D, p. 3 (Prevagen packaging stating "Prevagen (apoaequorin) is clinically shown to help with mild memory problems associated with aging"); *id*. (Prevagen packaging stating "Clinically Tested: Prevagen Improves Memory; Supports: Healthier Brain; Sharper Mind; Clearer Thinking"); *id*. at p. 9 (Prevagen packaging stating "In clinical studies Prevagen improved memory within 90 days"); *id*. at Ex. E, p. 5 (stating "Prevagen is clinically shown to help with mild memory loss associated with aging"); *id*. ("In a . . . clinical study, Prevagen improved certain aspects of cognitive function over a 90 day period."); *id*. at p. 9 (stating that "Prevagen Improves Memory" and "Supports: Healthier Brain Function; Sharper Mind; Clearer Thinking")).

      These claims regarding Prevagen's purported effects on human memory and brain function also self-evidently relate to critically important issues of health for consumers.  Accordingly, Plaintiff was entitled to a presumption of materiality for all eight of the challenged

marketing claims. (Mar. 7, 2024 Trial Tr., 1446:24-1447:1 ("A challenged statement that is stated explicitly or that significantly involves health is presumed to be material.") (Court instructing the jury).) *See also, e.g.*, *FTC v. Wellness Support Network*, No. 10-cv-04879, 2014 WL 644749, at *17 (N.D. Cal. Feb. 19, 2014) (finding claims about preventing diabetes or reversing insulin resistance to involve a consumer's health and thus presumptively material); *FTC v. 1st Guar. Mortg. Corp.*, No. 09-cv-61840, 2011 WL 1233207, at *12 (S.D. Fla. Mar. 30, 2011) ("Express claims . . . used to induce the purchase of a product or service are presumed to be material to consumers as a matter of law.").

Finally, Prevagen was and is currently marketed for no purpose other than for its purported benefits on memory and cognition, which the challenged claims directly emphasize. These supposed benefits are the central and sole characteristics for which Prevagen is advertised, and therefore the challenged marketing claims are presumptively material for this reason as well.

Despite the presumption of materiality, Quincy did not elicit—and in fact did not even attempt to elicit—any testimony to rebut this presumption. Nor did it submit any documentary evidence to rebut this presumption. In fact, Quincy's own witnesses provided testimony at trial *in support* of the materiality of the challenged marketing claims. First, when asked about Quincy's use of charts on packaging and ads labeled "Prevagen improves memory," thus purporting to show such improvement graphically, Quincy's Market Development Director Todd Olson explained to the jury that "[i]t says Prevagen improves, and Prevagen improved memory." He then claimed that the inconsistencies between the graph and the description of the Madison Memory Study were not important, because what "people are interested" in—*i.e.*, *what is material* to consumers—is "to know what Prevagen did" in terms of improving memory, rather

9

than the specific details of the data relied on by the graph to show that purported improvement in memory. (Feb. 22, 2024 Trial Tr., 101:3-17.)

A few minutes later, again attempting to justify the omission of key qualifying information from the data presented to consumers in Quincy's charts for the Madison Memory Study, Mr. Olson explained that the goal of Quincy's advertising, including the graph demonstrating how Prevagen improves memory, was "to create a quick impression to help a consumer move towards the product . . . we want to just incent them to be interested enough to make a move." (Feb. 22 Trial Tr., 106:1-22.) In other words, the marketing on Quincy's packaging —including the claim that Prevagen improves memory, and does so within 90 days— was designed by Mr. Olson and Quincy with the hope and expectation that consumers would change their behavior and either purchase the product, or at least learn more about the product and then purchase it.

Finally, Quincy's own expert, Dr. David Katz, explained his belief that Quincy should be able to present claims about the supposed benefits of Prevagen. A former physician, he explained to the jury that "we really still have not much of anything that is shown to directly help improve healthy brain function, memory, and cognition, so there really are no good alternatives. And my patients, when we talked about this issue, wanted to try things." (Mar. 6 Trial Tr., 1286:7-11.) Based on Dr. Katz's testimony that patients would be interested in treatments that might help improve or reduce declines in brain function, memory, and cognition, in his view it was important to allow Quincy to make these claims to consumers (and physicians) so they could rely on them in making purchasing decisions.

That Quincy failed to rebut (and in fact further supported) the presumption of materiality is unsurprising in light of Quincy's larger trial strategy, which emphasized the theme that if it

10

were found liable, the government would be taking away the "choice" of consumers by preventing Quincy from showing those consumers the purported benefits of Prevagen through its marketing claims. As Quincy's counsel told the jury during the opening minutes of its closing argument, the government "wants to prevent Quincy from bringing the benefits that Prevagen offers to the attention of people who want it, and it wants to prevent those same people from making informed decisions about their own healthcare needs . . . ." (Mar. 7, 2024 Trial Tr., 1369:9-13.) In other words, a central theme of Quincy's own case was that if it were not permitted to make the challenged marketing claims to consumers, *that would significantly affect those consumers' decisions about whether or not to buy Prevagen*.

Quincy's marketing claims are material because they involve important information that affects consumers' choice whether to buy Prevagen. Indeed, Quincy has always intended its challenged marketing claims to have this effect. Quincy would not have spent the past seven years fighting this litigation if it thought the challenged marketing claims about Prevagen's purported effects on memory and cognitive function had little or no effect on consumers' choices. It cannot, of course, seriously argue otherwise. Rather, it has fought Plaintiffs tooth and nail, precisely because it knows that these claims (which the jury found to be scientifically unsupported) are critical to the sale of Prevagen and thus, to the success of its business.

## CONCLUSION

Because the challenged marketing claims that Quincy made about Prevagen were expressly made, health-related, and related to the central characteristic of Prevagen, they are presumed to be material as a matter of law. Quincy presented no evidence to rebut that presumption, or to counter the testimony in the record from its own witnesses supporting the materiality of the challenged marketing claims about Prevagen. Accordingly, no reasonable jury

11

could have found the challenged claims were anything other than material, and the Court should grant Plaintiff's renewed motion for a judgment as a matter of law on that element of its GBL Section 349 and 350 claims.

Respectfully submitted,

Dated: April 8, 2024

          PEOPLE OF THE STATE OF NEW YORK
          BY LETITIA JAMES,

          Attorney General of the State of New York

          By: /s/_____
              JANE M. AZIA
              KATE MATUSCHAK
              MARY ALESTRA
              NOAH H. POPP
              EMILY SMITH
              Consumer Frauds and Protection Bureau
              28 Liberty Street
              New York, NY 10005
              Tel: (212) 416-6189
              212-416-6189, kate.matuschak@ag.ny.gov
              212-416-6698, mary.alestra@ag.ny.gov
              212-416-8915, noah.popp@ag.ny.gov
              212-416-8316, emily.smith@ag.ny.gov
              212-416-6003 (facsimile)

## CERTIFICATE OF SERVICE

I certify that on this 8th day of April 2024, I served via ECF the foregoing Memorandum of Law in Support of the Renewed Motion for Judgment as a Matter of Law by People of the State of New York by Letitia James, Attorney General of the State of New York.

_____
Noah H. Popp

| | |
|---|---|
| Geoffrey W. Castello, III<br>Glenn T. Graham<br>Jaclyn M. Metzinger<br>Caitlin Hickey<br>Damon Suden<br>William Escobar<br>Kelley Drye & Warren LLP<br>3 WTC, 175 Greenwich St.<br>New York, NY 10007<br>(212) 808-7800<br>gcastello@kelleydrye.com<br>ggraham@kelleydrye.com<br>jmetzinger@kelleydrye.com<br>chickey@kelleydrye.com<br>dsuden@kelleydrye.com<br>wescobar@kelleydrye.com<br><br>John H. Villafranco<br>Kelley Drye & Warren LLP<br>Washington Harbour, Suite 400<br>3050 K Street, NW<br>Washington, D.C. 20007<br>(202) 342-8423<br>jvillafranco@kelleydrye.com<br><br>*Attorneys for Defendants Quincy Bioscience Holding Co., Inc., Quincy Bioscience, LLC, Prevagen Inc., Quincy Bioscience Manufacturing, LLC* | Michael B. de Leeuw<br>Tamar S. Wise<br>Amanda Giglio<br>Cozen O'Connor<br>3 WTC, 175 Greenwich St<br>55th Floor<br>New York, NY 10007<br>(212) 908-1331<br>mdeleeuw@cozen.com<br>twise@cozen.com<br>agiglio@cozen.com<br><br>Robert Clark<br>Cozen O'Connor<br>One Liberty Place<br>1650 Market Street, Suite 2800<br>Philadelphia, PA 19103<br>(215) 665-2041<br>robertclark@cozen.com<br><br>John B. Kelly<br>Wachtell, Lipton, Rosen & Katz<br>51 W. 52nd Street<br>New York, NY 10019<br>(212) 413-1000<br>jbkelly@wlrk.com<br><br>*Attorneys for Defendant Mark Underwood* |

13

Annette Soberats
Edward Glennon
Andrew Wone
Christine DeLorme
Tiffany Woo
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20850
(202) 326-2921
asoberats@ftc.gov
eglennon@ftc.gov
awone@ftc.gov
cdelorme@ftc.gov
twoo@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*