UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>                  Plaintiffs,<br><br>                  v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>                  Defendants. | Case No. 1:17-cv-00124-LLS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW BY PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK**

**TABLE OF CONTENTS**

I.   Whether a Marketing Statement Is Material and Whether it is Misleading are Two Different Questions as the Court's Jury Instructions and the Law Recognize ........................ 2

II.  Quincy Has Waived its Right to Contest that the Presumption of Materiality Applies Under New York Law, as This Court Has Already Correctly Held ......................................... 5

III. Quincy's Tiny, Inconspicuous Disclaimers, Which It Did Not Focus On At Trial, Have No Relevance to the Materiality of Its Marketing Claims ............................................. 8

CONCLUSION ................................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bildstein v. MasterCard Int'l Inc.*,
 329 F. Supp. 2d 410 (S.D.N.Y. 2004) .................................................................................. 6

*Bristol-Myers Co. v. FTC*,
 738 F.2d 554 (2d Cir. 1984) .................................................................................................. 8

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*,
 626 F. Supp. 3d 635 (S.D.N.Y. 2022) .................................................................................. 5

*Koch v. Acker, Merrall & Condit Co.*,
 18 N.Y.3d 940 (N.Y. Ct. App. 2012) .................................................................................... 4

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
 209 F. Supp. 3d 612 (S.D.N.Y. 2016) .................................................................................. 3

*Miller v. Sanofi Consumer Healthcare*,
 No. 1:22-cv-574, 2023 WL 112553 (S.D.N.Y. Jan. 5, 2023) .............................................. 4

*People v. Applied Card Sys., Inc.*,
 805 N.Y.S.2d 175 (N.Y. App. Div. 3rd Dep't 2005) .......................................................... 6

*People v. Gen. Elec. Co.*,
 302 A.D.2d 314 (N.Y. App. Div. 1st Dep't 2003) .............................................................. 4

*People v. Image Plastic Surgery*,
 210 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2022) ........................................................ 3, 6

*People v. Orbital Publ. Group, Inc.*,
 169 A.D.3d 564 (N.Y. App. Div. 1st Dep't 2019) .............................................................. 3

*Saleh v. Pretty Girl, Inc.*,
 No. 09-cv-1769, 2022 WL 4078150 (E.D.N.Y. Sept. 6, 2022) ........................................... 5

*Thompson Med. Co. v. FTC*,
 791 F.2d 189 (D.C. Cir. 1986) .............................................................................................. 8

*Yore v. M/V LNG Leo*,
 No. 99-9130, 2000 WL 385504 (2d Cir. Apr. 14, 2000) ..................................................... 5

**Federal Statutes**

15 U.S.C.
    § 45 *et seq*. ...................................................................................................................6

**State Statutes**

New York General Business Law ("GBL")
    § 349.................................................................................................................4, 6, 11
    § 350......................................................................................................................4, 11

**Rules**

Fed. R. Civ. P. 51(c) ......................................................................................................5

Having come to the realization that it failed to provide any evidence at trial to rebut the presumption of materiality for any of its eight challenged marketing claims, and thus that there is no basis for the jury's finding in its favor on that issue for six of those claims, Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, "Quincy") now make three erroneous arguments for why the jury's entirely unsupported verdict on materiality should nevertheless be upheld.

First Quincy argues that the questions of materiality and deception cannot be separated and must be considered in a single inquiry, contrary to established law and the explicit instructions the Court correctly provided to the jury.  Second, Quincy incorrectly claims there is no presumption of materiality for express or health-related claims under New York law, despite the fact that it failed to object to jury instructions stating exactly this during the Court's charging conference.  Third, it argues that the tiny, inconspicuous disclaimers, some of which it added only in December 2020 to *some* of the challenged marketing claims, provide a basis to support the jury's finding on materiality, despite the fact that it did not elicit any testimony about these disclaimers at trial and the disclaimers, to the extent they relate to anything, relate to whether the claims were conveyed or whether they were misleading, not materiality.  The jury unequivocally found that the claims were conveyed and that they lacked support by competent and reliable scientific evidence, making them misleading.

Because each of these arguments fails, the Court should look to the legal presumption of materiality, the testimony of Quincy's own witnesses as to materiality, and the complete lack of evidence that the claims were not material to find for the NYAG as a matter of law on the element of materiality for all eight of Quincy's marketing claims.

1

I.  **Whether a Marketing Statement Is Material and Whether it is Misleading are Two Different Questions as the Court's Jury Instructions and the Law Recognize**

First, Quincy claims that the questions of whether a claim is misleading, and whether a marketing claim is material—*i.e.*, whether it is relevant to a consumer's decision to engage in the transaction at issue—must be considered in a single inquiry rather than "in isolation." (Defs.' Mem. of Law in Opp. to Renewed Mot. for J. as a Matter of Law by People of the State of New York by Letitia James, Attorney General of the State of New York (filed Apr. 22, 2024) (ECF No. 453) ("Quincy Opp.") at 3-6.) This argument directly contradicts the Court's jury instructions, the law and indeed, common-sense logic.

Quincy's own quotation of the Court's jury instructions on precisely this issue contradicts its argument: "[i]f you find that any of the challenged statements were misleading, **then** you must determine whether those statements were material." (Quincy Opp. at 3-6 (quoting Mar. 7, 2024 Trial Tr., 1446:19-21) (emphasis added). Immediately following that statement, the Court instructed the jury how it should determine whether or not the statements found to be misleading are *also* material, by asking themselves "if it involves information important to consumers and is likely to affect their conduct regarding a product, such as a decision to buy it or use it." (Mar. 7, 2024 Trial Tr., 1446:21-24.)

It could not be clearer from these properly phrased jury instructions that there are two different inquires:—(1) first, whether the challenged statements are misleading, which the Court instructed depends on whether there was reliable and competent evidence to support them (*See* Mar. 7, 2024 Trial Tr., 1445:4-6 ("A challenged statement is misleading to a reasonable customer if the Quincy defendants lacked, did not have, competent and reliable scientific

2

evidence to support it.") (Court instructing the jury)) *and* then, if so, (2) whether those claims were material.

The Court's instructions separating out the questions of whether the statements are misleading and whether they are material are supported by the law.[1]  *See, e.g.*, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016) ("To establish liability [under GBL § 349(a)], a plaintiff must show that: (1) the defendant engaged in an act or practice that was materially misleading . . . . The standard for whether an act or practice is misleading is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct . . . . For conduct to be materially misleading it must affect consumers' choice of product.") (internal citations and quotation marks omitted); *People v. Orbital Publ. Group, Inc.*, 169 A.D.3d 564, 565-66 (N.Y. App. Div. 1st Dep't 2019) (reversing New York trial court and first finding as a matter of law that respondents' newspaper and magazine solicitations were deceptive under GBL Sections 349 and 350, including because the disclaimers on the back were "insufficiently prominent or clear to negate the overall misleading impression," and then separately determining that the misrepresentations were "also material").

Quincy mistakenly conflates the elements of the NYAG's General Business Law claims. (Quincy Opp. at 3-5.)  It is clear that the challenged advertising claims must be misleading *and* they must be material—but these are two separate inquiries.  Quincy fails to recognize that "misleading in a material way" means that the challenged claims were both misleading (i.e.,

---

[1] While it is true that courts do not always separate out the issues of misleadingness and materiality, this is because on motions to dismiss or summary judgment there is often no need to do so where the misleading statement is uncontestably material as a matter of law.  *See, e.g.*, *People v. Image Plastic Surgery,* 210 A.D.3d 444, 445 (N.Y. App. Div. 1st Dep't 2022) (holding defendants' "alleged misrepresentations and deceptions" regarding the treatment of medical conditions to be material, where defendants did "not meaningfully dispute" their presumptive materiality).

3

unsupported by competent and reliable scientific evidence) and material.  If a claim lacked adequate substantiation, but would not affect a consumer's decision to buy or use the product in question, the claim would be misleading, but not in a material way.  Despite being misleading, the claim would not violate the General Business Law because it is not material.  The cases Quincy relies upon do not say anything different.  *See Miller v. Sanofi Consumer Healthcare*, No. 1:22-cv-574, 2023 WL 112553, at *1 (S.D.N.Y. Jan. 5, 2023) (Stanton, J.) (dismissing claims under General Business Law § 349 based on plaintiffs' misquotation of advertising claims); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. Ct. App. 2012) (considering disclaimers and noting that reliance is not an element of General Business Law §§ 349 and 350 claims); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 1st Dep't 2003) (in evaluating whether claims were "misleading in a material way," considering only whether claims were misleading).

Here, the jury repeatedly and uncontrovertibly found that all eight of Quincy's marketing claims were misleading and deceptive under New York General Business Law when it returned a finding that Quincy lacked "competent and reliable scientific evidence" to support any of those statements (*see* Verdict Form (Mar. 11, 2024) (ECF No. 421) at 1-2, 4-5 (Questions 1, 3(a)-(h), 9(a)-(h)); unsubstantiated claims are misleading.  Accordingly, the remaining, separate question for the jury at that point was whether these deceptive statements were material.[2]

---

[2] Quincy also speculates that the NYAG is arguing that there was an inconsistency in the jury's verdict between its finding that there was no reliable and competent scientific evidence and its finding that six of Quincy's marketing claims were not "materially" misleading.  (Quincy Opp. at 14.)  This is not the NYAG's argument, and there is no inconsistency.  The jury found Quincy lacked competent and reliable scientific evidence to substantiate each of the challenged claims, and thus determined that all eight claims were misleading.  (*See* Verdict Form (ECF No. 421) at 1-2, 4-5 (Questions 1, 3(a)-(h), 9(a)-(h)).)  The deceptiveness of Quincy's marketing claims is therefore settled.  (*See* Mar. 7, 2024 Trial Tr., 1445:4-6 ("A challenged statement is misleading to a reasonable customer if the Quincy defendants lacked, did not have, competent and reliable

### II.  Quincy Has Waived its Right to Contest that the Presumption of Materiality Applies Under New York Law, as This Court Has Already Correctly Held

Next, Quincy argues that the presumption of materiality for express and health-related claims applies only under FTC law, and not New York law.  (Quincy Opp. at 7-9.)  Essentially, Quincy argues that the Court's jury instruction that the presumption applies under New York law was erroneous.  However, during the Court's charging conference, Quincy's counsel did not object to the Court's correctly phrased, proposed jury instruction that express and health-related marketing claims are presumed to be material.  (*See* Mar. 6, 2024 Trial Tr., 1334:10-1349:20 (while going through the jury instructions with the Court, Quincy's counsel did not oppose, challenge or suggest an alternative to the Court's proposed instruction that the presumption of materiality applies to express and health-related claims).)  Accordingly, Quincy's argument that a presumption of materiality does not apply to express and health claims under New York law has been waived under Rule 51(c)(1) of the Federal Rules of Civil Procedure, which provides that a party "who objects to an instruction or the failure to give an instruction must do so on the record . . . ." *See Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 626 F. Supp. 3d 635 (S.D.N.Y. 2022) (Stanton, J.) (rejecting post-trial objections to jury instructions that were not raised on the record under Rule 51(c)); *Saleh v. Pretty Girl, Inc.*, No. 09-cv-1769, 2022 WL 4078150 at *9-10 (E.D.N.Y. Sept. 6, 2022) (same); *see also Yore v. M/V LNG Leo*, No. 99-9130, 2000 WL 385504 (Table), at *2-4 (2d Cir. Apr. 14, 2000) (finding "bare 'exception'" to jury instruction insufficient to preserve the issue for appeal).

---

scientific evidence to support it.") (Court instructing the jury.)  The jury *then* found that six of those eight claims were not "materially misleading."  Since its answers to the first question by definition mean that it found all eight claims to be misleading, the only logical conclusion is that the jury found, without any evidence whatsoever to support its conclusion, that six of the challenged claims lacked materiality.

However, even if Quincy had not waived this argument, Quincy is wrong about New York law. As both sides have acknowledged, case law under the Federal Trade Commission Act is given great weight in construing deceptive practices and false advertising under New York General Business Law. *See, e.g.*, *People v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175, 178 (N.Y. App. Div. 3d Dep't 2005) ("recognizing that the interpretations of the Federal Trade Commission Act (*see* 15 U.S.C. § 45 *et seq*.) are useful in determining the aforementioned violations under both the Executive Law and General Business Law"); *see also Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("Section 349 does not define materiality. However, it is modeled after Section 5 of the Federal Trade Commission Act ("FTCA") . . . . Therefore, this Court evaluates the materiality prong by examining the case law interpreting Section 5 of the FTCA."); *People v. Image Plastic Surgery,* 210 A.D.3d 444, 445 (N.Y. App. Div. 1st Dep't 2022) (finding that "[t]he evidence of materiality was premised on the substance of the alleged misrepresentations and deceptions," which were claims for the treatment of various medical conditions).

In any event, in addition to the presumption of materiality, Quincy's Market Development Director and expert witness both testified as to the importance of Quincy's express claims about improving memory and brain health to the decisions of consumers. (*See* Mem. of Law in Support of Renewed Mot. for J. as a Matter of Law by People of the State of New York by Letitia James, Attorney General of the State of New York (filed Apr. 8, 2022) ("Pl.'s Rule 50(b) MoL") at 9-10.) Quincy attempts to pass off its own witnesses' testimony as being unsupportive of materiality by again conflating the issue of whether its statements were misleading with whether they were material. (Quincy Opp. at 12-13.) Quincy argues that "Mr. [Todd] Olson repeatedly testified that he *disagreed* with the NYAG's self-serving suggestion

6

that any advertisement was deceptive" *(id.* at 12) (emphasis in original),[3] and that Quincy's expert Dr. David Katz "told that jury . . . that all of the Challenged Claims are supported by competent and reliable scientific evidence," *i.e.*, not misleading (*id*. at 13).  The fact that both witnesses testified that they thought Quincy's advertising was not misleading is not the issue on this motion.  And the jury definitively disagreed with Quincy's witnesses on the point anyway when it found that the challenged advertising claims were not supported by competent and reliable scientific evidence.  Moreover, as discussed in the NYAG's opening brief, these two witnesses' testimony supports the finding that the challenged claims were important to consumers' decisions to purchase Prevagen, and thus material.  Other than again conflating the issues of materiality and deceptiveness, Quincy has no answer to this.

  Finally, nowhere in its opposition papers does Quincy dispute that the evidence at trial unequivocally showed that the challenged claims were made expressly.  Indeed, it cannot seriously do so given the numerous examples cited by the NYAG in its opening brief.  (Pl.'s Rule 50(b) MoL at 8.)  Similarly, although Quincy halfheartedly argues that the NYAG did not provide any testimony to show that the challenged claims are significantly related to health, (Quincy Opp. at 9), no reasonable jury could have found that the challenged claims here are not significantly related to health, given that on their face they explicitly discuss improvement in

---

[3] Moreover, while Quincy is correct that Mr. Olson was testifying about Quincy's 90-day graph (Quincy Opp. at 12), the graph depicted alleged improvement in memory, right next to an express challenged claim and label for that graph stating that "Prevagen improves memory." (*See* Pl.'s Rule 50(b) MoL at 9) (citing and quoting Feb. 22, 2024 Trial Tr., 101:3-17.)  Thus, the fact that Mr. Olson testified that he thought consumers "are interested" to "know what Prevagen did" with regards to this graph makes it clear he thought consumers would want to know about and be influenced by claims that Prevagen improves memory—one of the challenged advertising claims.

7

such obvious health-related domains as memory, problems with memory associated with aging, cognition, brain health and clarity of thinking.[4]

### III. Quincy's Tiny, Inconspicuous Disclaimers, Which It Did Not Focus On At Trial, Have No Relevance to the Materiality of Its Marketing Claims

Finally, in an eleventh-hour effort to argue that the jury had before it evidence from which it could have reasonably found that six of Quincy's eight challenged claims were immaterial, Quincy argues that the jury might have found that the barely noticeable disclaimers—some of which it only recently added to its advertisements and packaging—somehow negated the presumed materiality of its marketing claims. (Quincy Opp. at 10-12.) Quincy does not, however, explain how or why these disclaimers make the advertising claims any less material.

Notably, Quincy did not elicit any testimony about any of these disclaimers, which were typically in inconspicuous, tiny, barely legible print. (*See, e.g.*, Popp Decl., Ex. F ("Eileen Testimonial") (JX-84) (showing the challenged marketing claim "Prevagen Improves Memory" throughout the entire 30-second ad but only showing the "subgroup" disclaimer for six seconds in small print at the bottom and the "FDA" and "treat, cure, or prevent any disease" disclaimers for three seconds in tiny print at the bottom); Popp Decl., Ex. G (2022 Decl. of Todd Olson (PX-587)), Ex. F, p. 2 (Prevagen packaging including both the "subgroup" disclaimer and the "FDA and "treat, cure, or prevent any disease" disclaimers in smaller than footnote-sized text on the

---

[4] Quincy's argument that the NYAG is "conflating 'health claims' with disease or drug claims" (Defs.' Opp. at 9) misses the point. It is irrelevant whether a health claim being challenged under consumer protection law is a disease claim under regulations promulgated by the Food and Drug Administration. *See, e.g.*, *Bristol-Myers Co. v. FTC,* 738 F.2d 554, 559 (2d Cir. 1984) ("Insofar as FDA requirements and regulations are concerned, they simply do not govern this case [enforcing the FTC Act]."); *see also Thompson Med. Co. v. FTC*, 791 F.2d 189, 193 (D.C. Cir. 1986) (stating that *Bristol-Myers* made it quite clear that FDA requirements and regulations were a different regulatory scheme and did not govern an FTC case).

8

very bottom of the side panel of the packaging, even though *all* of the relevant challenged marketing claims are made on the front panel or a different side panel).  Indeed, Quincy does not even cite a single portion of the transcript in which it asked witnesses about these disclaimers, their meaning, their purpose or their relevance to the case, let alone to their relevance to the issue of materiality.  Quincy also fails to cite even a single case where any court has found that a disclaimer affected the materiality of claims in marketing materials, as opposed to their deceptiveness, or what claim was conveyed to consumers.  Indeed, the Court's jury instructions made it clear that disclaimers and qualifiers go to the issues of whether the alleged claims were conveyed and whether they were misleading, rather than materiality:

> You should consider whether a disclaimer or a qualifier is sufficiently clear and conspicuous, that when the full marketing claim is considered, the claim ***actually conveyed***, is not the one the Attorney General alleged was made and eliminates the possibility that a reasonable consumer would be ***misled***."

(Mar. 7, 2024 Trial Tr., 1447:5-10 (emphasis added).[5]

In any event, Quincy's disclaimers, including that its marketing claims were based on data from subgroups of consumers who were cognitively normal or mildly impaired, did not prevent the jury from repeatedly finding that all the challenged marketing claims were conveyed,

---

[5] Moreover, the "subgroup" disclaimer was not included in ads or packaging until December 2020 (*see* Feb. 29, 2024 Trial Tr., 880:16-21 (Mr. Mark Underwood testifying that the subgroup disclaimer appeared in Prevagen ads and packaging "for the first time around December 2020")), and even when then Quincy added it, it did not qualify many of the challenged claims even on its own terms. *See, e.g.*, Popp Decl., Ex. G (2022 Decl. of Todd Olson (PX-587)) at Ex. F, p.2 (using a cross-referenced footnote to indicate the disclaimer regarding "clinical study of subgroups of individuals who were cognitively normal or mildly impaired" applies only to the claim "Prevagen Improves Memory" at the top of the front panel of the packaging but not to other challenged claims about Prevagen supporting "Healthy Brain Function," "Sharper Mind," "Clearer Thinking" on the front panel or the representation on the side panel that in a "clinical study, Prevagen improved certain aspects of cognitive function over a 90 day period"). Accordingly, this disclaimer could not possibly have rebutted materiality for these claims from before December 2020 or which it did not reference even by its own terms.

and that Quincy lacked reliable and scientific evidence for each of those claims. (*See* Verdict Form (ECF No. 421) at 1-2, 4-5 (Questions 1, 2(a)-(h), 3(a)-(h), 8(a)-(h), 9(a)-(h)).) This was despite the fact that Plaintiffs made the jury aware of the disclaimers while eliciting testimony from Mr. Olson, notwithstanding that members of the jury might not have noticed the disclaimers had they not been pointed out to them. (*See, e.g.*, Feb. 22, 2024 Trial Tr., 77:13-17; 84:1-7; 109:24-110:13; 111:18-112:2.)

Indeed, Quincy does not even bother to explain *how* or *why* the jury might have found the disclaimers relevant to materiality. (Quincy Opp. at 11) (nowhere explaining or even theorizing *why* the jury might have thought the disclaimers made the deceptive marketing claims immaterial to consumers). Perhaps that is because, as pointed out in the NYAG's opening brief, Quincy itself clearly thinks these claims (including with the disclaimers) are important to the purchasing decisions consumers make. No wonder it continues to run ads containing many of these claims and to fight against Plaintiffs placing any limitations on its ability to continue to make these very claims to consumers. (*See* Pl.'s Rule 50(b) MoL at 10-11.)

## CONCLUSION

The jury clearly and repeatedly found the challenged marketing claims that Quincy made about Prevagen to lack competent and reliable scientific evidence and therefore to be misleading. Moreover, because they were expressly made, health-related, and related to the central characteristic of Prevagen, these claims are presumed to be material as a matter of both FTC and New York law. Because Quincy presented no evidence to rebut that presumption, or to counter the testimony in the record from its own witnesses supporting the materiality of the challenged marketing claims about Prevagen, no reasonable jury could have found the challenged claims

were anything other than material, and the Court should grant Plaintiff's renewed motion for a judgment as a matter of law on that element of its GBL Section 349 and 350 claims.

Dated: April 29, 2024           Respectfully submitted,

                                PEOPLE OF THE STATE OF NEW YORK
                                BY LETITIA JAMES,

                                Attorney General of the State of New York

                                By: /s/_____
                                    JANE M. AZIA
                                    KATE MATUSCHAK
                                    MARY ALESTRA
                                    NOAH H. POPP
                                    EMILY SMITH
                                    Consumer Frauds and Protection Bureau
                                    28 Liberty Street
                                    New York, NY 10005
                                    Tel: (212) 416-6189
                                    212-416-6189, kate.matuschak@ag.ny.gov
                                    212-416-6698, mary.alestra@ag.ny.gov
                                    212-416-8915, noah.popp@ag.ny.gov
                                    212-416-8316, emily.smith@ag.ny.gov
                                    212-416-6003 (facsimile)

## CERTIFICATE OF SERVICE

I certify that on this 29th day of April 2024, I served via ECF the foregoing Reply Memorandum of Law in Support of the Renewed Motion for Judgment as a Matter of Law by People of the State of New York by Letitia James, Attorney General of the State of New York.

*/s/ Noah H. Popp*

Noah H. Popp

| | |
|---|---|
| Geoffrey W. Castello, III<br>Glenn T. Graham<br>Jaclyn M. Metzinger<br>Caitlin Hickey<br>Damon Suden<br>William Escobar<br>Kelley Drye & Warren LLP<br>3 WTC, 175 Greenwich St.<br>New York, NY 10007<br>(212) 808-7800<br>gcastello@kelleydrye.com<br>ggraham@kelleydrye.com<br>jmetzinger@kelleydrye.com<br>chickey@kelleydrye.com<br>dsuden@kelleydrye.com<br>wescobar@kelleydrye.com<br><br>John H. Villafranco<br>Kelley Drye & Warren LLP<br>Washington Harbour, Suite 400<br>3050 K Street, NW<br>Washington, D.C.  20007<br>(202) 342-8423<br>jvillafranco@kelleydrye.com<br><br>*Attorneys for Defendants Quincy Bioscience Holding Co., Inc., Quincy Bioscience, LLC, Prevagen Inc., Quincy Bioscience Manufacturing, LLC* | Michael B. de Leeuw<br>Tamar S. Wise<br>Amanda Giglio<br>Cozen O'Connor<br>3 WTC, 175 Greenwich St<br>55th Floor<br>New York, NY 10007<br>(212) 908-1331<br>mdeleeuw@cozen.com<br>twise@cozen.com<br>agiglio@cozen.com<br><br>Robert Clark<br>Cozen O'Connor<br>One Liberty Place<br>1650 Market Street, Suite 2800<br>Philadelphia, PA 19103<br>(215) 665-2041<br>robertclark@cozen.com<br><br>John B. Kelly<br>Wachtell, Lipton, Rosen & Katz<br>51 W. 52nd Street<br>New York, NY 10019<br>(212) 413-1000<br>jbkelly@wlrk.com<br><br>*Attorneys for Defendant Mark Underwood* |

Annette Soberats
Edward Glennon
Andrew Wone
Christine DeLorme
Tiffany Woo
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20850
(202) 326-2921
asoberats@ftc.gov
eglennon@ftc.gov
awone@ftc.gov
cdelorme@ftc.gov
twoo@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*