UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>Defendants. | Case No. 1:17-cv-00124-LLS<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION BY PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK** |

## TABLE OF CONTENTS

I. *BUSTAMANTE* DOES NOT PROVIDE A BASIS TO RECONSIDER THE COURT'S PRIOR CORRECT RULINGS ................................................................................................... 1

    A. *Bustamante* Does Not Change Well-Established New York Law .............................. 3

    B. *Bustamante* Does Not Create a Comprehensive Rule But Rather is Limited To Specific, Narrow Circumstances ................................................................................. 5

CONCLUSION ............................................................................................................................... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bruton v. Geber Prod. Co.*
 703 F. App'x 468 (9th Cir. 2017) ........................................................................................3, 6

*Bustamante v. KIND, LLC*,
 __F.4th__, 2024 WL 1917155 (2d. Cir. May 2, 2024) ......................................................1, 3, 7

*FTC v. FleetCor Techs.*,
 620 F. Supp. 3d 1268 (N.D. Ga. 2022) .......................................................................................3

*FTC v. Nat'l Urological Grp., Inc.*,
 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ......................................................................................4

*FTC v. QT, Inc.*,
 448 F. Supp. 2d 908 (N.D. Ill. 2006) ..........................................................................................4

*Johnson & Johnson v. Smithkline Beecham Corp.*,
 960 F.2d 294 (2d Cir. 1992) .............................................................................................. 3, 5-6

*Mantikas v. Kellogg Comp.*,
 910 F.3d 633 (2d Cir. 2018) .......................................................................................................2

*Maurizio v. Goldsmith*,
 230 F.3d 518 (2d Cir. 2000) .......................................................................................................2

*North State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
 102 A.D.3d 5 (N.Y. App. Div. 2d Dep't 2012) ..........................................................................5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
 85 N.Y.2d 20 (N.Y. 1995) ..........................................................................................................5

*Parks v. Ainsworth Pet Nutrition, LLC*,
 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ..............................................................................7

*People v. Applied Card Sys., Inc.*,
 805 N.Y.S.2d 175 (N.Y. App. Div. 3d Dep't 2005) ..................................................................3

*People v. Applied Card Systems, Inc.*,
 27 A.D.3d 104 (N.Y. App. Div. 3d Dep't 2005) .......................................................................4

*People v. Network Associates, Inc.*,
 758 N.Y.S.2d 466 (N.Y. Sup. Ct. 2003) ................................................................................ 4-5

*People v. Orbital*,
 169 A.D.3d 564 (N.Y. App. Div. 1st Dep't 2019) .................................................................... 4

*State v. Mgmt. Transition Res., Inc.*,
 115 Misc. 2d 489 (N.Y. Sup. Ct. Sep. 10, 1982) ...................................................................... 5

**Federal Statutes**

15 U.S.C.
 § 45 *et seq*. .............................................................................................................................. 3

**State Statutes**

New York Executive Law
 § 63(12) .................................................................................................................................... 4

New York General Business Law ("GBL")
 § 349 .................................................................................................................................... 1-5
 § 350 .................................................................................................................................... 1-4

Plaintiff the People of the State of New York by Letitia James, Attorney General of the State of New York ("NYAG"), respectfully submits this Memorandum of Law in Opposition to the Motion for Reconsideration filed by Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC and Mark Underwood (collectively, "Quincy" or "Defendants").  Because Defendants have raised no valid basis for reconsidering the Court's prior rulings, their motion should be denied in its entirety.

As noted in the NYAG's Opposition to Quincy's Renewed Motion for Judgment as a Matter of Law (ECF No. 451) at 4, the Court has already rejected the argument that Plaintiffs must provide extrinsic evidence of consumers' interpretation of marketing claim language on multiple occasions.  Quincy renews this argument yet again, adding only the fact that the Second Circuit has affirmed one of the district court cases it cited in its Memorandum for Law in support of its denied Renewed Motion for Judgment as a Matter of Law (ECF No. 450) at 4, 6-7 (quoting and relying on *In re KIND*, 627 F. Supp. 3d 269 (S.D.N.Y. 2022)).  But *Bustamante v. KIND, LLC*, __F.4th__, 2024 WL 1917155 (2d. Cir. May 2, 2024), does not change established New York law that extrinsic evidence of consumers' understanding is not required under the New York General Business Law ("GBL") §§ 349 and 350 for express or clearly and conspicuously implied claims like those at issue here.  Rather, to the extent *Bustamante* interprets New York law at all, the advertising claims there, as to which the plaintiffs had offered "multiple, shifting, definitions of the key term," *id*. at *9, are easily distinguished from those at issue here.  Defendants' Motion for Reconsideration should therefore be denied.

I. ***BUSTAMANTE* DOES NOT PROVIDE A BASIS TO RECONSIDER THE COURT'S PRIOR CORRECT RULINGS**

The Court has correctly rejected Defendants' arguments that Plaintiffs must use consumer perception evidence to prove their deceptive practices and false advertising claims on

1

three separate prior occasions. *See* Op. & Order (Dec. 19, 2022) (ECF No. 331) at 16 ("[E]vidence of consumer perception is superfluous if [it is proven] at trial that defendants did not possess the necessary scientific substantiation to support the challenged statements."); Order (Jan. 8, 2024) (ECF No. 379) at 1 (in granting Plaintiffs' motion in limine, ordering that "Defendants shall not argue that evidence of consumer perception is required"); Order (May 3, 2024) (ECF no. 457) at 2-3 (rejecting Defendants' Rule 50(b) Motion for Judgment as a Matter of Law, including their renewed argument that extrinsic evidence is required to prove claims under the GBL).

In its fourth bite at the apple, Quincy argues *Bustamante*, a private party case, creates a new, comprehensive rule under New York law that requires plaintiffs such as the NYAG to present consumer perception evidence under the GBL at the summary judgment stage. (Mem. of Law in Supp. of Defs.' Mot. for Recons. in Light of New Law (May 15, 2024) (ECF No. 461) ("Defs.' Br.") at 1.) It does nothing of the sort. *Bustamante* does not analyze or quote the text of GBL §§ 349 or 350, cite or quote to a single New York court case interpreting or applying the GBL, or even cite a single federal court case (other than the underlying district court decision) that says extrinsic evidence may be required under the GBL.[1]  Despite all of this, Quincy takes the opinion in *Bustamante* out of context to erroneously argue it creates a comprehensive, bright-line rule that proof of consumer perception is universally required under the GBL.

---

[1] *Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000), is a GBL case, but merely states the reasonable consumer standard at a general level and does not address the type of evidence required to show deception but rather whether the conduct at issue was "consumer-oriented" or a private dispute. *Id*. at 521-22. Similarly, *Mantikas v. Kellogg Comp.*, 910 F.3d 633 (2d Cir. 2018), is partially about the GBL, but reversed the district court's dismissal of allegedly deceptive marketing claims based on the Second Circuit's parsing of the marketing language. *Id*. at 637-39.

### A. *Bustamante* Does Not Change Well-Established New York Law

First, even if *Bustamante* set forth such a broad rule about the necessity of extrinsic evidence of consumer perception (which it does not—*see* Section I.B, *infra*), it would not change the law under the GBL. *Bustamante* relies on cases that have no application to the case at hand. For example, *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294 (2d Cir. 1992), is a Lanham Act case, with a different legal standard than those that apply to GBL §§ 349 and 350. *Bustamante*, 2024 WL 1917155, at *3. *Bruton v. Geber Prod. Co.* 703 F. App'x 468, 471 (9th Cir. 2017), a case brought under California consumer law, did not hold that extrinsic evidence was required to find advertising claims misleading but rather that in that case a reasonable jury could not find Gerber's labeling of certain baby food products misleading based only on the plaintiff's vague testimony about being confused while shopping when the competitors' labels in fact made many of the same claims as Gerber's.

As the NYAG has previously explained, the New York General Business Law is modeled on the Federal Trade Commission Act, not the Lanham Act or California consumer law. FTC case law is given great weight in construing deceptive practices and false advertising under New York General Business Law. *See, e.g.*, *People v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175, 178 (N.Y. App. Div. 3d Dep't 2005) ("recognizing that the interpretations of the Federal Trade Commission Act (*see* 15 U.S.C. § 45 *et seq*.) are useful in determining the aforementioned violations under both the Executive Law and General Business Law").

And under FTC law, extrinsic evidence is not required for express or clearly and conspicuously implied claims like those at issue here. *FTC v. FleetCor Techs.*, 620 F. Supp. 3d 1268, 1295 (N.D. Ga. 2022) (stating that "where the advertisement's claim is explicit, or where it is clearly and conspicuously implied, no extrinsic evidence—in the form of consumer surveys or otherwise—is required to ascertain whether the representation was made") (internal quotation

3

marks and brackets omitted); *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008) (noting it is well established that "[i]f the advertisement explicitly states or clearly and conspicuously implies a claim, the court need not look to extrinsic evidence to ascertain whether the advertisement made the claim"); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 958 (N.D. Ill. 2006) ("Where implied claims are conspicuous and reasonably clear from the face of the advertisements, extrinsic evidence is not required.") (internal quotation marks omitted).

Similarly, New York courts routinely grant plaintiffs judgment under GBL §§ 349 and 350, and deny defendants' motions for summary judgment under those statutes, despite a lack of any extrinsic evidence in the record of what a reasonable consumer would interpret the allegedly deceptive representations to mean. *See, e.g.*, *People v. Orbital*, 169 A.D.3d 564, 565-66 (N.Y. App. Div. 1st Dep't 2019) (finding as a matter of law that solicitations for newspaper and magazine subscriptions were materiality misleading despite no extrinsic evidence of what consumers understood those solicitations to mean); *People v. Applied Card Systems, Inc.*, 27 A.D.3d 104, 107-09 (N.Y. App. Div. 3d Dep't 2005) (upholding grant of judgment and injunctive relief for NYAG against respondent lender and finding multiple representations and practices to be misleading to reasonable consumers "as a matter of law" based on their content and circumstances and without reference to any evidence of consumer perception); *People v. Network Associates, Inc.*, 758 N.Y.S.2d 466, 470 (N.Y. Sup. Ct. 2003) (parsing and analyzing the language of contractual clause without considering any extrinsic evidence of consumer perception to determine that the NYAG "has made a showing that the language at issue may be deceptive," and "warrants an injunction and the imposition of civil sanctions" under both Executive Law § 63(12) and GBL § 349).

Notably, GBL § 349 was intended to stop consumer frauds *in their incipiency* and does not require a showing of reliance—that consumers were actually misled. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y. 1995) (noting that "the legislative history makes plain that this law was intended to 'afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds'"). Rather, the GBL "permits the Attorney General to bring an action upon his or her belief that 'any person, firm, corporation or association . . . *is about to* engage in" deceptive acts or practices. *North State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 14 (N.Y. App. Div. 2d Dep't 2012) (emphasis added). Thus, not only is the NYAG not required to provide evidence of a reasonable consumer's perception of the allegedly deceptive acts or statements, it need not even provide evidence that consumers have been deceived or have complained of being deceived. *See Network Assoc.*, 758 N.Y.S.2d at 469 (the NYAG may proceed under the GBL without any consumer complaints); *State v. Mgmt. Transition Res., Inc.*, 115 Misc. 2d 489, 491 (N.Y. Sup. Ct. Sep. 10, 1982) (same).

Accordingly, neither FTC nor New York law requires extrinsic evidence to prove what reasonable consumers would understand allegedly deceptive representations to mean where those representations are express or clearly and conspicuously implied, and Quincy's argument that *Bustamante* reversed decades of such rulings, essentially *sub silentio*, should be rejected.

### B. *Bustamante* Does Not Create a Comprehensive Rule But Rather is Limited To Specific, Narrow Circumstances

Tellingly, the two cases relied on by *Bustamante* for the alleged comprehensive rule that Quincy seeks to apply here do not support Quincy's interpretation of the law. In both cases, the literal truth of the challenged marketing claims was accepted by the court. In *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992), the plaintiff conceded the literal

5

truth of the claim that its product, unlike its competitor's, contained aluminum, but alleged that the claim was still likely to mislead consumers because it exploited a common public misconception that the ingestion of aluminum causes Alzheimer's disease. In *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470-71 (9th Cir. 2017), the plaintiff's theory of deception did not rely on proving that the nutrient content claims on the defendant's food packaging were false, but rather that the defendant's use of FDA-prohibited nutrient content claims implied its superiority *vis a vis* its competitors' products, whose packaging allegedly did not include such claims. In such cases, where the literal truth of the allegedly deceptive claims is not at issue, it makes sense to require some amount of evidence that reasonable consumers would nonetheless be deceived by the literally true statements—for example, because of their confusing nature, surrounding circumstances, or (as alleged in *Johnson & Johnson*) widespread consumer misconceptions.

Indeed, the language of *Johnson & Johnson*, a case brought under the Lanham Act and not the New York GBL, illustrates why this line of cases is not applicable here.  In *Johnson & Johnson*, the court held that "***[w]here . . . a plaintiff's theory of recovery is premised upon a claim of implied falsehood***, a plaintiff must demonstrate, by extrinsic evidence, that the challenged commercials tend to mislead or confuse consumers." 960 F.2d at 297 (emphasis added).  This is because "[t]he question ***in such cases*** is—what does the person to whom the advertisement is addressed find to be the message?" *Id*. (emphasis added) (citations and quotations omitted).  Here, neither Plaintiffs nor Defendants have ever argued that the advertising claims being challenged in this case are literally true but implicitly false.  Rather, they are deceptive because they are unsubstantiated under the plain, ordinary meaning of the words chosen and used by Quincy.

6

Thus, in *Bustamante*, extrinsic evidence was necessary to prove what consumers would understand the vague, broad, context-dependent term "All Natural" to mean when applied to a snack bar. That amorphous representation in *Bustamante* and the straightforward, plain representations about Prevagen helping with age-associated memory problems here could not be more different in kind.[2] Notably, the court in *Bustamante* considered, but rejected, using the ordinary dictionary definition of "natural," not because it held that literal or plain language can never provide the meaning of marketing claims in consumer cases, but rather because the dictionary and literal definition of the word "natural," as "existing in or caused by nature; not made or caused by humankind," is clearly unhelpful to plaintiff in the context of a snack bar, which is not a product that grows on trees and is therefore, by definition, made by humans. *Bustamante*, 2024 WL 1917155, at *9. In fact, the court in *Bustamante* was particularly concerned with the fact that, on the record developed by the plaintiff, a "jury could hardly render a unanimous verdict" where "multiple, shifting, definitions of the key term have been offered by the party with the burden of proof." *Id*.

But express marketing claims, such as "Prevagen is clinically shown to help with mild memory problems associated with aging," do not raise any such issues because the literal, ordinary meaning of those words is neither confusing, ambiguous nor contradictory to other established facts. And Plaintiffs here have never proffered evidence of multiple competing or

---

[2] It is worth noting that there have been numerous consumer challenges to claims that a product is "natural." Unlike the straightforward and express claims made by Quincy which are the subject of this litigation, it is clear that there is no one set meaning for natural and that the term can be interpreted in several different ways. *See, e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL 832863, *2 (S.D.N.Y. Feb. 20, 2020) (Stanton, J.) (citing numerous consumer cases involving the word "natural" and dismissing the complaint because a "reasonable consumer would not interpret the label 'natural' as a warranty that the Products to not contain" even a "negligible" and harmless amount of a chemical).

7

shifting definitions of Quincy's marketing statements, as in the Court found to be the case in *Bustamante*. Nor have they ever proposed theories of implicit falsity, non-obvious, secondary meanings, or widespread consumer misconceptions about the world (as in *Johnson & Johnson*) as bases for why Quincy's marketing claims are deceptive. Rather, Plaintiffs have always argued that the ordinary and plain meaning of Quincy's statements is deceptive. Jurors know what the words in Quincy's marketing claims mean to ordinary, reasonable people like themselves. They mean that if I am having mild memory problems because of or coinciding with growing older, Prevagen can help reduce those problems.[3] But Quincy's science does not support that claim, as the jury properly found.

Accordingly, *Bustamante* does not impose a broad, bright-line rule, but rather at most holds that extrinsic evidence is necessary to determine what a reasonable consumer would understand a marketing claim to mean where the plaintiff's theory of deception is something other than that the plain, literal meaning of the relevant language.

## CONCLUSION

Because *Bustamante* does not create a new, broad requirement of extrinsic evidence to prove the meaning of allegedly deceptive marketing statements in all cases, under New York law or otherwise, and because the facts there are easily distinguishable from those here, the Court should reaffirm its earlier correct rulings on this issue.

---

[3] Revealingly, Quincy does not even attempt to suggest any alternative meaning or interpretation of that marketing claim that consumers might have understood it to mean, let alone one that would plausibly make it not deceptive.

8

Respectfully submitted,

Dated:  May 29, 2024

    PEOPLE OF THE STATE OF NEW YORK
    BY LETITIA JAMES,

Attorney General of the State of New York

By: */s/ Noah H. Popp*
    JANE M. AZIA
    KATE MATUSCHAK
    MARY ALESTRA
    NOAH H. POPP
    EMILY E. SMITH
    Consumer Frauds and Protection Bureau
    28 Liberty Street
    New York, NY 10005
    212-416-6189, kate.matuschak@ag.ny.gov
    212-416-6698, mary.alestra@ag.ny.gov
    212-416-8915, noah.popp@ag.ny.gov
    212-416-8316, emily.smith@ag.ny.gov
    212-416-6003 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2024, I have caused service of the foregoing Memorandum of Law in Opposition to Defendants' Motion for Reconsideration to be made by electronic filing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Dated: May 29, 2024

*/s/ Noah H. Popp*
Noah H. Popp
Assistant Attorney General
New York State Office of the Attorney General
